# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Case No.  16-3834

RICHARD DUNCAN
Appellant

OMNI INSURANCE COMPANY
Appellee

*Appeal from an Order and Opinion entered on September 28, 2016 in the United States District Court for the Eastern District of Pennsylvania; No. 16-1489 Denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendant's Motion for Summary Judgment; Order entered on October 4, 2016  denying Reconsideration*

## BRIEF OF APPELLANT,
## RICHARD DUNCAN

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.
James C. Haggerty, Esquire; I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6609

KELLY & HERRON, P.C.
Kevin P. Kelly, Esquire
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102
(215) 972-1500

## CORPORATE DISCLOSURE STATEMENT AND
## STATEMENT OF FINANCIAL INTEREST

Pursuant to Fed. R. App. P. 26.1 and L.A.R. 26.1, Appellant, Richard
Duncan, makes the following disclosure:

1)    For non-governmental corporate parties please list all parent
corporations:


      None.

2)    For non-governmental corporate parties please list all publicly held
companies that own 10% or more of the party's stock:


      None.


3)    If there is a publicly held corporation which is not a party to the
proceeding before this Court but which has a financial interest in the
outcome of the proceeding, please identify all parties and specify the nature
of the financial interest or interests.


      None.


4)    In all bankruptcy appeals counsel for the debtor or trustee of the
bankruptcy estate must list: (1) the debtor, if not identified in the case
caption; (2) the members of the creditor's committee or the top 20 unsecured
creditors; and, (3) any entity not named in the caption which is active
participant in the bankruptcy proceeding.  If the debtor or trustee is not
participating in the appeal, this information must be provided by appellant.

Not applicable.  Not a bankruptcy appeal.


HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

 /s/  James C. Haggerty
James C. Haggerty, Esquire; I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6609

## **TABLE OF CONTENTS**

CORPORATE DISCLOSURE STATEMENT....................................i

TABLE OF CONTENTS ...............................................................iii

TABLE OF CITATIONS ..............................................................iv

STATEMENT OF JURISDICTION ............................................1

STATEMENT OF ISSUE ............................................................1

STATEMENT OF THE FACTS...................................................2

STATEMENT OF THE CASE   ...................................................6

STATEMENT OF RELATED CASES AND PROCEEDINGS ..............7

STATEMENT REGARDING STANDARD OF REVIEW ................... 7

SUMMARY OF THE ARGUMENT ...............................................8

ARGUMENT ...........................................................................10
    (a)    Generally.................................................................10
    (b)    Policy of Insurance..................................................12
    (c)    Statutory Provisions............................................... 14
            (1) Mandatory Coverage........................................... 14
            (2) Joint and Several Liability of Owner........................ 15
    (d)    Methodology for Analysis of Legal Coverage Issue............ 16
    (e)    Unlicensed Operator Exclusion is Void and Unenforceable
          When Applied to Vehicle Owners................................. 20
    (f)    Trial Court Erred in Applying Exclusion to Owners............ 26
    (g)    Certification to Supreme Court................................... 28

CERTIFICATE OF COMPLIANCE .............................................31

CERTIFICATE OF SERVICE....................................................33

# TABLE OF CITATIONS

**Page**

Allen v. Erie, 534 A.3d 839 (Pa. Super. 1987)........................    28,26

Chamberlain v. Riddle, 38 A.2d 521 (Pa. Super. 1944) aff'd
571 A.2d 509 (Pa. Super. 1989)…………………………….......    23

Commonwealth of Pa. Dept. of Public Welfare v. Hickey,
582 A.2d 734 (Pa. Cmwlth. 199)…………………………………    20

Delande v. ING Employee Benefits, 112 Fed. Apx. 199
(3d Cir. 2004)………………………………………………………    7

Donegal Mut. Ins. Co. v. Baumhammers, 938 A.2d 286 (Pa. 2007)…    19,20

Eichelman v. Nationwide Insurance Company, 711 A.2d 1006
(Pa. 1998)……………………………………………………………    16,17

Erie v. Baker, 972 A.2d 507 (Pa. 2009)…………………………..…    26

Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431
(3d Cir. 2003)……………………………………………………..    7

GEICO v. Ayers, 18 A.3d 1093 (Pa. 2011)…………………………    27

Heller v. PA League of Cities, 32 A.2d 1213 (Pa. 2011)……………    19

Kropa v. Gateway Ford, 974 a.2D 502 (Pa. Super. 2009) ………….    20

Maxwell v. Enter. Leasing, Co., 4 Pa. D&C 4th 497 ………………    23

O'Loughlin v. Hunger, 2009 U.S. Dist. LEXIS 33711
(E.D. Pa. 2009)……………………………………………………..    22,23

Pecorara v. Erie Ins. Co., 596 A.2d 237 (Pa. Super. 1991)…………. 20

Prudential Prop. & Cas. Ins. Co. v. Sartno, 903 A.2d 1170
 (Pa. 2006)…………………………………………………………… 19

Rivas v. City of Passaic, 365 F.3d 181 (3d Cir. 200)……………… 7

S.H. ex rel. Durrell v. Lower Merion Sch. Dist., 729 F.3d 248
(3d Cir. 2013)………………………………………………………….. 8

Swarmer v. Mutual Benefit, 72 A.3d 641 (Pa. Super. 2013)……….. 19

Terwilliger v. Kitchen, 781 A.2d 1201 (Pa. Super. 2001)………….. 21-23

Williams v. GEICO, 32 A.3d 1195 (Pa. 2011)……………………… 17-19,27

Windrim v. Nationwide, 641 A.2d 1154 (Pa. 1994)………………… 26

**Statutes**

28 U.S.C. § 1291…………………………………………………… 1

75 Pa.C.S.A. § 1574………………………………………………... 1,8,9,15,
16,20-26

75 Pa.C.S.A. § 1701…………………………………………………... 14

75 Pa.C.S.A. § 1702…………………………………………………... 14

75 Pa.C.S.A. § 1786(a),(d)………………………………………….. 8,14,15,
23,24

## STATEMENT OF JURISDICTION

The plaintiff, Richard Duncan, filed this Appeal on October 10, 2016 from the September 28, 2016 decision of the Honorable Harvey Bartle of the United States District Court Eastern District of Pennsylvania. That Order denied the plaintiff's Motion for Partial Summary Judgment and granted the Motion for Summary Judgment of the defendant. As such, that Order is final and appealable, having disposed of the claims asserted in the Trial Court. This Court has appellate jurisdiction of the final decisions of the United States District Court pursuant to 28 U.S.C. § 1291.

## STATEMENT OF ISSUE

At issue in this case is the validity and enforceability of the unlicensed operator exclusion when applied to the liability of the licensed owner (not the unlicensed operator) of a motor vehicle in light of the: (1) specific mandate of Pennsylvania law, namely § 1574 of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. § 1574, which imposes joint and several liability upon the owner of a vehicle who permits an unlicensed individual to operate the vehicle; and (2) the recognized considerations of public policy, namely the requirement that vehicles operated on the roadways of Pennsylvania be insured so that motor vehicle accident victims will be adequately compensated for their injuries.

## STATEMENT OF THE FACTS

On October 8, 2012 Richard Duncan was a passenger on board the SEPTA Route "47" bus at or near the intersection of 8th and Dickenson Streets in Philadelphia, Pennsylvania. At that same time, a motor vehicle owned by Shameka Renee Lamar ("owner"), insured by the Omni Insurance Company ("Omni") and operated by Chris Aaron a/k/a Chris Porter ("operator") was travelling behind the bus. Chris Aron a/k/a Chris Porter was operating the vehicle of Shameka Renee Lamar with permission when he negligently ran into the SEPTA bus in which Richard Duncan was a passenger. Richard Duncan sustained personal injuries in the collision. At the time of the accident, Chris Aaron a/k/a Chris Porter was not a licensed driver.

Following the motor vehicle accident, Richard Duncan made a claim upon the owner, operator and Omni seeking recovery of damages in tort. 27a. By letter dated July 1, 2014 counsel for Richard Duncan wrote to the Omni providing information regarding the claims of Richard Duncan for injuries sustained in the October 8, 2012 collision. 21a. By letter dated July 8, 2014 Omni wrote to counsel for Richard Duncan denying and disclaiming all coverage for the loss to both the owner and the operator on the basis that the operator was not a licensed driver at the time of the accident. 25a. In the letter of July 8, 2014, Andrew Funk, Bodily Injury Supervisor of Omni stated:

2

Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3.A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

25a.    It is the propriety of this disclaimer of coverage to the owner (not the operator) that is at issue in this case.

In this matter, Omni disclaimed coverage to the licensed owner on the basis of the unlicensed status of the operator. The Omni policy provided, in pertinent part:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

A.    We will pay compensatory damages for **bodily injury** or **property damage** for which any insured becomes legally responsible because of an **auto accident.**

3

\*            \*            \*

B.    **Insured** as used in this Part means:

    2.    **You**, an **insured** resident**, or any family member** for the ownership, maintenance or use of your covered auto.

    3.    A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto.

\*            \*            \*

## EXCLUSIONS

A.    We do not provide Liability Coverage for any insured.

    16.    For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

        c.    Does not have a valid driver's license; or

        d.    Has a suspended or rescinded driver's license.

140a & 141a. Based upon this unlicensed operator exclusion, Omni denied and disclaimed coverage to not only the unlicensed operator but also to the licensed owner. Omni has expanded the application of the unlicensed operator exclusion beyond any reasonable bounds.

Since Omni declined to honor the claim, Richard Duncan instituted suit in the Court of Common Pleas of Philadelphia County against the owner and the

4

operator. 25a. Suit was tendered to Omni for defense and indemnity. Based upon its prior disclaimer, Omni continued to refuse to provide a defense or indemnity to both the operator of the owner of the striking vehicle. Richard Duncan then proceeded to arbitration in the Court of Common Pleas of Philadelphia County, obtaining an Award in his favor. 35a. The Report and Award of Arbitrators entered in the underlying tort action provides:

> Judgment for Plaintiff and against Defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 ($13,000.00 for medicals and $15,000.00 for pain and suffering).

35a. Subsequently, Richard Duncan entered Judgment on the Arbitration Award against the owner and the operator. 38a. The defendant, Omni, has not satisfied the Judgment.

Following the entry of the judgment in the underlying tort action, Richard Duncan obtained from the owner, alone, an assignment of all claims and rights against Omni. 44a. The plaintiff, Richard Duncan, thereafter instituted the present action against the defendant, Omni, seeking payment of the $28,000.00 Judgment as well as extra-contractual bad faith damages by reason of the wrongful disclaimer of coverage. 5a.

## STATEMENT OF THE CASE

The plaintiff, Richard Duncan, instituted the present action in the Court of
Common Pleas of Philadelphia County against the defendant, Omni Insurance
Company. This lawsuit arises from the wrongful disclaimer of coverage by Omni
to the owner of the striking vehicle. In the Complaint, Richard Duncan seeks
recovery of: (1) the $28,000.00 judgment entered in favor of Richard Duncan and
against the licensed owner of the striking vehicle in the underlying tort action; and
(2) extra-contractual bad faith damages arising from the disclaimer of liability
coverage by Omni to the licensed owner in that lawsuit. The overriding issue in
this case is a legal coverage issue under Pennsylvania law, namely, the validity and
enforceability of the unlicensed operator exclusion as applied to the licensed and
insured vehicle owner.[1]

No factual disputes existed with respect to the insurance coverage issue.
Accordingly, by agreement, the legal coverage issue was presented to the Trial
Court by way of Stipulation and Cross Motions for Summary Judgment. The Trial

---

[1] The disclaimer of coverage to the unlicensed operator is not at issue in this case. In fact, following the entry of
Judgment in the underlying tort action, Richard Duncan only obtained an assignment of all claims and writes
against Omni from the owner of the vehicle.

Court found in favor of the defendant, Omni, holding that the unlicensed operator exclusion was valid, enforceable and applicable to the licensed owner.[2]  The Trial Court found that Omni properly disclaimed coverage to both the unlicensed operator and the licensed owner of the vehicle.  539a.  This timely appeal followed.

## STATEMENT OF RELATED CASES AND PROCEEDINGS

The plaintiff, Richard Duncan, is aware of no related cases or proceedings.

## STATEMENT REGARDING STANDARD OF REVIEW

The review of a grant or denial of Summary Judgment is plenary.  Rivas v. City of Passaic, 365 F.3d 181, 193 (3d Cir. 2004) (citing Fed. Home Loan Mortgage Corp. v. Scottsdale Ins. Co., 316 F.3d 431, 443 (3d Cir. 2003)); Delande v. ING Employee Benefits, 112 Fed.  Apx. 199, 200 (3d Cir. 2004).   Review by this Court is de novo.  In this matter, the parties entered into a Stipulation of Facts upon which the legal coverage issue was addressed.   All facts must be viewed in a light most favorable to the non-moving party and all reasonable inferences must be drawn in the non-moving parties' favor.  S.H. ex rel. Durrell v. Lower Merion Sch.

---

[2]  Following the grant of Summary Judgment in favor of Omni, Richard Duncan filed a Motion for Reconsideration pointing out to the Trial Court that the Court had neglected to differentiate between the licensed owner and the unlicensed operator in considering the validity of the exclusion.  556a.  This Motion for Reconsideration was denied.   563a.

Dist., 729 F.3d 248, 256 (3d Cir. 2013).  The plaintiff, Richard Duncan,

respectfully requests that this Court apply the standard of review and reverse the

decision of the Trial Court.

## SUMMARY OF THE ARGUMENT

At issue in this case is the validity of the application of the unlicensed

operator exclusion in the personal automobile policy to the liability of the licensed

owner of the vehicle.  Omni issued a policy of insurance to the owner of a motor

vehicle.  The policy excluded liability coverage for any losses occasioned by the

negligence of an unlicensed operator of the insured vehicle.  Section 1574 of the

Motor Vehicle Code imposes joint and several liability upon the owner of a vehicle

for negligence of an unlicensed operator of his or her vehicle.  Omni, relying upon

the unlicensed operator exclusion of the policy, disclaimed coverage to not only

the unlicensed operator but also to its own insured, the licensed owner, for the

losses arising from the negligence of the unlicensed operator.  In so doing, Omni

violated not only the laws of the Commonwealth of Pennsylvania, but its public

policy.

Section 1786 of the Motor Vehicle Financial Responsibility Law, 75

Pa.C.S.A. § 1786, requires all owners of vehicles to secure insurance coverage for

his or her vehicle.  Customarily, auto insurance policies contain omnibus clauses

extending coverage to all permissive users of insured vehicles. Omni, in issuing an auto policy to the vehicle owner, included an unlicensed operator exclusion, eliminating liability coverage for unlicensed operators of the insured vehicle. Omni, however, applied this exclusion of liability coverage to not only the unlicensed operator but also to its insured, the licensed owner. In so doing, Omni violated the statues and public policy of Pennsylvania.

Section 1574 of the Motor Vehicle Code, 75 Pa. C.S.A. § 1574 imposes joint and several liability upon the owner of a motor vehicle for the negligence of an unlicensed operator who the owner permits to operate the vehicle. Independent liability has been created by the Legislature which the owner can reasonably expect is covered when he or she purchases the auto insurance policy. In enacting § 1574, the Pennsylvania Legislature recognized the importance of the availability of compensation for motor vehicle accident victims in the Commonwealth. While an insurer may disclaim coverage to the unlicensed operator of an insured vehicle, it may not similarly disclaim coverage for the insured, licensed owner. The application of the unlicensed operator exclusion to the insured and licensed vehicle owner is violative of Pennsylvania law and contrary to the recognized public policy of the Commonwealth. Therefore, it is respectfully requested that the decision of the Trial Court be reversed.

9

# ARGUMENT

## (a)    Generally

The present action involves a legal coverage question, namely, the validity and enforceability of the unlicensed vehicle exclusion in a Pennsylvania Auto Policy when applied to the licensed owner, not the unlicensed operator, of the striking motor vehicle. There is no dispute as to the operative facts upon which this legal coverage issue was presented to the Court. The plaintiff, Richard Duncan, was a passenger on board the SEPTA Route "47" bus when it was struck by a vehicle owned by Shameka Renee Lamar, insured by Omni, and operated by Chris Aaron a/k/a Chris Porter. Chris Aaron a/k/a Chris Porter was not a licensed operator in Pennsylvania at the time of the accident.

Following the accident, Richard Duncan made claim for recovery of damages in tort against the owner and operator of the striking vehicle. Omni, as the insurer of the striking vehicle, denied coverage to both the owner and operator of the striking vehicle on the basis of the unlicensed operator exclusion. 25a. That exclusion provides:

A.    We do not provide Liability Coverage for any insured.

16.    For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

        c.        Does not have a valid driver's license; or

        d.        Has a suspended or rescinded driver's license.

25a.  Relying upon this exclusion, Omni denied coverage to both the licensed owner and unlicensed operator of the vehicle.  25a.

Once Omni refused to consider the claim, Richard Duncan instituted suit in State Court against the owner and operator of the striking vehicle.  27a.  Omni refused to provide defense or indemnity to the defendants in that action. Accordingly, Richard Duncan proceeded to arbitration in the Court of Common Pleas of Philadelphia County, obtaining an Arbitration Award in his favor against the defendants in the amount of $28,000.00.  35a.  Richard Duncan then obtained an assignment of all claims of the vehicle owner, *alone*, against the defendant, Omni.[3]  44a. As assignee of the claims of the owner against Omni, Richard Duncan then instituted the present action.  6a.  The Trial Court found that the unlicensed operator exclusion eliminated any obligation to defend and indemnify not only the unlicensed operator but also the licensed owner under Pennsylvania law.  539a.  In this, the Trial Court erred.

---

[3]  No assignment was obtained from the unlicensed operator.  The disclaimer of coverage to the unlicensed operator is not challenged in this lawsuit.  See note 2, <u>supra</u>.

The unlicensed operator exclusion, as applied to the owner of a vehicle, is violative of Pennsylvania law and public policy. The Pennsylvania Motor Vehicle Code specifically imposes liability upon the owner of the motor vehicle who permits an unlicensed driver to operate his or her vehicle. The exclusion, when applied to a licensed owner, violates this statutory mandate. The Pennsylvania Motor Vehicle Financial Responsibility Law requires mandatory liability coverage, as well as the extension of liability coverage to permissive users. The unlicensed operator exclusion, when applied to the vehicle owner, impermissibly eliminates coverage in violation of Pennsylvania law. The unlicensed operator exclusion, as applied to a vehicle owner, is also violative of public policy. The Trial Court erred in applying the unlicensed operator exclusion to the vehicle owner. Reversal of the decision of the Trial Court is respectfully requested.

**(b)** **Policy of Insurance**

At the time of the motor vehicle accident in question, there existed a policy of insurance issued by Omni to the owner of the vehicle. That policy provided, *inter alia*, liability coverage as follows:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

A.    We will pay compensatory damages for **bodily injury** or **property damage** for which any insured becomes legally responsible because of an **auto accident.**

12

*          *          *

B.    **Insured** as used in this Part means:

    2.    **You**, an **insured** resident**, or any family member** for the ownership, maintenance or use of your covered auto.

    3.    A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto.

140a.  That policy also contained an unlicensed driver exclusion, as follows:

**EXCLUSIONS**

A.    We do not provide Liability Coverage for any insured.

    16.    For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

        c.    Does not have a valid driver's license; or

        d.    Has a suspended or rescinded driver's license.

141a.  This exclusion was originally intended and formulated to deny coverage to unlicensed operators, a reasonably expected exclusion. Omni has expanded the scope of the exclusion, seeking to overreach in the application of the exclusion to the licensed owner, also. Omni relied upon this exclusion in denying coverage to not only the unlicensed operator of the motor vehicle but also to the licensed owner

13

in the underling tort action. This disclaimer to the owner is invalid. It violates Pennsylvania law and public policy.

**(c)    Statutory Provisions**

**(1)    Mandatory Coverage**

The Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq., requires that all motor vehicle required to be registered must provide financial responsibility. Specifically, § 1786(a) provides:

> **(a)    General Rule.** – Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

75 Pa.C.S.A. § 1786(a). Financial Responsibility is the provision of liability coverage for personal injury in the amount of $15,000.00 per person and $30,000.00 per accident. In addition, $5,000.00 in coverage for property damage is mandated. See 75 Pa.C.S.A. § 1702. An owner of a motor vehicle may not operate his or her vehicle, or permit it to be operated on the highways of the Commonwealth, without this minimum financial responsibility. See 75 Pa.C.S.A. § 1786(d). These statutory provisions evidence the goal of the Legislature, namely to have all vehicles in the Commonwealth insured so that accident victims will be compensated for any loss. For this reason, most auto policies in Pennsylvania contain an omnibus clause which extends coverage for insured vehicles to all

14

permissive operators.[4]   In this way, the individual who properly purchases coverage for his or her vehicle obtains coverage in accordance with the statutory mandate of § 1786(d) whereby coverage is extended to all permissive users.  The unlicensed operator exclusion, when applied to licensed vehicle owners, flies in the face of and directly undermines the statutory directive.

### (2)  <u>Joint and Several Liability of Owner</u>

The policy of insurance in question was issued in Pennsylvania to a Pennsylvania citizen providing coverage in accordance with Pennsylvania law. The resolution of the legal coverage issue is governed by Pennsylvania law. In this regard, § 1574 of the Pennsylvania Motor Vehicle Code specifically imposes liability upon the owner who permits an unlicensed person to operate his or her vehicle.  The statute provides:

> (a)  **General Rule.** – No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this Chapter or who is not licensed for the type or class of vehicle to be driven.

> (b)  **Penalty.** – Any person violating the provisions subsection (a) is guilty of a summary offense and shall be jointly and severally liable with

---

[4] Recently, some insurers, in their endless quest for profits, have been eliminating this omnibus coverage by specifically limiting coverage to listed operators, alone.  These illegal restrictions on the extension of coverage are being challenged in the state appellate courts.

> the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S.A. § 1574.  In enacting this statute, the Legislature sought to ensure that victims of motor vehicle accidents in Pennsylvania would still have access to compensation if injured by the negligence of an unlicensed operator (who presumably would have no insurance coverage).  The statutory provision imposes liability, on a joint and several basis, upon the owner of a vehicle for the negligence of the unlicensed operator of his or her vehicle.  It is this statutory mandate, and the underlying public policy considerations, which the decision of the Trial Court ignores and undermines.

### (d)    Methodology for Analysis of Legal Coverage Issue

In the present case, the methodology to be applied to the analysis of the legal coverage issue must first be recognized.  The goal of cost control, namely, the need to keep insurance premiums reasonable, is no longer the overriding purpose of the Financial Responsibility Law.    Initially, the Supreme Court of Pennsylvania held that the overriding goal of the Financial Responsibility Law was, in fact, cost control.  See Eichelman v. Nationwide Insurance Company, 711 A.2d 1006 (Pa. 1998).  That point of view has been abandoned by the Supreme Court as the sole and exclusive purpose of the Statute.  Specifically, the Supreme Court has recognized the goal of maximum feasible restoration to accident victims as an equally important purpose

of the law.  The goal of cost control is no longer the primary, overriding rationale of the Financial Responsibility Law.  In fact, a majority of Justices of the Supreme Court have abandoned cost control as the overriding goal of the Statute when resolving coverage issues under automobile policies in Pennsylvania.

In Williams v. GEICO, 32 A.3d 1195 (Pa. 2011), the Supreme Court established a methodology requiring stricter scrutiny of limitations of coverage in auto policies in Pennsylvania.  In so doing, the Supreme Court significantly changed its point of view in assessing the enforceability and applicability of limitations in policies under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.  As noted, limitations on coverage were previously routinely enforced on the basis of the rationale of cost control.  See Eichelman v. Nationwide, supra, and its progeny.  In Williams v. GEICO, supra., the Supreme Court changed the methodology to be employed in reviewing coverage limitations.  Cost control is no longer the overriding public policy used to validate policy exclusions.  The remedial goals of the statute are to be emphasized.

In Williams, the Supreme Court essentially abandoned cost control as the overriding goal of the Financial Responsibility Law.  In Williams, Justice Saylor stated in a Concurring Opinion:

> I would also once and for all abandon the rubric that cost containment was the overarching policy concern of the Motor Vehicle Financial Responsibility

17

Law, since the act clearly retained the core remedial objectives of the prior regulatory scheme.

Williams v. GEICO, 32 A.2d at 1210 (Saylor, J. Concurring).  Justice Baer in his

Concurring Opinion further stated:

> I recognize that the MVFRL was passed to control the spiraling auto insurance premiums paid by Pennsylvania drivers in the early 1980's. Indeed, I appreciate the concerns of the insurance industry, vociferously expressed in nearly every brief it files with this Court, that any expansion of insurers' risk of liability could lead us back to those spiraling premiums. Nonetheless, as with all exigencies, whether they be national (the economy), statewide (budget deficits), or local (transit woes), the reality is that they wax and wane. In considering the insurance industry's rhetoric, I cannot help but observe that the industry appears to be awash in revenue. It is hard not to notice the industry's spending on many discretionary activities, including incessant television advertising, the All–State Sugar Bowl, Safe Auto's sponsorship of the Ultimate Fighting Championship Series, and Progressive Field, home of the Cleveland Indians. In consequence, I join my colleagues in calling for advocates and the judiciary to cease their continued reliance on the unthinking perpetuation of the long-ameliorated concern for cost containment, and, if my supposition regarding the industry's financial status is correct, I urge the industry to reduce premiums as a humanitarian gesture to suffering Pennsylvanians.

Williams v. GEICO, 32 A.2d at 1210-1211 (Baer, J. Concurring).  Similarly, Justice

Todd, in her Concurring Opinion, stated:

> While I acknowledge that our Court in Burstein found that cost containment was the "dominant" and "overarching" public policy underlying the MVFRL, 570 Pa. at 184 n. 3, 809 A.2d at 208 n. 3, I join those Justices who eschew the mantra of cost containment—used by various courts to routinely limit the rights of insureds—in favor of a recognition of other equally important

policies and goals that are foundational to the MVFRL, such as the remedial objectives of the statute and the coverage rights of insureds.

Williams v. GEICO, 32 A.2d at 1212 (Todd, J. Concurring).  Justice McCaffery joined the Concurring Opinion of Justice Todd.  Thus, in Williams, the majority of the Justices on the Court at that time adopted a rationale which significantly departs from prior pronouncements.  A similar methodology must be employed in the case at bar.[5]

Policy exclusions must be viewed in light of the goal of remediation for motor vehicle accident victims.  Similarly, exclusions are to be narrowly construed.  In Swarmer v. Mutual Benefit, 72 A.3d 641 (Pa. Super. 2013), the Superior Court specifically recognized this approach to policy exclusions:

> Where, as here, a defense is based on an exception or exclusion in a policy, the burden is on the insurer to establish its application. Donegal Mut. Ins. Co. v. Baumhammers, 595 Pa. 147, 938 A.2d 286, 290 (Pa. 2007); Prudential Prop. & Cas. Ins. Co. v. Sartno, 588 Pa. 205, 903 A.2d 1170 (Pa. 2006). Exclusionary clauses generally are strictly construed against the insurer and

---

[5] In addition, in Heller v. PA League of Cities, 32 A.2d 1213 (Pa. 2011), the Court stated:

> Our inquiry, however, does not end here. Despite our repeated affirmance of the cost containment policy underlying the MVFRL, we have cautioned that it has limits. While the enactment of the MVFRL grew out of a legislative concern for the "spiraling" costs of automobile insurance, the cost containment objective cannot be mechanically invoked as a justification for every contractual provision that restricts coverage and purportedly lessens the cost of insurance. Burstein, 809 A.2d at 208.

Heller v. PA League of Cities, 32 A.2d 1213, 1222 (Pa. 2011).  Cost control is no longer the goal.  It cannot be used to validate policy exclusions.

in favor of the insured. See Kropa v. Gateway Ford, 2009 PA Super 91, 974 A.2d 502 (Pa.Super. 2009) (citing Pecorara v. Erie Ins. Co., 408 Pa. Super. 153, 596 A.2d 237 (Pa.Super. 1991); Baumhammers, supra (strictly construing intentional act exclusion).

Id., 72 A.2d at 645. The application of the unlicensed operator exclusion to the licensed owner must be scrutinized using this methodology. The decision of the Trial Court does not withstand this scrutiny.

### (e)    Unlicensed Operator Exclusion is Void and Unenforceable When Applied to Vehicle Owners

The unlicensed operator exclusion is violative of the provisions of the Pennsylvania Vehicle Code. The Pennsylvania Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed operator to operate his or her vehicle. Section 1574 of the Pennsylvania Vehicle Code specifically imposes liability upon a vehicle owner for the negligence of his/her permissive unlicensed operator. In addressing the effect of § 1574, the Superior Court has held:

> The language of section 1574(b) indicates that one who violates the provisions of *section 1574(a)* is jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle. The legislative intent, however, has been interpreted to hold the owner of the vehicle vicariously liable for such damages. Commonwealth of Pa., Dept of Public Welfare v. Hickey, *136 Pa. Commw. 223, 582 A.2d 734 (Pa. Cmwlth. 1990)*. In Hickey, the plaintiff sued the defendant/owner of an automobile under section 1574 when plaintiff's decedent, unlicensed and intoxicated, was killed while driving defendant's automobile. In determining the legislative intent behind the enactment of *section 1574*, the Hickey court considered the theories of strict liability, vicarious liability and negligence per se and concluded "by process of

elimination, therefore, it seems to us that the Legislature has intended to establish a system of vicarious liability". *582 A.2d at 737.*

Terwilliger v. Kitchen, 781 A.2d 1201, 1213 (Pa. Super. 2001).   That rationale is applicable to the case at bar.   The vehicle owner is independently liable for the negligent acts of the permissive unlicensed operator.   The Legislature recognized that no coverage may be afforded to the unlicensed operator by reason of his or her unlicensed status. Nonetheless, the Legislature wanted to ensure that coverage is available to the  victim of the negligent, underinsured operator in Pennsylvania.   To hold that § 1574 does not reference insurance coverage, and thus has no applicability, is a naïve analysis.   At the heart of the § 1574 remedy is compensation for motor vehicle accident victims.   To believe that the Legislature enacted a remedy while not contemplating a source of payment to those entitled to that remedy is senseless.   Section 1575 recognizes that an auto insurer may deny coverage to an unlicensed operator but contemplates that the licensed owner who permitted the unlicensed operation is liable and responsible monetarily through his or her own insured coverage.   The offhanded rejection by the Trial Court of the applicability of § 1574 is a faulty interpretation of the Statute.

In Terwilliger v. Kitchen the owner permitted an unlicensed operator to use her vehicle.   The owner was found to be vicariously liable for the negligent conduct of the unlicensed operator by reason of § 1574.   The Pennsylvania Superior Court explained the basis for the liability of the owner as follows:

Here, the vehicle owner was not found liable for negligent entrustment because she did not know or have reason to know her son would operate her vehicle while intoxicated. The court determined she should have known her son did not possess a valid driver's license when she entrusted her vehicle to him and that in doing so, she violated section 1574(a). The court also found, however, her violation of section 1574(a) was *not* a substantial factor in causing Stefancin's injuries. **As a result, the vehicle owner is not directly liable for Stefancin's injuries. She did not act with other tortfeasors to injure another and is, therefore, not subject to joint tortfeasor liability. Rather, the vehicle owner's liability is based solely upon her violation of section 1574(a), arising through a positive rule of statutory law, section 1574(b). Kitchen's negligence is imputed to her, making her vicariously liable for the portion of the damages for which Kitchen was found liable.**

Appellant relies primarily upon **Shomo, supra,** in which the issue on appeal was whether the vehicle owner violated section 1574(a), and, thus, could be held jointly and severally liable pursuant to section 1574(b) for damages in the appellant's negligence action. The Shomo Court found that a violation of 1574(a) occurs *at the time the owner or controller of the vehicle entrusts his vehicle* to one he knows or has reason to know is unauthorized, or unlicensed, to drive the vehicle on the highway. *Id.* The Shomo Court focused on the time at which the statute is violated rather than the type of liability to be imposed and, as a result, *Shomo* is not controlling.

Accordingly, we agree with the trial court that the vehicle owner is vicariously liable for the damages caused by Kitchen.

Terwilliger v. Kitchen, 781 A.2d at 1216. The Legislature imposed liability in § 1574, specifically contemplating a remedy for the wrong. Allowing Omni to then deny coverage for that wrong essentially eliminates the purpose of the Statute. Of what value is the remedy of § 1574 if insurers can exclude coverage for the loss?

In O'Loughlin v. Hunger, 2009 U.S. Dist. Lexis 33711 (E.D. Pa. 2009). Judge Buckwalter addressed the impact of § 1574 and stated in a footnote:

The Pennsylvania legislature has enacted a statute specifically prohibiting an automobile owner from "authorizing or permitting an automobile owned by him or under his control to be operated by any person without a valid driver's license." 75 PA. CONS. STAT. § 1574. In order to violate the statute, "it must be shown that the owner knew or had reason to know that the individual to whom he or she

authorized to operate his or her vehicle did not have a valid driver's license." Ferry, 709 A.2d at 403 (Pa. Super. 1998). Pennsylvania courts, however, have found that violation of that statute only makes the automobile owner vicariously liable for the injuries caused by the driver of the vehicle and does not impose on the owner individual negligence under a negligent entrustment theory. Terwilliger v. Kitchen, 2001 PA Super 215, 781 A.2d 1201, 1208 (Pa. Super. 2001). "[E]ntrusting a motor vehicle to an unlicensed driver is not in and of itself negligent." Maxwell v. Enter. Leasing, Co., 4 Pa. D. & C.4th 497, 504 n.4 (1989) (citing Chamberlain v. Riddle, 155 Pa. Super. 507, 38 A.2d 521 (Pa. Super.1944)), aff'd, 397 Pa. Super. 651, 571 A.2d 509 (Pa. Super. 1989).

O'Loughlin v. Hunger, 2009 U.S. Dist. LEXIS 33711 at *19-*20. That analysis is applicable herein. Section 1574 establishes independent liability on behalf of the vehicle owner. That vehicle owner purchased insurance coverage for the liabilities arising from the ownership and use of his or her vehicle (in accordance with the mandate of 75 Pa.C.S.A. § 1786). Omni cannot then exclude liability and coverage for this obligation imposed upon the licensed owner of the vehicle by this statute. The exclusion is an impermissible restriction of coverage for the vehicle owner. The owner purchased coverage reasonably expecting to be covered for automobile claims and losses. Such an expectation of coverage is fair and reasonable in the light of the mandates of § 1786 and the remedy of § 1574. As such, the application of the unlicensed vehicle exclusion to the licensed and insured vehicle owner is invalid and unenforceable.[6]

---

[6] See note 1, supra.

In the Complaint in the underlying tort action, the plaintiff, Richard Duncan,
specifically asserted a claim against Shameka Renee Lamar, the vehicle owner, for
recovery of damages resulting from the negligence of the permissive unlicensed
driver of her vehicle.   In the Complaint, Richard Duncan specifically avers:

13.     The aforesaid collision, which caused Plaintiff's injuries and losses was
a direct and proximate result of the negligent and careless conduct of the
defendant owner, Shameka Renee Lamar, which consisted of the following:

a)     failing to exercise due care for the rights, safety and position of
the plaintiff at the location aforesaid;

b)     failing to maintain the vehicle in proper working order;

c)     negligently and carelessly granting permission to the defendant
driver for the use of the vehicle owned by the defendant owner,
when the latter defendant knew or should have known that the
former defendant was unlicensed and/or incapable or unwilling
to properly and safely operate said vehicle.

31a.  Thus, in the Complaint, Richard Duncan specifically sets forth a claim under §
1574. The Legislature has enacted this statute in order to impose liability on persons
who permit unlicensed operators to use their vehicles.   Omni cannot ignore this
mandate and disclaim coverage for the liability imposed by § 1574.   In this case, the
owner violated § 1786 of the Financial Responsibility Law and suffered the
consequence of the remedy imposed by § 1574 of the Motor Vehicle Code.   Omni
can no more eliminate coverage for this statutory violation as it could exclude
coverage for the violations of other laws pertaining to the operation of motor

24

vehicles, i.e. ignoring a steady red traffic signal, running a stop sign or operating a vehicle under the influence of alcohol. Any such policy exclusions based ukpon violations of statutory directives would be void and unenforceable. The same is true of the unlicensed operator exclusion when expanded to apply to the licensed, insured operator. Omni cannot create an exclusion applicable to licensed and insured vehicle owners in direct contravention of the statutorily imposed liability. The exclusion is void and unenforceable when applied to a vehicle owner. The decision of the Trial Court should be reversed.

The unlicensed operator exclusion, when applied to vehicle owners, is not only violative of the Motor Vehicle Code, but also of public policy. The public policy in Pennsylvania favors: (1) the deterrence of uninsured drivers; (2) the extension of coverage to motor vehicle operators; and (3) the availability of insurance coverage to victims of motor vehicle accidents in Pennsylvania. It is in the interest of the public good to have insured motorists on the highways. In Allen v. Erie, 534 A.2d 839 (Pa. Super. 1987) the Court stated:

> In passing the [MVFRL], the Legislature was primarily concerned with the rising consumer cost of automobile insurance, created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid. The [MVFRL] has the effect of requiring all owners of registered vehicles to share in the burden of insurance before they can obtain the benefits. By denying benefits to a certain class of people -- those not insuring their registered vehicles -- the [MVFRL]

encourages the purchase of insurance by all owners who register vehicles which can be legally operated on the highways.

Allen v. Erie, 534 A.2d at 840-41. See also Windrim v. Nationwide, 641 A.2d 1154 (Pa. 1994).[7] The enactments of the Legislature, noted above, are the embodiment of public policy. Erie v. Baker, 972 A.2d 507, 511 fn. 7. Recognizing these goals, the Legislature enacted § 1574 of the Motor Vehicle Code to ensure that persons injured on the highways of Pennsylvania by reason of the negligence of an unlicensed operator would still be entitled to compensation from the owner of the vehicle. The unlicensed operator exclusion, therefore, cannot be applied to the licensed vehicle owner to undermine public policy and eliminate the statutory mandate.

**(f)    Trial Court Erred in Applying Exclusion to Owners**

The Trial Court found the application of the unlicensed operator exclusion to licensed owners to be valid and enforceable. In so doing, the Trial Court dismissed out of hand the cases cited by the plaintiff (as not involving unlicensed operator issues) while nonetheless relying upon a series of cases which similarly do not address the particular situation in this case. The Trial Court, in its ends driven

---

[7] As noted herein, the goal of cost containment as the overriding purpose of the Law has since been abandoned by the Court.

analysis, cites provisions of the Financial Responsibility Law pertaining to first party benefits coverage (§§ 1718 and 1724) and relies upon cases addressing other exclusions having nothing to do with the illegal exclusion in the case at bar. Further, while recognizing the goals of remediation and cost containment of the Financial Responsibility Law, the Trial Court then only focuses upon cost control, stating:

> It [the Pennsylvania Supreme Court] recognizes that the goal of cost containment of insurance policies allows insureds to have the ability to pay more in premium for greater coverage and less in premium for lesser coverage.

Decision of Trial Court, Pages 10-11. This statement has no support in the record. Omni did not establish any premium reduction to the insured by having this exclusion in the policy. In fact, there is no evidence that the owner of the vehicle in the present case had the ability to buy her way out of the unlicensed operator exclusion. The owner could not have paid more premiums to have the exclusion removed. There is no evidence or testimony that there was any reduction in premium for the inclusion of this particular exclusion in the policy. There was a reduction of coverage, but no reduction of premium. There is no premium based reason for the application of the exclusion to the licensed owner. There is no risk based rationale which supports the enforceability of the exclusion. See, e.g. GEICO v. Ayers, 18 A.3d 1093 (Pa. 2011). The only rationale for the application of the exclusion to the

licensed owner is the maximization of insurance company profits.  See, e.g. <u>Williams</u> <u>v. GEICO</u>, <u>supra</u>. (Concurring Opinion, Baer, J.).

The decision of the Trial Court addresses the application of the unlicensed operator exclusion to the unlicensed operator.  In reaching its decision, the Trial Court states:

> We acknowledge a public policy of extending coverage to all licensed operators.  However, it does not extend to unlicensed drivers.

Decision of Trial Court, p. 11.  550a.  While this statement is true, it misses the point. The issue in this case is not the application of the exclusion to the unlicensed driver. Rather, the issue is the application of the exclusion to the licensed owner.  This is a material difference with a significant distinction.  The ends driven analysis of the Trial Court reaches a wrong conclusion.  Therefore, it is respectfully requested that the decision of the Trial Court be reversed.

**(g)    Certification to Supreme Court**

In the present action, the plaintiff, Richard Duncan, respectfully requests that the legal coverage issue in the case at bar be certified to the Supreme Court of Pennsylvania for disposition.[8]   The legal coverage issue in the case at bar, namely, the validity and enforceability of the unlicensed operator exclusion to the owner (not

---

[8]  The plaintiff, Richard Duncan, has filed a separate Motion to Certify to Supreme Court of Pennsylvania.

the operator) of the motor vehicle is of substantial public importance. The legal coverage issue has not been addressed by the Supreme Court of Pennsylvania. The legal coverage issue, however, potentially effects hundreds of claimants who have sustained injury in accidents on the highways of Pennsylvania. Insurers in the Commonwealth customarily include unlicensed operator exclusions in their policies. The unlicensed operator exclusion was not originally designed to eliminate the obligation of coverage to the vehicle owner but, rather, only to the unlicensed operator. Nonetheless, insurers have expanded and are applying the unlicensed operator exclusion to not only the unlicensed operator but also the licensed owner of the insured vehicle. The importance of this issue requires prompt and definitive resolution by the Supreme Court of Pennsylvania. Accordingly, the plaintiff, Richard Duncan, respectfully requests that this legal coverage issue be certified to

the Supreme Court of Pennsylvania for disposition.

Respectfully Submitted,

HAGGERTY, GOLDBERG,
SCHLEIFER & KUPERSMITH, P.C.

BY: _____

James. C. Haggerty, Esquire
Attorney I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(267) 350-6600


KELLY & HERRON, P.C.

BY: _____

KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102

Attorney for Plaintiff/Appellant

## **CERTIFICATE OF COMPLIANCE**

In accordance with the Local Rules of Appellate Procedure for the United States Court of Appeals for the Third Circuit, Rule 28.3(d), counsel for the Appellant, Richard Duncan, certifies that he is a member of the bar of the United States Court of Appeals for the Third Circuit.

Pursuant to the Federal Rules of Appellate Procedure, Rule 32(a)(7)(C), counsel for the Appellant, Richard Duncan, certifies that this brief complies with the type-volume limitation of Rule 32(a)(7(B) of the Federal Rules of Appellate Procedure because this brief contains 7,039 words, excluding the parts of the brief exempted by Rule 32(a)(7)(B)(iii) of the Federal Rules of Appellate Procedure.

Counsel for the Appellant, Richard Duncan, certifies that this brief complies with the typeface requirements of Rule 32(a)(5) of the Federal Rules of Appellate Procedure and the type style requirements of Rule 32(a)(6) of the Federal Rules of Appellate Procedure because this brief has been prepared in a proportionally spaced typeface using the 2010 version of Microsoft Word in 14 point Times New Roman font.

Counsel for the Appellant, Richard Duncan, certifies that this brief complies with the service requirements of the Local Rules of Appellate Procedure for the United States Court of Appeals for the Third Circuit, Rule 31.1(a), because counsel

for the Appellee, has consented to electronic service pursuant to Local Rules of Appellate Procedure for the United States Court of Appeals for the Third Circuit, Rule, 31.1(d).

Counsel for the Appellant, Richard Duncan, certifies that this brief complies with the electronic filing requirements of the Local Rules of Appellate Procedure for the United States Court of Appeals for the Third Circuit, Rule 31.1(c), because the text of this electronic brief is identical to the text of the paper copies, and the Symantec anti virus corporate version 2013 has been run on the file containing the electronic version of this brief and no viruses have been detected.

HAGGERTY, GOLDBERG,
SCHLEIFER & KUPERSMITH, P.C.

BY: _____
     James. C. Haggerty, Esquire
     Attorney I.D. # 30003
     1835 Market Street, Suite 2700
     Philadelphia, PA 19103
     (267) 350-6600

KELLY & HERRON, P.C.

BY: _____
     Kevin P. Kelly, Esquire
     PA Attorney I.D. # 28306
     1500 Market Street
     Centre Square – West Tower
     Suite W-3110
     Philadelphia, PA  19102

     Attorneys for Plaintiff/Appellant

## CERTIFICATE OF SERVICE

I, James C. Haggerty, certify that I have, on this 7th day of February, 2017, served a copy of the foregoing Brief of Appellant via first class mail and electronic filing and electronic service in accordance with Local Rules of Appellate Procedure, Rule 31.1 upon the counsel listed below:

The Honorable Harvey Bartle, III
United States District Court
For the Eastern District of Pennsylvania
Room 16614
601 Market Street
Philadelphia, Pa  19106

Bruce Morrison, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA  19103

Kevin Kelly, Esquire
Kelly & Herron, P.C.
1500 Market Street
Centre Square - West Tower
Suite W-3110
Philadelphia, PA 19102


HAGGERTY, GOLDBERG,
SCHLEIFER & KUPERSMITH, P.C.

BY: _____
James. C. Haggerty, Esquire
Attorney I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(267) 350-6600

Attorney for Plaintiff/Appellant