# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Case No. 16-3834

### RICHARD DUNCAN
Appellant

### OMNI INSURANCE COMPANY
Appellee

*Appeal from an Order and Opinion entered on September 28, 2016 in the United States District Court for the Eastern District of Pennsylvania; No. 16-1489 Denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendant's Motion for Summary Judgment; Order entered on October 4, 2016 denying Reconsideration*

## APPENDIX OF APPELLANT,
## RICHARD DUNCAN

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.
James C. Haggerty, Esquire; I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6609

KELLY & HERRON, P.C.
Kevin P. Kelly, Esquire
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102
(215) 972-1500

# TABLE OF CONTENTS FOR
## REPRODUCED RECORD

**Page**

Docket Entries – Richard Duncan v. Omni Insurance Co.
USDC, No. 2:16-cv-01489……………………………………….    1a

Complaint of Plaintiff,  Richard Duncan……………………….    5a

Notice to Remove of Defendant, Omni Insurance Company………….    49a

Answer of Defendant to Complaint of Plaintiff………………………..    110a

Motion for Partial Summary Judgment of Plaintiff………………….    188a

Answer of Defendant, Omni, to Plaintiff's Motion for
Summary Judgment……………………………………………….    334a

Motion for Summary Judgment of Defendant……………………….    363a

Answer of Plaintiff to Defendant's Motion for Summary Judgment…...    394a

Reply Memorandum of Plaintiff in Support of Motion for
Partial Summary Judgment………………………………………..    526a

September 28, 2016 Memorandum/Order Denying Plaintiff's Motion for
Partial Summary Judgment and Granting Defendant's Motion for
Summary Judgment……………………………………………..    539a

Motion for Reconsideration of Plaintiff……………………………    556a

October 4, 2016 Order Denying Motion for Reconsideration…………..    563a

Notice of Appeal of Plaintiff……………………………………….    565a

Motion to Certify………………………………………………….    588a

## **CERTIFICATE OF SERVICE**

I, James C. Haggerty, certify that I have, on this 7th day of February, 2017,

served a copy of the foregoing Reproduced Record of Appellant via first class mail

and electronic filing and electronic service in accordance with Local Rules of

Appellate Procedure, Rule 31.1 upon the counsel listed below:

The Honorable Harvey Bartle, III
United States District Court
For the Eastern District of Pennsylvania
Room 16614
601 Market Street
Philadelphia, Pa  19106

Bruce Morrison, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA  19103

Kevin Kelly, Esquire
Kelly & Herron, P.C.
1500 Market Street
Centre Square - West Tower
Suite W-3110
Philadelphia, PA 19102


HAGGERTY, GOLDBERG,
SCHLEIFER & KUPERSMITH, P.C.

BY:    _____
James. C. Haggerty, Esquire
Attorney I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(267) 350-6600

Attorney for Plaintiff/Appellant

CLOSED,STANDARD

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:16-cv-01489-HB

DUNCAN v. OMNI INSURANCE COMPANY
Assigned to: HONORABLE HARVEY BARTLE, III
Cause: 28:1441 Notice of Removal- Insurance Contract

Date Filed: 04/01/2016
Date Terminated: 09/28/2016
Jury Demand: Plaintiff
Nature of Suit: 110 Contract: Insurance
Jurisdiction: Diversity

**Plaintiff**

**RICHARD DUNCAN**

represented by **JAMES C. HAGGERTY**
HAGGERTY GOLDBERG SCHLEIFER &
KUPERSMITH PC
1835 MARKET ST STE 2700
PHILADELPHIA, PA 19103
267-350-6609
Email: jhaggerty@hgsklawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**KEVIN P. KELLY**
KELLY & HERRON PC
1500 MARKET ST SUITE W-3110
CENTRE SQUARE - WEST TOWER
PHILADELPHIA, PA 19102
215-972-1500
Email: kkelly@kellyherronlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SUZANNE TIGHE**
Haggerty, Goldberg, Schleifer &
Kupersmith
1835 Market Street
Suite 2700
Philadelphia, PA 19103
1-267-350-6600
Fax: 215-665-8201
Email: stighe@hgsklawyers.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**OMNI INSURANCE COMPANY**

represented by **R. BRUCE MORRISON**
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 MARKET ST SUITE 2300

**1a**

PHILADELPHIA, PA 19103
215-575-2746
Fax: 215-575-0856
Email: rbmorrison@mdwcg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**TERESA FICKEN SACHS**
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 MARKET ST SUITE 2300
PHILADELPHIA, PA 19103
215-575-2600
Email: tfsachs@mdwcg.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/01/2016 | 1 | NOTICE OF REMOVAL by OMNI INSURANCE COMPANY from Philadelphia CCP, case number 160300267. (Filing fee $ 400 receipt number 137986), Certificate of Service. (tj, ) (Entered: 04/04/2016) |
| 04/01/2016 | 2 | Disclosure Statement Form pursuant to FRCP 7.1 Identifying Corporate Parent AMERICAN INDEPENDENT COMPANIES INC. for OMNI INSURANCE COMPANY. with Certificate of Service by OMNI INSURANCE COMPANY.(tj, ) (Entered: 04/04/2016) |
| 04/08/2016 | 3 | DEFENDANTS ANSWER WITH AFFIRMATIVE DEFENSES, by OMNI INSURANCE COMPANY. CERTFICATE OF SERVICE, EXHIBITS.(sg, ) (Entered: 04/08/2016) |
| 04/11/2016 | 4 | Arbitration Certification that case exceeds the sum of $150,000.00 exclusive of interest and costs (Attachments: # 1 Certificate of Service Certification of Service)(HAGGERTY, JAMES) (Entered: 04/11/2016) |
| 04/12/2016 | 5 | NOTICE of Hearing: STATUS CONFERENCE SET FOR 4/25/2016 04:15 PM IN JUDGE BARTLE'S CHAMBERS BEFORE HONORABLE HARVEY BARTLE III. ADDITIONAL CONFERENCE DETAILS CONTAINED HEREIN.(km, ) (Entered: 04/12/2016) |
| 04/25/2016 | 6 | DEMAND for Trial by Jury by RICHARD DUNCAN. (Attachments: # 1 Certificate of Service)(HAGGERTY, JAMES) (Entered: 04/25/2016) |
| 04/26/2016 | 7 | Minute Entry for proceedings held before HONORABLE HARVEY BARTLE, III Status Conference held on 4/25/16. (jl, ) (Entered: 04/26/2016) |
| 04/26/2016 | 8 | SCHEDULING ORDER: THAT PLAINTIFF SHALL FILE AND SERVE ON OR BEFORE 6/27/2016 ANY BRIEF ON THE ISSUE OF POLICY COVERAGE TOGETHER WITH A SET OF STIPULATED FACTS. DEFENDANT SHALL FILE AND SERVE ANY RESPONSIVE BRIEF ON OR BEFORE 7/11/2016. PLAINTIFF SHALL FILE AND SERVE ANY REPLY BRIEF ON OR BEFORE 7/25/2016. SIGNED BY HONORABLE HARVEY BARTLE, III ON 4/26/2016. 4/26/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 04/26/2016) |
| 05/11/2016 | 9 | Original Record together with certified copy of docket entries received from Court of Common Pleas of Philadelphia County. (sg, ) (Entered: 05/11/2016) |
| 06/27/2016 | 10 | STIPULATION regarding certain facts by RICHARD DUNCAN. (Attachments: # 1 |

|            |    | Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(HAGGERTY, JAMES) Modified on 6/28/2016 (afm, ). (Entered: 06/27/2016) |
|------------|----|--------------------------------------------------------------------------------------|
| 06/27/2016 | 11 | MOTION for Partial Summary Judgment filed by RICHARD DUNCAN.Memorandum and certificate of service. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum, # 3 Certificate of Service, # 4 Exhibit A-1, # 5 Exhibit A-2)(HAGGERTY, JAMES) (Entered: 06/27/2016) |
| 07/11/2016 | 12 | ORDER THAT THE FIRST SCHEDULING ORDER DATED 4/26/2016 IS VACATED. DEFENDANTS SHALL FILE AND BRIEF RESPONSIVE TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT BY 7/18/2016. THE PLAINTIFF SHALL FILE ANY REPLY BRIEF ON OR BEFORE 8/1/2016. SIGNED BY HONORABLE HARVEY BARTLE, III ON 7/11/2016. 7/11/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 07/11/2016) |
| 07/12/2016 | 13 | NOTICE of Appearance by SUZANNE TIGHE on behalf of RICHARD DUNCAN with Certificate of Service (Attachments: # 1 Certificate of Service)(TIGHE, SUZANNE) (Entered: 07/12/2016) |
| 07/18/2016 | 14 | MOTION for Summary Judgment filed by OMNI INSURANCE COMPANY.memorandum of law, certificate of service.(MORRISON, R.) (Entered: 07/18/2016) |
| 07/18/2016 | 15 | RESPONSE in Opposition re 11 MOTION for Partial Summary Judgment filed by OMNI INSURANCE COMPANY. (MORRISON, R.) (Entered: 07/18/2016) |
| 07/28/2016 | 16 | REPLY MEMORANDUM OF LAW IN SUPPORT OF re 11 MOTION for Summary Judgment filed by RICHARD DUNCAN, CERTIFICATE OF SERVICE. (Attachments: # 1 Certificate of Service, # 2 Exhibit A-1, # 3 Exhibit A-2)(HAGGERTY, JAMES) Modified on 7/29/2016 (afm, ). (Entered: 07/28/2016) |
| 07/28/2016 | 17 | RESPONSE in Opposition re 14 MOTION for Summary Judgment *of Omni Insurance Company* filed by RICHARD DUNCAN. (Attachments: # 1 Memorandum, # 2 Certificate of Service, # 3 Exhibit A-1, # 4 Exhibit A-2)(HAGGERTY, JAMES) (Entered: 07/28/2016) |
| 08/11/2016 | 18 | MOTION for Leave to File *Reply Brief* filed by OMNI INSURANCE COMPANY.Rule 7.1(b) Certification; Certificate of Service. (Attachments: # 1 Exhibit A - Reply Brief) (SACHS, TERESA) (Entered: 08/11/2016) |
| 08/12/2016 | 19 | ORDER THAT DEFENDANT OMNI INSURANCE COMPANY'S UNOPPOSED MOTION SEEKING LEAVE TO SUBMIT A SHORT REPLY BRIEF IS GRANTED. THE CLERK IS DIRECTED TO DOCKET THE REPLY ATTACHED AS AN EXHIBIT TO SAID MOTION UNDER A SEPERATE DOCKET ENTRY. SIGNED BY HONORABLE HARVEY BARTLE, III ON 8/12/2016. 8/12/2016 ENTERED AND COPIES E-MAILED. (ems) (Entered: 08/12/2016) |
| 08/12/2016 | 20 | OMNI INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW ON CROSS-MOTIONS FOR SUMMARY JUDGMENT by OMNI INSURANCE COMPANY. Certificate of Service. (ems) (Entered: 08/12/2016) |
| 09/28/2016 | 21 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE HARVEY BARTLE, III ON 9/28/2016. 9/28/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 09/28/2016) |
| 09/28/2016 | 22 | ORDER THAT THE MOTION OF DEFENDANT OMNI INSURANCE COMPANY FOR SUMMARY JUDGMENT (DOC. 14 ) IS GRANTED. THE MOTION OF PLAINTIFF RICHARD DUNCAN FOR PARTIAL SUMMARY JUDGMENT (DOC. 11 |

| | | |
|---|---|---|
| | | ) IS DENIED. SIGNED BY HONORABLE HARVEY BARTLE, III ON 9/28/2016. 9/28/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 09/28/2016) |
| 09/28/2016 | 23 | ORDER THAT SUMMARY JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF. SIGNED BY HONORABLE HARVEY BARTLE, III ON 9/28/2016. 9/28/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 09/28/2016) |
| 09/29/2016 | 24 | MOTION for Reconsideration re 23 Order Dismissing Case filed by RICHARD DUNCAN.Memorandum and certificate of service. (Attachments: # 1 Memorandum, # 2 Certificate of Service, # 3 Text of Proposed Order)(HAGGERTY, JAMES) (Entered: 09/29/2016) |
| 10/04/2016 | 25 | ORDER THAT PLAITNIFFS MOTION FOR RECONSIDERATION (DOC. 24 )IS DENIED. SIGNED BY HONORABLE HARVEY BARTLE, III ON 10/4/2016.10/4/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 10/04/2016) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/06/2016 10:04:12 | | | |
| PACER Login: | ws2774:3418024:0 | Client Code: | Duncan,richard |
| Description: | Docket Report | Search Criteria: | 2:16-cv-01489-HB |
| Billable Pages: | 3 | Cost: | 0.30 |

Court of Common Pleas of Philadelphia County
Trial Division

# Civil Cover Sheet

| | For Prothonotary Use Only (Docket Number) |
|---|---|
| **MARCH 2016** | **000267** |
| E-Filing Number: 1603020604 | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| RICHARD DUNCAN | OMNI INSURANCE COMPANY |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| 1300 PENNSYLVANIA AVENUE APARTMENT H-3 ORELAND PA 19075 | 2018 POWERS FERRY ROAD SUITE 400 ATLANTA GA 30339 |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| PLAINTIFF'S NAME | DEFENDANT'S NAME |
|---|---|
| | |

| PLAINTIFF'S ADDRESS | DEFENDANT'S ADDRESS |
|---|---|
| | |

| TOTAL NUMBER OF PLAINTIFFS | TOTAL NUMBER OF DEFENDANTS | COMMENCEMENT OF ACTION |
|---|---|---|
| 1 | 1 | ☒ Complaint ☐ Petition Action ☐ Notice of Appeal ☐ Writ of Summons ☐ Transfer From Other Jurisdictions |

| AMOUNT IN CONTROVERSY | COURT PROGRAMS | | |
|---|---|---|---|
| ☐ $50,000.00 or less ☒ More than $50,000.00 | ☐ Arbitration ☐ Jury ☒ Non-Jury ☐ Other: | ☐ Mass Tort ☐ Savings Action ☐ Petition | ☐ Commerce ☐ Minor Court Appeal ☐ Statutory Appeals | ☐ Settlement ☐ Minors ☐ W/D/Survival |

| CASE TYPE AND CODE |
|---|
| 1J - BAD FAITH |

| STATUTORY BASIS FOR CAUSE OF ACTION |
|---|
| |

| RELATED PENDING CASES (LIST BY CASE CAPTION AND DOCKET NUMBER) | | IS CASE SUBJECT TO COORDINATION ORDER? YES    NO |
|---|---|---|
| | **FILED PRO PROTHY** MAR 08 2016 **K. EDWARDS** | |

TO THE PROTHONOTARY:

Kindly enter my appearance on behalf of Plaintiff/Petitioner/Appellant: RICHARD DUNCAN

Papers may be served at the address set forth below.

| NAME OF PLAINTIFF'S/PETITIONER'S/APPELLANT'S ATTORNEY | ADDRESS |
|---|---|
| JAMES C. HAGGERTY | 1835 MARKET STREET SUITE 2700 PHILADELPHIA PA 19103 |

| PHONE NUMBER | FAX NUMBER | |
|---|---|---|
| (267)350-6600 | (215)665-8201 | |

| SUPREME COURT IDENTIFICATION NO. | E-MAIL ADDRESS |
|---|---|
| 30003 | jhaggerty@hgsklawyers.com |

| SIGNATURE OF FILING ATTORNEY OR PARTY | DATE SUBMITTED |
|---|---|
| JAMES HAGGERTY | Tuesday, March 08, 2016, 02:55 pm |

FINAL COPY (Approved by the Prothonotary Clerk)

RICHARD DUNCAN                          : IN THE COURT OF COMMON PLEAS
1300 Pennsylvania Avenue                : PHILADELPHIA COUNTY, PENNSYLVANIA
Apartment H-3                           :
Oreland, PA  19075                      :
                                        :
                v.                      :         TERM, 2016
                                        :
OMNI INSURANCE COMPANY                  : NO.
2018 Powers Ferry Road, Suite 400       :
Atlanta, GA  30339                      :


## NOTICE TO PLEAD

### NOTICE

You have been sued in court.   If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.   You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.   You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.   IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION
SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107
Telephone: 215-238-1701

### AVISO

Le han demando a usted en la corte.   Si usted quiere defenderse de estas demandos expuestas en las páginas sigiuentes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificación.   Hace falta asentar una comparesencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.   Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en corte suya sin previo aviso o notificación.   Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.   Usted puede perder diner o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.   SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITO ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LA LICENCIADOS DE
FILADELFIA
SERVICIO DE REFERENCIA E INFORMACIÓN
LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Teléfono: 215-238-1701

RICHARD DUNCAN             : IN THE COURT OF COMMON PLEAS
1300 Pennsylvania Avenue       : PHILADELPHIA COUNTY, PENNSYLVANIA
Apartment H-3                 :
Oreland, PA  19075            :
                               :
            v.               :          TERM, 2016
                               :
OMNI INSURANCE COMPANY      : NO.
2018 Powers Ferry Road, Suite 400    :
Atlanta, GA  30339           :

### CIVIL ACTION -- COMPLAINT

      1.      The plaintiff, Richard Duncan, is an adult individual resident and citizen of the

Commonwealth of Pennsylvania residing at 1300 Pennsylvania Avenue, Apartment H-3,

Oreland, Pennsylvania 19075

      2.      The defendant, Omni Insurance Company ("Omni"), is a corporation organized

and existing under the laws of the State of Georgia with its principal place of business located in

Atlanta, Georgia, being duly authorized to and conducting business in the Commonwealth of

Pennsylvania.

      3.      The defendant, Omni, regularly and routinely conducted business in the City and

County of Philadelphia.

      4.      On October 8, 2012 the plaintiff, Richard Duncan, was a passenger on board the

SEPTA Route "47" bus when it was violently struck by a motor vehicle owned by Shameka

Renee Lamar and operated by Chris Aaron at or near the intersection of 8th and Dickenson

Streets in Philadelphia, Pennsylvania.

      5.      The plaintiff, Richard Duncan, sustained personal injury in the  collision.

      6.      At the time of the accident there existed, in full force and effect, a policy of

insurance issued by the defendant, Omni, to Shameka Renee Lamar providing coverage in

1

accordance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

7.    The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar provided coverage for the motor vehicle being operated by Chris Aaron at the time of the October 8, 2012 collision.

8.    Following the motor vehicle accident, the plaintiff, Richard Duncan, made claim upon Chris Aaron, Shameka Renee Lamar and the defendant, Omni, seeking recovery of damages in tort.

9.    By letter dated July 1, 2014 counsel for the plaintiff, Richard Duncan, wrote to the defendant, Omni, providing all information regarding liability and damages with respect to the claims arising from the October 8, 2012 collision.  A true and correct copy of the July 1, 2014 letter from counsel for the plaintiff, Richard Duncan, is attached hereto and marked Exhibit "A".

10.    By letter dated July 8, 2014 the defendant, Omni, wrote to counsel for the plaintiff, Richard Duncan, denying and disclaiming all coverage for the loss on the basis that the vehicle owned by Shameka Renee Lamar and insured by the defendant, Omni, was being operated by an unlicensed driver at the time of the collision.  A true and correct copy of the July 8, 2014 letter from Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, is attached hereto and marked Exhibit "B".

11.    In the letter of July 8, 2014, Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, advised counsel for the plaintiff, Richard Duncan:

> Omni Insurance Company has completed its investigation into the above captioned loss.  We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

2

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3.A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

See Exhibit "B".

12.     In denying and disclaiming coverage for the claims arising from the October 8, 2012 collision, the defendant, Omni, knowingly and recklessly ignored § 1574 of the Pennsylvania Motor Vehicle Code.  75 Pa.C.S.A. § 1574.

13.     Section 1574 of the Pennsylvania Motor Vehicle Code provides:

(a)  **General Rule.** – No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this Chapter or who is not licensed for the type or class of vehicle to be driven.

(b)  **Penalty.** – Any person violating the provisions subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S.A. § 1574.

14.     The plaintiff, Richard Duncan, thereafter instituted suit against Chris Aaron and Shameka Renee Lamar in the Court of Common Pleas of Philadelphia County (Richard Duncan v. Chris Aaron and Shameka Renee Lamar, September Term, 2014, No. 0479).  A true and correct copy of the Complaint is attached hereto and marked Exhibit "C".

3

9a

15.    In the Complaint in the underlying tort action, the plaintiff, Richard Duncan,

specifically made claim against Shameka Renee Lamar for recovery of damages as a result of

allowing an unlicensed driver to operate her vehicle.

16.    In the Complaint, the plaintiff, Richard Duncan, specifically averred:


13. The aforesaid collision, which caused Plaintiff's injuries and losses was a direct
and proximate result of the negligent and careless conduct of the defendant owner,
Shameka Renee Lamar, which consisted of the following:

    a)    failing to exercise due care for the rights, safety and position of the
plaintiff at the location aforesaid;

    b)    failing to maintain the vehicle in proper working order;

    c)    negligently and carelessly granting permission to the defendant driver for
the use of the vehicle owned by the defendant owner, when the latter
defendant knew or should have known that the former defendant was
unlicensed and/or incapable or unwilling to properly and safely operate
said vehicle.

See Exhibit "C", ¶ 13.

17.    The defendant, Omni, did not provide a defense to Chris Aaron and/or Shameka

Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common

of Philadelphia County.

18.    The defendant, Omni, did not agree to indemnify Chris Aaron and/or Shameka

Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common

of Philadelphia County.

19.    The plaintiff, Richard Duncan, proceeded to arbitration in the underlying tort

action in the Court of Common Pleas of Philadelphia County.

20.    An Arbitration Hearing was conducted in the underlying tort action in the Court

of Common Pleas of Philadelphia County on June 3, 2015.

4

21.    Following the Arbitration Hearing in the underlying tort action, the arbitrators entered a Report and Award of Arbitrators in favor of the plaintiff, Richard Duncan, and against Chris Aaron and Shameka Renee Lamar. A true and correct copy of the Report and Award of Arbitrators is attached hereto as Exhibit "D".

22.    The Report and Award of Arbitrators entered in the underlying tort action provides:

> Judgment for Plaintiff and against Defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 ($13,000.00 for medicals and $15,000.00 for pain and suffering).

See Exhibit "D".

23.    The plaintiff, Richard Duncan, thereafter entered Judgment on the Arbitration Award against Chris Aaron and Shameka Renee Lamar. A true and correct copy of the Praecipe to Enter Judgment is attached hereto and marked Exhibit "E".

24.    The defendant, Omni, has not satisfied the Judgment.

25.    The plaintiff, Richard Duncan, thereafter obtained from Shameka Renee Lamar an Assignment of all claims and rights against the defendant, Omni. A true and correct copy of the Assignment is attached hereto and marked Exhibit "F".

26.    The defendant, Omni, acted in bad faith in refusing to defend and indemnify Shameka Renee Lamar in the underlying tort action.

27.    The defendant, Omni, is responsible for payment of the entire Judgment entered in the underlying tort action against Shameka Renee Lamar plus interest and delay damages.

28.    The defendant, Omni, is obligated to make payment of interest, counsel fees, costs and punitive damages in connection with its wanton, willful and reckless failure to defend and indemnify Shameka Renee Lamar in the underlying tort action.

5

## COUNT I
### (Bad Faith – Excess Verdict)

29.    The plaintiff, Richard Duncan, hereby incorporates by reference the foregoing Paragraphs 1 through 28 of this Complaint as though same were fully set forth herein.

30.    The defendant, Omni, is obligated to make payment of the $28,000.00 Judgment entered in the underlying tort action, plus interest and delay damages as a result of its wanton, willful and reckless failure to defend and indemnify Shameka Renee Lamar in the underlying tort action.

31.    The defendant, Omni, failed to defend and indemnify Shameka Renee Lamar in the underlying tort action in direct contravention of the policy of insurance and the requirements of the Pennsylvania Motor Vehicle Code.

32.    The defendant, Omni, breached the express and implied terms, provisions, promises and covenants of the policy of insurance by, *inter alia*:

(a)    engaging in unfair or deceptive acts or practices;

(b)    failing to fully, fairly and promptly evaluate the coverage issues;

(c)    failing to provide a defense to Shameka Renee Lamar in the underlying tort action;

(d)    failing to indemnify Shameka Renee Lamar in the underlying tort action;

(e)    failing to make payment of the $28,000.00 Judgment entered in the underlying tort action plus interest and delay damages;

(f)    failing to continue to fully, fairly and promptly evaluate the coverage issues arising out of the October 8, 2012 collision;

(g)    failing to effect a prompt and fair settlement of the claims in the underlying tort action;

(h)    failing to properly and fairly resolve the claims asserted in the underlying tort action;

6

(i)     failing to comply with the terms and provisions of the policy of insurance;

(j)     ignoring § 1574 of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. § 1574;

(k)     breaching the implied covenant of good faith and fair dealing in the policy of insurance;

(l)     violating the Unfair Insurance Practice Act, 40 P.S. § 1171.1 et seq.;

(m)     acting in dilatory and obdurate manner in handling and evaluating the claims arising out of the October 8, 2012 motor vehicle accident;

(n)     wantonly and willfully disregarding the rights of Shameka Renee Lamar;

(o)     elevating its own interests above those of Shameka Renee Lamar;

(p)     recklessly disregarding the rights of Shameka Renee Lamar by misinterpreting and misconstruing the policy so as to deny and disclaim coverage;

(q)     violating the Unfair Claims Settlement Practices, 31 Pa. Code § 146.1 et seq.;

(r)     violating the statutes and regulations governing the actions and practices of insurers in Pennsylvania;

(s)     violating its own internal policies, procedures, practices and guidelines for the handling and evaluation of coverage issues; and,

(t)     such other acts or omissions as may be developed during discovery.


33.     As a result of the breach of the expressed and implied terms, provisions, promises and covenants of the policy by the defendant, Omni, Shameka Renee Lamar was not provided a defense or indemnity in the underlying tort action.

34.     As a result of the failure of the defendant, Omni, to defend and indemnify Shameka Renee Lamar in the underlying tort action, Judgment was entered against Shameka Renee Lamar by the plaintiff, Richard Duncan.

7

35.    The plaintiff, Richard Duncan, is entitled to full and complete satisfaction of the Judgment entered in the underlying tort action, plus interest and delay damages from the defendant, Omni.

WHEREFORE, the plaintiff, Richard Duncan, demands judgment against the defendant, Omni Insurance Company, in an amount in excess of $50,000.00.

## COUNT II
### (Bad Faith – Common Law and Statutory)

36.    The plaintiff, Richard Duncan, hereby incorporates by reference the foregoing Paragraphs 1 through 35 of this Complaint as though same were fully set forth herein.

37.    The policy of insurance issued by Omni to Shameka Renee Lamar required that the defendant, Omni, provide defense and indemnity to Shameka Renee Lamar in the underlying tort action.

38.    The defendant, Omni, failed to comply with the terms and provisions of the policy in denying and disclaiming coverage for the loss.

39.    The defendant, Omni, failed to comply with the specific provisions of the Pennsylvania Motor Vehicle Code in denying and disclaiming coverage for the loss.

40.    The defendant, Omni, acted in bad faith in failing to defend and indemnify Shameka Renee Lamar in the underlying tort action and further failing to satisfy the Judgment entered in that matter.

41.    The policy of insurance issued by the defendant, Omni, includes an implied covenant of good faith and fair dealing.

42.    The defendant, Omni, failed to comply with the implied covenant of good faith and fair dealing.

8

43.    The defendant, Omni, is liable to the plaintiff, Richard Duncan, for all common law bad faith damages.

44.    The defendant, Omni, is liable to the plaintiff, Richard Duncan, for all statutory bad faith damages.

45.    The Pennsylvania Bad Faith Statute, 42 Pa.C.S.A. § 8371, provides:

> In an action arising under an insurer policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2)    Award punitive damages against the insurer.
>
> (3)    Assess court costs and attorneys fees against the insurer.

42 Pa.C.S.A. § 8371.

46.    The claims of Shameka Renee Lamar against the defendant, Omni, for its bad faith conduct have been assigned to the plaintiff, Richard Duncan, and are an action under an insurance policy.

47.    The defendant, Omni, acted in bad faith in violation of all common law duties and in violation of 42 Pa.C.S.A. § 8371 by failing to defend and indemnify Shameka Renee Lamar in the underlying tort action and further failing to satisfy the Judgment entered in that tort action.

48.    The bad faith of the defendant, Omni, consisted, but was not limited to:

(a)    engaging in unfair or deceptive acts or practices;

(b)    failing to fully, fairly and promptly evaluate the coverage issues;

(c)    failing to provide a defense to Shameka Renee Lamar in the underlying tort action;

9

(d)      failing to indemnify Shameka Renee Lamar in the underlying tort action;

(e)      failing to make payment of the $28,000.00 Judgment entered in the underlying tort action plus interest and delay damages;

(f)      failing to continue to fully, fairly and promptly evaluate the coverage issues arising out of the October 8, 2012 collision;

(g)      failing to effect a prompt and fair settlement of the claims in the underlying tort action;

(h)      failing to properly and fairly resolve the claims asserted in the underlying tort action;

(i)      failing to comply with the terms and provisions of the policy of insurance;

(j)      ignoring § 1574 of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. § 1574;

(k)      breaching the implied covenant of good faith and fair dealing in the policy of insurance;

(l)      violating the Unfair Insurance Practice Act, 40 P.S. § 1171.1 et seq.;

(m)      acting in dilatory and obdurate manner in handling and evaluating the claims arising out of the October 8, 2012 motor vehicle accident;

(n)      wantonly and willfully disregarding the rights of Shameka Renee Lamar;

(o)      elevating its own interests above those of Shameka Renee Lamar;

(p)      recklessly disregarding the rights of Shameka Renee Lamar by misinterpreting and misconstruing the policy so as to deny and disclaim coverage;

(q)      violating the Unfair Claims Settlement Practices, 31 Pa. Code § 146.1 et seq.;

(r)      violating the statutes and regulations governing the actions and practices of insurers in Pennsylvania;

(s)      violating its own internal policies, procedures, practices and guidelines for the handling and evaluation of coverage issues; and,

(t)      such other acts or omissions as may be developed during discovery.

10

**16a**

49.     The defendant, Omni, is liable for payment of all actual and consequential damages to the plaintiff, Richard Duncan, by reason of the wanton, willful and reckless bad faith conduct in refusing to defend and indemnify Shameka Renee Lamar and failing further to satisfy the Judgment entered in the underlying tort action.

50.     The defendant, Omni, wantonly, willfully and recklessly ignored the rights of Shameka Renee Lamar under the policy of insurance and under Pennsylvania law.

51.     The defendant, Omni, recklessly disregarded the rights of Shameka Renee Lamar with knowledge of its wanton, willful and reckless actions.

52.     The defendant, Omni, is liable to Richard Duncan for all direct and consequential damages as a result of the bad faith actions of the defendant, Omni, including, but not limited to:

    (a)     counsel fees, interest and costs incurred in the underlying tort action;

    (b)     counsel fees, interest and costs incurred in the instant bad faith litigation;

    (c)     punitive damages;

    (d)     such other relief as the Court deems appropriate.

11

WHEREFORE, the plaintiff, Richard Duncan, demands judgment against the defendant,

Omni Insurance Company, in an amount in excess of $50,000.00.

KELLY & HERRON, P.C.


BY:   /s/ Kevin P. Kelly
KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102
(215) 972-1500
FAX – 215-972-8217

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:  /s/ James C. Haggerty
JAMES C. HAGGERTY, Esquire
PA Attorney I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6600
FAX (215) 665-8197

Attorneys for Plaintiff

12

**18a**

<u>VERIFICATION</u>

___RICHARD DUNCAN_____    hereby states that _he___ is

Plaintiff and verifies that the statements made in the foregoing

__Civil-Action Complaint_____    are true and

correct to the best of __his___ knowledge, information and belief.

The undersigned understands that the statements therein are made

subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn

falsification to authorities.


*Richard Duncan*


Dated: _March 4, 2016_____

**19a**

EXHIBIT A

LAW OFFICES

# KELLY & HERRON, P.C.

KEVIN P. KELLY
kkelly@kellyherronlaw.com

PAUL L. HERRON
pherron@kellyherronlaw.com

1500 MARKET STREET
CENTRE SQUARE -WEST TOWER
SUITE W-3110
PHILADELPHIA, PENNSYLVANIA 19102-2100
(215) 972-1500
FAX (215) 972-8217

SUBURBAN OFFICE
845 KING OF PRUSSIA ROAD
RADNOR, PA 19087

July 1, 2014

Jill Schrader
Omni Insurance Company
PO Box 105019
Atlanta, GA 30348-5019

RE:  Our Client:        Richard A. Duncan, Jr.
     Your Insured:      Shameka Lamar
     Your Claim No.:    2012 84855
     Date of Accident:  10/8/2012

Dear Ms. Schrader:

As you are aware, this office represents Richard Duncan, Jr., in a claim for injuries and other damages he sustained in the motor vehicle accident of October 8, 2012.  My client was a passenger aboard the SEPTA Route "47" bus involved in the collision with the vehicle owned by your insured and operated by Chris Aaron at or near the intersection of 8th and Dickinson Streets in Philadelphia, PA.

Our investigation reveals liability clearly rests on your insured; the SEPTA bus was at a complete stop when your insured's driver struck the bus in the rear.  His careless and negligent acts and/or omissions resulted in the aforesaid collision and caused my client to sustain serious and disabling injuries.

Mr. Duncan sustained injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia.

In an effort to cure the aforesaid injuries, my clients sought medical treatment from the following providers and incurred medical expenses as itemized:

1.  JEFFERSON UNIVERSITY HOSPITAL
    10/08/12                    $ will supply
    11/26/12                    $ 1,852.00

# KELLY & HERRON, P.C.

Omni
Page Two
July 1, 2014

|  |  |  |
|---|---|---|
| 2. | ART OF PAIN MANAGEMENT<br>10/10/12 – 2/27/13 | $16,345.00 |
| 3. | DELAWARE CO. OPEN MRI<br>12/04/12 | $ 1,100.00 |
| 4. | CITY OF PHILA EMS<br>10/08/12 | $   970.00 |

TOTAL MEDICAL SPECIALS:    $ 20,267.00

Mr. Duncan continues to suffer pain and restriction of movement in his back. He has incurred medical expenses as itemized above. He has incurred out of pocket expenses including excess medical bills in the amount of **$20,267.00**; as he was a passenger on a stationary SEPTA bus, he is not entitled to PIP benefits, and he does not personally own a vehicle, nor does he reside with a relative who owns a vehicle; I enclose a copy of his properly executed Affidavit of No Insurance. Accordingly, all of his medical bills remain unpaid. He has been deprived of life's pleasures. He has in the past and will continue in the future to suffer pain and inconvenience as a result of the negligence of your insured's driver.

In view of the manner in which this accident happened, the medical expenses/economic damages suffered by my client, and the continuing residual affects he is experiencing, my demand for settlement purposes is Fifty Two Thousand Five Hundred ($52,500.00) Dollars.

Kindly contact the undersigned upon completion of your settlement evaluation with a view toward an amicable resolution of this claim.

# KELLY & HERRON, P.C.

Omni
Page Three
July 1, 2014


Thank you for your attention to this matter.




                              Very truly yours,


                              KEVIN P. KELLY, Esquire

KPK/lml
enclosures

EXHIBIT B



OMNI INSURANCE COMPANY
P.O. BOX 3000
PLYMOUTH MEETING, PA 19462
PHONE: 800-954-2442 / FAX: 610-832-2138

KEVIN P. KELLY
KELLY & HERRON
1700 MARKET ST., STE. 3112
PHILADELPHIA, PA 19103

July 08, 2014

Re:
Insured: Shameka Lamar
Driver: Chris Porter, aka Chris Aaron
Our Claim Number: 2012-84855
Loss Date: 10/08/2012
Your Client: Richard Duncan, Jr.

Dear Mr. Kelly:

Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

If you wish to discuss this matter, I can be reached Monday-Friday, 8:00 am –4:00 pm, at 800-954-2442, ext. 8765.

Sincerely,

Andrew Funk
Bodily Injury Supervisor

25a

EXHIBIT C

KELLY & HERRON, P.C.
BY: KEVIN P. KELLY, ESQUIRE
ATTORNEY I.D. NO: 28306
1500 Market Street, Suite W3110
Philadelphia, PA 19102
(215) 972-1500

Attorney for Plaintiffs

RICHARD DUNCAN

vs.

CHRIS AARON
and
SHAMEKA RENEE LAMAR

: PHILADELPHIA COUNTY
: COURT OF COMMON PLEAS
:
: SEPTEMBER TERM, 2014
:
: NO. 0479
:

## COMPLAINT IN CIVIL ACTION
### 2V — MOTOR VEHICLE ACCIDENT

#### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiffs. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP

#### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plaza al partir de la fecha de la demanda y la notificacion. Hace falta aceptar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENT. SI NO TIENE ABOGADO O SINO TIENE ELDINERO SUFICIENTE DE PAGAR TAL SERVICO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

7.22.15 @ 6:26 pm
7.23.15 @ 5:45 pm
7.24.15 @ 10:20 Am
7.24.15 @ 3:25 pm    267 973 7146
7.28.15 @ 7:55 pm
7.29.15 @ 6:40 pm

## COMPLAINT IN CIVIL ACTION

1.    Plaintiff, Richard Duncan, is an adult individual residing at 319 Whites Road, Apartment D4, Lansdale, PA, 19446.

2.    Defendant, Chris Aaron, is an adult individual residing at 428 Mifflin Street, Philadelphia, PA, 19148.

3.    Defendant, Shameka Renee Lamar, is an adult individual residing at 2845 W. Silver Street, Philadelphia, PA 19132.

4.    On or about October 8, 2012, and at all times relevant herein, defendant, Chris Aaron, with permissive use, possessed, controlled and operated a vehicle believed to be a 2003 Chevrolet Avalanche, PA registration ZCV-5288, which vehicle was owned by defendant, Shameka Renee Lamar, and involved in the accident hereinafter described.

5.    On or about October 8, 2012, and at all times relevant herein, plaintiff was a passenger aboard the SEPTA Route "47" bus which was at a complete stop at a posted stop sign southbound on 8th Street at its intersection with Dickenson Street in the City of Philadelphia, PA when it was suddenly and unexpectedly struck in the rear by the vehicle owned by defendant, Shameka Renee Lamar, and operated by defendant, Chris Aaron, which was then and there traveling in a southbound direction on 8th Street in a careless and negligent manner.

COUNT ONE
RICHARD DUNCAN v. CHRIS AARON
NEGLIGENCE

6.   Plaintiff incorporates by reference paragraphs one through five of this Complaint as though same were fully set forth at length.

7.   The automobile collision described in the preceding paragraphs of this Complaint was caused by the carelessness and negligence of the Defendant, Chris Aaron, both generally and in the following particular respects:

(a)   Failing to observe the stopped SEPTA bus;

(b)   Failing to maintain a proper lookout;

(c)   Failing to maintain adequate control of the operation of said motor vehicle;

(d)   Operating said motor vehicle at a speed which was excessive under the circumstances;

(e)   Failing to stop said motor vehicle within the assured clear distance ahead;

(f)   Operating said motor vehicle without due regard for the point and position of the opposing motor vehicle; and

(g)   Failing to operate said motor vehicle with due care and regard for the health and safety of Plaintiff.

8.   As a result of the Defendant's negligence and the accident caused thereby, Plaintiff sustained severe bodily injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia; multiple bruises, lacerations and abrasions, together

with a severe shock to his nervous system, some or all of which may be permanent in nature and, as a result, the Plaintiff has suffered and continues to suffer pain and inconvenience as a result of these injuries.

9. As a further result of the foregoing, the Plaintiff has been obliged to receive and under medical attention and care and to incur various expenses for same and he may be obliged to continue to undergo such medical care and to incur such expenses for an indefinite time in the future.

10. As a further result of the foregoing, the Plaintiff has suffered, and will continue to suffer, a severe loss of his earnings and/or impairment of earning capacity or power, which loss and/or impairment has or may exceed the sum recoverable under the limitations in the Pennsylvania Financial Responsibility Law.

11. As a further result of the foregoing, the Plaintiff has suffered in the past, and will continue to suffer in the future, excruciating and agonizing pains, aches, mental anguish, humiliation, disfigurement and limitation and restriction of his usual duties, pursuits and pleasures.

WHEREFORE, Plaintiff demands judgment against the Defendants, individually, jointly and severally, in an amount not in excess of Fifty Thousand ($50,000.00) Dollars.

### COUNT TWO
### RICHARD DUNCAN v. SHAMEKA RENEE LAMAR
### NEGLIGENT ENTRUSTMENT

12. Plaintiff incorporates by reference paragraphs one through eleven of this Complaint as though same were fully set

forth at length.

13.   The aforesaid collision, which caused plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shameka Renee Lamar, which consisted of the following:

    a)    failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;

    b)    failing to maintain the vehicle in proper working order;

    c)    negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

14.   The defendant owner, Shameka Renee Lamar, is liable to the plaintiff for the damages suffered as more fully set forth hereinbefore by virtue of the failure to investigate the qualifications and capabilities of the defendant driver to operate the motor vehicle which the defendant driver was operating at the time of the incident.

15.   The defendant owner, Shameka Renee Lamar, is further liable to the plaintiff in that she provided permissive use of her vehicle to the defendant, Chris Aaron, when she knew, or should have known, that defendant Aaron did not possess a valid operator's license on the date of the accident herein.

16.   Defendant, Shameka Renee Lamar, knew, or should have known, that her automobile insurance policy contained an exclusion stating the policy did not afford liability coverage in the event

the driver of her vehicle did not possess a valid operators license when involved in an motor vehicle accident.

17. As a result of the Defendant's negligence and the accident caused thereby, Plaintiff sustained severe bodily injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia; multiple bruises, lacerations and abrasions, together with a severe shock to his nervous system, some or all of which may be permanent in nature and, as a result, the Plaintiff has suffered and continues to suffer pain and inconvenience as a result of these injuries.

18. As a further result of the foregoing, the Plaintiff has been obliged to receive and under medical attention and care and to incur various expenses for same and he may be obliged to continue to undergo such medical care and to incur such expenses for an indefinite time in the future.

19. As a further result of the foregoing, the Plaintiff has suffered, and will continue to suffer, a severe loss of his earnings and/or impairment of earning capacity or power, which loss and/or impairment has or may exceed the sum recoverable under the limitations in the Pennsylvania Financial Responsibility Law.

20. As a further result of the foregoing, the Plaintiff has suffered in the past, and will continue to suffer in the future, excruciating and agonizing pains, aches, mental anguish, humiliation, disfigurement and limitation and restriction of his usual duties, pursuits and pleasures.

WHEREFORE, Plaintiff demands judgment against the Defendants, individually, jointly and severally, in an amount not in excess of Fifty Thousand ($50,000.00) Dollars.

**KELLY & HERRON, P.C.**

By:_____/s/_____
          KEVIN P, KELLY, ESQUIRE
          Attorney for Plaintiff

EXHIBIT D

*First Judicial District of Pennsylvania*
*Philadelphia Court of Common Pleas*

Richard Duncan, Plaintiff
118 Girard Ave., Apt. C
Glenside, PA 19038

September Term, 2014, 00479
(Month)      (Year)   (No.)

**Arbitration**
(Please indicate type of action)

☒ Motor Vehicle

(Date of Accident) 11-8-12

Defendants,          Versus

Chris Aaron      Shamelia Renee Lamar
428 McAllin St.  2545 W. Silver St.
Philadelphia, PA  Philadelphia, PA
     19148              19132

☐ Delay Damages (Prime Rate +1)
Duncan Vs. Aaron Etal-AWFFP

= 6%)

14090047900021

☐ Other _____

## Report and Award of Arbitrators

And Now, this **3** day of **June** Year **2015** we the undersigned arbitra-
tors having been duly appointed and sworn, make the following award:

Judgement for Plaintiff and against
Defendants Chris Aaron and Shamelia Renee Lamar
in the amount of $28,000.00 ($13,000.00 for medicals
and $15,000.00 for pain and suffering).

Please name the parties if there are more than one plaintiff and/or defendant. Please address all
counterclaims and cross-claims. Please complete percentage of negligence on reverse side if applicable.

_____
Chairperson

_____
Arbitrator

_____
Arbitrator

Alton B. Mendoza, 1325 Spruce St. 4th Fl., Phila, PA 710.
Please Print Name, Address and I.D. No.
Ruth Pearson - 3001 S. Sydenham St. Ph. 1, PA 19145-
Please Print Name, Address and I.D. No.
Michael S. Miller Jr. PPA 19102  #310431
Please Print Name, Address and I.D. No.

List Attorneys of Record and Unrepresented Parties Who:
Appeared at the hearing:
Kevin P. Kelly for Plaintiff

Did Not Appear at the Hearing:
Def. Chris Aaron
Def. Shamelia Renee Lamar

30-210 (Rev. 2/09)

Case ID: 14090047

**35a**

# Questions to be Answered by
# the Arbitrators in Negligence Cases

**Instructions:**

Taking the combined negligence that was a substantial factor in bringing about any or all of the plaintiff's injuries, damage or losses as 100%, answer the following questions and state in percentages the causal negligence attributed to each party you have found causally negligent.

Do you find that any defendant or additional defendant was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

_____    _____ %

_____    _____ %

_____    _____ %

_____    _____ %

Do you find that any plaintiff was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

_____    _____ %

_____    _____ %

_____    _____ %

_____    _____ %

Total    100 %

# Notice of Entry of Award

And Now, this _____ day of _____, Year _____, at _____, _____ .m., the above award was entered upon the docket and notice thereof given by mail to the parties or their attorneys.

DOCKETED
ARBITRATION

JUN - 3 2015

S. PRESSLEY

*Prothonotary*

(Arbitration compensation to be
paid on appeal $225.00)

By: _____

Separate Appeals must be filed with the Prothonotary pursuant to P.A. R. Civ. P. No. 1308, and the requisite fees paid, if two or more cases are consolidated for Trial and/or Discovery purposes. Only those cases which are appealed will be scheduled for a *de novo* hearing. Awards in cases not appealed will become final upon expiration of the appeal time.

Case ID: 14090047

36a

EXHIBIT E

KELLY & HERRON, P.C.
BY: KEVIN P. KELLY, ESQUIRE
ATTORNEY I.D. No: 28306
1500 Market Street, Suite W3110
Philadelphia, PA 19102
(215) 972-1500

Attorney for Plaintiff

| RICHARD DUNCAN | : | PHILADELPHIA COUNTY |
|---|---|---|
| | : | COURT OF COMMON PLEAS |
| vs. | : | |
| | : | SEPTEMBER TERM, 2014 |
| CHRIS AARON | : | |
| and | : | NO.  0479 |
| SHAMEKA RENEE LAMAR | : | |

### PRAECIPE TO ENTER JUDGMENT

TO THE PROTHONOTARY:

Kindly enter judgment in favor of the plaintiff, Richard Duncan, and against defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 pursuant to the Arbitration Award dated June 3, 2015 upon payment of your costs only.

Attached hereto, made a part hereof, and marked Exhibit "A" is a copy of the Award of the Board of Arbitrators dated June, 2015.

KELLY & HERRON, P.C.

BY:_____/s/_____
KEVIN P. KELLY, Esquire
Attorneys for Plaintiff

dated:    July 7, 2015

Case ID: 14090047

# EXHIBIT "A"

Case ID: 14090047

*First Judicial District of Pennsylvania*
*Philadelphia Court of Common Pleas*

Richard Duncan, Plaintiff
118 Girard Ave., Apt. C
Glenside, PA 19038

September Term, 2014 .00479
(Month)    (Year)    (No.)

**Arbitration**
(Please indicate type of action)

☒ Motor Vehicle

(Date of Accident) 11-8-12

Defendants,

*Versus*

Chris Aaron
428 Mifflin St.
Philadelphia, PA
19148

Shameka Renee Lamar
2545 W. Silver St.
Philadelphia, PA
19132

☐ Delay Damages (Prime Rate +1)
Duncan Vs Aaron Etal-AWFFP

= 6%)

14090047900021

☐ Other

## Report and Award of Arbitrators

And Now, this 3 day of June    Year 2015 we the undersigned arbitrators having been duly appointed and sworn, make the following award:

Judgement for Plaintiff and against
Defendants Chris Aaron and Shameka Renee Lamar
in the amount of $28,000— ($13,000 for medicals
and $15,000 for pain and suffering).

Please name the parties if there are more than one plaintiff and/or defendant. Please address all counterclaims and cross claims. Please complete percentage of negligence on reverse side if applicable.

_____
Chairperson

Alton B. Rhodes Jr., 1525 Spruce St., 4th Fl., Phila, PA 710:
Please Print Name, Address and I.D. No. #56963

_____
Arbitrator

Ruth Pearson - 3001 S. Sydenham St. PA 19145-
Please Print Name, Address and I.D. No.

_____
Arbitrator

Michael S. Miller Jr. PPA 19102 #310431
30 S. 15th St. 6th FL
Please Print Name, Address and I.D. No.

List Attorneys of Record and Unrepresented Parties Who:

Appeared at the hearing:
Kevin P. Kelly for Plaintiff

Did Not Appear at the Hearing:
Def. Chris Aaron
Def. Shameka Renee Lamar

30-210 (Rev. 2/05)

Case ID: 14090047

**40a**

# Questions to be Answered by
## the Arbitrators in Negligence Cases

**Instructions:**

Taking the combined negligence that was a substantial factor in bringing about any or all of the plaintiff's injuries, damage or losses as 100%, answer the following questions and state in percentages the causal negligence attributed to each party you have found causally negligent.

Do you find that any defendant or additional defendant was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | |
|---|---|
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |

Do you find that any plaintiff was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | |
|---|---|
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |

| | |
|---|---|
| Total | 100 % |

## Notice of Entry of Award

And Now, this _____ day of _____, Year _____, at _____, _____ .m., the above award was entered upon the docket and notice thereof given by mail to the parties or their attorneys.

DOCKETED
ARBITRATION

JUN – 3 2015

S. PRESSLEY

_____  *Prothonotary*

(Arbitration compensation to be
paid on appeal $225.00)

By: _____

Separate Appeals must be filed with the Prothonotary pursuant to PA. R. Civ.P.No.1308, and the requisite fees paid, if two or more cases are consolidated for Trial and/or Discovery purposes. Only those cases which are appealed will be scheduled for a *de novo* hearing. Awards in cases not appealed will become final upon expiration of the appeal time.

Case ID: 1409004 7

*First Judicial District of Pennsylvania*
*Philadelphia Court of Common Pleas*

Richard Duncan, Plaintiff
118 Girard Ave., Apt. C
Glenside, PA 19038

September Term, 2014  00479
(Month)  (Year)  (No.)

**Arbitration**

*(Please indicate type of action)*

☒ Motor Vehicle

(Date of Accident) 11-8-12

Defendants,  Versus

Chris Aaron          Shameka Renee Lamar
928 Mifflin St.      2545 W. Silver St.
Philadelphia, PA     Philadelphia, PA
19148                19132

☐ Delay Damages (Prime Rate +1)
Duncan Vs Aaron Etal-AWFFP

= 6%)

1409004790002 1

☐ Other

## Report and Award of Arbitrators

And Now, this 3 day of June , Year 2015 we the undersigned arbitrators having been duly appointed and sworn, make the following award:

Judgment for Plaintiff and against
Defendants Chris Aaron and Shameka Renee Lamar
in the amount of $28,000.00 ($13,000.00 for medicals
and $15,000.00 for pain and suffering).

Please name the parties if there are more than one plaintiff and/or defendant. Please address all counterclaims and cross claims. Please complete percentage of negligence on reverse side if applicable.

_____
Chairperson

Alton B. Meadows Jr., 1525 Spruce St., 9th Fl., Phila, PA 710:
Please Print Name, Address and I.D. No.  #56963

_____
Arbitrator

Ruth Pearson - 3001 S. Sydenham St. Phila, PA 19145-
Please Print Name, Address and I.D. No.
30 S. 15th St. 6th FL

_____
Arbitrator

Michael S. Miller Jr. PPA 19102  #310431
Please Print Name, Address and I.D. No.

List Attorneys of Record and Unrepresented Parties Who:

Appeared at the hearing:

Kevin P. Kelly for Plaintiff

Did Not Appear at the Hearing:

Def. Chris Aaron

Def. Shameka Renee Lamar

30-210 (Rev. 2/09)

NOTICE GIVEN PURSUANT TO Pa.R.C.P. 1307. S. PRESSLEY 06/04/2015

EXHIBIT F

RICHARD DUNCAN        :     COURT OF COMMON PLEAS
                              :     PHILADELPHIA COUNTY
    VS.                      :
                              :     SEPTEMBER TERM, 2014
CHRIS AARON             :
    AND                  :     NO.: 0479
SHAMEKA RENEE LAMAR     :

## ASSIGNMENT

**WHEREAS**, the Plaintiff, Richard Duncan, sustained personal injuries in an October 8, 2012 motor vehicle accident,

**WHEREAS**, the motor vehicle occupied by Plaintiff, Richard Duncan was rear-ended by a vehicle operated by Defendant, Chris Aaron and owned by Defendant, Shameka Renee Lamar,

**WHEREAS**, the motor vehicle Chris Aaron was operating at the time of the accident was insured by Omni Insurance Company,

**WHEREAS**, Defendant, Shameka Renee Lamar was the named insured under a personal automobile policy issued by Omni Insurance Company,

**WHEREAS**, Plaintiff, Richard Duncan instituted suit against Defendants, Chris Aaron and Shameka Renee Lamar in connection with the injuries sustained in the October 8, 2012 motor vehicle accident,

**WHEREAS**, the tender of defense and indemnity of the lawsuit was made to Omni Insurance Company,

**WHEREAS**, Omni Insurance Company disclaimed coverage to Defendants, Chris Aaron and Shameka Renee Lamar for any claims arising out of the October 8, 2012 motor vehicle accident,

WHEREAS, Omni Insurance Company refused to provide a defense or indemnity to Defendants, Chris Aaron and Shameka Renee Lamar in the present action instituted by Plaintiff, Richard Duncan,

WHEREAS, on or about March 23, 2015 a default judgment was entered against Defendants, Chris Aaron and Shameka Renee Lamar,

WHEREAS, on June 3, 2015 an Arbitration Hearing for an Assessment of Damages was held awarding damages against Defendants, Chris Aaron and Shameka Renee Lamar in the amount of Twenty Eight Thousand ($28,000.00) Dollars,

WHEREAS, on or about July 7, 2015, judgment was entered against Defendants, Chris Aaron and Shameka Renee Lamar in the amount of $28,000.00,

WHEREAS, Defendant, Shameka Renee Lamar desires to assign her rights against Omni Insurance Company to Plaintiff, Richard Duncan in connection with the judgment entered against her in this action for good and valuable consideration as set forth more fully below, and,

WHEREAS, Plaintiff, Richard Duncan agrees to satisfy any judgment entered against Defendants, Shameka Renee Lamar and Chris Aaron after the conclusion of all claims against Omni Insurance Company.

NOW THEREFORE, it is hereby stipulated and agreed by and between the Plaintiff, Richard Duncan and Defendant, Shameka Renee Lamar as follows:

1. **Assignment**. The Defendant, Shameka Renee Lamar

for good and valuable consideration, as set forth more fully

below, hereby assigns to the Plaintiff, Richard Duncan any and

all rights, interest, claims and/or potential causes of action

including, but not limited to, all contractual and extra-

contractual claims, actions for common law and statutory bad

faith under 42 Pa.C.S.A. §8371, a beach of fiduciary duty, breach

of duty of good faith and fair dealings, punitive damages, unfair

trade practice and consumer protection law, 73 P.S.§201-1 et

seq., negligence, breach of contract, misrepresentation, and any

other claims or causes of action of any nature whatsoever, in law

or in equity, which she now has and/or may have against Omni

Insurance Company, its parent company(ies) affiliates,

associates, subsidiaries, agents, adjusters, employees and

attorneys with respect to the disclaimer of coverage to me in the

above captioned matter and any award, verdict or judgment entered

against me in this lawsuit which has resulted or may hereafter

result in personal liability by me to satisfy the award, verdict

or judgment on the claims of the Plaintiff, Richard Duncan which

could have been resolved by Omni Insurance Company if timely and

appropriately responded to the demands of the Plaintiff, Richard

Duncan, to resolve the matter within the available limits of

liability coverage in connection with the claims for damages

arising from the injuries sustained in the October 8, 2012 motor

vehicle accident.

  2. **Consideration**. In consideration of this assignment,

the Plaintiff, Richard Duncan agrees and covenants not to initiate any collection or execution proceedings against the Defendants, Shameka Renee Lamar and Chris Aaron, as a consequence of the award and judgment entered against the Defendants.

3.   **Satisfaction of Judgment**.  In further consideration of this assignment, the Plaintiff, Richard Duncan, agrees to mark satisfied any judgment entered against the Defendants, Shameka Renee Lamar and Chris Aaron, after the conclusion of all proceedings against Omni Insurance Company, regardless of the ultimate outcome.  Any judgment shall remain in full force and effect until all proceedings against Omni Insurance Company have been resolved by final judgment or settlement.

4.   **Full Agreement**.  The terms and conditions contained in this Assignment supersede all prior oral and written understandings between the Plaintiff, Richard Duncan and the Defendant, Shameka Renee Lamar and constitutes the entire agreement among the parties relating to the payment pursuant to the agreements set forth in this Assignment as noted more fully herein.  This Assignment shall not be modified or amended except by a writing signed by all parties.  Further, this Assignment

shall be binding upon the executors, administrators, personal
representatives, heirs, successors and assigns of each.

IN THE PRESENCE OF:

Name *June Link*

Address *1500 Market St. Phila Pa*

SHAMEKA RENEE LAMAR

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JUNE LINK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 4, 2019

IN THE PRESENCE OF:

Name *June Link*

Address *1500 Market St. Phila, PA*

RICHARD DUNCAN (SEAL)

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JUNE LINK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 4, 2019

RPFDesktop\:DDGA/WORLDOX7R:/CLIENTS/3575/0001/127037.WPD

48a

**MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN**
BY:   R. BRUCE MORRISON, ESQUIRE
        Identification No. 34797
2000 Market Street, Suite 2300
Philadelphia, PA  19103
215-575-2600

**Attorneys for Defendant**



| | | |
|---|---|---|
| RICHARD DUNCAN | : | COURT OF COMMON PLEAS |
| Plaintiff, | : | PHILADELPHIA COUNTY |
| | : | |
| v. | : | MARCH TERM, 2016 |
| | : | NO. 000267 |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| Defendant. | : | |

**NOTICE TO THE PROTHONOTARY OF PHILADELPHIA COUNTY, PENNSYLVANIA**

TO:   THE PROTHONOTARY OF THE COURT OF
        COMMON PLEAS OF PHILADELPHIACOUNTY

Pursuant to 28 U.S.C. § 1446(a), Defendant, Omni Insurance Company, files herewith a copy of the Notice of Removal filed in the United States District Court for the Eastern District of Pennsylvania on this date.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: _____
        R. BRUCE MORRISON, ESQUIRE
        *Attorneys for Defendant*

Dated: _April 14, 2016_

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| Defendant. | : | |

## CERTIFICATE OF FILING

I, R. Bruce Morrison, Esquire, hereby certify that I am filing a true and correct certified copy of the Defendant's Notice of Removal, together with copies of the documents attached hereto, with the Prothonotary of Philadelphia County, Pennsylvania via Electronic Court Filing, on the below date.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: _____
R. BRUCE MORRISON, ESQUIRE
*Attorney for Defendant*

Dated: April 4, 2016

Case 2:16-cv-01489-HB   Document 1   Filed 04/01/16   Page 1 of 56

JS-44 (Rev 11/04)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

| I. (a) PLAINTIFFS | DEFENDANTS |
|---|---|
| RICHARD DUNCAN | OMNI INSURANCE COMPANY |

| (b) County of Residence of First Listed Plaintiff | MONTGOMERY, PENNSYLVANIA | County of Residence of First Listed Defendant | COBB, GEORGIA |
|---|---|---|---|
| (EXCEPT IN U.S. PLAINTIFF CASES) | | (IN U.S. PLAINTIFF CASES ONLY) | |
| | | NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED. | |

(c) Attorneys (Firm Name, Address, and Telephone Number)

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street, Centre Square – West Tower, Suite W-3110
Philadelphia, PA 19102
(215) 972-1500

James C. Haggerty, Esquire
HAGGERTY GOLDBERG SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street, Suite 2700, Philadelphia, PA 19103
(267) 350-6600

Attorneys (If Known)

R. Bruce Morrison, Esquire
MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN
2000 Market Street, Suite 2300, Philadelphia, PA 19103
(215) 575-2600

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

- ☐ 1. U.S. Government Plaintiff
- ☐ 2. U.S. Government Defendant
- ☐ 3. Federal Question (U.S. Government Not a Party)
- ☒ 4. Diversity (Indicates Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (For Diversity Cases Only)
(Place an "X" in One Box for Plaintiff and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☒ 1 | ☐ 1 | Incorporated or Principal Place of Business in This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☒ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury – Med Malpractice | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal 28 USC 157 | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product Liability | ☐ 365 Personal Injury – Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881 | | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | ☐ 320 Assault, Libel & Slander | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 330 Federal Employers' Liability | | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 340 Marine | **PERSONAL PROPERTY** | ☐ 650 Airline Regs | ☐ 830 Patent | ☐ 470 Racketeer Influenced and Corrupt Organizations |
| ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans) | ☐ 345 Marine Product Liability | ☐ 370 Other Fraud | ☐ 660 Occupational Safety/Health | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| | ☐ 350 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 690 Other | | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 355 Motor Vehicle Product Liability | ☐ 380 Other Personal Property Damage | **LABOR** | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 160 Stockholder's Suits | ☐ 360 Other Personal Injury | ☐ 385 Property Damage Product Liability | ☐ 710 Fair Labor Standards Act | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ Exchange |
| ☐ 190 Other Contract | | | ☐ 720 Labor/Mgmt. Relations | ☐ 862 Black Lung (923) | ☐ 875 Customer Challenge 12 USC 3410 |
| ☐ 195 Contract Product Liability | | | ☐ 730 Labor/Mgmt. Reporting & Disclosure Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | | | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 790 Other Labor Litigation | ☐ 865 RSI (405(g)) | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate Sentence | ☐ 791 Empl. Ret. Inc. Security Act | **FEDERAL TAX SUITS** | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent, Lease & Ejectment | ☐ 443 Housing/ Accommodations | ☐ 530 General | | ☐ 871 IRS – Third Party 26 USC 7609 | ☐ 895 Freedom of Information Act |
| ☐ 240 Torts to Land | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination Under Equal Access to Justice |
| ☐ 245 Tort Product Liability | ☐ 445 Amer. w/Disabilities – Employment | ☐ 540 Mandamus & Other | | | ☐ 950 Constitutionality of State Statutes |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities – Other | ☐ 550 Civil Rights | | | |
| | ☐ 440 Other Civil Rights | ☐ 555 Prison Condition | | | |

## V. ORIGIN (Place an "X" in One Box Only)

- ☐ 1 Original Proceeding
- ☒ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another District (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. 1332; 28 U.S.C. 1441 and 1446

Brief description of cause:
Bad faith

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND: ☐ Yes ☒ No

**51a**

| VIII. RELATED CASE(S) IF ANY | (See instructions) | JUDGE | | DOCKET NUMBER |
|---|---|---|---|---|

| DATE | | SIGNATURE OF ATTORNEY OF RECORD | | |
|---|---|---|---|---|
| April 1, 2016 | | | | |

FOR OFFICE USE ONLY

| RECEIPT # | AMOUNT | APPLYING IFP | JUDGE | MAG. JUDGE |
|---|---|---|---|---|

**52a**

# UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA – DESIGNATION FORM to be used by counsel to indicate the category of the case for the purpose of assignment to appropriate calendar.

Address of Plaintiff     1300 Pennsylvania Avenue, Apartment H-3, Oreland, PA 19075

Address of Defendant     2018 Powers Ferry Road, Suite 400, Atlanta, GA 30339

Place of Accident, Incident or Transaction     Philadelphia, Pennsylvania

*(Use Reverse Side for Additional Space)*

Does this civil action involve a nongovernmental corporate party with any parent corporation and any publicly held corporation owning 10% or more if its stock?

(Attach two copies of the Disclosure Statement Form in accordance with Fed.R.Civ.P. 8.1(a))     Yes ☒   No ☐

Does this case involve multidistrict litigation possibilities?     Yes ☐   No ☒

*RELATED CASE, IF ANY:*

Case Number: _____     Judge _____     Date Terminated _____

Civil cases are deemed related when yes is answered to any of the following questions:

1. Is this case related to property included in an earlier numbered suit pending or within one year previously terminated action in this court?

   Yes ☐   No ☒

2. Does this case involve the same issue of fact or grow out of the same transaction as a prior suit pending or within one year previously terminated action in this court?

   Yes ☐   No ☒

3. Does this case involve the validity or infringement of a patent already in suit or any earlier number case pending or within one year previously terminated action in this court?

   Yes ☐   No ☒

CIVIL: (Place √ in ONE CATEGORY ONLY)

A. *Federal Question Cases:*

1. ☐ Indemnity Contract, Marine Contract, and All Other Contracts
2. ☐ FELA
3. ☐ Jones Act-Personal Injury
4. ☐ Antitrust
5. ☐ Patent
6. ☐ Labor-Management Relations
7. ☐ Civil Rights
8. ☐ Habeas Corpus
9. ☐ Securities Act(s) Cases
10. ☐ Social Security Review Cases
11. ☐ All other Federal Question Cases
    (Please specify)

B. *Diversity Jurisdiction Cases*

1. ☒ Insurance Contract and Other Contracts
2. ☐ Airplane Personal Injury
3. ☐ Assault, Defamation
4. ☐ Marine Personal Injury
5. ☐ Motor Vehicle Personal Injury
6. ☐ Other Personal Injury (Please specify)
7. ☐ Products Liability
8. ☐ Products Liability – Asbestos
9. ☐ All other Diversity Cases
   (Please specify)

## ARBITRATION CERTIFICATION

*(Check appropriate Category)*

I, _____ counsel of record do hereby certify:

☐ Pursuant to Local Civil Rule 53.2, Section 3(c)(2), that to the best of my knowledge and belief, the damages recoverable in this civil action case exceed the sum of $150,000.00 exclusive of interest and costs;

☐ Relief other than monetary damages is sought.

DATE _____     _____     _____

Attorney-at-Law          Attorney I.D. #

NOTE:  A trial de novo will be a trial by jury only if there has been compliance with F.R.C.P. 38.

I certify that, to my knowledge, the within case is not related to any case now pending or within one year previously terminated action in this court except as noted above.

DATE   April 1, 2016          _____          34797

Attorney-at-Law          Attorney I.D. #

Case 2:16-cv-01480-HB   Document 1   Filed 04/01/16   Page 4 of 56

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

### CASE MANAGEMENT TRACK DESIGNATION FORM

| | | |
|---|---|---|
| Richard Duncan | : | **CIVIL ACTION** |
| | : | |
| v. | : | |
| | : | |
| Omni Insurance Company | : | **NO.** |

In accordance with the Civil Justice Expense and Delay Reduction Plan of this court, counsel for plaintiff shall complete a Case Management Track Designation Form in all civil cases at the time of filing the complaint and serve a copy on all defendants. (See § 1:03 of the plan set forth on the reverse side of this form.)  In the event that a defendant does not agree with the plaintiff regarding said designation, that defendant shall, with its first appearance, submit to the clerk of court and serve on the plaintiff and all other parties, a case management track designation form specifying the track to which that defendant believes the case should be assigned.

## SELECT ONE OF THE FOLLOWING CASE MANAGEMENT TRACKS:

(a)  Habeas Corpus-Cases brought under 28 U.S.C. §2241through §2255.                   ( )

(b)  Social Security-Cases requesting review of a decision of the Secretary of Health
and Human Services denying plaintiff Social Security Benefits.                        ( )

(c)  Arbitration-Cases require to be designated for arbitration under Local Civil Rule 53.2.  ( )

(d)  Asbestos-Cases involving claims for personal injury or property damage from
exposure to asbestos.                                                                ( )

(e)  Special Management-Cases that do not fall into tracks (a) through (d) that are
commonly referred to as complex and that need special or intense management by
the court.  (See reverse side of this form for a detailed explanation of special
management cases.)                                                                   ( )

(f)  Standard Management--Cases that do not fall into any one of the other tracks.       (x)


| April 1, 2016 | R. Bruce Morrison, Esquire | DEFENDANT |
|---|---|---|
| Date | | Attorney for |


| 215-575-2600 | 215-575-0856 | rbmorrison@mdwcg.com |
|---|---|---|
| Telephone | FAX Number | E-Mail Address |


(Civ. 660)  10/02

Case 2:16-cv-01489-HB    Document 2    Filed 04/01/16    Page 1 of 2



## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| RICHARD DUNCAN | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO.  **16    1489** |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| | : | |
| Defendant. | : | |

### DISCLOSURE STATEMENT FORM

| Please check one box: | | | |
|---|---|---|---|
| ☐ | The nongovernmental corporate parties, | | , in the |
| | above listed civil action do not have any parent corporation and publicly held corporation that owns 10% or more of its stock. | | |
| ☒ | The nongovernmental corporate party, | Omni Insurance Company | , in the |
| | above listed civil action has the following parent corporation(s) and publicly held corporation(s) that own 10% or more of its stock. | | |
| American Independent Companies Inc. | | | |
| April 1, 2016 | | | |
| Date | | Signature | |
| | Counsel for: | Defendant Omni Insurance Co. | |

1

→ Eric V. Lobethal —
→ RR — 114 A32 832

how to rescue/how to
petan to clem —
sue to D —

— Judical que →

015-5757
224



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN           :

                           :     CIVIL ACTION

       Plaintiff,        :

                           :

        v.              :     NO.  **16**   **1489**

                           :

OMNI INSURANCE COMPANY   :

                           :

       Defendant.      :

## CERTIFICATE OF SERVICE

    I, R. Bruce Morrision, hereby certify that a true and correct copy of the foregoing Disclosure Statement Form was served upon the following parties via U.S. Mail, postage prepaid, on the below date:

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA 19102
*Attorney for Plaintiff*

James C. Haggerty, Esquire
HAGGERTY GOLDBERG
SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street
Suite 2700
Philadelphia, PA 19103
*Attorney for Plaintiff*

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

R. BRUCE MORRISON, ESQUIRE
*Attorney for Defendant*

Dated: April 1, 2016

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                          :

        Plaintiff,          :        CIVIL ACTION
                                       :

        v.                    :        NO.
                                         :

OMNI INSURANCE COMPANY                  :
                                       :

        Defendant.           :

## NOTICE OF REMOVAL

TO:   THE UNITED STATES DISTRICT COURT
       FOR THE EASTERN DISTRICT OF PENNSYLVANIA

      Defendant, Omni Insurance Company ("Omni" and/or "Defendant"), by and through its

attorneys, Marshall, Dennehey, Warner, Coleman & Goggin, hereby files this Notice of Removal

of this case from the Court of Common Pleas of Philadelphia County, Pennsylvania, where it is now

pending, to the United States District Court for the Eastern District of Pennsylvania on the basis of

diversity jurisdiction and, in support thereof, avers as follows:

     1.    Plaintiff, Richard Duncan, commenced this action against Defendant by

Complaint filed on or about March 8, 2016 in the Court of Common Pleas of Philadelphia

County, Pennsylvania, docketed as March Term, 2016, No. 000267.  (A copy of Plaintiff's

Complaint is attached hereto and marked as Exhibit "A").

     2.    The Complaint was served upon Defendant in Atlanta, Georgia by Certified Mail,

Return Receipt Requested, on or about March 11, 2016 (A copy of the Affidavit of Service of

Plaintiff's Complaint upon Defendant is attached hereto and marked as Exhibit "B").

1

3.    The Complaint states that Plaintiff, Richard Duncan, was at all relevant times a resident of the Commonwealth of Pennsylvania residing at 1300 Pennsylvania Avenue, Apartment H-3, Oreland, PA 19075. (Exhibit "A", ¶ 1).

4.    Defendant, Omni Insurance Company, is a corporation organized and existing under the laws of the State of Illinois, with its principal place of business located at 2018 Powers Ferry Road, Suite 400, Atlanta, Georgia 30339.

5.    Plaintiff's Complaint asserts claims for alleged bad faith (excess verdict) and bad faith (common law and statutory pursuant to 42 Pa. C.S.A. § 8371). . (Exhibit "A").

6.    Based upon the allegations of Plaintiff's Complaint, the amount in controversy in this action is in excess of Seventy-Five Thousand Dollars ($75,000.00), exclusive of interest and costs, as Plaintiff has demanded payment of $28,000 (the award of the arbitrators in the underlying tort action) as well as judgment against Defendant for claims of alleged bad faith, including attorneys fees and punitive damages, in an amount in excess of $50,000 in both Count I and Count II of the Complaint. See Exhibit "A".

7.    As such, this Honorable Court has jurisdiction pursuant to the provisions of 28 U.S.C. §1332 based upon the fact that there exists diversity of citizenship between the parties and the amount in controversy exceeds $75,000.00.

8.    The present lawsuit is accordingly removable from the state court to the United States District Court pursuant to 28 U.S.C. §§ 1441 and 1446.

9.    This Notice of Removal has been filed within thirty (30) days after receipt by Defendant of the Complaint in accordance with 28 U.S.C. § 1446(b).

10.    Written notice of the filing of this Notice of Removal has been given to the adverse party in accordance with 28 U.S.C. §1446(d) and as noted in the attached Certificate of Service.

2

11.    Promptly after filing with this Honorable Court and with the assignment of a Civil Action Number, a copy of this Notice of this Removal will be filed with the Court of Common Pleas of Philadelphia County, Pennsylvania in accordance with 28 U.S.C. § 1446(d).

12.    Copies of all process, pleadings and other Orders which have been received by Defendant in this action are filed herewith.

**WHEREFORE,** Defendant, Omni Insurance Company, respectfully requests that it may effect the Removal of this action from the Court of Common Pleas of Philadelphia County, Pennsylvania to the United States District Court for the Eastern District of Pennsylvania.

Respectfully submitted:

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

BY: 

R. BRUCE MORRISON, ESQUIRE
PA Attorney I.D. No. 34797
2000 Market Street, Suite 2300
Philadelphia, PA 19103
215-575-2600/ 215-575-0856 (F)
rbmorrison@mdwcg.com
*Attorney for Defendant*

Dated: April 1, 2016

3

**60a**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| Defendant. | : | |

### CERTIFICATION

I, R. Bruce Morrison, Esquire, hereby certify that the facts set forth in the foregoing

Notice of Removal are true and correct to the best of my knowledge, information and belief.

MARSHALL, DENNEHEY, WARNER,
COLEMAN & GOGGIN

BY: _____
R. BRUCE MORRISON, ESQUIRE
*Attorneys for Defendant*

Dated: _April 1, 2016_

**61a**

## CERTIFICATE OF SERVICE

I, R. Bruce Morrison, Esquire, attorney for Defendant, hereby certify that a true and correct copy of the foregoing Notice of Removal and was served upon the following parties via U.S. Mail, postage prepaid, on the below date:

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA 19102
*Attorney for Plaintiff*

James C. Haggerty, Esquire
HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street, Suite 2700
Philadelphia, PA 19103
*Attorney for Plaintiff*

R. Bruce Morrison

Dated: April 1, 2016

# EXHIBIT "A"

RICHARD DUNCAN
1300 Pennsylvania Avenue
Apartment H-3
Oreland, PA 19075

v.

OMNI INSURANCE COMPANY
2018 Powers Ferry Road, Suite 400
Atlanta, GA 30339

: IN THE COURT OF COMMON PLEAS
: PHILADELPHIA COUNTY, PENNSYLVANIA
:
:
:
:      TERM, 2016
:
: NO.
:
:

## NOTICE TO PLEAD

### NOTICE

You have been sued in court.   If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you.   You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff.   You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE.  IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

PHILADELPHIA BAR ASSOCIATION
LAWYER REFERRAL AND INFORMATION
SERVICE
One Reading Center
Philadelphia, Pennsylvania 19107
Telephone: 215-238-1701

### AVISO

Le han demando a usted en la corte.  Si usted quiere defenderse de estas demandas expuestas en las páginas siguientes, usted tiene veinte (20) días de plazo al partir de la fecha de la demanda y la notificación. Hace falta asentar una compresencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona.  Sea avisado que si usted no se defiende, la corte tomará medidas y puede continuar la demanda en corte suya sin previo aviso o notificación. Además, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda.  Usted puede perder diner o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE.  SI NO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELÉFONO A LA OFICINA CUYA DIRECCIÓN SE ENCUENTRA ESCRITO ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

ASOCIACIÓN DE LA LICENCIADOS DE
FILADELFIA
SERVICIO DE REFERENCIA E INFORMACIÓN
LEGAL
One Reading Center
Filadelfia, Pennsylvania 19107
Teléfono: 215-238-1701

Case ID: 160300267

**64a**

RICHARD DUNCAN                                 : IN THE COURT OF COMMON PLEAS
1300 Pennsylvania Avenue                       : PHILADELPHIA COUNTY, PENNSYLVANIA
Apartment H-3                                  :
Oreland, PA 19075                              :
                                               :
            v.                                 :        TERM, 2016
                                               :
OMNI INSURANCE COMPANY                         : NO.
2018 Powers Ferry Road, Suite 400              :
Atlanta, GA 30339                              :

### CIVIL ACTION -- COMPLAINT

1.    The plaintiff, Richard Duncan, is an adult individual resident and citizen of the

Commonwealth of Pennsylvania residing at 1300 Pennsylvania Avenue, Apartment H-3,

Oreland, Pennsylvania 19075

2.    The defendant, Omni Insurance Company ("Omni"), is a corporation organized

and existing under the laws of the State of Georgia with its principal place of business located in

Atlanta, Georgia, being duly authorized to and conducting business in the Commonwealth of

Pennsylvania.

3.    The defendant, Omni, regularly and routinely conducted business in the City and

County of Philadelphia.

4.    On October 8, 2012 the plaintiff, Richard Duncan, was a passenger on board the

SEPTA Route "47" bus when it was violently struck by a motor vehicle owned by Shameka

Renee Lamar and operated by Chris Aaron at or near the intersection of 8th and Dickenson

Streets in Philadelphia, Pennsylvania.

5.    The plaintiff, Richard Duncan, sustained personal injury in the collision.

6.    At the time of the accident there existed, in full force and effect, a policy of

insurance issued by the defendant, Omni, to Shameka Renee Lamar providing coverage in

1

Case ID: 160300267

65a

accordance with the requirements of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

7.      The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar provided coverage for the motor vehicle being operated by Chris Aaron at the time of the October 8, 2012 collision.

8.      Following the motor vehicle accident, the plaintiff, Richard Duncan, made claim upon Chris Aaron, Shameka Renee Lamar and the defendant, Omni, seeking recovery of damages in tort.

9.      By letter dated July 1, 2014 counsel for the plaintiff, Richard Duncan, wrote to the defendant, Omni, providing all information regarding liability and damages with respect to the claims arising from the October 8, 2012 collision. A true and correct copy of the July 1, 2014 letter from counsel for the plaintiff, Richard Duncan, is attached hereto and marked Exhibit "A".

10.     By letter dated July 8, 2014 the defendant, Omni, wrote to counsel for the plaintiff, Richard Duncan, denying and disclaiming all coverage for the loss on the basis that the vehicle owned by Shameka Renee Lamar and insured by the defendant, Omni, was being operated by an unlicensed driver at the time of the collision. A true and correct copy of the July 8, 2014 letter from Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, is attached hereto and marked Exhibit "B".

11.     In the letter of July 8, 2014, Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, advised counsel for the plaintiff, Richard Duncan:

> Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

2

Case ID: 160300267

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3.A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

See Exhibit "B".

12.    In denying and disclaiming coverage for the claims arising from the October 8, 2012 collision, the defendant, Omni, knowingly and recklessly ignored § 1574 of the Pennsylvania Motor Vehicle Code. 75 Pa.C.S.A. § 1574.

13.    Section 1574 of the Pennsylvania Motor Vehicle Code provides:

(a)  **General Rule.** – No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this Chapter or who is not licensed for the type or class of vehicle to be driven.

(b)  **Penalty.** – Any person violating the provisions subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S.A. § 1574.

14.    The plaintiff, Richard Duncan, thereafter instituted suit against Chris Aaron and Shameka Renee Lamar in the Court of Common Pleas of Philadelphia County (Richard Duncan v. Chris Aaron and Shameka Renee Lamar, September Term, 2014, No. 0479). A true and correct copy of the Complaint is attached hereto and marked Exhibit "C".

3

Case ID: 160300267

15.    In the Complaint in the underlying tort action, the plaintiff, Richard Duncan, specifically made claim against Shameka Renee Lamar for recovery of damages as a result of allowing an unlicensed driver to operate her vehicle.

16.    In the Complaint, the plaintiff, Richard Duncan, specifically averred:

> 13. The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shamecka Renee Lamar, which consisted of the following:
>
> a)    failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;
>
> b)    failing to maintain the vehicle in proper working order;
>
> c)    negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

See Exhibit "C", ¶ 13.

17.    The defendant, Omni, did not provide a defense to Chris Aaron and/or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County.

18.    The defendant, Omni, did not agree to indemnify Chris Aaron and/or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County.

19.    The plaintiff, Richard Duncan, proceeded to arbitration in the underlying tort action in the Court of Common Pleas of Philadelphia County.

20.    An Arbitration Hearing was conducted in the underlying tort action in the Court of Common Pleas of Philadelphia County on June 3, 2015.

4

Case ID: 160300267

21.    Following the Arbitration Hearing in the underlying tort action, the arbitrators

entered a Report and Award of Arbitrators in favor of the plaintiff, Richard Duncan, and against

Chris Aaron and Shameka Renee Lamar.  A true and correct copy of the Report and Award of

Arbitrators is attached hereto as Exhibit "D".

22.    The Report and Award of Arbitrators entered in the underlying tort action

provides:

> Judgment for Plaintiff and against Defendants, Chris Aaron and Shameka Renee
> Lamar, in the amount of $28,000.00 ($13,000.00 for medicals and $15,000.00 for pain
> and suffering).

See Exhibit "D".

23.    The plaintiff, Richard Duncan, thereafter entered Judgment on the Arbitration

Award against Chris Aaron and Shameka Renee Lamar.  A true and correct copy of the Praecipe

to Enter Judgment is attached hereto and marked Exhibit "E".

24.    The defendant, Omni, has not satisfied the Judgment.

25.    The plaintiff, Richard Duncan, thereafter obtained from Shameka Renee Lamar an

Assignment of all claims and rights against the defendant, Omni.  A true and correct copy of the

Assignment is attached hereto and marked Exhibit "F".

26.    The defendant, Omni, acted in bad faith in refusing to defend and indemnify

Shameka Renee Lamar in the underlying tort action.

27.    The defendant, Omni, is responsible for payment of the entire Judgment entered

in the underlying tort action against Shameka Renee Lamar plus interest and delay damages.

28.    The defendant, Omni, is obligated to make payment of interest, counsel fees, costs

and punitive damages in connection with its wanton, willful and reckless failure to defend and

indemnify Shameka Renee Lamar in the underlying tort action.

5

## COUNT I
### (Bad Faith – Excess Verdict)

29.    The plaintiff, Richard Duncan, hereby incorporates by reference the foregoing Paragraphs 1 through 28 of this Complaint as though same were fully set forth herein.

30.    The defendant, Omni, is obligated to make payment of the $28,000.00 Judgment entered in the underlying tort action, plus interest and delay damages as a result of its wanton, willful and reckless failure to defend and indemnify Shameka Renee Lamar in the underlying tort action.

31.    The defendant, Omni, failed to defend and indemnify Shameka Renee Lamar in the underlying tort action in direct contravention of the policy of insurance and the requirements of the Pennsylvania Motor Vehicle Code.

32.    The defendant, Omni, breached the express and implied terms, provisions, promises and covenants of the policy of insurance by, *inter alia*:

(a)    engaging in unfair or deceptive acts or practices;

(b)    failing to fully, fairly and promptly evaluate the coverage issues;

(c)    failing to provide a defense to Shameka Renee Lamar in the underlying tort action;

(d)    failing to indemnify Shameka Renee Lamar in the underlying tort action;

(e)    failing to make payment of the $28,000.00 Judgment entered in the underlying tort action plus interest and delay damages;

(f)    failing to continue to fully, fairly and promptly evaluate the coverage issues arising out of the October 8, 2012 collision;

(g)    failing to effect a prompt and fair settlement of the claims in the underlying tort action;

(h)    failing to properly and fairly resolve the claims asserted in the underlying tort action;

6

Case ID: 160300267

(i)    failing to comply with the terms and provisions of the policy of insurance;

(j)    ignoring § 1574 of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. § 1574;

(k)    breaching the implied covenant of good faith and fair dealing in the policy of insurance;

(l)    violating the Unfair Insurance Practice Act, 40 P.S. § 1171.1 et seq.;

(m)    acting in dilatory and obdurate manner in handling and evaluating the claims arising out of the October 8, 2012 motor vehicle accident;

(n)    wantonly and willfully disregarding the rights of Shameka Renee Lamar;

(o)    elevating its own interests above those of Shameka Renee Lamar;

(p)    recklessly disregarding the rights of Shameka Renee Lamar by misinterpreting and misconstruing the policy so as to deny and disclaim coverage;

(q)    violating the Unfair Claims Settlement Practices, 31 Pa. Code § 146.1 et seq.;

(r)    violating the statutes and regulations governing the actions and practices of insurers in Pennsylvania;

(s)    violating its own internal policies, procedures, practices and guidelines for the handling and evaluation of coverage issues; and,

(t)    such other acts or omissions as may be developed during discovery.

33.    As a result of the breach of the expressed and implied terms, provisions, promises and covenants of the policy by the defendant, Omni, Shameka Renee Lamar was not provided a defense or indemnity in the underlying tort action.

34.    As a result of the failure of the defendant, Omni, to defend and indemnify Shameka Renee Lamar in the underlying tort action, Judgment was entered against Shameka Renee Lamar by the plaintiff, Richard Duncan.

7

Case ID: 160300267

35.    The plaintiff, Richard Duncan, is entitled to full and complete satisfaction of the Judgment entered in the underlying tort action, plus interest and delay damages from the defendant, Omni.

WHEREFORE, the plaintiff, Richard Duncan, demands judgment against the defendant, Omni Insurance Company, in an amount in excess of $50,000.00.

## COUNT II
### (Bad Faith -- Common Law and Statutory)

36.    The plaintiff, Richard Duncan, hereby incorporates by reference the foregoing Paragraphs 1 through 35 of this Complaint as though same were fully set forth herein.

37.    The policy of insurance issued by Omni to Shameka Renee Lamar required that the defendant, Omni, provide defense and indemnity to Shameka Renee Lamar in the underlying tort action.

38.    The defendant, Omni, failed to comply with the terms and provisions of the policy in denying and disclaiming coverage for the loss.

39.    The defendant, Omni, failed to comply with the specific provisions of the Pennsylvania Motor Vehicle Code in denying and disclaiming coverage for the loss.

40.    The defendant, Omni, acted in bad faith in failing to defend and indemnify Shameka Renee Lamar in the underlying tort action and further failing to satisfy the Judgment entered in that matter.

41.    The policy of insurance issued by the defendant, Omni, includes an implied covenant of good faith and fair dealing.

42.    The defendant, Omni, failed to comply with the implied covenant of good faith and fair dealing.

8

43.    The defendant, Omni, is liable to the plaintiff, Richard Duncan, for all common law bad faith damages.

44.    The defendant, Omni, is liable to the plaintiff, Richard Duncan, for all statutory bad faith damages.

45.    The Pennsylvania Bad Faith Statute, 42 Pa.C.S.A. § 8371, provides:

> In an action arising under an insurer policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

> (1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

> (2)    Award punitive damages against the insurer.

> (3)    Assess court costs and attorneys fees against the insurer.

42 Pa.C.S.A. § 8371.

46.    The claims of Shameka Renee Lamar against the defendant, Omni, for its bad faith conduct have been assigned to the plaintiff, Richard Duncan, and are an action under an insurance policy.

47.    The defendant, Omni, acted in bad faith in violation of all common law duties and in violation of 42 Pa.C.S.A. § 8371 by failing to defend and indemnify Shameka Renee Lamar in the underlying tort action and further failing to satisfy the Judgment entered in that tort action.

48.    The bad faith of the defendant, Omni, consisted of, but was not limited to:

(a)    engaging in unfair or deceptive acts or practices;

(b)    failing to fully, fairly and promptly evaluate the coverage issues;

(c)    failing to provide a defense to Shameka Renee Lamar in the underlying tort action;

9

Case ID: 160300267

(d)  failing to indemnify Shameka Renee Lamar in the underlying tort action;

(e)  failing to make payment of the $28,000.00 Judgment entered in the underlying tort action plus interest and delay damages;

(f)  failing to continue to fully, fairly and promptly evaluate the coverage issues arising out of the October 8, 2012 collision;

(g)  failing to effect a prompt and fair settlement of the claims in the underlying tort action;

(h)  failing to properly and fairly resolve the claims asserted in the underlying tort action;

(i)  failing to comply with the terms and provisions of the policy of insurance;

(j)  ignoring § 1574 of the Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. § 1574;

(k)  breaching the implied covenant of good faith and fair dealing in the policy of insurance;

(l)  violating the Unfair Insurance Practice Act, 40 P.S. § 1171.1 et seq.;

(m)  acting in dilatory and obdurate manner in handling and evaluating the claims arising out of the October 8, 2012 motor vehicle accident;

(n)  wantonly and willfully disregarding the rights of Shameka Renee Lamar;

(o)  elevating its own interests above those of Shameka Renee Lamar;

(p)  recklessly disregarding the rights of Shameka Renee Lamar by misinterpreting and misconstruing the policy so as to deny and disclaim coverage;

(q)  violating the Unfair Claims Settlement Practices, 31 Pa. Code § 146.1 et seq.;

(r)  violating the statutes and regulations governing the actions and practices of insurers in Pennsylvania;

(s)  violating its own internal policies, procedures, practices and guidelines for the handling and evaluation of coverage issues; and,

(t)  such other acts or omissions as may be developed during discovery.

10

Case ID: 160300267

49.    The defendant, Omni, is liable for payment of all actual and consequential damages to the plaintiff, Richard Duncan, by reason of the wanton, willful and reckless bad faith conduct in refusing to defend and indemnify Shameka Renee Lamar and failing further to satisfy the Judgment entered in the underlying tort action.

50.    The defendant, Omni, wantonly, willfully and recklessly ignored the rights of Shameka Renee Lamar under the policy of insurance and under Pennsylvania law.

51.    The defendant, Omni, recklessly disregarded the rights of Shameka Renee Lamar with knowledge of its wanton, willful and reckless actions.

52.    The defendant, Omni, is liable to Richard Duncan for all direct and consequential damages as a result of the bad faith actions of the defendant, Omni, including, but not limited to:

    (a)    counsel fees, interest and costs incurred in the underlying tort action;

    (b)    counsel fees, interest and costs incurred in the instant bad faith litigation;

    (c)    punitive damages;

    (d)    such other relief as the Court deems appropriate.

11

WHEREFORE, the plaintiff, Richard Duncan, demands judgment against the defendant, Omni Insurance Company, in an amount in excess of $50,000.00.

KELLY & HERRON, P.C.

BY: _____
KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102
(215) 972-1500
FAX – 215-972-8217

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY: /s/ James C. Haggerty
JAMES C. HAGGERTY, Esquire
PA Attorney I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6600
FAX (215) 665-8197

Attorneys for Plaintiff

12

Case ID: 160300267

**76a**

## VERIFICATION

___RICHARD DUNCAN_____   hereby states that __he___ is

Plaintiff and verifies that the statements made in the foregoing

__Civil-Action Complaint_____ are true and

correct to the best of __his___ knowledge, information and belief.

The undersigned understands that the statements therein are made

subject to the penalties of 18 Pa. C.S. §4904 relating to unsworn

falsification to authorities.

Dated: _March 4, 2016_____

Case ID: 160300267

**77a**

EXHIBIT A

Case ID: 160300267

LAW OFFICES

# KELLY & HERRON, P.C.

KEVIN P. KELLY
kkelly@kellyherronlaw.com

PAUL L. HERRON
pherron@kellyherronlaw.com

1500 MARKET STREET
CENTRE SQUARE - WEST TOWER
SUITE W-3110
PHILADELPHIA, PENNSYLVANIA 19102-2100
(215) 972-1500
FAX (215) 972-8217

SUBURBAN OFFICE
845 KING OF PRUSSIA ROAD
RADNOR, PA 19087

July 1, 2014

Jill Schrader
Omni Insurance Company
PO Box 105019
Atlanta, GA 30348-5019

RE:  Our Client:        Richard A. Duncan, Jr.
     Your Insured:      Shameka Lamar
     Your Claim No.:    2012 84855
     Date of Accident:  10/8/2012

Dear Ms. Schrader:

As you are aware, this office represents Richard Duncan, Jr., in a claim for injuries and other damages he sustained in the motor vehicle accident of October 8, 2012.  My client was a passenger aboard the SEPTA Route "47" bus involved in the collision with the vehicle owned by your insured and operated by Chris Aaron at or near the intersection of 8th and Dickinson Streets in Philadelphia, PA.

Our investigation reveals liability clearly rests on your insured; the SEPTA bus was at a complete stop when your insured's driver struck the bus in the rear.  His careless and negligent acts and/or omissions resulted in the aforesaid collision and caused my client to sustain serious and disabling injuries.

Mr. Duncan sustained injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia.

In an effort to cure the aforesaid injuries, my clients sought medical treatment from the following providers and incurred medical expenses as itemized:

1.  JEFFERSON UNIVERSITY HOSPITAL
    10/08/12                  $ will supply
    11/26/12                  $ 1,852.00

Case ID: 160300267

# KELLY & HERRON, P.C.

Omni
Page Two
July 1, 2014

| | | |
|---|---|---|
| 2. | ART OF PAIN MANAGEMENT<br>10/10/12 - 2/27/13 | $16,345.00 |
| 3. | DELAWARE CO. OPEN MRI<br>12/04/12 | $ 1,100.00 |
| 4. | CITY OF PHILA EMS<br>10/08/12 | $   970.00 |

| | |
|---|---|
| TOTAL MEDICAL SPECIALS: | $ 20,267.00 |

Mr. Duncan continues to suffer pain and restriction of movement in his back. He has incurred medical expenses as itemized above. He has incurred out of pocket expenses including excess medical bills in the amount of $20,267.00; as he was a passenger on a stationary SEPTA bus, he is not entitled to PIP benefits, and he does not personally own a vehicle, nor does he reside with a relative who owns a vehicle; I enclose a copy of his properly executed Affidavit of No Insurance. Accordingly, all of his medical bills remain unpaid. He has been deprived of life's pleasures. He has in the past and will continue in the future to suffer pain and inconvenience as a result of the negligence of your insured's driver.

In view of the manner in which this accident happened, the medical expenses/economic damages suffered by my client, and the continuing residual affects he is experiencing, my demand for settlement purposes is Fifty Two Thousand Five Hundred ($52,500.00) Dollars.

Kindly contact the undersigned upon completion of your settlement evaluation with a view toward an amicable resolution of this claim.

Case ID: 160300267

# KELLY & HERRON, P.C.

Omni
Page Three
July 1, 2014

Thank you for your attention to this matter.

Very truly yours,

KEVIN P. KELLY, Esquire

KPK/lml
enclosures

Case ID: 160300267

# EXHIBIT B

Case ID: 160300267



**OMNI INSURANCE COMPANY**
P.O. BOX 3000
PLYMOUTH MEETING, PA 19462
PHONE: 800-954-2442 / FAX: 610-832-2138

KEVIN P. KELLY
KELLY & HERRON
1700 MARKET ST., STE. 3112
PHILADELPHIA, PA 19103

July 08, 2014

Re:
Insured: Shameka Lamar
Driver: Chris Porter, aka Chris Aaron
Our Claim Number: 2012-84855
Loss Date: 10/08/2012
Your Client: Richard Duncan, Jr.

Dear Mr. Kelly:

Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any Insured; 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

If you wish to discuss this matter, I can be reached Monday-Friday, 8:00 am – 4:00 pm, at 800-954-2442, ext. 8765.

Sincerely,

Andrew Funk
Bodily Injury Supervisor

Case ID: 160300267

83a

EXHIBIT C

Case ID: 160300267

KELLY & HERRON, P.C.,
BY: KEVIN P. KELLY, ESQUIRE
ATTORNEY I.D. NO: 28306
1500 Market Street, Suite W3110
Philadelphia, PA 19102
(215) 972-1500

RICHARD DUNCAN

vs.

CHRIS AARON
and
SHAMEKA RENEE LAMAR

Attorney For Plaintiffs

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

SEPTEMBER TERM, 2014

NO: 0479

COMPLAINT IN CIVIL ACTION
2V — MOTOR VEHICLE ACCIDENT

NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the
following pages, you must take action within twenty (20) days after this complaint and notice are
served, by entering a written appearance personally or by attorney and filing in writing with the
court your defenses or objections to the claims set forth against you. You are warned that if you
fail to do so the case may proceed without you and a judgment may be entered against you by the court
without further notice for any money claimed in the complaint or for any other claim or relief
requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT
AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas
en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda
y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y
entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su
persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la
demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del
demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder
dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SINO TIENE EL DINERO
SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION
SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

7.22.15 ⊘ 6:20 pm
7.23.15 ⊘ 8:45 pm
7.24.15 ⊘ 10:20 am
7.24.15 ⊘ 3:25 pm    267 973 7146
7.28.15 ⊘ 9:55 pm
7.29.15 ⊘ 6:40 pm

Case ID: 160300267

## COMPLAINT IN CIVIL ACTION

1.  Plaintiff, Richard Duncan, is an adult individual residing at 319 Whites Road, Apartment D4, Lansdale, PA, 19446.

2.  Defendant, Chris Aaron, is an adult individual residing at 420 Mifflin Street, Philadelphia, PA, 19148.

3.  Defendant, Shameka Renee Lamar, is an adult individual residing at 2045 Mountain Street, Philadelphia, PA, 19152.

4.  On or about October 8, 2012, and at all times relevant herein, defendant, Chris Aaron, with permissive use, possessed, controlled and operated a vehicle believed to be a 2003 Chevrolet Avalanche, PA registration ZCV-3380, which vehicle was owned by defendant, Shameka Renee Lamar, and involved in the accident hereinafter described;

5.  On or about October 8, 2012, and at all times relevant herein, plaintiff was a passenger aboard the SEPTA Route "47" bus which was at a complete stop at a posted stop sign southbound on 8th Street at its intersection with Dickenson Street in the City of Philadelphia, PA when it was suddenly and unexpectedly struck in the rear by the vehicle owned by defendant, Shameka Renee Lamar, and operated by defendant, Chris Aaron, which was then and there traveling in a southbound direction on 8th Street in a careless and negligent manner.

COUNT ONE
RICHARD DUNCAN v. CHRIS AARON
NEGLIGENCE

6.    Plaintiff incorporates by reference paragraphs one through five of this Complaint as though same were fully set forth at length.

7.    The automobile collision described in the preceding paragraphs of this Complaint was caused by the carelessness and negligence of the Defendant, Chris Aaron, both generally and in the following particular respects:

(a)    Failing to observe the stopped SEPTA bus;

(b)    Failing to maintain a proper lookout;

(c)    Failing to maintain adequate control of the operation of said motor vehicle;

(d)    Operating said motor vehicle at a speed which was excessive under the circumstances;

(e)    Failing to stop said motor vehicle within the assured clear distance ahead;

(f)    Operating said motor vehicle without due regard for the point and position of the opposing motor vehicle; and

(g)    Failing to operate said motor vehicle with due care and regard for the health and safety of Plaintiff.

8.    As a result of the Defendant's negligence and the accident caused thereby, Plaintiff sustained severe bodily injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia; multiple bruises, lacerations and abrasions, together

Case ID: 160300267

87a

with a severe shock to his nervous system, some or all of which may be permanent in nature and, as a result, the Plaintiff has suffered and continues to suffer pain and inconvenience as a result of these injuries.

9. As a further result of the foregoing, the Plaintiff has been obliged to receive and under medical attention and care and to incur various expenses for same and he may be obliged to continue to undergo such medical care and to incur such expenses for an indefinite time in the future.

10. As a further result of the foregoing, the Plaintiff has suffered, and will continue to suffer, a severe loss of his earnings and/or impairment of earning capacity or power, which loss and/or impairment has or may exceed the sum recoverable under the limitations in the Pennsylvania Financial Responsibility Law.

11. As a further result of the foregoing, the Plaintiff has suffered in the past, and will continue to suffer in the future, excruciating and agonizing pains, aches, mental anguish, humiliation, disfigurement and limitation and restriction of his usual duties, pursuits and pleasures.

WHEREFORE, Plaintiff demands judgment against the Defendants, individually, jointly and severally, in an amount not in excess of Fifty Thousand ($50,000.00) Dollars.

COUNT TWO
RICHARD DUNCAN v. SHAMEKA RENEE LAMAR
NEGLIGENT ENTRUSTMENT

12. Plaintiff incorporates by reference paragraphs one through eleven of this Complaint as though same were fully set

Case ID: 160300267

**88a**

forth at length.

13. The aforesaid collision, which caused plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shameka Renee Lamar, which consisted of the following:

a) failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;

b) failing to maintain the vehicle in proper working order;

c) negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

14. The defendant owner, Shameka Renee Lamar, is liable to the plaintiff for the damages suffered as more fully set forth hereinbefore by virtue of the failure to investigate the qualifications and capabilities of the defendant driver to operate the motor vehicle which the defendant driver was operating at the time of the incident.

15. The defendant owner, Shameka Renee Lamar, is further liable to the plaintiff in that she provided permissive use of her vehicle to the defendant, Chris Aaron, when she knew, or should have known, that defendant Aaron did not possess a valid operator's license on the date of the accident herein.

16. Defendant, Shameka Renee Lamar, knew, or should have known, that her automobile insurance policy contained an exclusion stating the policy did not afford liability coverage in the event

Case ID: 160300267

89a

the driver of her vehicle did not possess a valid operators license
when involved in an motor vehicle accident.

17. As a result of the Defendant's negligence and the
accident caused thereby, Plaintiff sustained severe bodily injuries
including, but not limited to, cervical sprain and strain; lumbar
sprain and strain; thoracic sprain and strain; and post-traumatic
cephalgia; multiple bruises, lacerations and abrasions, together
with a severe shock to his nervous system, some or all of which may
be permanent in nature and, as a result, the Plaintiff has suffered
and continues to suffer pain and inconvenience as a result of these
injuries.

18. As a further result of the foregoing, the Plaintiff has
been obliged to receive and under medical attention and care and to
incur various expenses for same and he may be obliged to continue
to undergo such medical care and to incur such expenses for an
indefinite time in the future.

19. As a further result of the foregoing, the Plaintiff has
suffered, and will continue to suffer, a severe loss of his
earnings and/or impairment of earning capacity or power, which loss
and/or impairment has or may exceed the sum recoverable under the
limitations in the Pennsylvania Financial Responsibility Law.

20. As a further result of the foregoing, the Plaintiff has
suffered in the past, and will continue to suffer in the future,
excruciating and agonizing pains, aches, mental anguish,
humiliation, disfigurement and limitation and restriction of
his usual duties, pursuits and pleasures.

Case ID: 160300267

WHEREFORE, Plaintiff demands judgment against the Defendants,
individually, jointly and severally, in an amount not in excess of
Fifty Thousand ($50,000.00) Dollars.


KELLY & HERRON, P.C.


By: _____/s/_____
    KEVIN P, KELLY, ESQUIRE
    Attorney for Plaintiff


Case ID: 160300267

**91a**

EXHIBIT D

Case ID: 160300267

*First Judicial District of Pennsylvania*
*Philadelphia Court of Common Pleas*

Richard Duncan, Plaintiff
118 Girant Ave., Apt. C
Glenside, PA 19038

Versus

Defendants
Chris Aaron / Shamika Renee Lamar
920 N. Allin St. 2545 W. Silver St.
Philadelphia, PA / Philadelphia, PA
19148          19132

September Term 2014 00479
(Month)      (Year)    (No.)

**Arbitration**
(Please indicate type of action)

☑ Motor Vehicle

(Date of Accident) 11-8-12

☐ Delay Damages (Prime Rate + 1)
Duncan Vs. Aaron Etal AWPFP

= 6%

| | |

☐ Other

## Report and Award of Arbitrators

And Now, this 3 day of June Year 2015 we the undersigned arbitrators having been duly appointed and sworn, make the following award:

Judgement for Plaintiff and against
Defendants Chris Aaron and Shamika Renee Lamar
in the amount of $28,000°° ($13,000°° for medicals
and $15,000°° for pain and suffering)

Please name the parties if there are more than one plaintiff and/or defendant. Please address all counterclaims and crossclaims. Please complete percentage of negligence on reverse side if applicable.

_____ Chairperson

_____ Arbitrator

_____ Arbitrator

Anton B. Perdisatti, 1525 Spruce St., 4th Flr., Phila, PA 740.
Please Print Name, Address and I.D. No.  23696°
Ruth Pearson - 3001 S. Broad St., Phila. 1945 -
Please Print Name, Address and I.D. No.  6th Fl.
Michael S. Miller Jr., PPM 18102  #-310431
Please Print Name, Address and I.D. No.

List Attorneys of Record and Unrepresented Parties Who:
Appeared at the hearing:                    Did Not Appear at the Hearing:
Kevin P. Kelly for Plaintiff               Def. Chris Aaron
                                           Def. Shamika Renee Lamar

20-210 (Rev. 2/05)

Case ID: 140900047
Case ID: 160300267

93a

## Questions to be Answered by
## the Arbitrators in Negligence Cases

**Instructions:**

Taking the combined negligence that was a substantial factor in bringing about any or all of the plaintiff's injuries, damage or losses as 100%, answer the following questions and state in percentages the causal negligence attributed to each party you have found causally negligent.

Do you find that any defendant or additional defendant was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | % |
|---|---|
| | % |
| | % |
| | % |

Do you find that any plaintiff was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | % |
|---|---|
| | % |
| | % |
| | % |

Total    100%

## Notice of Entry of Award

And Now, this _____ day of _____, Year _____ at _____.m., the above award was entered upon the docket and notice thereof given by mail to the parties or their attorneys.

DOCKETED
ARBITRATION

JUN - 3 2015

S. PRESSLEY

_____
Prothonotary

(Arbitration compensation to be
paid on appeal $225.00)

By: _____

Separate Appeals must be filed with the Prothonotary pursuant to PA. R. Civ. P. No. 1308, and the requisite fees paid, if two or more cases are consolidated for Trial and/or Discovery purposes. Only those cases which are appealed will be scheduled for a de novo hearing. Awards in cases not appealed will become final upon expiration of the appeal time.

APPEAL ID: 11090047

Case ID: 160300267

94a

EXHIBIT E

Case ID: 160300267

KELLY & HERRON, P.C.
BY: KEVIN P. KELLY, ESQUIRE
ATTORNEY I.D. No: 28306
1500 Market Street, Suite W3110
Philadelphia, PA 19102
(215) 972-1500

Attorney for Plaintiff

RICHARD DUNCAN

      vs.

CHRIS AARON
and
SHAMEKA RENEE LAMAR

: PHILADELPHIA COUNTY
: COURT OF COMMON PLEAS
:
: SEPTEMBER TERM, 2014
:
: NO.  0479
:
:

## PRAECIPE TO ENTER JUDGMENT

TO THE PROTHONOTARY:

    Kindly enter judgment in favor of the plaintiff, Richard Duncan, and against defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 pursuant to the Arbitration Award dated June 3, 2015 upon payment of your costs only.

    Attached hereto, made a part hereof, and marked Exhibit "A" is a copy of the Award of the Board of Arbitrators dated June, 2015.

                           KELLY & HERRON, P.C.

                           BY:____/s/_____
                            KEVIN P. KELLY, Esquire
                            Attorneys for Plaintiff

dated:   July 7, 2015

Case ID: 14090047
Case ID: 160300267

96a

# EXHIBIT "A"

Case ID: 14090047
Case ID: 160300267

First Judicial District of Pennsylvania
Philadelphia Court of Common Pleas

Richard Duncan, Plaintiff
118 Girard Ave., Apt. C
Glenside, PA 19038

September Term 2014 0047?
(Month)          (Year)    (No.)

Arbitration
(Please indicate type of action)

☑ Motor Vehicle

(Date of Accident) 11-8-12

defendants,                    Versus

Chris Aaron | Shameka Renee Lamar
428 Mifflin St. 2545 W. Silver St.
Philadelphia, PA | Philadelphia, PA
19148            19132

☐ Delay Damages (Prime Rate +1)
Duncan Vs. Aaron Etal-AWFFP

| | | | | | | | | | | | | | | | ÷ 6%)
14090047900021

☐ Other

### Report and Award of Arbitrators

And Now, this 3 day of June Year 2015 we the undersigned arbitrators having been duly appointed and sworn, make the following award:

Judgment for Plaintiffs and against
Defendants Chris Aaron and Shameka Renee Lamar
in the amount of $28,000⁰⁰ ($13,000⁰⁰ for medicals
and $15,000⁰⁰ for pain and suffering)

Please name the parties if there are more than one plaintiff and/or defendant. Please address all counterclaims and cross-claims. Please complete percentage of negligence on reverse side if applicable.

_____
Chairperson

Viktor B. Morbeys Jr., 325 Spruce St., Phila, PA 19?:
502-
ID 90909
Please Print Name, Address and I.D. No.

_____
Arbitrator

Ruth Pearson 3001 Brystenhams St. Phila PA 19145-
30  5.  134  St. 6th Fl.
Please Print Name, Address and I.D. No.

_____
Arbitrator

Michael S. Miller Jr. PPA 19102   #310431
Please Print Name, Address, and I.D. No.

List Attorneys of Record and Unrepresented Parties Who:
Appeared at the hearing:           Did Not Appear at the Hearing:

Kevin P. Kelly for Plaintiff       def. Chris Duncan
                                   def. Shameka Renee Lamar

30-210 (Rev. 2/03)

**98a**

## Questions to be Answered by
## the Arbitrators in Negligence Cases

**Instructions:**

Taking the combined negligence that was a substantial factor in bringing about any or all of the plaintiff's injuries, damage or losses as 100%, answer the following questions and state in percentages the causal negligence attributed to each party you have found causally negligent.

Do you find that any defendant or additional defendant was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

_____    _____ %

_____    _____ %

_____    _____ %

_____    _____ %

Do you find that any plaintiff was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

_____    _____ %

_____    _____ %

_____    _____ %

_____    _____ %

Total        100 %

## Notice of Entry of Award

And Now, this _____ day of _____ Year _____ at _____ m., the above award was entered upon the docket and notice thereof given by mail to the parties or their attorneys.

DOCKETED
ARBITRATION

JUN -3 2015

S. PRESSLEY                         _____
                                    *Prothonotary*

(Arbitration compensation to be
paid on appeal $225.00)            By: _____

Separate Appeals must be filed with the Prothonotary pursuant to PA. R. Civ. P. No. 1308, and the requisite fees paid, if two or more cases are consolidated for Trial and/or Discovery purposes. Only those cases which are appealed will be scheduled for a *de novo* hearing. Awards in cases not appealed will become final upon expiration of the appeal time.

Case ID: 160300267

*First Judicial District of Pennsylvania*
*Philadelphia Court of Common Pleas*

Richard Duncan, Plaintiff
118 Girard Aue., Apt. C
Glenside, PA 19038

September Term 2014 00479
(Month) (Year) (No.)

**Arbitration**
*(Please indicate type of action)*

☑ Motor Vehicle

(Date of Accident) 11-8-12

Defendants,

Versus

Chris Aaron          Shamcka Renee Lamar
928 Mifflin St.      2545 W. Silver St.
Philadelphia, PA     Philadelphia, PA
19148                19132

☐ Delay Damages (Prime Rate +1)

Duncan Vs Aaron Etal-AWFFP

14090047900021

= 6%)

☐ Other

## Report and Award of Arbitrators

And Now, this 3 day of June, Year 2015, we the undersigned arbitrators having been duly appointed and sworn, make the following award:

Judgment for Plaintiff and against
Defendants Chris Aaron and Shamcka Renee Lamar
in the amount of $28,000.00 ($13,000.00 for medicals
and $15,000.00 for pain and suffering).

Please name the parties if there are more than one plaintiff and/or defendant.  Please address all counterclaims and cross-claims.  Please complete percentage of negligence on reverse side if applicable.

Chairperson

Arbitrator

Arbitrator

Alton B. Mendoza, 1528 Spruce St., 4th Flr., Phila, PA 110:
Please Print Name, Address and I.D. No.    256963

Ruth Pearson - 3001 S. Sydenham St. Phila 19145 -
Please Print Name, Address and I.D. No.

Michael S. Miller Jr. PBA 19102  #F310431
Please Print Name, Address and I.D. No.

**List Attorneys of Record and Unrepresented Parties Who:**

Appeared at the hearing:

Kevin P. Kelly for Plaintiff

Did Not Appear at the Hearing:

Deft. Chris Aaron
Deft. Shamcka Renee Lamar

39-230 (Rev. 2/09)

NOTICE GIVEN PURSUANT TO Pa. R.C.P. 1307. S. PRESSLEY 06/04/2015

Case ID: 160300267

**100a**

EXHIBIT F

| | | |
|---|---|---|
| RICHARD DUNCAN | : | COURT OF COMMON PLEAS |
| | : | PHILADELPHIA COUNTY |
| VS. | : | |
| | : | SEPTEMBER TERM, 2014 |
| CHRIS AARON | : | |
| AND | : | NO.: 0479 |
| SHAMEKA RENEE LAMAR | : | |

<u>ASSIGNMENT</u>

WHEREAS, the Plaintiff, Richard Duncan, sustained personal injuries in an October 8, 2012 motor vehicle accident,

WHEREAS, the motor vehicle occupied by Plaintiff, Richard Duncan was rear-ended by a vehicle operated by Defendant, Chris Aaron and owned by Defendant, Shameka Renee Lamar,

WHEREAS, the motor vehicle Chris Aaron was operating at the time of the accident was insured by Omni Insurance Company,

WHEREAS, Defendant, Shameka Renee Lamar was the named insured under a personal automobile policy issued by Omni Insurance Company,

WHEREAS, Plaintiff, Richard Duncan instituted suit against Defendants, Chris Aaron and Shameka Renee Lamar in connection with the injuries sustained in the October 8, 2012 motor vehicle accident,

WHEREAS, the tender of defense and indemnity of the lawsuit was made to Omni Insurance Company,

WHEREAS, Omni Insurance Company disclaimed coverage to Defendants, Chris Aaron and Shameka Renee Lamar for any claims arising out of the October 8, 2012 motor vehicle accident,

Case ID: 160300267

**102a**

WHEREAS, Omni Insurance Company refused to provide a defense or indemnity to Defendants, Chris Aaron and Shameka Renee Lamar in the present action instituted by Plaintiff, Richard Duncan,

WHEREAS, on or about March 23, 2015 a default judgment was entered against Defendants, Chris Aaron and Shameka Renee Lamar,

WHEREAS, on June 3, 2015 an Arbitration Hearing for an Assessment of Damages was held awarding damages against Defendants, Chris Aaron and Shameka Renee Lamar in the amount of Twenty Eight Thousand ($28,000.00) Dollars,

WHEREAS, on or about July 7, 2015, judgment was entered against Defendants, Chris Aaron and Shameka Renee Lamar in the amount of $28,000.00,

WHEREAS, Defendant, Shameka Renee Lamar desires to assign her rights against Omni Insurance Company to Plaintiff, Richard Duncan in connection with the judgment entered against her in this action for good and valuable consideration as set forth more fully below, and,

WHEREAS, Plaintiff, Richard Duncan agrees to satisfy any judgment entered against Defendants, Shameka Renee Lamar and Chris Aaron after the conclusion of all claims against Omni Insurance Company.

NOW THEREFORE, it is hereby stipulated and agreed by and between the Plaintiff, Richard Duncan and Defendant, Shameka Renee Lamar as follows:

    1.   <u>Assignment</u>.  The Defendant, Shameka Renee Lamar

for good and valuable consideration, as set forth more fully below, hereby assigns to the Plaintiff, Richard Duncan any and all rights, interest, claims and/or potential causes of action including, but not limited to, all contractual and extra-contractual claims, actions for common law and statutory bad faith under 42 Pa.C.S.A. §8371, a beach of fiduciary duty, breach of duty of good faith and fair dealings, punitive damages, unfair trade practice and consumer protection law, 73 P.S.§201-1 et seq., negligence, breach of contract, misrepresentation, and any other claims or causes of action of any nature whatsoever, in law or in equity, which she now has and/or may have against Omni Insurance Company, its parent company(ies) affiliates, associates, subsidiaries, agents, adjusters, employees and attorneys with respect to the disclaimer of coverage to me in the above captioned matter and any award, verdict or judgment entered against me in this lawsuit which has resulted or may hereafter result in personal liability by me to satisfy the award, verdict or judgment on the claims of the Plaintiff, Richard Duncan which could have been resolved by Omni Insurance Company if timely and appropriately responded to the demands of the Plaintiff, Richard Duncan, to resolve the matter within the available limits of liability coverage in connection with the claims for damages arising from the injuries sustained in the October 8, 2012 motor vehicle accident.

    2.   <u>Consideration</u>.  In consideration of this assignment,

the Plaintiff, Richard Duncan agrees and covenants not to initiate any collection or execution proceedings against the Defendants, Shameka Renee Lamar and Chris Aaron, as a consequence of the award and judgment entered against the Defendants.

3.    Satisfaction of Judgment.  In further consideration of this assignment, the Plaintiff, Richard Duncan, agrees to mark satisfied any judgment entered against the Defendants, Shameka Renee Lamar and Chris Aaron; after the conclusion of all proceedings against Omni Insurance Company, regardless of the ultimate outcome.  Any judgment shall remain in full force and effect until all proceedings against Omni Insurance Company have been resolved by final judgment or settlement.

4.    Full Agreement.  The terms and conditions contained in this Assignment supersede all prior oral and written understandings between the Plaintiff, Richard Duncan and the Defendant, Shameka Renee Lamar and constitutes the entire agreement among the parties relating to the payment pursuant to the agreements set forth in this Assignment as noted more fully herein.  This Assignment shall not be modified or amended except by a writing signed by all parties.  Further, this Assignment

Case ID: 160300267

**105a**

shall be binding upon the executors, administrators, personal

representatives, heirs, successors and assigns of each.

IN THE PRESENCE OF:

Name: _June Link_

Address: _1500 Market St, Phila, PA_

SHAMIKA RENEE LAMAR

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JUNE LINK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 4, 2019


IN THE PRESENCE OF:

Name: _June Link_

Address: _1500 Market St, Phila, PA_

RICHARD DUNCAN (SEAL)


COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JUNE LINK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 4, 2019

# EXHIBIT "B"

| | |
|---|---|
| RICHARD DUNCAN<br>1300 Pennsylvania Avenue<br>Apartment H-3<br>Oreland, PA 19075 | : IN THE COURT OF COMMON PLEAS<br>: PHILADELPHIA COUNTY, PENNSYLVANIA<br>:<br>: |
| v. | : MARCH TERM, 2016<br>: |
| OMNI INSURANCE COMPANY<br>2018 Powers Ferry Road, Suite 400<br>Atlanta, GA 30339 | : NO. 267<br>:<br>: |

## AFFIDAVIT OF SERVICE

James C. Haggerty, Esquire, being duly sworn according to law, deposes and

states that a copy of the Complaint was served upon the defendant, Omni Insurance

Company, 2018 Powers Ferry Road, Suite 400, Atlanta, Georgia 30339 by Certified

Mail, Return Receipt Requested in accordance with the Pennsylvania Rules of Civil

Procedure. A copy of the signed Receipt Card is attached.

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY: /s/ James C. Haggerty
JAMES C. HAGGERTY, Esquire
PA Attorney I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(267) 350-6600
FAX (215) 665-8197

Attorneys for Plaintiff

1

Case ID: 160300267

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|
| ■ Complete items 1, 2, and 3.<br>■ Print your name and address on the reverse so that we can return the card to you.<br>■ Attach this card to the back of the mailpiece, or on the front if space permits. | A. Signature<br>X _____ ☐ Agent<br>☐ Addressee<br>B. Received by (Printed Name)    C. Date of Delivery<br>Kelli Palm    3/4/16 |
| 1. Article Addressed to:<br>OMNI INSURANCE Company<br>2018 Powers Ferry Road<br>Suite 400<br>Atlanta, GA 30339 | D. Is delivery address different from item 1? ☐ Yes<br>If YES, enter delivery address below:  ☑ No |
| ‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖<br>9590 9403 0428 5163 1766 53 | 3. Service Type<br>☐ Adult Signature<br>☐ Adult Signature Restricted Delivery<br>☐ Certified Mail®<br>☐ Certified Mail Restricted Delivery<br>☐ Collect on Delivery<br>☐ Collect on Delivery Restricted Delivery<br>☐ Insured Mail<br>☐ Insured Mail Restricted Delivery (over $500) | ☐ Priority Mail Express®<br>☐ Registered Mail™<br>☐ Registered Mail Restricted Delivery<br>☑ Return Receipt for Merchandise<br>☐ Signature Confirmation™<br>☐ Signature Confirmation Restricted Delivery |
| 2. Article Number (Transfer from service label)<br>14 2870 0001 1107 7097 | |
| PS Form 3811, April 2015 PSN 7530-02-000-9053 | Domestic Return Receipt |

Case ID: 160300267

109a

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2016-cv- 1489 |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| | : | |
| Defendant. | : | |

### DEFENDANT'S ANSWER WITH AFFIRMATIVE DEFENSES

Defendant, Omni Insurance Company ("Omni" and/or "Defendant"), by and through its attorneys, Marshall, Dennehey, Warner, Coleman & Goggin, hereby files this Answer with Affirmative Defenses to the Complaint of plaintiff, Richard Duncan ("Plaintiff") and avers as follows:

1.     Admitted upon information and belief.

2.     Denied as stated.  Omni is a corporation organized and existing under the laws of the State of Illinois with its principal place of business located in Atlanta, Georgia.  It is admitted that Omni conducts business in the Commonwealth of Pennsylvania.

3.     It is admitted that Omni conducted business in the City and County of Philadelphia.

4.     Denied as stated.  It is admitted that plaintiff was a passenger in a SEPTA "Route 47" bus when the bus was struck by a motor vehicle operated by a person known as Chris or Christopher Aaron, a/k/a Christopher Porter, and titled in the name of Shameka Renee Lamar.

5.     Omni is without knowledge or information sufficient to form a belief as to the truth of the averments contained in this paragraph.

6.    It is admitted only that Omni issued a private passenger auto policy to named insured Shameka Renee Lamar, policy number 4140872 (the "Policy") for a policy period of September 1, 2012 to September 1, 2013 subject to all terms, conditions, limitations, exclusions and endorsements as stated therein. A true and correct copy of the Policy is attached hereto and marked as Exhibit "1". The remaining allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.

7.    Denied. The corresponding averment is a conclusion of law. By way of further answer, the terms, conditions and provisions of the subject policy speak for themselves. Finally, defendant denies that the policy issued to Shameka Lamar afforded any liability coverage for Ms. Lamar or the operator of the vehicle.

8.    It is admitted that Mr. Duncan made claims upon Chris Aaron and Shameka Renee Lamar. It admitted that Mr. Duncan made a claim against Omni seeking recovery for damages in tort, which claim Omni denied based upon the absence of coverage owed to Shameka Lamar or the operator of the vehicle.

9.    It is admitted only that a copy of the July 1, 2014 letter was attached to plaintiff's Complaint and marked as Exhibit "A." The July 1, 2014 letter is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

10.    It is admitted only that a copy of the July 8, 2014 letter was attached to plaintiff's Complaint and marked as Exhibit "B". The July 8, 2014 letter is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

11.    The July 8, 2014 letter is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

12.    The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required. Further, 75 Pa.C.S.A. § 1574 makes no mention of insurance,

2

nor does it preclude or attempt to preclude an insurer from excluding coverage to any insured for claims arising from the operation of the insured vehicle by anyone who is not licensed to drive a car.

13.     75 Pa.C.S.A. § 1574 is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.  Further, 75 Pa.C.S.A. § 1574 makes no mention of insurance, nor does it preclude or attempt to preclude an insurer from excluding coverage to any insured for claims arising from the operation of the insured vehicle by anyone who is not licensed to drive a car.

14.     It is admitted that Mr. Duncan filed a civil action against Chris Aaron and Shameka Renee Lamar in the Court of Common Pleas Philadelphia County, September Term, 2014, No. 0479 and that a copy of the Complaint was attached to plaintiff's Complaint and marked as Exhibit "C".  The Complaint is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

15.     Admitted.

16.     Admitted that Duncan's Complaint contained that allegation.

17.     Admitted.  By way of further response, Omni determined that there was no coverage, as the insured vehicle was being operated by an unlicensed driver.  Pursuant to the language of the Policy, coverage is precluded when the operator of the covered auto does not have a valid driver's license.  See Exhibit "1" at POL24-26.  The Policy provides, in relevant part:

### PART A – LIABILITY COVERAGE

B.     Insured as used in this Part means:

3.     A person using your covered
auto with the owner's express

3

> or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto.

*          *          *

### EXCLUSIONS

A. We do not provide Liability Coverage for any insured:

    16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

        c. Does not have a valid driver's license, or

        d. Has a suspended or rescinded driver's license.

See POL24-26.

18. Admitted. By way of further response, Omni determined that there was no coverage, as the insured vehicle was being operated by an unlicensed driver. Pursuant to the language of the Policy, coverage is precluded when the operator of the covered auto does not have a valid driver's license. See Exhibit "1" at POL24-26. The Policy provides, in relevant part:

### PART A – LIABILITY COVERAGE

B. Insured as used in this Part means:

    3. A person using your covered auto with the owner's express

4

or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto.

\*          \*          \*

## EXCLUSIONS

A.    We do not provide Liability Coverage for any insured:

16.    For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

c.    Does not have a valid driver's license, or

d.    Has a suspended or rescinded driver's license.

See POL24-26.

19.    Admitted.

20.    Admitted.

21.    It is admitted that a copy of the Report and Award of Arbitrators was attached to plaintiff's Complaint and marked as Exhibit "D". The Report and Award of Arbitrators is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

22.    The Report and Award of Arbitrators is a writing the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

5

23. It is admitted that a Praecipe to Enter Judgment was attached to plaintiff's Complaint as Exhibit "E." The Praecipe to Enter Judgment is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

24. It is admitted that Omni has not paid the judgment entered against Chris Aaron and Shameka Renee Lamar, as Omni does not have an obligation to do so. Omni denied coverage based on the express language of the Policy. Omni incorporates by reference the language of the Policy cited in paragraphs 17 and 18, *supra.*

25. It is admitted that a copy of an Assignment was attached to plaintiff's Complaint and marked as Exhibit "F". The Assignment is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

26. The allegations of this paragraph constitute conclusions of law which are denied. By way of further response and without waiving the foregoing, Omni does not owe a defense and/or indemnification to Shameka Renee Lamar under the express language of the Policy and the circumstances of the October 8, 2012 motor vehicle accident. Omni incorporates by reference the language of the Policy cited in paragraphs 17 and 18, *supra.*

27. The allegations of this paragraph constitute conclusions of law which are denied. By way of further response and without waiving the foregoing, Omni is not responsible for the payment of the judgment entered in the underlying tort action against Shameka Renee Lamar plus interest and delay damages. Omni does not owe a defense and/or indemnification to Shameka Renee Lamar under the language of the Policy and the circumstances of the October 8, 2012 motor vehicle accident. Omni incorporates by reference the express language of the Policy cited in paragraphs 17 and 18, *supra.*

28. The allegations of this paragraph constitute conclusions of law which are denied. By way of further response and without waiving the foregoing, Omni is not obligated to make

any payment based upon an alleged failure to defend and indemnify Shameka Renee Lamar in

the underlying tort action, as Omni does not owe a defense and/or indemnification to Shameka

Renee Lamar under the language of the Policy and the circumstances of the October 8, 2012

motor vehicle accident.  Omni incorporates by reference the language of the Policy cited in

paragraphs 17 and 18, *supra*.

WHEREFORE, Defendant, Omni Insurance Company, demands judgment in its favor

and against plaintiff and respectfully requests that this Honorable Court enter judgment in

defendant's favor.

## COUNT I
### (Bad Faith – Excess Verdict)

29.      It is admitted that plaintiff has incorporated by reference the averments set forth in

paragraphs one (1) through twenty-eight (28) of plaintiff's Complaint.  In response thereto, Omni

incorporates by reference the foregoing paragraphs 1 through 28, inclusive, of this Answer as fully

as though set forth at length herein.

30.      The allegations of this paragraph constitute conclusions of law which are denied.

By way of further response and without waiving the foregoing, Omni is not obligated to make

any payment based upon the refusal to defend and indemnify Shameka Renee Lamar in the

underlying tort action, as Omni does not owe a defense and/or indemnification to Shameka

Renee Lamar under the language of the Policy and the circumstances of the October 8, 2012

motor vehicle accident.  Omni incorporates by reference the language of the Policy cited in

paragraphs 17 and 18, *supra*.

31.      The allegations of this paragraph constitute conclusions of law which are denied.

By way of further response and without waiving the foregoing, Omni is not obligated to make

any payment based upon the refusal to defend and indemnify Shameka Renee Lamar in the

underlying tort action, as Omni does not owe a defense and/or indemnification to Shameka Renee Lamar under the language of the Policy and the circumstances of the October 8, 2012 motor vehicle accident. Omni incorporates by reference the language of the Policy cited in paragraphs 17 and 18, *supra*.

32.    (a)-(t), inclusive: The allegations of this paragraph constitute conclusions of law which are denied. As Ms. Lamar's policy did not provide coverage for claims arising from the operation of the insured vehicle by an unlisted and unlicensed driver, Omni had do duty to defend or indemnify either Ms. Lamar or the unlicensed operator.

33.    It is admitted only that Omni did not provide a defense or indemnity in the underlying action on behalf of Shameka Renee Lamar, as Omni does not owe a defense and/or indemnification to Shameka Renee Lamar under the language of the Policy and the circumstances of the October 8, 2012 motor vehicle accident. Omni incorporates by reference the language of the Policy cited in paragraphs 17 and 18, *supra*. The remaining allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.

34.    It is admitted only that judgment was entered against Shameka Renee Lamar. It is admitted that Omni did not defend and/or indemnify Shameka Renee Lamar in the underlying tort action, as Omni does not owe a defense and/or indemnification to Shameka Renee Lamar. Omni incorporates by reference the language of the Policy cited in paragraphs 17 and 18, *supra*. The remaining allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.

35.    The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required.

**WHEREFORE,** Defendant, Omni Insurance Company, demands judgment in its favor and against plaintiff and respectfully requests that this Honorable Court enter judgment in defendant's favor.

## COUNT II
### (Bad Faith – Common Law and Statutory)

36.     It is admitted that plaintiff has incorporated by reference the averments set forth in paragraphs one (1) through thirty-five (35) of plaintiff's Complaint. In response thereto, Omni incorporates by reference the foregoing paragraphs 1 through 35, inclusive, of this Answer as fully as though set forth at length herein.

37.     Denied. The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required. By way of further response, the Policy is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated. For the reasons specified above, including Omni's responses to paragraphs 17 and 18 of plaintiff's Complaint, Omni did not owe any duty to defend or indemnify either Ms. Lamar or the unlicensed operator of the vehicle, and therefore had a reasonable basis to refuse coverage for them.

38.     Denied. The allegations of this paragraph constitute conclusions of law which are denied. By way of further response and without waiving the foregoing, Omni complied with the terms and provisions of the Policy and incorporates by reference its response to paragraphs 17 and 18, *supra.*

39.     Denied. The allegations of this paragraph constitute conclusions of law which are denied. Omni further incorporates its response to paragraph 12 above.

40.     The allegations of this paragraph constitute conclusions of law which are denied. By way of further response and without waiving the foregoing, it is specifically denied that Omni acted in bad faith in the investigation, evaluation or handling of the underlying tort action or any litigation

or judgments arising therefrom. The policy expressly precluded coverage to any insured for claims arising out of the operation of the insured vehicle by anyone who did not have a drivers license.

41.    The Policy is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

42.    Denied. The allegations of this paragraph constitute conclusions of law which are denied. By its express terms, the subject insurance policy did not afford coverage for Mr. Duncan's claims.

43.    Denied. The allegations of this paragraph constitute conclusions of law which are denied. By its express terms, the subject insurance policy did not afford coverage for Mr. Duncan's claims.

44.    Denied. The allegations of this paragraph constitute conclusions of law which are denied. By its express terms, the subject insurance policy did not afford coverage for Mr. Duncan's claims.

45.    42 Pa.C.S.A. § 8371 is a writing, the contents and terms of which speak for themselves and any characterization thereof is denied as stated.

46.    Denied. The corresponding averment is a conclusion of law which is denied.

47.    Denied. The allegations of this paragraph constitute conclusions of law which are denied. For the reasons specified above, including Omni's responses to paragraphs 17 and 18 of plaintiff's Complaint, Omni did not owe any duty to defend or indemnify either Ms. Lamar or the unlicensed operator of the vehicle, and therefore had a reasonable basis to refuse coverage for them.

48.    Denied. The allegations of this paragraph constitute conclusions of law to which no responsive pleading is required. By way of further response and without waiving the foregoing, it is specifically denied that Omni acted in bad faith in the investigation, evaluation and handling of the underlying claim. To the contrary, the subject policy of insurance precluded coverage for any

10

insured for claims arising out of the operation of the insured vehicle by an unlicensed driver. Therefore, Omni was correct in refusing coverage for Mr. Duncan's claims.

49.    Denied. The allegations of this paragraph constitute conclusions of law which are denied. By way of further response and without waiving the foregoing, it is specifically denied that Omni engaged in bad faith conduct in its investigation, evaluation and handling of the underlying claim or any litigation or judgments arising therefrom. To the contrary, the subject policy of insurance precluded coverage for any insured for claims arising out of the operation of the insured vehicle by an unlicensed driver. Therefore, Omni was correct in refusing coverage for Mr. Duncan's claims.

50.    Denied. The allegations of this paragraph constitute conclusions of law which are denied for the reasons stated above.

51.    Denied. The allegations of this paragraph constitute conclusions of law which are denied for the reasons stated above.

52.    The allegations of this paragraph constitute conclusions of law which are denied for the reasons stated above.

**WHEREFORE**, Defendant, Omni Insurance Company, demands judgment in its favor and against plaintiff and respectfully requests that this Honorable Court enter judgment in defendant's favor.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

Omni avers that plaintiff's Complaint fails to state a claim upon which relief may be granted.

### SECOND AFFIRMATIVE DEFENSE

Omni avers that the alleged damages claimed by plaintiff are not damages for which Omni is legally liable.

### THIRD AFFIRMATIVE DEFENSE

Omni avers that plaintiff's claim for punitive damages fails to state a cause of action or claim upon which relief can be granted.

### FOURTH AFFIRMATIVE DEFENSE

Omni incorporates by reference all terms, conditions, limitations, exclusions, provisions and endorsements of the Policy as fully as though set forth at length herein.

### FIFTH AFFIRMATIVE DEFENSE

Omni avers that it performed all of its duties and obligations existing under the Policy.

### SIXTH AFFIRMATIVE DEFENSE

Omni avers that Pennsylvania's bad faith statute, 42 Pa. C.S.A. §8371 is unconstitutionally vague as drafted and as applied in that it fails to define or state, or to offer any guidance on, what conduct by an insurer amounts to bad faith and thereby subjects insurers to the remedies included therein, including punitive damages.

### SEVENTH AFFIRMATIVE DEFENSE

Omni avers that coverage for Mr. Duncan's claim against both Shameka Lamar and the unlicensed operator of the insured vehicle is precluded under the Policy pursuant to the following express language in the Policy:

**PART A – LIABILITY COVERAGE**

B.    Insured as used in this Part means:

3.    A person using your covered auto with the owner's express or implied permission and

12

within the scope of the
permission granted. The
person must hold a valid
driver's license at the time of
loss and must not be a
regular operator of your
covered auto.

\*                          \*                          \*

## EXCLUSIONS

A.    We do not provide Liability Coverage for
any insured:

16.    For bodily injury or property damage
resulting from the ownership,
maintenance or use of any vehicle
when driven by an individual who:

c.    Does not have a valid driver's
license, or

d.    Has a suspended or rescinded
driver's license.

See POL.24-26.

Omni therefore avers that coverage is precluded under the Policy, as the insured vehicle

was being operated by an unlicensed driver at the time of the October 8, 2012 motor vehicle

accident.

### EIGHTH AFFIRMATIVE DEFENSE

Omni avers that Shameka Renee Lamar lied when she applied for the subject insurance

policy, because the vehicle she sought insurance for was not owned by her but was instead

owned, possessed and primarily operated by Chris Aaron, a/k/a Christopher Aaron, a/k/a

Christopher Porter, who did not have a valid Pennsylvania drivers license and therefore could not

insure the vehicle.

13

<u>NINTH AFFIRMATIVE DEFENSE</u>

Omni attaches hereto as Exhibit B a true and correct copy of the application for motor

vehicle insurance which was signed and submitted by Shameka Renee Lamar on or about

September 1, 2012.  In that Application, Ms. Lamar stated that she was the Owner of the vehicle

listed on the policy, that all drivers of the vehicle resided in her household, and that there were

no occasional operators of the vehicle not rated in the policy.

<u>TENTH AFFIRMATIVE DEFENSE</u>

In the aforesaid Application attached as Exhibit "2", Ms. Lamar signed the

APPLICANT'S STATEMENT which provided <u>inter alia</u>:

> I hereby declare that the information provided to the Company
> when purchasing my Personal Auto Policy is true.  I HEREBY
> AGREE THAT SUCH POLICY SHALL BE NULL AND VOID
> IS SUCH INFORMATION IS FALSE, MISLEADING, OR
> WOULD MATERIALLY AFFECT ACCEPTANCE OF THE
> RISK BY THE COMPANY…
>
> I certify that:
>
> - I have listed on this application all person aged 15 or older,
>   licensed or not, who reside with me and all other drivers
>   who may operate my auto(s) on a REGULAR or
>   OCCASIONAL basis….I understand it is my obligation to
>   report to the Company and change in driving status for any
>   person currently listed, added on my policy, residing in my
>   household, or who operates my auto(s).
>
> - Each vehicle listed in this application is garaged at the zip
>   code provided in this application for my principle residence
>   for ten (10) or more months each year and the garaging
>   address of all listed auto(s) is the Pennsylvania address
>   listed on this application.
>
> FRAUD
>
> The insurance policy is issued by Omni Insurance Company in
> reliance on the information provided in this insurance application,
> including, but not limited to information regarding license and
> driving history of the undersigned, "family members" and all
> persons of driving age in the undersigned's household; the

14

description of the vehicles insured; the location of the principle place of garaging, and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or an "insured" have concealed or misrepresented any material circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. …By signing below, I agree that this application becomes a part of my policy, is a legal document, and acknowledge that I have read the warnings and statements listed on the application.

/s/ Shameka Lamar                          9/1/2012
Signature of Applicant Policy #:4140872    Date

## ELEVENTH AFFIRMATIVE DEFENSE

In the aftermath of this accident, Shameka Lamar advised Omni that, although she was the registered owner of the vehicle, the vehicle was being driven at the time of this accident by her brother, who did not live with her, and that her brother had asked her to get the insurance on the vehicle. She thereafter identified her brother as Chris Porter. The police report identified him as Chris Aaron. Ms. Lamar ultimately advised Omni that she does not believe Chris Porter, a/k/a Chris Aaron, has a driver license.

## TWELFTH AFFIRMATIVE DEFENSE

The operator of the insured vehicle at the time of the accident, Chris Porter, a/k/a Chris Aaron, a/k/a Christopher Aaron, did not have a valid drivers' license.

## THIRTEENTH AFFIRMATIVE DEFENSE

In the alternative, even if this Court were to declare that Omni was required to provide any coverage for the subject accident, the maximum amount of that coverage should be Fifteen Thousand ($15,000) Dollars, the amount of liability coverage per person as required by the Pa. MVFRL.

124a

### FOURTEEN AFFIRMATIVE DEFENSE

To the extent that plaintiff, Richard Duncan, sustained injuries as a victim in a motor vehicle accident and he is not otherwise ineligible, plaintiff's remedy or source of recovery should be the Pennsylvania Assigned Claims Plan.

### FIFTEENTH AFFIRMATIVE DEFENSE

To the extent that plaintiff, Richard Duncan, sustained injuries as a victim in a motor vehicle accident, plaintiff's remedy or source of recovery should be the uninsured motorist coverage under his own auto insurance policy or, if none, under the auto insurance policy of anyone residing in his household at the time of the accident.

### SIXTEENTH AFFIRMATIVE DEFENSE

The operator of the vehicle insured under the Omni policy, Chris Porter, a/k/a Chris Aaron, a/k/a Christopher Aaron, has never cooperated in any way with the investigation of the subject accident.

### SEVENTH AFFIRMATIVE DEFENSE

Plaintiff, Richard Duncan, has no standing to bring a direct action against Omni Insurance Company.

### EIGHTEENTH AFFIRMATIVE DEFENSE

Plaintiff, Richard Duncan, purportedly brings this action as the assignee of Shameka Renee Lamar, who was the "insured" under the policy of motor vehicle insurance issued by Omni Insurance Company and attached hereto as Exhibit 1. In consideration for Ms. Lamar assigning her rights and claims under the Omni policy to Mr. Duncan, Duncan:

> Agrees and covenants not to initiate any collection or execution proceedings against the Defendants, Shameka Renee Lamar and Chris Aaron, as a consequence of the award and judmgent entered against the defendant....

16

and

agrees to mark satisfied any judgment entered against the Defendants, Shameka Renee Lamar and Chris Aaron, after the conclusion of all proceedings against Omni Insurance Company regardless of the ultimate outcome.

Based on those agreements made by Richard Duncan not to initiate any collection or execution proceedings against Shameka Lamar or Chris Aaron, and further to mark the judgment against them "satisfied" at the conclusion of these proceedings, then neither Shameka Lamar nor even Chris Aaron has suffered or will suffer any compensable harm as a result of the subject motor vehicle accident or Omni's denial of insurance coverage due to Mr. Aaron's operation of the insured vehicle without a drivers license.

**WHEREFORE,** Defendant, Omni Insurance Company, demands judgment in its favor and against plaintiff and respectfully requests that this Honorable Court enter judgment in defendant's favor.

Respectfully submitted:

**MARSHALL, DENNEHEY, WARNER, COLEMAN & GOGGIN**

BY: 

R. BRUCE MORRISON, ESQUIRE
PA Attorney I.D. No. 34797
2000 Market Street, Suite 2300
Philadelphia, PA 19103
215-575-2600/ 215-575-0856 (F)
rbmorrison@mdwcg.com
*Attorney for Defendant*

Dated: April 8, 2016

17

**126a**

## CERTIFICATE OF SERVICE

I, R. Bruce Morrison, Esquire, attorney for Defendant, hereby certify that a true and correct

copy of the foregoing Answer with Affirmative Defenses was served upon the following parties via

electronic court filing system, on the below date:

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA 19102
*Attorney for Plaintiff*

James C. Haggerty, Esquire
HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street, Suite 2700
Philadelphia, PA 19103
*Attorney for Plaintiff*

R. Bruce Morrison

Dated: April 8, 2016

# EXHIBIT "1"



OMNI INSURANCE COMPANY
P.O. BOX 105019
ATLANTA, GA 30348-5019
PHONE: 800-727-6664 / FAX: 800-680-1904

## POLICY CERTIFICATION

I, Scott Mascioli, Claims Litigation Manager for Omni Insurance Company, do hereby certify that the attached declarations page and Pennsylvania Motor Vehicle Policy are true and correct copies of the declarations page and policy in effect for Shameka Renee Lamar, policy number 4140872, on October 8, 2012.

Scott Mascioli
Scott Mascioli
Claims Litigation Manager
Omni Insurance Company

STATE OF PENNSYLVANIA}

COUNTY OF MONTGOMERY}

On the ___1 st___ day of ___April___, 2016 before me personally appeared ___SCOTT  MASCIOLI___ to be known to be the person(s) named herein and who executed the above Certification and ___he___ acknowledged to me that ___he___ voluntarily executed the same.

My term expires_____

NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANDREW FUNK, Notary Public
Whitemarsh Township, Montgomery County
My Commission Expires May 11, 2019

129a

 **OMNI INSURANCE COMPANY**
P.O. BOX 105440
ATLANTA, GA 30348-5440
(866) 300-6433

**DECLARATIONS**

| INSURED NAME AND ADDRESS | PRODUCER |
|---|---|
| SHAMEKA RENEE LAMAR | OREGON INSTANT AUTO (1000053279) |
| 2545 W SILVER ST | 2653 S 8TH ST |
| PHILADELPHIA, PA 19132 | PHILADELPHIA, PA 19148 |

PRIVATE PASSENGER AUTO
POLICY NUMBER: 4140872
DECPAGE ID: 1

POLICY PERIOD:
September 1, 2012 12:01 A.M.  to  September 1, 2013 12:01 A.M.
DECPAGE EFFECTIVE:
September 1, 2012 12:01 A.M.

**IF YOU BUY COLLISION COVERAGE, YOUR POLICY PROVIDES COLLISION COVERAGE ON RENTAL VEHICLES, PLEASE REFER TO THE PORTION OF YOUR POLICY PROVIDING 'COLLISION' COVERAGE FOR ANY LIMITATIONS IN COVERAGE THAT MAY APPLY.**

| VEHICLE | DRIVER | DISCOUNTS / SURCHARGES |
|---|---|---|
| Vehicle: 1 | SHAMEKA RENEE LAMAR | Double Airbag |
| Make: 2003 Chevrolet | Birthdate: 08/17/1980 | |
| Model: AVALANCHE 1500 BASE/Z66/Z71 | Marital Status: Single with | |
| VIN#: 3GNEC13T13G139408 | custody of kids | |
| Use: Pleasure Use | License: PA 25387713 | |
| BI/MED/PhysDam Symbol: 315/495/13 | Points: 3 | |
| Territory: 1    Tier: K | Class: SF32 | |

| COVERAGE (Premiums for 12 months) | LIMIT | PREMIUM VEH 1 | PREMIUM VEH 2 | PREMIUM VEH 3 | PREMIUM VEH 4 |
|---|---|---|---|---|---|
| Premium is based on your selection of Limited Tort and the following: | | | | | |
| Bodily Injury Liability | $15,000 per person $30,000 per occurrence | $ 696.24 | | | |
| Medical Payments | $5,000 per person | $ 392.12 | | | |
| Property Damage Liability | $5,000 per occurrence | $ 376.30 | | | |
| Uninsured Motorist BI   -   REJECTED | | | | | |
| Underinsured Motorist BI   -   REJECTED | | | | | |
| Total Premium for each vehicle: | | $ 1,464.66 | | | |
| Total Policy Premium | | | | | $ 1,464.66 |
| Your premium includes $86.3 due to violations, accidents, or other Surcharges applicable. | | | | | |
| Policy Fee | $15.00 | | | | |

**YOUR POLICY DOES NOT PROVIDE PROTECTION AGAINST DAMAGES CAUSED BY UNINSURED MOTORISTS OR UNDERINSURED MOTORISTS.**

Only the insurance coverages indicated by a specific limit of liability and/or a premium amount are provided.

| ACCIDENTS/VIOLATION POINTS | | | Surcharge Points |
|---|---|---|---|
| Name | Date | Description | |
| SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold | 3 |

FORMS AND ENDORSEMENTS

1037 (06/10) - Pennsylvania Policy Jacket
1037-1 (06/10) - Pennsylvania Amendatory Endorsement
OMNI PA UMREJ - Uninsured Motorist Protection Rejection
OMNI PA UIMREJ - Underinsured Motorist Protection Rejection

## Disclosure of Use of Consumer Reports

In order to determine your eligibility and your premium for insurance products, American Independent Companies, Inc. obtains reports provided by independent consumer reporting agencies. These reports are used to verify and supplement information that you may provide to us. Examples of the type of consumer reports we may order include the following:

### Motor Vehicle / Driving Record Reports

A Motor Vehicle Report (MVR) is obtained from your state Motor Vehicle Department or from an independent consumer reporting agency that relies on such records. This report reflects the driving record information they have on file for you or other operators under your policy, including accidents and motor vehicle violations.

### Insurance Claim Reports

Insurance claim reports, such as C.L.U.E. (Comprehensive Loss Underwriting Exchange) and others, are provided by independent consumer reporting agencies that collect claims information from many insurance companies.

### Insurance Scores

Insurance Scores are calculated for us using an analytical scoring model that objectively measures the relative likelihood of future insurance losses based on credit history files maintained by independent consumer reporting agencies.

The above consumer reports may be ordered in connection with the issuance, update, renewal or reinstatement of your policy and when seeking comparison quotes from the companies we represent.

### THIS NOTICE IS PROVIDED IN ACCORDANCE WITH THE FAIR CREDIT REPORTING ACT

#### Notice of Adverse Action

American Independent Companies, Inc uses reports obtained from consumer reporting agencies to determine insurance premiums. The types of reports we use are related to driving record (for auto policies), insurance claims (loss) history, and credit history. You are receiving this notice because your premium is higher than it would have been if your consumer report(s) had been more favorable. This decision is based upon information relating to one or more of the consumer reports listed below.

Please be advised that a consumer reporting agency did not make decisions concerning your premium and will be unable to provide you with specific reasons for your premium. If, however, you believe your consumer report information is incorrect, under the Fair Credit Reporting Act, you have the right to dispute the accuracy and/or completeness of any consumer report information directly with a consumer reporting agency.

Under the Fair Credit Reporting Act, you also have a right to obtain a free copy of your consumer report(s), and to obtain without charge all information in your file(s) at the consumer reporting agency or agencies, by making a request to the consumer reporting agency or agencies within sixty (60) days of receipt of this notice.

For driving record reports and insurance claims (loss) history reports, contact: LexisNexis Consumer Center, P.O. Box 105108, Atlanta, GA 30348-5108, or call toll free at 1-800-456-6004 (office located at 2885 Breckinridge Blvd. Suite 200, Duluth, GA 30096).If you wish to access the LexisNexis website, you can use the following address: http://www.consumerdisclosure.com

For credit reports, contact: LexisNexis Consumer Center, P.O. Box 105108, Atlanta, GA 30348-5108, or call toll free at 1-800-456-6004 (office located at 2885 Breckinridge Blvd. Suite 200, Duluth, GA 30096). Credit report information is used to calculate an insurance score, which is a measure of your loss potential. If you wish to access the LexisNexis website, you can use the following address: http://www.consumerdisclosure.com.

The insurance company listed on your policy declarations or with your policy quotation material took this action by issuing or offering you a policy at a higher premium. That company and American Independent Companies, Inc. took this action in connection with determining your premium. If you would like more detailed information regarding your insurance premium, write to us at Omni Insurance Company Consumer Affairs, P.O. Box 105021, Atlanta, GA 30348.

A-100.1 (02/10)



**OMNI INSURANCE COMPANY**
P.O. BOX 105440
ATLANTA, GA  30348-5440
(866) 300-6433

**DECLARATIONS**

PRIVATE PASSENGER AUTO
POLICY NUMBER: 4140872
DECPAGE ID: 1

POLICY PERIOD:
September 1, 2012 12:01 A.M.  to  September 1, 2013 12:01 A.M.
DECPAGE EFFECTIVE:
September 1, 2012 12:01 A.M.

FORMS AND ENDORSEMENTS

A-100.1 (02/10) - Adverse Underwriting Decision Notice

MANDATED COVERAGE NOTICE

The laws of the Commonwealth of Pennsylvania, as enacted by the general assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages. Premiums for basic mandatory coverage at the **LIMITED TORT** option

Bodily Injury:  $15,000/30,000 - $696.24
Property Damage:  $5,000 - $376.30
Medical Benefits:  $5,000 - $392.12

Authorized Signature

OMNI PA DEC (08/08)

THIS IS A TRUE AND CERTIFIED COPY OF THE ORIGINAL
10/29/14
CUSTOMER SERVICE MANAGER        DATE
NOTARY PUBLIC        DATE



**Omni**
Insurance Group
ATLANTA, GEORGIA

Personal
Auto Policy

Omni Insurance
Company

• • •

**PENNSYLVANIA**

Form 1037                    Pennsylvania (06/10)

# LIMITED TORT ALTERNATIVE
# INFORMATION NOTICE

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for noneconomic loss except that:

A. An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

1. Is convicted, or accepts Accelerated Rehabilitation Disposition for driving under the influence of alcohol or a controlled substance in that accident;

2. Is operating a motor vehicle registered in another state;

3. Intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury if the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

4. Has not maintained financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility Law;

provided that nothing in paragraphs 1. through 4. shall affect the limitation of a person, precluded from maintaining an action for noneconomic damages under

i

133a

the limited tort alternative, to recover noneconomic damages under Uninsured Motorists Coverage or Underinsured Motorists Coverage.

B. An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing, or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

C. An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

(PP 00 33 12 98) Copyright, Insurance Services Office, Inc., 1998

ii

# PERSONAL AUTO POLICY COVER SHEET –
# PENNSYLVANIA

**Your** personal auto insurance policy is a legal contract between **you** and **your** insurance company. **Your** insurance application and the policy forms indicated on **your** declarations page constitute **your** insurance policy.

**READ YOUR POLICY CAREFULLY.** This cover sheet provides only a brief outline of some of the important features of **your** policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both **you** and **your** insurance company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY CAREFULLY.**

The following is an index of the major provisions of **your** policy. Page numbers refer to the location of these provisions in the policy. Amendatory endorsements may be attached to **your** policy to modify these provisions or provide **you** with additional coverage(s).

## INDEX
## MAJOR POLICY PROVISIONS

YOUR DUTIES AFTER AN ACCIDENT OR LOSS ..........1

AGREEMENT ..........2

DEFINITIONS ..........2

PART A – LIABILITY COVERAGE ..........8
  Insuring Agreement
  Supplementary Payments
  Exclusions
  Limit of Liability
  Out of State Coverage
  Financial Responsibility
  Other Insurance

iii

PART B – FIRST PARTY BENEFITS
COVERAGE / EXTRAORDINARY MEDICAL
BENEFITS COVERAGE ............................16
    Definitions

SECTION B.1 – FIRST PARTY BENEFITS
COVERAGE ............................................17
    Insuring Agreement
    — Basic First Party Benefit
    — Added First Party Benefits
    — Combination First Party Benefits
    Exclusions
    Limit of Liability
    Priorities of Policies
    Non-Duplication of Benefits
    Part E – Our Right To Recover Payment

SECTION B.2 – EXTRAORDINARY
MEDICAL BENEFITS COVERAGE ..........23
    Limited Benefits
    Warning
    Insuring Agreement
    Exclusions
    Limit of Liability

PART C – UNINSURED / UNDERINSURED
MOTORISTS COVERAGE .........................26

SECTION C.1 UNINSURED MOTORISTS
COVERAGE (NON-STACKED) ...............26
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

SECTION C.2 UNINSURED MOTORISTS
COVERAGE (STACKED) ........................33
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

iv

SECTION C.3 UNDERINSURED MOTORISTS
COVERAGE (NON-STACKED) ...............40
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

SECTION C.4 UNDERINSURED
MOTORISTS COVERAGE (STACKED) ......47
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

PART D – COVERAGE FOR DAMAGE TO
YOUR AUTO ...........................................53
    Insuring Agreement
    Limited Transportation Expenses
    Exclusions
    Limit of Liability
    Payment of Loss
    Car Storage Coverage
    Loss Payable Clause
    No Benefit to Bailee
    Other Sources of Recovery
    Appraisal

PART E – GENERAL PROVISIONS .........62
    Bankruptcy
    Changes
    Fraud
    Legal Action Against Us
    Our Right to Recover Payment
    — Part A and Part D
    — Part C
    Payment of Premium
    Policy Period and Territory
    Termination
    Reinstatement of Policy With a Lapse
        in Coverage
    Structured Settlements
    Transfer of Your Interest in This Policy
    Two or More Auto Policies

v

135a

Our Right to Re-compute Premium
Notice
Constitutionality Clause
Pennsylvania Notice

## ENDORSEMENTS

(Only those listed in the Declarations are effective on your policy)

1037-1   PENNSYLVANIA AMENDATORY ENDORSEMENT ............73
1037-2   RENTAL REIMBURSEMENT / TRANSPORTATION EXPENSES............74
1037-3   TOWING AND LABOR COSTS COVERAGE............75
1037-6   CUSTOMIZING PARTS OR EQUIPMENT COVERAGE ............76
1037-7   NAMED NON-OWNER COVERAGE ............79
   Definitions
   Liability Coverage
   Uninsured Motorists Coverage
   Underinsured Motorists Coverage
1037-8   ADDITIONAL INSURED - LESSOR ............82
1037-9   NAMED DRIVER EXCLUSION ENDORSEMENT ............83

This list is not inclusive. There may be other endorsements attached to your policy.

**READ YOUR POLICY AND ALL ENDORSEMENTS TO YOUR POLICY CAREFULLY.**

# YOUR DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with any of the following duties is prejudicial to **us**:

A. **We** must be notified within 30 days, or as soon as practicable, of how, when and where the **accident** or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with **us** in the investigation, settlement or defense of any claim or suit.

2. Promptly send **us** copies of any notices or legal papers received in connection with the **accident** or loss.

3. Submit, as often as **we** reasonably require, to medical exams by physicians **we** select. **We** will pay for these exams.

4. Allow **us** to take signed or recorded statements, including statements under oath outside the presence of other interested persons or parties, and answer all reasonable questions **we** may ask, when and as often as **we** may reasonably require.

5. Authorize **us** to obtain:
   a. Medical reports; and
   b. Other pertinent records.

6. Submit a proof of loss when required by **us**.

7. Take reasonable steps after loss to protect **your covered auto** or any non-**owned auto** and their equipment from further loss. **We** will pay reasonable expenses incurred to do this.

8. Promptly notify the police if **your covered auto** or any **non-owned auto** is stolen or vandalized.

9. Permit **us** to inspect and appraise the damaged property before its repair or disposal.

136a

C. A person seeking Extraordinary Medical Benefits Coverage under Section **B.2.** of Part **B** must submit proof, when required by **us**, that at least $100,000 of medical expenses has been incurred as the result of any one **accident** by an **insured**.

D. A person seeking Uninsured Motorists Coverage or Underinsured Motorists Coverage must also notify the police within 24 hours, or as soon as practicable, if a hit-and-run driver is involved.

E. A person seeking Underinsured Motorists Coverage must also promptly:
1. Send **us** copies of the legal papers if a suit is brought; and
2. Notify **us** in writing of a tentative settlement between the **insured** and the insurer of the **underinsured motor vehicle** and allow **us** 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve **our** rights against the insurer, owner or operator of such **underinsured motor vehicle**.

## PERSONAL AUTO POLICY AGREEMENT

**Your** written application, the **Declarations** page and this policy constitute the entire agreement. **We** will insure **you** for the coverages and limits of liability for which a premium is shown on the **Declarations page** of this policy. In return for payment of the premium and subject to all the terms of this policy, **we** agree with **you** as follows:

## DEFINITIONS

A. Throughout this policy, **you** and **your** refer to:
1. The **named insured** shown in the **Declarations;** and
2. The spouse if a resident of the same household.

2

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy but only until the earlier of:
a. The end of 30 days following the spouse's change of residency;
b. The effective date of another policy listing the spouse as a **named insured;** or
c. The end of the policy period.

B. **We, us** and **our** refer to the Company providing this insurance.
Other words and phrases are defined. They are in **boldface** when used.

C. **Accident** means a sudden, unexpected, and unintended occurrence. All **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **accident**.

D. **Actual Cash Value** means the fair and reasonable market value at the time of the loss based on vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database or publications and dealerships, less depreciation and/or betterment.

E. **After-market Parts** means replacement **auto** parts not made by the original **auto** manufacturer of the **auto** or by a manufacturer authorized by the original **auto** manufacturer.

F. **Auto** means a land motor vehicle with at least 4 wheels including:
1. A private passenger automobile; or
2. A private passenger pickup or private passenger van, for which no other insurance policy provides coverage, that:
a. Has a Gross Vehicle Weight Rating of 9,000 lbs. or less;

3

b. Is designed for use mainly on public roads; and

c. Is not used for the delivery or transportation of persons or goods and materials unless such use is:

   i. Incidental to **your business** of installing, maintaining or repairing furnishings or equipment; or

   iii. For farming or ranching.

G. **Betterment** means an improvement that adds value to an item.

H. **Bodily injury** means bodily harm, sickness or disease, including death that results from bodily harm, sickness, or disease.

I. **Business** includes trade, profession or occupation.

J. **Declarations Page** or **Declarations** mean the document you receive from **us** listing:

   1. The types of coverages you have selected;

   2. The limit and/or deductible for each coverage;

   3. The cost for each coverage;

   4. The specified **auto** covered by this policy;

   5. The types of coverage for each such **auto**; and

   6. Other information applicable to this policy.

K. **Depreciation** means a decrease or loss of value caused by physical, technological, and/or location deterioration.

L. **Diminution of Value** means the difference in the **actual cash value** of **your covered auto** immediately before and after loss.

M. **Family member** means a person related to **you** by blood, marriage or adoption who is a resident of **your** household even if temporarily living elsewhere. This includes a ward or foster child.

N. **Insured Resident** means a person living in **your** household, other than **you** or a **family member**. Any **insured resident** must be specifically identified on the

4

application or endorsed on the policy prior to a loss. **You** have fourteen (14) calendar days to report any new **insured resident**.

O. **Noneconomic loss** means pain and suffering and other nonmonetary detriment.

P. **Non-Owned Auto** means any **auto** that is not **owned** by **you**, an **insured resident**, or a **family member**.

Q. **Occupying** means:

   1. In;

   2. Upon; or

   3. Getting in, on, out or off.

R. **Own** or **owned**, with respect to an **auto**, means:

   1. Holding legal title to the **auto**;

   2. Having legal possession of the **auto** that is subject to a written security agreement with an original term of six (6) months or more; or

   3. Having legal possession of the **auto** that is leased to that person under a written agreement for a continuous period of six (6) months or more.

S. **Owner** means any person who, with respect to an **auto**:

   1. Holds legal title to the **auto**;

   2. Has legal possession of the **auto** that is subject to a written security agreement with an original term of six (6) months or more; or

   3. Has legal possession of the **auto** that is leased to that person under a written agreement for a continuous period of six (6) months or more.

T. **Property damage** means physical injury to, destruction or loss of use of tangible property.

U. **Serious injury** means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

V. **Trailer** means a vehicle designed to be pulled by an **auto**. It also means a farm wagon or farm implement while towed by an **auto**. A **trailer** does not include a

5

mobile home, travel trailer, or any vehicle that can be lived in or is self-propelled.

W. **Your covered auto** means:
1. Any **auto** that **you** or an **insured resident** own and is shown in the **Declarations** unless **you** have asked **us** to delete that vehicle from the policy;
2. An **additional auto.**
3. A **replacement auto.**
4. Any trailer **you** own.
5. Any **auto** or trailer **you** do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:
   a. Breakdown;
   b. Repair;
   c. Servicing;
   d. Loss; or
   e. Destruction.
   This provision (W.5) does not apply to Coverage For Damage To Your Auto.

X. **Additional auto** means an **auto you** acquire during the policy period shown on the **Declarations** page, if:
1. **We** insure all **autos you** own or lease for a term of at least 6 months;
2. No other insurance policy provides coverage for that **auto;**
3. **You** pay **us** any additional premium required when due; and
4. The **additional auto** is an acceptable risk to **us** under our underwriting guidelines.

If **we** provide coverage for an **additional auto,** **we** will provide the broadest coverage **we** now provide for any **auto** shown in the **Declarations** for a period of fourteen (14) days after **you** become the owner. The **additional auto** will include physical damage coverage under Part D only if the **Declarations** indicate that Part D applies to any **auto** on the policy. **We** will not provide coverage after this fourteen

6

(14) day period, unless within this period **you** ask **us** to insure the **additional auto.** If **you** ask **us** to insure an **additional auto** after the fourteen (14) day period, any coverage **we** provide for an **additional auto** will begin at the time **you** request coverage. If **you** request coverage not already provided for any **auto** shown in the **Declarations** for the **additional auto** or increase **your** limits, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage or increase **your** limits.

Y. **Replacement Auto** means an **auto you** become the **owner** of if:
1. **You** acquire the **auto** during the policy period shown on the **Declarations** page;
2. The **auto** that **you** acquire replaces one shown on the **Declarations** page;
3. No other insurance policy provides coverage for that **auto;**
4. **You** pay **us** any additional premium required when due; and
5. The **replacement auto** is an acceptable risk to **us** under our underwriting guidelines.

If the **auto** that **you** acquire replaces one shown on the **Declarations** page, it will have the same coverage as the **auto** it replaces. **You** must ask **us** to insure a **replacement auto** within fourteen (14) days after **you** become the **owner** if **you** want to continue coverage under Part D. If **you** ask **us** to insure a **replacement auto** after this fourteen (14) day period, any coverage **we** provide under Part D for a **replacement auto** will begin at the time **you** request coverage. If **you** request coverage not already provided for any **auto** shown in the **Declarations** for the **replacement auto** or increase **your** limits, it will not become effective until after **you** ask **us** to add the coverage or increase **your** limits.

7

2. Throughout the policy, minimum limits refers to the following limits of liability as required by Pennsylvania law, to be provided under a policy of automobile liability insurance:

 1. $15,000 for each person, subject to $30,000 for each accident, with respect to bodily injury; and
 2. $5,000 for each accident with respect to property damage.

## PART A — LIABILITY COVERAGE

**INSURING AGREEMENT**

A. We will pay compensatory damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an **auto accident**. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy. We will not cover punitive or exemplary damages.

B. **Insured** as used in this Part means:
 1. **You**, an **insured resident**, or any **family member** for the ownership, maintenance or use of **your covered auto**.
 2. **You**, an **insured resident**, or any **family member** while operating a non-**owned auto** with the express or implied permission of the **owner**.
 3. A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted. The person must

8

hold a valid driver's license at the time of loss and must not be a regular operator of **your covered auto**.

 4. For **your covered auto**, any person or entity but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
 5. For any **auto** or **trailer**, other than **your covered auto**, any other person or entity but only with respect to legal responsibility for acts or omissions of **you**, an **insured resident**, or any **family member** for whom coverage is afforded under this Part. This provision (B.5.) applies only if the person or entity does not **own** or hire the **auto** or **trailer**.

**SUPPLEMENTARY PAYMENTS**

In addition to **our** limit of liability, **we** will pay on behalf of an **insured**.
 1. Up to $250 for the cost of bail bonds required because of an **accident**, including related traffic law violations. The **accident** must result in **bodily injury** or **property damage** covered under this policy.
 2. Premiums on appeal bonds and bonds to release attachments in any suit **we** defend. **We** have no duty to purchase bonds in an amount exceeding **our** limit of liability.
 3. Interest accruing after a judgment is entered in any suit **we** defend. **Our** duty to pay interest ends when **we** offer to pay that part of the judgment which does not exceed **our** limit of liability for this coverage.
 4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings, trials, or any other proceedings at **our** request.
 5. Other reasonable expenses incurred at **our** request.

9

140a

6. Prejudgment interest awarded against the insured on the part of the judgment **we** pay. Any prejudgment interest awarded against the **insured** is subject to the applicable Pennsylvania Rules of Civil Procedure.

**EXCLUSIONS**

A. **We** do not provide Liability Coverage for any **insured**:

1. Who intentionally causes **bodily injury** or **property damage**.

2. For **property damage** to property **owned** or being transported by that **insured**.

3. For **property damage** to property:
   a. Rented to;
   b. Used by; or
   c. in the care of;
   that **insured**.
   This exclusion (**A.3.**) does not apply to **property damage** to a residence or private garage.

4. For **bodily injury** to an employee or co-worker of that **insured** during the course of employment. This exclusion (**A.4.**) does not apply to **bodily injury** to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that **insured's** liability arising out of the ownership, maintenance, or use of a vehicle or trailer, including **your covered auto**, while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of newspapers, magazines, food, or any other products. This exclusion (**A.5.**) does not apply to a share-the-expense car pool or to a delivery by an **insured** as a volunteer.

6. While employed or otherwise engaged in the business of:
   a. Selling or leasing;
   b. Repairing; or
   c. Servicing;

d. Storing; or
e. Parking; or
f. Towing;
vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (**A.6.**) does not apply to the ownership, maintenance or use of **your covered auto** by:
a. **You**;
b. An **insured resident**;
c. Any **family member**; or
d. Any partner, agent or employee of **you**, an **insured resident** or any **family member**.

7. Maintaining or using any vehicle while that **insured** is employed or otherwise engaged in any **business** (other than farming or ranching) not described in Exclusion A.6.
This exclusion (**A.7.**) does not apply to the maintenance or use of an **auto** or trailer used with an **auto** if a business use surcharge is shown on the **Declarations page**.

8. For **bodily injury** or **property damage** for which that **insured**:
   a. Is an **insured** under a nuclear energy liability policy; or
   b. Would be an **insured** under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.
   A nuclear energy liability policy is a policy issued by any of the following or their successors:
   a. Nuclear Energy Liability Insurance Association;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

9. For **bodily injury** or **property damage** assumed by an **insured** under any contract or agreement.

10. For **bodily injury** or **property damage** resulting from the operation of farm machinery.

11. For **bodily injury** or **property damage** arising from the operation of a vehicle by that person as an employee of the United States Government when the provisions of the Federal Tort Claims Act apply.

12. For **bodily injury** or **property damage** caused by any vehicle, including **your covered auto**, while used in practicing, participating, or preparing for any race, speed contest or performance contest.

13. For **bodily injury** to the owner of any non-owned auto when being used by or driven by **you**, an **insured resident** or a **family member**.

14. For **bodily injury** or **property damage** resulting from the use of a vehicle for snow removal.

15. For **bodily injury** or **property damage** sustained by an **insured** while **occupying** any vehicle located for use or being used as a residence or premises.

16. For **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:
   a. Is under the minimum age to obtain a valid driver's license in the state where the vehicle is garaged;
   b. Is under fifteen (15) years of age;
   c. Does not have a valid driver's license; or
   d. Has a suspended or revoked driver's license.

B. We do not provide Liability Coverage for the ownership, maintenance or use of:
1. Any vehicle which:
   a. Has fewer than four wheels; or
   b. Is designed mainly for use off public roads.
   This exclusion (B.1.) does not apply to any **trailer**.
2. Any vehicle, other than **your covered auto**, which is:
   a. Owned by **you**; or
   b. Furnished or available for **your** regular use.
3. Any vehicle, other than **your covered auto**, which is:
   a. Owned by any **insured resident** or **family member**; or
   b. Furnished or available for the regular use of any **insured resident** or **family member**.
   However, this exclusion (B.3.) does not apply to **you** while **you** are maintaining or **occupying** any vehicle which is:
   a. Owned by an **insured resident** or **family member**; or
   b. Furnished or available for the regular use of an **insured resident** or **family member**.
4. Any vehicle, including a **trailer**, rented for any **business purpose**.

**LIMIT OF LIABILITY**
A. The limit of liability shown in the **Declarations** for each person for Bodily Injury Liability is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **auto accident**. Subject to this limit for each person, the limit of liability shown in the **Declarations** for each **accident** for Bodily Injury Liability is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **auto accident**.

The limit of liability shown in the **Declarations** for each **accident** for Property Damage Liability is **our** maximum limit of liability for all **property damage** resulting from any one auto **accident**. These limits of liability are the most **we** will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the auto **accident**.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
2. Part C.1 – Uninsured Motorists Coverage (Non-Stacked); or
3. Part C.3 – Underinsured Motorists Coverage (Non-Stacked).

C. An **auto** and attached **trailer** are considered one **auto**. Therefore, **our** limits of liability will not be increased for any **accident** involving an **auto** which has an attached **trailer**.

**OUT OF STATE COVERAGE**

If an auto **accident** to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, **we** will interpret **your** policy for that **accident** as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the **Declarations**, **your** policy will provide the higher specified limit.

14

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, **your** policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required. **You** must reimburse **us** if **we** make a payment that **we** would not have made if this policy was not certified as proof of financial responsibility.

**OTHER INSURANCE**

If there is other applicable liability insurance **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. Any insurance **we** provide for a vehicle you do not **own**, including any vehicle while used as a temporary substitute for **your covered auto**, shall be excess over any other collectible insurance.

15

143a

# PART B - FIRST PARTY BENEFITS COVERAGE / EXTRAORDINARY MEDICAL BENEFITS COVERAGE

With respect to coverage provided by this Part B, the provisions of the policy apply unless modified by Part B.

**BASIC FIRST PARTY BENEFITS – LIMITS OF LIABILITY - AS INDICATED IN THE DECLARATIONS**

**ADDED FIRST PARTY BENEFITS – LIMITS OF LIABILITY - APPLY INSTEAD OF THE BASIC FIRST PARTY BENEFIT AND COMBINATION FIRST PARTY BENEFITS ONLY AS INDICATED IN THE DECLARATIONS.**

**COMBINATION FIRST PARTY BENEFITS - LIMITS OF LIABILITY - APPLY INSTEAD OF THE BASIC FIRST PARTY BENEFIT AND ADDED FIRST PARTY BENEFITS ONLY AS INDICATED IN THE DECLARATIONS.**

**NOTE: IF ADDED FIRST PARTY BENEFITS OR COMBINATION FIRST PARTY BENEFITS ARE NOT SHOWN AS APPLICABLE IN THE DECLARATIONS, ONLY THE BASIC FIRST PARTY BENEFIT APPLIES.**

**DEFINITIONS**

The Definitions section is amended as follows:

A. **The Act** refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

B. The following definition is replaced:

**Your covered auto** means a motor vehicle:

1. To which Part A of this policy applies and for which a specific premium is charged; and

16

2. For which First Party Benefits Coverage required by **the Act** is maintained.

C. The following definition is added:

**Motor vehicle** means a self-propelled vehicle operated or designed for use upon public roads. However, **motor vehicle** does not include a vehicle operated:

1. By muscular power; or
2. On rails or tracks.

D. **Insured** as used in this section means:

1. **You** or any **family member**.
2. Any other person while:
   a. Occupying **your covered auto**; or
   b. Not occupying a motor vehicle if injured as a result of an accident in Pennsylvania involving **your covered auto.**

If **your covered auto** is parked and unoccupied it is not a motor vehicle involved in an **accident** unless it is parked in a manner which creates an unreasonable risk of injury.

## SECTION B.1 - FIRST PARTY BENEFITS COVERAGE

**INSURING AGREEMENT**

A. **BASIC FIRST PARTY BENEFIT**

We will pay, in accordance with **the Act,** the Basic First Party Benefit to or for an **insured** who sustains **bodily injury.** The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle.**

Subject to the limit shown in the Declarations, the Basic First Party Benefit consists of:

**Medical Expenses.** Reasonable and necessary medical expenses incurred for an **insured's:**

1. Care;
2. Recovery; or
3. Rehabilitation.

17

**144a**

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

**Medical expenses** will be paid if incurred within 18 months from the date of the **accident** causing **bodily injury**. However, if within 18 months from the date of the **accident**, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

**B. ADDED FIRST PARTY BENEFITS**

If the **Declarations** indicate that Added First Party Benefits apply, **we** will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle**. These benefits are subject to the provisions of the **Act**. Subject to the limits shown in the **Declarations**, Added First Party Benefits consist of the following:

1. **Medical expenses** as described in the Basic First Party Benefit.
2. **Work Loss.**
   a. Loss of income. Up to 80% of gross income actually lost by an **insured** as a result of the **accident**.
   b. Reasonable expenses actually incurred to reduce loss of income by hiring:
      (1) Special help, thereby enabling an **insured** to work; or
      (2) A substitute to perform the work a self-employed **insured** would have performed.

   However, **work loss** does not include:
   a. Loss of expected income or expenses incurred for services performed after the death of the **insured**; or

18

b. Any loss of income, or expenses incurred for services performed, during the first 5 working days the **insured** did not work due to **bodily injury.**

3. **Funeral Expenses.** Funeral or burial expenses actually incurred if **bodily injury** causes an **insured's** death within 24 months from the date of the **accident.**

4. **Accidental Death.** A death benefit paid if **bodily injury** causes the death of **you** or any **family member** within 24 months from the date of the **accident.** **We** will pay accidental death to the executor or administrator of the deceased **insured's** estate. If there is no executor or administrator, the benefit shall be paid to:
   a. The deceased **insured's** surviving spouse; or
   b. If there is no surviving spouse, the deceased **insured's** surviving children; or
   c. If there is no surviving spouse or children to the deceased **insured's** estate.

19

**C. COMBINATION FIRST PARTY BENEFITS**

If the **Declarations** indicate that Combination First Party Benefits apply, **we** will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an **insured** who sustains **bodily injury.** The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle.** These benefits are subject to the provisions of the **Act.** Subject to the limits shown in the **Declarations**, Combination First Party Benefits consist of the following, as described in the First Party Benefit and Added First Party Benefits:

1. **Medical expenses.**
2. **Work loss.**
3. **Funeral expenses.**
4. **Accidental death.**

## EXCLUSIONS

**A. We** do not provide First Party Benefits Coverage for **bodily injury** sustained by any **insured:**

1. While intentionally causing or attempting to cause **bodily injury** to himself or any other person. **We** will not pay accidental death on behalf of that **insured.**

2. While committing a felony.

3. While seeking to elude lawful apprehension or arrest by a law enforcement official.

4. While maintaining or using a **motor vehicle** knowingly converted by that **insured**. This Exclusion (A.4.) does not apply to:
   a. **You;** or
   b. Any **family member;**
   while using **your covered auto.**

5. Who, at the time of the accident, is:
   a. The **owner** of one or more registered **motor vehicles**, none of which have in effect the financial responsibility required by **the Act** or
   b. **Occupying** a **motor vehicle owned** by that **insured** for which the financial responsibility required by **the Act** is not in effect.

6. Maintaining or using a **motor vehicle** while located for use as a residence or premises.

7. While **occupying** a:
   a. Recreational vehicle designed for use off public roads; or
   b. Motorcycle, moped or similar-type vehicle.

**B. We** do not provide First Party Benefits Coverage for **bodily injury:**

1. Sustained by a pedestrian if the **accident** occurs outside of Pennsylvania. This exclusion (B.1.) does not apply to:
   a. **You;** or
   b. Any **family member.**

20

2. Sustained by any person injured as a result of conduct within the course of business of repairing, servicing or otherwise maintaining **motor vehicles.** However, this exclusion does not apply if the conduct is off the business premises.

3. Caused by or as a consequence of:
   a. Discharge of a nuclear weapon (even if accidental);
   b. War (declared or undeclared);
   c. Civil war;
   d. Insurrection; or
   e. Rebellion or revolution.

4. From or as a consequence of the following, whether controlled or uncontrolled or however caused:
   a. Nuclear reaction;
   b. Radiation; or
   c. Radioactive contamination.

## LIMIT OF LIABILITY

**A.** The limits of liability shown in the Declarations for the first party benefits that apply are the most we will pay to or for each **insured** as the result of any one **accident**, regardless of the number of:

1. Claims made;

2. Vehicles or premiums shown in the **Declarations;**

3. Vehicles involved in the **accident;** or

4. Insurers providing first party benefits.

**B.** If Combination First Party Benefits are afforded, **we** will make available at least the minimum limit required by **the Act** for the Basic First Party Benefit. This provision (B.) will not change **our** maximum limit of liability.

**C.** Any amount payable under this coverage shall be excess over any amounts:

1. Paid;

2. Payable; or

3. Required to be provided;

to an **insured** under any workers' compensation law or similar law.

21

**146a**

## PRIORITIES OF POLICIES

A. We will pay first party benefits in accordance with the order of priorities set forth by **the Act**. **We** will not pay if there is another insurer at a higher level of priority. The **First** category listed below is the highest level of priority and the **Fourth** category is the lowest level of priority. The priority order is:

| First | The insurer providing benefits to the insured as the named insured. |
|---|---|
| Second | The insurer providing benefits to the **insured** as a family member or **insured resident** who is not a **named insured** under another policy providing coverage under **the Act**. |
| Third | The insurer of the motor vehicle which the **insured** is occupying at the time of the **accident**. |
| Fourth | The insurer of any **motor vehicle** involved in the **accident** if the **insured** is not:<br>a. **Occupying** a **motor vehicle**, and<br>b. Provided first party benefits under any other automobile policy. |

An **unoccupied** parked **motor vehicle** is not a **motor vehicle** involved in an **accident** unless it is parked in a manner which creates an unreasonable risk of injury.

B. If 2 or more policies have equal priority level:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer

22

for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the **Fourth** priority, proration shall be based on the number of involved **motor vehicles**.

2. If **we** are the insurer against whom the claim is first made, **our** payment to or for an **insured** will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the **Declarations**.

3. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

## NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

## PART E - GENERAL PROVISIONS

Part E is amended as follows:

**Our Right To Recover Payment** provision does not apply.

## SECTION B.2 – EXTRAORDINARY MEDICAL BENEFITS COVERAGE

**THIS SECTION APPLIES ONLY IF EXTRAORDINARY MEDICAL BENEFITS COVERAGE IS INDICATED ON THE DECLARATIONS PAGE**

With respect to coverage provided by Section B.2., the provisions of Section B.1. – First Party Benefits Coverage apply unless modified by Section B.2.

**LIMITED BENEFITS**

**THIS SECTION B.2 PROVIDES COVERAGE ONLY FOR MEDICAL EXPENSES.**

23

## WARNING

"YOU" SHOULD BE AWARE THAT EXTRAORDINARY MEDICAL BENEFITS COVERAGE DOES NOT APPLY TO THE FIRST $100,000 OF MEDICAL EXPENSES INCURRED BY AN "INSURED". "YOU" CAN AVOID HAVING TO PAY SOME OF "YOUR" OWN MEDICAL BILLS BY PURCHASING ADDED FIRST PARTY BENEFITS COVERAGE WITH A $100,000 LIMIT OF LIABILITY FOR MEDICAL EXPENSES.

## EXTRAORDINARY MEDICAL BENEFITS COVERAGE

**INSURING AGREEMENT**
We will pay, in accordance with the Act, extraordinary medical benefits to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle.

Subject to the limit shown in the Declarations, extraordinary medical benefits consist of:

**Medical Expenses.** Reasonable and necessary medical expenses incurred for an insured's:
1. Care;
2. Recovery; or
3. Rehabilitation.
This includes remedial care and treatment rendered in accordance with a recognized method of healing.

Regardless of whether you have purchased Basic, Added or Combination First Party Benefits Coverage under this policy, we will pay extraordinary medical benefits only after $100,000 of medical expenses has been incurred by any one insured as a result of any one accident.

24

## EXCLUSIONS
The following exclusion is added:
We do not provide Extraordinary Medical Benefits Coverage for the first $100,000 of medical expenses incurred by an insured as a result of an accident.

**LIMIT OF LIABILITY**
A. The limit of liability shown in the Declarations for Extraordinary Medical Benefits Coverage is the most we will pay to or for each insured as the result of any one accident, regardless of the number of:
1. Claims made;
2. Vehicles or premiums shown in the Declarations;
3. Vehicles involved in the accident; or
4. Insurers providing extraordinary medical benefits

Extraordinary medical benefits are subject to an annual limit of $50,000 for each insured. However, this limit does not apply to medical expenses incurred within 18 months from the date the insured incurs $100,000 of medical expenses as a result of the accident.

B. Any amounts payable under this coverage shall be excess over any amounts available to an insured for medical expenses under Basic, Added or Combination First Party Benefits Coverage.

C. If an insured is eligible for benefits under both this coverage and the Catastrophic Loss Trust, the total recovery under Extraordinary Medical Benefits Coverage and the Catastrophic Loss Trust Fund combined shall not exceed $1,000,000. In no event will the amount payable under Extraordinary Medical Benefits Coverage exceed the limit of liability shown in the Declarations.

D. Any amounts payable under this coverage shall be excess over any amount:
1. Paid;

25

2. Payable; or
3. Required to be provided;
to an insured under any workers' compensation law or similar law.

## PART C – UNINSURED / UNDERINSURED MOTORISTS COVERAGE

### SECTION C.1 UNINSURED MOTORISTS COVERAGE - (NON-STACKED)

This Section Applies Only If Uninsured Motorists Coverage (Non-Stacked) Is Indicated On The Declarations Page.

INSURING AGREEMENT

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by an insured; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

No judgment for damages arising out of a suit brought against the owner or operator of an uninsured motor vehicle is binding on us unless we:
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. Insured as used in this Part means:
1. You, an insured resident of any family member.
2. Any other person occupying your covered auto up to the minimum limits

26

of liability specified by the financial responsibility law of Pennsylvania.
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

C. Uninsured motor vehicle means a land motor vehicle or trailer of any type:
1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in bodily injury without hitting:
a. You, an insured resident or any family member;
b. A vehicle which you, an insured resident or any family member are occupying; or
c. Your covered auto.
If there is no physical contact with the hit-and-run vehicle, the facts of the accident must be proved.
3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
a. Denies coverage; or
b. Is or becomes:
(1) Insolvent within six years of the date of the accident; or
(2) Involved in insolvency proceedings.

However, uninsured motor vehicle does not include any vehicle or equipment:
1. Owned by or furnished for the regular use of you, an insured resident or any family member.
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

27

3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained:

1. By **you** while **occupying**, or when struck by, any motor vehicle **you own** which is not insured for this coverage under this policy. This includes a **trailer** of any type used with that vehicle.

2. By an **insured resident or family member**:

  a. Who owns an **auto**, while **occupying**, or when struck by, any motor vehicle owned by **you**, an **insured resident**, or any **family member** which is not insured for this coverage under this policy. This includes a **trailer** of any type used with that vehicle.

  b. Who does not **own** an **auto**, while **occupying**, or when struck by, any motor vehicle **you own** which is insured for this coverage on a primary basis under any other policy.

3. While using any motor vehicle without the express or implied permission of the **owner**, or using a motor vehicle outside the scope of permission granted by the **owner**.

B. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1. If that **insured** or the legal representative settles the **bodily injury** claim and such settlement prejudices **our** right to recover payment.

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This Exclusion (B.2.)

28

does not apply to a share-the-expense car pool.

3. While **occupying your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines. This Exclusion (B.3.) does not apply to a delivery by an **insured** as a volunteer.

C. We do not provide Uninsured Motorists Coverage for **noneconomic loss** sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an **accident** involving an **uninsured motor vehicle**, unless the **bodily injury** sustained is a **serious injury**. This Exclusion (C.) does not apply if that **insured** is injured while **occupying** a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the **Declarations** for each person for Uninsured Motorists Coverage is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident**. Subject to this limit for each person, the limit of liability shown in the **Declarations** for each **accident** for Uninsured Motorists Coverage is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **accident**.

29

This is the most **we** will pay regardless of the number of:

1. **Insureds;**
2. Claims made;
3. Vehicles or premiums shown in the **Declarations;** or
4. Vehicles involved in the **accident.**

B. If **bodily injury** is sustained by an **insured** other than **you,** an **insured resident** or any **family member.**

1. That part of the limit of liability shown in the **Declarations** for each person for Uninsured Motorists Coverage that does not exceed the **minimum limits** required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident.**

2. Subject to this limit for each person, that part of the limit of liability shown in the **Declarations** for each **accident** for Uninsured Motorists Coverage that does not exceed the **minimum limits** required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **accident.**

This is the most **we** will pay regardless of the number of:

1. **Insureds;**
2. Claims made;
3. Vehicles or premiums shown in the **Declarations;** or
4. Vehicles involved in the **accident.**

This Section (B.) will not change **our** limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. **Part A** – Liability;
2. **Part B** – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;

3. **Part C.3.** – Underinsured Motorists Coverage (Non-Stacked), or
4. **Part C.4.** – Underinsured Motorists Coverage (Stacked).

D. **We** will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible. This includes all payments made to an **insured's** attorney either directly or as part of the payment made to the **insured.**

E. **We** will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

a. Workers' compensation law; or
b. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided under this Part:

The following priorities of recovery apply:

| | |
|---|---|
| **First** | The Uninsured Motorists Coverage applicable to the vehicle the **insured** was **occupying** at the time of the **accident.** |
| **Second** | The policy affording Uninsured Motorists Coverage to the **insured** as a **named insured,** an **insured resident** or any **family member.** |

1. When there is applicable insurance available under the **First** Priority:

a. The limit of liability applicable to the vehicle the **insured** was **occupying,** under the policy in the **First** priority, shall first be exhausted, and

b. The maximum recovery under all policies in the **Second** priority may equal but not exceed the highest applicable limit of liability for Uninsured Motorists Coverage for any one vehicle under any one policy providing coverage to **you**, an **insured resident** or any **family member**.

2. When there is no applicable insurance available under the **First** priority, the maximum recovery under all policies in the **Second** priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**ARBITRATION**

A. If we and an **insured** do not agree:
1. Whether that **insured** is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that **insured**;

from the **owner** or operator of an **uninsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of **our** limit of liability for this coverage.

B. Each party will:
1. Pay the expenses it incurs; and

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

# SECTION C.2 UNINSURED MOTORISTS COVERAGE - (STACKED)

**This Section Applies Only If Uninsured Motorists Coverage (Stacked) Is Indicated On The Declarations Page**

**INSURING AGREEMENT**

A. **We** will pay compensatory damages which an **insured** is legally entitled to recover from the **owner** or operator of an **uninsured motor vehicle** because of **bodily injury**:
1. Sustained by an **insured**; and
2. Caused by an **accident**.

The **owner's** or operator's liability for these damages must arise out of the ownership, maintenance or use of the **uninsured motor vehicle**.

No judgment for damages arising out of a suit brought against the **owner** or operator of an **uninsured motor vehicle** is binding on **us** unless **we**:
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect **our** interests in the suit.

B. **Insured** as used in this Part means:
1. **You**, an **insured resident** or any **family member**.
2. Any other person **occupying your covered auto** up to the **minimum limits**

of liability specified by the financial responsibility law of Pennsylvania.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

**C. Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

1. To which no **bodily injury** liability bond or policy applies at the time of the **accident**.

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an **accident** resulting in **bodily injury** without hitting:

  a. **You**, an **insured resident**, or any **family member**;

  b. A vehicle which **you**, an **insured resident**, or any **family member** are **occupying**; or

  c. **Your covered auto**.

If there is no contact with the hit-and-run vehicle, the facts of the **accident** must be proved.

3. To which a **bodily injury** liability bond or policy applies at the time of the **accident** but the bonding or insuring company:

  a. Denies coverage; or

  b. Is or becomes:

    (1) Insolvent within six years of the date of the **accident**; or

    (2) Involved in insolvency proceedings.

However, **uninsured motor vehicle** does not include any vehicle or equipment:

1. **Owned** by or furnished for the regular use of **you**, an **insured resident** or any **family member**.

2. **Owned** or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

34

3. Operated on rails or crawler treads.

4. Designed mainly for use off public roads while not on public roads.

5. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained:

1. By **you** while **occupying**, or when struck by, any motor vehicle **you own** which is not insured for this coverage. This includes a **trailer** of any type used with that vehicle.

2. By an **insured resident** or **family member** who **owns** an auto, while **occupying**, or when struck by, any motor vehicle **owned** by **you**, an **insured resident**, or any **family member** which is not insured for this coverage. This includes a **trailer** of any type used with that vehicle.

3. While using any motor vehicle without the express or implied permission of the **owner**, or using a motor vehicle outside the scope of permission granted by the **owner**.

B. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1. If that **insured** or the legal representative settles the **bodily injury** claim and such settlement prejudices our right to recover payment.

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.

3. While **occupying your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines.

35

**153a**

This Exclusion (**B.3.**) does not apply to a delivery by an **insured** as a volunteer.

**C.** **We** do not provide Uninsured Motorists Coverage for **noneconomic loss** sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an **accident** involving an **uninsured motor vehicle**, unless the **bodily injury** sustained is a **serious injury**.

This Exclusion (**C.**) does not apply if that **insured** is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.

**D.** This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law.
1. Workers' compensation law; or
2. Disability benefits law.

**E.** **We** do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**
**A.** If **bodily injury** is sustained in an **accident** by **you**, an **insured resident**, or any **family member**:
1. **Our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any such **accident** is the sum of the limits of liability shown in the **Declarations** for each person for Uninsured Motorists Coverage.
2. Subject to the maximum limit for each person described in **A.1.** above, **our** maximum limit of liability for all damages arising out of **bodily injury** resulting from any one **accident** is the sum of the limits of liability shown in the **Declarations** for each **accident** for Uninsured Motorists Coverage.

36

**3.** Subject to the maximum limits of liability set forth in **A.1.** and **A.2.** above, the most **we** will pay for **bodily injury** sustained in such **accident** by an **insured** other than **you**, an **insured resident**, or any **family member** is that part of the each person or each **accident** limit of liability shown in the **Declarations** applicable to the vehicle that the **insured** was occupying at the time of the **accident**, that does not exceed the **minimum limits** required by the financial responsibility law of Pennsylvania.

The maximum limit of liability is the most **we** will pay regardless of the number of:
1. **insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the **accident**.

**B.** If **bodily injury** is sustained by any **insured** other than **you**, an **insured resident**, or any **family member** in an **accident** in which none of **you**, an **insured resident**, or any **family member** sustain **bodily injury**:
1. That part of the limit of liability shown in the **Declarations** for each person for Uninsured Motorists Coverage that does not exceed the **minimum limits** required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident**.
2. Subject to this limit for each person, that part of the limit of liability shown in the **Declarations** for each **accident** for Uninsured Motorists Coverage that does not exceed the **minimum limits** required by the financial responsibility law of Pennsylvania is **our** maximum

37

limit of liability for all damages for **bodily injury** resulting from any one **accident**.

This is the most **we will pay** regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the **accident**.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part **A** – Liability;
2. Part **B** – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part **C.3.** – Underinsured Motorists Coverage (Non-Stacked); or
4. Part **C.4.** – Underinsured Motorists Coverage (Stacked).

D. **We will not** make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible. This includes all payments made to an **insured's** attorney either directly or as part of the payment made to the **insured**.

E. **We will not** pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this Part:

38

The following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the **insured** was **occupying** at the time of the **accident**. |
| --- | --- |
| Second | The policy affording Uninsured Motorists Coverage to the **insured** as a named **insured**, an **insured resident** or any **family member**. |

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**ARBITRATION**

A. If **we** and an **insured** do not agree:

1. Whether that **insured** is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that **insured**, from the **owner** or operator of an **uninsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated. Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of **our** limit of liability for this coverage.

B. Each party will:

1. Pay the expenses it incurs, and

39

**155a**

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

## SECTION C.3 UNDERINSURED MOTORISTS COVERAGE (NON-STACKED)

This Section Applies Only If Underinsured Motorists Coverage (Non-Stacked) Is Indicated On The Declarations Page.

With respect to the coverage provided by Section C.3, the provisions of the policy apply unless modified by Section C.3.

**INSURING AGREEMENT**

A. We will pay compensatory damages which an **insured** is legally entitled to recover from the **owner** or operator of an **underinsured motor vehicle** because of **bodily injury**:
1. Sustained by an **insured**; and
2. Caused by an **accident**.

The **owner's** or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle**.

**We will pay** under this coverage only if **1.** or **2.** below applies:
1. The limits of liability under any **bodily injury** liability bonds or policies applicable to the **underinsured motor vehicle** have been exhausted by payment of judgments or settlements; or
2. A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and **we:**

40

a. Have been given prompt written notice of such tentative settlement; and
b. Advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the **owner** or operator of an **underinsured motor vehicle** is binding on us unless **we:**
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect **our** interests in the suit.

B. **Insured** as used in this Part means:
1. **You,** an **insured resident** or any **family member.**
2. Any other person **occupying your covered auto** up to the minimum limits of liability specified by the financial responsibility law of Pennsylvania.
3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by person described in **1.** or **2.** above.

C. **Underinsured motor vehicle** means a land motor vehicle or **trailer** of any type to which a **bodily injury** liability bond or policy applies at the time of the **accident** but the available limits for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

However, **underinsured motor vehicle** does not include any vehicle or equipment:
1. For which liability coverage is provided under **Part A** of this policy.
2. Which is an **uninsured motor vehicle.**
3. Operated on rails or crawler treads.

41

Case 2:16-cv-01489-HB   Document 3   Filed 04/08/16   Page 48 of 78

4. Designed mainly for use off public roads while not on public roads.

5. While located for use as a residence or premises.

## EXCLUSIONS

A. **We do not provide** Underinsured Motorists Coverage for **bodily injury** sustained:

1. By **you** while **occupying**, or when struck by, any motor vehicle **you own** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By an **insured resident or family member**:

   a. Who owns an auto, while **occupying**, or when struck by, any motor vehicle **owned by you**, an insured resident, or any family member which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

   b. Who does not own an auto, while **occupying**, or when struck by, any motor vehicle **you own** which is insured for this coverage on a primary basis under any other policy.

3. While using any motor vehicle without the express or implied permission of the **owner**, or using a motor vehicle outside the scope of permission granted by the **owner**.

B. **We do not provide** Underinsured Motorists Coverage for **bodily injury** sustained by any **insured**:

1. While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.

2. While **occupying your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines.

42

This Exclusion (B.2.) does not apply to a delivery by an **insured** as a volunteer.

C. **We do not provide** Underinsured Motorists Coverage for **noneconomic loss** sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an **accident** involving an **underinsured motor vehicle**, unless the **bodily injury** sustained is a **serious injury**. This Exclusion (C.) does not apply if that **insured** is injured while **occupying** a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

E. **We do not provide** Underinsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the **Declarations** for each person for Underinsured Motorists Coverage is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident**. Subject to this limit for each person, the limit of liability shown in the **Declarations** for each **accident** for Underinsured Motorists Coverage is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **accident**. This is the most we will pay regardless of the number of:

1. **Insureds**;

2. Claims made;

3. Vehicles or premiums shown in the **Declarations**; or

4. Vehicles involved in the **accident**.

43

157a

B. If **bodily injury** is sustained by an **insured** other than **you**, an **insured resident**, or any **family member**:

1. That part of the limit of liability shown in the **Declarations** for each person for Underinsured Motorists Coverage that does not exceed the **minimum limits** required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one accident.

2. Subject to this limit for each person, that part of the limit of liability shown in the **Declarations** for each accident for Underinsured Motorists Coverage that does not exceed the **minimum limits** required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **accident.**

This is the most **we** will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the **accident**.

This Section (B.) will not change **our** limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.1. – Uninsured Motorists Coverage (Non-Stacked); or
4. Part C.2. – Uninsured Motorists Coverage (Stacked).

D. **We** will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible.

E. **We** will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this policy;

The following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the vehicle the **insured** was **occupying** at the time of the **accident.** |
|---|---|
| Second | The policy affording Underinsured Motorists Coverage to the **insured** as a **named insured**, an **insured resident** or any **family member**. |

1. When there is applicable insurance available under the **First** Priority:
   a. The limit of liability applicable to the vehicle the **insured** was **occupying**, under the policy in the **First** priority, shall first be exhausted; and
   b. The maximum recovery under all policies in the **Second** priority may equal but not exceed the highest applicable limit of liability for any one vehicle under any one policy providing coverage for Underinsured Motorists Coverage for any one vehicle under any one policy providing coverage to **you**, an **insured resident** or any **family member**.

44

45

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the **Second** priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

ARBITRATION

A. If **we** and an **insured** do not agree:
1. Whether that **insured** is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that **insured**; from the **owner** or operator of an **underinsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of **our** limit of liability for this coverage.

B. Each party will:
1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

46

# SECTION C.4 UNDERINSURED MOTORISTS COVERAGE (STACKED)

**This Section Applies Only If Underinsured Motorists Coverage (Stacked) Is Indicated On The Declarations Page**
With respect to the coverage provided by Section C.4, the provisions of the policy apply unless modified by Section C.4.

INSURING AGREEMENT

A. **We** will pay compensatory damages which an **insured** is legally entitled to recover from the **owner** or operator of an **underinsured motor vehicle** because of **bodily injury:**
1. Sustained by an **insured;** and
2. Caused by an **accident.**
The **owner's** or operator's liability for these damages must arise out of the ownership, maintenance or use of the **underinsured motor vehicle.**
**We** will pay under this coverage only if 1. or 2. below applies:
1. The limits of liability under any **bodily injury** liability bonds or policies applicable to the **underinsured motor vehicle** have been exhausted by payment of judgments or settlements; or
2. A tentative settlement has been made between an **insured** and the insurer of the **underinsured motor vehicle** and **we:**
   a. Have been given prompt written notice of such tentative settlement; and
   b. Advance payment to the **insured** in an amount equal to the tentative settlement within 30 days after receipt of notification.
No judgment for damages arising out of a suit brought against the **owner** or operator of an **underinsured motor vehicle** is binding on **us** unless **we:**

47

**159a**

1. Received reasonable notice of the pendency of the suit resulting in the judgment, and
2. Had a reasonable opportunity to protect our interests in the suit.

B. **Insured** as used in this Part means:

1. **You**, an **insured resident** or any **family member.**
2. Any other person **occupying your covered auto** up to the minimum limits of liability specified by the financial responsibility law of Pennsylvania.
3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

C. **Underinsured motor vehicle** means a land motor vehicle or trailer of any type to which a **bodily injury** liability bond or policy applies at the time of the **accident** but the available limits for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

However, **underinsured motor vehicle** does not include any vehicle or equipment:

1. For which liability coverage is provided under Part A of this policy.
2. Which is an **uninsured motor vehicle.**
3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

**EXCLUSIONS**

A. **We** do not provide Underinsured Motorists Coverage for **bodily injury** sustained:

1. By **you** while **occupying**, or when struck by, any motor vehicle **you own** which is not insured for this coverage.

48

This includes a **trailer** of any type used with that vehicle.

2. By an **insured resident** or family **member** who **owns** an auto, while **occupying**, or when struck by, any motor vehicle owned by **you**, an **insured resident**, or any **family member** which is not insured for this coverage. This includes a **trailer** of any type used with that vehicle.
3. While using any motor vehicle without the express or implied permission of the **owner**, or using a motor vehicle outside the scope of permission granted by the **owner.**

B. **We** do not provide Underinsured Motorists Coverage for **bodily injury** sustained by any **insured:**

1. While **occupying your covered auto** when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.
2. While **occupying your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines. This Exclusion (B.2.) does not apply to a delivery by an **insured** as a volunteer.

C. **We** do not provide Underinsured Motorists Coverage for **noneconomic loss** sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an **accident** involving an **underinsured motor vehicle** unless the **bodily injury** sustained is a **serious injury.** This Exclusion (C.) does not apply if that **insured** is injured while **occupying** a commercial motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

49

1. Workers' compensation law; or
2. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

A. If **bodily injury** is sustained in an **accident** by **you**, an **insured resident**, or any **family member**:

1. **Our** maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any such **accident** is the sum of the limits of liability shown in the **Declarations** for each person for Underinsured Motorists Coverage.

2. Subject to the maximum limit for each person described in **A.1.** above, **our** maximum limit of liability for all damages arising out of **bodily injury** resulting from any one **accident** is the sum of the limits of liability shown in the **Declarations** for each **accident** for Underinsured Motorists Coverage.

3. Subject to the maximum limits of liability set forth in **A.1.** and **A.2.** above, the most **we** will pay for **bodily injury** sustained in such **accident** by an **insured resident**, or any **family member** is that part of the each person or member's that part of the limit of liability shown in the **Declarations** applicable to the vehicle that the **insured** was **occupying** at the time of the **accident**, that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania.

The maximum limit of liability is the most **we** will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the **accident**.

B. If **bodily injury** is sustained by any **insured** other than **you**, an **insured resident**, or any **family member** in an **accident** in which none of **you**, an **insured resident**, or any **family member** sustain **bodily injury**:

1. That part of the limit of liability shown in the **Declarations** for each person for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania for all damages, including damages for care, loss of services or death, arising out of **bodily injury** sustained by any one person in any one **accident**.

2. Subject to this limit for each person, that part of the limit of liability shown in the **Declarations** for each **accident** for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is **our** maximum limit of liability for all damages for **bodily injury** resulting from any one **accident**.

This is the most **we** will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the **Declarations**; or
4. Vehicles involved in the **accident**. This Section (B.) will not change **our** limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage:

1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.1. – Uninsured Motorists Coverage (Non-Stacked); or
4. Part C.2. – Uninsured Motorists Coverage (Stacked).

D. **We will not make a duplicate payment** under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible.

E. **We will not pay for any element of loss if a** person is entitled to receive payment for the same element of loss under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

OTHER INSURANCE
If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this Part:
The following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the vehicle the **insured** was **occupying** at the time of the **accident.** |
|---|---|
| **Second** | The policy affording Underinsured Motorists Coverage to the **insured** as a **named insured, an insured resident or any family member.** |

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

ARBITRATION
A. If **we** and an **insured** do not agree:
1. Whether that **insured** is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that **insured;**

from the **owner** or operator of an **underinsured motor vehicle** then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.
Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of **our** limit of liability for this coverage.

B. Each party will:
1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the **insured** lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

## PART D - COVERAGE FOR DAMAGE TO YOUR AUTO

INSURING AGREEMENT
A. **We** will pay for direct and accidental loss to **your covered auto** or any **non-owned auto,** including original manufacturer permanently installed equipment, minus any applicable deductible shown in the **Declarations.** If loss to more than one **your covered auto** or **non-owned auto** results from the same **collision,** only the highest applicable deductible will apply. **We** will pay for loss to **your covered auto** caused by:
1. Other than **collision** only if the **Declarations** indicate that Other Than Collision coverage is provided for that **auto.**

2. **Collision** only if the Declarations indicate that Collision coverage is provided for that **auto**.
   If there is a loss to a **non-owned auto**, **we** will provide the broadest coverage applicable to any **your covered auto** shown in the Declarations.

B. **Collision** means the upset of **your covered auto** or a **non-owned auto** or their impact with another vehicle or object. Loss caused by the following is considered other than **collision**:
1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.
If breakage of glass is caused by a **collision**, **you** may elect to have it considered a loss caused by **collision**.

C. **Customizing parts or equipment** means permanently installed or attached equipment, parts, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed.

D. **Non-owned auto** means:
1. Any **auto** or trailer not **owned** by or furnished or available for the regular use of **you**, an **insured resident** or any **family member** while in the custody of or being operated by **you**, an **insured resident** or any **family member**; or
2. Any **auto** or trailer **you** do not **own** while used as a temporary substitute for **your covered auto** which is out of normal use because of its:
a. Breakdown;
b. Repair;
c. Servicing;
d. Loss; or
e. Destruction.

54

**LIMITED TRANSPORTATION EXPENSES**

In addition, **we** will reimburse **you** up to $20 per day, to a maximum of $500, for transportation expenses incurred by **you**. This applies only in the event of the total theft of **your covered auto**. **We** will pay only transportation expenses incurred during the period:
1. Beginning 48 hours after the theft is reported to the police; and
2. Ending when **your covered auto** is returned to use or **we** pay for its loss.
**We** will not pay for the cost of transportation incurred by an **insured** if there is a theft of only a **trailer**.

**EXCLUSIONS**

**We** will not pay for:
1. Loss to **your covered auto** or any **non-owned auto** which occurs while it is used to carry persons or property for compensation or a fee, including, but not limited to, delivery of newspapers, magazines, food, or any other products. This exclusion (1.) does not apply to a share-the-expense car pool or to a delivery by an **insured** as a volunteer.
2. Damage due and confined to:
a. Wear and tear;
b. Freezing;
c. Mechanical or electrical breakdown or failure;
d. Road damage to tires; or
e. Manufacturer defects.
This exclusion (2.) does not apply if the damage results from the total theft of **your covered auto** or any **non-owned auto**.
3. Loss due to or as a consequence of:
a. Radioactive contamination;
b. Discharge of any nuclear weapon (even if accidental);
c. War (declared or undeclared);
d. Civil war;
e. Insurrection; or
f. Rebellion or revolution.

55

4. Loss to equipment, devices, accessories, and any other personal effects which are not permanently installed or attached by brackets or bolts. This includes, but is not limited to:

a. tapes, compact discs, cassettes, and other recording or recorded media;

b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, or other recording or recorded media;

c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions;

d. radios, stereos, CB radios, telephones, two-way mobile radios, scanners, televisions, video or audio cassette/DVD recorders, or personal computers; and

e. any compact disc systems, navigation systems, Internet access systems, or video entertainment systems.

5. Loss of value in excess of $500 to any customizing parts or equipment unless the value of the equipment has been reported to us, scheduled, and a premium has been paid for customizing parts or equipment coverage.

6. Loss to your covered auto, any non-owned auto, or trailer due to destruction or confiscation by governmental or civil authorities because you, an insured resident or any family member engaged in illegal activities.

7. Loss to:

a. A camper body or motor home; or

b. Facilities or equipment used with a trailer, camper body or motor home. Facilities or equipment include but are not limited to:

(1) Cooking, dining, plumbing or refrigeration facilities;

(2) Awnings or cabanas; or

56

(3) Any other facilities or equipment used with a trailer, camper body, or motor home.

This exclusion (7.) does not apply if you have identified and scheduled a value for this equipment and paid premium for an endorsement to add coverage for customizing parts or equipment.

8. Loss to any non-owned auto when used by you, an insured resident or any family member without the owner's express or implied permission.

9. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

a. Special carpeting or insulation;

b. Furniture or bars;

c. Height-extending roofs including pop up roofs, raised roofs, bubble domes, and bubble windows;

d. Custom murals, paintwork, decals or other graphics; or

e. Captain chairs, swivel chairs, or tables.

This exclusion (9.) does not apply to a cap, cover or bed liner in or upon any your covered auto which is a pickup. This exclusion does not apply if you have identified and scheduled a value for this endorsement and paid premium for an endorsement to add coverage for customizing parts or equipment.

10. Loss to any non-owned auto being maintained or used by any person while employed or otherwise engaged in the business of:

a. Selling or leasing;

b. Repairing;

c. Servicing;

d. Storing;

e. Parking; or

f. Towing;

vehicles designed for use on public highways. This includes road testing and delivery.

57

11. Loss while **your covered auto** or any **non-owned auto** is used in practicing, participating, or preparing for any race, speed contest or performance contest.

12. Loss to, or loss of use of, a **non-owned auto** rented by:
   a. **You**;
   b. An **insured resident**; or
   c. Any **family member**;
   if a rental vehicle company is precluded from recovering such loss or loss of use, from **you**, an **insured resident**, or any **family member**, pursuant to the provisions of any applicable rental agreement or state law.

13. Loss to any **non-owned auto** being maintained or used by any person while employed or otherwise engaged in any **business** not described in exclusion 10. This exclusion (13.) does not apply to the maintenance or use by **you**, an **insured resident**, or any **family member** of a **non-owned auto**, which is an **auto** or **trailer**.

14. Loss to **your covered auto** or any **non-owned auto** due to or resulting from intentional acts committed by **you**, an **insured resident**, or a **family member**, or by anyone at **your** direction. This exclusion (14.) does not apply to an innocent co-insured who did not cooperate in or contribute to the creation of the loss.

15. Loss to **your covered auto** or any **non-owned auto** caused while **you**, an **insured resident** or any **family member** are involved in any unlawful activity (other than a traffic violation) or attempting to flee or fleeing from any law enforcement officer or agent.

16. Loss resulting from the use of **your covered auto** for snow removal.

17. Loss to paint or discoloration of paint resulting from acid rain, smog, salt, tree sap, or animal or bird droppings unless such loss is a direct result of a **collision** or vandalism.

18. Loss caused by the theft or conversion of **your covered auto** by a person to whom **you** have voluntarily entrusted **your covered auto**.

19. Loss to **your covered auto**, **non-owned auto** or **trailer** for diminution of value.

20. Loss to **your covered auto** or any **non-owned auto** when it is driven, operated or used by an individual with the **owner's** permission if the **owner** knows that the operator:
   a. Is under the minimum age to obtain a valid driver's license in the state where the vehicle is garaged;
   b. Is under fifteen (15) years of age;
   c. Does not have a valid driver's license; or
   d. Has a suspended or revoked driver's license.

**LIMIT OF LIABILITY**
A. Our limit of liability for loss will be the lesser of the:
   1. **Actual cash value** of the stolen or damaged property at the time of loss; or
   2. Amount necessary to repair or replace **your covered auto**, **non-owned auto**, or covered equipment with other property of like kind and quality including, but not limited to, **after-market parts**

   However, the most we will pay for loss to:
   1. Any **trailer** is $500.
   2. Non-scheduled customizing parts or equipment is $500.

B. In the event of a total loss, an adjustment for:
   1. **Depreciation** and physical condition; and
   2. Retained salvage value; will be made in determining **actual cash value**.

C. If a repair or replacement results in better than like kind or quality, **we** will not pay for the amount of the **betterment**.

**165a**

**D.** If coverage applies to a vehicle **you** do not own, our liability is limited to the highest **actual cash value** of the highest-valued **your covered auto** for which coverage under this Part has been purchased.

## PAYMENT OF LOSS

We may pay for loss in money or repair or replace the damaged or stolen property. **We** may, at **our** expense, return any stolen property to:

**A. You;** or

**B.** The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If **we** pay for loss in money, **our** payment will include the applicable sales tax for the damaged or stolen property.

## CAR STORAGE COVERAGE

We will pay up to a reasonable and customary daily rate for the cost of storage of **your covered auto** in the event of a loss to **your covered auto** for which coverage under this Part is provided. **We** will pay no more than $400 total for the cost of storage of **your covered auto** under this section.

## LOSS PAYABLE CLAUSE

Loss or damage under this policy shall be paid, as interest may appear, to **you** and the loss payee shown in the **Declarations**. **We** will not pay for any loss caused by conversion, embezzlement, secretion, fraud or omissions by **you** or anyone acting on **your** behalf. In addition, **we** will not pay a loss payee for any loss where fraud, misrepresentation, omission, concealment or intentional damage has been committed by or at the direction of an **insured**, **family member**, or **insured resident**. If **we** have to pay the loss payee for a loss not covered

under this policy, **we** will be subrogated to the loss payee's rights of recovery against **you**. This will not affect the loss payee's right to recover the full amount of its claim. The loss payee must assign **us** its interest.

We reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. **We** will give the same advance notice of cancellation to the loss payee as **we** give to the **named insured** shown in the **Declarations**. Any return premium owed to **you** will be based on the effective date of cancellation used to give advance notice to the loss payee. When **we** pay the loss payee **we** shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

## NO BENEFIT TO BAILEE

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

## OTHER SOURCES OF RECOVERY

If other sources of recovery also cover the loss, **we** will pay only **our** share of the loss. **Our** share is the proportion that **our** limit of liability bears to the total of all applicable limits. However, any insurance **we** provide with respect to a **non-owned auto** or any vehicle used as a temporary substitute for **your covered auto** shall be excess over any other collectible source of recovery including, but not limited to:

**A.** Any coverage provided by the **owner** of the **non-owned auto** or any vehicle used as a temporary substitute for **your covered auto**;

**B.** Any other applicable physical damage insurance;

**C.** Any other source of recovery applicable to the loss.

60

61

166a

## APPRAISAL

A. If **we** and **you** do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the **actual cash value** and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and

2. Bear the expenses of the appraisal and umpire equally.

B. **We** do not waive any of **our** rights under this policy by agreeing to an appraisal.

## PART E - GENERAL PROVISIONS

## BANKRUPTCY

Bankruptcy or insolvency of the **insured** shall not relieve **us** of any obligations under this policy.

## CHANGES

A. This policy contains all the agreements between **you** and **us**. Its terms may not be changed or waived except by endorsement issued by **us**.

B. If there is a change to the information used to develop the policy premium, **we** may adjust **your** premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;

2. Operators using insured vehicles;

3. The place of principal garaging of insured vehicles;

4. Coverage, deductible or limits.

If a change resulting from **A**. or **B**. requires a premium adjustment, **we** will make the premium adjustment in accordance with **our** filed rates.

C. If **we** make a change which broadens coverage under this edition of **your** policy without additional premium charge, that change will automatically apply to **your** policy as of the date **we** implement the change in **your** state. This paragraph (**C**.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of **your** policy; or

2. An Amendatory Endorsement.

## FRAUD

A. **Your** policy was issued in reliance on the information **you** provided on **your** insurance application. **We** may void coverage under this policy if **you** have knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct at the time application was made or in connection with a claim.

B. If any representation contained in any notification of change or endorsement request is false, misleading, or materially affects the acceptance or rating of the risk by **us**, by either direct misrepresentation, omission, concealment of facts, or incorrect statements, this policy will be void from the effective date of the requested change.

C. **We** do not provide coverage for any **insured** who has made fraudulent statements or engaged in fraudulent conduct in connection with any **accident** or loss for which coverage is sought under this policy. This provision shall also apply to misstatements of use and omissions of

fact. However, we will provide coverage to an insured for damages sustained by any person who has not made fraudulent statements or engaged in fraudulent conduct if such damages result from an accident which is otherwise covered by this policy.

D. If we are not permitted to void this policy, any first-party claims will be reduced by the amount of any additional premium owed to us. Any payments made by us as the result of your fraud or misrepresentation may be recovered from you, or from any payments due or made to you under any first-party coverage provided by this policy.

LEGAL ACTION AGAINST US

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:
1. We agree in writing that the insured has an obligation to pay, or
2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or entity has any right under this policy to bring us into any action to determine the liability of an insured.

OUR RIGHT TO RECOVER PAYMENT – Applies to Part A – Liability and Part D – Coverage for Damage to Your Auto

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.
However, our rights in this Paragraph (A.) do not apply under Part D, against any person using your covered auto with an insured's express or implied permission

64

and within the scope of the permission granted.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment less reasonable attorneys' fees, costs and expenses incurred by that person in collecting our share of the recovery.

OUR RIGHT TO RECOVER PAYMENT – Applies to Part C only

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.
However, our rights do not apply under Paragraph (A.) with respect to Underinsured Motorists Coverage (Sections C.3. and C.4.), if we:
1. Have been given prompt written notice of a tentative settlement between an insured and the insurer of an underinsured motor vehicle; and
2. Fail to advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.
If we advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification:
1. That payment will be separate from any amount the insured is entitled to recover under the provisions of Underinsured Motorists Coverage; and
2. We also have a right to recover the advanced payment.

65

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment. However, any reimbursement due to us shall be reduced by our pro rata share of any reasonable and necessary costs and expenses, including deposition costs, witness fees and attorney's fees, incurred in bringing the claim.

**PAYMENT OF PREMIUM**

A. This insurance coverage is conditional upon payment of premium. Payment of your initial premium by check, draft or other instrument is not considered payment until it is honored upon presentment. If your initial premium payment is by check, draft, or any remittance other than cash, coverage under this policy may be voidable at our election if the check, draft or remittance is not honored upon presentment.

B. If you make a premium payment with a check and the check is returned to us because of insufficient funds, a closed account or a stop payment, a service charge will be added to your account balance.

C. The premium stated in the **Declarations** is the initial premium for this policy. On each renewal, continuation or anniversary of the effective date of this policy, the premium shall be computed by us in accordance with our filed rates.

D. If you owe us any outstanding premium balances on your expiring, expired or cancelled policy, any moneys received by us will be applied first to pay the oldest outstanding balance.

**POLICY PERIOD AND TERRITORY**

A. This policy applies only to **accidents** and losses which occur:

1. During the policy period as shown on the **Declarations**; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories, or possessions; or

2. Canada.

This policy also applies to loss to, or accidents involving, **your covered auto** while being transported between their ports.

**TERMINATION**

A. Cancellation

This policy may be cancelled during the policy period as follows:

1. The **named insured** shown in the **Declarations** may cancel by:

a. Returning this policy to us; or

b. Giving us advance written notice of the future date cancellation is to take effect.

2. **We** may cancel by mailing to the **named insured** shown in the **Declarations** at the address shown in this policy:

a. At least 15 days notice of cancellation:

(1) If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;

(2) For nonpayment of premium; or

(3) If the driver's license of the **named insured** shown in the **Declarations** has been suspended or revoked after the effective date if this policy has been in effect less than one year, or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

   b. At least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**B. Nonrenewal**

If we decide not to renew or continue this policy, **we** will mail notice to the **named insured** shown in the **Declarations** at the address shown in this policy:

1. At least 15 days notice before the end of the policy period:
   a. For nonpayment of premium; or
   b. If the driver's license of the named **insured** shown in the **Declarations** has been suspended or revoked after the effective date if this policy has been in effect less than one year, or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

2. At least 60 days notice before the end of the policy period in all other cases. However, **our** right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

**C. Automatic Termination**

If **we** offer to renew or continue and **you** or **your** representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that **you** have not accepted **our** offer.

**D. Other Termination Provisions**

1. **We** may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, **you** may be entitled to a premium refund. If the premium refund is $10.00 or less, no refund will be sent unless **you** specifically request a refund. If **you** owe **us**

68

$10.00 or less, **we** will waive the amount outstanding. However, making or offering to make the refund is not a condition of cancellation. If **you** or **we** cancel **your** policy and a premium refund is owed to **you**, **you** will receive the refund on a pro-rata basis. If **your** policy is canceled for nonpayment of premium and a refund is owed to **you**, **you** will receive the refund on a pro-rata basis minus the cancellation fee.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

**REINSTATEMENT OF POLICY WITH A LAPSE IN COVERAGE**

This section only applies if reinstatements with a lapse in coverage are available in **your** state.

A. If this policy is cancelled for nonpayment of premium, **we** will reinstate the policy with a lapse in coverage, subject to underwriting approval, if payment is received within 20 days after the cancellation effective date.

B. For the purpose of this section, **payment** is considered the amount indicated that must be paid immediately on the past due payment notice.

C. If **you** pay **your** payment through electronic means, reinstatement of **your** coverage will be effective the date and time **your** payment is received.

D. If **you** mail **your** payment, reinstatement of **your** coverage will be effective at 12:01 A.M. on the day after **your** payment is postmarked. In the event the postmark is not present or is illegible, reinstatement of **your** coverage will be effective at 12:01 A.M. on the date **your** payment is received by **us**.

E. There will be a lapse in coverage from the cancellation date to the date and time of reinstatement.

69

Case 2:16-cv-01489-HB   Document 3   Filed 04/08/16   Page 62 of 78

F. If the consideration accepted by us as **payment** for the reinstatement is in the form of a check or draft and the bank on which the check or draft is drawn dishonors it upon presentation, the reinstatement is void as of its inception.

G. If this policy (or any renewal thereof) is cancelled because of nonpayment of premium after any reinstatement, we reserve the right to reinstate or to not reinstate and return unearned premium.

H. If this policy is reinstated, **you** will be charged a fee for reinstatement as allowed by **your** state law.

**STRUCTURED SETTLEMENTS**
If payment of **medical** expenses under Section B.2. of Part B in the form of a structured settlement will be:
1. Cost effective for **us**; and
2. In the best interest of an **insured**;
we and the **insured** may make an agreement, about the timing and amount of payments under this coverage, which is mutually satisfactory. This agreement may include annuities or other long-term payment arrangements.

**TRANSFER OF YOUR INTEREST IN THIS POLICY**
A. Your rights and duties under this policy may not be assigned without **our** written consent. However, if a **named insured** shown in the **Declarations** dies, coverage will be provided for:
1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a **named insured** shown in the **Declarations**; and
2. The legal representative of the deceased person as if a **named insured** shown in the **Declarations**. This applies only with respect to the representative's legal responsibility to maintain or use **your covered auto**.

70

B. Coverage will only be provided until the end of the policy period.

C. If a **named insured** shown in the **Declarations** terminates their marital relationship, **we** will continue to provide coverage for the former spouse of the named insured. Coverage applies only:
1. If **we** are notified of the termination of the marital relationship;
2. If the former spouse was a resident of the same household immediately prior to the termination of the marital relationship; and
3. For the lesser of 30 days or until the end of the policy period.

**TWO OR MORE AUTO POLICIES**
A. If this policy and any other **auto** insurance policy issued by **us** apply to the same **accident**, the maximum limit of **our** liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.
B. This provision does not apply to Part C2 – Uninsured Motorists Coverage (Stacked) or Part C4 – Underinsured Motorists Coverage (Stacked).
C. No one will be entitled to receive duplicate payments for the same elements of loss under Part C2 – Uninsured Motorists Coverage (Stacked) or Part C4 – Underinsured Motorists Coverage (Stacked).

**OUR RIGHT TO RE-COMPUTE PREMIUM**
**We** established the premium for this policy based on the statements you made in the application for insurance. **We** have the right to re-compute the premium if **we** later obtain information which affects the premium **we** charged.

**NOTICE**
Your notice to **our** authorized agent shall be deemed to be notice to **us**.

71

**171a**

## CONSTITUTIONALITY CLAUSE

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

## PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;
2. Consultation or advice; or
3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. If any acts or omissions of the Insurance Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

72

IN WITNESS Whereof, we have caused this policy to be executed and attested.

Bruce Arneson, President

William Lockhorn, Chairman

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-1 APPEARS ON THE POLICY DECLARATIONS

## PENNSYLVANIA AMENDATORY ENDORSEMENT

This endorsement amends your policy as follows:

I. **PART A – LIABILITY COVERAGE** is amended as follows:

A. The following exclusion is added:

We do not provide Liability Coverage for any **insured** for **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle by any resident, including a **family member**, of **your** household who is not listed on the **Declarations page** as a driver or operator.

B. The following provision (D.) is added to the **Limit of Liability** section of **PART A**:

D. Regardless of the limits of liability shown in the **Declarations**, the

73

limits of liability for **bodily injury** and **property damage** afforded by this policy to an **insured** who is both a regular user of **your covered auto** and is not a resident of **your** household other than:

1. **You**; or
2. An **insured resident**; or
3. Any **family member**;

shall not exceed the minimum limits for **bodily injury** or **property damage**.

1037-1

II. **PART D – COVERAGE FOR DAMAGE TO YOUR AUTO** is amended as follows:

The following exclusion is added:

**We** will not pay for loss to **your covered auto** while being driven, maintained or used by any person who is a resident of **your** household and is not listed on the **Declarations** page as a driver or operator.

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-6 APPEARS ON THE POLICY DECLARATIONS

**RENTAL REIMBURSEMENT / TRANSPORTATION EXPENSES**

In consideration of the premium charged and paid, **we** will pay for:

A. Temporary transportation expenses incurred by **you**, an **insured resident** or any **family member** in the event of loss to **your covered auto**. **We** will pay for such expenses if the loss is caused by:

1. Other than **collision** only if the **Declarations** indicate that Other Than Collision Coverage is provided for any **your covered auto.**

2. **Collision** only if the **Declarations** indicate that Collision Coverage is provided for any **your covered auto.**

74

B. Loss of use expenses for which **you** or an **insured resident** become legally responsible in the event of loss to a **non-owned auto**. **We** will pay for loss of use expenses if the loss is caused by:

1. Other than **collision** only if the **Declarations** indicate that Other Than Collision Coverage is provided for **your covered auto.**

2. **Collision** only if the **Declarations** indicate that Collision Coverage is provided for any **your covered auto.**

C. **We** will pay only expenses beginning when the **auto** is withdrawn from use for more than 24 hours. **Our** payment will be limited to that period of time reasonably required to repair or replace **your covered auto** or the **non-owned auto.**

D. The limit of liability shall not exceed the limit shown for this coverage in the **Declarations.** The total payment under this endorsement shall not exceed the **actual cash value of your covered auto or non-owned auto** at the time of loss. **We** will pay only if **you**, an **insured resident** or any **family member** rent an **auto** from or a licensed rental car agency.

1037-2. Includes copyrighted materials from Insurance Services Office, Inc. with its permission

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-3 APPEARS ON THE POLICY DECLARATIONS

**TOWING AND LABOR COSTS COVERAGE**

ISO PP 03 03 04 86

**We** will pay towing and labor costs incurred each time **your covered auto** or any **non-owned auto** is disabled, up to the amount shown in the **Declarations** as applicable to that vehicle, if a **non-owned auto** is disabled,

75

we will provide the broadest towing and labor costs coverage applicable to any **your covered auto** shown in the **Declarations**. We will only pay for labor performed at the place of disablement.

1037-3 (ISO PP 03 03 04 86) Copyright, Insurance Services Office, Inc. 1985, 1992

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-6 APPEARS ON THE POLICY DECLARATIONS

## CUSTOMIZING PARTS OR EQUIPMENT COVERAGE
### (ADDITIONAL EQUIPMENT)

If the **Declarations page** shows a specific premium charged for Customizing Parts or Equipment Coverage, **we will pay** for direct and accidental loss to identified and scheduled **customizing parts or equipment.** This coverage is in addition to the $500 afforded under Part D for non-scheduled **customizing parts or equipment.** This coverage applies only if the equipment is permanently installed or attached to your **covered auto** or **non-owned auto** at the time of loss and is caused by:

1. Other than **collision** only if the **Declarations page** indicates that Other Than Collision Coverage is provided for that **auto.**

2. **Collision** only if the **Declarations page** indicates that Collision Coverage is provided for that **auto.**

As used in this endorsement, **customizing parts or equipment** means permanently installed or attached equipment, parts, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed. Equipment installed or alterations made at a conversion facility to

76

**your covered auto** or any **non-owned auto** is not considered original manufacturer installed and must be identified and scheduled for this coverage to apply.

**Customizing parts or equipment** include but are not limited to:

1. Electronic equipment that receives or transmits audio, visual or data signals and is not designed solely for the reproduction of sound and any accessories used with such equipment.

2. Awnings, cabanas, cooking, dining, plumbing or refrigeration facilities, and any other facilities or equipment designed and used to provide additional living facilities.

3. Custom furnishings or equipment including:
   a. Special carpeting or insulation;
   b. Furniture or bars;
   c. Height-extending roofs including pop up roofs, raised roofs, bubble domes, and bubble windows;
   d. Custom murals, paintwork, decals or other graphics;
   e. Captain chairs, swivel chairs, or tables; or
   f. Custom chroming or gold plating.

4. Custom wheels, tires or spinners.

5. Body, engine, exhaust or suspension enhancers.

6. Sun roof, moon roof, T-bar roof, or landau roof.

7. Custom grilles, louvers, side pipes, running boards, air dams, hood scoops or spoilers.

8. Satellite tracking devices if not permanently installed by the original manufacturer or their authorized representative.

9. Radios, stereos, CB radios, telephones, two-way mobile radios, scanners, televisions, video or audio cassette/DVD recorders, or personal computers.

10. Any compact disc systems, internet access systems, or video entertainment systems.

77

174a

11. Any ground effects package or suspension lowering or raising equipment.
12. Winches, anti-roll or anti-sway bars.
13. Any continental kit.

In addition, the provisions of the policy apply except:

A. Exclusion 4, of Part D - Coverage For Damage to Your Auto does not apply to the extent that coverage is provided under this endorsement for audio, visual and data electronic equipment.

B. Exclusion 7 and 9 of Part D - Coverage For Damage To Your Auto does not apply to coverage provided by this endorsement.

C. The following exclusion is added:
We will not pay for loss to:
a. Clothing or luggage;
b. Business or office equipment;
c. Articles which are sales samples or used in exhibitions.

PART D – LIMIT OF LIABILITY is amended as follows for coverage provided by this endorsement:

LIMIT OF LIABILITY
A. is deleted in its entirety and replaced with the following:

A. Our limit of liability for loss to customizing parts or equipment will be the lesser of the following:
1. The declared value of the scheduled customizing parts or equipment shown on the Declarations page;
2. The actual cash value of the stolen or damaged property; or
3. The amount necessary to repair or replace the customizing parts or equipment with other property of like kind and quality including, but not limited to, after-market parts.

The following sections are added to the LIMIT OF LIABILITY section in PART D:

78

E. Our payment for loss will be reduced by any applicable deductible shown in the Declarations.

F. If loss to more than one of your covered autos results from the same collision, only the highest applicable deductible will apply.

1037-6  Includes copyrighted materials from Insurance Services Office, Inc. with its permission

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-7 APPEARS ON THE POLICY DECLARATIONS

NAMED NON-OWNER COVERAGE

With respect to individuals and coverages described in the Declarations, the provisions of the policy apply unless modified by this endorsement.

I. DEFINITIONS
The Definitions Section is amended as follows:
The definition of your covered auto is replaced by the following:
Your covered auto means any auto on the date you become the owner.
This provision applies only:
A. If you acquire the auto during the policy period; and
B. For 14 days after you become the owner.
This insurance does not apply if other insurance applies with respect to any newly acquired autos.

II. PART A - LIABILITY COVERAGE
Part A is amended as follows:
A. The definition of insured is amended as follows:
by deleting references to insured resident and family member.
Insured means you while operating

79

175a

any non-owned auto or trailer with the express or implied permission of the **owner.**

B. The **EXCLUSIONS** Section is amended as follows:

Exclusion B.2. is replaced by the following:

**We** do not provide Liability Coverage for the ownership, maintenance or use of any vehicle, other than **your covered auto,** which is **owned** by **you.**

C. The Out of State Coverage provision is replaced by the following:

**OUT OF STATE COVERAGE**

If an auto **accident** to which this policy applies occurs in any state or province other than where **you** reside, **we** will interpret **your** policy for that **accident** as follows:

1. If the state or province has:
   a. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the **Declarations, your** policy will provide the higher specified limit.
   b. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, **your** policy will provide at least the required minimum amounts and types of coverage.
2. No one will be entitled to duplicate payments for the same elements of loss.

---

**III. PART C.1 & C.2 – UNINSURED MOTORISTS COVERAGE**

Parts C.1. and C.2. are amended as follows:

A. The definition of **insured** is amended by deleting references to **insured resident and family member.**

**Insured** means **you.**

B. Part 2. of the definition of **uninsured motor vehicle** is replaced with the following:

**Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

2. Which is a hit-and-run vehicle whose operator or **owner** cannot be identified and which hits or which causes an **accident** resulting in **bodily injury** without hitting:

   a. **You;** or
   b. A vehicle which **you** are **occupying;**

   c. **Your covered auto,** or

If there is no physical contact with the hit-and-run vehicle, the facts of the **accident** must be proved.

**IV. PART C.3 & C.4 – UNDERINSURED MOTORISTS COVERAGE**

Part C.3 and C.4 is amended as follows:

A. The definition of **insured** is amended by deleting references to **insured resident and family member.**

**Insured** means **you.**

1037-7 Includes copyrighted materials from Insurance Services Office, Inc. with its permission

80

81

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-8 APPEARS ON THE POLICY DECLARATIONS

## ADDITIONAL INSURED - LESSOR

Any liability and any required no-fault coverages afforded by this policy for **your leased auto** also apply to the lessor named in the **Declarations** as an additional **insured**. This insurance is subject to the following additional provisions:

A. **We** will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

1. **You**, an **insured resident**, or any **family member**; or

2. Any other person except the lessor or any employee or agent of the lessor using **your leased auto**.

B. **Your leased auto** means:

1. An **auto** shown in the **Declarations** which **you** or an **insured resident** lease for a continuous period of at least six months under a written agreement which requires **you** or an **insured resident** to provide primary insurance for the lessor; and

2. Any substitute or replacement **auto** furnished by the lessor named in the **Declarations**.

C. If **we** terminate this policy, notice will also be mailed to the lessor.

D. The lessor is not responsible for payment of premiums.

E. The designation of the lessor as an additional **insured** shall not operate to increase **our** limits of liability.

1037-8 Includes copyrighted materials from Insurance Services Office, Inc. with its permission

82

Form 1037

---

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-9 APPEARS ON THE POLICY DECLARATIONS

## NAMED DRIVER EXCLUSION ENDORSEMENT

If **you** have asked **us** on **your** application (Form U-2 or the application) to exclude any person from coverage under this policy, then **we** will not pay damages, expenses or loss arising out of the maintenance or use of any **auto** or trailer by the excluded driver whether or not such maintenance or use was with the express or implied permission of the **named insured**. This includes any claim for damages made against **you**, an **insured resident**, **family member** or any other person or entity that is liable for an **accident** arising out of the operation of any **auto** by the excluded driver. This also includes any claim for damages for any negligence, which may be imputed by law to **you**, an **insured resident**, or **family member** arising out of the maintenance, operation or use of a motor vehicle by the excluded person.

The provisions of this Named Driver Exclusion Endorsement shall remain in effect for the term of the policy and for each renewal, reinstatement, substitute, modified, replacement or amended policy, unless discontinued by **us**.

1037-9

83

Pennsylvania (06/10)

177a

Form 1037

Pennsylvania (06/10)



Omni.
Insurance Group

# EXHIBIT "2"

11/04/2014 12:52 FAX                                                    ☑0001/0008



## OMNI INSURANCE COMPANY
## 2018 POWERS FERRY ROAD
## SUITE 400
## ATLANTA, GA 30339

### APPLICATION FOR PRIVATE PASSENGER AUTO INSURANCE

| APPLICANT NAME AND ADDRESS | PRODUCER |
|---|---|
| SHAMEKA RENEE LAMAR | OREGON INSTANT AUTO (1000053279) |
| 2545 W SILVER ST | 2653 S 8TH ST |
| PHILADELPHIA, PA 19132 | PHILADELPHIA, PA 19148 |
| Home: 215-667-4949 | 215-755-8045 |
| | Producer Name: ROBERT L PALUMBO 357175 |

| PREVIOUS ADDRESS (if less than 5 Years) | POLICY #: 4140872 |
|---|---|
| | POLICY EFFECTIVE: |
| | September 1, 2012 to September 1, 2013 |

### APPLICANT INFORMATION

| First | Middle | Last | Suffix | Birth Date | Marital Status | Sex | SSN |
|---|---|---|---|---|---|---|---|
| SHAMEKA | RENEE | LAMAR | | 08/17/1980 | Sngl w/ cust of kids | Female | 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 |

List all persons over 14 years of age who are residents of the same household, LICENSED OR NOT.

| Name | Relationship | Excluded | License State | License Number | Date Licensed |
|---|---|---|---|---|---|
| SHAMEKA RENEE LAMAR | Self | No | PA | 25387713 | 08/01/2000 |

### EMPLOYMENT INFORMATION

| Applicant | Employer | |
|---|---|---|
| SHAMEKA RENEE LAMAR | | UNEMPLOYED |
| | Occupation | |
| | Years in Current Occupation | |
| Work Phone: | Years with Current Employer | |
| | Years with Previous Employer | |

### VEHICLES     [ NO ] - NAMED NON-OWNER POLICY? (If "Yes", complete Named Non-Owner Automobile Endorsement)

| VEH | VIN | Year | Make and Model | Body Style | Symbol | Odometer |
|---|---|---|---|---|---|---|
| 1 | 3GNEC13T13G139408 | 2003 | Chevrolet AVALANCHE 1500 BASE/Z66/Z71 | Utility Vehicle - Two Wheel Drive 4 Door | 13 | |

### VEHICLES (Cont.)

| VEH | Vehicle Use | Damaged | Anti-Theft | Restraint System |
|---|---|---|---|---|
| 1 | Pleasure | No | Antitheft Device Installed | Double Airbag |

### VEHICLE RATING

| VEH | Garaging Address (if different) | State Registered | Territory | Rate Class | Points |
|---|---|---|---|---|---|
| 1 | | | 1 | SF32 | 3 |

### ACCIDENT / CONVICTION POINTS - PAST 35 MONTHS

| Name | Date | Location Description | Points |
|---|---|---|---|
| 1. SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold LOADED FROM CLUE • PD Paid $1,798.00 | 3 |

### COVERAGES

The applicant elects the following tort option **Limited Tort.**
Appropriate Tort Option selection notice must be signed by the applicant and attached to this application.

| | |
|---|---|
| Bodily Injury Liability | 15,000 per person / 30,000 per occurrence |
| Property Damage Liability | 5,000 per occurrence |
| Medical Payments | 5,000 per person |
| Income Loss Protection | Rejected |
| Funeral Benefits | Rejected |
| Accidental Death | Rejected |

9/1/2012 11:13:53 AM                                                    Page 1 of 13

**180a**

11/04/2014 12:53 FAX                                                          ☒0002/0008

| | |
|---|---|
| Extraordinary Medical Expenses | Rejected |
| Uninsured Motorist BI | Rejected |
|   Stack benefits | NO |
| Underinsured Motorist BI | Rejected |
|   Stack benefits | NO |
| | Veh 1 |
| Collision Deductible | Rejected |
| Comprehensive Deductible | Rejected |
| Rental Reimbursement | Rejected |
| Towing and Labor | Rejected |
| Additional Custom Parts and Equipment | Rejected |

**DISCOUNTS AND SURCHARGES**

| | |
|---|---|
| Vehicle 1 | Double Airbag |

**PREMIUMS**

| Coverage | Veh 1 |
|---|---|
| Bodily Injury Liability Premium | $696.24 |
| Property Damage Liability Premium | $376.30 |
| Medical Payments Premium | $392.12 |
| Total ($1,464.66) | $1,464.66 |
| Deposit | $150.00 |
| Pay Plan 43 | 12 Month Extended |
| Rating Tier | K |
| Policy Tier | K |
| | |
| Deposit Fee | $12.00 |
| Policy Fee | $15.00 |

**PRIOR COVERAGE - 6 months continuous prior coverage with no more than 30 days lapse**

| Name of Latest Carrier | Policy Number | Termination Date | Plan Coverage | Years | Policy Written Through Your Agency |
|---|---|---|---|---|---|
| | | | No | | No |

**HOMEOWNER - Proof will be required to receive the discount.**

| | |
|---|---|
| Residency Status | Rent |
| Residency Type | Other |

Acceptable proof of home ownership includes mortgage coupon/statement, property tax records, or deed.

**GENERAL INFORMATION -- During the past three years, has the applicant, any household member, or any driver:**

| | | | |
|---|---|---|---|
| Date agent last inspected vehicle | | If yes, explain | |
| Any other auto insurance in household? (include any provided by an employer) | NO | Has any person in the household had a license suspension or revocation in the last 36 months? | NO |
|   If yes, explain | |   If yes, explain | |
| Had a Comprehensive claim of $1,450 or more in last 36 months? | NO | Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)? | NO |
|   If yes, how many | | Do all drivers reside in the named insured's household? | YES |
| Any coverage declined, cancelled, or non-renewed during the last 3 years? | NO |   If no, explain | |
|   If yes, explain | | Are all vehicles garaged in Pennsylvania for at least 10 months per year? | YES |
| Have health problems or physical, mental or emotional handicap or disability that would impair driving ability? | NO |   If no, explain | |
|   If yes, explain | | Are there any occasional operators not rated as previously described? | NO |
| Has vehicle ever been salvaged? | NO | Are there any other cars in the household or available for regular use not previously described? | NO |
|   If yes, explain | |   If yes, explain | |
| Any vehicle "Gray Market" (i.e. not manufactured for original sale in the U.S.)? | NO | Does any listed vehicle have unrepaired damage? | NO |
|   If yes, explain | |   If yes, describe | |
| Is vehicle titled in any name other than the named insured? | NO | Has any operator been licensed in the U.S. or Canada for less than 3 years (except ages 16-19)? | NO |
|   If yes, who & why? | |   If yes, explain | |
| Any vehicles listed on this application used for hire (taxi, limo, etc.), commercial or business purposes, delivery (pizza, newspaper, etc.), or used in the course or scope of your employment? | NO | | |

**BINDER/SIGNATURE**

| INSURANCE BINDER | | IF THE "BINDER" BOX TO THE LEFT IS COMPLETED, THE FOLLOWING CONDITIONS APPLY: THIS COMPANY BINDS THE KIND(S) OF INSURANCE STIPULATED ON THIS APPLICATION. THIS INSURANCE IS SUBJECT TO THE TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY(IES) IN CURRENT USE BY THE COMPANY. |
|---|---|---|
| EFFECTIVE DATE | EXPIRATION DATE | |
| 09/01/2012 | 10/01/2012 | |

9/1/2012 11:13:53 AM                                                    Page 2 of 13

**181a**

☑0003/0008

11/04/2014 12:54 FAX

| TIME<br>10:59 AM ET | ☑ 12:01 AM | THIS BINDER MAY BE CANCELLED BY THE INSURED BY SURRENDER OF THIS BINDER OR BY WRITTEN NOTICE TO THE COMPANY STATING WHEN CANCELLATION WILL BE EFFECTIVE. THIS BINDER MAY BE CANCELLED BY THE COMPANY BY NOTICE TO THE INSURED IN ACCORDANCE WITH THE POLICY CONDITIONS. THIS BINDER IS CANCELLED WHEN REPLACED BY A POLICY. IF THIS BINDER IS NOT REPLACED BY A POLICY, THE COMPANY IS ENTITLED TO CHARGE A PREMIUM FOR THE BINDER ACCORDING TO THE RULES AND RATES IN USE BY THE COMPANY. THE QUOTED PREMIUM IS SUBJECT TO VERIFICATION AND ADJUSTMENT, WHEN NECESSARY, BY THE COMPANY. |
| | ☐ NOON | |
| ☐ COVERAGE IS NOT BOUND | | |

**NOTICE OF INSURANCE INFORMATION PRACTICES**
I UNDERSTAND THAT TO CALCULATE AN ACCURATE PRICE FOR MY INSURANCE, THE COMPANY MAY OBTAIN INFORMATION FROM THIRD PARTIES, SUCH AS CONSUMER REPORTING AGENCIES THAT PROVIDE DRIVING, CLAIMS AND CREDIT HISTORIES FOR YOU AND ALL OTHERS LISTED ON THIS APPLICATION. THE COMPANY MAY USE A CREDIT-BASED INSURANCE SCORE BASED ON THE INFORMATION CONTAINED IN THE CREDIT HISTORY. THE COMPANY OR ITS AFFILIATES MAY OBTAIN NEW OR UPDATED INFORMATION TO CALCULATE MY RENEWAL PREMIUM OR SERVICE MY INSURANCE. I MAY ACCESS INFORMATION ABOUT ME AND CORRECT IF INACCURATE. IN SOME CASES, THE LAW PERMITS THE COMPANY TO DISCLOSE THE INFORMATION IT COLLECTS WITHOUT AUTHORIZATION. HOWEVER, THE COMPANY WILL NOT SHARE PERSONAL INFORMATION WITH NONAFFILIATED COMPANIES FOR THEIR MARKETING PURPOSES WITHOUT CONSENT. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING YOUR INFORMATION IS AVAILABLE UPON REQUEST. I UNDERSTAND THE DECISION TO REQUEST A CREDIT REPORT IS NOT BASED ON RACE, COLOR, CREED, MARITAL STATUS, SEX, OR NATIONAL ORIGIN. I UNDERSTAND I SHALL BE ADVISED HOW TO OBTAIN A COPY OF MY REPORT IF AN ADVERSE UNDERWRITING DECISION OCCURS.

**FEES**
I ACKNOWLEDGE THAT THE ELECTRONIC FUNDS TRANSFER (EFT) PAYMENT PLAN INCLUDES A $5.00 SERVICE FEE PER PAYMENT. I ACKNOWLEDGE THAT ALL OTHER PAYMENT PLANS INCLUDE A $12.00 NON-STANDARD INSTALLMENT FEE PER PAYMENT. I UNDERSTAND AND AGREE TO PAY A CREDIT CARD FEE OF $3.00 FOR ANY PAYMENT MADE TO THE COMPANY WITH A CREDIT CARD OR DEBIT CARD. I ALSO AGREE TO PAY A $12.00 LATE PAYMENT FEE DURING THE POLICY TERM AND EACH RENEWAL POLICY TERM WHEN A PAYMENT IS RECEIVED BY THE COMPANY AFTER THE PREMIUM DUE DATE. I UNDERSTAND AND AGREE TO PAY A REINSTATEMENT FEE OF $15.00 EACH TIME MY CANCELLED POLICY IS REINSTATED. REINSTATEMENT IS NOT A WAIVER OF RIGHTS BY THE COMPANY AND DOES NOT IMPOSE FURTHER DUTIES ON THE COMPANY AS TO FUTURE CANCELLATIONS. REINSTATEMENT WILL NOT TAKE AFFECT IF THE CHECK OR CREDIT CARD I SUBMIT FOR REINSTATEMENT IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON. I UNDERSTAND AND AGREE TO PAY A FINAL CANCELLATION FEE OF $50.00 IF THE COMPANY CANCELS THIS POLICY DUE TO MY FAILURE TO PAY ANY PREMIUM WHEN DUE. I UNDERSTAND AND AGREE TO PAY A $30.00 FEE FOR EVERY PAYMENT RETURNED TO THE COMPANY FOR NON-SUFFICIENT FUNDS (NSF). I AGREE TO PAY A $15.00 POLICY FEE TO BE COLLECTED IN THE INITIAL PAYMENT FOR EACH POLICY TERM. I UNDERSTAND THAT MY POLICY WILL BE CANCELLED IF I AM UNWILLING TO PAY ANY OF THESE FEES.

**IN NO EVENT SHALL COVERAGE BE EFFECTIVE PRIOR TO THE DATE
AND HOUR OF COMPLETION OF THIS APPLICATION**

**APPLICANT'S STATEMENT**
I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY. I also agree to pay any surcharges applicable under Company rules that are necessitated by inaccurate or incomplete statements. I understand that my policy will be cancelled if I am willing to pay the additional premium.
Note: In connection with your request for a premium quotation: (1) we may obtain consumer reports or personal or privileged information from third parties; (2) in certain circumstances, such information, as well as other personal or privileged information subsequently collected by us, may be disclosed to third parties without your authorization, but it is not our practice to do so; (3) you have the right to access and correct all personal information collected; and (4) at your request we will: (a) confirm whether a consumer report was requested and, if so, provide the name and address of the consumer reporting agency that furnished it; and (b) provide you more detailed information regarding our collection, use, and disclosure of personal information, and your rights to access and correct such information. I also acknowledge that the Company may obtain consumer report in the future for an update, renewal or extension of this insurance.

I agree that if I pay my initial premium by check, the coverage afforded by this policy is conditional on the check being honored by the bank when presented for payment. If the check in not honored, Omni shall be deemed not to have accepted the check and this policy shall be void from inception.

Insurance coverage is conditional upon the payment of premium and payment by electronic funds transfer, check, draft, debit card, credit card or other remittance is not considered payment until it is presented to and paid by the drawee financial institution. IF THE TRANSFER, CHECK, DEBIT CARD OR CREDIT CARD OR OTHER REMITTANCE I SUBMIT WITH THIS APPLICATION IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON, COVERAGE WILL NOT TAKE EFFECT; The Company shall be deemed not to have accepted the payment and this policy shall be void.

I certify that:
• I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR or OCCASIONAL basis. This includes children away from home or away at school. I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
• Each vehicle listed in this application is garaged at the zip code provided in this application for my principle residence for ten (10) or more months each year and the garaging address of all listed auto(s) is the Pennsylvania address listed on this application.
• I have reported any driver that commutes out of state for work or school one or more times per week to the Company and agree to notify the Company prior to any such future commuting.
• I have reported any business or commercial use of my auto(s) to the Company and agree to notify the Company prior to any future business use. I understand that the Company does not cover losses if my vehicle is used for business or commercial purposes and these purposes are not disclosed prior to the loss.
• If I have requested coverage for damages to my auto(s), I have reported to the Company all unrepaired damage or glass breakage.
• The Custom or Additional Equipment I want covered has been declared and is listed on this application.

The premium for the coverages itemized on this application are based upon rates in excess of standard rates in the Commonwealth of Pennsylvania Automobile Insurance Plan. I understand that discounts are available for drivers who meet the requirements for restraint systems, anti-theft devices, and driver improvement courses.

9/1/2012 11:13:53 AM

Page 3 of 13

**182a**

11/04/2014 12:55 FAX                                                    ☒0004/0008

Regardless of the limits of liability shown on the Declarations page, the limits of liability afforded by this policy to anyone you give permission to drive the insured auto, who is not listed on the Declarations page prior to the loss, will not exceed the minimum statutory coverage required under Pennsylvania law.

*FRAUD*
The insurance policy is issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information regarding license and driving history of the undersigned, "family members" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or and "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

To the extent that we make payments to you under this policy and our subsequent investigation reveals your involvement in fraud or misrepresentation in the presentation of a claim, you must indemnify the Company for all payments made for that claim.

Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such a person to criminal and civil penalties.

APPLICANT'S SIGNATURE (applies to the sections listed below)
• Fees
• Applicant's Statement
• Fraud

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. I understand that the coverage selection and limit choices indicated here or in any state supplement and I further declare that I will notify Omni Indemnity Company by phone, e-mail or in writing if any information on this application changes while the policy, or any renewal thereof, is in force. By signing below, I agree that this application becomes a part of my policy, is a legal document, and acknowledge that I have read the warnings and statements listed on this application.

Signature of Applicant POLICY #: 4140872                              Date

**AGENT'S SIGNATURE**

I certify that to the best of my knowledge, all information contained herein is correct; the statements made herein are those of the applicant and all questions have been answered by the applicant. I have explained all coverages and options to the applicant; and the applicant and I are retaining a duplicate signed copy hereof. I am legally qualified to submit this application on behalf of the applicant.

1000053279

Signature of Agent                          Agent        Date
                                            Number

OMNI PA APP (04/11)

11/04/2014 12:55 FAX                                                      @0005/0008

## IMPORTANT NOTICE

**Benefits and Limits Notice**

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of 75 Pa. C.S.A. Section 1715(d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

You may be eligible for discounts mandated by Act 6 of 1990: (1) on first party benefits coverage if your car is equipped with a passive restraint system; (2) on comprehensive coverage if your car is equipped with a passive antitheft device; or (3) if named insured is 55 or older and has successfully completed a motor vehicle driver improvement course approved by PennDOT. See your agent for details.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

APPLICANT'S SIGNATURE POLICY #: 4140872:                        DATE:

SHAMEKA RENEE LAMAR
OMNI PA BENNOT (08/08)

184a

11/04/2014 12:56 FAX                                                    @0006/0008

## TORT OPTION SELECTION NOTICE TO NAMED INSUREDS

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The minimum motor vehicle insurance coverage and limits mandated by the Commonwealth are: Bodily Injury Liability - $15,000 for one person in any one accident and $30,000 for two or more persons in any one accident; Property Damage Liability - $5,000 per accident; and Medical Benefits - $5,000. The annual premium for these basic coverages are presented below.

A. "Limited Tort" Option - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies.

The annual premium for basic coverage as required by law under this "Limited tort" option is $1,464.66.
Additional coverages under this option are available at additional cost.

B. "Full Tort" Option - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers.

The annual premium for basic coverage as required by law under the "Full Tort" option is $2,190.23.
Additional coverage under this option is available at additional cost.

C. You may contact your insurance agent, broker or company to discuss the cost of other coverages.

D. If you wish to choose the "Limited tort" option described in paragraph A, you must sign this notice where indicated below and return it. If you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full tort" premium.

I WISH TO CHOOSE THE "LIMITED TORT" OPTION DESCRIBED IN PARAGRAPH A.

APPLICANT'S SIGNATURE   POLICY #: <u>4140872</u>:                    DATE:

_Shameka Lamar_                                                     _9/1/2012_

SHAMEKA RENEE LAMAR

E. If you wish to choose the "Full Tort" option described in paragraph B, you may sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the "Full Tort"coverage as described in paragraph B and you will be charged the "Full Tort" premium.

I wish to choose the "Full Tort" option described in paragraph B:

APPLICANT'S SIGNATURE   POLICY #: <u>4140872</u>:                    DATE:

SHAMEKA RENEE LAMAR

OMNI PA TORTOPT (08/08)

11/04/2014 12:57 FAX                                                    ☒0007/0008

## UNINSURED MOTORIST COVERAGE
## REJECTION OF UNINSURED MOTORIST PROTECTION

Uninsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who fails to have any insurance coverage.

Uninsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want uninsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: 4140872:                    DATE:

SHAMEKA RENEE LAMAR
OMNI PA UMREJ (08/08)

9/1/2012 11:13:53 AM                                          Page 9 of 13

**186a**

11/04/2014 12:58 FAX                                                     ☑0008/0008

## UNDERINSURED MOTORIST COVERAGE
## REJECTION OF UNDERINSURED MOTORIST PROTECTION

Underinsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims and whose policy limits are less than your underinsured motorists coverage limits.

Underinsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want underinsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: <u>4140872</u>:          DATE:

_(signature)_                                                    9/1/2012

SHAMEKA RENEE LAMAR
OMNI PA UIMREJ (08/08)

9/1/2012 11:13:53 AM                                            Page 10 of 13

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                          :
                                        :    No.16-1489-HB
                                        :
            v.                          :
                                        :
OMNI INSURANCE COMPANY                  :
                                        :

## MOTION FOR PARTIAL SUMMARY JUDGMENT
## OF PLAINTIFF, RICHARD DUNCAN

The plaintiff, Richard Duncan, by his counsel, Haggerty, Goldberg, Schleifer & Kupersmith, P.C., and Kelly and Herron, P.C., hereby moves the Court to enter Partial Summary Judgment in his favor and avers as follows:

### Overview

1.    The present action involves claims: (1) seeking payment of the $28,000.00 judgment entered in the underlying tort action; and (2) common law and statutory bad faith damages, in connection with the denial and disclaimer of liability coverage pursuant to an unlicensed operator exclusion under a personal auto policy issued by the defendant, Omni Insurance Company ("Omni").

2.    The recoverability of damages by the plaintiff is to be determined by the resolution of the legal coverage issue, namely the validity and enforceability of the unlicensed driver exclusion in light of established Pennsylvania law.

3.    There are no genuine issues of material fact; therefore, the parties have stipulated to the facts upon which the legal coverage issue is to be resolved. A true and correct copy of the Stipulation is attached hereto as Exhibit "A".

1

188a

**Accident**

4.　　On October 8, 2012 the plaintiff, Richard Duncan, was a passenger on board the SEPTA Route "47" bus at or near the intersection of 8th and Dickenson Streets in Philadelphia, Pennsylvania.

5.　　At that same time, a motor vehicle titled in the name of Shameka Renee Lamar, insured under the policy of insurance issued by the defendant, Omni, and operated by Chris Aaron a/k/a Chris Porter was travelling behind the bus in which the plaintiff, Richard Duncan, was a passenger. See Exhibit "A", Stipulation ¶ 1.

6.　　The motor vehicle titled in the name of Shameka Renee Lamar, insured under the policy of insurance issued by the defendant, Omni, and operated by Chris Aaron a/k/a Chris Porter struck the bus in which the plaintiff, Richard Duncan, was a passenger. See Exhibit "A", Stipulation ¶ 1.

7.　　The plaintiff, Richard Duncan, claims to have sustained personal injuries in the collision. See Exhibit "A", Stipulation ¶ 3.

8.　　Chris Aaron a/k/a Chris Porter was not a licensed operator in Pennsylvania at the time of the subject accident or at any other time material to this action.

**Tort Claim**

9.　　Following the motor vehicle accident, the plaintiff, Richard Duncan, made a claim upon Chris Aaron, Shameka Renee Lamar and the defendant, Omni, seeking recovery of damages in tort. See Exhibit "A", Stipulation ¶ 5.

2

10.     By letter dated July 1, 2014 counsel for the plaintiff, Richard Duncan, wrote to the defendant, Omni, providing information regarding liability and damages with respect to Duncan's claims arising from the October 8, 2012 collision. See Exhibit "A", Stipulation ¶ 3.

11.     By letter dated July 8, 2014 the defendant, Omni, wrote to counsel for the plaintiff, Richard Duncan, denying and disclaiming all coverage for the loss on the basis that the vehicle titled in the name of Shameka Renee Lamar and insured by the defendant, Omni, was being operated by an unlicensed driver at the time of the collision. See Exhibit "A", Stipulation ¶ 4.

12.     In the letter of July 8, 2014, Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, advised counsel for the plaintiff, Richard Duncan:

> Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.
>
> The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3.A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.
>
> Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

See Exhibit "A", Stipulation ¶ 4.

<u>**Policy of Insurance**</u>

13.    At the time of the accident there existed a policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar.  A true and correct copy of the Policy of Insurance is attached as Exhibit "A", Stipulation ¶ 1.

14.    The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar listed the vehicle operated by Chris Aaron a/k/a Chris Porter as an insured vehicle. See Exhibit "A", Stipulation ¶ 1.

15.    The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar provided:

**PART A – LIABILITY COVERAGE**

**INSURING AGREEMENT**

    A.    We will pay compensatory damages for **bodily injury** or **property damage** for which any insured becomes legally responsible because of an **auto accident.**

       *               *           *

    B.    **Insured** as used in this Part means:

        2.    **You**, an **insured   resident, or any family member** for the ownership, maintenance or use of your covered auto.

        3.    A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto.

       *               *           *

4

**EXCLUSIONS**

A.    We do not provide Liability Coverage for any insured.

      16.    For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

            c.    Does not have a valid driver's license; or

            d.    Has a suspended or rescinded driver's license.

See Exhibit "A", Stipulation ¶ 1, pp. 24-26.

### Statutory Provisions

16.    The policy of insurance in question was issued in Pennsylvania to a Pennsylvania citizen and provided coverage in accordance with Pennsylvania law.

17.    The resolution of the legal coverage issue is governed by Pennsylvania law.

18.    Section 1574 of the Pennsylvania Motor Vehicle Code provides:

    (a)    **General Rule.** – No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this Chapter or who is not licensed for the type or class of vehicle to be driven.

    (b)    **Penalty.** – Any person violating the provisions subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S.A. § 1574.

19.    Pennsylvania courts have interpreted the legislative intent behind these provisions [§1574(a) and (b)] to hold the vehicle owner vicariously liable for such damages caused by unauthorized or unlicensed drivers.    See Olsen v. SEPTA, 27 Pa. D&C 5th 399 (Phila CCP) (February 6, 2013)(Tucker, J) citing Terwilliger v. Kitchen, 781 A.2d 1201, 1207 (Pa. Super. 2001)

citing, <u>Commonwealth of Pennsylvania, Dep't of Public Welfare v. Hickey</u>, 136 Pa. Commw. 223, 582 A.2d 734 (Pa. Cmwlth. 1990)).

**Tort Suit**

20.     The plaintiff, Richard Duncan, instituted suit against Chris Aaron and Shameka Renee Lamar in the Court of Common Pleas of Philadelphia County (<u>Richard Duncan v. Chris Aaron and Shameka Renee Lamar</u>, September Term, 2014, No. 0479). See Exhibit "A", Stipulation ¶ 5.

21.     In the Complaint in the underlying tort action, the plaintiff, Richard Duncan, asserted a claim against Shameka Renee Lamar for recovery of damages as a result of allowing an unlicensed driver to operate her vehicle.  See Exhibit "A", Stipulation ¶ 5.

22.     In the Complaint, the plaintiff, Richard Duncan, specifically averred:

13.     The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shameka Renee Lamar, which consisted of the following:

> a)     failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;
>
> b)     failing to maintain the vehicle in proper working order;
>
> c)     negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

See Exhibit "A", Stipulation, ¶ 5.

23.     Upon receipt of the Complaint in the underlying tort action, Omni wrote to Shameka Renee Lamar and Chris Aaron a/k/a Chris Porter by letter dated September 16, 2014

6

declining coverage for the claim and advising them, *inter alia*, to retain their own attorneys at their expense to defend the lawsuit since Omni would not be providing them with an attorney. See Exhibit "A", Stipulation ¶¶ 6 & 7.

24.     The defendant, Omni, did not provide a defense to Chris Aaron or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County. See Exhibit "A", Stipulation ¶¶ 6 & 7.

25.     The defendant, Omni, did not indemnify Chris Aaron or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County. See Exhibit "A", Stipulation ¶¶ 6 & 7.

26.     The plaintiff, Richard Duncan, proceeded to arbitration in the underlying tort action in the Court of Common Pleas of Philadelphia County. See Exhibit "A", Stipulation ¶ 8.

27     An Arbitration Hearing was conducted in the underlying tort action in the Court of Common Pleas of Philadelphia County on June 3, 2015. See Exhibit "A", Stipulation ¶ 8.

28.     Following the Arbitration Hearing in the underlying tort action, the arbitrators entered a Report and Award of Arbitrators in favor of the plaintiff, Richard Duncan, and against Chris Aaron and Shameka Renee Lamar. See   Exhibit "A", Stipulation ¶ 8.

29.     The Report and Award of Arbitrators entered in the underlying tort action provides:

> Judgment for Plaintiff and against Defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 ($13,000.00 for medicals and $15,000.00 for pain and suffering).

See   Exhibit "A", Stipulation ¶ 8.

30.    Subsequently, the plaintiff, Richard Duncan, entered Judgment on the Arbitration Award against Chris Aaron and Shameka Renee Lamar.  See  Exhibit "A", Stipulation ¶ 9.

31.    The defendant, Omni, has not satisfied the Judgment. See  Exhibit "A", Stipulation ¶ 9.

## Assignment of Claims

32.    At all times material hereto, Shameka Renee Lamar was the named insured under the policy of insurance issued by Omni.  See Exhibit "A", Stipulation ¶ 1.

33.    Following the entry of the judgment in the underlying tort action, Richard Duncan obtained from Shameka Renee Lamar an Assignment of all claims and rights against the defendant, Omni.  See Exhibit "A", Stipulation ¶ 10.

34.    Pursuant to this assignment, Richard Duncan seeks: (1) payment of the $28,000.00 judgment; and (2) recovery of common law and statutory bad faith damages.

## Involuntary and Unenforceability of Exclusion

35.    The unlicensed operator exclusion is violative of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

36.    Section 1786(a) Motor Vehicle Financial Responsibility Law requires mandatory liability coverage.  In this regard, 1786 (a) provides:

**(a)    General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

75 Pa. C.S.A. § 1786(a).

8

195a

37.    Section 1786(f) of the Motor Vehicle Financial Responsibility Law requires the

extension of mandatory liability coverage to permissive drivers.  In this regard, § 1786(f) provides:

> **(f)    Operation of motor vehicle without required financial responsibility.--**
> Any owner of a motor vehicle for which the existence of financial responsibility is
> a requirement for its legal operation shall not operate the motor vehicle **or** permit
> it to be operated upon a highway of this Commonwealth without the financial
> responsibility required by this chapter.

75 Pa. C.S.A. § 1786.

38.    The Pennsylvania Motor Vehicle Financial Responsibility Law defines

financial responsibility, in pertinent part, as follows:

> The ability to respond in damages for liability on account of accidents arising out
> of the maintenance or use of a motor vehicle in the amount of $15,000 because of
> injury to one person in any one accident . . .

75 Pa. C.S.A. § 1702.

39.    The Pennsylvania Superior Court has held that §1786 implicitly directs that all

permissive users be insured under the owner's policy, stating:

> Admittedly, the MVFRL continues not to include specific language directing that
> all permissive users of a vehicle be insured under the owner's insurance. *However,*
> *we find the changes to § 1786 implicitly direct that such coverage be provided.*

Progressive N. Ins. Co. v. Universal Underwriters Ins. Co., 898 A.2d 1116, 1119 (Pa.

Super. 2006), appeal denied, 909 A.2d 1290 (Pa. 2006) (Emphasis added)

40.    The unlicensed operator exclusion is violative of the dictates of the Pennsylvania

Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq.

41.    The unlicensed operator exclusion is also violative of specific provisions of the

Pennsylvania Motor Vehicle Code, 75 Pa.C.S.A. § 1501 et seq.

42.    Section 1574 of the Pennsylvania Motor Vehicle Code provides, in pertinent part:

9

**§ 1574.  Permitting unauthorized person to drive.**

   **(a)  General rule.**--No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.

   **(b)  Penalty.**--Any person violating the provisions of subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S.A. § 1574.

   43.   The Pennsylvania Motor Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed driver to operate it.

   44.   The unlicensed operator exclusion impermissibly eliminates coverage in violation of the Pennsylvania Motor Vehicle Code.

   45.   The unlicensed operator exclusion is violation of public policy.

   46.   It is the public policy in Pennsylvania to have operators of motor vehicles on highways in the Commonwealth to be insured.

   47.   The unlicensed operator exclusion is violative of and frustrates the public policy in Pennsylvania.

   48.   The unlicensed operator exclusion is void and unenforceable.

### Payment of Judgment

   49.   Omni is required to provide coverage for the claims against Shameka Renee Lamar in the underlying tort action.

   50.   Omni wrongfully disclaimed coverage to Shameka Renee Lamar in the underlying tort action.

   51.   Omni is responsible for and obligated to satisfy the $28,000.00 judgment entered in the underlying tort action.

10

## Recovery of Bad Faith Damages

52.    The Pennsylvania Bad Faith Statute, 42 Pa.C.S.A. § 8371, provides:

> In an action arising under an insurer policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:

(1)    Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.

(2)    Award punitive damages against the insurer.

(3)    Assess court costs and attorneys fees against the insurer.

42 Pa.C.S.A. § 8371.

53.    In Pennsylvania, bad faith has been held to be any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. See Terletsky v. Prudential Property & Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994 ) appeal den'd 659 A.2d 560 (Pa. 1995) and Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 136-137 (3d Cir. 2005).

54.    Omni acted in bad faith in disclaiming coverage on the basis of the unlicensed operator exclusion.

55.    Omni acted in bad faith in disclaiming coverage in the face of the clear dictates of Pennsylvania law.

11

56.     Omni is required to make payment of interest, counsel fees and punitive damages to Richard Duncan by reason of the bad faith disclaimer of coverage.[1]

WHEREFORE, the plaintiff, Richard Duncan, respectfully requests that this Court enter an Order:

    (a)   granting the Motion for Partial Summary Judgment;

    (b)   requiring the Omni Insurance Company to pay the $28,000.00 judgment, plus interest;

    (c)   finding the Omni Insurance Company to have acted in bad faith; and

---

[1]  Bad faith damages will need to be assessed in a separate hearing.

(d)  establishing a timetable for discovery and a hearing on the issue of the amount of bad faith damages to be assessed.

Respectfully Submitted,

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:       _JCH4113_____        _____
          JAMES C. HAGGERTY, ESQUIRE
          SUZANNE TIGHE, ESQUIRE
          PA Attorney I.D. # 30003; 80179
          1835 Market Street, Suite 2700
          Philadelphia, PA  19103
          (267) 350-6600
          FAX (215) 665-8197


KELLY & HERRON, P.C.


BY:   _/s/ Kevin P. Kelly_____
      KEVIN P. KELLY, Esquire
      PA Attorney I.D. # 28306
      1500 Market Street
      Centre Square – West Tower
      Suite W-3110
      Philadelphia, PA  19102

Attorneys for Plaintiff

13

**200a**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN :
: No.16-1489-HB
:
v. :
:
OMNI INSURANCE COMPANY :
:

## MEMO OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY OF PLAINTIFF, RICHARD DUNCAN

### FACTS

**(a)    Generally**

The present action involves claims: (1) seeking payment of the $28,000.00 judgment entered in the underlying tort action; and (2) common law and statutory bad faith damages, in connection with the denial and disclaimer of liability coverage pursuant to an unlicensed operator exclusion under a personal auto policy issued by the defendant, Omni Insurance Company ("Omni"), pursuant to an unlicensed operator exclusion.    The parties have agreed there is no dispute as to the operative facts and have prepared a Stipulation of Facts See Exhibit "A".    The plaintiff, Richard Duncan, was a passenger on board the SEPTA Route "47" when it was struck by a motor vehicle titled in the name of Shameka Renee Lamar, insured under the policy of insurance issued by the defendant, Omni, and operated by Chris Aaron a/k/a Chris Porter. Chris Aaron a/k/a Chris Porter was not a licensed operator in Pennsylvania at the time of the subject accident or at any other time material to this action.  Following the accident, the plaintiff, Richard Duncan, made claim for recovery of damages in tort against the owner and operator of the striking vehicle.  The defendant, Omni, as the insurer of the striking vehicle denied the claims on basis of

14

the unlicensed operator exclusion.  The validity and enforceability of that exclusion, as well as the propriety of Omni's actions in relying upon that exclusion, are at issue in this case

The unlicensed operator exclusion is violative of Pennsylvania law and public policy. Initially, it is noted that the Pennsylvania Motor Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed driver to operate the insured motor vehicle.  The exclusion violates this mandate.  Secondly, the Pennsylvania Motor Vehicle Financial Responsibility Law requires mandatory liability coverage, as well as an extension of liability coverage to permissive users.  The unlicensed operator exclusion impermissibly eliminates coverage in violation of the Financial Responsibility Law.  Thirdly, the exclusion violates public policy.  It is the public policy in Pennsylvania to have operators of motor vehicles on highways in the Commonwealth insured. The unlicensed operator exclusion is violative of and frustrates the public policy in Pennsylvania.  For these reasons, the unlicensed operator exclusion is void and unenforceable.  The actions of Omni in relying upon this exclusion in light of the clear mandate of Pennsylvania law are bad faith.  Therefore, Omni is required to make payment of not only the $28,000.00 judgment but also interest, counsel fees and punitive damages[2]. Accordingly, the plaintiff, Richard Duncan, respectfully requests that the instant Motion for Partial Summary Judgment be granted.

**(b)    <u>Accident</u>**

On October 8, 2012 the plaintiff, Richard Duncan, was a passenger on board the SEPTA Route "47" at or near the intersection of 8th and Dickenson Streets in Philadelphia, Pennsylvania. See Exhibit "A", Stipulation ¶ 3.  At that same time, a motor vehicle titled in the name of Shameka

---

[2] Bad faith damages will need to be assessed in a separate hearing.

Renee Lamar, insured under the policy of insurance issued by the defendant, Omni, and operated by Chris Aaron a/k/a Chris Porter was travelling behind the bus in which the plaintiff, Richard Duncan, was a passenger. See Exhibit "A", Stipulation ¶3. The motor vehicle titled in the name of Shameka Renee Lamar, insured under the policy of insurance issued by the defendant, Omni, and operated by Chris Aron a/k/a Chris Porter struck the bus in which the plaintiff, Richard Duncan, was a passenger. See Exhibit "A", Stipulation ¶ 3. The plaintiff, Richard Duncan, claims to have sustained personal injuries in the collision. See Exhibit "A", Stipulation ¶ 3. At the time of the accident there existed a policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar. See Exhibit "A", Stipulation ¶ 1.

    **(c)**    **Tort Claim**

Following the motor vehicle accident, the plaintiff, Richard Duncan, made a claim upon Chris Aaron, Shameka Renee Lamar and the defendant, Omni, seeking recovery of damages in tort. See Exhibit "A", Stipulation ¶ 5. By letter dated July 1, 2014 counsel for the plaintiff, Richard Duncan, wrote to the defendant, Omni, providing information regarding liability and damages with respect to Duncan's claims arising from the October 8, 2012 collision. See Exhibit "A", Stipulation ¶ 3. By letter dated July 8, 2014 the defendant, Omni, wrote to counsel for the plaintiff, Richard Duncan, denying and disclaiming all coverage for the loss on the basis that the vehicle titled in the name of Shameka Renee Lamar and insured by the defendant, Omni, was being operated by an unlicensed driver at the time of the collision. See Exhibit "A", Stipulation ¶ 4. In the letter of July 8, 2014, Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, advised counsel for the plaintiff, Richard Duncan:

> Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

16

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3.A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

See Exhibit "A", Stipulation ¶ 4.

### (d)    Policy of Insurance

At the time of the accident there existed a policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar. A true and correct copy of the Policy of Insurance is attached as Exhibit "A", Stipulation ¶ 1. The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar listed the vehicle operated by Chris Aaron a/k/a Chris Porter as an insured vehicle. See Exhibit "A", Stipulation ¶ 1. The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar provided:

### PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

A.    We will pay compensatory damages for **bodily injury** or **property damage** for which any insured becomes legally responsible because of an **auto accident.**

\*                    \*                    \*

B.    **Insured** as used in this Part means:

17

2.   **You**, an **insured** resident**, or any family member** for the ownership, maintenance or use of your covered auto.

3.   A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto.

\*             \*             \*

**EXCLUSIONS**

A.   We do not provide Liability Coverage for any insured.

16.   For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

c.   Does not have a valid driver's license; or

d.   Has a suspended or rescinded driver's license.

See Exhibit "A", Stipulation ¶ 1, pp. 24-26.

**(e)   <u>Statutory Provisions</u>**

The policy of insurance in question was issued in Pennsylvania to a Pennsylvania citizen and provided coverage in accordance with Pennsylvania law.  The resolution of the legal coverage issue is governed by Pennsylvania law. Section 1574 of the Pennsylvania Motor Vehicle Code provides:

(a)   **General Rule.** – No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this Chapter or who is not licensed for the type or class of vehicle to be driven.

(b)   **Penalty.** – Any person violating the provisions subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

18

**205a**

75 Pa.C.S.A. § 1574.

**(f)**    **Tort Suit**

The plaintiff, Richard Duncan, instituted suit against Chris Aaron and Shameka Renee Lamar in the Court of Common Pleas of Philadelphia County (_Richard Duncan v. Chris Aaron and Shameka Renee Lamar_, September Term, 2014, No. 0479). See Exhibit "A", Stipulation ¶ 5.   In the Complaint in the underlying tort action, the plaintiff, Richard Duncan, asserted a claim against Shameka Renee Lamar for recovery of damages as a result of allowing an unlicensed driver to operate her vehicle.   See Exhibit "A", Stipulation ¶ 5. In the Complaint, the plaintiff, Richard Duncan, specifically averred:

> 13.    The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shameka Renee Lamar, which consisted of the following:
>
> a)    failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;
>
> b)    failing to maintain the vehicle in proper working order;
>
> c)    negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

See Exhibit "A", Stipulation, ¶ 5.   Upon receipt of the Complaint in the underlying tort action, Omni wrote to Shameka Renee Lamar and Chris Aaron a/k/a Chris Porter by letter dated September 16, 2014 declining coverage for the claim and advising them, _inter alia_, to retain their own attorneys at their expense to defend the lawsuit since Omni would not be providing them with an attorney. See Exhibits "A", Stipulation ¶¶ 6 & 7.   The defendant, Omni, did not provide a

defense to Chris Aaron or Shameka Renee Lamar in the action instituted by the plaintiff, Richard

Duncan, in the Court of Common of Philadelphia County. See Exhibit "A", Stipulation ¶¶ 6 & 7.

The defendant, Omni, did not indemnify Chris Aaron or Shameka Renee Lamar in the action

instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County. See

Exhibit "A", Stipulation ¶¶ 6 & 7.

The plaintiff, Richard Duncan, proceeded to arbitration in the underlying tort action in the

Court of Common Pleas of Philadelphia County. See Exhibit "A", Stipulation ¶ 8.  An Arbitration

Hearing was conducted in the underlying tort action in the Court of Common Pleas of Philadelphia

County on June 3, 2015. See Exhibit "A", Stipulation ¶ 8.  Following the Arbitration Hearing in

the underlying tort action, the arbitrators entered a Report and Award of Arbitrators in favor of the

plaintiff, Richard Duncan, and against Chris Aaron and Shameka Renee Lamar. See  Exhibit "A",

Stipulation ¶ 8.  The Report and Award of Arbitrators entered in the underlying tort action

provides:

> Judgment for Plaintiff and against Defendants, Chris Aaron and Shameka Renee
> Lamar, in the amount of $28,000.00 ($13,000.00 for medicals and $15,000.00 for
> pain and suffering).

See  Exhibit "A", Stipulation ¶ 8.  Subsequently, the plaintiff, Richard Duncan, entered Judgment

on the Arbitration Award against Chris Aaron and Shameka Renee Lamar.  See  Exhibit "A",

Stipulation ¶ 9. The defendant, Omni, has not satisfied the Judgment. See  Exhibit "A", Stipulation

¶ 9.

### (g)    Assignment of Claims

At all times material hereto, Shameka Renee Lamar was the named insured under the policy

of insurance issued by Omni.  See Exhibit "A", Stipulation ¶ 1.    Following the entry of the

judgment in the underlying tort action, Richard Duncan obtained from Shameka Renee Lamar an Assignment of all claims and rights against the defendant, Omni.  See Exhibit "A", Stipulation ¶ 10.  Pursuant to this assignment, Richard Duncan seeks: (1) payment of the $28,000.00 judgment; and (2) recovery of common law and statutory bad faith damages.

Shameka Renee Lamar was entitled to a defense and indemnification under the policy issued by the defendant, Omni, in connection with the October 8, 2012 motor vehicle accident. The defendant, Omni, failed to comply with the specific mandate of Pennsylvania law in denying and disclaiming coverage for the loss.  The policy exclusion is therefore, void and unenforceable. The actions of Omni in relying upon the exclusion are in bad faith.   Accordingly, the plaintiff, Richard Duncan, respectfully requests that the Motion for Partial Summary Judgment be granted.

## ARGUMENT

### (a)    Generally

The unlicensed operator exclusion is violative of Pennsylvania law and public policy. The Pennsylvania Motor Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed driver to operate the insured motor vehicle.   Further, the Pennsylvania Motor Vehicle Financial Responsibility Law requires mandatory liability coverage, as well as an extension of liability coverage to permissive users.  Thirdly, it is the public policy in Pennsylvania to have operators of motor vehicles on highways in the Commonwealth insured. The unlicensed operator exclusion is violative of the clear mandate of Pennsylvania law.  As such, the unlicensed operator exclusion is void and unenforceable. Omni is required to make payment of the judgment in the underlying tort action as well as bad faith damages.  Accordingly, the plaintiff, Richard Duncan, respectfully requests that the instant Motion for Partial Summary Judgment be granted

21

(b)    **Standard of Review**

Summary judgment should be granted when the pleadings and evidence "show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." <u>Celotex Corp v. Catrett</u>, 477 U.S. 317, 322 (1986) (citing Fed.R.Civ.P. 56 (a)).). In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. <u>Hugh v. Butler Cty. Family YMCA</u>, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) and <u>Wisniewski v. Johns—Manville Corp.</u>, 812 F.2d 81, 83 (3d Cir.1987). The unlicensed operator exclusion is in direct contravention of the requirements of: (1) the Pennsylvania Motor Vehicle Code; (2) the Pennsylvania Motor Vehicle Financial Responsibility Law; and (3) Pennsylvania public policy. Accordingly, the Partial Summary Judgment in favor of plaintiff, Richard Duncan, is appropriate.

(c)    **Methodology**

In the present case, it is assumed that Omni will assert that the unlicensed operator exclusion promotes cost control, a goal of the Financial Responsibility Law. Initially, the Court held that the overriding goal of the Financial Responsibility Law was cost control. See <u>Eichelman v. Nationwide Insurance Company</u>, 711 A.2d 1006 (Pa. 1998). That point of view has been abandoned by the Supreme Court. Specifically, the Supreme Court has recognized the goal of maximum feasible restoration to accident victims as an equally important purpose of the law. The goal of cost control is no longer the overriding rationale of the Financial Responsibility Law. In

fact, a majority of Justices of the Supreme Court have abandoned cost control as the overriding goal of the state when resolving coverage issues under automobile policies in Pennsylvania.

In Williams v. GEICO, 32 A.3d 1195 (Pa. 2011), the Supreme Court established a methodology requiring stricter scrutiny of limitations of coverage in auto policies in Pennsylvania. In so doing, the Supreme Court significantly changed its point of view in assessing the enforceability and applicability of limitations in policies under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. As noted, limitations on coverage were previously routinely enforced on the basis of the rationale of cost control. See Eichelman v. Nationwide, supra, and its progeny. In Williams v. GEICO, supra., the Supreme Court changed the methodology to be employed in reviewing coverage limitations. Cost control is no longer the overriding public policy used to validate policy exclusions. The remedial goals of the statute are to be emphasized.

In Williams, the Supreme Court essentially abandoned cost control as the overriding goal of the Financial Responsibility Law. In Williams, Justice Saylor stated in a Concurring Opinion:

> I would also once and for all abandon the rubric that cost containment was the overarching policy concern of the Motor Vehicle Financial Responsibility Law, since the act clearly retained the core remedial objectives of the prior regulatory scheme.

Williams v. GEICO, 32 A.2d at 1210 (Saylor, J. Concurring). Justice Baer in his Concurring Opinion further stated:

> I recognize that the MVFRL was passed to control the spiraling auto insurance premiums paid by Pennsylvania drivers in the early 1980's. Indeed, I appreciate the concerns of the insurance industry, vociferously expressed in nearly every brief it files with this Court, that any expansion of insurers' risk of liability could lead us back to those spiraling premiums. Nonetheless, as with all exigencies, whether they be national (the economy), statewide (budget deficits), or local (transit woes), the reality is that they wax and wane. In considering the insurance industry's rhetoric,

23

I cannot help but observe that the industry appears to be awash in revenue. It is hard not to notice the industry's spending on many discretionary activities, including incessant television advertising, the All–State Sugar Bowl, Safe Auto's sponsorship of the Ultimate Fighting Championship Series, and Progressive Field, home of the Cleveland Indians. In consequence, I join my colleagues in calling for advocates and the judiciary to cease their continued reliance on the unthinking perpetuation of the long-ameliorated concern for cost containment, and, if my supposition regarding the industry's financial status is correct, I urge the industry to reduce premiums as a humanitarian gesture to suffering Pennsylvanians.

Williams v. GEICO, 32 A.2d at 1210-1211 (Baer, J. Concurring).  Similarly, Justice Todd, in her

Concurring Opinion, stated:

While I acknowledge that our Court in Burstein found that cost containment was the "dominant" and "overarching" public policy underlying the MVFRL, 570 Pa. at 184 n. 3, 809 A.2d at 208 n. 3, I join those Justices who eschew the mantra of cost containment—used by various courts to routinely limit the rights of insureds— in favor of a recognition of other equally important policies and goals that are foundational to the MVFRL, such as the remedial objectives of the statute and the coverage rights of insureds.

Williams v. GEICO, 32 A.2d at 1212 (Todd, J. Concurring).  Justice McCaffery joined the

Concurring Opinion of Justice Todd.  Thus, in Williams, the majority of the Justices on the Court

at that time adopted a rationale which significantly departs from prior pronouncements.  A similar

methodology must be employed in the case at bar. [3]

---

[3] In addition, in Heller v. PA League of Cities, 32 A.2d 1213 (Pa. 2011), the Court stated:

Our inquiry, however, does not end here. Despite our repeated affirmance of the cost containment policy underlying the MVFRL, we have cautioned that it has limits. While the enactment of the MVFRL grew out of a legislative concern for the "spiraling" costs of automobile insurance, the cost containment objective cannot be mechanically invoked as a justification for every contractual provision that restricts coverage and purportedly lessens the cost of insurance. Burstein, 809 A.2d at 208.

Heller v. PA League of Cities, 32 A.2d 1213, 1222 (Pa. 2011).  Cost control is no longer the goal.  It cannot be used to validate policy exclusions.

Policy exclusions must be viewed in light of the goal of remediation for motor vehicle accident victims. Similarly, exclusions are to be narrowly construed. In <u>Swarmer v. Mutual Benefit</u>, 72 A.3d 641 (Pa. Super. 2013), the Superior Court specifically recognized this approach to policy exclusions:

> Where, as here, a defense is based on an exception or exclusion in a policy, the burden is on the insurer to establish its application. <u>Donegal Mut. Ins. Co. v. Baumhammers</u>, 595 Pa. 147, 938 A.2d 286, 290 (Pa. 2007); <u>Prudential Prop. & Cas. Ins. Co. v. Sartno</u>, 588 Pa. 205, 903 A.2d 1170 (Pa. 2006). Exclusionary clauses generally are strictly construed against the insurer and in favor of the insured. <u>See Kropa v. Gateway Ford</u>, 2009 PA Super 91, 974 A.2d 502 (Pa.Super. 2009) (citing <u>Pecorara v. Erie Ins. Co.</u>, 408 Pa. Super. 153, 596 A.2d 237 (Pa.Super. 1991); <u>Baumhammers, supra</u> (strictly construing intentional act exclusion).

<u>Id.</u>, 72 A.2d at 645. The unlicensed operator exclusion must be scrutinized using this methodology.

### (d)    **Unlicensed Operator Exclusion is Void and Unenforceable**

#### (1)    **Generally**

The unlicensed operator exclusion is invalid and unenforceable. Initially, it is violative of the Motor Vehicle Code. Secondly, it is directly contrary to the dictates of the Financial Responsibility Law. Finally, the exclusion is void as against public policy. Therefore, Partial Summary Judgment should be entered in favor of Richard Duncan.

#### (2)    **Motor Vehicle Code**

The unlicensed operator exclusion is violative of the provisions of the Pennsylvania Vehicle Code. The Pennsylvania Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed operator to operate the vehicle. Section 1574 of the

Pennsylvania Vehicle Code establishes the obligations of a vehicle owner with respect to use by

an unlicensed operator.   In this regard, section 1574 provides:

> **§ 1574.  Permitting unauthorized person to drive.**
>
> **(a) General Rule.--**No person shall authorize or permit a motor vehicle
> owned by him or under his control to be driven upon any highway by any person
> who is not authorized under this chapter or who is not licensed for the type or class
> of vehicle to be driven.
>
> **(b) Penalty.--**Any person violating the provisions of subsection (a) is guilty
> of a summary offense and shall be jointly and severally liable with the driver for
> any damages caused by the negligence of such driver in operating the vehicle.

75 Pa. C.S.A. § 1574. The Superior Court has held 1574(b) imposes vicarious liability on the

owner.  In this regard, the Court has held:

> The language of section 1574(b) indicates that one who violates the provisions of
> *section 1574(a) is* jointly and severally liable with the driver for any damages caused
> by the negligence of such driver in operating the vehicle. The legislative intent,
> however, has been interpreted to hold the owner of the vehicle vicariously liable for
> such damages. <u>Commonwealth of Pa., Dept of Public Welfare v. Hickey,</u> *136 Pa.
> Commw. 223, 582 A.2d 734 (Pa. Cmwlth. 1990).* In <u>Hickey,</u> the plaintiff sued the
> defendant/owner of an automobile under section 1574 when plaintiff's decedent,
> unlicensed and intoxicated, was killed while driving defendant's automobile. In
> determining the legislative intent behind the enactment of *section 1574*, the <u>Hickey</u>
> court considered the theories of strict liability, vicarious liability and negligence per se
> and concluded "by process of elimination, therefore, it seems to us that the Legislature
> has intended to establish a system of vicarious liability". *582 A.2d at 737.*

<u>Terwilliger v. Kitchen</u>, 781 A.2d 1201, 1213 (Pa. Super. 2001).  That rationale is applicable to

the case at bar.

In <u>Terwilliger v. Kitchen</u> the owner permitted an unlicensed operator to use her vehicle.  The

owner was found to be vicariously liable for the negligent conduct of the unlicensed operator by reason

of § 1574.  The Pennsylvania Superior Court explained the basis for the liability of the owner as

follows:

26

Here, the vehicle owner was not found liable for negligent entrustment because she did not know or have reason to know her son would operate her vehicle while intoxicated. The court determined she should have known her son did not possess a valid driver's license when she entrusted her vehicle to him and that in doing so, she violated section 1574(a). The court also found, however, her violation of section 1574(a) was *not* a substantial factor in causing Stefancin's injuries. **As a result, the vehicle owner is not directly liable for Stefancin's injuries. She did not act with other tortfeasors to injure another and is, therefore, not subject to joint tortfeasor liability. Rather, the vehicle owner's liability is based solely upon her violation of section 1574(a), arising through a positive rule of statutory law, section 1574(b). Kitchen's negligence is imputed to her, making her vicariously liable for the portion of the damages for which Kitchen was found liable.**

Appellant relies primarily upon **Shomo, supra**, in which the issue on appeal was whether the vehicle owner violated section 1574(a), and, thus, could be held jointly and severally liable pursuant to section 1574(b) for damages in the appellant's negligence action. The Shomo Court found that a violation of 1574(a) occurs *at the time the owner or controller of the vehicle entrusts his vehicle* to one he knows or has reason to know is unauthorized, or unlicensed, to drive the vehicle on the highway. *Id.* The Shomo Court focused on the time at which the statute is violated rather than the type of liability to be imposed and, as a result, *Shomo* is not controlling.

Accordingly, we agree with the trial court that the vehicle owner is vicariously liable for the damages caused by Kitchen.

Terwilliger v. Kitchen, 781 A.2d at 1216. See also, O'Loughlin v. Hunger, 2009 U.S. Dist. Lexis

33711 (E.D. Pa. Buckwalter, J). In that case, Judge Buckwalter stated in a footnote:

The Pennsylvania legislature has enacted a statute specifically prohibiting an automobile owner from "authorizing or permitting an automobile owned by him or under his control to be operated by any person without a valid driver's license." 75 PA. CONS. STAT. § 1574. In order to violate the statute, "it must be shown that the owner knew or had reason to know that the individual to whom he or she authorized to operate his or her vehicle did not have a valid driver's license." Ferry, 709 A.2d at 403 (Pa. Super. 1998). Pennsylvania courts, however, have found that violation of that statute only makes the automobile owner vicariously liable for the injuries caused by the driver of the vehicle and does not impose on the owner individual negligence under a negligent entrustment theory. Terwilliger v. Kitchen, 2001 PA Super 215, 781 A.2d 1201, 1208 (Pa. Super. 2001). "[E]ntrusting a motor vehicle to an unlicensed driver is not in and of itself negligent." Maxwell v. Enter. Leasing, Co., 4 Pa. D. & C.4th 497, 504 n.4 (1989) (citing Chamberlain v. Riddle, 155 Pa. Super. 507, 38 A.2d 521 (Pa. Super.1944)), aff'd, 397 Pa. Super. 651, 571 A.2d 509 (Pa. Super. 1989).

O'Loughlin v. Hunger, 2009 U.S. Dist. LEXIS 33711 at *19-*20.    This analysis is applicable

herein.  Omni cannot exclude liability for this exposure.  The exclusion is an impermissible

restriction of coverage.  It is unenforceable.

In the Complaint in the underlying tort action, the plaintiff, Richard Duncan, specifically

asserted a claim against Shameka Renee Lamar for recovery of damages as a result of allowing an

unlicensed driver to operate her vehicle.  See Exhibit "A", Stipulation ¶ 5.  In the Complaint, the

plaintiff, Richard Duncan, specifically averred:

> 13.    The aforesaid collision, which caused Plaintiff's injuries and losses was a
> direct and proximate result of the negligent and careless conduct of the defendant
> owner, Shameka Renee Lamar, which consisted of the following:
>
> a)    failing to exercise due care for the rights, safety and position of the
>       plaintiff at the location aforesaid;
>
> b)    failing to maintain the vehicle in proper working order;
>
> c)    negligently and carelessly granting permission to the defendant
>       driver for the use of the vehicle owned by the defendant owner,
>       when the latter defendant knew or should have known that the
>       former defendant was unlicensed and/or incapable or unwilling to
>       properly and safely operate said vehicle.

See Exhibit "A" to Stipulation, ¶ 5.  In the Complaint, Richard Duncan specifically set forth a

claim under § 1574. The Legislature has enacted a statute imposing liability on persons who permit

unlicensed operators to use their vehicles.  Omni cannot ignore this mandate and restrict coverage

any more than it can restrict coverage for other violations of the Vehicle Code.  Omni cannot

restrict coverage to an operator who runs a red light.  Such a policy exclusion would be void and

unenforceable.  The same is true of the unlicensed operator exclusion. Omni cannot create this

exclusion and then rely upon it to disclaim coverage. The exclusion is void. Omni's actions are in bad faith.

### (3)    Financial Responsibility Law

The unlicensed operator exclusion is further violative of the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 101 et seq. Section 1786(a) Motor Vehicle Financial Responsibility Law requires mandatory liability coverage. In this regard, 1786 (a) provides:

> **(a)    General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

75 Pa. C.S.A. § 1786(a).    Section 1786(f) of the Motor Vehicle Financial Responsibility Law requires the extension of mandatory liability coverage to permissive drivers. In this regard, § 1786(f) provides:

> **(f)    Operation of motor vehicle without required financial responsibility.**--Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle **or** permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter.

75 Pa.C.S.A. § 1786(f)    The Pennsylvania Superior Court has held that §1786 implicitly directs that all permissive users be insured under the owner's policy, stating:

> Admittedly, the MVFRL continues not to include specific language directing that all permissive users of a vehicle be insured under the owner's insurance. *However, we find the changes to § 1786 implicitly direct that such coverage be provided.*

Progressive N. Ins. Co. v. Universal Underwriters Ins. Co., 898 A.2d 1116, 1119 (Pa. Super. 2006), appeal denied, 909 A.2d 1290 (Pa. 2006) (Emphasis added). Courts of this circuit have recognized

29

and applied this required extension of mandatory liability coverage. In <u>Allstate v. Tokio Marine & Nichido Fire Ins. Co.</u>, 464 F. Supp. 2d 452 (E.D. Pa. 2006) this Court noted:

> . . . the MVFRL requires that all other vehicle owners maintain active financial responsibility on their vehicles at all times and that all permissive users of a vehicle be insured under the owner's insurance.

<u>Id</u> at 460-461, <u>citing</u>, <u>Progressive N. Ins. Co. v. Universal Underwriters Ins. Co.</u>, 898 A.2d 1116 (Pa. Super. 2006). The unlicensed operator exclusion cannot be used to frustrate that mandate.

The Financial Responsibility Law requires that owners of vehicles provide financial responsibility. The Law defines financial responsibility, in pertinent part, as follows:

> The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident . . .

75 Pa. C.S.A. § 1702. The unlicensed operator exclusion is violative of the explicit provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. The unlicensed operator exclusion impermissibly eliminates coverage in violation of the Pennsylvania Motor Vehicle Financial Responsibility Law §§ 1786(a), 1786(f) and 1702. The unlicensed operator exclusion, is in conflict with and repugnant to explicit statutory provisions of the Financial Responsibility Law. As such, it is void and unenforceable. Provisions in a contract of insurance that are in conflict with, or repugnant to, statutory provisions must yield to the statute and are invalid. <u>McWeeney v. Estate of Strickler</u>, 61 A.3d 1023, 1031 (Pa. Super. 2013). At issue in <u>McWeeney</u>, was whether a resident, non-relative permissive driver was bound by the vehicle owner's election of limited tort. The permissive driver did not own a vehicle. Accordingly, the permissive driver maintained she was entitled to full tort coverage by operation of § 1705(a) (3) of the Pennsylvania Motor Vehicle Financial Responsibility Law which provides, in pertinent part:

30

> (a)    Application of tort options.—(3) An individual who is not an owner of a currently registered private passenger motor vehicle and who is not a named insured or insured under any private passenger motor vehicle policy shall not be precluded from maintaining an action for noneconomic loss sustained in motor vehicle accident as the consequence or fault of another person pursuant to applicable tort law.

75 Pa.C.S.A. § 1705(a)(3). The defendant driver disagreed and maintained the position that the permissive driver was an "insured" under the policy of insurance and was bound by limited tort election of the vehicle owner. In support of her position, the defendant driver relied, in part, upon language in the policy of insurance stating "all permissive drivers are insured under its terms for both liability to others and first party benefits". Thus, the Court framed the issue as follows:

> The question becomes, therefore, whether the policy may properly define an "insured" more broadly than does the MVFRL for purposes of binding permissive drivers to the owner's election of limited tort. Where, as here, the insurance policy would bar more drivers from claiming non-economic damages against third party tortfeasors than was contemplated in Section 1705 it runs afoul of the statute and is not enforceable.

Id at 1029. Applying the applicable provisions of the Financial Responsibility Law, the Court concluded the policy language was in conflict with the statute and unenforceable. In this regard the Court held:

> Therefore, to the extent that Mr. Brandt's policy would preclude permissive drivers from filing full tort claims against third party tortfeasors when they otherwise have the express right to do so under the MVFRL, the policy is unenforceable.

Id at 1031. Similar analysis is applicable herein. The Pennsylvania Vehicle Code imposes liability on the owner of a motor vehicle who permits an unlicensed driver to operate it. Further, the provisions of the Financial Responsibility Law mandate the extension of coverage to all permissive drivers. The unlicensed operator exclusion eliminates coverage contrary to the mandate of Pennsylvania law. It is unenforceable. Omni acted in bad faith in including the exclusion in its policy and then relying upon it to deny coverage.

31

(4)    **Public Policy**

The unlicensed operator exclusion is violative of public policy.  The public policy in Pennsylvania favors the deterrence of uninsured drivers and the extension of coverage to motor vehicle operators.  It is in the interest of the public good to have insured motorists on the highways. In Allen v. Erie, 534 A.2d 839 (Pa. Super. 1987) the Court stated:

> In passing the [MVFRL], the Legislature was primarily concerned with the rising consumer cost of automobile insurance, created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid. The [MVFRL] has the effect of requiring all owners of registered vehicles to share in the burden of insurance before they can obtain the benefits. By denying benefits to a certain class of people -- those not insuring their registered vehicles -- the [MVFRL] encourages the purchase of insurance by all owners who register vehicles which can be legally operated on the highways.

Allen v. Erie,  534 A.2d at 840-41.  See also Windrim v. Nationwide,  641 A.2d 1154 (Pa. 1994).[4] The enactments of the Legislature, noted above, are the embodiment of public policy. Erie v. Baker, 972 A.2d 507, 511 fn. 7.   The unlicensed operator exclusion violates public policy and cannot be enforced.  Omni cannot use the exclusion to illegally restrict coverage.  To do so is bad faith.

(e)    **Omni Acted in Bad Faith**

In this case, Omni has inserted an unlicensed operator exclusion in its policy in order to avoid coverage in violation of Pennsylvania law.   While Omni may arguably deny coverage to the operator of the vehicle if he is unlicensed, it may not do so for the owner of the vehicle.  In refusing to provide Shameka Renee Lamar a defense and indemnification, Omni acted in bad faith.

---

[4]  As noted herein, the goal of cost containment as the overriding purpose of the Law has since been abandoned by the Court.

32

Accordingly, it is respectfully requested that the Court enter an Order finding Omni to have acted in bad faith in using the exclusion to deny coverage to Shameka Renee Lamar.

In Pennsylvania, bad faith has been held to be any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith. See Terletsky v. Prudential Property & Casualty Ins. Co., 649 A.2d 680, 688 (Pa. Super. 1994 ) appeal den'd 659 A.2d 560 (Pa. 1995). See also Rancosky v. Wash. Nat. Ins. Co., 130 A.3d 79 (Pa. Super. 2015)Rehearing den'd, 2016 Pa. Super. LEXIS 134 (2016) (Observing "[w]hile our Supreme Court has not yet addressed these issues, this Court has ruled that, to succeed on a bad faith claim, the insured must present clear and convincing evidence to satisfy a two part test: (1) the insurer did not have a reasonable basis for denying benefits under the policy, and (2) the insurer knew of or recklessly disregarded its lack of reasonable basis in denying the claim"). The Third Circuit has adopted that rationale and established the following framework for analyzing the actions of insurers:

> We have predicted that the Pennsylvania Supreme Court would define the term according to the definition set forth by the Pennsylvania Superior Court in Terletsky v. Prudential Property and Casualty Ins. Co., 437 Pa. Super. 108, 649 A.2d 680 (Pa. Super. Ct. 1984). *See* Keefe v. Prudential Property and Cas. Ins. Co., 203 F.3d 218, 225 (3d Cir. 2000). There, the court adopted the following definition of "bad faith":
>
> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.
>
> *Terletsky*, 649 A.2d at 688 (quoting BLACK'S LAW DICTIONARY 139 (6th ed. 1990)) (citations omitted).

Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 136-137 (3d Cir. 2005). We respect

to the duties and obligations of an insurer, the Pennsylvania Superior Court has observed:

> **Individuals expect that their insurers will treat them fairly and properly evaluate any claim they may make.** A claim must be evaluated on its merits alone, by examining the particular situation and the injury for which recovery is sought. **An insurance company may not** look to its own economic considerations, **seek to limit its potential liability**, and operate in a fashion designed to 'send a message.' Rather, it has a duty to compensate its insureds for the fair value of their injuries. Individuals make payments to insurance carriers to be insured in the event coverage is needed. It is the responsibility of insurers to treat their insureds fairly and provide just compensation for covered claims based on the actual damages suffered. Insurers do a terrible disservice to their insureds when they fail to evaluate each individual case in terms of the situation presented and the individual affected.

Bonenberger v. Nationwide Mutual Insurance Company, 791 A.2d 378, 382 (Pa. Super. 2002). In

the case at bar, the actions of Omni in relying on the unlicensed driver exclusion are bad faith.

Shameka Renee Lamar was entitled to a defense and indemnification under the policy issued by

the defendant, Omni, in connection with the October 8, 2012 motor vehicle accident. Nonetheless,

the defendant, failed to provide a defense and indemnification to its insured, Shameka Renee

Lamar. In the absence of a defense, the matter proceeded to arbitration and an Award was entered

against both the owner, Shameka Renee Lamar, and the driver, Chris Aaron. In relying on the

unlicensed driver exclusion and denying and disclaiming the underlying claims, the defendant,

Omni, failed to comply with the specific mandates of Pennsylvania law. Omni is required to make

payment of the judgment in the underlying tort action as well as bad faith damages.

In the underlying Complaint, Richard Duncan specifically set forth a claim under § 1574.

The Legislature has enacted a statute imposing liability on persons who permit unlicensed

operators to use their vehicles. Omni cannot ignore this mandate and restrict coverage. The

unlicensed operator exclusion is violative of Pennsylvania law and public policy. Further, the

Pennsylvania Motor Vehicle Financial Responsibility Law requires mandatory liability coverage,

as well as an extension of liability coverage to permissive users. The unlicensed operator

exclusion impermissibly eliminates coverage in violation of the Pennsylvania Motor Vehicle Financial Responsibility Law §§ 1786(a), 1786(f) and 1702.   The unlicensed operator exclusion, is in conflict with and repugnant to explicit statutory provisions of the Financial Responsibility Law.   Finally, it is the public policy in Pennsylvania to have operators of motor vehicles on highways in the Commonwealth insured. The unlicensed operator exclusion is violative of the clear mandate of Pennsylvania law.

Shameka Renee Lamar was entitled to a defense and indemnification under the policy issued by the defendant, Omni, in connection with the October 8, 2012 motor vehicle accident.  In relying on the unlicensed driver exclusion and denying and disclaiming the underlying claims, the defendant, Omni, failed to comply with the specific mandates of Pennsylvania law. Thus, the denial was unfounded and in bad faith.  Omni is required to make payment of the judgment in the underlying tort action as well as bad faith damages.  Accordingly, it is requested that the Court: (1) find the exclusion unenforceable; and (2) find Omni to have acted in bad faith.

## CONCLUSION

The unlicensed operator exclusion is violative of Pennsylvania law and public policy. The Pennsylvania Motor Vehicle Code imposes liability upon the owner of a motor vehicle who permits an unlicensed driver to operate the insured motor vehicle.   Further, the Pennsylvania Motor Vehicle Financial Responsibility Law requires mandatory liability coverage, as well as an extension of liability coverage, to permissive users.  In addition, it is the public policy in Pennsylvania to have operators of motor vehicles on highways in the Commonwealth to be insured.   The unlicensed operator exclusion impermissibly eliminates coverage in violation of Pennsylvania law and policy.   As such, it is requested that the Court enter an Order: (1) requiring Omni to pay the $28,000.00 judgment; and (2)

finding Omni to have acted in bad faith, with bad faith damages to be assessed at a later

hearing.

Respectfully Submitted,

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:     _JCH4113_____    _____
JAMES C. HAGGERTY, ESQUIRE
SUZANNE TIGHE, ESQUIRE
PA Attorney I.D. # 30003; 80179
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6600
FAX (215) 665-8197

KELLY & HERRON, P.C.

BY:   _/s/ Kevin P. Kelly_____
KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102

Attorneys for Plaintiff

36

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                :
1300 Pennsylvania Avenue     :
Apartment H-3              :
Oreland, PA  19075         :  No.16-1489
                                :
           v.               :
                                :
OMNI INSURANCE COMPANY  :
2018 Powers Ferry Road, Suite 400 :
Atlanta, GA  30339        :

## CERTIFICATION OF SERVICE

I, James C. Haggerty, Esquire, hereby certify that a true and correct copy of Motion for

Partial Summary Judgment has been served via electronic delivery upon the following persons:

Bruce Morrison, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA  19103

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:    JCH/4113
           JAMES C. HAGGERTY, ESQUIRE
           PA Attorney I.D. # 30003
           1835 Market Street, Suite 2700
           Philadelphia, PA  19103
           (267) 350-6600
           FAX (215) 665-8197
           Attorney for Plaintiff

DATE:  6/27/16

37

**224a**

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                     :
1300 Pennsylvania Avenue           :
Apartment H-3                      :
Oreland, PA 19075                  :   No.16-1489
                                   :
        v.                         :
                                   :
OMNI INSURANCE COMPANY             :
2018 Powers Ferry Road, Suite 400  :
Atlanta, GA 30339                  :

## **STIPULATION**

1.      The plaintiff, Richard Duncan, is an adult individual resident and citizen of the

Commonwealth of Pennsylvania residing at 319 Whites Road, Apartment D-4, Lansdale,

Pennsylvania 19446.

2.      The defendant, Omni Insurance Company ("Omni"), is a corporation organized

and existing under the laws of the State of Georgia with its principal place of business located in

Atlanta, Georgia, being duly authorized to and conducting business in the Commonwealth of

Pennsylvania.

3.      On October 8, 2012 the plaintiff, Richard Duncan, was a passenger on board the

SEPTA Route "47" bus when it was struck by a motor titled in the name of Shameka Renee

Lamar operated by Chris Aaron a/k/a Chris Porter at or near the intersection of 8th and

Dickenson Streets in Philadelphia, Pennsylvania.

4.      The plaintiff, Richard Duncan, claims to have sustained personal injury in the

collision.

1

5.      At the time of the accident there existed a policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar A true and correct copy of the Policy of Insurance is attached hereto as Exhibit "1".

6.      On September 1, 2012, Shameka Renee Lamar completed an Application for Private Passenger Auto Insurance seeking to purchase a policy of insurance covering a 2003 Chevrolet Avalanche, which is the vehicle which Chris Aaron a/k/a Chris Porter was driving at the time of the subject accident with the SEPTA bus. A true and correct copy of the Application is attached hereto as Exhibit "2".

7.      The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar listed the vehicle operated by Chris Aaron a/k/a Chris Porter as an insured vehicle.

8.      Chris Aaron a/k/a Chris Porter was not a licensed operator in Pennsylvania at the time of the subject accident or at any other time material to this action.

9.      The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar provided:

**PART A – LIABILTIY COVERAGE**

B.      Insured as used in this Part means:

3.      A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto.

     \*           \*           \*

**EXCLUSIONS**

A.      We do not provide Liability Coverage for any insured.

16.      For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

2

    c.      Does not have a valid driver's license; or

    d.      Has a suspended or rescinded driver's license.

See Exhibit "1", pp. 24-26.

    10.    Following the motor vehicle accident, the plaintiff, Richard Duncan, made a claim upon Chris Aaron, Shameka Renee Lamar and the defendant, Omni, seeking recovery of damages in tort.

    11.    By letter dated July 1, 2014 counsel for the plaintiff, Richard Duncan, wrote to the defendant, Omni, providing information regarding liability and damages with respect to Duncan's claims arising from the October 8, 2012 collision. A true and correct copy of the July 1, 2014 letter from counsel for the plaintiff, Richard Duncan, is attached hereto and marked Exhibit "3".

    12.    By letter dated July 8, 2014 the defendant, Omni, wrote to counsel for the plaintiff, Richard Duncan, denying and disclaiming all coverage for the loss on the basis that the vehicle titled in the name of Shameka Renee Lamar and insured by the defendant, Omni, was being operated by an unlicensed driver at the time of the collision. A true and correct copy of the July 8, 2014 letter from Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, is attached hereto and marked Exhibit "4".

    13.    In the letter of July 8, 2014, Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, advised counsel for the plaintiff, Richard Duncan:

    Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

    The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3.A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at

3

the time of the loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

See Exhibit "4".

14.    The plaintiff, Richard Duncan, thereafter instituted suit against Chris Aaron and Shameka Renee Lamar in the Court of Common Pleas of Philadelphia County (Richard Duncan v. Chris Aaron and Shameka Renee Lamar, September Term, 2014, No. 0479). A true and correct copy of the Complaint is attached hereto and marked Exhibit "5".

15.    In the Complaint in the underlying tort action, the plaintiff, Richard Duncan, specifically asserted a claim against Shameka Renee Lamar for recovery of damages as a result of allowing an unlicensed driver to operate her vehicle

16.    In the Complaint, the plaintiff, Richard Duncan, specifically averred:

13. The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shameka Renee Lamar, which consisted of the following:

a)    failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;
b)    failing to maintain the vehicle in proper working order;
c)    negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

See Exhibit "5", ¶ 13.

17.    Upon receipt of Mr. Duncan's lawsuit against Ms. Lamar and Chris Aaron, Omni sent letters to Ms. Lamar and the operator, Chris Aaron a/k/a Chris Porter, on September 16,

4

2014 declining coverage for the claim and advising them, inter alia, to retain their own attorneys at their expense, as Omni would not be providing them with an attorney. True and correct copies of those declination letters are attached hereto as Exhibits "6" and "7".

18      The defendant, Omni, did not provide a defense to Chris Aaron or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County.

19.     The defendant, Omni, did not indemnify Chris Aaron or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County.

20.     The plaintiff, Richard Duncan, proceeded to arbitration in the underlying tort action in the Court of Common Pleas of Philadelphia County.

21.     An Arbitration Hearing was conducted in the underlying tort action in the Court of Common Pleas of Philadelphia County on June 3, 2015.

22.     Following the Arbitration Hearing in the underlying tort action, the arbitrators entered a Report and Award of Arbitrators in favor of the plaintiff, Richard Duncan, and against Chris Aaron and Shameka Renee Lamar.  A true and correct copy of the Report and Award of Arbitrators is attached hereto as Exhibit "8".

23.     The Report and Award of Arbitrators entered in the underlying tort action provides:

> Judgment for Plaintiff and against Defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 ($13,000.00 for medicals and $15,000.00 for pain and suffering).

See Exhibit "8".

5

**230a**

24.    The plaintiff, Richard Duncan, thereafter entered Judgment on the Arbitration Award against Chris Aaron and Shameka Renee Lamar.  A true and correct copy of the Praecipe to Enter Judgment is attached hereto and marked Exhibit "9".

25.    The defendant, Omni, has not satisfied the Judgment.

6

36.    The plaintiff, Richard Duncan, thereafter obtained from Shameka Renee Lamar an

Assignment of all claims and rights against the defendant, Omni.  A true and correct copy of the

Assignment is attached hereto and marked Exhibit "10".

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.


BY:    _JCH4113_____
       JAMES C. HAGGERTY, ESQUIRE
       PA Attorney I.D. # 30003
       1835 Market Street, Suite 2700
       Philadelphia, PA  19103
       (267) 350-6600
       FAX (215) 665-8197

KELLY & HERRON, P.C.


BY:   _/s/ Kevin P. Kelly_____
      KEVIN P. KELLY, Esquire
      PA Attorney I.D. # 28306
      1500 Market Street
      Centre Square – West Tower
      Suite W-3110
      Philadelphia, PA  19102

Attorneys for Plaintiff


MARSHALL, DENNEHEY, WARNER, COLEMAN
& GOGGIN


BY:   __/s/ R. Bruce Morrison, Esquire__
      R. BRUCE MORRISON, ESQUIRE
      2000 Market Street, Suite 2300
      Philadelphia, PA  19103

Attorneys for Defendant

7

EXHIBIT "1"



OMNI INSURANCE COMPANY
P.O. BOX 105019
ATLANTA, GA 30348-5019
PHONE: 800-727-6664 / FAX: 800-680-1904

## POLICY CERTIFICATION

I, Scott Mascioli, Claims Litigation Manager for Omni Insurance Company, do hereby certify that the attached declarations page and Pennsylvania Motor Vehicle Policy are true and correct copies of the declarations page and policy in effect for Shameka Renee Lamar, policy number 4140872, on October 8, 2012.

Scott Mascioli
Claims Litigation Manager
Omni Insurance Company

STATE OF PENNSYLVANIA}

COUNTY OF MONTGOMERY}

On the _____1 st_____ day of _____April_____, 2016 before me personally appeared _____Scott Mascioli_____ to be known to be the person(s) named herein and who executed the above Certification and _____he_____ acknowledged to me that_____he_____ voluntarily executed the same.

My term expires_____

NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANDREW FUNK, Notary Public
Whitemarsh Township, Montgomery County
My Commission Expires May 11, 2019



**OMNI INSURANCE COMPANY**
P.O. BOX 105440
ATLANTA, GA  30348-5440
(866) 300-6433

**DECLARATIONS**

| INSURED NAME AND ADDRESS | PRODUCER |
|---|---|
| SHAMEKA RENEE LAMAR | OREGON INSTANT AUTO (1000053279) |
| 2545 W SILVER ST | 2653 S 8TH ST |
| PHILADELPHIA, PA 19132 | PHILADELPHIA, PA  19148 |

PRIVATE PASSENGER AUTO
POLICY NUMBER: 4140872
DECPAGE ID: 1

POLICY PERIOD:
September 1, 2012 12:01 A.M.  to  September 1, 2013 12:01 A.M.
DECPAGE EFFECTIVE:
September 1, 2012 12:01 A.M.

IF YOU BUY COLLISION COVERAGE, YOUR POLICY PROVIDES COLLISION COVERAGE ON RENTAL VEHICLES, PLEASE REFER TO THE PORTION OF YOUR POLICY PROVIDING 'COLLISION' COVERAGE FOR ANY LIMITATIONS IN COVERAGE THAT MAY APPLY.

| VEHICLE | DRIVER | DISCOUNTS / SURCHARGES |
|---|---|---|
| Vehicle: 1 | SHAMEKA RENEE LAMAR | Double Airbag |
| Make: 2003 Chevrolet | Birthdate: 08/17/1980 | |
| Model: AVALANCHE 1500 BASE/Z66/Z71 | Marital Status: Single with | |
| VIN#: 3GNEC13T13G139408 | custody of kids | |
| Use: Pleasure Use | License: PA 25397713 | |
| BI/MED/PhysDam Symbol: 315/495/13 | Points: 3 | |
| Territory: 1   Tier: K | Class: SF32 | |

| COVERAGE (Premiums for 12 months) | LIMIT | PREMIUM VEH 1 | PREMIUM VEH 2 | PREMIUM VEH 3 | PREMIUM VEH 4 |
|---|---|---|---|---|---|
| Premium is based on your selection of Limited Tort and the following: | | | | | |
| Bodily Injury Liability | $15,000 per person $30,000 per occurrence | $ 696.24 | | | |
| Medical Payments | $5,000 per person | $ 392.12 | | | |
| Property Damage Liability | $5,000 per occurrence | $ 376.30 | | | |
| Uninsured Motorist BI     REJECTED | | | | | |
| Underinsured Motorist BI     REJECTED | | | | | |
| Total Premium for each vehicle: | | $ 1,464.66 | | | |
| Total Policy Premium | | | | | $ 1,464.66 |
| Your premium includes $86.3 due to violations, accidents, or other Surchages applicable. | | | | | |
| Policy Fee | $15.00 | | | | |

**YOUR POLICY DOES NOT PROVIDE PROTECTION AGAINST DAMAGES CAUSED BY UNINSURED MOTORISTS OR UNDERINSURED MOTORISTS.**

Only the insurance coverages indicated by a specific limit of liability and/or a premium amount are provided.

| ACCIDENTS/VIOLATION POINTS | | | Surcharge Points |
|---|---|---|---|
| Name | Date | Description | |
| SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold | 3 |

FORMS AND ENDORSEMENTS

1037 (06/10) - Pennsylvania Policy Jacket
1037-1 (06/10) - Pennsylvania Amendatory Endorsement
OMNI PA UMREJ - Uninsured Motorist Protection Rejection
OMNI PA UIMREJ - Underinsured Motorist Protection Rejection

### Disclosure of Use of Consumer Reports

In order to determine your eligibility and your premium for insurance products, American Independent Companies, Inc. obtains reports provided by independent consumer reporting agencies. These reports are used to verify and supplement information that you may provide to us. Examples of the type of consumer reports we may order include the following:

**Motor Vehicle / Driving Record Reports**
A Motor Vehicle Report (MVR) is obtained from your state Motor Vehicle Department or from an independent consumer reporting agency that relies on such records. This report reflects the driving record information they have on file for you or other operators under your policy, including accidents and motor vehicle violations.

**Insurance Claim Reports**
Insurance claim reports, such as C.L.U.E. (Comprehensive Loss Underwriting Exchange) and others, are provided by independent consumer reporting agencies that collect claims information from many insurance companies.

**Insurance Scores**
Insurance Scores are calculated for us using an analytical scoring model that objectively measures the relative likelihood of future insurance losses based on credit history files maintained by independent consumer reporting agencies.

The above consumer reports may be ordered in connection with the issuance, update, renewal or reinstatement of your policy and when seeking comparison quotes from the companies we represent.

**THIS NOTICE IS PROVIDED IN ACCORDANCE WITH THE FAIR CREDIT REPORTING ACT**

#### Notice of Adverse Action

American Independent Companies, Inc uses reports obtained from consumer reporting agencies to determine insurance premiums. The types of reports we use are related to driving record (for auto policies), insurance claims (loss) history, and credit history. You are receiving this notice because your premium is higher than it would have been if your consumer report(s) had been more favorable. This decision is based upon information relating to one or more of the consumer reports listed below.

Please be advised that a consumer reporting agency did not make decisions concerning your premium and will be unable to provide you with specific reasons for your premium. If, however, you believe your consumer report information is incorrect, under the Fair Credit Reporting Act, you have the right to dispute the accuracy and/or completeness of any consumer report information directly with a consumer reporting agency.

Under the Fair Credit Reporting Act, you also have a right to obtain a free copy of your consumer report(s), and to obtain without charge all information in your file(s) at the consumer reporting agency or agencies, by making a request to the consumer reporting agency or agencies within sixty (60) days of receipt of this notice.

For driving record reports and insurance claims (loss) history reports, contact: LexisNexis Consumer Center, P.O. Box 105108, Atlanta, GA 30348-5108, or call toll free at 1-800-456-6004 (office located at 2885 Breckinridge Blvd. Suite 200, Duluth, GA 30096).If you wish to access the LexisNexis website, you can use the following address: http://www.consumerdisclosure.com

For credit reports, contact: LexisNexis Consumer Center, P.O. Box 105108, Atlanta, GA 30348-5108, or call toll free at 1-800-456-6004 (office located at 2885 Breckinridge Blvd. Suite 200, Duluth, GA 30096). Credit report information is used to calculate an insurance score, which is a measure of your loss potential. If you wish to access the LexisNexis website, you can use the following address: http://www.consumerdisclosure.com.

The insurance company listed on your policy declarations or with your policy quotation material took this action by issuing or offering you a policy at a higher premium. That company and American Independent Companies, Inc. took this action in connection with determining your premium. If you would like more detailed information regarding your insurance premium, write to us at Omni Insurance Company Consumer Affairs, P.O. Box 105021, Atlanta, GA 30348.

A-100.1 (02/10)

Case 2:16-cv-01489-HB   Document 3   Filed 04/08/16   Page 23 of 78



**OMNI INSURANCE COMPANY**
P.O. BOX 105440
ATLANTA, GA  30348-5440
(866) 300-6433

**DECLARATIONS**

PRIVATE PASSENGER AUTO
POLICY NUMBER: 4140872
DECPAGE ID: 1

POLICY PERIOD:
September 1, 2012 12:01 A.M.  to  September 1, 2013 12:01 A.M.
DECPAGE EFFECTIVE:
September 1, 2012 12:01 A.M.

FORMS AND ENDORSEMENTS

A-100.1 (02/10) - Adverse Underwriting Decision Notice

MANDATED COVERAGE NOTICE

The laws of the Commonwealth of Pennsylvania, as enacted by the general assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages. Premiums for basic mandatory coverage at the **LIMITED TORT** option

Bodily Injury:  $15,000/30,000 - $696.24
Property Damage:  $5,000 - $376.30
Medical Benefits:  $5,000 - $392.12

_____
Authorized Signature

OMNI PA DEC (08/08)

COPY

THIS IS A TRUE AND CERTIFIED COPY OF THE ORIGINAL
_____  10/29/14
CUSTOMER SERVICE MANAGER    DATE
_____  10/29/14
NOTARY PUBLIC    DATE

237a



Form 1037

Pennsylvania (06/10)

**Omni**
Insurance Group
ATLANTA, GEORGIA

**Personal
Auto Policy**

**Omni Insurance
Company**

· · ·

**PENNSYLVANIA**

## LIMITED TORT ALTERNATIVE INFORMATION NOTICE

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for noneconomic loss except that:

A. An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

1. Is convicted, or accepts Accelerated Rehabilitation Disposition for driving under the influence of alcohol or a controlled substance in that accident.

2. Is operating a motor vehicle registered in another state.

3. Intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury if the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

4. Has not maintained financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility Law;

provided that nothing in paragraphs 1. through 4. shall affect the limitation of a person, precluded from maintaining an action for noneconomic damages under

i

**238a**

the limited tort alternative, to recover
noneconomic damages under
Uninsured Motorists Coverage or
Underinsured Motorists Coverage.

B. An individual otherwise bound by the
limited tort election shall retain full tort
rights with respect to claims against a
person in the business of designing,
manufacturing, repairing, servicing, or
otherwise maintaining motor vehicles
arising out of a defect in such motor
vehicle which is caused by or not
corrected by an act or omission in the
course of such business, other than a
defect in a motor vehicle which is
operated by such business.

C. An individual otherwise bound by the
limited tort election shall retain full tort
rights if injured while an occupant of a
motor vehicle other than a private
passenger motor vehicle.

(PP 03 38 12 98) Copyright, Insurance Services
Office, Inc., 1998

ii

# PERSONAL AUTO POLICY
## COVER SHEET –
## PENNSYLVANIA

Your personal auto insurance policy is a legal
contract between you and your insurance
company. Your insurance application and the
policy forms indicated on your declarations
page constitute your insurance policy.

READ YOUR POLICY CAREFULLY. This
cover sheet provides only a brief outline of
some of the important features of your policy.
This is not the insurance contract and only
the actual policy provisions will control. The
policy itself sets forth, in detail, the rights and
obligations of both you and your insurance
company. IT IS THEREFORE IMPORTANT
THAT YOU READ YOUR POLICY CAREFULLY.

The following is an index of the major
provisions of your policy. Page numbers refer
to the location of these provisions in the policy.
Amendatory endorsements may be attached to
your policy to modify these provisions or
provide you with additional coverage(s).

## INDEX
### MAJOR POLICY PROVISIONS

YOUR DUTIES AFTER AN
ACCIDENT OR LOSS ....................1

AGREEMENT ................................2

DEFINITIONS ...............................2

PART A – LIABILITY COVERAGE ...........3
   Insuring Agreement
   Supplementary Payments
   Exclusions
   Limit of Liability
   Out of State Coverage
   Financial Responsibility
   Other Insurance

iii

PART B – FIRST PARTY BENEFITS
COVERAGE / EXTRAORDINARY MEDICAL
BENEFITS COVERAGE ..........16
    Definitions

SECTION B.1 – FIRST PARTY BENEFITS
COVERAGE ..........17
    Insuring Agreement
    — Basic First Party Benefit
    — Added First Party Benefits
    — Combination First Party Benefits
    Exclusions
    Limit of Liability
    Priorities of Policies
    Non-Duplication of Benefits
    Part E – Our Right To Recover Payment

SECTION B.2 – EXTRAORDINARY
MEDICAL BENEFITS COVERAGE ..........23
    Limited Benefits
    Warning
    Insuring Agreement
    Exclusions
    Limit of Liability

PART C – UNINSURED / UNDERINSURED
MOTORISTS COVERAGE ..........26

SECTION C.1 UNINSURED MOTORISTS
COVERAGE (NON-STACKED) ..........26
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

SECTION C.2 UNINSURED MOTORISTS
COVERAGE (STACKED) ..........33
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

iv

SECTION C.3 UNINSURED MOTORISTS
COVERAGE (NON-STACKED) ..........40
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

SECTION C.4 UNDERINSURED
MOTORISTS COVERAGE (STACKED) ..........47
    Insuring Agreement
    Exclusions
    Limit of Liability
    Other Insurance
    Arbitration

PART D – COVERAGE FOR DAMAGE TO
YOUR AUTO ..........53
    Insuring Agreement
    Limited Transportation Expenses
    Exclusions
    Limit of Liability
    Payment of Loss
    Car Storage Coverage
    Loss Payable Clause
    No Benefit to Bailee
    Other Sources of Recovery
    Appraisal

PART E – GENERAL PROVISIONS ..........62
    Bankruptcy
    Changes
    Fraud
    Legal Action Against Us
    Our Right to Recover Payment
    — Part A and Part D
    — Part C
    Payment of Premium
    Policy Period and Territory
    Termination
    Reinstatement of Policy With a Lapse
        in Coverage
    Structured Settlements
    Transfer of Your Interest in This Policy
    Two or More Auto Policies

v

Our Right to Re-compute Premium
Notice
Constitutionality Clause
Pennsylvania Notice

## ENDORSEMENTS
(Only those listed in the Declarations are effective on your policy)

1037-1   PENNSYLVANIA AMENDATORY ENDORSEMENT ... 73
1037-2   RENTAL REIMBURSEMENT / TRANSPORTATION EXPENSES ... 74
1037-3   TOWING AND LABOR COSTS COVERAGE ... 75
1037-6   CUSTOMIZING PARTS OR EQUIPMENT COVERAGE ... 76
1037-7   NAMED NON-OWNER COVERAGE ... 79
  Definitions
  Liability Coverage
  Uninsured Motorists Coverage
  Underinsured Motorists Coverage
1037-8   ADDITIONAL INSURED - LESSOR ... 82
1037-9   NAMED DRIVER EXCLUSION ENDORSEMENT ... 83

**READ YOUR POLICY AND ALL ENDORSEMENTS TO YOUR POLICY CAREFULLY.**

This list is not inclusive. There may be other endorsements attached to your policy.

Form 1037                           vi.                           Pennsylvania (06/10)

## YOUR DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with any of the following duties is prejudicial to us:

A. We must be notified within 30 days, or as soon as practicable, of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:
1. Cooperate with us in the investigation, settlement or defense of any claim or suit.
2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.
3. Submit, as often as we reasonably require to medical exams by physicians we select. We will pay for these exams.
4. Allow us to take signed or recorded statements, including statements under oath outside the presence of other interested persons or parties, and answer all reasonable questions we may ask, when and as often as we may reasonably require.
5. Authorize us to obtain:
   a. Medical reports; and
   b. Other pertinent records.
6. Submit a proof of loss when required by us.
7. Take reasonable steps after loss to protect your covered auto or any non-owned auto and their equipment from further loss. We will pay any reasonable expenses incurred to do this.
8. Promptly notify the police if your covered auto or any non-owned auto is stolen or vandalized.
9. Permit us to inspect and appraise the damaged property before its repair or disposal.

1

C. A person seeking Extraordinary Medical Benefits Coverage under Section B.2. of Part B must submit proof, when required by us, that at least $100,000 of medical expenses has been incurred as the result of any one **accident** by an **insured**.

D. A person seeking Uninsured Motorists Coverage or Underinsured Motorists Coverage must also notify the police within 24 hours, or as soon as practicable, if a hit-and-run driver is involved.

E. A person seeking Underinsured Motorists Coverage must also promptly:
1. Send us copies of the legal papers if a suit is brought; and
2. Notify us in writing of a tentative settlement between the **insured** and the insurer of the **underinsured motor vehicle** and allow **us** 30 days to advance payment to that **insured** in an amount equal to the tentative settlement to preserve **our** rights against the insurer, owner or operator of such **underinsured motor vehicle**.

## PERSONAL AUTO POLICY AGREEMENT

Your written application, the Declarations page and this policy constitute the entire agreement. We will insure **you** for the coverages and limits of liability for which a premium is shown on the Declarations page of this policy. In return for payment of the premium and subject to all the terms of this policy, **we** agree with **you** as follows:

## DEFINITIONS

A. Throughout this policy, **you** and **your** refer to:
1. The named insured shown in the Declarations; and
2. The spouse if a resident of the same household.

2

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered **you** and **your** under this policy but only until the earlier of:
a. The end of 30 days following the spouse's change of residency;
b. The effective date of another policy listing the spouse as a named insured; or
c. The end of the policy period.

B. **We**, **us** and **our** refer to the Company providing this insurance.
Other words and phrases are defined. They are in **boldface** when used.

C. **Accident** means a sudden, unexpected, and unintended occurrence. All **bodily injury** and **property damage** arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one **accident**.

D. **Actual Cash Value** means the fair and reasonable market value at the time of the loss based on vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database of publications and/or dealerships, less depreciation and/or betterment.

E. **After-market Parts** means replacement **auto** parts not made by the original **auto** manufacturer or the **auto** or by a manufacturer authorized by the original **auto** manufacturer.

F. **Auto** means a land motor vehicle with at least 4 wheels including:
1. A private passenger automobile; or
2. A private passenger pickup or private passenger van, for which no other insurance policy provides coverage, that:
a. Has a Gross Vehicle Weight Rating of 9,000 lbs. or less;

3

b. Is designed for use mainly on public roads; and

c. Is not used for the delivery or transportation of persons or goods and materials unless such use is:

   i. Incidental to your business of installing, maintaining or repairing furnishings or equipment; or

   ii. For farming or ranching.

G. Betterment means an improvement that adds value to an item.

H. Bodily injury means bodily harm, sickness or disease, including death that results from bodily harm, sickness, or disease.

I. Business includes trade, profession or occupation.

J. Declarations Page or Declarations mean the document you receive from us listing:
1. The types of coverages you have selected;
2. The limit and/or deductible for each coverage;
3. The cost for each coverage;
4. The specified autos covered by this policy;
5. The types of coverage for each such auto; and
6. Other information applicable to this policy.

K. Depreciation means a decrease or loss of value caused by physical, technological, and/or location deterioration.

L. Diminution of Value means the difference in the actual cash value of your covered auto immediately before and after loss.

M. Family member means a person related to you by blood, marriage or adoption who is a resident of your household even if temporarily living elsewhere. This includes a ward or foster child.

N. Insured Resident means a person living in your household, other than you or a family member. Any insured resident must be specifically identified on the

4

application or endorsed on the policy prior to a loss. You have fourteen (14) calendar days to report any new insured resident.

O. Noneconomic loss means pain and suffering and other nonmonetary detriment.

P. Non-Owned Auto means any auto that is not owned by you, an insured resident, or a family member.

Q. Occupying means:
1. In;
2. Upon; or
3. Getting in, on, out or off.

R. Own or owned, with respect to an auto, means:
1. Holding legal title to the auto;
2. Having legal possession of the auto that is subject to a written security agreement with an original term of six (6) months or more; or
3. Having legal possession of the auto that is leased to that person under a written agreement for a continuous period of six (6) months or more.

S. Owner means any person who, with respect to an auto:
1. Holds legal title to the auto;
2. Has legal possession of the auto that is subject to a written security agreement with an original term of six (6) months or more; or
3. Has legal possession of the auto that is leased to that person under a written agreement for a continuous period of six (6) months or more.

T. Property damage means physical injury to, destruction of or loss of use of tangible property.

U. Serious injury means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

V. Trailer means a vehicle designed to be pulled by an auto. It also means a farm wagon or farm implement while towed by an auto. A trailer does not include a

5

mobile home, travel trailer, or any vehicle that can be lived in or is self-propelled.

**W. Your covered auto** means:

1. Any **auto** that **you** or an **insured resident** own and is shown in the **Declarations** unless **you** have asked **us** to delete that vehicle from the policy;

2. An **additional auto**.

3. A **replacement auto**.

4. Any **trailer you** own.

5. Any **auto** or **trailer you** do not **own** while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. Loss; or

   e. Destruction.

   This provision (W.5) does not apply to Coverage For Damage To Your **Auto**.

**X. Additional auto** means an **auto you** acquire during the policy period shown on the **Declarations** page, if:

1. **We** insure all **autos you** own or lease for a term of at least 6 months;

2. No other insurance policy provides coverage for that **auto**;

3. **You** pay **us** any **additional premium** required when due; and

4. The **additional auto** is an acceptable risk to **us** under our underwriting guidelines.

   If **we** provide coverage for an **additional auto**, **we** will provide the broadest coverage **we** now provide for any **auto** shown in the **Declarations** for a period of fourteen (14) days after **you** become the **owner**. The **additional auto** will include only if the **Declarations** indicate that Part D applies to any **auto** on the policy. **We** will not provide coverage after this fourteen

6

(14) day period, unless within this period **you** ask **us** to insure the **additional auto**. If **you** ask **us** to insure an **additional auto** after the fourteen (14) day period, any coverage **we** provide for an **additional auto** will begin at the time **you** request coverage. If **you** request coverage not already provided for any **auto** shown in the **Declarations** for the **additional auto** or **Declarations** for the **additional auto**, these changes to **your** policy will not become effective until after **you** ask **us** to add the coverage or increase **your** limits.

**Y. Replacement Auto** means an **auto you** become the **owner** of if:

1. **You** acquire the **auto** during the policy period shown on the **Declarations** page;

2. The **auto** that **you** acquire replaces one shown on the **Declarations** page;

3. No other insurance policy provides coverage for that **auto**;

4. **You** pay **us** any **additional premium** required when due; and

5. The **replacement auto** is an acceptable risk to **us** under our underwriting guidelines.

   If the **auto** that **you** acquire replaces one shown on the **Declarations** page, it will have the same coverage as the **auto** it replaces. **You** must ask **us** to insure a **replacement auto** within fourteen (14) days after **you** become the **owner** if **you** want to continue coverage under Part D. If **you** ask **us** to insure a **replacement auto** after this fourteen (14) day period, any coverage **we** provide under Part D for a **replacement auto** will begin at the time **you** request coverage. If **you** request coverage not already provided for any **auto** shown in the **Declarations** for the **replacement auto** or increase **your** limits, it will not become effective until after **you** ask **us** to add the coverage or increase **your** limits.

7

2. Throughout the policy, minimum limits refers to the following limits of liability as required by Pennsylvania law, to be provided under a policy of automobile liability insurance:
   1. $15,000 for each person, subject to $30,000 for each accident, with respect to bodily injury; and
   2. $5,000 for each accident with respect to property damage.

## PART A — LIABILITY COVERAGE

**INSURING AGREEMENT**

A. We will pay compensatory damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an **auto accident**. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy. We will not cover punitive or exemplary damages.

B. **Insured** as used in this Part means:
   1. **You**, an **insured resident**, or any **family member** for the ownership, maintenance or use of **your covered auto**.
   2. **You**, an **insured resident**, or any **family member** while operating a non-owned auto with the express or implied permission of the owner.
   3. A person using **your covered auto** with the owner's express or implied permission and within the scope of the permission granted. The person must

hold a valid driver's license at the time of loss and must not be a regular operator of **your covered auto**.
   4. For **your covered auto**, any person or entity but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.
   5. For any auto or trailer, other than **your covered auto**, any other person or entity but only with respect to legal responsibility for acts or omissions of **you**, an **insured resident**, or any **family member** for whom coverage is afforded under this Part. This provision (B.5.) applies only if the person or entity does not own or hire the auto or trailer.

**SUPPLEMENTARY PAYMENTS**

In addition to our limit of liability, we will pay on behalf of an **insured**:
1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in **bodily injury** or **property damage** covered under this policy.
2. Premiums on appeal bonds and bonds to release attachments in any suit we defend. We have no duty to purchase bonds in an amount exceeding our limit of liability.
3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.
4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings, trials, or any other proceedings at our request.
5. Other reasonable expenses incurred at our request.

6. Prejudgment interest awarded against the Insured on the part of the judgment we pay. Any prejudgment interest awarded against the Insured is subject to the applicable Pennsylvania Rules of Civil Procedure.

EXCLUSIONS

A. We do not provide Liability Coverage for any Insured:

1. Who intentionally causes bodily injury or property damage.

2. For property damage to property owned or being transported by that Insured.

3. For property damage to property:
   a. Rented to;
   b. Used by; or
   c. In the care of;
   that Insured.
   This exclusion (A.3.) does not apply to property damage to a residence or private garage.

4. For bodily injury to an employee or co-worker of that Insured during the course of employment. This exclusion (A.4.) does not apply to bodily injury to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that Insured's liability arising out of the ownership, maintenance, or use of a vehicle or trailer, including your covered auto, while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of newspapers, magazines, food, or any other products. This exclusion (A.5.) does not apply to a share-the-expense car pool or to a delivery by an Insured as a volunteer.

6. While employed or otherwise engaged in the business of:
   a. Selling or leasing;
   b. Repairing;
   c. Servicing;

d. Storing; or
e. Parking; or
f. Towing;

vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of your covered auto by:
a. You;
b. An Insured resident;
c. Any family member; or
d. Any partner, agent or employee of you, an Insured resident or any family member.

7. Maintaining or using any vehicle while that Insured is employed or otherwise engaged in any business (other than farming or ranching) not described in Exclusion A.6. This exclusion (A.7.) does not apply to the maintenance or use of an auto or trailer used with an auto if a business use surcharge is shown on the Declarations page.

8. For bodily injury or property damage for which that Insured:
   a. Is an Insured under a nuclear energy liability policy; or
   b. Would be an Insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.
   A nuclear energy liability policy is a policy issued by any of the following or their successors:
   a. Nuclear Energy Liability Insurance Association;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

9. For bodily injury or property damage assumed by an Insured under any contract or agreement.

10. For bodily injury or property damage resulting from the operation of farm machinery.

11. For bodily injury or property damage arising from the operation of a vehicle by that person as an employee of the United States Government when the provisions of the Federal Tort Claims Act apply.

12. For bodily injury or property damage caused by any vehicle, including your covered auto, while used in practicing, participating, or preparing for any race, speed contest or performance contest.

13. For bodily injury to the owner of any non-owned auto when being used by or driven by you, an insured resident or a family member.

14. For bodily injury or property damage resulting from the use of a vehicle for snow removal.

15. For bodily injury or property damage sustained by an insured while occupying any vehicle located for use or being used as a residence or premises.

16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:
   a. Is under the minimum age to obtain a valid driver's license in the state where the vehicle is garaged;
   b. Is under fifteen (15) years of age;
   c. Does not have a valid drivers license; or
   d. Has a suspended or revoked driver's license.

12

B. We do not provide Liability Coverage for the ownership, maintenance or use of:
1. Any vehicle which:
   a. Has fewer than four wheels; or
   b. Is designed mainly for use off public roads.
   This exclusion (B.1.) does not apply to any trailer.
2. Any vehicle, other than your covered auto, which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.
3. Any vehicle, other than your covered auto, which is:
   a. Owned by any insured resident or family member; or
   b. Furnished or available for the regular use of any insured resident or family member.
   However, this exclusion (B.3.) does not apply to you while you are maintaining or occupying any vehicle which is:
   a. Owned by an insured resident or family member; or
   b. Furnished or available for the regular use of an insured resident or family member.
4. Any vehicle, including a trailer, rented for any business purpose.

LIMIT OF LIABILITY
A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

13

247a

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all **property damage** resulting from any one **auto accident**. These limits of liability are the most we will pay regardless of the number of:

1. **Insureds**;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the **auto accident**.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
2. Part C.1.– Uninsured Motorists Coverage (Non-Stacked); or
3. Part C.3.– Underinsured Motorists Coverage (Non-Stacked).

C. An **auto** and attached **trailer** are considered one **auto**. Therefore, our limits of liability will not be increased for any **accident** involving an **auto** which has an attached **trailer**.

**OUT OF STATE COVERAGE**

If an **auto accident** to which this policy applies occurs in any state or province other than the one in which **your covered auto** is principally garaged, we will interpret **your** policy for that **accident** as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the Declarations, **your** policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, **your** policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

**FINANCIAL RESPONSIBILITY**

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required. You must reimburse us if we make a payment that we would not have made if this policy was not certified as proof of financial responsibility.

**OTHER INSURANCE**

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. Any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for **your covered auto**, shall be excess over any other collectible insurance.

## PART B - FIRST PARTY BENEFITS COVERAGE / EXTRAORDINARY MEDICAL BENEFITS COVERAGE

With respect to coverage provided by this Part B, the provisions of the policy apply unless modified by Part B.

BASIC FIRST PARTY BENEFITS – LIMITS OF LIABILITY - AS INDICATED IN THE DECLARATIONS

ADDED FIRST PARTY BENEFITS – LIMITS OF LIABILITY - APPLY INSTEAD OF THE BASIC FIRST PARTY BENEFIT AND COMBINATION FIRST PARTY BENEFITS ONLY AS INDICATED IN THE DECLARATIONS.

COMBINATION FIRST PARTY BENEFITS - LIMITS OF LIABILITY - APPLY INSTEAD OF THE BASIC FIRST PARTY BENEFIT AND ADDED FIRST PARTY BENEFITS ONLY AS INDICATED IN THE DECLARATIONS.

NOTE: IF ADDED FIRST PARTY BENEFITS OR COMBINATION FIRST PARTY BENEFITS ARE NOT SHOWN AS APPLICABLE IN THE DECLARATIONS, ONLY THE BASIC FIRST PARTY BENEFIT APPLIES.

DEFINITIONS

The Definitions section is amended as follows:

A. The Act refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

B. The following definition is replaced:
vehicle.
Your covered auto means a motor vehicle.
1. To which Part A of this policy applies and for which a specific premium is charged; and

16

2. For which First Party Benefits Coverage required by the Act is maintained.

C. The following definition is added:
Motor vehicle means a self-propelled vehicle operated or designed for use upon public roads. However, motor vehicle does not include a vehicle operated:
1. By muscular power; or
2. On rails or tracks.

D. Insured as used in this section means:
1. You or any family member.
2. Any other person while:
a. Occupying your covered auto; or
b. Not occupying a motor vehicle if injured as a result of an accident in Pennsylvania involving your covered auto.
If your covered auto is parked and unoccupied it is not a motor vehicle involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

## SECTION B.1 - FIRST PARTY BENEFITS COVERAGE

INSURING AGREEMENT

A. BASIC FIRST PARTY BENEFIT
We will pay, in accordance with the Act, the Basic First Party Benefit to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle.
Subject to the limit shown in the Declarations, the Basic First Party Benefit consists of:
Medical Expenses. Reasonable and necessary medical expenses incurred for an insured:
1. Care;
2. Recovery; or
3. Rehabilitation.

17

249a

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

**Medical** expenses will be paid if insured within 18 months from the date of the **accident** causing **bodily injury**. However, if within 18 months from the date of the **accident**, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

B. **ADDED FIRST PARTY BENEFITS**
If the Declarations indicate that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle**. These benefits are subject to the provisions of the **Act**. Subject to the limits shown in the **Declarations**, Added First Party Benefits consist of the following:

1. **Medical** expenses as described in the Basic First Party Benefit.
2. **Work Loss.**
   a. Loss of income. Up to 80% of gross income actually lost by an **insured** as a result of the accident.
   b. Reasonable expenses actually incurred to reduce loss of income by hiring:
      (1) Special help, thereby enabling an **insured** to work; or
      (2) A substitute to perform the work a self-employed **insured** would have performed.
   However, **work loss** does not include:
   a. Loss of expected income or expenses incurred for services performed after the death of the **insured**; or

18

b. Any loss of income, or expenses incurred for services performed, during the first 5 working days the **insured** did not work due to bodily injury.

3. **Funeral Expenses.** Funeral or burial expenses actually incurred if **bodily injury** causes an **insured's** death within 24 months from the date of the accident.

4. **Accidental Death.** A death benefit paid if **bodily injury** causes the death of **you** or any **family member** within 24 months from the date of the accident. We will pay accidental death to the executor or administrator of the deceased **insured's** estate. If there is no executor or administrator, the benefit shall be paid to:
   a. The deceased **insured's** surviving spouse; or
   b. If there is no surviving spouse, the deceased **insured's** surviving children; or
   c. If there is no surviving spouse or children to the deceased **insured's** estate.

C. **COMBINATION FIRST PARTY BENEFITS**
If the Declarations indicate that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an **insured** who sustains **bodily injury**. The **bodily injury** must be caused by an **accident** arising out of the maintenance or use of a **motor vehicle**. These benefits are subject to the provisions of the **Act**. Subject to the limits shown in the **Declarations**, Combination First Party Benefits consist of the following, as described in the First Party Benefit and Added First Party Benefits:
1. **Medical** expenses.
2. **Work loss.**
3. **Funeral** expenses.
4. **Accidental death.**

19

**EXCLUSIONS**

A. We do not provide First Party Benefits Coverage for bodily injury sustained by any insured:

1. While intentionally causing or attempting to cause bodily injury to himself or any other person. We will not pay accidental death on behalf of that insured.

2. While committing a felony.

3. While seeking to elude lawful apprehension or arrest by a law enforcement official.

4. While maintaining or using a motor vehicle knowingly converted by that insured. This Exclusion (A-4) does not apply to:

   a. You; or
   b. Any family member;

   while using your covered auto.

5. Who, at the time of the accident, is:

   a. The owner of one or more registered motor vehicles, none of which have in effect the financial responsibility required by the Act or

   b. Occupying a motor vehicle owned by that insured for which the financial responsibility required by the Act is not in effect.

6. Maintaining or using a motor vehicle while located for use as a residence or premises.

7. While occupying a:

   a. Recreational vehicle designed for use off public roads; or

   b. Motorcycle, moped or similar-type vehicle.

B. We do not provide First Party Benefits Coverage for bodily injury:

1. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (B.1.) does not apply to:

   a. You; or
   b. Any family member.

20

2. Sustained by any person injured as a result of conduct within the course of business of repairing, servicing or otherwise maintaining motor vehicles. However, this exclusion does not apply if the conduct is off the business premises.

3. Caused by or as a consequence of:

   a. Discharge of a nuclear weapon (even if accidental);
   b. War (declared or undeclared);
   c. Civil war;
   d. Insurrection or
   e. Rebellion or revolution.

4. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. Nuclear reaction;
   b. Radiation; or
   c. Radioactive contamination.

**LIMIT OF LIABILITY**

A. The limits of liability shown in the Declarations for the first party benefits that apply are the most we will pay to or for each insured as the result of any one accident, regardless of the number of:

1. Claims made;
2. Vehicles or premiums shown in the Declarations;
3. Vehicles involved in the accident; or
4. Insurers providing first party benefits.

B. If Combination First Party Benefits are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision (B.) will not change our maximum limit of liability.

C. Any amount payable under this coverage shall be excess over any amounts:

1. Paid;
2. Payable; or
3. Required to be provided;

to an insured under any workers' compensation law or similar law.

21

## PRIORITIES OF POLICIES

A. We will pay first party benefits in accordance with the order of priorities set forth by **the Act**. We will not pay if there is another insurer at a higher level of priority. The **First** category listed below is the highest level of priority and the **Fourth** category is the lowest level of priority. The priority order is:

| | |
|---|---|
| First | The insurer providing benefits to the insured as the named insured. |
| Second | The insurer providing benefits to the insured as a family member or insured resident who is not a **named insured** under another policy providing coverage under **the Act**. |
| Third | The insurer of the motor vehicle which the insured is occupying at the time of the accident. |
| Fourth | The insurer of any motor vehicle involved in the accident if the insured is not: <br> a. **Occupying a motor vehicle**, and <br> b. Provided first party benefits under any other automobile policy. |

B. 1. An unoccupied parked motor vehicle is not a motor vehicle involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

2. If 2 or more policies have equal priority within the highest level applicable priority level:

1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer

22

for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the Fourth priority, proration shall be based on the number of involved motor vehicles.

2. If we are the insurer against whom the claim is first made, our payment to or for an insured will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Declarations.

3. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

## NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

## PART E - GENERAL PROVISIONS

Part E is amended as follows:
Our Right To Recover Payment provision does not apply.

## SECTION B.2 – EXTRAORDINARY MEDICAL BENEFITS COVERAGE

**THIS SECTION APPLIES ONLY IF EXTRAORDINARY MEDICAL BENEFITS COVERAGE IS INDICATED ON THE DECLARATIONS PAGE**

With respect to coverage provided by Section B.2., the provisions of Section B.1. - First Party Benefits Coverage apply unless modified by Section B.2.

## LIMITED BENEFITS

**THIS SECTION B.2 PROVIDES COVERAGE ONLY FOR MEDICAL EXPENSES.**

23

252a

## WARNING

"YOU SHOULD BE AWARE THAT EXTRAORDINARY MEDICAL BENEFITS COVERAGE DOES NOT APPLY TO THE FIRST $100,000 OF MEDICAL EXPENSES INCURRED BY AN "INSURED". "YOU" CAN AVOID HAVING TO PAY SOME OF "YOUR" OWN MEDICAL BILLS BY PURCHASING ADDED FIRST PARTY BENEFITS COVERAGE WITH A $100,000 LIMIT OF LIABILITY FOR MEDICAL EXPENSES.

## EXTRAORDINARY MEDICAL BENEFITS COVERAGE

### INSURING AGREEMENT

We will pay, in accordance with the Act, extraordinary medical benefits to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle.

Subject to the limit shown in the Declarations, extraordinary medical benefits consist of:

Medical Expenses. Reasonable and necessary medical expenses incurred for an insured's:

1. Care;
2. Recovery; or
3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized method of healing.

Regardless of whether you have purchased Basic, Added or Combination First Party Benefits Coverage under this policy, we will pay extraordinary medical benefits only after $100,000 of medical expenses has been incurred by any one insured as a result of any one accident.

24

## EXCLUSIONS

The following exclusion is added:
We do not provide Extraordinary Medical Benefits Coverage for the first $100,000 of medical expenses incurred by an insured as a result of an accident.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for Extraordinary Medical Benefits Coverage is the most we will pay to or for each insured as the result of any one accident, regardless of the number of:

1. Claims made;
2. Vehicles or premiums shown in the Declarations;
3. Vehicles involved in the accident; or
4. Insurers providing extraordinary medical benefits.

Extraordinary medical benefits are subject to an annual limit of $50,000 for each insured. However, this limit does not apply to medical expenses incurred within 18 months from the date the insured incurs $100,000 of medical expenses as a result of the accident.

B. Any amounts payable under this coverage shall be excess over any amounts available to an insured for medical expenses under Basic, Added or Combination First Party Benefits Coverage.

C. If an insured is eligible for benefits under both this coverage and the Catastrophic Loss Trust, the total recovery under Extraordinary Medical Benefits Coverage and the Catastrophic Loss Trust Fund combined shall not exceed $1,000,000. In no event will the amount payable under Extraordinary Medical Benefits Coverage exceed the limit of liability shown in the Declarations.

D. Any amounts payable under this coverage shall be excess over any amount:

1. Paid;

25

253a

2. Payable; or

3. Required to be provided;

to an insured under any workers' compensation law or similar law.

# PART C – UNINSURED / UNDERINSURED MOTORISTS COVERAGE

## SECTION C.1 UNINSURED MOTORISTS COVERAGE - (NON-STACKED)

This Section Applies Only If Uninsured Motorists Coverage (Non-Stacked) Is Indicated On The Declarations Page.

**INSURING AGREEMENT**

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. Sustained by an insured; and

2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

No judgment for damages arising out of a suit brought against the owner or operator of an uninsured motor vehicle is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and

2. Had a reasonable opportunity to protect our interests in the suit.

B. Insured as used in this Part means:

1. You, an insured resident or any family member.

2. Any other person occupying your covered auto up to the minimum limits

26

of liability specified by the financial responsibility law of Pennsylvania.

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies and which this coverage applies sustained by a person described in 1. or 2. above.

C. Uninsured motor vehicle means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in bodily injury without hitting:

a. You, an insured resident or any family member.

b. A vehicle which you, an insured resident or any family member are occupying; or

c. Your covered auto.

If there is no physical contact with the hit-and-run vehicle, the facts of the accident must be proved.

3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

a. Denies coverage; or

b. Is or becomes:

(1) Insolvent within six years of the date of the accident; or

(2) Involved in insolvency proceedings.

However, uninsured motor vehicle does not include any vehicle or equipment:

1. Owned by or furnished for the regular use of you, an insured resident or any family member.

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

27

3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for bodily injury sustained:
1. By you while occupying, or when struck by, any motor vehicle you own which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
2. By an insured resident or family member.
   a. Who owns an auto, while occupying, or when struck by, any motor vehicle owned by you, an insured resident, or any family member which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
   b. Who does not own an auto, while occupying, or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.
3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.

B. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any insured:
1. If that insured or the legal representative settles the bodily injury claim and such settlement prejudices our right to recover payment.
2. While occupying your covered auto when it is being used as a public or livery conveyance. This Exclusion (B.2.)

28

does not apply to a share-the-expense car pool.
3. While occupying your covered auto when it is being used for the delivery of food or products, including but not limited to newspapers and magazines. This Exclusion (B.3.) does not apply to a delivery by an insured as a volunteer.

C. We do not provide Uninsured Motorists Coverage for noneconomic loss sustained by any insured to whom the limited tort alternative applies, resulting from bodily injury caused by an accident involving an uninsured motor vehicle, unless the bodily injury sustained is a serious injury. This Exclusion (C.) does not apply if that insured is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

**LIMIT OF LIABILITY**

A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

29

This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. If bodily injury is sustained by an insured other than you, an insured resident or any family member:

1. That part of the limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident.

2. Subject to this limit for each person, that part of the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

This Section (B.) will not change our limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;

30

3. Part C.3. – Underinsured Motorists Coverage (Non-Stacked); or
4. Part C.4. — Underinsured Motorists Coverage (Stacked).

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible. This includes all payments made to an insured's attorney either directly or as part of the payment made to the insured.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

a. Workers' compensation law; or
b. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided under this Part:

The following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident. |
|-------|-------------------------------------------------------------------------------------------------------------------|
| Second | The policy affording Uninsured Motorists Coverage to the insured as a named insured, an insured resident or any family member. |

1. When there is applicable insurance available under the **First Priority**:

a. The limit of liability applicable to the vehicle the insured was occupying, under the policy in the First priority, shall first be exhausted; and

31

b. The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for Uninsured Motorists Coverage for any one vehicle under any one policy providing coverage to you, an insured resident or any family member.

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

ARBITRATION

A. If we and an insured do not agree:
1. Whether that insured is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that insured; from the owner or operator of an uninsured motor vehicle then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.
Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of our limit of liability for this coverage.

B. Each party will:
1. Pay the expenses it incurs; and

32

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

SECTION C.2 UNINSURED MOTORISTS COVERAGE - (STACKED)

This Section Applies Only If Uninsured Motorists Coverage (Stacked) Is Indicated On The Declarations Page

INSURING AGREEMENT

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by an insured; and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.
No judgment for damages arising out of a suit brought against the owner or operator of an uninsured motor vehicle is binding on us unless we:
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. Insured as used in this Part means:
1. You, an insured resident or any family member.
2. Any other person occupying your covered auto up to the minimum limits

33

of liability specified by the financial responsibility law of Pennsylvania.

3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

C. **Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

1. To which no **bodily injury** liability bond or policy applies at the time of the accident.

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in **bodily injury** without hitting:

   a. **You**, an **insured resident**, or any **family member;**

   b. A vehicle which **you**, an **insured resident**, or any **family member** are **occupying;** or

   c. **Your covered auto.**

   If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.

3. To which a **bodily injury** liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes:

      (1) Insolvent within six years of the date of the accident; or

      (2) Involved in insolvency proceedings.

However, **uninsured motor vehicle** does not include any vehicle or equipment:

1. Owned by or furnished for the regular use of **you**, an **insured resident** or any **family member.**

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

34

3. Operated on rails or crawler treads.

4. Designed mainly for use off public roads while not on public roads.

5. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained:

1. By **you** while **occupying**, or when struck by, any motor vehicle **you** own which is not insured for this coverage. This includes a trailer of any type used with that vehicle.

2. By an **insured resident** or **family member** who owns an auto, while **occupying**, or when struck by, any motor vehicle owned by **you**, an **insured resident**, or any **family member** which is not insured for this coverage. This includes a trailer of any type used with that vehicle.

3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.

B. We do not provide Uninsured Motorists Coverage for **bodily injury** sustained by any **insured:**

1. If that **insured** or the legal representative settles the **bodily injury** claim and such settlement prejudices our right to recover payment.

2. While **occupying your covered auto** when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.

3. While **occupying your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines.

35

This Exclusion (B.3.) does not apply to a delivery by an Insured as a volunteer.

C. We do not provide Uninsured Motorists Coverage for noneconomic loss sustained by any Insured to whom the limited tort alternative applies, resulting from bodily injury caused by an accident involving an uninsured motor vehicle, unless the bodily injury sustained is a serious injury.

This Exclusion (C.) does not apply if that Insured is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

LIMIT OF LIABILITY
A. If bodily injury is sustained in an accident by you, an Insured resident, or any family member.
1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any such accident is the sum of the limits of liability shown in the Declarations for each person for Uninsured Motorists Coverage.
2. Subject to the maximum limit for each person described in A.1. above, our maximum limit of liability for all damages arising out of bodily injury resulting from any one accident is the sum of the limits of liability shown in the Declarations for each accident for Uninsured Motorists Coverage.

36

3. Subject to the maximum limits of liability set forth in A.1. and A.2. above, the most we will pay for bodily injury sustained in such accident by an Insured other you, an Insured resident, or any family member is that part of the each person or each accident limit of liability shown in the Declarations applicable to the vehicle that the Insured was occupying at the time of the accident, that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania.

The maximum limit of liability is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. If bodily injury is sustained by any Insured other than you, an Insured resident, or any family member in an accident in which none of you, an Insured resident, or any family member sustain bodily injury:
1. That part of the limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident.
2. Subject to this limit for each person, that part of the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum

37

259a

limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

This Section (B.) will not change our limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.3. – Underinsured Motorists Coverage (Non-Stacked); or
4. Part C.4. – Underinsured Motorists Coverage (Stacked).

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible. This includes all payments made to an insured's attorney either directly or as part of the payment made to the insured.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

OTHER INSURANCE

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this Part:

38

The following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident. |
|---|---|
| Second | The policy affording Uninsured Motorists Coverage to the insured as a named insured, an insured resident or any family member. |

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

ARBITRATION

A. If we and an insured do not agree:
1. Whether that insured is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that insured;

from the owner or operator of an uninsured motor vehicle then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of our limit of liability for this coverage.

B. Each party will:
1. Pay the expenses it incurs; and

39

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

## SECTION C.3 UNDERINSURED MOTORISTS COVERAGE (NON-STACKED)

This Section Applies Only If Underinsured Motorists Coverage (Non-stacked) Is Indicated On The Declarations Page. With respect to the coverage provided by Section C.3, the provisions of the policy apply unless modified by Section C.3.

INSURING AGREEMENT
A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
1. Sustained by an insured; and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.
We will pay under this coverage only if 1. or 2. below applies:
1. The limits of liability under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle have been exhausted by payment of judgments or settlements; or
2. A tentative settlement has been made between an insured and the insurer of the underinsured motor vehicle and we:

40

a. Have been given prompt written notice of such tentative settlement; and
b. Advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.
No judgment for damages arising out of a suit brought against the owner or operator of an underinsured motor vehicle is binding on us unless we:
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. Insured as used in this Part means:
1. You, an insured resident or any family member.
2. Any other person occupying your covered auto up to the minimum limits of liability specified by the financial responsibility law of Pennsylvania.
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by person described in 1. or 2. above.

C. Underinsured motor vehicle means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the available limits for bodily injury under that bond or policy to an insured is not enough to pay the full amount the insured is legally entitled to recover as damages.
However, underinsured motor vehicle does not include any vehicle or equipment:
1. For which liability coverage is provided under Part A of this policy.
2. Which is an uninsured motor vehicle.
3. Operated on rails or crawler treads.

41

261a

4. Designed mainly for use off public roads while not on public roads.

5. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Underinsured Motorists Coverage for bodily injury sustained:

1. By you while **occupying**, or when struck by, any motor vehicle **you own** which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By an insured resident of family member:

 a. Who owns an auto, while **occupying**, or when struck by, any motor vehicle owned by you, an insured resident, or any family member which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

 b. Who does not own an auto, while **occupying**, or when struck by, any motor vehicle **you own** which is insured for this coverage on a primary basis under any other policy.

3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.

B. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained by any insured:

1. While occupying **your covered auto** when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.

2. While occupying **your covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines.

42

This Exclusion (B.2.) does not apply to a delivery by an insured as a volunteer.

5. While located for use as a residence or premises.

C. We do not provide Underinsured Motorists Coverage for noneconomic loss sustained by any insured to whom the limited tort alternative applies, resulting from bodily injury caused by an accident involving an underinsured motor vehicle, unless the bodily injury sustained is a serious injury. This Exclusion (C.) does not apply if that insured is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident. This is the most we will pay regardless of the number of:

1. Insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

43

B. If bodily injury is sustained by an insured other than you, an insured resident, or any family member:

1. That part of the limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident.

2. Subject to this limit for each person, that part of the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

This Section (B.) will not change our limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:
1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.1. – Uninsured Motorists Coverage (Non-Stacked); or
4. Part C.2. – Uninsured Motorists Coverage (Stacked).

44

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

OTHER INSURANCE
If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this policy:

The following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident. |
| --- | --- |
| Second | The policy affording Underinsured Motorists Coverage to the insured as a named insured, an insured resident or any family member. |

1. When there is applicable insurance available under the First Priority:
a. The limit of liability applicable to the vehicle the insured was occupying, under the policy in the First priority, shall first be exhausted; and
b. The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for Underinsured Motorists Coverage for any one vehicle under any one policy providing coverage to you, an insured resident or any family member.

45

263a

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

ARBITRATION

A. If we and an insured do not agree:
1. Whether that insured is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that insured;
from the owner or operator of an underinsured motor vehicle then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of our limit of liability for this coverage.

B. Each party will:
1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

46

# SECTION C.4 UNDERINSURED MOTORISTS COVERAGE (STACKED)

This Section Applies Only If Underinsured Motorists Coverage (Stacked) Is Indicated On The Declarations Page.

With respect to the coverage provided by Section C.4, the provisions of the policy apply unless modified by Section C.4.

INSURING AGREEMENT

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
1. Sustained by an insured; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

We will pay under this coverage only if 1. or 2. below applies:
1. The limits of liability under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle have been exhausted by payment of judgments or settlements; or
2. A tentative settlement has been made between an insured and the insurer of the underinsured motor vehicle and we:
   a. Have been given prompt written notice of such tentative settlement; and
   b. Advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an underinsured motor vehicle is binding on us unless we:

47

264a

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. **Insured** as used in this Part means:
1. **You**, an insured resident or any family member.
2. Any other person occupying your **covered auto** up to the minimum limits of liability specified by the financial responsibility law of Pennsylvania.
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

C. **Underinsured motor vehicle** means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the available limits for bodily injury under that bond or policy to an insured is not enough to pay the full amount the insured is legally entitled to recover as damages.

However, **underinsured motor vehicle** does not include any vehicle or equipment:
1. For which liability coverage is provided under Part A of this policy.
2. Which is an uninsured motor vehicle.
3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

**EXCLUSIONS**
A. We do not provide Underinsured Motorists Coverage for bodily injury sustained:
1. By you while occupying, or when struck by, any motor vehicle **you** own which is not insured for this coverage.

48

This includes a trailer of any type used with that vehicle.
2. By an insured resident or family member who owns an auto, while occupying, or when struck by, any motor vehicle owned by **you**, an insured resident, or any family member which is not insured for this coverage. This includes a trailer of any type used with that vehicle.
3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.

B. We do not provide Underinsured Motorists Coverage for bodily injury sustained by any insured:
1. While occupying your covered auto when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.
2. While occupying your covered auto when it is being used for the delivery of food or products, including but not limited to newspapers and magazines. This Exclusion (B.2.) does not apply to a delivery by an insured as a volunteer.

C. We do not provide Underinsured Motorists Coverage for noneconomic loss sustained by any insured to whom the limited tort alternative applies, resulting from bodily injury caused by an accident involving an underinsured motor vehicle unless the bodily injury sustained is a serious injury. This Exclusion (C.) does not apply if that insured is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

49

**265a**

1. Workers' compensation law; or
2. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

LIMIT OF LIABILITY

A. If bodily injury is sustained in an accident by you, an insured resident, or any family member:

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any such accident is the sum of the limits of liability shown in the Declarations for each person for Underinsured Motorists Coverage.

2. Subject to the maximum limit for each person described in A.1. above, our maximum limit of liability for all damages arising out of bodily injury resulting from any one accident is the sum of the limits of liability shown in the Declarations for each accident for Underinsured Motorists Coverage.

3. Subject to the maximum limits of liability set forth in A.1. and A.2. above, the most we will pay for bodily injury sustained in such accident by an insured other you, an insured resident, or any family member is that part of the each person or each accident limit of liability shown in the Declarations applicable to the vehicle that the insured was occupying at the time of the accident, that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania.

The maximum limit of liability is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. If bodily injury is sustained by any insured other than you, an insured resident, or any family member in an accident in which none of you, an insured resident, or any family member sustain bodily injury:

1. That part of the limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident.

2. Subject to this limit for each person, that part of the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

This Section (B.) will not change our limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage:
1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.1. – Uninsured Motorists Coverage (Non-Stacked); or
4. Part C.2. – Uninsured Motorists Coverage (Stacked).

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this Part:

The following priorities of recovery apply:

| | |
|---|---|
| First | The Underinsured Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident. |
| Second | The policy affording Underinsured Motorists Coverage to the insured as a named insured, an insured resident or any family member. |

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

**ARBITRATION**

A. If we and an insured do not agree:
1. Whether that insured is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that insured;

from the owner or operator of an underinsured motor vehicle then the underinsured motor vehicle matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of our limit of liability for this coverage.

B. Each party will:
1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

**PART D – COVERAGE FOR DAMAGE TO YOUR AUTO**

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss to your covered auto or any non-owned auto, including original manufacturer permanently installed equipment, minus any applicable deductible shown in the Declarations. If loss to more than one your covered auto or non-owned auto results from the same collision, only the highest applicable deductible will apply. We will pay for loss to your covered auto caused by:
1. Other than collision only if the Declarations indicate that Other Than Collision coverage is provided for that auto.

2. Collision only if the Declarations indicate that Collision coverage is provided for that auto.
If there is a loss to a non-owned auto, we will provide the broadest coverage applicable to any your covered auto shown in the Declarations.

B. Collision means the upset of your covered auto or a non-owned auto or their impact with another vehicle or object.
Loss caused by the following is considered other than collision:
1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.
If breakage of glass is caused by a collision, you may elect to have it considered a loss caused by collision.

C. Customizing parts or equipment means permanently installed or attached equipment, parts, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed.

D. Non-owned auto means:
1. Any auto or trailer not owned by or furnished or available for the regular use of you, an insured resident or any family member while in the custody of or being operated by you, an insured resident or any family member; or
2. Any auto or trailer you do not own while used as a temporary substitute for your covered auto which is out of normal use because of its:
a. Breakdown;
b. Repair;
c. Servicing;
d. Loss; or
e. Destruction.

54

**LIMITED TRANSPORTATION EXPENSES**
In addition, we will reimburse you up to $20 per day, to a maximum of $300, for transportation expenses incurred by you. This applies only in the event of the total theft of your covered auto. We will pay only transportation expenses incurred during the period:
1. Beginning 48 hours after the theft is reported to the police; and
2. Ending when your covered auto is returned to use or we pay for its loss.
We will not pay for the cost of transportation incurred by an insured if there is a theft of only a trailer.

**EXCLUSIONS**
We will not pay for:
1. Loss to your covered auto or any non-owned auto which occurs while it is used to carry persons or property for compensation or a fee, including, but not limited to, delivery of newspapers, magazines, food, or any other products. This exclusion (1.) does not apply to a share-the-expense car pool or to a delivery by an insured as a volunteer.
2. Damage due and confined to:
a. Wear and tear;
b. Freezing;
c. Mechanical or electrical breakdown or failure;
d. Road damage to tires; or
e. Manufacturer defects.
This exclusion (2.) does not apply if the damage results from the total theft of your covered auto or any non-owned auto.
3. Loss due to or as a consequence of:
a. Radioactive contamination;
b. Discharge of any nuclear weapon (even if accidental);
c. War (declared or undeclared);
d. Civil war;
e. Insurrection; or
f. Rebellion or revolution.

55

4. Loss to equipment, devices, accessories, and any other personal effects which are not permanently installed or attached by brackets or bolts. This includes, but is not limited to:

  a. tapes, compact discs, cassettes, and other recording or recorded media;

  b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, or other recording or recorded media;

  c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions;

  d. radios, stereos, CB radios, telephones, two-way mobile radios, scanners, televisions, video or audio cassette/DVD recorders, or personal computers; and

  e. any compact disc systems, navigation systems, internet access systems, or video entertainment systems.

5. Loss of value in excess of $500 to any customizing parts or equipment unless the value of the equipment has been reported to us, scheduled, and a premium has been paid for customizing parts or equipment coverage.

6. Loss to your covered auto, any non-owned auto, or trailer due to destruction or confiscation by governmental or civil authorities because you, an insured resident or any family member engaged in illegal activities.

7. Loss to:

  a. A camper body or motor home; or

  b. Facilities or equipment used with a trailer, camper body or motor home. Facilities or equipment include but are not limited to:

    (1) Cooking, dining, plumbing or refrigeration facilities;

    (2) Awnings or cabanas; or

56

    (3) Any other facilities or equipment used with a trailer, camper body, or motor home.

This exclusion (7.) does not apply if you have identified and scheduled a value for this equipment and paid premium for an endorsement to add coverage for customizing parts or equipment.

8. Loss to any non-owned auto when used by you, an insured resident or any family member without the owner's express or implied permission.

9. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

  a. Special carpeting or insulation;

  b. Furniture or bars;

  c. Height-extending roofs including pop up roofs, raised roofs, bubble domes, and bubble windows;

  d. Custom murals, paintwork, decals or other graphics; or

  e. Captain chairs, swivel chairs, or tables.

This exclusion (9.) does not apply to a cap, cover or bed liner in or upon any your covered auto which is a pickup. This exclusion does not apply if you have identified and scheduled a value for this equipment and paid premium for an endorsement to add coverage for customizing parts or equipment.

10. Loss to any non-owned auto being maintained or used by any person while employed or otherwise engaged in the business of:

  a. Selling or leasing;

  b. Repairing;

  c. Servicing;

  d. Storing;

  e. Parking; or

  f. Towing;

vehicles designed for use on public highways. This includes road testing and delivery.

57

11. Loss while your covered auto or any non-owned auto is used in practicing, participating, or preparing for any race, speed contest or performance contest.

12. Loss to, or loss of use of, a non-owned auto rented by:
   a. You;
   b. An insured resident; or
   c. Any family member;
   if a rental vehicle company is precluded from recovering such loss or loss of use, from you, an insured resident, or any family member, pursuant to the provisions of any applicable rental agreement or state law.

13. Loss to any non-owned auto being maintained or used by any person while employed or otherwise engaged in any business not described in exclusion 10. This exclusion (13.) does not apply to the maintenance or use by you, an insured resident, or any family member of a non-owned auto, which is an auto or trailer.

14. Loss to your covered auto or any non-owned auto due to or resulting from intentional acts committed by you, an insured resident, or a family member, or by anyone at your direction. This exclusion (14.) does not apply to an innocent co-insured who did not cooperate in or contribute to the creation of the loss.

15. Loss to your covered auto or any non-owned auto caused while you, an insured resident or any family member are involved in any unlawful activity (other than a traffic violation) or attempting to flee or fleeing from any law enforcement officer or agent.

16. Loss resulting from the use of your covered auto for snow removal.

17. Loss to paint or discoloration of paint resulting from acid rain, smog, salt, tree sap, or animal or bird droppings unless such loss is a direct result of a collision or vandalism.

18. Loss caused by the theft or conversion of your covered auto by a person to whom you have voluntarily entrusted your covered auto.

19. Loss to your covered auto, non-owned auto or trailer for diminution of value.

20. Loss to your covered auto or any non-owned auto when it is driven, operated or used by an individual with the owner's permission if the owner knows that the operator:
   a. Is under the minimum age to obtain a valid driver's license in the state where the vehicle is garaged;
   b. Is under fifteen (15) years of age;
   c. Does not have a valid driver's license; or
   d. Has a suspended or revoked driver's license.

LIMIT OF LIABILITY
A. Our limit of liability for loss will be the lesser of the:
   1. Actual cash value of the stolen or damaged property at the time of loss; or
   2. Amount necessary to repair or replace your covered auto, non-owned auto, or covered equipment with other property of like kind and quality including, but not limited to, after-market parts.
   However, the most we will pay for loss to:
   1. Any trailer is $500.
   2. Non-scheduled customizing parts or equipment is $500.
B. In the event of a total loss, an adjustment for:
   1. Depreciation and physical condition; and
   2. Retained salvage value; will be made in determining actual cash value.
C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

**D.** If coverage applies to a vehicle you do not own, our liability is limited to the highest actual cash value of the highest-valued your covered auto for which coverage under this Part has been purchased.

**PAYMENT OF LOSS**

We may pay for loss in money or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

**A.** You; or

**B.** The address shown in this policy, if we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**CAR STORAGE COVERAGE**

We will pay up to a reasonable and customary daily rate for the cost of storage of your covered auto in the event of a loss to your covered auto for which coverage under this Part is provided. We will pay no more than $400 total for the cost of storage of your covered auto under this section.

**LOSS PAYABLE CLAUSE**

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. **We** will not pay for any loss caused by conversion, embezzlement, secretion, fraud or omissions by you or anyone acting on your behalf. In addition, we will not pay a loss payee for any loss where fraud, misrepresentation, omission, concealment or intentional damage has been committed by or at the direction of an insured, family member, or insured resident. If we have to pay the loss payee for a loss not covered

60

under this policy, **we** will be subrogated to the loss payee's rights of recovery against you. This will not affect the loss payee's right to recover the full amount of its claim. The loss payee must assign us its interest.

We reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the **named insured** shown in the **Declarations**. Any return premium owed to you will be based on the effective date of cancellation used to give advance notice to the loss payee. When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a non-owned auto or any vehicle used as a temporary substitute for your covered auto shall be excess over any other collectible source of recovery including, but not limited to:

**A.** Any coverage provided by the owner of the non-owned auto or any vehicle used as a temporary substitute for your covered auto;

**B.** Any other applicable physical damage insurance;

**C.** Any other source of recovery applicable to the loss.

61

## APPRAISAL

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

## PART E - GENERAL PROVISIONS

### BANKRUPTCY

Bankruptcy or insolvency of the insured shall not relieve us of any obligations under this policy.

### CHANGES

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;
2. Operators using insured vehicles;
3. The place of principal garaging of insured vehicles;
4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our filed rates.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or
2. An Amendatory Endorsement.

### FRAUD

A. Your policy was issued in reliance on the information you provided on your insurance application. We may void coverage under this policy if you have knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct at the time application was made or in connection with a claim.

B. If any representation contained in any notification of change or endorsement request is false, misleading, or materially affects the acceptance or rating of the risk by us, by either direct misrepresentation, omission, concealment of facts, or incorrect statements, this policy will be void from the effective date of the requested change.

C. We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any **accident** or loss for which coverage is sought under this policy. This provision shall also apply to misstatements of use and omissions of

272a

fact. However, we will provide coverage to an insured for damages sustained by any person who has not made fraudulent statements or engaged in fraudulent conduct if such damages result from an accident which is otherwise covered by this policy.

D. If we are not permitted to void this policy, any first-party claims will be reduced by the amount of any additional premium owed to us. Any payments made by us as the result of your fraud or misrepresentation may be recovered from you, or from any payments due or made to you under any first-party coverage provided by this policy.

**LEGAL ACTION AGAINST US**

A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:

1. We agree in writing that the insured has an obligation to pay; or

2. The amount of that obligation has been finally determined by judgment after trial.

B. No person or entity has any right under this policy to bring us into any action to determine the liability of an insured.

**OUR RIGHT TO RECOVER PAYMENT –**
**Applies to Part A – Liability and Part D – Coverage for Damage to Your Auto**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights, and

2. Nothing after loss to prejudice them. However, our rights in this Paragraph (A.) do not apply under Part D, against any person using your covered auto with an insured's express or implied permission

64

and within the scope of the permission granted.

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment less reasonable attorneys' fees, costs and expenses incurred by that person in collecting our share of the recovery.

**OUR RIGHT TO RECOVER PAYMENT –**
**Applies to Part C only**

A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:

1. Whatever is necessary to enable us to exercise our rights; and

2. Nothing after loss to prejudice them. However, our rights do not apply under Paragraph (A.) with respect to Underinsured Motorists Coverage (Sections C.3. and C.4.), if we:

1. Have been given prompt written notice of a tentative settlement between an insured and the insurer of an underinsured motor vehicle, and

2. Fail to advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.

If we advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification:

1. That payment will be separate from any amount the insured is entitled to recover under the provisions of Underinsured Motorists Coverage; and

2. We also have a right to recover the advanced payment.

65

273a

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment. However, any reimbursement due to us shall be reduced by our pro rata share of any reasonable and necessary costs and expenses, including deposition costs, witness fees and attorney's fees, incurred in bringing the claim.

PAYMENT OF PREMIUM
A. This insurance coverage is conditional upon payment of premium. Payment of your initial premium by check, draft or other instrument is not considered payment until it is honored upon presentment. If your initial premium payment is by check, draft, or any remittance other than cash, coverage under this policy may be voidable at our election if the check, draft or remittance is not honored upon presentment.
B. If you make a premium payment with a check and the check is returned to us because of insufficient funds, a closed account or a stop payment, a service charge will be added to your account balance.
C. The premium stated in the Declarations is the initial premium for this policy. On each renewal, continuation or anniversary of the effective date of this policy, the premium shall be computed by us in accordance with our filed rates.
D. If you owe us any outstanding premium balances on your expiring, expired or cancelled policy, any moneys received by us will be applied first to pay the oldest outstanding balance.

66

POLICY PERIOD AND TERRITORY
A. This policy applies only to accidents and losses which occur:
1. During the policy period as shown on the Declarations; and
2. Within the policy territory.
B. The policy territory is:
1. The United States of America, its territories, or possessions; or
2. Canada.
This policy also applies to loss to, or accidents involving, your covered auto while being transported between their ports.

TERMINATION
A. Cancellation
This policy may be cancelled during the policy period as follows:
1. The named insured shown in the Declarations may cancel by:
a. Returning this policy to us; or
b. Giving us advance written notice of the future date cancellation is to take effect.
2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:
a. At least 15 days notice of cancellation:
(1) If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy;
(2) For nonpayment of premium; or
(3) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

67

274a

Case 2:16-cv-01489-HB   Document 3   Filed 04/08/16   Page 61 of 78

b. At least 60 days notice if the policy was obtained through material misrepresentation.

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

B. Nonrenewal
If we decide not to renew or continue this policy, we will mail notice to the named Insured shown in the Declarations at the address shown in this policy:
1. At least 15 days notice before the end of the policy period:
   a. For nonpayment of premium; or
   b. If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year, or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.
2. At least 60 days notice before the end of the policy period in all other cases. However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.
C. Automatic Termination
If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.
D. Other Termination Provisions
1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.
2. If this policy is cancelled, you may be entitled to a premium refund. If the premium refund is $10.00 or less, no refund will be sent unless you specifically request a refund. If you owe us

68

$10.00 or less, we will waive the amount outstanding. However, making or offering to make the refund is not a condition of cancellation. If you or we cancel your policy and a premium refund is owed to you, you will receive the refund on a pro-rata basis. If your policy is cancelled for nonpayment of premium and a refund is owed to you, you will receive the refund on a pro-rata basis minus the cancellation fee.
3. The effective date of cancellation stated in the notice shall become the end of the policy period.

REINSTATEMENT OF POLICY WITH A LAPSE IN COVERAGE
This section only applies if reinstatements with a lapse in coverage are available in your state.
A. If this policy is cancelled for nonpayment of premium, we will reinstate the policy with a lapse in coverage, subject to underwriting approval, if payment is received within 20 days after the cancellation effective date.
B. For the purpose of this section, payment is considered the amount indicated that must be paid immediately on the past due payment notice.
C. If you pay your payment through electronic means, reinstatement of your coverage will be effective the date and time your payment is received.
D. If you mail your payment, reinstatement of your coverage will be effective at 12:01 A.M. on the day after your payment is postmarked. In the event the postmark is not present or is illegible, reinstatement of your coverage will be effective at 12:01 A.M. on the date your payment is received by us.
E. There will be a lapse in coverage from the cancellation date to the date and time of reinstatement.

69

275a

F. If the consideration accepted by us as payment for the reinstatement is in the form of a check or draft and the bank on which the check or draft is drawn dishonors it upon presentation, the reinstatement is void as of its inception.

G. If this policy (or any renewal thereof) is cancelled because of nonpayment of premium after any reinstatement, we reserve the right to reinstate or to not reinstate and return unearned premium.

H. If this policy is reinstated, you will be charged a fee for reinstatement as allowed by your state law.

## STRUCTURED SETTLEMENTS

If payment of medical expenses under Section B.2. of Part B in the form of a structured settlement will be:

1. Cost effective for us, and
2. In the best interest of an insured;

we and the insured may make an agreement, about the timing and amount of payments under this coverage, which is mutually satisfactory. This agreement may include annuities or other long-term payment arrangements.

## TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use your covered auto.

70

B. Coverage will only be provided until the end of the policy period.

C. If a named insured shown in the Declarations terminates their marital relationship, we will continue to provide coverage for the former spouse of the named insured. Coverage applies only:

1. If we are notified of the termination of the marital relationship;

2. If the former spouse was a resident of the same household immediately prior to the termination of the marital relationship; and

3. For the lesser of 30 days or until the end of the policy period.

## TWO OR MORE AUTO POLICIES

A. If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

B. This provision does not apply to Part C2 – Uninsured Motorists Coverage (Stacked) or Part C4 – Underinsured Motorists Coverage (Stacked).

C. No one will be entitled to receive duplicate payments for the same elements of loss under Part C2 – Uninsured Motorists Coverage (Stacked) or Part C4 – Underinsured Motorists Coverage (Stacked).

## OUR RIGHT TO RE-COMPUTE PREMIUM

We established the premium for this policy based on the statements you made in the application for insurance. We have the right to re-compute the premium if we later obtain information which affects the premium we charged.

## NOTICE

Your notice to our authorized agent shall be deemed to be notice to us.

71

## CONSTITUTIONALITY CLAUSE

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

## PENNSYLVANIA NOTICE

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance:

1. Surveys;
2. Consultation or advice; or
3. Inspections.

The "Insurance Consultation Services Exemption Act" of Pennsylvania provides that the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. If any acts or omissions of the Insurance

72

Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

IN WITNESS Whereof, we have caused this policy to be executed and attested.

Bruce Arneson, President

William Lockhorn, Chairman

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-1 APPEARS ON THE POLICY DECLARATIONS.

## PENNSYLVANIA AMENDATORY ENDORSEMENT

This endorsement amends your policy as follows:

I. PART A – LIABILITY COVERAGE is amended as follows:

A. The following exclusion is added: We do not provide Liability Coverage for any insured for bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle by any resident, including a family member, of your household who is not listed on the Declarations page as a driver or operator.

B. The following provision (D.) is added to the Limit of Liability section of PART A:

D. Regardless of the limits of liability shown in the Declarations, the

73

limits of liability for bodily injury and property damage afforded by this policy to an insured who is both a regular user of your covered auto and is not a resident of your household other than:

1. You; or
2. An insured resident; or
3. Any family member;

shall not exceed the minimum limits for bodily injury or property damage.

1037-1

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-2 APPEARS ON THE POLICY DECLARATIONS

II. PART D – COVERAGE FOR DAMAGE TO YOUR AUTO is amended as follows:

The following exclusion is added:

We will not pay for loss to your covered auto while being driven, maintained or used by any person who is a resident of your household and is not listed on the Declarations page as a driver or operator.

RENTAL REIMBURSEMENT / TRANSPORTATION EXPENSES

In consideration of the premium charged and paid, we will pay for:

A. Temporary transportation expenses incurred by you, an insured resident or any family member in the event of loss to your covered auto. We will pay for such expenses if the loss is caused by:
1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for any your covered auto.
2. Collision only if the Declarations indicate that Collision Coverage is provided for any your covered auto.

74

B. Loss of use expenses for which you or an insured resident become legally responsible in the event of loss to a non-owned auto. We will pay for loss of use expenses if the loss is caused by:
1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for any your covered auto.
2. Collision only if the Declarations indicate that Collision Coverage is provided for any your covered auto.

C. We will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours. Our payment will be limited to that period of time reasonably required to repair or replace your covered auto or the non-owned auto.

D. The limit of liability shall not exceed the limit shown for this coverage in the Declarations. The total payment under this endorsement shall not exceed the actual cash value of your covered auto or non-owned auto at the time of loss. We will pay only if you, an insured resident or any family member rent an auto from a licensed rental car agency.

1037-2 Includes copyrighted materials from Insurance Services Office, Inc. with its permission

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-3 APPEARS ON THE POLICY DECLARATIONS

TOWING AND LABOR COSTS COVERAGE

ISO PP 03 03 04 86

We will pay towing and labor costs incurred each time your covered auto or any non-owned auto is disabled, up to the amount shown in the Declarations as applicable to that vehicle. If a non-owned auto is disabled,

75

we will provide the broadest towing and labor costs coverage applicable to any your covered auto shown in the Declarations. We will only pay for labor performed at the place of disablement.

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-3 APPEARS ON THE POLICY DECLARATIONS

1037-3 (ISO PP 03 03 04 86) Copyright, Insurance Services Office, Inc. 1985, 1992

## CUSTOMIZING PARTS OR EQUIPMENT COVERAGE
## (ADDITIONAL EQUIPMENT)

If the Declarations page shows a specific premium charged for Customizing Parts or Equipment Coverage, we will pay for direct and accidental loss to identified and scheduled customizing parts or equipment. This coverage is in addition to the $500 afforded under Part D for non-scheduled customizing parts or equipment. This coverage applies only if the equipment is permanently installed or attached to your covered auto or non-owned auto at the time of loss and is caused by:

1. Other than collision only if the Declarations page indicates that Other Than Collision Coverage is provided for that auto.

2. Collision only if the Declarations page indicates that Collision Coverage is provided for that auto.

As used in this endorsement, customizing parts or equipment means permanently installed or attached equipment, parts, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed. Equipment installed or alterations made at a conversion facility to

your covered auto or any non-owned auto is not considered original manufacturer installed and must be identified and scheduled for this coverage to apply.

Customizing parts or equipment include but are not limited to:

1. Electronic equipment that receives or transmits audio, visual or data signals and is not designed solely for the reproduction of sound and any accessories used with such equipment.

2. Awnings, cabanas, cooking, dining, plumbing or refrigeration facilities, and any other facilities or equipment designed and used to provide additional living facilities.

3. Custom furnishings or equipment including:

   a. Special carpeting or insulation;
   b. Furniture or bars;
   c. Height-extending roofs including pop up roofs, raised roofs, bubble domes, and bubble windows;
   d. Custom murals, paintwork, decals or other graphics;
   e. Captain chairs, swivel chairs, or tables; or
   f. Custom chroming or gold plating.

4. Custom wheels, tires or spinners.

5. Body, engine, exhaust or suspension enhancers.

6. Sun roof, moon roof, T-bar roof, or landau roof.

7. Custom grilles, louvers, side pipes, running boards, air dams, hood scoops or spoilers.

8. Satellite tracking devices if not permanently installed by the original manufacturer or their authorized representative.

9. Radios, stereos, CB radios, telephones, two-way mobile radios, scanners, televisions, video or audio cassette/DVD recorders, or personal computers.

10. Any compact disc systems, internet access systems, or video entertainment systems.

76

77

279a

11. Any ground effects package or suspension lowering or raising equipment.
12. Winches, anti-roll or anti-sway bars.
13. Any continental kit.

In addition, the provisions of the policy apply except:

A. Exclusion 4, of Part D – Coverage For Damage to Your Auto does not apply to the extent that coverage is provided under this endorsement for audio, visual and data electronic equipment.

B. Exclusion 7 and 9 of Part D - Coverage For Damage To Your Auto does not apply to coverage provided by this endorsement.

C. The following exclusion is added:
We will not pay for loss to:
a. Clothing or luggage;
b. Business or office equipment;
c. Articles which are sales samples or used in exhibitions.

PART D – LIMIT OF LIABILITY is amended as follows for coverage provided by this endorsement:

LIMIT OF LIABILITY
A. is deleted in its entirety and replaced with the following:

A. Our limit of liability for loss to customizing parts or equipment will be the lesser of:
1. The declared value of the scheduled customizing parts or equipment shown on the Declarations page;
2. The actual cash value of the stolen or damaged property; or
3. The amount necessary to repair or replace the customizing parts or equipment with other property of like kind and quality including, but not limited to, after-market parts.

The following sections are added to the LIMIT OF LIABILITY section in PART D:

78

E. Our payment for loss will be reduced by any applicable deductible shown in the Declarations.

F. If loss to more than one of your covered autos results from the same collision, only the highest applicable deductible will apply.

1037-6   Includes copyrighted materials from Insurance Services Office, Inc. with its permission

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-7 APPEARS ON THE POLICY DECLARATIONS

NAMED NON-OWNER COVERAGE

With respect to individuals and coverages described in the Declarations, the provisions of the policy apply unless modified by this endorsement.

I. DEFINITIONS
The Definitions Section is amended as follows:
The definition of your covered auto is replaced by the following:
Your covered auto means any auto on the date you become the owner.
This provision applies only:
A. If you acquire the auto during the policy period; and
B. For 14 days after you become the owner.
This insurance does not apply if other insurance applies with respect to any newly acquired autos.

II. PART A - LIABILITY COVERAGE
Part A is amended as follows:
A. The definition of insured is amended by deleting references to insured resident and family member.
Insured means you while operating

79

any non-owned **auto** or trailer with the express or implied permission of the owner.

B. The **EXCLUSIONS** Section is amended as follows:

Exclusion B.2. is replaced by the following:

We do not provide Liability Coverage for the ownership, maintenance or use of any vehicle, other than **your covered auto**, which is owned by **you**.

C. The Out of State Coverage provision is replaced by the following:

**OUT OF STATE COVERAGE**

If an auto **accident** to which this policy applies occurs in any state or province other than where **you** reside, **we** will interpret **your** policy for that **accident** as follows:

1. If the state or province has:

   a. A financial responsibility or similar law specifying limits of liability for **bodily injury** or **property damage** higher than the limit shown in the **Declarations, your** policy will provide the higher specified limit.

   b. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, **your** policy will provide at least the required minimum amounts and types of coverage.

2. No one will be entitled to duplicate payments for the same elements of loss.

III. **PART C.1 & C.2 – UNINSURED MOTORISTS COVERAGE**

Parts C.1 and C.2 are amended as follows:

A. The definition of **insured** is amended by deleting references to insured resident and family member.

**Insured** means **you**.

B. Part 2. of the definition of **uninsured motor vehicle** is replaced with the following:

**Uninsured motor vehicle** means a land motor vehicle or trailer of any type:

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an **accident** resulting in **bodily injury** without hitting:

   a. **You;**

   b. A vehicle which **you** are occupying;

   c. **Your covered auto;** or

If there is no physical contact with the hit-and-run vehicle, the facts of the **accident** must be proved.

IV. **PART C.3 & C.4 – UNDERINSURED MOTORISTS COVERAGE**

Parts C.3 and C.4 is amended as follows:

A. The definition of **insured** is amended by deleting references to insured resident and family member.

**Insured** means **you**.

1037-7 Includes copyrighted materials from Insurance Services Office, Inc. with its permission.

**281a**

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-8 APPEARS ON THE POLICY DECLARATIONS

## ADDITIONAL INSURED - LESSOR

Any liability and any required no-fault coverages afforded by this policy for your leased auto also apply to the lessor named in the Declarations as an additional insured. This insurance is subject to the following additional provisions:

A. We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:
1. You, an insured resident, or any family member; or
2. Any other person except the lessor or any employee or agent of the lessor using your leased auto.

B. Your leased auto means:
1. An auto shown in the Declarations which you or an insured resident lease for a continuous period of at least six months under a written agreement which requires you or an insured resident to provide primary insurance for the lessor; and
2. Any substitute or replacement auto furnished by the lessor named in the Declarations.

C. If we terminate this policy, notice will also be mailed to the lessor.

D. The lessor is not responsible for payment of premiums.

E. The designation of the lessor as an additional insured shall not operate to increase our limits of liability.

1037-8 Includes copyrighted materials from Insurance Services Office, Inc. with its permission

82

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-9 APPEARS ON THE POLICY DECLARATIONS

## NAMED DRIVER EXCLUSION ENDORSEMENT

If you have asked us on your application (Form U-2 on the application) to exclude any person from coverage under this policy, then we will not pay damages, expenses or loss arising out of the maintenance or use of any auto or trailer by the excluded driver whether or not such maintenance or use was with the express or implied permission of the named insured. This includes any claim for damages made against you, an insured resident, family member or any other person or entity that is liable for an accident arising out of the operation of any auto by the excluded driver. This also includes any claim for damages for any negligence, which may be imputed by law to you, an insured resident, or family member arising out of the maintenance, operation or use of a motor vehicle by the excluded person.

The provisions of this Named Driver Exclusion Endorsement shall remain in effect for the term of the policy and for each renewal, reinstatement, substitute, modified, replacement or amended policy, unless discontinued by us.

1037-9

Form 1037

83

Pennsylvania (06/10)

Form 1037

Pennsylvania (06/10)



# EXHIBIT "2"

11/04/2014 12:52 FAX                                                      ☒ 0001/0008



**OMNI INSURANCE COMPANY**
**2018 POWERS FERRY ROAD**
**SUITE 400**
**ATLANTA, GA 30339**

### APPLICATION FOR PRIVATE PASSENGER AUTO INSURANCE

| APPLICANT NAME AND ADDRESS | PRODUCER |
|---|---|
| SHAMEKA RENEE LAMAR | OREGON INSTANT AUTO (1000053279) |
| 2545 W SILVER ST | 2653 S 8TH ST |
| PHILADELPHIA, PA 19132 | PHILADELPHIA, PA 19148 |
| Home: 215-667-4949 | 215-755-8045 |
| | Producer Name: ROBERT L PALUMBO 357175 |

| PREVIOUS ADDRESS (if less than 5 Years) | POLICY #: 4140872 |
|---|---|
| | POLICY EFFECTIVE: |
| | September 1, 2012 to September 1, 2013 |

#### APPLICANT INFORMATION

| First | Middle | Last | Suffix | Birth Date | Marital Status | Sex | SSN |
|---|---|---|---|---|---|---|---|
| SHAMEKA | RENEE | LAMAR | | 08/17/1980 | Sngl w/ cust of kids | Female | 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 |

List all persons over 14 years of age who are residents of the same household, LICENSED OR NOT.

| Name | Relationship | Excluded | License State | License Number | Date Licensed |
|---|---|---|---|---|---|
| SHAMEKA RENEE LAMAR | Self | No | PA | 25387713 | 08/01/2000 |

#### EMPLOYMENT INFORMATION

| Applicant | Employer | | |
|---|---|---|---|
| SHAMEKA RENEE LAMAR | | Occupation | UNEMPLOYED |
| | | Years in Current Occupation | |
| Work Phone: | | Years with Current Employer | |
| | | Years with Previous Employer | |

#### VEHICLES     [ NO ] - NAMED NON-OWNER POLICY? (if "Yes", complete Named Non-Owner Automobile Endorsement)

| VEH | VIN | Year | Make and Model | Body Style | Symbol | Odometer |
|---|---|---|---|---|---|---|
| 1 | 3GNEC13T13G139408 | 2003 | Chevrolet AVALANCHE 1500 BASE/Z66/Z71 | Utility Vehicle - Two Wheel Drive 4 Door | 13 | |

#### VEHICLES (Cont.)

| VEH | Vehicle Use | Damaged | Anti-Theft | Restraint System |
|---|---|---|---|---|
| 1 | Pleasure | No | Antitheft Device Installed | Double Airbag |

#### VEHICLE RATING

| VEH | Garaging Address (if different) | State Registered | Territory | Rate Class | Points |
|---|---|---|---|---|---|
| 1 | | | 1 | SF32 | 3 |

#### ACCIDENT / CONVICTION POINTS - PAST 35 MONTHS

| Name | Date | Location Description | Points |
|---|---|---|---|
| 1. SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold LOADED FROM CLUE | 3 |
| | | • PD Paid $1,798.00 | |

#### COVERAGES

The applicant elects the following tort option Limited Tort.
Appropriate Tort Option selection notice must be signed by the applicant and attached to this application.

| Bodily Injury Liability | 15,000 per person / 30,000 per occurrence |
|---|---|
| Property Damage Liability | 5,000 per occurrence |
| Medical Payments | 5,000 per person |
| Income Loss Protection | Rejected |
| Funeral Benefits | Rejected |
| Accidental Death | Rejected |

9/1/2012 11:13:53 AM                                                   Page 1 of 13

**285a**

11/04/2014 12:53 FAX                                                    0002/0008

| | |
|---|---|
| Extraordinary Medical Expenses | Rejected |
| Uninsured Motorist BI | Rejected |
|   Stack benefits | NO |
| Underinsured Motorist BI | Rejected |
|   Stack benefits | NO |
| | Veh 1 |
| Collision Deductible | Rejected |
| Comprehensive Deductible | Rejected |
| Rental Reimbursement | Rejected |
| Towing and Labor | Rejected |
| Additional Custom Parts and Equipment | Rejected |

**DISCOUNTS AND SURCHARGES**                                    Double Airbag
Vehicle 1

| PREMIUMS | |
|---|---|
| **Coverage** | **Veh 1** |
| Bodily Injury Liability Premium | $696.24 |
| Property Damage Liability Premium | $376.30 |
| Medical Payments Premium | $392.12 |
| Total ($1,464.66) | $1,464.66 |
| Deposit | $150.00 |
| Pay Plan 43 | 12 Month Extended |
| Rating Tier | K |
| Policy Tier | K |
| Deposit Fee | $12.00 |
| Policy Fee | $15.00 |

**PRIOR COVERAGE - 6 months continuous prior coverage with no more than 30 days lapse**

| Name of Latest Carrier | Policy Number | Termination Date | Plan Coverage | Years | Policy Written Through Your Agency |
|---|---|---|---|---|---|
| | | | No | | No |

**HOMEOWNER - Proof will be required to receive the discount.**

| | |
|---|---|
| Residency Status | Rent |
| Residency Type | Other |

Acceptable proof of home ownership includes mortgage coupon/statement, property tax records, or deed.

**GENERAL INFORMATION -- During the past three years, has the applicant, any household member, or any driver:**

| | | | |
|---|---|---|---|
| Date agent last inspected vehicle | | If yes, explain | |
| Any other auto insurance in household? (include any provided by an employer) | NO | Has any person in the household had a license suspension or revocation in the last 35 months? | NO |
| If yes, explain | | If yes, explain | |
| Had a Comprehensive claim of $1,450 or more in last 35 months? | | Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)? | NO |
| If yes, how many | | Do all drivers reside in the named insured's household? | YES |
| Any coverage declined, cancelled, or non-renewed during the last 3 years? | NO | If no, explain | |
| If yes, explain | | Are all vehicles garaged in Pennsylvania for at least 10 months per year? | YES |
| Have health problems or physical, mental or emotional handicap or disability that would impair driving ability? | NO | If yes, explain | |
| If yes, explain | | Are there any occasional operators not rated as previously described? | NO |
| Has vehicle ever been salvaged? | | If yes, explain | |
| If yes, explain | | Are there any other cars in the household or available for regular use not previously described? | NO |
| Any vehicle "Gray Market" (i.e. not manufactured for original sale in the U.S.)? | NO | If yes, explain | |
| If yes, explain | | Does any listed vehicle have unrepaired damage? | NO |
| Is vehicle titled in any name other than the named insured? | NO | If yes, describe | |
| If yes, who & why? | | Has any operator been licensed in the U.S. or Canada for less than 3 years (except ages 16-19)? | NO |
| Any vehicles listed on this application used for hire (taxi, limo, etc.), commercial or business purposes, delivery (pizza, newspaper, etc.), or used in the course or scope of your employment? | NO | If yes, explain | |

**BINDER/SIGNATURE**

| INSURANCE BINDER | | IF THE "BINDER" BOX TO THE LEFT IS COMPLETED, THE FOLLOWING CONDITIONS APPLY: |
|---|---|---|
| EFFECTIVE DATE | EXPIRATION DATE | THIS COMPANY BINDS THE KIND(S) OF INSURANCE STIPULATED ON THIS APPLICATION. THIS |
| 09/01/2012 | 10/01/2012 | INSURANCE IS SUBJECT TO THE TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY(IES) IN CURRENT USE BY THE COMPANY. |

9/1/2012 11:13:53 AM                                              Page 2 of 13

**286a**

Case 2:16-cv-01469-HB     Document 3     Filed 04/08/16     Page 73 of 78

11/04/2014 12:54 FAX                                                      ☒0003/0008

| TIME 10:59 AM ET | ☑ 12:01 AM | THIS BINDER MAY BE CANCELLED BY THE INSURED BY SURRENDER OF THIS BINDER OR BY WRITTEN NOTICE TO THE COMPANY STATING WHEN CANCELLATION WILL BE EFFECTIVE. THIS BINDER MAY BE CANCELLED BY THE COMPANY BY NOTICE TO THE INSURED IN ACCORDANCE WITH THE POLICY CONDITIONS. THIS BINDER IS CANCELLED WHEN REPLACED BY A POLICY. IF THIS BINDER IS NOT REPLACED BY A POLICY, THE COMPANY IS ENTITLED TO CHARGE A PREMIUM FOR THE BINDER ACCORDING TO THE RULES AND RATES IN USE BY THE COMPANY. THE QUOTED PREMIUM IS SUBJECT TO VERIFICATION AND ADJUSTMENT, WHEN NECESSARY, BY THE COMPANY. |
| | ☐ NOON | |
| ☐ COVERAGE IS NOT BOUND | | |

**NOTICE OF INSURANCE INFORMATION PRACTICES**
I UNDERSTAND THAT TO CALCULATE AN ACCURATE PRICE FOR MY INSURANCE, THE COMPANY MAY OBTAIN INFORMATION FROM THIRD PARTIES, SUCH AS CONSUMER REPORTING AGENCIES THAT PROVIDE DRIVING, CLAIMS AND CREDIT HISTORIES FOR YOU AND ALL OTHERS LISTED ON THIS APPLICATION. THE COMPANY MAY USE A CREDIT-BASED INSURANCE SCORE BASED ON THE INFORMATION CONTAINED IN THE CREDIT HISTORY. THE COMPANY OR ITS AFFILIATES MAY OBTAIN NEW OR UPDATED INFORMATION TO CALCULATE MY RENEWAL PREMIUM OR SERVICE MY INSURANCE. I MAY ACCESS INFORMATION ABOUT ME AND CORRECT IF INACCURATE. IN SOME CASES, THE LAW PERMITS THE COMPANY TO DISCLOSE THE INFORMATION IT COLLECTS WITHOUT AUTHORIZATION. HOWEVER, THE COMPANY WILL NOT SHARE PERSONAL INFORMATION WITH NONAFFILIATED COMPANIES FOR THEIR MARKETING PURPOSES WITHOUT CONSENT. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. I UNDERSTAND THE DECISION TO REQUEST A CREDIT REPORT IS NOT BASED ON RACE, COLOR, CREED, MARITAL STATUS, SEX, OR NATIONAL ORIGIN. I UNDERSTAND I SHALL BE ADVISED HOW TO OBTAIN A COPY OF MY REPORT IF AN ADVERSE UNDERWRITING DECISION OCCURS.

**FEES**
I ACKNOWLEDGE THAT THE ELECTRONIC FUNDS TRANSFER (EFT) PAYMENT PLAN INCLUDES A $5.00 SERVICE FEE PER PAYMENT. I ACKNOWLEDGE THAT ALL OTHER PAYMENT PLANS INCLUDE A $12.00 NON-STANDARD INSTALLMENT FEE PER PAYMENT. I UNDERSTAND AND AGREE TO PAY A CREDIT CARD FEE OF $3.00 FOR ANY PAYMENT MADE TO THE COMPANY WITH A CREDIT CARD OR DEBIT CARD. I ALSO AGREE TO PAY A $12.00 LATE PAYMENT FEE DURING THE POLICY TERM AND EACH RENEWAL POLICY TERM WHEN A PAYMENT IS RECEIVED BY THE COMPANY AFTER THE PREMIUM DUE DATE. I UNDERSTAND AND AGREE TO PAY A REINSTATEMENT FEE OF $15.00 EACH TIME MY CANCELLED POLICY IS REINSTATED. REINSTATEMENT IS NOT A WAIVER OF RIGHTS BY THE COMPANY AND DOES NOT IMPOSE FURTHER DUTIES ON THE COMPANY AS TO FUTURE CANCELLATIONS. REINSTATEMENT WILL NOT TAKE AFFECT IF THE CHECK OR CREDIT CARD I SUBMIT FOR REINSTATEMENT IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON. I UNDERSTAND AND AGREE TO PAY A FINAL CANCELLATION FEE OF $50.00 IF THE COMPANY CANCELS THIS POLICY DUE TO MY FAILURE TO PAY ANY PREMIUM WHEN DUE. I UNDERSTAND AND AGREE TO PAY A $30.00 FEE FOR EVERY PAYMENT RETURNED TO THE COMPANY FOR NON-SUFFICIENT FUNDS (NSF). I AGREE TO PAY A $15.00 POLICY FEE TO BE COLLECTED IN THE INITIAL PAYMENT FOR EACH POLICY TERM. I UNDERSTAND THAT MY POLICY WILL BE CANCELLED IF I AM UNWILLING TO PAY ANY OF THESE FEES.

### IN NO EVENT SHALL COVERAGE BE EFFECTIVE PRIOR TO THE DATE AND HOUR OF COMPLETION OF THIS APPLICATION

**APPLICANT'S STATEMENT**
I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY. I also agree to pay any surcharges applicable under Company rules that are necessitated by inaccurate or incomplete statements. I understand that my policy will be cancelled if I am willing to pay the additional premium.
Note: In connection with your request for a premium quotation: (1) we may obtain consumer reports or personal or privileged information from third parties; (2) in certain circumstances, such information, as well as other personal or privileged information subsequently collected by us, may be disclosed to third parties without your authorization, but it is not our practice to do so; (3) you have the right to access and correct all personal information collected; and (4) at your request we will: (a) confirm whether a consumer report was requested and, if so, provide the name and address of the consumer reporting agency that furnished it; and (b) provide you more detailed information regarding our collection, use, and disclosure of personal information, and your rights to access and correct such information. I also acknowledge that the Company may obtain consumer report in the future for an update, renewal or extension of this insurance.

I agree that if I pay my initial premium by check, the coverage afforded by this policy is conditional on the check being honored by the bank when presented for payment. If the check in not honored, Omni shall be deemed not to have accepted the check and this policy shall be void from inception.

Insurance coverage is conditional upon the payment of premium and payment by electronic funds transfer, check, draft, debit card, credit card or other remittance is not considered payment until it is presented to and paid by the drawee financial institution. IF THE TRANSFER, CHECK, DEBIT CARD OR CREDIT CARD OR OTHER REMITTANCE I SUBMIT WITH THIS APPLICATION IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON, COVERAGE WILL NOT TAKE EFFECT; The Company shall be deemed not to have accepted the payment and this policy shall be void.

I certify that:
• I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR or OCCASIONAL basis. This includes children away from home or away at school. I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
• Each vehicle listed in this application is garaged at the zip code provided in this application for my principle residence for ten (10) or more months each year and the garaging address of all listed auto(s) is the Pennsylvania address listed on this application.
• I have reported any driver that commutes out of state for work or school one or more times per week to the Company and agree to notify the Company prior to any such future commuting.
• I have reported any business or commercial use of my auto(s) to the Company and agree to notify the Company prior to any future business use. I understand that the Company does not cover losses if my vehicle is being used for business or commercial purposes and these purposes are not disclosed prior to the loss.
• If I have requested coverage for damages to my auto(s), I have reported to the Company all unrepaired damage or glass breakage.
• The Custom or Additional Equipment I want covered has been declared and is listed on this application.

The premium for the coverages itemized on this application are based upon rates in excess of standard rates in the Commonwealth of Pennsylvania Automobile Insurance Plan. I understand that discounts are available for drivers who meet the requirements for restraint systems, anti-theft devices, and driver improvement courses.

9/1/2012 11:13:53 AM

Page 3 of 13

11/04/2014 12:55 FAX                                                                    ☒ 0004/0008

Regardless of the limits of liability shown on the Declarations page, the limits of liability afforded by this policy to anyone you give permission to drive the insured auto, who is not listed on the Declarations page prior to the loss, will not exceed the minimum statutory coverage required under Pennsylvania law.

**FRAUD**
The insurance policy is issued by Omni Insurance Company in reliance on the information provided in the insurance application, including, but not limited to information regarding license and driving history of the undersigned, "family members" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or and "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

To the extent that we make payments to you under this policy and our subsequent investigation reveals your involvement in fraud or misrepresentation in the presentation of a claim, you must indemnify the Company for all payments made for that claim.

Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such a person to criminal and civil penalties.

APPLICANT'S SIGNATURE (applies to the sections listed below)
• Fees
• Applicant's Statement
• Fraud

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. I understand that the coverage selection and limit choices indicated here or in any state supplement and I further declare that I will notify Omni Indemnity Company by phone, e-mail or in writing if any information on this application changes while the policy, or any renewal thereof, is in force. By signing below, I agree that this application becomes a part of my policy, is a legal document, and acknowledge that I have read the warnings and statements listed on this application.

**Signature of Applicant** POLICY #: 4140872                        Date

### AGENT'S SIGNATURE

I certify that to the best of my knowledge, all information contained herein is correct; the statements made herein are those of the applicant and all questions have been answered by the applicant. I have explained all coverages and options to the applicant; and the applicant and I are retaining a duplicate signed copy hereof. I am legally qualified to submit this application on behalf of the applicant.

1000053279

**Signature of Agent**                        Agent      Date
                                              Number

OMNI PA APP (04/11)

9/1/2012 11:13:53 AM                                                    Page 4 of 13

# IMPORTANT NOTICE

**Benefits and Limits Notice**

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of 75 Pa. C.S.A. Section 1715(d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

You may be eligible for discounts mandated by Act 6 of 1990: (1) on first party benefits coverage if your car is equipped with a passive restraint system; (2) on comprehensive coverage if your car is equipped with a passive antitheft device; or (3) if named insured is 55 or older and has successfully completed a motor vehicle driver improvement course approved by PennDOT. See your agent for details.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

APPLICANT'S SIGNATURE POLICY #: <u>4140872</u>:                    DATE:

*Shameka Lamar*                                                        9/1/2012

SHAMEKA RENEE LAMAR
OMNI PA BENNOT (08/08)

11/04/2014 12:56 FAX                                                           l@0006/0008

## TORT OPTION SELECTION NOTICE TO NAMED INSUREDS

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The minimum motor vehicle insurance coverage and limits mandated by the Commonwealth are: Bodily Injury Liability - $15,000 for one person in any one accident and $30,000 for two or more persons in any one accident; Property Damage Liability - $5,000 per accident; and Medical Benefits - $5,000. The annual premium for these basic coverages are presented below.

A. "Limited Tort" Option - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies.

The annual premium for basic coverage as required by law under this "Limited tort" option is $1,464.66.
Additional coverages under this option are available at additional cost.

B. "Full Tort" Option - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers.

The annual premium for basic coverage as required by law under the "Full Tort" option is $2,190.23.
Additional coverage under this option is available at additional cost.

C. You may contact your insurance agent, broker or company to discuss the cost of other coverages.

D. If you wish to choose the "Limited tort" option described in paragraph A, you must sign this notice where indicated below and return it. If you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full tort" premium.

I WISH TO CHOOSE THE "LIMITED TORT" OPTION DESCRIBED IN PARAGRAPH A.

APPLICANT'S SIGNATURE    POLICY #: <u>4140872</u>:                          DATE:

_(signature)_ SHAMEKA RENEE LAMAR                                           9/1/2012

SHAMEKA RENEE LAMAR

E. If you wish to choose the "Full Tort" option described in paragraph B, you may sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full Tort" premium.

I wish to choose the "Full Tort" option described in paragraph B:

APPLICANT'S SIGNATURE    POLICY #: <u>4140872</u>:                          DATE:

SHAMEKA RENEE LAMAR

OMNI PA TORTOPT (08/08)

9/1/2012 11:13:53 AM                                                       Page 7 of 13

**290a**

11/04/2014 12:57 FAX                                                    ⅄ 0007/0008

## UNINSURED MOTORIST COVERAGE
## REJECTION OF UNINSURED MOTORIST PROTECTION

Uninsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who fails to have any insurance coverage.

Uninsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want uninsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: <u>4140872</u>:           DATE:

SHAMEKA RENEE LAMAR
OMNI PA UMREJ (08/08)

9/1/2012 11:13:53 AM                                          Page 9 of 13

11/04/2014 12:58 FAX                                                    ☑0008/0008

## UNDERINSURED MOTORIST COVERAGE
## REJECTION OF UNDERINSURED MOTORIST PROTECTION

Underinsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims and whose policy limits are less than your underinsured motorists coverage limits.

Underinsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want underinsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: 4140872:              DATE:

SHAMEKA RENEE LAMAR
OMNI PA UIMREJ (08/08)

9/1/2012 11:13:53 AM                                              Page 10 of 13

**292a**

EXHIBIT "2"

11/04/2014 12:52 FAX                                                    0001/0008



## OMNI INSURANCE COMPANY
## 2018 POWERS FERRY ROAD
### SUITE 400
## ATLANTA, GA 30339

**APPLICATION FOR PRIVATE PASSENGER AUTO INSURANCE**

| APPLICANT NAME AND ADDRESS | PRODUCER |
|---|---|
| SHAMEKA RENEE LAMAR | OREGON INSTANT AUTO (1000053279) |
| 2545 W SILVER ST | 2653 S 8TH ST |
| PHILADELPHIA, PA 19132 | PHILADELPHIA, PA 19148 |
| Home: 215-667-4949 | 215-755-8045 |
| | Producer Name: ROBERT L PALUMBO 357175 |

| PREVIOUS ADDRESS (If less than 5 Years) | POLICY #: 4140872 |
|---|---|
| | POLICY EFFECTIVE: |
| | September 1, 2012 to September 1, 2013 |

**APPLICANT INFORMATION**

| First | Middle | Last | Suffix | Birth Date | Marital Status | Sex | SSN |
|---|---|---|---|---|---|---|---|
| SHAMEKA | RENEE | LAMAR | | 08/17/1980 | Sngl w/ cust of kids | Female | 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 |

List all persons over 14 years of age who are residents of the same household, LICENSED OR NOT.

| Name | Relationship | Excluded | License State | License Number | Date Licensed |
|---|---|---|---|---|---|
| SHAMEKA RENEE LAMAR | Self | No | PA | 25387713 | 08/01/2000 |

**EMPLOYMENT INFORMATION**

| Applicant | Employer |
|---|---|
| SHAMEKA RENEE LAMAR | |
| | Occupation                                    UNEMPLOYED |
| | Years In Current Occupation |
| Work Phone: | Years with Current Employer |
| | Years with Previous Employer |

**VEHICLES    [ NO ] - NAMED NON-OWNER POLICY? (If "Yes", complete Named Non-Owner Automobile Endorsement)**

| VEH | VIN | Year | Make and Model | Body Style | Symbol | Odometer |
|---|---|---|---|---|---|---|
| 1 | 3GNEC13T13G139408 | 2003 | Chevrolet AVALANCHE 1500 BASE/Z66/Z71 | Utility Vehicle - Two Wheel Drive 4 Door | 13 | |

**VEHICLES (Cont.)**

| VEH | Vehicle Use | Damaged | Anti-Theft | Restraint System |
|---|---|---|---|---|
| 1 | Pleasure | No | Antitheft Device Installed | Double Airbag |

**VEHICLE RATING**

| VEH | Garaging Address (If different) | State Registered | Territory | Rate Class | Points |
|---|---|---|---|---|---|
| 1 | | | 1 | SF32 | 3 |

**ACCIDENT / CONVICTION POINTS - PAST 35 MONTHS**

| Name | Date | Location Description | Points |
|---|---|---|---|
| 1. SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold LOADED FROM CLUE | 3 |
| | | • PD Paid $1,798.00 | |

**COVERAGES**

The applicant elects the following tort option **Limited Tort**.
Appropriate Tort Option selection notice must be signed by the applicant and attached to this application.

| | |
|---|---|
| Bodily Injury Liability | 15,000 per person / 30,000 per occurrence |
| Property Damage Liability | 5,000 per occurrence |
| Medical Payments | 5,000 per person |
| Income Loss Protection | Rejected |
| Funeral Benefits | Rejected |
| Accidental Death | Rejected |

**294a**

11/04/2014 12:53 FAX                                                      0002/0008

| | |
|---|---|
| Extraordinary Medical Expenses | Rejected |
| Uninsured Motorist BI | Rejected |
| Stack benefits | NO |
| Underinsured Motorist BI | Rejected |
| Stack benefits | NO |
| | Veh 1 |
| Collision Deductible | Rejected |
| Comprehensive Deductible | Rejected |
| Rental Reimbursement | Rejected |
| Towing and Labor | Rejected |
| Additional Custom Parts and Equipment | Rejected |

**DISCOUNTS AND SURCHARGES**

| | |
|---|---|
| Vehicle 1 | Double Airbag |

**PREMIUMS**

| Coverage | Veh 1 |
|---|---|
| Bodily Injury Liability Premium | $696.24 |
| Property Damage Liability Premium | $376.30 |
| Medical Payments Premium | $392.12 |
| Total ($1,464.66) | $1,464.66 |
| Deposit | $150.00 |
| Pay Plan 43 | 12 Month Extended |
| Rating Tier | K |
| Policy Tier | K |
| | |
| Deposit Fee | $12.00 |
| Policy Fee | $15.00 |

**PRIOR COVERAGE - 6 months continuous prior coverage with no more than 30 days lapse**

| Name of Latest Carrier | Policy Number | Termination Date | Plan Coverage | Years | Policy Written Through Your Agency |
|---|---|---|---|---|---|
| | | No | | | No |

**HOMEOWNER - Proof will be required to receive the discount.**

| | |
|---|---|
| Residency Status | Rent |
| Residency Type | Other |

Acceptable proof of home ownership includes mortgage coupon/statement, property tax records, or deed.

**GENERAL INFORMATION -- During the past three years, has the applicant, any household member, or any driver:**

| | | | |
|---|---|---|---|
| Date agent last inspected vehicle | | If yes, explain | |
| Any other auto insurance in household? (Include any provided by an employer) | NO | Has any person in the household had a license suspension or revocation in the last 35 months? | NO |
| If yes, explain | | If yes, explain | |
| Had a Comprehensive claim of $1,450 or more in last 35 months? | NO | Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)? | NO |
| If yes, how many | | Do all drivers reside in the named insured's household? | YES |
| Any coverage declined, cancelled, or non-renewed during the last 3 years? | NO | If no, explain | |
| If yes, explain | | Are all vehicles garaged in Pennsylvania for at least 10 months per year? | YES |
| Have health problems or physical, mental or emotional handicap or disability that would impair driving ability? | | If no, explain | |
| If yes, explain | | Are there any occasional operators not rated as previously described? | NO |
| Has vehicle ever been salvaged? | NO | If yes, explain | |
| If yes, explain | | Are there any other cars in the household or available for regular use not previously described? | NO |
| Any vehicle "Gray Market" (i.e. not manufactured for original sale in the U.S.)? | NO | If yes, describe | |
| If yes, explain | | Does any listed vehicle have unrepaired damage? | NO |
| Is vehicle titled in any name other than the named insured? | NO | If yes, describe | |
| If yes, who & why? | | Has any operator been licensed in the U.S. or Canada for less than 3 years (except ages 16-19)? | NO |
| Any vehicles listed on this application used for hire (taxi, limo, etc.), commercial or business purposes, delivery (pizza, newspaper, etc.), or used in the course of scope of your employment? | | If yes, explain | |

**BINDER/SIGNATURE**

| INSURANCE BINDER | | IF THE "BINDER" BOX TO THE LEFT IS COMPLETED, THE FOLLOWING CONDITIONS APPLY: THIS COMPANY BINDS THE KIND(S) OF INSURANCE STIPULATED ON THIS APPLICATION. THIS INSURANCE IS SUBJECT TO THE TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY(IES) IN CURRENT USE BY THE COMPANY. |
|---|---|---|
| EFFECTIVE DATE 09/01/2012 | EXPIRATION DATE 10/01/2012 | |

9/1/2012 11:13:53 AM                                                    Page 2 of 13

11/04/2014 12:54 FAX                                                    ☑ 0003/0008

| | |
|---|---|
| TIME<br>10:59 AM ET | ☑ 12:01 AM<br>☐ NOON<br>☐ COVERAGE IS NOT BOUND |

THIS BINDER MAY BE CANCELLED BY THE INSURED BY SURRENDER OF THIS BINDER OR BY WRITTEN NOTICE TO THE COMPANY STATING WHEN CANCELLATION WILL BE EFFECTIVE. THIS BINDER MAY BE CANCELLED BY THE COMPANY BY NOTICE TO THE INSURED IN ACCORDANCE WITH THE POLICY CONDITIONS. THIS BINDER IS CANCELLED WHEN REPLACED BY A POLICY. IF THIS BINDER IS NOT REPLACED BY A POLICY, THE COMPANY IS ENTITLED TO CHARGE A PREMIUM FOR THE BINDER ACCORDING TO THE RULES AND RATES IN USE BY THE COMPANY. THE QUOTED PREMIUM IS SUBJECT TO VERIFICATION AND ADJUSTMENT, WHEN NECESSARY, BY THE COMPANY.

## NOTICE OF INSURANCE INFORMATION PRACTICES

I UNDERSTAND THAT TO CALCULATE AN ACCURATE PRICE FOR MY INSURANCE, THE COMPANY MAY OBTAIN INFORMATION FROM THIRD PARTIES, SUCH AS CONSUMER REPORTING AGENCIES THAT PROVIDE DRIVING, CLAIMS AND CREDIT HISTORIES FOR YOU AND ALL OTHERS LISTED ON THIS APPLICATION. THE COMPANY MAY USE A CREDIT-BASED INSURANCE SCORE BASED ON THE INFORMATION CONTAINED IN THE CREDIT HISTORY. THE COMPANY OR ITS AFFILIATES MAY OBTAIN NEW OR UPDATED INFORMATION TO CALCULATE MY RENEWAL PREMIUM OR SERVICE MY INSURANCE. I MAY ACCESS INFORMATION ABOUT ME AND CORRECT IF INACCURATE. IN SOME CASES, THE LAW PERMITS THE COMPANY TO DISCLOSE THE INFORMATION IT COLLECTS WITHOUT AUTHORIZATION. HOWEVER, THE COMPANY WILL NOT SHARE PERSONAL INFORMATION WITH NONAFFILIATED COMPANIES FOR THEIR MARKETING PURPOSES WITHOUT CONSENT. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. I UNDERSTAND THE DECISION TO REQUEST A CREDIT REPORT IS NOT BASED ON RACE, COLOR, CREED, MARITAL STATUS, SEX, OR NATIONAL ORIGIN. I UNDERSTAND I SHALL BE ADVISED HOW TO OBTAIN A COPY OF MY REPORT IF AN ADVERSE UNDERWRITING DECISION OCCURS.

## FEES

I ACKNOWLEDGE THAT THE ELECTRONIC FUNDS TRANSFER (EFT) PAYMENT PLAN INCLUDES A $5.00 SERVICE FEE PER PAYMENT. I ACKNOWLEDGE THAT ALL OTHER PAYMENT PLANS INCLUDE A $12.00 NON-STANDARD INSTALLMENT FEE PER PAYMENT. I UNDERSTAND AND AGREE TO PAY A CREDIT CARD FEE OF $3.00 FOR ANY PAYMENT MADE TO THE COMPANY WITH A CREDIT CARD OR DEBIT CARD. I ALSO AGREE TO PAY A $12.00 LATE PAYMENT FEE DURING THE POLICY TERM AND EACH RENEWAL POLICY TERM WHEN A PAYMENT IS RECEIVED BY THE COMPANY AFTER THE PREMIUM DUE DATE. I UNDERSTAND AND AGREE TO PAY A REINSTATEMENT FEE OF $15.00 EACH TIME MY CANCELLED POLICY IS REINSTATED. REINSTATEMENT IS NOT A WAIVER OF RIGHTS BY THE COMPANY AND DOES NOT IMPOSE FURTHER DUTIES ON THE COMPANY AS TO FUTURE CANCELLATIONS. REINSTATEMENT WILL NOT TAKE AFFECT IF THE CHECK OR CREDIT CARD I SUBMIT FOR REINSTATEMENT IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON. I UNDERSTAND AND AGREE TO PAY A FINAL CANCELLATION FEE OF $50.00 IF THE COMPANY CANCELS THIS POLICY DUE TO MY FAILURE TO PAY ANY PREMIUM WHEN DUE. I UNDERSTAND AND AGREE TO PAY A $30.00 FEE FOR EVERY PAYMENT RETURNED TO THE COMPANY FOR NON-SUFFICIENT FUNDS (NSF). I AGREE TO PAY A $15.00 POLICY FEE TO BE COLLECTED IN THE INITIAL PAYMENT FOR EACH POLICY TERM. I UNDERSTAND THAT MY POLICY WILL BE CANCELLED IF I AM UNWILLING TO PAY ANY OF THESE FEES.

## IN NO EVENT SHALL COVERAGE BE EFFECTIVE PRIOR TO THE DATE AND HOUR OF COMPLETION OF THIS APPLICATION

**APPLICANT'S STATEMENT**

I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY. I also agree to pay any surcharges applicable under Company rules that are necessitated by inaccurate or incomplete statements. I understand that my policy will be cancelled if I am willing to pay the additional premium.

Note: In connection with your request for a premium quotation: (1) we may obtain consumer reports or personal or privileged information from third parties; (2) in certain circumstances, such information, as well as other personal or privileged information subsequently collected by us, may be disclosed to third parties without your authorization, but it is not our practice to do so; (3) you have the right to access and correct all personal information collected; and (4) at your request we will: (a) confirm whether a consumer report was requested and, if so, provide the name and address of the consumer reporting agency that furnished it; and (b) provide you more detailed information regarding our collection, use, and disclosure of personal information, and your rights to access and correct such information. I also acknowledge that the Company may obtain consumer report in the future for an update, renewal or extension of this insurance.

I agree that if I pay my initial premium by check, the coverage afforded by this policy is conditional on the check being honored by the bank when presented for payment. If the check in not honored, Omni shall be deemed not to have accepted the check and this policy shall be void from inception.

Insurance coverage is conditional upon the payment of premium and payment by electronic funds transfer, check, draft, debit card, credit card or other remittance is not considered payment until it is presented to and paid by the drawee financial institution. IF THE TRANSFER, CHECK, DEBIT CARD, CREDIT CARD OR OTHER REMITTANCE I SUBMIT WITH THIS APPLICATION IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON, COVERAGE WILL NOT TAKE EFFECT; The Company shall be deemed not to have accepted the payment and this policy shall be void.

I certify that:
• I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR or OCCASIONAL basis. This includes children away from home or away at school. I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my households, or who operates my auto(s).
• Each vehicle listed in this application is garaged at the zip code provided in this application for my principle residence for ten (10) or more months each year and the garaging address of all listed auto(s) is the Pennsylvania address listed on this application.
• I have reported any driver that commutes out of state for work or school one or more times per week to the Company and agree to notify the Company prior to any such future commuting.
• I have reported any business or commercial use of my auto(s) to the Company and agree to notify the Company prior to any future business use. I understand that the Company does not cover losses if my vehicle is being used for business or commercial purposes and these purposes are not disclosed prior to the loss.
• If I have requested coverage for damages to my auto(s), I have reported to the Company all unrepaired damage or glass breakage.
• The Custom or Additional Equipment I want covered has been declared and is listed on this application.

The premium for the coverages itemized on this application are based upon rates in excess of standard rates in the Commonwealth of Pennsylvania Automobile Insurance Plan. I understand that discounts are available for drivers who meet the requirements for restraint systems, anti-theft devices, and driver improvement courses.

9/1/2012 11:13:53 AM                                              Page 3 of 13

. 11/04/2014 12:55 FAX                                          ☒0004/0008

Regardless of the limits of liability shown on the Declarations page, the limits of liability afforded by this policy to anyone you give permission to drive the insured auto, who is not listed on the Declarations page prior to the loss, will not exceed the minimum statutory coverage required under Pennsylvania law.

**FRAUD**
The insurance policy is issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information regarding license and driving history of the undersigned, "family members" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or and "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

To the extent that we make payments to you under this policy and our subsequent investigation reveals your involvement in fraud or misrepresentation in the presentation of a claim, you must indemnify the Company for all payments made for that claim.

Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such a person to criminal and civil penalties.

APPLICANT'S SIGNATURE (applies to the sections listed below)
• Fees
• Applicant's Statement
• Fraud

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. I understand that the coverage selection and limit choices indicated here or in any state supplement and I further declare that I will notify Omni Indemnity Company by phone, e-mail or in writing if any information on this application changes while the policy, or any renewal thereof, is in force. By signing below, I agree that this application becomes a part of my policy, is a legal document, and acknowledge that I have read the warnings and statements listed on this application.

_Shaneka Vamor_                                    _9/1/2012_

**Signature of Applicant POLICY #: 4140872**                Date

**AGENT'S SIGNATURE**

I certify that to the best of my knowledge, all information contained herein is correct; the statements made herein are those of the applicant and all questions have been answered by the applicant. I have explained all coverages and options to the applicant; and the applicant and I are retaining a duplicate signed copy hereof. I am legally qualified to submit this application on behalf of the applicant.

1000053279    _9/1/2012_

**Signature of Agent**                    Agent      Date
                                          Number

OMNI PA APP (04/11)

## IMPORTANT NOTICE

**Benefits and Limits Notice**

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of 75 Pa. C.S.A. Section 1715(d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

You may be eligible for discounts mandated by Act 6 of 1990: (1) on first party benefits coverage if your car is equipped with a passive restraint system; (2) on comprehensive coverage if your car is equipped with a passive antitheft device; or (3) if named insured is 55 or older and has successfully completed a motor vehicle driver improvement course approved by PennDOT. See your agent for details.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

APPLICANT'S SIGNATURE POLICY #: 4140872:                                     DATE:

*Shameka Lamar*                                                                    9/1/2012

SHAMEKA RENEE LAMAR
OMNI PA BENNOT (08/08)

# TORT OPTION SELECTION NOTICE TO NAMED INSUREDS

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The minimum motor vehicle insurance coverage and limits mandated by the Commonwealth are: Bodily Injury Liability - $15,000 for one person in any one accident and $30,000 for two or more persons in any one accident; Property Damage Liability - $5,000 per accident; and Medical Benefits - $5,000. The annual premium for these basic coverages are presented below.

A. "Limited Tort" Option - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies.

The annual premium for basic coverage as required by law under this "Limited tort" option is $1,464.66.
Additional coverages under this option are available at additional cost.

B. "Full Tort" Option - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers.

The annual premium for basic coverage as required by law under the "Full Tort" option is $2,190.23.
Additional coverage under this option is available at additional cost.

C. You may contact your insurance agent, broker or company to discuss the cost of other coverages.

D. If you wish to choose the "Limited tort" option described in paragraph A, you must sign this notice where indicated below and return it. If you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full tort" premium.

I WISH TO CHOOSE THE "LIMITED TORT" OPTION DESCRIBED IN PARAGRAPH A.

APPLICANT'S SIGNATURE    POLICY #: <u>4140872</u>                     DATE: 9/1/2012

SHAMEKA RENEE LAMAR

E. If you wish to choose the "Full Tort" option described in paragraph B, you may sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full Tort" premium.

I wish to choose the "Full Tort" option described in paragraph B:

APPLICANT'S SIGNATURE    POLICY #: <u>4140872</u>                     DATE:

SHAMEKA RENEE LAMAR

OMNI PA TORTOPT (08/08)

9/1/2012 11:13:53 AM                                                      Page 7 of 13

**299a**

· 11/04/2014 12:57 FAX    ☒0007/0008

## UNINSURED MOTORIST COVERAGE
## REJECTION OF UNINSURED MOTORIST PROTECTION

Uninsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who fails to have any insurance coverage.

Uninsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want uninsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: <u>4140872</u>:          DATE:

SHAMEKA RENEE LAMAR
OMNI PA UMREJ (08/08)

300a

11/04/2014 12:58 FAX                                                    0008/0008

## UNDERINSURED MOTORIST COVERAGE
## REJECTION OF UNDERINSURED MOTORIST PROTECTION

Underinsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims and whose policy limits are less than your underinsured motorists coverage limits.

Underinsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want underinsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: 4140872:                    DATE:

SHAMEKA RENEE LAMAR
OMNI PA UIMREJ (08/08)

9/1/2012 11:13:53 AM                                              Page 10 of 13

301a

EXHIBIT "3"

LAW OFFICES

# KELLY & HERRON, P.C.

KEVIN P. KELLY
kkelly@kellyherronlaw.com

PAUL L. HERRON
pherron@kellyherronlaw.com

1500 MARKET STREET
CENTRE SQUARE - WEST TOWER
SUITE W-3110
PHILADELPHIA, PENNSYLVANIA 19102-2100
(215) 972-1500
FAX (215) 972-8217

SUBURBAN OFFICE
845 KING OF PRUSSIA ROAD
RADNOR, PA 19087

July 1, 2014

Jill Schrader
Omni Insurance Company
PO Box 105019
Atlanta, GA 30348-5019

RE:   Our Client:        Richard A. Duncan, Jr.
      Your Insured:      Shameka Lamar
      Your Claim No.:    2012 84855
      Date of Accident:  10/8/2012

Dear Ms. Schrader:

As you are aware, this office represents Richard Duncan, Jr., in a claim for injuries and other damages he sustained in the motor vehicle accident of October 8, 2012. My client was a passenger aboard the SEPTA Route "47" bus involved in the collision with the vehicle owned by your insured and operated by Chris Aaron at or near the intersection of 8th and Dickinson Streets in Philadelphia, PA.

Our investigation reveals liability clearly rests on your insured; the SEPTA bus was at a complete stop when your insured's driver struck the bus in the rear. His careless and negligent acts and/or omissions resulted in the aforesaid collision and caused my client to sustain serious and disabling injuries.

Mr. Duncan sustained injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia.

In an effort to cure the aforesaid injuries, my clients sought medical treatment from the following providers and incurred medical expenses as itemized:

1.   JEFFERSON UNIVERSITY HOSPITAL
     10/08/12                    $ will supply
     11/26/12                    $ 1,852.00

303a

# KELLY & HERRON, P.C.

Omni
Page Two
July 1, 2014

| | | |
|---|---|---|
| 2. | ART OF PAIN MANAGEMENT<br>10/10/12 - 2/27/13 | $16,345.00 |
| 3. | DELAWARE CO. OPEN MRI<br>12/04/12 | $ 1,100.00 |
| 4. | CITY OF PHILA EMS<br>10/08/12 | $  970.00 |

TOTAL MEDICAL SPECIALS:     $ 20,267.00

Mr. Duncan continues to suffer pain and restriction of movement in his back. He has incurred medical expenses as itemized above. He has incurred out of pocket expenses including excess medical bills in the amount of **$20,267.00**; as he was a passenger on a stationary SEPTA bus, he is not entitled to PIP benefits, and he does not personally own a vehicle, nor does he reside with a relative who owns a vehicle; I enclose a copy of his properly executed Affidavit of No Insurance. Accordingly, all of his medical bills remain unpaid. He has been deprived of life's pleasures. He has in the past and will continue in the future to suffer pain and inconvenience as a result of the negligence of your insured's driver.

In view of the manner in which this accident happened, the medical expenses/economic damages suffered by my client, and the continuing residual affects he is experiencing, my demand for settlement purposes is Fifty Two Thousand Five Hundred ($52,500.00) Dollars.

Kindly contact the undersigned upon completion of your settlement evaluation with a view toward an amicable resolution of this claim.

# KELLY & HERRON, P.C.

Omni
Page Three
July 1, 2014

Thank you for your attention to this matter.

Very truly yours,

KEVIN P. KELLY, Esquire

KPK/lml
enclosures

EXHIBIT "4"



OMNI INSURANCE COMPANY
P.O. BOX 3000
PLYMOUTH MEETING, PA 19462
PHONE: 800-954-2442 / FAX: 610-832-2138

KEVIN P. KELLY
KELLY & HERRON
1700 MARKET ST., STE. 3112
PHILADELPHIA, PA 19103

July 08, 2014

Re:
Insured: Shameka Lamar
Driver: Chris Porter, aka Chris Aaron
Our Claim Number: 2012-84855
Loss Date: 10/08/2012
Your Client: Richard Duncan, Jr.

Dear Mr. Kelly:

Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

If you wish to discuss this matter, I can be reached Monday-Friday, 8:00 am –4:00 pm, at 800-954-2442, ext. 8765.

Sincerely,

Andrew Funk
Bodily Injury Supervisor

307a

EXHIBIT "5"

KELLY & HERRON, P.C.
BY: KEVIN P. KELLY, ESQUIRE
ATTORNEY I.D. No: 28306
1500 Market Street, Suite W3110
Philadelphia, PA 19102
(215) 972-1500                          **Attorney for Plaintiffs**

RICHARD DUNCAN                    :    PHILADELPHIA COUNTY
                                  :    COURT OF COMMON PLEAS
          vs.                     :
                                  :    SEPTEMBER TERM, 2014
CHRIS AARON                       :
and                               :    NO.  0479
SHAMEKA RENEE LAMAR               :

## COMPLAINT IN CIVIL ACTION
## 2V  —  MOTOR VEHICLE ACCIDENT

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint or for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

YOU SHOULD TAKE THIS PAPER TO YOUR LAWYER AT ONCE. IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta asentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE. SI NO TIENE ABOGADO O SINO TIENE EL DINERO SUFICIENTE DE PAGAR TAL SERVICIO, VAYA EN PERSONA O LLAME POR TELEFONO A LA OFICINA CUYA DIRECCION SE ENCUENTRA ESCRITA ABAJO PARA AVERIGUAR DONDE SE PUEDE CONSEGUIR ASISTENCIA LEGAL.

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA  19107
(215) 238-1701

7.22.15 @ 6:26 pm
7.23.15 @ 5:45 pm
7.24.15 @ 10:20 Am
7.24.15 @ 3:25 pm    267 973 7146
7.28.15 @ 1:55 pm
7.29.15 @ 6:40 pm

## COMPLAINT IN CIVIL ACTION

1.    Plaintiff, Richard Duncan, is an adult individual residing at 319 Whites Road, Apartment D4, Lansdale, PA, 19446.

2.    Defendant, Chris Aaron, is an adult individual residing at 428 Mifflin Street, Philadelphia, PA, 19148.

3.    Defendant, Shameka Renee Lamar, is an adult individual residing at 2545 W. Oliver Street, Philadelphia, PA, 19132.

4.    On or about October 8, 2012, and at all times relevant herein, defendant, Chris Aaron, with permissive use, possessed, controlled and operated a vehicle believed to be a 2003 Chevrolet Avalanche, PA registration ZCV-5288, which vehicle was owned by defendant, Shameka Renee Lamar, and involved in the accident hereinafter described.

5.    On or about October 8, 2012, and at all times relevant herein, plaintiff was a passenger aboard the SEPTA Route "47" bus which was at a complete stop at a posted stop sign southbound on 8th Street at its intersection with Dickenson Street in the City of Philadelphia, PA when it was suddenly and unexpectedly struck in the rear by the vehicle owned by defendant, Shameka Renee Lamar, and operated by defendant, Chris Aaron, which was then and there traveling in a southbound direction on 8th Street in a careless and negligent manner.

## COUNT ONE
### RICHARD DUNCAN v. CHRIS AARON
#### NEGLIGENCE

6.    Plaintiff incorporates by reference paragraphs one through five of this Complaint as though same were fully set forth at length.

7.    The automobile collision described in the preceding paragraphs of this Complaint was caused by the carelessness and negligence of the Defendant, Chris Aaron, both generally and in the following particular respects:

(a)   Failing to observe the stopped SEPTA bus;

(b)   Failing to maintain a proper lookout;

(c)   Failing to maintain adequate control of the operation of said motor vehicle;

(d)   Operating said motor vehicle at a speed which was excessive under the circumstances;

(e)   Failing to stop said motor vehicle within the assured clear distance ahead;

(f)   Operating said motor vehicle without due regard for the point and position of the opposing motor vehicle; and

(g)   Failing to operate said motor vehicle with due care and regard for the health and safety of Plaintiff.

8.    As a result of the Defendant's negligence and the accident caused thereby, Plaintiff sustained severe bodily injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia; multiple bruises, lacerations and abrasions, together

with a severe shock to his nervous system, some or all of which may
be permanent in nature and, as a result, the Plaintiff has suffered
and continues to suffer pain and inconvenience as a result of these
injuries.

9.   As a further result of the foregoing, the Plaintiff has
been obliged to receive and under medical attention and care and to
incur various expenses for same and he may be obliged to continue
to undergo such medical care and to incur such expenses for an
indefinite time in the future.

10.   As a further result of the foregoing, the Plaintiff has
suffered, and will continue to suffer, a severe loss of his
earnings and/or impairment of earning capacity or power, which loss
and/or impairment has or may exceed the sum recoverable under the
limitations in the Pennsylvania Financial Responsibility Law.

11.   As a further result of the foregoing, the Plaintiff has
suffered in the past, and will continue to suffer in the future,
excruciating and agonizing pains, aches, mental anguish,
humiliation, disfigurement and limitation and restriction of
his usual duties, pursuits and pleasures.

WHEREFORE, Plaintiff demands judgment against the Defendants,
individually, jointly and severally, in an amount not in excess of
Fifty Thousand ($50,000.00) Dollars.

**COUNT TWO**
**RICHARD DUNCAN v. SHAMEKA RENEE LAMAR**
**NEGLIGENT ENTRUSTMENT**

12.   Plaintiff incorporates by reference paragraphs one
through eleven of this Complaint as though same were fully set

forth at length.

13. The aforesaid collision, which caused plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shameka Renee Lamar, which consisted of the following:

a) failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;

b) failing to maintain the vehicle in proper working order;

c) negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

14. The defendant owner, Shameka Renee Lamar, is liable to the plaintiff for the damages suffered as more fully set forth hereinbefore by virtue of the failure to investigate the qualifications and capabilities of the defendant driver to operate the motor vehicle which the defendant driver was operating at the time of the incident.

15. The defendant owner, Shameka Renee Lamar, is further liable to the plaintiff in that she provided permissive use of her vehicle to the defendant, Chris Aaron, when she knew, or should have known, that defendant Aaron did not possess a valid operator's license on the date of the accident herein.

16. Defendant, Shameka Renee Lamar, knew, or should have known, that her automobile insurance policy contained an exclusion stating the policy did not afford liability coverage in the event

the driver of her vehicle did not possess a valid operators license when involved in an motor vehicle accident.

17. As a result of the Defendant's negligence and the accident caused thereby, Plaintiff sustained severe bodily injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia; multiple bruises, lacerations and abrasions, together with a severe shock to his nervous system, some or all of which may be permanent in nature and, as a result, the Plaintiff has suffered and continues to suffer pain and inconvenience as a result of these injuries.

18. As a further result of the foregoing, the Plaintiff has been obliged to receive and under medical attention and care and to incur various expenses for same and he may be obliged to continue to undergo such medical care and to incur such expenses for an indefinite time in the future.

19. As a further result of the foregoing, the Plaintiff has suffered, and will continue to suffer, a severe loss of his earnings and/or impairment of earning capacity or power, which loss and/or impairment has or may exceed the sum recoverable under the limitations in the Pennsylvania Financial Responsibility Law.

20. As a further result of the foregoing, the Plaintiff has suffered in the past, and will continue to suffer in the future, excruciating and agonizing pains, aches, mental anguish, humiliation, disfigurement and limitation and restriction of his usual duties, pursuits and pleasures.

WHEREFORE, Plaintiff demands judgment against the Defendants, individually, jointly and severally, in an amount not in excess of Fifty Thousand ($50,000.00) Dollars.

**KELLY & HERRON, P.C.**

By:_____/s/_____
      KEVIN P, KELLY, ESQUIRE
      Attorney for Plaintiff

EXHIBIT "6"



OMNI INSURANCE COMPANY
P.O. BOX 3000
PLYMOUTH MEETING, PA 19462
PHONE: 800-954-2442 / FAX: 610-832-2138

SHAMEKA RENEE LAMAR
2545 W SILVER ST
PHILADELPHIA, PA 19132

September 16, 2014

Policy Number: 4140872
Our Claim Number: 2012-84855
Loss Date: 10/08/2012

Dear SHAMEKA RENEE LAMAR,

Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

You are being sued. I enclose herewith a copy of the suit. You will need to retain your own attorney, at your own expense, as Omni will not be providing an attorney for you based on the above coverage denial.

If you wish to discuss this matter, please feel free to contact Karen Giorno at 800-954-2442, ext. 8358.

Sincerely,

Scott Mascioli
Litigation Manager

AIICO 0267

317a

EXHIBIT "7"



OMNI INSURANCE COMPANY
P.O. BOX 3000
PLYMOUTH MEETING, PA 19462
PHONE: 800-954-2442 / FAX: 610-832-2138

CHRIS PORTER
428 MIFFLIN STREET
PHILADELPHIA, PA 19148

September 16, 2014

Policy Number: 4140872
Our Claim Number: 2012-84855
Loss Date: 10/08/2012

Dear Chris Porter,

Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

You are being sued. I enclose herewith a copy of the suit. You will need to retain your own attorney, at your own expense, as Omni will not be providing one for you based on the above coverage denial.

If you wish to discuss this matter, please feel free to contact Karen Giorno at 800-954-2442, ext. 8358.

Sincerely,

Scott Mascioli
Litigation Manager

AIICO 0266

EXHIBIT "8"

*First Judicial District of Pennsylvania*
*Philadelphia Court of Common Pleas*

Richard Duncan, Plaintiff
118 Girard Ave., Apt. C
Glenside, PA 19038

September Term, 2014, 00479
(Month)    (Year)    (No.)

### Arbitration
(Please indicate type of action)

☑ Motor Vehicle

(Date of Accident) 11-8-12

Defendants,

Versus

Chris Aaron          Shamika Renee Lamar
428 McAllin St.      2545 W. Silver St.
Philadelphia, PA     Philadelphia, PA
19148                19132

☐ Delay Damages (Prime Rate +1)

Duncan Vs. Aaron Etal-AWFFP

= 6%)

14090047900021

☐ Other

## Report and Award of Arbitrators

And Now, this 3 day of June Year 2015 we the undersigned arbitra-
tors having been duly appointed and sworn, make the following award:

Judgement for Plaintiff and against
Defendants Chris Aaron and Shamika Renee Lamar
in the amount of $28,000.00 ($13,000.00 for medicals
and $15,000.00 for pain and suffering)

Please name the parties if there are more than one plaintiff and/or defendant. Please address all
counterclaims and cross claims. Please complete percentage of negligence on reverse side if applicable.

_____
Chairperson

_____
Arbitrator

_____
Arbitrator

Alton B. Bautista, 1525 Spruce St. 4th Fl., Phila, PA 710:
Please Print Name, Address and I.D. No.    25676?

Ruth Pearson - 3001 S. Sydenham St. Phila 19145
Please Print Name, Address and I.D. No.    33 S. 15th St. 6th FL

Michael S. Miller Jr. PPA 19102    #310431
Please Print Name, Address and I.D. No.

List Attorneys of Record and Unrepresented Parties Who:
Appeared at the hearing:

Kevin P. Kelly for Plaintiff

Did Not Appear at the Hearing:

Deft. Chris Aaron

Deft. Shamika Renee Lamar

10-210 (Rev. 2/09)

Case ID: 14090047

**321a**

## Questions to be Answered by the Arbitrators in Negligence Cases

**Instructions:**

Taking the combined negligence that was a substantial factor in bringing about any or all of the plaintiff's injuries, damage or losses as 100%, answer the following questions and state in percentages the causal negligence attributed to each party you have found causally negligent.

Do you find that any defendant or additional defendant was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | |
|---|---|
| | % |
| | % |
| | % |
| | % |

Do you find that any plaintiff was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | |
|---|---|
| | % |
| | % |
| | % |
| | % |

Total    100 %

## Notice of Entry of Award

And Now, this _____ day of _____, Year _____, at _____ .m., the above award was entered upon the docket and notice thereof given by mail to the parties or their attorneys.

DOCKETED
ARBITRATION

JUN - 3 2015

S. PRESSLEY                                    *Prothonotary*

(Arbitration compensation to be
paid on appeal $225.00)

By: _____

Separate Appeals must be filed with the Prothonotary pursuant to P.A. R. Civ. P. No. 1308, and the requisite fees paid, if two or more cases are consolidated for Trial and/or Discovery purposes. Only those cases which are appealed will be scheduled for a *de novo* hearing. Awards in cases not appealed will become final upon expiration of the appeal time.

Case ID: 140090047

EXHIBIT "9"

KELLY & HERRON, P.C.
BY: KEVIN P. KELLY, ESQUIRE
ATTORNEY I.D. No: 28306
1500 Market Street, Suite W3110
Philadelphia, PA 19102
(215) 972-1500

Attorney for Plaintiff

RICHARD DUNCAN

        vs.

CHRIS AARON
and
SHAMEKA RENEE LAMAR

: PHILADELPHIA COUNTY
: COURT OF COMMON PLEAS
:
: SEPTEMBER TERM, 2014
:
: NO. 0479
:
:

## PRAECIPE TO ENTER JUDGMENT

TO THE PROTHONOTARY:

Kindly enter judgment in favor of the plaintiff, Richard Duncan, and against defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 pursuant to the Arbitration Award dated June 3, 2015 upon payment of your costs only.

Attached hereto, made a part hereof, and marked Exhibit "A" is a copy of the Award of the Board of Arbitrators dated June, 2015.

KELLY & HERRON, P.C.

BY:____/s/_____
KEVIN P. KELLY, Esquire
Attorneys for Plaintiff

dated:    July 7, 2015

Case ID: 14090047

**324a**

# EXHIBIT "A"

Case ID: 14090047

First Judicial District of Pennsylvania
Philadelphia Court of Common Pleas

Richard Duncan, Plaintiff
118 Girard Ave., Apt. C
Glenside, PA 19038

September Term, 2014, 00479
(Month) (Year) (No.)

**Arbitration**
(Please indicate type of action)
☑ Motor Vehicle

(Date of Accident) 11-8-12

Defendants,                    Versus
Chris Aaron    |  Shameka Renee Lamar
420 McAllin St. | 2845 W. Silver St.
Philadelphia, PA | Philadelphia, PA
   19148      |      19132

☐ Delay Damages (Prime Rate +1)
Duncan Vs Aaron Etal-AWFFP

‖‖‖‖‖‖‖‖‖‖‖‖‖ ÷ 6%)
14090047900021

☐ Other

## Report and Award of Arbitrators

And Now, this 3 day of June Year 2015 we the undersigned arbitrators having been duly appointed and sworn, make the following award:

Judgement for Plaintiff and against
Defendants Chris Aaron and Shameka Renee Lamar
in the amount of $28,000.00 ($13,000.00 for medicals
and $15,000.00 for pain and suffering)

Please name the parties if there are more than one plaintiff and/or defendant. Please address all counterclaims and cross claims. Please complete percentage of negligence on reverse side if applicable.

_____
Chairperson

_____
Arbitrator

_____
Arbitrator

Alston B. Mendoza, 1528 Spruce St., 4th Fl., Phila, PA 740:
(PRV) Please Print Name, Address and I.D. No:    25696

Ruth Pearson - 3001 S. Sydenham St. Phila 19145-
Please Print Name, Address and I.D. No.    30 S. 15th St. 6th Fl.

Michael S. Miller Jr. PPA 19102   #310431
Please Print Name, Address and I.D. No.

List Attorneys of Record and Unrepresented Parties Who:
Appeared at the hearing:                Did Not Appear at the Hearing:

Kevin P. Kelly for Plaintiff            Def. Chris Aaron

                                        Def. Shameka Renee Lamar

# Questions to be Answered by
## the Arbitrators in Negligence Cases

**Instructions:**

Taking the combined negligence that was a substantial factor in bringing about any or all of the plaintiff's injuries, damage or losses as 100%, answer the following questions and state in percentages the causal negligence attributed to each party you have found causally negligent.

Do you find that any defendant or additional defendant was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

_____    _____ %
_____    _____ %
_____    _____ %
_____    _____ %

Do you find that any plaintiff was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

_____    _____ %
_____    _____ %
_____    _____ %
_____    _____ %

Total    100%

# Notice of Entry of Award

And Now, this _____ day of _____ Year _____ at _____ .m., the above award was entered upon the docket and notice thereof given by mail to the parties or their attorneys.

DOCKETED
ARBITRATION

JUN - 3 2015

S. PRESSLEY                              *Prothonotary*

(Arbitration compensation to be
paid on appeal $225.00)

By: _____

Separate Appeals must be filed with the Prothonotary pursuant to P.A. R. Civ. P. No. 1308, and the requisite fees paid, if two or more cases are consolidated for Trial and/or Discovery purposes. Only those cases which are appealed will be scheduled for a *de novo* hearing. Awards in cases not appealed will become final upon expiration of the appeal time.

Case ID: 111090047

327a

EXHIBIT "10"

RICHARD DUNCAN            :    COURT OF COMMON PLEAS
                         :    PHILADELPHIA COUNTY
    VS.                  :
                         :    SEPTEMBER TERM, 2014
CHRIS AARON              :
    AND                  :    NO.: 0479
SHAMEKA RENEE LAMAR      :

## ASSIGNMENT

WHEREAS, the Plaintiff, Richard Duncan, sustained personal injuries in an October 8, 2012 motor vehicle accident,

WHEREAS, the motor vehicle occupied by Plaintiff, Richard Duncan was rear-ended by a vehicle operated by Defendant, Chris Aaron and owned by Defendant, Shameka Renee Lamar,

WHEREAS, the motor vehicle Chris Aaron was operating at the time of the accident was insured by Omni Insurance Company,

WHEREAS, Defendant, Shameka Renee Lamar was the named insured under a personal automobile policy issued by Omni Insurance Company,

WHEREAS, Plaintiff, Richard Duncan instituted suit against Defendants, Chris Aaron and Shameka Renee Lamar in connection with the injuries sustained in the October 8, 2012 motor vehicle accident,

WHEREAS, the tender of defense and indemnity of the lawsuit was made to Omni Insurance Company,

WHEREAS, Omni Insurance Company disclaimed coverage to Defendants, Chris Aaron and Shameka Renee Lamar for any claims arising out of the October 8, 2012 motor vehicle accident,

WHEREAS, Omni Insurance Company refused to provide a defense or indemnity to Defendants, Chris Aaron and Shameka Renee Lamar in the present action instituted by Plaintiff, Richard Duncan,

WHEREAS, on or about March 23, 2015 a default judgment was entered against Defendants, Chris Aaron and Shameka Renee Lamar,

WHEREAS, on June 3, 2015 an Arbitration Hearing for an Assessment of Damages was held awarding damages against Defendants, Chris Aaron and Shameka Renee Lamar in the amount of Twenty Eight Thousand ($28,000.00) Dollars,

WHEREAS, on or about July 7, 2015, judgment was entered against Defendants, Chris Aaron and Shameka Renee Lamar in the amount of $28,000.00,

WHEREAS, Defendant, Shameka Renee Lamar desires to assign her rights against Omni Insurance Company to Plaintiff, Richard Duncan in connection with the judgment entered against her in this action for good and valuable consideration as set forth more fully below, and,

WHEREAS, Plaintiff, Richard Duncan agrees to satisfy any judgment entered against Defendants, Shameka Renee Lamar and Chris Aaron after the conclusion of all claims against Omni Insurance Company.

NOW THEREFORE, it is hereby stipulated and agreed by and between the Plaintiff, Richard Duncan and Defendant, Shameka Renee Lamar as follows:

1. <u>Assignment</u>. The Defendant, Shameka Renee Lamar

for good and valuable consideration, as set forth more fully
below, hereby assigns to the Plaintiff, Richard Duncan any and
all rights, interest, claims and/or potential causes of action
including, but not limited to, all contractual and extra-
contractual claims, actions for common law and statutory bad
faith under 42 Pa.C.S.A. §8371, a beach of fiduciary duty, breach
of duty of good faith and fair dealings, punitive damages, unfair
trade practice and consumer protection law, 73 P.S.§201-1 et
seq., negligence, breach of contract, misrepresentation, and any
other claims or causes of action of any nature whatsoever, in law
or in equity, which she now has and/or may have against Omni
Insurance Company, its parent company(ies) affiliates,
associates, subsidiaries, agents, adjusters, employees and
attorneys with respect to the disclaimer of coverage to me in the
above captioned matter and any award, verdict or judgment entered
against me in this lawsuit which has resulted or may hereafter
result in personal liability by me to satisfy the award, verdict
or judgment on the claims of the Plaintiff, Richard Duncan which
could have been resolved by Omni Insurance Company if timely and
appropriately responded to the demands of the Plaintiff, Richard
Duncan, to resolve the matter within the available limits of
liability coverage in connection with the claims for damages
arising from the injuries sustained in the October 8, 2012 motor
vehicle accident.

    2.   **Consideration.**  In consideration of this assignment,

the Plaintiff, Richard Duncan agrees and covenants not to initiate any collection or execution proceedings against the Defendants, Shameka Renee Lamar and Chris Aaron, as a consequence of the award and judgment entered against the Defendants.

3.    **Satisfaction of Judgment.**  In further consideration of this assignment, the Plaintiff, Richard Duncan, agrees to mark satisfied any judgment entered against the Defendants, Shameka Renee Lamar and Chris Aaron, after the conclusion of all proceedings against Omni Insurance Company, regardless of the ultimate outcome.  Any judgment shall remain in full force and effect until all proceedings against Omni Insurance Company have been resolved by final judgment or settlement.

4.    **Full Agreement.**  The terms and conditions contained in this Assignment supersede all prior oral and written understandings between the Plaintiff, Richard Duncan and the Defendant, Shameka Renee Lamar and constitutes the entire agreement among the parties relating to the payment pursuant to the agreements set forth in this Assignment as noted more fully herein.  This Assignment shall not be modified or amended except by a writing signed by all parties.  Further, this Assignment

shall be binding upon the executors, administrators, personal representatives, heirs, successors and assigns of each.

IN THE PRESENCE OF:

Name *June Link*

Address *1800 Market St. Phila Pa*

SHAMEKA RENEE LAMAR

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JUNE LINK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 4, 2019

IN THE PRESENCE OF:

Name *June Link*

Address *1800 Market St. Phila Pa*

*Richard Duncan* (SEAL)

RICHARD DUNCAN

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JUNE LINK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 4, 2019

APPDesktop\::ODMA/WORLDOX/R:/CLIENTS/3575/0001Y12/017.WPD

7/18/16

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN      :

     Plaintiff,      :   CIVIL ACTION

              :

   v.          :   NO. 2016-cv- 1489

              :

OMNI INSURANCE COMPANY   :

              :

     Defendant      :

## ANSWER OF DEFENDANT, OMNI INSURANCE COMPANY, IN OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Defendant, Omni Insurance Company ("Omni" and/or "Defendant"), by and through its attorneys, Marshall Dennehey Warner Coleman & Goggin, responds in opposition to the Motion of Plaintiff, Richard Duncan ("Plaintiff") for partial summary judgment for the reasons set forth below and in the accompanying omnibus memorandum of law.

**General Answer**: Defendant Omni denies all characterizations, interpretations and conclusions of law set forth in Plaintiff's Motion for Partial Summary Judgment. Subject to and incorporating that general Answer, Omni responds to Plaintiff's Motion as follows:

1.  Admitted.

2.  Admitted.

3.  Admitted.

4.  Admitted.

5-6.  Admitted to the extent set forth in ¶¶ 3 and 6 of the Stipulation. The parties have not stipulated to any facts of the accident other than that the vehicle titled in the name of Shameka Renee Lamar, and operated by Chris Aaron, a/k/a Chris Porter, struck the bus in which

1

Plaintiff was a passenger. It is denied that ¶ 1 of the Stipulation applies, and it is further denied that the policy issued to Shameka Lamar applied to this accident.

7. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 4.

8. Admitted.

9. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 10.

10. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 11.

11. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 12.

12. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 13.

13. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 5.

14. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 7.

15. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 9.

16. Admitted in part and denied in part. It is admitted that the policy of insurance in question was issued in Pennsylvania to a Pennsylvania citizen. The allegation that the policy provided coverage "in accordance with Pennsylvania law" is denied as unduly vague and overly broad. The policy is a contract that speaks for itself and is attached to the Stipulation as Exhibit "1."

17. Admitted.

18. Admitted.

19. Denied.

20. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 14.

21. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 15.

22. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 16.

23. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 17.

24. Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 18.

25.    Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 19.

26.    Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 20.

27.    Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 21.

28.    Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 22.

29.    Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 23.

30.    Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 24.

31.    Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 25.

32.    Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 5.

33.    Admitted with the correction that the relevant paragraph of the Stipulation is ¶ 36.

34.    Admitted that Plaintiff is seeking recovery as set forth in this paragraph; denied that he is entitled to any such recovery for all the reasons set forth herein and in the accompanying Memorandum of Law.

35.    Denied.

36-38.   The language of the cited statutory provisions is admitted; any characterization of them is denied. Nothing in those provisions, or the policy underlying them, provides any basis to invalidate Omni's clear policy language.

39.    It is admitted only that the quoted language in included, without the added emphasis, in the *Progressive* case; any characterization of that language is denied. Nothing in the *Progressive* case provides any basis to invalidate Omni's clear policy language.

40.    Denied.

41.    Denied.

42.    The language of the statutory provision is admitted; any characterization of it is denied. Nothing in that provision, or the policy underlying it, provides any basis to invalidate Omni's clear policy language.

3

43-51.  Denied.

52.    The language of 42 Pa.C.S.A. Section 8371 is admitted; any characterization of it is denied.

53-56.  Denied.

**WHEREFORE**, Defendant, Omni Insurance Company, respectfully requests that this Honorable Court enter judgment in favor of Omni and against Plaintiff.

Respectfully submitted:

**MARSHALL DENNEHEY WARNER COLEMAN & COGGIN**

BY: _____

R. BRUCE MORRISON, ESQUIRE
TERESA FICKEN SACHS, ESQUIRE
PA Attorney I.D. Nos. 34797/41136
2000 Market Street, Suite 2300
Philadelphia, PA 19103
215-575-2600/ 215-575-0856 (F)
rbmorrison@mdwcg.com
tfsachs@mdwcg.com
*Attorneys for Defendant*

Dated:  July 18, 2016

4

## CERTIFICATE OF SERVICE

I, R. Bruce Morrison, Esquire, attorney for Defendant, hereby certify that a true and correct copy of the foregoing Answer to Plaintiff's Motion for Partial Summary Judgment was served upon the following parties via electronic court filing system, on the below date:

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA 19102
*Attorney for Plaintiff*

James C. Haggerty, Esquire
HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street, Suite 2700
Philadelphia, PA 19103
*Attorney for Plaintiff*

R. Bruce Morrison

Dated: July 18, 2016

### IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | |
| | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | |
| v. | : | NO. 2016-cv- 1489 |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| | : | |
| Defendant | : | |

### OMNI INSURANCE COMPANY'S MEMORANDUM OF LAW
### ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendant Omni Insurance Company ("Defendant" or "Omni") files this omnibus Memorandum of Law in opposition to Plaintiff's Motion for Partial Summary Judgment and in support of Omni's Motion for Summary Judgment. For the reasons set forth below and in Omni's corresponding Answer and Cross-Motion, Omni is entitled to judgment in its favor, as a matter of law, on all claims asserted by Plaintiff.

### I.    UNDISPUTED FACTS

The following relevant facts have been expressly stipulated to by the parties, and/or are undisputed as a matter of record.

#### The Application for Insurance

On September 1, 2012, Shameka Renee Lamar completed an Application for Private Passenger Auto Insurance, seeking to purchase a policy of insurance covering a 2003 Chevrolet Avalanche. *See* Stipulation, Exhibit "A" to Plaintiff's Motion, at ¶ 6; and Application, Exhibit "2" to the Stipulation.

1

The Application required Ms. Lamar to identify all persons over 14 years of age who were residents of her household, "LICENSED OR NOT" (emphasis in original application). Ms. Lamar listed only herself. *See* Application, Exhibit "2" to the Stipulation. The Application also asked Ms. Lamar whether the policy she was applying for a NAMED NON-OWNER POLICY (emphasis in original application). She answered "No." *Id.*

The Application further required Ms. Lamar to identify whether there were "Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)?" (emphasis in original application). Ms. Lamar's answer was "No." *Id.* The Application further asked, "Do all drivers reside in the named insured's household?" Ms. Lamar's answer was "Yes." *Id.*   Finally, the Application asked, "Are there any occasional operators not rated as previously described?" Ms. Lamar's answer was "No." *Id.*

The Application includes an **"APPLICANT'S STATEMENT"** with the following affirmation:

> I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY." ....
>
> I certify that:
>
> I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR OR OCCASIONAL basis. ... I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
>
> . . .
>
> **FRAUD**
>
> The insurance policy issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information

2

regarding license and driving history of the undersigned, "family numbers" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or and (sic) "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

. . .

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. . . .

/s/ Shameka Lamar                    9/1/2012
Signature of Applicant            Date
Policy#4140872

*Id.* (all emphases in original).  Chris Aaron a/k/a Chris Porter was not listed or identified in the

Application. *Id.*

### The Omni Policy

Omni issued a private passenger auto policy to named insured Shameka Renee Lamar,

policy number 4140872 (the "Policy") for a policy period of September 1, 2012 to September 1,

2013. *See* Stipulation ¶ 6 and Exhibit "1."  The Policy provided liability coverage pursuant to an

Insuring Agreement that states:

A.      We will pay compensatory damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. ...... We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

*See* Policy at p. 8 (bold emphases in original, indicating defined policy terms).

The Policy's liability coverage defines "insured" as follows:

B.      **Insured** as used in this Part means:

3

1. **You**, an **insured resident**, or any **family member** for the ownership, maintenance or use of **your covered auto**.

2. **You**, an **insured resident**, or any **family member** while operating a non-owned auto with the express or implied permission of the **owner**.

3. A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of **your covered auto**.

4. For **your covered auto**, any person or entity but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5. For any **auto** or **trailer**, other than **your covered auto**, any other person or entity but only with respect to legal responsibility for acts or omissions of **you**, an **insured resident**, or any **family member** for whom coverage is afforded under this Part. This provision (**B.5.**) applies only if the person or entity does not own or hire the **auto** or **trailer**.

*Id.* at pp. 8-9 (bold emphases in original, indicating defined policy terms; underlining added).

The liability coverage excludes any coverage resulting from the use of any vehicle by an unlicensed driver:

A.    We do not provide Liability Coverage for any **insured**:

    * * *

16.    For **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

    * * *

    c.    Does not have a valid driver's license, or

    d.    Has a suspended or rescinded driver's license.

4

*Id.* at pp. 10, 12 (bold emphasis in original, indicating defined policy terms; underlining added).

### The Accident and the Lawsuit

On October 8, 2012, Chris Aaron a/k/a Chris Porter was driving Lamar's vehicle, and was involved in an accident with a SEPTA bus. Plaintiff was a passenger on that bus. Chris Aaron a/k/a Chris Porter was not a licensed operator at the time of the accident or at any other time material to this action. *See* Stipulation, Exhibit "A" to Plaintiff's Motion, at ¶ 6.

Plaintiff filed a lawsuit against Chris Aaron and Ms. Lamar in the Philadelphia County Court of Common Pleas, alleging that he sustained personal injuries in the accident. *See* Stipulation ¶ 14 and Exhibit "5" thereto. Omni denied coverage because the insured vehicle was being operated by an unlicensed driver. *See* Stipulation at ¶¶ 12-13 and Exhibit "4" thereto. The case proceeded to an arbitration hearing, and the arbitrators entered an award of $28,000 in favor of Plaintiff and against Aaron and Lamar. *See* Stipulation at ¶¶ 22-23 and Exhibit "8" thereto. Plaintiff entered judgment on the award. *See* Stipulation at ¶ 24 and Exhibit "9" thereto.

Plaintiff and Lamar then entered an agreement whereby Lamar assigned to Plaintiff her rights against Omni. In consideration for that assignment, Plaintiff agreed not to collect or execute upon the judgment against Lamar and Aaron, and further agreed to mark that judgment satisfied at the conclusion of these proceedings, regardless of the outcome. *See* Stipulation at ¶36 and Exhibit "10" thereto.

### This Lawsuit

Plaintiff filed this lawsuit against Omni in the Court of Common Pleas of Philadelphia County. In Count I, titled "Bad Faith – Excess Verdict," Plaintiff claims that he should be entitled to collect the entire $28,000 judgment from Omni[1] based upon Omni's alleged violations

---

[1]    The policy, if it had applied, would have provided a total per person liability limit of $15,000. *See* Exhibit "1" to Stipulation.

5

of the policy and of various provisions of Pennsylvania law. *See* Complaint, ¶ 32 (a)-(t).   In Count II, titled "Bad Faith – Common Law and Statutory," Plaintiff claims entitlement to "common law bad faith damages" and "statutory bad faith damages" under 42 Pa.C.S.A. Section 8371, based on the same allegations. *Id.*, ¶ 48 (a)-(t).

Omni removed the case to this Court in accordance with 28 U.S.C. Sections 1332, 1441 and 1446, and filed an Answer with Affirmative Defenses. The parties have stipulated to the relevant facts; each party now seeks judgment as a matter of law.

## II.    ARGUMENT

### A.    The Unlicensed Operator Exclusion is Valid and Enforceable as a Matter of Pennsylvania Law, and Furthers Pennsylvania Public Policy

This dispute is governed by Pennsylvania law.   The Pennsylvania Supreme Court has repeatedly explained that, "In construing a policy of insurance, we are required to give plain meaning to a clear and unambiguous contract provision unless such provision violates a clearly expressed public policy. *Williams v. GEICO*, 32 A.3d 1195, 1199-1200 (Pa. 2011), quoting *Burstein v. Prudential Property & Cas. Ins. Co., 809 A.2d 204, 206 (Pa. 2002)* and citing *Eichelman v. Nationwide Ins. Co.*, 711 A.2d 1006, 1008 (Pa. 1998) and *Prudential Prop. and Cas. Ins. Co. v. Colbert,* 813 A.2d 747, 750 (Pa. 2002).

The burden to invalidate a contract provision on based a public policy concerns is a heavy one: "We [the Pennsylvania Supreme Court] consistently have been reluctant to invalidate a contractual provision due to public policy concerns. .... Generally, a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. When examining whether a contract violates public policy, this Court is

6

mindful that public policy is more than a vague goal which may be used to circumvent the plain meaning of the contract." *Williams, supra,* citing *Eichelman, supra.* Rather,

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy[.] ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Williams, supra,* citing *Eichelman, supra.* "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]. *Id.* (emphasis supplied, internal citations omitted).

Here, there is no question that the "unlicensed operator" provision is clear and unambiguous. Plaintiff's argument is that it should not be enforced because, according to Plaintiff, it violates (1) the Pennsylvania Motor Vehicle Code, (2) the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), and (3) the public policy of the Commonwealth. *See, e.g.,* Plaintiff's brief at 21-22, 25.

Each of those arguments fails, as set forth below.

### 1.   The "Unlicensed Operator" Exclusion Does Not Violate the Motor Vehicle Code

Plaintiff first argues that the unlicensed operator exclusion violates Section 1574 of the Motor Vehicle Code. The underlying complaint did not allege liability under Section 1574, but even if it had, the unlicensed operator exclusion does not violate that section.

7

Section 1574 prohibits a vehicle owner from allowing an unlicensed driver to operate the vehicle. That Section penalizes such an owner in two ways: first, the owner commits a summary offense, and second, the owner is liable for any damages caused by the negligence of the driver:

> **Permitting unauthorized person to drive.**
>
> **(a) General Rule.** - No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.
>
> **(b) Penalty.** - Any person violating the provisions of subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S. §1574.

### a.    The underlying complaint did not assert a claim under section 1574

Plaintiff argues incorrectly that the Complaint asserted a cause of action for violating Section 1574. *See* Plaintiff's brief at 28, citing the Complaint at ¶13. That paragraph, however, alleges that <u>Lamar herself</u> was <u>directly</u> negligent in her entrustment of the vehicle to an unlicensed driver:

> 13.    The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless <u>conduct of the defendant owner</u>, Shameka Renee Lamar, which consisted of the following:
>
> ***
>
> (c)    <u>negligently and carelessly granting permission</u> to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

*See* Plaintiff's Complaint, Exhibit 5 to the Stipulation, at ¶13 (emphases supplied).

8

346a

This paragraph does not mention Section 1574, or vicarious liability, at all; on the contrary, this paragraph asserts a <u>direct</u> negligence claim against owner Lamar, and asserts that Lamar's <u>own</u> negligence was a cause of the accident. This <u>direct</u> liability claim is - by definition - not a <u>vicarious</u> liability claim under Section 1574.

The two cases cited by Plaintiff explain exactly that. In *Terwilliger v. Kitchen,* 781 A.2d 1201, 1213 (Pa. Super. 2001), a dramshop defendant argued that the liability of the co-defendant vehicle owner under Section 1574 should be deemed joint and several with the liability of the co-defendant driver, rather than merely vicarious (if the owner and driver were joint tortfeasors, it could decrease the percentage of liability to be imposed on the dramshop defendant). After reviewing the statute and case law, the Superior Court stated, "[I]t seems to us that the legislature has intended to establish a system of vicarious liability," *quoting Commonwealth of Pa., Dept. of Public Welfare v. Hickey,* 582 A.2d 734, 737 (Pa. Cmwlth. 1990). The Superior Court concluded "[W]e agree with the trial court that the vehicle owner is vicariously liable for the damages caused by [driver]." *Terwilliger,* 781 A.2d at 1216.

*In O'Loughlin v. Hunger,* 2009 U.S. Dist. LEXIS 33711 (E.D. Pa. 2009), the court granted summary judgment in favor of the owner because there was no evidence of negligent entrustment. In doing so, the court explained in a footnote that although the plaintiff "does not cite section 1574, or even hint at its violation," a claimed violation of that section would not establish negligence: "Pennsylvania courts, however, have found that violation of [section 1574] only makes the automobile owner vicariously liable for the injuries caused by the driver of the vehicle and does not impose on the owner individual negligence under a negligent entrustment theory." *Id.* at *19-20, n.2 (citations omitted).

In sum, the underlying complaint did not assert a claim for vicarious liability under Section 1574. Plaintiff cannot ask to have the exclusion deemed invalid based on a claim that

was never part of the case. *See In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) ("Federal Courts have no jurisdiction to render advisory opinions. Put another way, they 'may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'").

      **b.**      **The unlicensed driver provision does not violate Section 1574**

The unlicensed driver exclusion does not violate Section 1574 in any event. First, that Section does not even mention insurance; it certainly does not specify that an insurer must provide coverage when an insured vehicle is driven by an unlicensed driver.

Second, there is no dispute that a vehicle owner can be held vicariously liable for use of his or her vehicle by an unlicensed driver, but that does not support Plaintiff's argument for imposing coverage for such a claim. On the contrary, forcing insurers to provide coverage for excluded claims would undercut the purpose of the statute, because it would obviate the penalty the Legislature intended to impose on such owners. The Commonwealth Court has described the statute as promoting the Commonwealth's "vital interest in preventing drivers from operating motor vehicles when they have no legal right to do so." *Commonwealth v. Jenks*, 296 A.2d 526, 529 (Pa. Cmwlth. 1991). Plaintiff's argument would mean that insurers could always be forced to cover unlicensed drivers one way or the other: coverage could properly be excluded for the unlicensed driver, but the same excluded claim would then have to be paid by the owner who is vicariously liable for the driver. Moreover, if vehicle owners could insure themselves against a statutory penalty for allowing such unlicensed drivers to operate their vehicles, that penalty would become no penalty to the owner at all.

Plaintiff argues (without citing any authority) that Section 1574 is like a "red light" violation; Plaintiff argues that Omni cannot preclude coverage "to an operator who runs a red

10

light" **and** therefore should not be able to restrict coverage to unlicensed operators. *See* Plaintiff's brief at 28. Plaintiff's "red light" argument fails to distinguish between conduct giving rise to liability, and permissible limitations on drivers of vehicles. A policy could not qualify under the MVFRL as "respond[ing] in damages for" accidents if the policy excluded the causes of accidents (such as running a red light).

Policies can, however, limit coverage to certain drivers of vehicles without violating the MVFRL. As is discussed in detail below, the MVFRL does not require a vehicle's liability policy to provide coverage no matter who is driving it. On the contrary, courts have upheld named-driver exclusions (*see, e.g., Northern Ins. Co. v. Schneck*, 813 A.2d 828 (Pa. 2002), discussed below), and even named-driver-only policies (*see, e.g., Byoung Suk An v. Victoria Fire and Cas. Co.*, 113 A.2d 1283 (Pa. Super. 2015), also discussed below). Similarly, "permissive use" exclusions have been upheld even against "innocent" claimants who did not know that the use was not permissive. *See, e.g., Nationwide Mut. Ins. Co. v. Cummings*, 652 A.2d 1338 (Pa. Super. 1994), *appeal denied*, 659 A.2d 988 (Pa.1995) (non-permissive use exclusion did not violate the legislative intent behind the MVFRL).

In sum, the unlicensed driver exclusion does not violate Section 1574. Rather, it is entirely consistent with, and furthers the purpose of, that Section. Plaintiff's argument to invalidate the exclusion on that basis should be rejected.

2.    **The Unlicensed Operator Exclusion Does Not Violate the MVFRL**

Plaintiff next argues that the unlicensed operator exclusion violates Sections 1786(a) and (f) of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1786(a) and (f). However, those provisions, and the case law interpreting them, do not require extending coverage to unlicensed drivers despite a clear policy exclusion.

11

Section 1786(a) requires that registered <u>motor vehicles</u> be covered by "financial responsibility." *See* 75 Pa.C.S. §1786(a) ("Required financial responsibility - General rule").[2] The statute defines "financial responsibility" as "The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident." *See* 75 Pa.C.S. §1702.

There is no question that Lamar's motor vehicle was covered by a policy of insurance that met the "financial responsibility" requirement of Section 1786(a). There is also no question, however, that the policy excluded coverage for the unlicensed driver here.[3]

Plaintiff argues that Section 1786(f) requires coverage be extended to any and all permissive drivers of an insured vehicle, regardless of exclusions. *See* Plaintiff's brief at 29. However, that is not what Section 1786(f) says. <u>Section 1786(f) is a penalty provision</u>. It does not require a policy to provide coverage (or to provide different or broader coverage). Section 1786(f) merely penalizes owners whose vehicles are operated without coverage:

> **(f) Operation of a motor vehicle without required financial responsibility. --**
>
> Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter. In addition to the penalties provided by subsection (d), any person who fails to comply with this subsection commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $ 300.

---

[2]     Section 1786 has its own penalty provision if a vehicle is not covered by financial responsibility. See Section 1786(f).

[3]     Plaintiff asserts that policy exclusions are to be "narrowly construed." Plaintiff's brief at p. 25. That proposition is irrelevant here: the exclusion is clear, and there is no argument that Chris Aaron a/k/a Chris Porter could avoid the exclusion under any construction of it.

75 Pa.C.S. § 1786(f).

The exclusion in this case is consistent with, and supported by, Pennsylvania case law upholding policy provisions that limit coverage to – or exclude - certain drivers. In the recent case of *Byoung Suk An v. Victoria Fire and Cas. Co.*, 113 A.2d 1283 (Pa. Super. 2015), *appeal denied* 2015 Pa. LEXIS 2831 (Pa., December 8, 2015), the Superior Court upheld a limitation substantially broader than the exclusion in this case. In *Victoria*, the policy did not provide liability coverage to any person not specifically listed on the policy. *See* 113 A.2d at 1286. The only listed driver was the insured herself; at the time of the accident, the operator was a friend of the insured's son, who had given the friend permission to drive. *Id.* The claimant argued that the "named driver only" policy improperly expanded the "named driver exclusion" permitted under 75 Pa. C.S. Section 1718(c).

The Superior Court rejected that argument, explaining that section 1718(c) addresses policies wherein an insured specifically excludes a driver who would otherwise be covered from receiving benefits under a policy enumerated in section 1711 or 1712 (which list medical, wage loss and similar first-party benefits). The Superior Court held that section 1718(c) was not applicable to a "named driver only" policy, and that the policy limitation was clear and unambiguous. *See also Selective Way Ins. Co. v. Gingrich*, 2009 WL 1586577 (M.D. Pa. 2009) (named driver exclusion applies to prevent any policy coverages, including liability and UM/UIM, from applying to any claim arising from operation of the vehicle by the excluded driver, and thus carrier had no obligation to defend or indemnify against claim by injured party)

Plaintiff argues that Section 1786(f) "implicitly" directs that all permissive users be insured, relying upon *Progressive Northern Ins. Co. v. Universal Underwriters Ins. Co.*, 898 A.2d 1116 (Pa. Super. 2006), *appeal denied* 909 A.2d 1290 (Pa. 2006). However, the *Progressive Northern* case is not controlling or persuasive, and is factually distinguishable.

13

First, the *Progressive Northern* case predates *Victoria, above*, in which the Superior Court upheld a "named driver only" provision to preclude coverage to a permissive driver because he was not named on the policy. Plaintiff's theory that *Progressive Northern* "implicitly" requires owners to always cover permissive users is clearly contradicted by *Victoria*.

Second, *Progressive Northern* involved the very different issue of whether, under the MVFRL, a driver's household policy should be the source of liability coverage, or whether the policy covering the vehicle should apply. In *Progressive Northern*, an employee was driving his employer's vehicle, which was insured by Universal. Universal's policy extended coverage to any person "required by law to be an insured" while using a covered auto. Universal argued, citing pre-MVFRL case law, that the driver was not "required by law" to be insured on the employer's policy, because the employee had a household policy with Progressive. The Superior Court questioned even the pre-MVFRL result, and concluded that the MVFRL's addition of Section §1786(f) was an "implicit" direction that owners provide coverage, "consistent with the concept that primary coverage follows ownership of the vehicle." *Id.*, 898 A.2d at 1119.

The issue here is not whether the liability policy on a vehicle generally "follows" it to provide coverage for a permissive driver. Rather, Plaintiff's claim is that a specific, unambiguous exclusion of the driver is contrary to the MVFRL. The *Progressive Northern* case does not support Plaintiff's argument.

The Legislature, in drafting the MVFRL, was specific in identifying situations where coverage was required or could not be reduced or limited. *See, e.g.*, 75 Pa.C.S. §1724 (listing non-excludable conditions in the first-party benefits section of the MVFRL); §§1711 and 1712 (listing various first-party coverages that must be offered); §1731 (requirements for rejecting stacking of uninsured and underinsured motorist coverages); §1734 (requirements for selecting limits of underinsured motorist coverage lower than the limits of liability coverage). If the

14

352a

Legislature had intended to require insurers to extend liability coverage to all drivers, even when the drivers do not have drivers' licenses, the Legislature could have done so. They did not. Excluding such drivers from liability coverage is not contrary to the MVFRL.

**3.    The Unlicensed Operator Exclusion Does Not Violate Public Policy; It Is Consistent With and Advances that Policy**

Plaintiff's third argument is that the unlicensed operator exclusion violates public policy. *See* Plaintiff's brief at 32. Plaintiff offers the vague, general platitude that: "The public policy of Pennsylvania favors the deterrence of uninsured drivers and the extension of coverage to motor vehicle operators. It is in the interest of the public good to have insured motorists on the highways." *Id.*

Omni described above (pp. 6-7) the "heavy burden" required to invalidate a clear policy provision on so-called "public policy" grounds. To briefly summarize, the Pennsylvania Supreme Court is reluctant to invalidate a contractual provision due to public policy concerns, and a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. Such a policy cannot be "general considerations of supposed public interest" or "a vague goal" being used to "circumvent the plain meaning of the contract." *Williams, supra, citing Eichelman, supra.* "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]." *Id.*

Plaintiff does not dispute this standard. Plaintiff argues, however, that the Supreme Court's evaluation of public policy has changed. Plaintiff argues that while the overriding goal of the MVFRL was "initially" cost containment, the Supreme Court has "abandoned" that point of view and has recognized the goal of maximum feasible restoration to accident victims as an

353a

equally important purpose of the law. *See* Plaintiff's brief at 22-23. Plaintiff relies upon *Williams v. GEICO*, 32 A.3d 1195 (Pa. 2011), arguing that "the majority of the justices on the Court at that time adopted a rationale which significantly departs from prior pronouncements." *Id.* at 24.

Plaintiff mischaracterizes the *Williams* case, which does not support Plaintiff's position that cost containment has been "abandoned" in Pennsylvania. In *Williams*, the Supreme Court upheld a "regular use" exclusion that precluded the claimant from obtaining underinsured motorist benefits from his own policy if he was injured in another vehicle he regularly used. The claimant was a state police officer and was injured while using his police vehicle. He argued that despite prior case law upholding such exclusions, upholding the exclusion in his case would violate a public policy of protecting first responders. *Williams*, 32 A.3d at 1201. The Supreme Court, in accordance with its prior decisions in, *inter alia, Burstein v. Prudential Property & Cas. Ins. Co.,* 809 A.2d 204 (Pa. 2002), upheld the regular use exclusion.

In holding that public policy did not require any different outcome in the "first responder" situation, the Court conducted the same public policy analysis followed in *Burstein*, and held, "Appellant's position conflicts with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected." *Williams*, 32 A.3d at 1206. In three concurring opinions in *Williams*, four justices urged that cost containment should not be a "mantra," and that "equally important policies and goals" should be recognized. *See* 32 A.3d beginning at 1210 (concurring opinions). However, the Supreme Court did not "abandon" cost containment; on the contrary, the Court again recognized it as one of the "overall policies of the MVFRL."

In 2015, a unanimous panel of the Superior Court applied *Williams* to reject the same argument Plaintiff is making in this case. In *Byoung Suk An v. Victoria, supra*, the claimant argued that a "named driver policy," which covered only the specific driver named in the

354a

application, was contrary to public policy. The claimant argued (like Plaintiff in this case) that the policy would violate Pennsylvania public policy because it would "increase the number of uninsured motorists on Pennsylvania roads." *Victoria*, 113 A.3d at 1291.

The Superior Court applied the analysis summarized above and set forth more fully at pp. 6-7 of this brief, quoting *Williams* and *Eichelman*. The Superior Court also cited *Progressive Northern Ins. Co. v. Schneck*, 813 A.2d 828 (Pa. 2002), in which the Supreme Court upheld a named driver exclusion as consistent with the overarching public policy of cost containment, and *Donegal Mut. Ins. Co. v. Fackler*, 835 A.2d 712 (Pa. Super. 2003), in which the Superior Court likewise upheld a named driver exclusion, and *Infinity Indem. Ins. Co. v. Gonzalez*, 2012 U.S. Dist. LEXIS 77004 (E.D. Pa. 2012) (district court upheld "named driver only" policy).   The Superior Court specifically focused on cost considerations in noting that "provision of low-cost, affordable policies in return for motor vehicle liability coverage of only the named driver, and the concomitant risk reduction, does not violate public policy." *Victoria*, 113 A.3d at 1292, citing *Williams*, 32 A.3d at 1200. The Superior Court concluded that any such determination would have to be a question for the legislature. *Id.*

It is clear from the *Victoria* case that the public policy of cost control has not been "essentially abandoned" post-*Williams*, as Plaintiff argues.[4] On the contrary, cost control continues to be a primary consideration of public policy analyses under the MVFRL, and Omni's policy furthers that consideration by ensuring that carriers are not required to bear risks of unlicensed drivers that the carriers would never have agreed to insure (the cost of which would pass to honest insureds in the form of higher premiums.  The unlicensed driver exclusion also

---

[4]    Plaintiff also cites *Heller v. Pennsylvania League of Cities*, 32 A.3d 1213 (Pa. 2011), for the proposition that cost containment "cannot be mechanically invoked" to restrict coverage.  In *Heller*, the Supreme Court invalidated an exclusion that prevented any claimant eligible for worker's compensation benefits from receiving underinsured motorist benefits.

17

furthers the public **policy** of discouraging owners from allowing unlicensed drivers to operate vehicles. *See Commonwealth v. Jenks, supra*, 296 A.2d at 529 (Pa. Cmwlth. 1991) (recognizing the Commonwealth's "**vital** interest in preventing drivers from operating motor vehicles when they have no legal **right** to do so."). The exclusion also prevents unscrupulous drivers from acquiring vehicles **and policies** through "straw man" purchases (where the "owner" is merely fraudulently acquiring **the** vehicle on behalf of another), and it furthers the Legislature's intention that owners who do **permit** unlicensed drivers to operate their vehicles are to be penalized via vicarious liability for **those** drivers.

Plaintiff's "**public** policy" argument essentially amounts to saying "it's good to have insured drivers." This **is the** kind of "vague goal" and "general consideration of supposed public interest" that may **not be** used to circumvent the plain meaning of a contract. As in *Victoria*, *Williams, Eichelman, Schneck*, and the other case law discussed above, there is no "dominant public policy" that **could** justify requiring an insurer to provide liability coverage to an unlicensed driver who **falls** within a clear exclusion.

Accordingly, **Plaintiff's** motion for summary judgment should be denied, and Omni's cross-motion for **summary** judgment should be granted.

    **B.**    **Plaintiff's "Bad Faith" Claim Fails as a Matter of Law: Omni Correctly, Properly and Reasonably Denied Coverage to an Unlicensed Driver Who Was Not "Insured" Under the Omni Policy**

Plaintiff also **alleges** that Omni acted in bad faith in not providing Shameka Renee Lamar with a defense and **indemnification** in the underlying Duncan lawsuit. Plaintiff concedes that Omni could properly **deny** coverage to the unlicensed driver, but argues that as to Lamar, Omni "failed to comply **with the** specific mandates of Pennsylvania law" in relying on the unlicensed driver exclusion. *See* Plaintiff's brief at 34. Plaintiff then repeats his arguments that the

exclusion violates Section 1574 of the Motor Vehicle Code, Section 1786 of the MVFRL, and

the "public policy" operators of motor vehicles should be insured. *Id.* at 34-35.

Omni is entitled to judgment on Plaintiff's "bad faith" claims as a matter of law.

1.    **Standard for summary judgment on "bad faith" claim under Pennsylvania law**

The Pennsylvania statute governing "bad faith" claims against insurance companies is 42

Pa.C.S. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

The statute does not define "bad faith," and the Pennsylvania Supreme Court has likewise

not defined that term. The Third Circuit has predicted that the Supreme Court would adopt the

definition previously set forth by the Superior Court in *Terletsky v. Prudential Prop. and Cas.

Ins. Co.*, 649 A.2d 680 (Pa. Super. 1984):

> "Bad faith" on part of insurer is any frivolous or unfounded refusal to pay proceeds of a policy; it is not necessary that such refusal be fraudulent. For purposes of an action against an insurer for failure to pay a claim, such conduct imports a dishonest purpose and means a breach of a known duty (*i.e.*, good faith and fair dealing), through some motive of self-interest or ill will; mere negligence or bad judgment is not bad faith.

*Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 136-137, quoting *Terletsky*, 649 A.2d

at 688 (internal citations omitted), and *Keefe v. Prudential Property and Cas. Ins. Co.*, 203 F.3d

218, 225 (3d Cir. 2000).

19

Ultimately, **in** order to recover on a bad faith claim, the insured must prove: **(1)** that the insurer did not have a reasonable basis for denying **benefits** under the policy; and (2) that the insurer knew of or recklessly **dis**regarded its lack of a reasonable basis in denying the claim.

*Babayan*, 430 F.3d at 137, **citing** *Keefe*, 203 F.3d at 225.

The insured must **meet** this burden of proof by clear and convincing evidence. *See Terletsky*, 649 A.2d at **688.** "The 'clear and convincing' standard requires that the plaintiff show 'that the evidence is so **clear**, direct, weighty and convincing as to enable a clear conviction, without hesitation, about **whether** or not the defendants acted in bad faith.'" *J.C. Penney Life Ins. Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004), quoting *Bostick v. ITT Hartford Group, Inc.*, 56 F. Supp. 2d 580, 587 (E.D. Pa. 1999); *see also, e.g., Treadways LLC v. Travelers Indem. Co.*, 467 Fed. Appx. 143, 147 **(3d** Cir. 2012). "Thus, the plaintiff's burden in opposing a summary judgment motion is **commen**surately high in light of the substantive evidentiary burden at trial. *Pilosi, supra*, citing *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999).

Importantly, "A **reasonable** basis is all that is required to defeat a claim of bad faith." *Pilosi*, 393 F.3d at367, **citing** *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d Cir. 1995).

2.   **Omni Denied Coverage in Good Faith Pursuant to a Specific Policy Exclusion, and that Denial Does Not Constitute "Bad Faith" as a Matter of Law**

Plaintiff's bad faith **claim** fails as a matter of law for two reasons. First, there is no coverage, as set forth above. *See AmerisourceBergen Corp. v. ACE Am. Ins. Comp.*, 2013 Phila. Ct. Com. Pl. LEXIS 249, *31 (C.P. Phila. 2013), *aff'd* 100 A.3d 283 (Pa. Super. 2014), *citing Frog, Switch & Mgf., Co. v. Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. 1999) ("Amerisource claims that Ace's bases **for denying** coverage were not reasonable, and claims handling was

20

conducted in bad faith. Because this court has determined that an exclusion applies, this claim fails.").

Second, there is no question that Omni has set forth a "reasonable basis" to defeat any claim of bad faith. The documents attached to the stipulation conclusively establish that reasonable basis as a matter of law.

First, by letter of July 8, 2014, Omni Bodily Injury Supervisor Andrew Funk wrote to insured Shameka Lamar to advise her that after investigation, "We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver." *See* Stipulation ¶13, and Exhibit "4" thereto. The letter specifically cites and quotes the unlicensed driver exclusion. *Id.* On September 16, 2014, Omni Litigation Manager Scott Mascioli reiterated this information in separate letters to both Lamar and the driver, and provided each of them with a copy of the lawsuit against them. *See* Stipulation ¶13, and Exhibits "6" and "7" thereto.

Plaintiff does not argue that the policy as written provided coverage, or that the policy was ambiguous and should have been construed in his favor, or that the carrier delayed, or denied coverage without notifying him, or any other basis. Plaintiff merely argues that Omni's denial constitutes "bad faith" because Omni's policy language should not be enforced.

Plaintiff's argument fails, because the policy as written did not provide any coverage for this accident. *See, e.g., Frog Switch, supra,* 193 F.3d at 744 (affirming summary judgment in favor of the insurer on claims of breach of duty to defend and bad faith, because the claims did not fall with coverage of policies: "[B]y the plain terms of the policies, the insurers had no duty to defend against such claims. We also rule that the insured cannot maintain actions for bad-faith denial of coverage against them.").

In *Treadways LLC v. Travelers Indem. Co.,* 467 Fed. Appx. 143 (3d Cir. 2012), the Third Circuit affirmed the District Court's grant of summary judgment in favor of the insurer in a

21

situation similar to this case. Travelers, the carrier in *Treadways,* denied coverage on the basis that the vehicle being operated at the time of the accident in question was not covered under the Travelers policy. Travelers withdrew its defense, and a judgment was ultimately entered against the Travelers insured. The Third Circuit held that where it was undisputed that the policies precluded coverage, "This alone was sufficient for the District Court to dismiss the bad faith claim. Because the claims asserted in the [underlying] Suit were not covered by the policies, Travelers had good cause to deny coverage and cease defending the litigation." *Treadways,* 467 Fed. Appx. at 147.

In *Post v. St. Paul Travelers Ins. Co.,* 691 F.3d 500 (3d Cir. 2012), the Third Circuit concluded that a duty to defend had arisen in the course of the underlying proceedings, but nevertheless affirmed the district court's conclusion that the carrier did not act in bad faith where it had relied upon an exclusion to deny coverage: "The sanctions exclusion in the Policy provided Travelers a reasonable basis for declining to provide a defense to Post, and there is nothing in the record—let alone clear and convincing evidence—indicating that Travelers' purported mishandling of Post's claim was motivated by a dishonest purpose or ill will." *Post,* 691 F.3d at 594-595.

Plaintiff fails to raise any allegations that could possibly constitute bad faith under Pennsylvania law. Omni's policy contains a clear exclusion that applies to the facts here. The exclusion constituted a reasonable basis to deny coverage. "A reasonable basis is all that is required to defeat a claim of bad faith." *Pilosi, supra,* 393 F.3d at 367.

## III.    CONCLUSION

Omni properly denied coverage for the underlying lawsuit, because the liability coverage of Omni's policy excludes any coverage for bodily injury or property damage resulting from the use of any vehicle by an unlicensed driver. There is no dispute that the exclusion applied to the

accident at issue.  The exclusion **does** not violate Pennsylvania law or public policy, and it furthers the Legislature's intent to **penal**ize owners of vehicles if those owners allow unlicensed operators to drive.  Accordingly, **the ex**clusion should be upheld and summary judgment should be entered in favor of Omni and **against** Plaintiff.  Summary judgment should also be entered in favor of Omni and against Plaintiff on Plaintiff's "bad faith" claim, because there was no coverage, and because Omni cer**tainly** had a reasonable basis to deny coverage in light of the exclusion.

Respectfully submitted:

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

BY: _____

R. BRUCE MORRISON, ESQUIRE
TERESA FICKEN SACHS, ESQUIRE
PA Attorney I.D. Nos. 34797/41136
2000 Market Street, Suite 2300
Philadelphia, PA 19103
215-575-2600/ 215-575-0856 (F)
rbmorrison@mdwcg.com
tfsachs@mdwcg.com
*Attorneys for Defendant*

Dated: July 18, 2016

23

**361a**

## CERTIFICATE OF SERVICE

I, R. Bruce Morrison, Esquire, **attorney** for Defendant, hereby certify that a true and correct copy of the foregoing Memorandum in **Op**position to Plaintiff's Motion for Summary Judgment and in Support of Defendant's Motion for **Sum**mary Judgment, was served upon the following parties via electronic court filing system, on **the** below date:

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street
Centre Square -- West Tower
Suite W-3110
Philadelphia, PA 19102
*Attorney for Plaintiff*

James C. Haggerty, Esquire
HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street, Suite 2700
Philadelphia, PA 19103
*Attorney for Plaintiff*

R. Bruce Morrison

Dated: July 18, 2016

LEGAL/105904497.v1

24

**362a**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2016-cv- 1489 |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| | : | |
| Defendant | : | |

### DEFENDANT OMNI INSURANCE COMPANY'S
### MOTION FOR SUMMARY JUDGMENT

Defendant, Omni Insurance Company ("Omni" and/or "Defendant"), by and through its attorneys, Marshall Dennehey Warner Coleman & Goggin, hereby moves for summary judgment in its favor, for the reasons set forth below and in the accompanying omnibus memorandum of law.

1.     On September 1, 2012, Shameka Renee Lamar completed an Application for Private Passenger Auto Insurance seeking to purchase a policy of insurance covering a 2003 Chevrolet Avalanche. *See* Stipulation, Exhibit "A" to Plaintiff's Motion, at ¶ 6; and Application, Exhibit "2" to the Stipulation.

2.     The Application required Ms. Lamar to identify all persons over 14 years of age who were residents of her household, "LICENSED OR NOT" (emphasis in original application); she listed only herself. *See* Application, Exhibit "2" to the Stipulation.

8.     The Application asked whether the policy Ms. Lamar was applying for was a NAMED NON-OWNER POLICY (emphasis in original application); she answered "No." *See* Application, Exhibit "2" to the Stipulation.

1

363a

9.    The Application asked whether there were "Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)?" (emphasis in original application); Ms. Lamar answered "No." *See* Application, Exhibit "2" to the Stipulation.

10.    The Application asked, "Do all drivers reside in the named insured's household?"; Ms. Lamar answered "Yes". *See* Application, Exhibit "2" to the Stipulation.

11.    The Application further asked, "Are there any occasional operators not rated as previously described?"; Ms. Lamar answered "No." *See* Application, Exhibit "2" to the Stipulation.

12.    The Application sets forth an **"APPLICANT'S STATEMENT"** with the following affirmation:

> I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true.  I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSO, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY."
>
> I certify that:
>
> I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR OR OCCASIONAL basis. ... I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
>
> . . .
>
> FRAUD
>
> The insurance policy issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information regarding license and driving history of the undersigned, "family numbers" and all persons of driving age in the undersigned's household; the description of the vehicles

2

insured; the location of the principle place of garaging; and
the undersigned's place of residence.

Omni Insurance Company may deny coverage for an
accident if the undersigned or and (sic) "insured" have
concealed or misrepresented any material or circumstance,
or engaged in fraudulent conduct in connection with the
presentation or settlement of a claim.

. . .

I have read the above application and I declare that to the
best of my knowledge and belief all of the foregoing
statements are true. ...

/s/ Shameka Lamar_____9/1/2012

Signature of Applicant            Date

Policy#4140872

*See* Application, Exhibit "2" to the Stipulation (emphases in original).

13.   Omni issued a private passenger auto policy to named insured Shameka Renee

Lamar, policy number 4140872 (the "Policy") for a policy period of September 1, 2012 to

September 1, 2013. *See* Stipulation, ¶ 5, and the attached Policy (Exhibit "1").

14.   The Insuring Agreement of the Policy's liability coverage provides as follows:

A.   We will pay compensatory damages for **bodily injury** or
**property damage** for which any **insured** becomes legally
responsible because of an auto accident. ..... We have no
duty to defend any suit or settle any claim for **bodily
injury** or **property damage** not covered under this policy.

*See* Policy, Exhibit "1" to the Stipulation, at p. 8 (bold emphases in original, indicating defined

policy terms).

15.   The Insuring Agreement of the Policy's liability coverage defines "insured" as

follows:

B.   **Insured** as used in this Part means:

1.   **You**, an **insured resident**, or any **family member** for the
ownership, maintenance or use of **your covered auto**.

3

2.  **You**, an **insured resident**, or any **family member** while operating a non-owned auto with the express or implied permission of the **owner**.

3.  A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted.  <u>The person must hold a valid driver's license at the time of loss</u> and must not be a regular operator of **your covered auto.**

4.  For **your covered auto**, any person or entity but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5.  For any **auto** or **trailer**, other than **your covered auto**, any other person or entity but only with respect to legal responsibility for acts or omissions of **you**, an **insured resident**, or any **family member** for whom coverage is afforded under this Part. This provision **(B.5.)** applies only if the person or entity does not own or hire the **auto** or **trailer**.

*See* Policy, Exhibit "1" to the Stipulation, at pp. 8-9 (bold emphases in original, indicating defined policy terms; underlining added).

16.  The Exclusions from the Policy's liability coverage provide as follows:

**A.**   We do not provide Liability Coverage for any **insured**:

\*\*\*

16.   For **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

\*\*\*

c.   <u>Does not have a valid driver's license</u>, or

d.   <u>Has a suspended or rescinded driver's license.</u>

*See* Policy, Exhibit "1" to the Stipulation, at pp. 10, 12 (bold emphases in original, indicating defined policy terms; underlining added).

4

18.    On October 8, 2012, Chris Aaron a/k/a Chris Porter was driving the vehicle owned by Shameka Renee Lamar and was involved in an accident with a SEPTA bus ("the accident").

17.    Chris Aaron a/k/a Chris Porter was not listed or identified in the Application. *See* Application, Exhibit "2" to the Stipulation.

18.    Chris Aaron a/k/a Chris Porter was not a licensed operator at the time of the accident or at any other time material to this action. *See* Stipulation at ¶ 6.

19.    Chris Aaron a/k/a Chris Porter was not an "insured" under the Policy at the time of the accident.

20.    The Policy exclusion is clear and unambiguous, and precluded any liability coverage for the accident.

21.    The Policy definition of "insured," which requires that a permissive user of the covered auto must "hold a valid driver's license at the time of loss," is valid and enforceable as a matter of Pennsylvania law.

22.    The Policy exclusion prohibiting coverage to any "insured" for any bodily injury or property damage resulting if an insured vehicle is driven by an individual who "Does not have a valid driver's license," or who has "a suspended or rescinded driver's license," is valid and enforceable as a matter of Pennsylvania law.

23.    Omni had no obligation to provide a defense or indemnity for Plaintiff's lawsuit seeking recovery for bodily injury allegedly sustained in the accident.

24.    Omni had no obligation to satisfy, or make any payment with respect to, the judgment entered in favor of Plaintiff in the lawsuit seeking recovery for bodily injury allegedly sustained in the accident. (*See* Stipulation ¶ 24).

5

25.    Omni denied coverage based on the express language of its policy. *See* Stipulation ¶ ¶ 12 and 13, and Exhibit "4" to the Stipulation (letter dated July 8, 2014, from Andrew Funk, Bodily Injury Supervisor for Omni, to Plaintiff's counsel).

26.    Omni acted in good faith and in accordance with all duties and obligations under the Policy.

27.    Omni's denial of coverage was not frivolous or unfounded; there was no dishonest purpose, no breach of any known duty, and no motive of self-interest or ill will.

28.    Omni is entitled to judgment in its favor on all claims asserted by Plaintiff.

**WHEREFORE**, Defendant, Omni Insurance Company, demands judgment in its favor and against Plaintiff.

Respectfully submitted:

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

BY: _____
R. BRUCE MORRISON, ESQUIRE
TERESA FICKEN SACHS, ESQUIRE
PA Attorney I.D. Nos. 34797/41136
2000 Market Street, Suite 2300
Philadelphia, PA 19103
215-575-2600/ 215-575-0856 (F)
rbmorrison@mdwcg.com
tfsachs@mdwcg.com
*Attorneys for Defendant*

Dated:  July 18, 2016

6

**368a**

**CERTIFICATE OF SERVICE**

I, R. Bruce Morrison, Esquire, attorney for Defendant, hereby certify that a true and correct

copy of the foregoing Motion of Defendant Omni Insurance Company for Summary Judgment was

served upon the following parties via electronic court filing system, on the below date:

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA 19102
*Attorney for Plaintiff*

James C. Haggerty, Esquire
HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street, Suite 2700
Philadelphia, PA 19103
*Attorney for Plaintiff*

_____
R. Bruce Morrison

Dated: July 18, 2016

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | NO. 2016-cv- 1489 |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | |
| Defendant | : | |

## OMNI INSURANCE COMPANY'S MEMORANDUM OF LAW ON CROSS-MOTIONS FOR SUMMARY JUDGMENT

Defendant Omni Insurance Company ("Defendant" or "Omni") files this omnibus Memorandum of Law in opposition to Plaintiff's Motion for Partial Summary Judgment and in support of Omni's Motion for Summary Judgment. For the reasons set forth below and in Omni's corresponding Answer and Cross-Motion, Omni is entitled to judgment in its favor, as a matter of law, on all claims asserted by Plaintiff.

I.     **UNDISPUTED FACTS**

The following relevant facts have been expressly stipulated to by the parties, and/or are undisputed as a matter of record.

### The Application for Insurance

On September 1, 2012, Shameka Renee Lamar completed an Application for Private Passenger Auto Insurance, seeking to purchase a policy of insurance covering a 2003 Chevrolet Avalanche. *See* Stipulation, Exhibit "A" to Plaintiff's Motion, at ¶ 6; and Application, Exhibit "2" to the Stipulation.

1

The Application required Ms. Lamar to identify all persons over 14 years of age who were residents of her household, "LICENSED OR NOT" (emphasis in original application). Ms. Lamar listed only herself. *See* Application, Exhibit "2" to the Stipulation. The Application also asked Ms. Lamar whether the policy she was applying for a NAMED NON-OWNER POLICY (emphasis in original application). She answered "No." *Id.*

The Application further required Ms. Lamar to identify whether there were "Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)?" (emphasis in original application). Ms. Lamar's answer was "No." *Id.* The Application further asked, "Do all drivers reside in the named insured's household?" Ms. Lamar's answer was "Yes." *Id.* Finally, the Application asked, "Are there any occasional operators not rated as previously described?" Ms. Lamar's answer was "No." *Id.*

The Application includes an "**APPLICANT'S STATEMENT**" with the following affirmation:

> I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY." ....
>
> I certify that:
>
> I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR OR OCCASIONAL basis. ... I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
>
> ...
>
> **FRAUD**
>
> The insurance policy issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information

regarding license and driving history of the undersigned, "family numbers" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or and (sic) "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

. . .

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. ...

/s/ Shameka Lamar _____   9/1/2012
Signature of Applicant          Date
Policy#4140872

*Id.* (all emphases in original). Chris Aaron a/k/a Chris Porter was not listed or identified in the Application. *Id.*

### The Omni Policy

Omni issued a private passenger auto policy to named insured Shameka Renee Lamar, policy number 4140872 (the "Policy") for a policy period of September 1, 2012 to September 1, 2013. *See* Stipulation ¶ 6 and Exhibit "1." The Policy provided liability coverage pursuant to an Insuring Agreement that states:

> A.   We will pay compensatory damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. ..... We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

*See* Policy at p. 8 (bold emphases in original, indicating defined policy terms).

The Policy's liability coverage defines "insured" as follows:

> B.   **Insured** as used in this Part means:

3

1. **You**, an **insured resident**, or any **family member** for the ownership, maintenance or use of **your covered auto**.

2. **You**, an **insured resident**, or any **family member** while operating a non-owned auto with the express or implied permission of the **owner**.

3. A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of **your covered auto**.

4. For **your covered auto**, any person or entity but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5. For any **auto** or **trailer**, other than **your covered auto**, any other person or entity but only with respect to legal responsibility for acts or omissions of **you**, an **insured resident**, or any **family member** for whom coverage is afforded under this Part. This provision (**B.5.**) applies only if the person or entity does not own or hire the **auto** or **trailer**.

*Id.* at pp. 8-9 (bold emphases in original, indicating defined policy terms; underlining added).

The liability coverage excludes any coverage resulting from the use of any vehicle by an unlicensed driver:

A. We do not provide Liability Coverage for any **insured**:

***

16. For **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

***

c. Does not have a valid driver's license, or

d. Has a suspended or rescinded driver's license.

4

*Id.* at pp. 10, 12 (bold emphases in original, indicating defined policy terms; underlining added).

### The Accident and the Lawsuit

On October 8, 2012, Chris Aaron a/k/a Chris Porter was driving Lamar's vehicle, and was involved in an accident with a SEPTA bus. Plaintiff was a passenger on that bus. Chris Aaron a/k/a Chris Porter was not a licensed operator at the time of the accident or at any other time material to this action. *See* Stipulation, Exhibit "A" to Plaintiff's Motion, at ¶ 6.

Plaintiff filed a lawsuit against Chris Aaron and Ms. Lamar in the Philadelphia County Court of Common Pleas, alleging that he sustained personal injuries in the accident. *See* Stipulation ¶ 14 and Exhibit "5" thereto. Omni denied coverage because the insured vehicle was being operated by an unlicensed driver. *See* Stipulation at ¶¶ 12-13 and Exhibit "4" thereto. The case proceeded to an arbitration hearing, and the arbitrators entered an award of $28,000 in favor of Plaintiff and against Aaron and Lamar. *See* Stipulation at ¶¶ 22-23 and Exhibit "8" thereto. Plaintiff entered judgment on the award. *See* Stipulation at ¶ 24 and Exhibit "9" thereto.

Plaintiff and Lamar then entered an agreement whereby Lamar assigned to Plaintiff her rights against Omni. In consideration for that assignment, Plaintiff agreed not to collect or execute upon the judgment against Lamar and Aaron, and further agreed to mark that judgment satisfied at the conclusion of these proceedings, regardless of the outcome. *See* Stipulation at ¶36 and Exhibit "10" thereto.

### This Lawsuit

Plaintiff filed this lawsuit against Omni in the Court of Common Pleas of Philadelphia County. In Count I, titled "Bad Faith – Excess Verdict," Plaintiff claims that he should be entitled to collect the entire $28,000 judgment from Omni[1] based upon Omni's alleged violations

---

[1]    The policy, if it had applied, would have provided a total per person liability limit of $15,000. *See* Exhibit "1" to Stipulation.

5

of the policy and of various provisions of Pennsylvania law. *See* Complaint, ¶ 32 (a)-(t).   In

Count II, titled "Bad Faith – Common Law and Statutory," Plaintiff claims entitlement to

"common law bad faith damages" and "statutory bad faith damages" under 42 Pa.C.S.A. Section

8371, based on the same allegations. *Id.*, ¶ 48 (a)-(t).

Omni removed the case to this Court in accordance with 28 U.S.C. Sections 1332, 1441

and 1446, and filed an Answer with Affirmative Defenses. The parties have stipulated to the

relevant facts; each party now seeks judgment as a matter of law.


II.    **ARGUMENT**

       A.    **The Unlicensed Operator Exclusion is Valid and Enforceable as a Matter of Pennsylvania Law, and Furthers Pennsylvania Public Policy**

This dispute is governed by Pennsylvania law.  The Pennsylvania Supreme Court has

repeatedly explained that, "In construing a policy of insurance, we are required to give plain

meaning to a clear and unambiguous contract provision unless such provision violates a clearly

expressed public policy. *Williams v. GEICO*, 32 A.3d 1195, 1199-1200 (Pa. 2011), quoting

*Burstein v. Prudential Property & Cas. Ins. Co., 809 A.2d 204, 206 (Pa. 2002)* and citing

*Eichelman v. Nationwide Ins. Co.,* 711 A.2d 1006, 1008 (Pa. 1998) and *Prudential Prop. and

Cas. Ins. Co. v. Colbert,* 813 A.2d 747, 750 (Pa. 2002).

The burden to invalidate a contract provision on based a public policy concerns is a

heavy one: "We [the Pennsylvania Supreme Court] consistently have been reluctant to invalidate

a contractual provision due to public policy concerns. .... Generally, a clear and unambiguous

contract provision must be given its plain meaning unless to do so would be contrary to a clearly

expressed public policy. When examining whether a contract violates public policy, this Court is

6

mindful that public policy is more than a vague goal which may be used to circumvent the plain

meaning of the contract." *Williams, supra,* citing *Eichelman, supra.* Rather,

> Public policy is to be ascertained by reference to the laws and legal
> precedents and not from general considerations of supposed public
> interest. As the term "public policy" is vague, there must be found
> definite indications in the law of the sovereignty to justify the
> invalidation of a contract as contrary to that policy[.] ... Only dominant
> public policy would justify such action. In the absence of a plain
> indication of that policy through long governmental practice or statutory
> enactments, or of violations of obvious ethical or moral standards, the
> Court should not assume to declare contracts ... contrary to public
> policy. The courts must be content to await legislative action.

*Williams, supra,* citing *Eichelman, supra.* "It is only when a given policy is so obviously for or

against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in

regard to it, that a court may constitute itself the voice of the community in so declaring [that the

contract is against public policy]. *Id.* (emphasis supplied, internal citations omitted).

Here, there is no question that the "unlicensed operator" provision is clear and

unambiguous. Plaintiff's argument is that it should not be enforced because, according to

Plaintiff, it violates (1) the Pennsylvania Motor Vehicle Code, (2) the Pennsylvania Motor

Vehicle Financial Responsibility Law (MVFRL), and (3) the public policy of the

Commonwealth. *See, e.g.,* Plaintiff's brief at 21-22, 25.

Each of those arguments fails, as set forth below.

1.    **The "Unlicensed Operator" Exclusion Does Not Violate the
      Motor Vehicle Code**

Plaintiff first argues that the unlicensed operator exclusion violates Section 1574 of the

Motor Vehicle Code. The underlying complaint did not allege liability under Section 1574, but

even if it had, the unlicensed operator exclusion does not violate that section.

7

**376a**

Section 1574 prohibits a vehicle owner from allowing an unlicensed driver to operate the vehicle. That Section penalizes such an owner in two ways: first, the owner commits a summary offense, and second, the owner is liable for any damages caused by the negligence of the driver:

> **Permitting unauthorized person to drive.**
>
> **(a) General Rule.** - No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.
>
> **(b) Penalty.** - Any person violating the provisions of subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S. §1574.

> a.    **The underlying complaint did not assert a claim under section 1574**

Plaintiff argues incorrectly that the Complaint asserted a cause of action for violating Section 1574. *See* Plaintiff's brief at 28, citing the Complaint at ¶13. That paragraph, however, alleges that <u>Lamar herself</u> was <u>directly</u> negligent in her entrustment of the vehicle to an unlicensed driver:

> 13.    The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless <u>conduct of the defendant owner</u>, Shameka Renee Lamar, which consisted of the following:
>
> ***
>
> (c)    <u>negligently and carelessly granting permission</u> to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

*See* Plaintiff's Complaint, Exhibit 5 to the Stipulation, at ¶13 (emphases supplied).

8

This paragraph does not mention Section 1574, or vicarious liability, at all; on the contrary, this paragraph asserts a _direct_ negligence claim against owner Lamar, and asserts that Lamar's _own_ negligence was a cause of the accident. This _direct_ liability claim is - by definition - not a _vicarious_ liability claim under Section 1574.

The two cases cited by Plaintiff explain exactly that. In _Terwilliger v. Kitchen,_ 781 A.2d 1201, 1213 (Pa. Super. 2001), a dramshop defendant argued that the liability of the co-defendant vehicle owner under Section 1574 should be deemed joint and several with the liability of the co-defendant driver, rather than merely vicarious (if the owner and driver were joint tortfeasors, it could decrease the percentage of liability to be imposed on the dramshop defendant). After reviewing the statute and case law, the Superior Court stated, "[I]t seems to us that the legislature has intended to establish a system of vicarious liability," _quoting Commonwealth of Pa., Dept. of Public Welfare v. Hickey,_ 582 A.2d 734, 737 (Pa. Cmwlth. 1990). The Superior Court concluded "[W]e agree with the trial court that the vehicle owner is vicariously liable for the damages caused by [driver]." _Terwilliger,_ 781 A.2d at 1216.

_In O'Loughlin v. Hunger,_ 2009 U.S. Dist. LEXIS 33711 (E.D. Pa. 2009), the court granted summary judgment in favor of the owner because there was no evidence of negligent entrustment. In doing so, the court explained in a footnote that although the plaintiff "does not cite section 1574, or even hint at its violation," a claimed violation of that section would not establish negligence: "Pennsylvania courts, however, have found that violation of [section 1574] only makes the automobile owner vicariously liable for the injuries caused by the driver of the vehicle and does not impose on the owner individual negligence under a negligent entrustment theory." _Id._ at *19-20, n.2 (citations omitted).

In sum, the underlying complaint did not assert a claim for vicarious liability under Section 1574. Plaintiff cannot ask to have the exclusion deemed invalid based on a claim that

was never part of the case. *See In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) ("Federal Courts have no jurisdiction to render advisory opinions. Put another way, they 'may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'").

        **b.**    **The unlicensed driver provision does not violate Section 1574**

      The unlicensed driver exclusion does not violate Section 1574 in any event. First, that Section does not even mention insurance; it certainly does not specify that an insurer must provide coverage when an insured vehicle is driven by an unlicensed driver.

      Second, there is no dispute that a vehicle owner can be held vicariously liable for use of his or her vehicle by an unlicensed driver, but that does not support Plaintiff's argument for imposing coverage for such a claim. On the contrary, forcing insurers to provide coverage for excluded claims would undercut the purpose of the statute, because it would obviate the penalty the Legislature intended to impose on such owners. The Commonwealth Court has described the statute as promoting the Commonwealth's "vital interest in preventing drivers from operating motor vehicles when they have no legal right to do so." *Commonwealth v. Jenks*, 296 A.2d 526, 529 (Pa. Cmwlth. 1991). Plaintiff's argument would mean that insurers could always be forced to cover unlicensed drivers one way or the other: coverage could properly be excluded for the unlicensed driver, but the same excluded claim would then have to be paid by the owner who is vicariously liable for the driver. Moreover, if vehicle owners could insure themselves against a statutory penalty for allowing such unlicensed drivers to operate their vehicles, that penalty would become no penalty to the owner at all.

      Plaintiff argues (without citing any authority) that Section 1574 is like a "red light" violation; Plaintiff argues that Omni cannot preclude coverage "to an operator who runs a red

light" and therefore should not be able to restrict coverage to unlicensed operators. *See* Plaintiff's brief at 28. Plaintiff's "red light" argument fails to distinguish between conduct giving rise to liability, and permissible limitations on drivers of vehicles. A policy could not qualify under the MVFRL as "respond[ing] in damages for" accidents if the policy excluded the causes of accidents (such as running a red light).

Policies can, however, limit coverage to certain drivers of vehicles without violating the MVFRL. As is discussed in detail below, the MVFRL does not require a vehicle's liability policy to provide coverage no matter who is driving it. On the contrary, courts have upheld named-driver exclusions (*see, e.g., Northern Ins. Co. v. Schneck*, 813 A.2d 828 (Pa. 2002), discussed below), and even named-driver-only policies (*see, e.g., Byoung Suk An v. Victoria Fire and Cas. Co.*, 113 A.2d 1283 (Pa. Super. 2015), also discussed below). Similarly, "permissive use" exclusions have been upheld even against "innocent" claimants who did not know that the use was not permissive. *See, e.g., Nationwide Mut. Ins. Co. v. Cummings*, 652 A.2d 1338 (Pa. Super. 1994), *appeal denied*, 659 A.2d 988 (Pa.1995) (non-permissive use exclusion did not violate the legislative intent behind the MVFRL).

In sum, the unlicensed driver exclusion does not violate Section 1574. Rather, it is entirely consistent with, and furthers the purpose of, that Section. Plaintiff's argument to invalidate the exclusion on that basis should be rejected.

2.  **The Unlicensed Operator Exclusion Does Not Violate the MVFRL**

Plaintiff next argues that the unlicensed operator exclusion violates Sections 1786(a) and (f) of the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"), 75 Pa.C.S. §§ 1786(a) and (f). However, those provisions, and the case law interpreting them, do not require extending coverage to unlicensed drivers despite a clear policy exclusion.

11

Section 1786(a) requires that registered <u>motor vehicles</u> be covered by "financial responsibility." *See* 75 Pa.C.S. §1786(a) ("Required financial responsibility - General rule").[2] The statute defines "financial responsibility" as "The ability to respond in damages for liability on account of accidents arising out of the maintenance or use of a motor vehicle in the amount of $15,000 because of injury to one person in any one accident, in the amount of $30,000 because of injury to two or more persons in any one accident and in the amount of $5,000 because of damage to property of others in any one accident." *See* 75 Pa.C.S. §1702.

There is no question that Lamar's motor vehicle was covered by a policy of insurance that met the "financial responsibility" requirement of Section 1786(a). There is also no question, however, that the policy excluded coverage for the unlicensed driver here.[3]

Plaintiff argues that Section 1786(f) requires coverage be extended to any and all permissive drivers of an insured vehicle, regardless of exclusions. *See* Plaintiff's brief at 29. However, that is not what Section 1786(f) says. <u>Section 1786(f) is a penalty provision.</u> It does not require a policy to provide coverage (or to provide different or broader coverage). Section 1786(f) merely penalizes owners whose vehicles are operated without coverage:

> **(f) Operation of a motor vehicle without required financial responsibility. --**
>
> Any owner of a motor vehicle for which the existence of financial responsibility is a requirement for its legal operation shall not operate the motor vehicle or permit it to be operated upon a highway of this Commonwealth without the financial responsibility required by this chapter. In addition to the penalties provided by subsection (d), any person who fails to comply with this subsection commits a summary offense and shall, upon conviction, be sentenced to pay a fine of $ 300.

---

[2]    Section 1786 has its own penalty provision if a vehicle is not covered by financial responsibility.  See Section 1786(f).

[3]    Plaintiff asserts that policy exclusions are to be "narrowly construed." Plaintiff's brief at p. 25. That proposition is irrelevant here: the exclusion is clear, and there is no argument that Chris Aaron a/k/a Chris Porter could avoid the exclusion under any construction of it.

12

75 Pa.C.S. § 1786(f).

The exclusion in this case is consistent with, and supported by, Pennsylvania case law upholding policy provisions that limit coverage to – or exclude - certain drivers. In the recent case of *Byoung Suk An v. Victoria Fire and Cas. Co.*, 113 A.2d 1283 (Pa. Super. 2015), *appeal denied* 2015 Pa. LEXIS 2831 (Pa., December 8, 2015), the Superior Court upheld a limitation substantially broader than the exclusion in this case. In *Victoria*, the policy did not provide liability coverage to any person not specifically listed on the policy. *See* 113 A.2d at 1286. The only listed driver was the insured herself; at the time of the accident, the operator was a friend of the insured's son, who had given the friend permission to drive. *Id.* The claimant argued that the "named driver only" policy improperly expanded the "named driver exclusion" permitted under 75 Pa. C.S. Section 1718(c).

The Superior Court rejected that argument, explaining that section 1718(c) addresses policies wherein an insured specifically excludes a driver who would otherwise be covered from receiving benefits under a policy enumerated in section 1711 or 1712 (which list medical, wage loss and similar first-party benefits). The Superior Court held that section 1718(c) was not applicable to a "named driver only" policy, and that the policy limitation was clear and unambiguous. *See also Selective Way Ins. Co. v. Gingrich*, 2009 WL 1586577 (M.D. Pa. 2009) (named driver exclusion applies to prevent any policy coverages, including liability and UM/UIM, from applying to any claim arising from operation of the vehicle by the excluded driver, and thus carrier had no obligation to defend or indemnify against claim by injured party)

Plaintiff argues that Section 1786(f) "implicitly" directs that all permissive users be insured, relying upon *Progressive Northern Ins. Co. v. Universal Underwriters Ins. Co.*, 898 A.2d 1116 (Pa. Super. 2006), *appeal denied* 909 A.2d 1290 (Pa. 2006). However, the *Progressive Northern* case is not controlling or persuasive, and is factually distinguishable.

13

382a

First, the *Progressive Northern* case predates *Victoria*, *above*, in which the Superior Court upheld a "named driver only" provision to preclude coverage to a permissive driver because he was not named on the policy. Plaintiff's theory that *Progressive Northern* "implicitly" requires owners to always cover permissive users is clearly contradicted by *Victoria*.

Second, *Progressive Northern* involved the very different issue of whether, under the MVFRL, a driver's household policy should be the source of liability coverage, or whether the policy covering the vehicle should apply. In *Progressive Northern*, an employee was driving his employer's vehicle, which was insured by Universal. Universal's policy extended coverage to any person "required by law to be an insured" while using a covered auto. Universal argued, citing pre-MVFRL case law, that the driver was not "required by law" to be insured on the employer's policy, because the employee had a household policy with Progressive. The Superior Court questioned even the pre-MVFRL result, and concluded that the MVFRL's addition of Section §1786(f) was an "implicit" direction that owners provide coverage, "consistent with the concept that primary coverage follows ownership of the vehicle." *Id.*, 898 A.2d at 1119.

The issue here is not whether the liability policy on a vehicle generally "follows" it to provide coverage for a permissive driver. Rather, Plaintiff's claim is that a specific, unambiguous exclusion of the driver is contrary to the MVFRL. The *Progressive Northern* case does not support Plaintiff's argument.

The Legislature, in drafting the MVFRL, was specific in identifying situations where coverage was required or could not be reduced or limited. *See, e.g.*, 75 Pa.C.S. §1724 (listing non-excludable conditions in the first-party benefits section of the MVFRL); §§1711 and 1712 (listing various first-party coverages that must be offered); §1731 (requirements for rejecting stacking of uninsured and underinsured motorist coverages); §1734 (requirements for selecting limits of underinsured motorist coverage lower than the limits of liability coverage). If the

14

Legislature had intended to require insurers to extend liability coverage to all drivers, even when the drivers do not have drivers' licenses, the Legislature could have done so. They did not. Excluding such drivers from liability coverage is not contrary to the MVFRL.

### 3.   The Unlicensed Operator Exclusion Does Not Violate Public Policy; It Is Consistent With and Advances that Policy

Plaintiff's third argument is that the unlicensed operator exclusion violates public policy. *See* Plaintiff's brief at 32. Plaintiff offers the vague, general platitude that: "The public policy of Pennsylvania favors the deterrence of uninsured drivers and the extension of coverage to motor vehicle operators. It is in the interest of the public good to have insured motorists on the highways." *Id.*

Omni described above (pp. 6-7) the "heavy burden" required to invalidate a clear policy provision on so-called "public policy" grounds. To briefly summarize, the Pennsylvania Supreme Court is reluctant to invalidate a contractual provision due to public policy concerns, and a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. Such a policy cannot be "general considerations of supposed public interest" or "a vague goal" being used to "circumvent the plain meaning of the contract." *Williams, supra, citing Eichelman, supra.* "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]." *Id.*

Plaintiff does not dispute this standard. Plaintiff argues, however, that the Supreme Court's evaluation of public policy has changed. Plaintiff argues that while the overriding goal of the MVFRL was "initially" cost containment, the Supreme Court has "abandoned" that point of view and has recognized the goal of maximum feasible restoration to accident victims as an

15

equally important purpose of the law. *See* Plaintiff's brief at 22-23. Plaintiff relies upon *Williams v. GEICO*, 32 A.3d 1195 (Pa. 2011), arguing that "the majority of the justices on the Court at that time adopted a rationale which significantly departs from prior pronouncements." *Id.* at 24.

Plaintiff mischaracterizes the *Williams* case, which does not support Plaintiff's position that cost containment has been "abandoned" in Pennsylvania. In *Williams*, the Supreme Court upheld a "regular use" exclusion that precluded the claimant from obtaining underinsured motorist benefits from his own policy if he was injured in another vehicle he regularly used. The claimant was a state police officer and was injured while using his police vehicle. He argued that despite prior case law upholding such exclusions, upholding the exclusion in his case would violate a public policy of protecting first responders. *Williams*, 32 A.3d at 1201. The Supreme Court, in accordance with its prior decisions in, *inter alia, Burstein v. Prudential Property & Cas. Ins. Co.,* 809 A.2d 204 (Pa. 2002), upheld the regular use exclusion.

In holding that public policy did not require any different outcome in the "first responder" situation, the Court conducted the same public policy analysis followed in *Burstein*, and held, "Appellant's position conflicts with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected." *Williams*, 32 A.3d at 1206. In three concurring opinions in *Williams,* four justices urged that cost containment should not be a "mantra," and that "equally important policies and goals" should be recognized. *See* 32 A.3d beginning at 1210 (concurring opinions). However, the Supreme Court did not "abandon" cost containment; on the contrary, the Court again recognized it as one of the "overall policies of the MVFRL."

In 2015, a unanimous panel of the Superior Court applied *Williams* to reject the same argument Plaintiff is making in this case. In *Byoung Suk An v. Victoria, supra,* the claimant argued that a "named driver policy," which covered only the specific driver named in the

16

application, was contrary to public policy. The claimant argued (like Plaintiff in this case) that the policy would violate Pennsylvania public policy because it would "increase the number of uninsured motorists on Pennsylvania roads." *Victoria*, 113 A.3d at 1291.

The Superior Court applied the analysis summarized above and set forth more fully at pp. 6-7 of this brief, quoting *Williams* and *Eichelman*. The Superior Court also cited *Progressive Northern Ins. Co. v. Schneck*, 813 A.2d 828 (Pa. 2002), in which the Supreme Court upheld a named driver exclusion as consistent with the overarching public policy of cost containment, and *Donegal Mut. Ins. Co. v. Fackler*, 835 A.2d 712 (Pa. Super. 2003), in which the Superior Court likewise upheld a named driver exclusion, and *Infinity Indem. Ins. Co. v. Gonzalez*, 2012 U.S. Dist. LEXIS 77004 (E.D. Pa. 2012) (district court upheld "named driver only" policy). The Superior Court specifically focused on cost considerations in noting that "provision of low-cost, affordable policies in return for motor vehicle liability coverage of only the named driver, and the concomitant risk reduction, does not violate public policy." *Victoria*, 113 A.3d at 1292, citing *Williams*, 32 A.3d at 1200. The Superior Court concluded that any such determination would have to be a question for the legislature. *Id.*

It is clear from the *Victoria* case that the public policy of cost control has not been "essentially abandoned" post-*Williams*, as Plaintiff argues.[4] On the contrary, cost control continues to be a primary consideration of public policy analyses under the MVFRL, and Omni's policy furthers that consideration by ensuring that carriers are not required to bear risks of unlicensed drivers that the carriers would never have agreed to insure (the cost of which would pass to honest insureds in the form of higher premiums. The unlicensed driver exclusion also

---

[4]    Plaintiff also cites *Heller v. Pennsylvania League of Cities*, 32 A.3d 1213 (Pa. 2011), for the proposition that cost containment "cannot be mechanically invoked" to restrict coverage. In *Heller*, the Supreme Court invalidated an exclusion that prevented any claimant eligible for worker's compensation benefits from receiving underinsured motorist benefits.

furthers the public policy of discouraging owners from allowing unlicensed drivers to operate vehicles. *See Commonwealth v. Jenks, supra,* 296 A.2d at 529 (Pa. Cmwlth. 1991) (recognizing the Commonwealth's "vital interest in preventing drivers from operating motor vehicles when they have no legal right to do so."). The exclusion also prevents unscrupulous drivers from acquiring vehicles and policies through "straw man" purchases (where the "owner" is merely fraudulently acquiring the vehicle on behalf of another), and it furthers the Legislature's intention that owners who do permit unlicensed drivers to operate their vehicles are to be penalized via vicarious liability for those drivers.

Plaintiff's "public policy" argument essentially amounts to saying "it's good to have insured drivers." This is the kind of "vague goal" and "general consideration of supposed public interest" that may not be used to circumvent the plain meaning of a contract. As in *Victoria, Williams, Eichelman, Schneck,* and the other case law discussed above, there is no "dominant public policy" that could justify requiring an insurer to provide liability coverage to an unlicensed driver who falls within a clear exclusion.

Accordingly, Plaintiff's motion for summary judgment should be denied, and Omni's cross-motion for summary judgment should be granted.

**B.    Plaintiff's "Bad Faith" Claim Fails as a Matter of Law: Omni Correctly, Properly and Reasonably Denied Coverage to an Unlicensed Driver Who Was Not "Insured" Under the Omni Policy**

Plaintiff also alleges that Omni acted in bad faith in not providing Shameka Renee Lamar with a defense and indemnification in the underlying Duncan lawsuit. Plaintiff concedes that Omni could properly deny coverage to the unlicensed driver, but argues that as to Lamar, Omni "failed to comply with the specific mandates of Pennsylvania law" in relying on the unlicensed driver exclusion. *See* Plaintiff's brief at 34. Plaintiff then repeats his arguments that the

18

exclusion violates Section 1574 of the Motor Vehicle Code, Section 1786 of the MVFRL, and

the "public policy" operators of motor vehicles should be insured. *Id.* at 34-35.

Omni is entitled to judgment on Plaintiff's "bad faith" claims as a matter of law.

### 1.    Standard for summary judgment on "bad faith" claim under Pennsylvania law

The Pennsylvania statute governing "bad faith" claims against insurance companies is 42

Pa.C.S. § 8371, which provides:

> In an action arising under an insurance policy, if the court finds
> that the insurer has acted in bad faith toward the insured, the court
> may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the
> claim was made by the insured in an amount equal to the prime
> rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa.C.S. § 8371.

The statute does not define "bad faith," and the Pennsylvania Supreme Court has likewise

not defined that term. The Third Circuit has predicted that the Supreme Court would adopt the

definition previously set forth by the Superior Court in *Terletsky v. Prudential Prop. and Cas.*

*Ins. Co.*, 649 A.2d 680 (Pa. Super. 1984):

> "Bad faith" on part of insurer is any frivolous or unfounded refusal
> to pay proceeds of a policy; it is not necessary that such refusal be
> fraudulent. For purposes of an action against an insurer for failure
> to pay a claim, such conduct imports a dishonest purpose and
> means a breach of a known duty (*i.e.*, good faith and fair dealing),
> through some motive of self-interest or ill will; mere negligence or
> bad judgment is not bad faith.

*Northwestern Mut. Life Ins. Co. v. Babayan*, 430 F.3d 121, 136-137, quoting *Terletsky*, 649 A.2d

at 688 (internal citations omitted), and *Keefe v. Prudential Property and Cas. Ins. Co.*, 203 F.3d

218, 225 (3d Cir. 2000).

19

> Ultimately, in order to recover on a bad faith claim, the insured
> must prove: (1) that the insurer did not have a reasonable basis for
> denying benefits under the policy; and (2) that the insurer knew of
> or recklessly disregarded its lack of a reasonable basis in denying
> the claim.

*Babayan*, 430 F.3d at 137, citing *Keefe*, 203 F.3d at 225.

The insured must meet this burden of proof by clear and convincing evidence. *See*

*Terletsky*, 649 A.2d at 688. "The 'clear and convincing' standard requires that the plaintiff show

'that the evidence is so clear, direct, weighty and convincing as to enable a clear conviction,

without hesitation, about whether or not the defendants acted in bad faith.'" *J.C. Penney Life Ins.*

*Co. v. Pilosi*, 393 F.3d 356, 367 (3d Cir. 2004), quoting *Bostick v. ITT Hartford Group, Inc.*, 56

F. Supp. 2d 580, 587 (E.D. Pa. 1999); *see also, e.g., Treadways LLC v. Travelers Indem. Co.*,

467 Fed. Appx. 143, 147  (3d Cir. 2012). "Thus, the plaintiff's burden in opposing a summary

judgment motion is commensurately high in light of the substantive evidentiary burden at trial.

*Pilosi, supra*, citing *Kosierowski v. Allstate Ins. Co.*, 51 F. Supp. 2d 583, 588 (E.D. Pa. 1999).

Importantly, "A reasonable basis is all that is required to defeat a claim of bad faith."

*Pilosi*, 393 F.3d at367, citing *Horowitz v. Fed. Kemper Life Assurance Co.*, 57 F.3d 300, 307 (3d

Cir. 1995).

> **2.    Omni Denied Coverage in Good Faith Pursuant to a Specific**
> **Policy Exclusion, and that Denial Does Not Constitute "Bad**
> **Faith" as a Matter of Law**

Plaintiff's bad faith claim fails as a matter of law for two reasons. First, there is no

coverage, as set forth above. *See AmerisourceBergen Corp. v. ACE Am. Ins. Comp.*, 2013 Phila.

Ct. Com. Pl. LEXIS 249, *31 (C.P. Phila. 2013), *aff'd* 100 A.3d 283 (Pa. Super. 2014), *citing*

*Frog, Switch & Mgf., Co. v. Travelers Ins. Co.*, 193 F.3d 742 (3d Cir. 1999) ("Amerisource

claims that Ace's bases for denying coverage were not reasonable, and claims handling was

20

conducted in bad faith. Because this court has determined that an exclusion applies, this claim fails.").

Second, there is no question that Omni has set forth a "reasonable basis" to defeat any claim of bad faith.   The documents attached to the stipulation conclusively establish that reasonable basis as a matter of law.

First, by letter of July 8, 2014, Omni Bodily Injury Supervisor Andrew Funk wrote to insured Shameka Lamar to advise her that after investigation, "We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver." *See* Stipulation ¶13, and Exhibit "4" thereto.   The letter specifically cites and quotes the unlicensed driver exclusion. *Id.* On September 16, 2014, Omni Litigation Manager Scott Mascioli reiterated this information in separate letters to both Lamar and the driver, and provided each of them with a copy of the lawsuit against them. *See* Stipulation ¶13, and Exhibits "6" and "7" thereto.

Plaintiff does not argue that the policy as written provided coverage, or that the policy was ambiguous and should have been construed in his favor, or that the carrier delayed, or denied coverage without notifying him, or any other basis.   Plaintiff merely argues that Omni's denial constitutes "bad faith" because Omni's policy language should not be enforced.

Plaintiff's argument fails, because the policy as written did not provide any coverage for this accident. *See, e.g., Frog Switch, supra*, 193 F.3d at 744 (affirming summary judgment in favor of the insurer on claims of breach of duty to defend and bad faith, because the claims did not fall with coverage of policies: "[B]y the plain terms of the policies, the insurers had no duty to defend against such claims. We also rule that the insured cannot maintain actions for bad-faith denial of coverage against them.").

In *Treadways LLC v. Travelers Indem. Co.*, 467 Fed. Appx. 143 (3d Cir. 2012), the Third Circuit affirmed the District Court's grant of summary judgment in favor of the insurer in a

21

situation similar to this case.  Travelers, the carrier in *Treadways,* denied coverage on the basis that the vehicle being operated at the time of the accident in question was not covered under the Travelers policy. Travelers withdrew its defense, and a judgment was ultimately entered against the Travelers insured.  The Third Circuit held that where it was undisputed that the policies precluded coverage, "This alone was sufficient for the District Court to dismiss the bad faith claim. Because the claims asserted in the [underlying] Suit were not covered by the policies, Travelers had good cause to deny coverage and cease defending the litigation." *Treadways*, 467 Fed. Appx. at 147.

In *Post v. St. Paul Travelers Ins. Co.*, 691 F.3d 500 (3d Cir. 2012), the Third Circuit concluded that a duty to defend had arisen in the course of the underlying proceedings, but nevertheless affirmed the district court's conclusion that the carrier did not act in bad faith where it had relied upon an exclusion to deny coverage:  "The sanctions exclusion in the Policy provided Travelers a reasonable basis for declining to provide a defense to Post, and there is nothing in the record—let alone clear and convincing evidence—indicating that Travelers' purported mishandling of Post's claim was motivated by a dishonest purpose or ill will." *Post*, 691 F.3d at 594-595.

Plaintiff fails to raise any allegations that could possibly constitute bad faith under Pennsylvania law.  Omni's policy contains a clear exclusion that applies to the facts here.  The exclusion constituted a reasonable basis to deny coverage. "A reasonable basis is all that is required to defeat a claim of bad faith." *Pilosi*, supra, 393 F.3d at 367.

## III.    CONCLUSION

Omni properly denied coverage for the underlying lawsuit, because the liability coverage of Omni's policy excludes any coverage for bodily injury or property damage resulting from the use of any vehicle by an unlicensed driver.  There is no dispute that the exclusion applied to the

22

accident at issue. The exclusion does not violate Pennsylvania law or public policy, and it furthers the Legislature's intent to penalize owners of vehicles if those owners allow unlicensed operators to drive. Accordingly, the exclusion should be upheld and summary judgment should be entered in favor of Omni and against Plaintiff. Summary judgment should also be entered in favor of Omni and against Plaintiff on Plaintiff's "bad faith" claim, because there was no coverage, and because Omni certainly had a reasonable basis to deny coverage in light of the exclusion.

Respectfully submitted:

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

BY: _____
    R. BRUCE MORRISON, ESQUIRE
    TERESA FICKEN SACHS, ESQUIRE
    PA Attorney I.D. Nos. 34797/41136
    2000 Market Street, Suite 2300
    Philadelphia, PA 19103
    215-575-2600/ 215-575-0856 (F)
    rbmorrison@mdwcg.com
    tfsachs@mdwcg.com
    *Attorneys for Defendant*

Dated: July 18, 2016

23

## CERTIFICATE OF SERVICE

I, R. Bruce Morrison, Esquire, attorney for Defendant, hereby certify that a true and correct

copy of the foregoing Memorandum in Opposition to Plaintiff's Motion for Summary Judgment and

in Support of Defendant's Motion for Summary Judgment, was served upon the following parties

via electronic court filing system, on the below date:

Kevin P. Kelly, Esquire
KELLY & HERRON, P.C.
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA 19102
*Attorney for Plaintiff*

James C. Haggerty, Esquire
HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.
1835 Market Street, Suite 2700
Philadelphia, PA 19103
*Attorney for Plaintiff*

R. Bruce Morrison

Dated: July 18, 2016

LEGAL\105904497.v1

24

**393a**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                     :
                                      :   No.16-1489-HB
                                        :
           v.                           :
                                        :
OMNI INSURANCE COMPANY       :
                                        :

**ANSWER OF PLAINTIFF TO MOTION FOR**
**SUMMARY JUDGMENT OF DEFENDANT**

The plaintiff, Richard Duncan, by his counsel, Haggerty, Goldberg, Schleifer &

Kupersmith, P.C., and Kelly and Herron, P.C., hereby responds to the Motion for Summary

Judgment of the defendant, Omni Insurance Company ("Omni"), and avers as follows:

        1.       Admitted. By way of further answer, it is averred that any statements contained

in the application are not relevant to the coverage dispute in the instant action. Omni is not

seeking to avoid coverage on the basis of any statements contained in the application. In fact,

under Pennsylvania law, it may not do so. Nonetheless, Omni apparently references statements

in the application in an attempt to somehow make Shameka Renee Lamar look "bad" in the eyes

of the Court, while seeking to unlawfully enforce its invalid exclusion.

        2.       Admitted. By way of further answer, it is averred that any statements contained

in the application are not relevant to the coverage dispute in the instant action. Omni is not

seeking to avoid coverage on the basis of any statements contained in the application. In fact,

under Pennsylvania law, it may not do so. Nonetheless, Omni apparently references statements

in the application in an attempt to somehow make Shameka Renee Lamar look "bad" in the eyes

of the Court, while seeking to unlawfully enforce its invalid exclusion.

        3.       There is no Paragraph 3 in the Motion for Summary Judgment.

1

4.      There is no Paragraph 4 in the Motion for Summary Judgment.

5.      There is no Paragraph 5 in the Motion for Summary Judgment.

6.      There is no Paragraph 6 in the Motion for Summary Judgment.

7.      There is no Paragraph 7 in the Motion for Summary Judgment.

8.      Admitted.  By way of further answer, it is averred that any statements contained in the application are not relevant to the coverage dispute in the instant action.  Omni is not seeking to avoid coverage on the basis of any statements contained in the application.  In fact, under Pennsylvania law, it may not do so.  Nonetheless, Omni apparently references statements in the application in an attempt to somehow make Shameka Renee Lamar look "bad" in the eyes of the Court, while seeking to unlawfully enforce its invalid exclusion.

9.      Admitted.  By way of further answer, it is averred that any statements contained in the application are not relevant to the coverage dispute in the instant action.  Omni is not seeking to avoid coverage on the basis of any statements contained in the application.  In fact, under Pennsylvania law, it may not do so.  Nonetheless, Omni apparently references statements in the application in an attempt to somehow make Shameka Renee Lamar look "bad" in the eyes of the Court, while seeking to unlawfully enforce its invalid exclusion.

10.     Admitted.  By way of further answer, it is averred that any statements contained in the application are not relevant to the coverage dispute in the instant action.  Omni is not seeking to avoid coverage on the basis of any statements contained in the application.  In fact, under Pennsylvania law, it may not do so.  Nonetheless, Omni apparently references statements in the application in an attempt to somehow make Shameka Renee Lamar look "bad" in the eyes of the Court, while seeking to unlawfully enforce its invalid exclusion.

11.     Admitted.  By way of further answer, it is averred that any statements contained in the application are not relevant to the coverage dispute in the instant action.  Omni is not seeking to avoid coverage on the basis of any statements contained in the application.  In fact, under Pennsylvania law, it may not do so.  Nonetheless, Omni apparently references statements in the application in an attempt to somehow make Shameka Renee Lamar look "bad" in the eyes of the Court, while seeking to unlawfully enforce its invalid exclusion.

12.     Admitted.  By way of further answer, it is averred that any statements contained in the application are not relevant to the coverage dispute in the instant action.  Omni is not seeking to avoid coverage on the basis of any statements contained in the application.  In fact, under Pennsylvania law, it may not do so.  Nonetheless, Omni apparently references statements in the application in an attempt to somehow make Shameka Renee Lamar look "bad" in the eyes of the Court, while seeking to unlawfully enforce its invalid exclusion.

13.     Admitted.

14.     Admitted.

15.     Admitted.

16.     Admitted.  By way of further answer, the defendant, Omni, may not seek to avoid coverage for the actions of the *owner*, rather than the operator pursuant to the unlicensed operator exclusion under Pennsylvania law.

17. (Improperly labeled as 18).   Admitted.

18. (Improperly labeled as 17).   Admitted.

19. (Improperly labeled as 18).   Denied.

20. (Improperly labeled as 19).   Admitted in part; denied in part.  It is admitted that the Omni policy defines an insured as, *inter alia*, a permissive user of a covered auto provided that

3

the permissive user holds a valid driver's license at the time of the loss.    It is further admitted that Chris Aaron a/k/a Chris Porter did not have a valid driver's license at the time of the loss.  It is denied, however, however, that this is a policy exclusion.  On the contrary, the language is a definitional term within the Insuring Agreement.

21. (Improperly labeled as 20).  Denied.  It is denied that the definition of insured referenced by the defendant, Omni, in the Insuring Agreement is an exclusion.  It is further denied that the language referenced by the defendant, Omni, precludes any liability coverage for the owner, Shameka Renee Lamar.

22. (Improperly labeled as 21).   Admitted in part; denied in part.  It is admitted that the Omni policy defines insured as, *inter alia*, a permissive operator of the vehicle who holds a valid driver's license at the time of the loss.  It is denied as a conclusion of law that this policy language is valid and enforceable.  It is further denied that this policy language is applicable to the duty to provide coverage to the owner,  Shameka Renee Lamar.

23. (Improperly labeled as 22).  Denied.  The language referenced by the defendant, Omni, is not a coverage exclusion.  Instead, the language references a definitional term within the Insuring Agreement.  It is further denied  as a conclusion of law that this policy language is valid and enforceable.  It is further denied that this policy language is applicable to the duty to provide coverage to the owner,  Shameka Renee Lamar.

24. (Improperly labeled as 23).  Denied.  It is denied that the defendant, Omni, has no obligation to provide defense or indemnity to Shameka Renee Lamar under the policy in question.  In this regard, it is noted that the defendant, Omni, is apparently relying upon Exclusion 16 in its coverage defense.  The defendant, Omni, however, does not reference Exclusion 16 in its Motion for Summary Judgment but, instead, references the definitional terms

4

of the Insuring Agreement. Again, the defendant, Omni, seeks to divert attention from the actual issues, namely the application of the uninsured operator exclusion to the vehicle owner.

25. (Improperly labeled as 24). Denied. It is denied that the defendant, Omni, has no obligation to satisfy the Judgment entered in the underlying tort action. On the contrary, the defendant, Omni, has illegally, wantonly and willfully denied coverage to Shameka Renee Lamar in direct contravention of Pennsylvania law and public policy. As such, coverage is to be afforded; compensatory and punitive damages are to be awarded.

26. (Improperly labeled as 25). Admitted in part; denied in part. It is admitted that the defendant, Omni, denied coverage to Shameka Renee Lamar on the basis of its policy language. It is denied that the policy language is valid and enforceable when applied to the owner of the motor vehicle. It is further denied that the actions of Omni in relying upon such invalid and unenforceable policy language can be considered good faith claims handling. Somehow, Omni asserts that its attempts to enforce policy provisions cannot be considered bad faith since it is merely seeking to enforce policy provisions. Such a position is patently absurd. The defendant, Omni, wantonly, willfully and in reckless disregard of the rights of Shameka Renee Lamar refused to provide defense and indemnity in the underlying tort action.

27. (Improperly labeled as 26). Admitted in part; denied in part. It is admitted that Omni has denied coverage to Shameka Renee Lamar on the basis of its wanton, reckless and willful enforcement of an invalid policy exclusion. It is denied that the defendant, Omni, acted in good faith. On the contrary, it is denied that the actions of Omni in relying upon such invalid and unenforceable policy language can be considered good faith claims handling. Somehow, Omni asserts that its attempts to enforce policy provisions cannot be considered bad faith since it is merely seeking to enforce policy provisions. Such a position is patently absurd. The

5

defendant, Omni, wantonly, willfully and in reckless disregard of the rights of Shameka Renee Lamar refused to provide defense and indemnity in the underlying tort action.

28. (Improperly labeled as 27). Denied. It is denied that the disclaimer of coverage for Shameka Renee Lamar was not frivolous or unfounded. It is further denied that there was no dishonest purpose, breach of known duty or motive of self-interest or ill will. On the contrary, a review of the actions of the defendant, Omni, reveal that it has acted in bad faith and is responsible for payment of compensatory and punitive damages. By way of further answer, the existence of factual questions with respect to the motives and purpose of the defendant, Omni, in seeking to enforce the exclusion in direct contravention of Pennsylvania law and public policy may exist. Therefore, discovery may be needed on the issue of bad faith. Nonetheless, the plaintiff, Richard Duncan, asks that Partial Summary Judgment be entered in favor of the plaintiff, Richard Duncan, on the liability of Omni to pay the balance of the Arbitration Award as well as extra-contractual bad faith damages, i.e. interest, counsel fees, costs and punitive damages to be assessed at a later hearing.

6

29. (Improperly labeled as 28). Denied. It is denied that the defendant, Omni, is entitled to judgment in its favor. On the contrary, the plaintiff, Richard Duncan, respectfully requests that the Court enter Partial Summary Judgment in his favor.

Respectfully Submitted,

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY: _____JCH4113_____
JAMES C. HAGGERTY, ESQUIRE
SUZANNE TIGHE, ESQUIRE
PA Attorney I.D. # 30003; 80179
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6600
FAX (215) 665-8197


KELLY & HERRON, P.C.

BY: /s/ Kevin P. Kelly_____
KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102

Attorneys for Plaintiff

**400a**

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                          :
                                        :   No.16-1489-HB
                                        :
          v.                            :
                                        :
OMNI INSURANCE COMPANY                  :
                                        :

## MEMO OF LAW IN SUPPORT OF
## MOTION FOR PARTIAL SUMMARY OF PLAINTIFF, RICHARD DUNCAN

### FACTS

(a)      **Generally**

The present action involves claims: (1) seeking payment of the $28,000.00 judgment entered in the underlying tort action; and (2) common law and statutory bad faith damages, in connection with the denial and disclaimer of liability coverage pursuant to an unlicensed operator exclusion under a personal auto policy issued by the defendant, Omni Insurance Company ("Omni"), pursuant to an unlicensed operator exclusion. The defendant, Omni, is seeking to avoid the obligation of coverage on basis of the unlicensed operator exclusion. Omni seeks to apply that exclusion, however, not to the unlicensed operator, but to the insured owner. The validity and enforceability of that exclusion, as well as the propriety of Omni's actions in relying upon that exclusion, are at issue in this case

(b)      **Policy of Insurance**

At the time of the accident there existed a policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar. See Exhibit "A", Stipulation ¶ 1. The policy of insurance provides:

8

**401a**

## PART A – LIABILITY COVERAGE

### INSURING AGREEMENT

    A.    We will pay compensatory damages for **bodily injury** or **property damage** for which any insured becomes legally responsible because of an **auto accident.**

    *           *           *

B.    **Insured** as used in this Part means:

    2.    **You**, an **insured** resident, **or any family member** for the ownership, maintenance or use of your covered auto.

    3.    A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto.

    *           *           *

### EXCLUSIONS

A.    We do not provide Liability Coverage for any insured.

    16.    For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

        c.    Does not have a valid driver's license; or

        d.    Has a suspended or rescinded driver's license.

See Exhibit "A", Stipulation ¶ 1, pp. 24-26.  In this case, Omni is seeking to use this exclusion to deny coverage to the vehicle owner, not just the unlicensed operator.

9

(c)    <u>**Statutory Provisions**</u>

The policy of insurance in question was issued in Pennsylvania to a Pennsylvania citizen and provided coverage in accordance with Pennsylvania law. The resolution of the legal coverage issue is governed by Pennsylvania law. Section 1574 of the Pennsylvania Motor Vehicle Code provides:

(a)    **General Rule.** – No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this Chapter or who is not licensed for the type or class of vehicle to be driven.

(b)    **Penalty.** – Any person violating the provisions subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S.A. § 1574. These statutory provisions impose liability on the owner, independent of the liability of the unlicensed operator. Omni may not use the unlicensed operator exclusion to deny coverage to the owner in light of the statutory mandate.

**ARGUMENT**

(a)    <u>**Generally**</u>

In the present case, Omni seeks summary judgment. Omni contends that the disclaimer of coverage is valid. In an effort to justify its position, Omni attempts to use legal sleight of hand, albeit somewhat clumsily, to focus attention on the exclusion in a vacuum, rather than in its application in the case at bar. The issue in this case is *not* the validity of the unlicensed operator exclusion in the abstract. At the same time, the issue is not the validity of the unlicensed operator exclusion to the unlicensed operator. Instead, the issue is the validity and enforceability of this exclusion with respect to the duty to defend and indemnify the owner of the

10

vehicle in light of the statutory mandate and the clear public policy of the Commonwealth. In this case, Omni is attempting to focus the attention of the Court away from the real issue, namely the validity of the exclusion when applied to the vehicle owner, not the unlicensed operator. At issue is whether Omni can seek to enforce an exclusion which, when applied in this case, is violative of Pennsylvania law and the public policy of the Commonwealth. The plaintiff, Richard Duncan, requests that the Court enter Partial Summary Judgment in his favor on this issue.

### (b)    Standard of Review

Summary judgment should be granted when the pleadings and evidence "show that there is no genuine issue as to any material fact and . . . the moving party is entitled to judgment as a matter of law." Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986) (citing Fed.R.Civ.P. 56 (a)).). In evaluating a summary judgment motion, the court "must view the facts in the light most favorable to the non-moving party," and make every reasonable inference in that party's favor. Hugh v. Butler Cty. Family YMCA, 418 F.3d 265, 267 (3d Cir. 2005). If, after making all reasonable inferences in favor of the non-moving party, the court determines that there is no genuine issue of material fact, summary judgment is appropriate. Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) and Wisniewski v. Johns—Manville Corp., 812 F.2d 81, 83 (3d Cir.1987). The unlicensed operator exclusion is in direct contravention of the requirements of: (1) the Pennsylvania Motor Vehicle Code; (2) the Pennsylvania Motor Vehicle Financial Responsibility Law; and (3) Pennsylvania public policy. Accordingly, Summary Judgment in favor of Omni is not warranted.

11

**404a**

**(c)**    **Methodology**

In this case, Omni relies upon an exclusion to avoid coverage. In Pennsylvania, policy exclusions must be viewed in light of the goal of remediation for motor vehicle accident victims. Similarly, exclusions are to be narrowly construed. In Swarmer v. Mutual Benefit, 72 A.3d 641 (Pa. Super. 2013), the Superior Court specifically recognized this approach to policy exclusions:

> Where, as here, a defense is based on an exception or exclusion in a policy, the burden is on the insurer to establish its application. Donegal Mut. Ins. Co. v. Baumhammers, 595 Pa. 147, 938 A.2d 286, 290 (Pa. 2007); Prudential Prop. & Cas. Ins. Co. v. Sartno, 588 Pa. 205, 903 A.2d 1170 (Pa. 2006). Exclusionary clauses generally are strictly construed against the insurer and in favor of the insured. See Kropa v. Gateway Ford, 2009 PA Super 91, 974 A.2d 502 (Pa.Super. 2009) (citing Pecorara v. Erie Ins. Co., 408 Pa. Super. 153, 596 A.2d 237 (Pa.Super. 1991); Baumhammers, supra (strictly construing intentional act exclusion).

Id., 72 A.2d at 645. Further, exclusions can no longer be justified on the basis of cost control. See Williams v. GEICO, 32 A.2d 1195 (Pa. 2011). Remediation and compensation to accident victims is now of paramount importance. The unlicensed operator exclusion must be scrutinized using this methodology.

**(d)**    **Unlicensed Operator Exclusion is Unenforceable as to Vehicle Owners**

**(1)**    **Generally**

The unlicensed operator exclusion is invalid and unenforceable as to vehicles owners. Initially, it is violative of the Motor Vehicle Code. Secondly, it is directly contrary to the dictates of the Financial Responsibility Law. Finally, the exclusion is void as against public policy. Therefore, Summary Judgment in favor of Omni is not proper. It should be denied.

12

405a

(2)    **Motor Vehicle Code Mandate**

(i)    **Generally**

Section 1574 of the Motor Vehicle Code imposes *joint and several* liability upon a person who authorizes an unlicensed driver to operate his or her vehicle. 75 Pa.C.S.A. § 1574. Omni contends that it need not defend or indemnify the owner of the vehicle, Shameka Renee Lamar, for the individual liability imposed by statute for the damages caused by the negligence of the unlicensed operator. Omni asserts that it may ignore the mandate of the Pennsylvania Legislature and issue and enforce a policy which excludes coverage for an obligation imposed upon vehicle owners by law. Omni posits several rationales for this position; none of those reasons are legitimate.

(ii)    **Allegations of Complaint**

Initially, Omni contends that the Complaint in the underlying tort action did not assert a claim under § 1574. This assertion is curious, at best. Section 1574(a) states that no person shall permit an unlicensed driver to operate his or her motor vehicle. Section 1574(b) provides that a person doing so shall be *jointly and severally* liable with the driver for any damages caused by unlicensed driver's negligence. The Complaint specifically states that the named insured, Shameka Renee Lamar, was negligent and careless in granting permission to Chris Aaron a/k/a Chris Porter to operate her vehicle when she knew that Chris Aaron a/k/a Chris Porter was an unlicensed driver. See Exhibit "A", Stipulation, ¶ 5. The Complaint specifically asserts a claim against the named insured, Shameka Renee Lamar, for her actions in granting permission to an unlicensed driver to operate her vehicle. Omni contends that this is not a claim under § 1574

13

since § 1574 imposes vicarious liability, alone.  These contentions are without basis in law or in fact.

In this matter, Omni contends that § 1574 imposes liability on a vicarious basis, alone.  In support of this position, Omni relies upon the decision of the Superior Court in Terwilliger v. Kitchen, 781 A.2d 1201 (Pa. Super. 2001).  The statements in Terwilliger are mere dicta.  Further, the panel of the Superior Court ignores the specific language of the statute.  The statute specifically states that an owner of a vehicle who permits an unlicensed operator to use it is *jointly and severally* liable with the operator for damages arising from the negligent operation of the vehicle.  Certainly, the liability imposed by § 1574 is premised upon the actions of the unlicensed operator.  However, the liability imposed by § 1574 is not just vicarious.  Liability is joint and several.  The Statutory Construction Act provides that the words of a statute may not be ignored.  1 Pa.C.S.A. § 1925.  The statute imposes *joint and several* liability.  The Complaint seeks recovery of damages for actions of the owner which directly violate § 1574.  Nonetheless, Omni is attempting to argue that § 1574 is not implicated.  The position of Omni makes no sense legally.[1]

Omni contends that since the Complaint in the tort action does not assert a § 1574 claim, then there can be no legal impediment to excluding coverage for the actions of the operator.  This reasoning is flawed.  Under Omni's rationale, § 1574 does not apply to the actions of the owner.  Therefore, according to Omni's twisted logic, there is no statutory mandate, nor any public policy, which the exclusion violates.  Thus, it must be enforceable.  Such an argument deserves

---

[1]  In addition, Omni cites the decision of Judge Buckwalter in Estate of O'Loughlin v. Hunger, 2009 U.S. Dist. LEXIS 33711 (E.D. Pa. 2009) in further support of its position.  While it is acknowledged that Judge Buckwalter, in a footnote, does favorably cite the misguided holding of Terwillinger, the approval is mere dicta and has nothing to do with the outcome of the case.

little consideration.  It defies common sense.  Omni's clumsy attempts to justify its bad faith actions should be dismissed.

### (iii)    Liability Under § 1574

Omni also contends that even if the language of the Complaint implicates the statutory mandate, the unlicensed driver exclusion does not violate § 1574 of the Vehicle Code.  In making this contention, Omni states that § 1574 "does not specify that an insurer must provide coverage when an insured vehicle is driven by an unlicensed driver."  Certainly, this is true; however, but of what moment is such a pronouncement?  The Pennsylvania Legislature has seen fit to impose direct *joint and several* liability upon an owner of a vehicle who allows an unlicensed operator to operate his or her vehicle which then negligently injures another.  Obviously, the Legislature understood that an insurer could reasonably refuse to provide coverage for the unlicensed operator.  Such a position by an insurer is not unreasonable.  However, the Legislature recognized that insurance coverage could, and should, be available to the owner of the vehicle who allows the unlicensed operation.

Pennsylvania law requires owners of currently registered vehicles to provide financial responsibility, namely, insurance coverage.  Therefore, in order to protect the public at large, the Legislature imposes liability upon the owner of a vehicle in this situation, on a *joint and several* basis.  The goal of the Legislature is protection of the public and compensation of accident victims.  It makes sense that the unlicensed driver may have no coverage.  But the owner who allows the unlicensed operation, and who has coverage, becomes liable for the injuries.  Imposing liability upon the owner of the vehicle without the implicit understanding that the owner has available insurance coverage renders the enactment of § 1574 by the Legislature a meaningless gesture.  The Legislature enacted § 1574 in order to ensure that persons injured by

15

the negligence of an unlicensed driver still have access to redress where the unlicensed operator is using the vehicle with the knowing permission of the owner.   Availability of insurance is a necessary prerequisite of this statutory scheme.

In this case, the plaintiff, Richard Duncan, is not challenging the disclaimer of coverage by Omni to the unlicensed operator.   Instead, the plaintiff, Richard Duncan, is challenging the positon of Omni with respect to the disclaimer of coverage to the named insured owner.   Omni did not understand, or chose to ignore, its coverage obligations to the owner of the vehicle when suit was filed; Omni does not appear to understand, or chose to ignore, its coverage obligations, now.   Pennsylvania law imposes *joint and several* liability upon the owner, Shameka Renee Lamar, in this case.   Omni is required to provide coverage to the owner, Shameka Renee Lamar, in this case.   While Omni may disclaim coverage to the unlicensed operator, it may not do so for the owner.   The exclusion may not be validly applied to the owner of the vehicle.   The unlicensed operator exclusion is void as against public policy in this circumstance.   Richard Duncan is entitled to compensatory and punitive relief.

### (3)    Financial Responsibility Law Mandate

The unlicensed operator exclusion, when applied to the vehicle owner, is further violative of the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. C.S.A. § 101 et seq.   Section 1786(a) Motor Vehicle Financial Responsibility Law requires mandatory liability coverage.   In this regard, 1786 (a) provides:

> **(a)    General rule.**—Every motor vehicle of the type required to be registered under this title which is operated or currently registered shall be covered by financial responsibility.

75 Pa. C.S.A. § 1786(a).   Section 1786(f) of the Motor Vehicle Financial Responsibility Law requires the extension of mandatory liability coverage to permissive drivers.   In this regard, § 1786(f) provides:

16

(f)    **Operation of motor vehicle without required financial responsibility.--**
Any owner of a motor vehicle for which the existence of financial responsibility is
a requirement for its legal operation shall not operate the motor vehicle or permit
it to be operated upon a highway of this Commonwealth without the financial
responsibility required by this chapter.

75 Pa.C.S.A. § 1786(f)    The Pennsylvania Superior Court has held that §1786 implicitly directs

that all permissive users be insured under the owner's policy, stating:

> Admittedly, the MVFRL continues not to include specific language directing that
> all permissive users of a vehicle be insured under the owner's insurance. *However,*
> *we find the changes to § 1786 implicitly direct that such coverage be provided.*

Progressive N. Ins. Co. v. Universal Underwriters Ins. Co., 898 A.2d 1116, 1119 (Pa. Super. 2006),

appeal denied, 909 A.2d 1290 (Pa. 2006) (Emphasis added).  Courts of this circuit have recognized

and applied this required extension of mandatory liability coverage.  In Allstate v. Tokio Marine

& Nichido Fire Ins. Co., 464 F. Supp. 2d 452 (E.D. Pa. 2006) this Court noted:

> . . . the MVFRL requires that all other vehicle owners maintain active financial
> responsibility on their vehicles at all times and that all permissive users of a vehicle
> be insured under the owner's insurance.

Id at 460-461, citing, Progressive N. Ins. Co. v. Universal Underwriters Ins. Co., 898 A.2d 1116

(Pa. Super. 2006).  The unlicensed operator exclusion cannot be applied to vehicle owners, thereby

frustrating that mandate.

The Financial Responsibility Law requires that owners of vehicles provide financial

responsibility.  The Law defines financial responsibility, in pertinent part, as follows:

> The ability to respond in damages for liability on account of accidents arising out
> of the maintenance or use of a motor vehicle in the amount of $15,000 because of
> injury to one person in any one accident . . .

17

410a

75 Pa. C.S.A. § 1702. The unlicensed operator exclusion is, when applied to vehicle owners, violative of the explicit provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. The unlicensed operator exclusion in that situation impermissibly eliminates coverage in violation of the Pennsylvania Motor Vehicle Financial Responsibility Law §§ 1786(a), 1786(f) and 1702. The unlicensed operator exclusion, when applied to vehicle owners, is in conflict with and repugnant to explicit statutory provisions of the Financial Responsibility Law. As such, it is avoid and unenforceable in this case.

### (4)   Public Policy

The unlicensed operator exclusion, when applied to vehicle owners, is also violative of public policy. The public policy in Pennsylvania favors the deterrence of uninsured drivers and compensation of motor vehicle accident victims. It is in the interest of the public good to have insurance coverage available to persons injured in accidents in Pennsylvania. In Allen v. Erie, 534 A.2d 839 (Pa. Super. 1987) the Court stated:

> In passing the [MVFRL], the Legislature was primarily concerned with the rising consumer cost of automobile insurance, created in part by the substantial number of uninsured motorists who contributed nothing to the pool of insurance funds from which claims were paid. The [MVFRL] has the effect of requiring all owners of registered vehicles to share in the burden of insurance before they can obtain the benefits. By denying benefits to a certain class of people -- those not insuring their registered vehicles -- the [MVFRL] encourages the purchase of insurance by all owners who register vehicles which can be legally operated on the highways.

Allen v. Erie, 534 A.2d at 840-41. See also Windrim v. Nationwide, 641 A.2d 1154 (Pa. 1994).[2] The enactments of the Legislature are the embodiment of public policy. Erie v. Baker, 972 A.2d

---

[2]   As noted herein, the goal of cost containment as the overriding purpose of the Law has since been abandoned by the Court. Remediation is of paramount importance.

507, 511 fn. 7. The unlicensed operator exclusion when applied to vehicles owners, violates public policy and cannot be enforced. Omni cannot use the exclusion to illegally restrict coverage. To do so is bad faith.

### (e)    Omni Acted in Bad Faith

In the case at bar, Omni also contends that it has not acted in bad faith. Essentially, Omni asserts that since it was merely attempting to enforce an exclusion in its policy, it cannot be held to have acted in bad faith. Under Omni's rationale, any attempt to enforce a written exclusion, however outrageous, is a good faith effort. Under Omni's rationale, an insurer could never be found to be in bad faith regardless of the extreme nature of its exclusions. In this case, Omni's wanton and reckless disregard of the rights of its insured, in denying coverage, warrant the imposition of bad faith damages.

It cannot reasonably be asserted that the use of the unlicensed operator exclusion to deny coverage to a licensed owner is good faith. Omni contends that since the exclusion is in its policy, any effort to enforce it is good faith. Consider the following analogy. At one time, various rental car companies included a "violation of law" exclusion in their rental agreements. Ignoring the rules of the road is a violation of law. There is no question that it is against public policy for a rental company or an insurer to exclude coverage for violations of the Motor Vehicle Code. An insurance policy or rental agreement containing such an exclusion would necessarily be violative of public policy. The Motor Vehicle Law requires that all operators of vehicles obey traffic signals and stop signs. A person who ignores a red traffic signal or stop sign violate Pennsylvania law. If a policy of insurance excluded coverage for persons who violated Pennsylvania law then, according to Omni, no coverage would exist for the person running the red light and causing an accident. Further, according to Omni, any such denial of coverage

19

would be in good faith. According to Omni, the mere inclusion of exclusionary language in the policy, no matter how outrageous, renders the attempted enforcement of the exclusion a good faith effort. Such bizarre reasoning should not be entertained. The application of the exclusion to the vehicle owner, Shameka Renee Lamar, is bad faith.

Section 1574 of the Motor Vehicle Code is well established. The mandate of public policy is clear. Despite the specific language of Pennsylvania law, Omni specifically wrote and seeks to enforce a policy which excludes coverage where Pennsylvania law specifically imposes liability. The actions of Omni are no different than seeking to enforce a "violation of law" exclusion. Omni is recklessly disclaiming coverage, in direct violation of Pennsylvania law, to the detriment of its insured. Omni is wantonly overreaching. If Omni sought only to apply the exclusion to the actions of the unlicensed operator, then arguably its actions would be valid and enforceable. However, that is not the case here. Omni is seeking to apply the exclusion to the actions of the owner. It is the public policy of Pennsylvania to have only licensed operators on its highways. For this reason, the Legislature imposes *joint and several* liability upon owners who allow unlicensed drivers who negligently operate their vehicles. The Pennsylvania Legislature directed that owners who permit unlicensed drivers to operate vehicles are *jointly and severally* liable for the damages caused by the negligent unlicensed operation of those vehicles. The mandate of the Pennsylvania Legislature is clear. Omni is grossly overreaching an attempt to expand the unlicensed driver exclusion to situations where the exclusion has no legitimate application. The application of the unlicensed operator exclusion to the owner, rather than the operator, of the vehicle is bad faith. As such, the plaintiff, Richard Duncan, is entitled to Partial Summary Judgment on the bad faith issues.[3]

---

[3]  At a minimum, questions of fact exist with respect to bad faith. If this is the situation, then discovery is needed with respect to the reasons and purpose of Omni in expanding the exclusion beyond its normal and expected

## CONCLUSION

In the present case, the defendant, Omni, has disclaimed coverage in a blatant attempt to improve its own profitability while recklessly disregarding the rights of its own named insured and motor vehicle accident victims. In so doing, Omni is attempting to divert attention away from the real issue in this case, namely the provision of insurance coverage to the owner, not the unlicensed operator of the vehicle. In the present matter, Omni is seeking to expand the application of the unlicensed operator exclusion to a degree never contemplated by the Legislature. The Pennsylvania Legislature enacted § 1575 which specifically imposes *joint and several* liability for the negligence of an unlicensed operator where the owner of a vehicle allows an unlicensed driver to operate his or her vehicle. The intent of the statutory enactment is clear. The Legislature and public policy favor the operation of vehicles on the highways in the Commonwealth by licensed operators. These same considerations favor remediation and compensation to persons who suffer damage as a result of the actions of a negligent, unlicensed operator. By imposing joint and several liability on the owners of such vehicles, which are required to be insured, the Legislature has implicitly recognized that the owner's exposure is to be insured. Allowing insurers, such as Omni, to disclaim coverage to the vehicle owner undermines the purpose and intent of § 1574 as well as the public policy of the Commonwealth. The application of the exclusion to the vehicle owner wantonly and recklessly disregards the owner's rights. Omni is required to provide coverage to the vehicle owner, Shameka Renee Lamar. The entire Arbitration Award should be paid. Further, Omni is responsible for payment

---

application. Discovery may very well reveal that Omni is attempting to enforce the exclusion merely to enhance its own profitability, at the expense of its insureds.

of extra-contractual bad faith damages for its wanton, willful and reckless disregard of Pennsylvania law and the rights of its insured.[4]   Therefore, Partial Summary Judgment is respectfully requested.

Respectfully Submitted,

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY: _____JGH4113_____

JAMES C. HAGGERTY, ESQUIRE
SUZANNE TIGHE, ESQUIRE
PA Attorney I.D. # 30003; 80179
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6600
FAX (215) 665-8197

KELLY & HERRON, P.C.

BY:   /s/ Kevin P. Kelly

KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102

Attorneys for Plaintiff

---

[4]   See note 2, supra.

22

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                        :
1300 Pennsylvania Avenue              :
Apartment H-3                         :
Oreland, PA  19075                    :  No.16-1489
                                      :
              v.                      :
                                      :
OMNI INSURANCE COMPANY                :
2018 Powers Ferry Road, Suite 400     :
Atlanta, GA  30339                    :

## CERTIFICATION OF SERVICE

I, James C. Haggerty, Esquire, hereby certify that a true and correct copy of Answer to

Motion and accompanying Memorandum have been served via electronic delivery upon the

following persons:

Bruce Morrison, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA  19103

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:  JCH/4143
     JAMES C. HAGGERTY, ESQUIRE
     PA Attorney I.D. # 30003
     1835 Market Street, Suite 2700
     Philadelphia, PA  19103
     (267) 350-6600
     FAX (215) 665-8197
     Attorney for Plaintiff

DATE:  7/28/16

23

EXHIBIT A

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                :
1300 Pennsylvania Avenue     :
Apartment H-3                 :
Oreland, PA  19075          :  No.16-1489
                               :
         v.                :
                               :
OMNI INSURANCE COMPANY  :
2018 Powers Ferry Road, Suite 400 :
Atlanta, GA  30339          :

## STIPULATION

1.    The plaintiff, Richard Duncan, is an adult individual resident and citizen of the

Commonwealth of Pennsylvania residing at 319 Whites Road, Apartment D-4, Lansdale,

Pennsylvania 19446.

2.    The defendant, Omni Insurance Company ("Omni"), is a corporation organized

and existing under the laws of the State of Georgia with its principal place of business located in

Atlanta, Georgia, being duly authorized to and conducting business in the Commonwealth of

Pennsylvania.

3.    On October 8, 2012 the plaintiff, Richard Duncan, was a passenger on board the

SEPTA Route "47" bus when it was struck by a motor titled in the name of Shameka Renee

Lamar operated by Chris Aaron a/k/a Chris Porter at or near the intersection of 8th and

Dickenson Streets in Philadelphia, Pennsylvania.

4.    The plaintiff, Richard Duncan, claims to have sustained personal injury in the

collision.

1

5.     At the time of the accident there existed a policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar. A true and correct copy of the Policy of Insurance is attached hereto as Exhibit "1".

6.     On September 1, 2012, Shameka Renee Lamar completed an Application for Private Passenger Auto Insurance seeking to purchase a policy of insurance covering a 2003 Chevrolet Avalanche, which is the vehicle which Chris Aaron a/k/a Chris Porter was driving at the time of the subject accident with the SEPTA bus. A true and correct copy of the Application is attached hereto as Exhibit "2".

7.     The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar listed the vehicle operated by Chris Aaron a/k/a Chris Porter as an insured vehicle.

8.     Chris Aaron a/k/a Chris Porter was not a licensed operator in Pennsylvania at the time of the subject accident or at any other time material to this action.

9.     The policy of insurance issued by the defendant, Omni, to Shameka Renee Lamar provided:

**PART A – LIABILTIY COVERAGE**

B.     Insured as used in this Part means:

    3.     A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of the loss and must not be a regular operator of your covered auto.

           *                     *                     *

**EXCLUSIONS**

A.     We do not provide Liability Coverage for any insured.

    16.     For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

2

      c.    Does not have a valid driver's license; or

      d.    Has a suspended or rescinded driver's license.

See Exhibit "1", pp. 24-26.

    10.   Following the motor vehicle accident, the plaintiff, Richard Duncan, made a claim upon Chris Aaron, Shameka Renee Lamar and the defendant, Omni, seeking recovery of damages in tort.

    11.   By letter dated July 1, 2014 counsel for the plaintiff, Richard Duncan, wrote to the defendant, Omni, providing information regarding liability and damages with respect to Duncan's claims arising from the October 8, 2012 collision. A true and correct copy of the July 1, 2014 letter from counsel for the plaintiff, Richard Duncan, is attached hereto and marked Exhibit "3".

    12.   By letter dated July 8, 2014 the defendant, Omni, wrote to counsel for the plaintiff, Richard Duncan, denying and disclaiming all coverage for the loss on the basis that the vehicle titled in the name of Shameka Renee Lamar and insured by the defendant, Omni, was being operated by an unlicensed driver at the time of the collision. A true and correct copy of the July 8, 2014 letter from Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, is attached hereto and marked Exhibit "4".

    13.   In the letter of July 8, 2014, Andrew Funk, Bodily Injury Supervisor of the defendant, Omni, advised counsel for the plaintiff, Richard Duncan:

> Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.
>
> The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at

3

**420a**

the time of the loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

See Exhibit "4".

14.     The plaintiff, Richard Duncan, thereafter instituted suit against Chris Aaron and

Shameka Renee Lamar in the Court of Common Pleas of Philadelphia County (Richard Duncan

v. Chris Aaron and Shameka Renee Lamar, September Term, 2014, No. 0479).  A true and

correct copy of the Complaint is attached hereto and marked Exhibit "5".

15.     In the Complaint in the underlying tort action, the plaintiff, Richard Duncan,

specifically asserted a claim against Shameka Renee Lamar for recovery of damages as a result

of allowing an unlicensed driver to operate her vehicle

16.     In the Complaint, the plaintiff, Richard Duncan, specifically averred:

13. The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shameka Renee Lamar, which consisted of the following:

a)      failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;
b)      failing to maintain the vehicle in proper working order;
c)      negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

See Exhibit "5", ¶ 13.

17.     Upon receipt of Mr. Duncan's lawsuit against Ms. Lamar and Chris Aaron, Omni

sent letters to Ms. Lamar and the  operator, Chris Aaron a/k/a Chris Porter, on September 16,

4

**421a**

2014 declining coverage for the claim and advising them, inter alia, to retain their own attorneys at their expense, as Omni would not be providing them with an attorney. True and correct copies of those declination letters are attached hereto as Exhibits "6" and "7".

     18.    The defendant, Omni, did not provide a defense to Chris Aaron or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County.

     19.    The defendant, Omni, did not indemnify Chris Aaron or Shameka Renee Lamar in the action instituted by the plaintiff, Richard Duncan, in the Court of Common of Philadelphia County.

     20.    The plaintiff, Richard Duncan, proceeded to arbitration in the underlying tort action in the Court of Common Pleas of Philadelphia County.

     21.    An Arbitration Hearing was conducted in the underlying tort action in the Court of Common Pleas of Philadelphia County on June 3, 2015.

     22.    Following the Arbitration Hearing in the underlying tort action, the arbitrators entered a Report and Award of Arbitrators in favor of the plaintiff, Richard Duncan, and against Chris Aaron and Shameka Renee Lamar. A true and correct copy of the Report and Award of Arbitrators is attached hereto as Exhibit "8".

     23.    The Report and Award of Arbitrators entered in the underlying tort action provides:

        Judgment for Plaintiff and against Defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 ($13,000.00 for medicals and $15,000.00 for pain and suffering).

See Exhibit "8".

24.     The plaintiff, Richard Duncan, thereafter entered Judgment on the Arbitration Award against Chris Aaron and Shameka Renee Lamar.  A true and correct copy of the Praecipe to Enter Judgment is attached hereto and marked Exhibit "9".

25.     The defendant, Omni, has not satisfied the Judgment.

6

**423a**

36.    The plaintiff, Richard Duncan, thereafter obtained from Shameka Renee Lamar an Assignment of all claims and rights against the defendant, Omni.  A true and correct copy of the Assignment is attached hereto and marked Exhibit "10".

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:    JCH4113
       JAMES C. HAGGERTY, ESQUIRE
       PA Attorney I.D. # 30003
       1835 Market Street, Suite 2700
       Philadelphia, PA  19103
       (267) 350-6600
       FAX (215) 665-8197

KELLY & HERRON, P.C.

BY:    /s/ Kevin P. Kelly
       KEVIN P. KELLY, Esquire
       PA Attorney I.D. # 28306
       1500 Market Street
       Centre Square – West Tower
       Suite W-3110
       Philadelphia, PA  19102

Attorneys for Plaintiff

MARSHALL, DENNEHEY, WARNER, COLEMAN
& GOGGIN

BY:    /s/ R. Bruce Morrison, Esquire
       R. BRUCE MORRISON, ESQUIRE
       2000 Market Street, Suite 2300
       Philadelphia, PA  19103

Attorneys for Defendant

7

**424a**

EXHIBIT "1"



OMNI INSURANCE COMPANY
P.O. BOX 105019
ATLANTA, GA 30348-5019
PHONE: 800-727-6664 / FAX: 800-680-1904

### POLICY CERTIFICATION

I, Scott Mascioli, Claims Litigation Manager for Omni Insurance Company, do hereby certify that the attached declarations page and Pennsylvania Motor Vehicle Policy are true and correct copies of the declarations page and policy in effect for Shameka Renee Lamar, policy number 4140872, on October 8, 2012.

Scott Mascioli
Claims Litigation Manager
Omni Insurance Company

STATE OF PENNSYLVANIA}

COUNTY OF MONTGOMERY}

On the __1 st__ day of __April__, 2016 before me personally appeared __SCOTT MASCIOLI__ to be known to be the person(s) named herein and who executed the above Certification and __he__ acknowledged to me that __he__ voluntarily executed the same.

My term expires_____

NOTARY PUBLIC

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
ANDREW FUNK, Notary Public
Whitemarsh Township, Montgomery County
My Commission Expires May 11, 2019

426a

 **OMNI INSURANCE COMPANY**
P.O. BOX 105440
ATLANTA, GA 30348-5440
(866) 300-6433

**DECLARATIONS**

**INSURED NAME AND ADDRESS**
SHAMEKA RENEE LAMAR
2545 W SILVER ST
PHILADELPHIA, PA 19132

**PRODUCER**
OREGON INSTANT AUTO (1000053279)
2655 S 6TH ST
PHILADELPHIA, PA 19148

PRIVATE PASSENGER AUTO
POLICY NUMBER: 4140872
DECPAGE ID: 1

**POLICY PERIOD:**
September 1, 2012 12:01 A.M. to September 1, 2013 12:01 A.M.
DECPAGE EFFECTIVE:
September 1, 2012 12:01 A.M.

IF YOU BUY COLLISION COVERAGE, YOUR POLICY PROVIDES COLLISION COVERAGE ON RENTAL VEHICLES, PLEASE REFER TO THE PORTION OF YOUR POLICY PROVIDING COLLISION COVERAGE FOR ANY LIMITATIONS IN COVERAGE THAT MAY APPLY.

| VEHICLE | DRIVER | DISCOUNTS/SURCHARGES |
|---|---|---|
| Vehicle: 1 | SHAMEKA RENEE LAMAR | Double Airbag |
| Make: 2003 Chevrolet | Birthdate: 08/17/1980 | |
| Model: AVALANCHE 1500 BASE/Z66/Z71 | Marital Status: Single with | |
| VIN#: 3GNEC13T13G199409 | custody of kids | |
| Use: Pleasure Use | License: PA 25387713 | |
| BI/MED/PhysDam Symbol: 315/495/13 | Points: 3 | |
| Territory: 1     Tier: K | Class: SF32 | |

| COVERAGE (Premiums for 12 months) | LIMIT | PREMIUM VEH 1 | PREMIUM VEH 2 | PREMIUM VEH 3 | PREMIUM VEH 4 |
|---|---|---|---|---|---|
| Premium is based on your selection of Limited Tort and the following: | | | | | |
| Bodily Injury Liability | $15,000 per person $30,000 per occurrence | $ 696.24 | | | |
| Medical Payments | $5,000 per person | $ 392.12 | | | |
| Property Damage Liability | $5,000 per occurrence | $ 376.30 | | | |
| Uninsured Motorist BI    -    REJECTED | | | | | |
| Underinsured Motorist BI    -    REJECTED | | | | | |
| Total Premium for each vehicle: | | $ 1,464.66 | | | |
| Total Policy Premium | | | | | $ 1,464.66 |

Your premium includes $86.3 due to violations, accidents, or other Surcharges applicable.
Policy Fee                    $15.00

**YOUR POLICY DOES NOT PROVIDE PROTECTION AGAINST DAMAGES CAUSED BY UNINSURED MOTORISTS OR UNDERINSURED MOTORISTS.**
Only the insurance coverages indicated by a specific limit of liability and/or a premium amount are provided.

**ACCIDENTS/VIOLATION POINTS**

| Name | Date | Description | Surcharge Points |
|---|---|---|---|
| SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold | 3 |

**FORMS AND ENDORSEMENTS**

1037 (06/10) - Pennsylvania Policy Jacket
1037-1 (06/10) - Pennsylvania Amendatory Endorsement
OMNI PA UMREJ - Uninsured Motorist Protection Rejection
OMNI PA UIMREJ - Underinsured Motorist Protection Rejection

427a

### Disclosure of Use of Consumer Reports

In order to determine your eligibility and your premium for insurance products, American Independent Companies, Inc. obtains reports provided by independent consumer reporting agencies. These reports are used to verify and supplement information that you may provide to us. Examples of the type of consumer reports we may order include the following:

**Motor Vehicle / Driving Record Reports**
A Motor Vehicle Report (MVR) is obtained from your state Motor Vehicle Department or from an independent consumer reporting agency that relies on such records. This report reflects the driving record information they have on file for you or other operators under your policy, including accidents and motor vehicle violations.

**Insurance Claim Reports**
Insurance claim reports, such as C.L.U.E. (Comprehensive Loss Underwriting Exchange) and others, are provided by independent consumer reporting agencies that collect claims information from many insurance companies.

**Insurance Scores**
Insurance Scores are calculated for us using an analytical scoring model that objectively measures the relative likelihood of future insurance losses based on credit history files maintained by independent consumer reporting agencies.

The above consumer reports may be ordered in connection with the issuance, update, renewal or reinstatement of your policy and when seeking comparison quotes from the companies we represent.

**THIS NOTICE IS PROVIDED IN ACCORDANCE WITH THE FAIR CREDIT REPORTING ACT**

### Notice of Adverse Action

American Independent Companies, Inc uses reports obtained from consumer reporting agencies to determine insurance premium. The types of reports we use are related to driving record (for auto policies), insurance claims (loss) history, and credit history. You are receiving this notice because your premium is higher than it would have been if your consumer report(s) had been more favorable. This decision is based upon information relating to one or more of the consumer reports listed below.

Please be advised that a consumer reporting agency did not make decisions concerning your premium and will be unable to provide you with specific reasons for your premium. If, however, you believe your consumer report information is incorrect, under the Fair Credit Reporting Act, you have the right to dispute the accuracy and/or completeness of any consumer report information directly with a consumer reporting agency.

Under the Fair Credit Reporting Act, you also have a right to obtain a free copy of your consumer report(s), and to obtain without charge all information in your file(s) at the consumer reporting agency or agencies, by making a request to the consumer reporting agency or agencies within sixty (60) days of receipt of this notice.

For driving record reports and insurance claims (loss) history reports, contact: LexisNexis Consumer Center, P.O. Box 105108, Atlanta, GA 30348-5108, or call toll free at 1-800-456-6004 (office located at 2885 Breckinridge Blvd, Suite 200, Duluth, GA 30096). If you wish to access the LexisNexis website, you can use the following address: http://www.consumerdisclosure.com

For credit reports, contact: LexisNexis Consumer Center, P.O. Box 105108, Atlanta, GA 30348-5108, or call toll free at 1-800-456-6004 (office located at 2885 Breckinridge Blvd. Suite 200, Duluth, GA 30096). Credit report information is used to calculate an insurance score, which is a measure of your loss potential. If you wish to access the LexisNexis website, you can use the following address: http://www.consumerdisclosure.com.

The insurance company listed on your policy declarations or with your insurance quotation material took this action by issuing or offering you a policy at a higher premium. That company and American Independent Companies, Inc. took this action in connection with determining your premium. If you would like more detailed information regarding your insurance premium, write to us at Omni Insurance Company Consumer Affairs, P.O. Box 105021, Atlanta, GA 30348.

A-100.1 (02/10)



**OMNI INSURANCE COMPANY**
P.O. BOX 105440
ATLANTA, GA 30348-5440
(866) 300-6433

**DECLARATIONS**

PRIVATE PASSENGER AUTO
POLICY NUMBER: 4140872
DECPAGE ID: 1

POLICY PERIOD:
September 1, 2012 12:01 A.M. to September 1, 2013 12:01 A.M.
DECPAGE EFFECTIVE:
September 1, 2012 12:01 A.M.

FORMS AND ENDORSEMENTS

A-100.1 (02/10) - Adverse Underwriting Decision Notice

MANDATED COVERAGE NOTICE

The laws of the Commonwealth of Pennsylvania, as enacted by the general assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages. Premiums for basic mandatory coverage at the **LIMITED TORT** option

Bodily Injury:  $15,000/30,000 - $696.24
Property Damage:  $5,000 - $376.30
Medical Benefits: $5,000 - $392.12

_Authorized Signature_

OMNI PA DEC (08/08)

COPY

THIS IS A TRUE AND CERTIFIED COPY OF THE ORIGINAL    10/29/14
CUSTOMER SERVICE MANAGER    DATE
NOTARY PUBLIC    DATE



Form 1037

Pennsylvania (06/10)

**PENNSYLVANIA**

**Omni Insurance Company**

- • •

**Personal Auto Policy**

*Omni* Insurance Group
ATLANTA, GEORGIA

## LIMITED TORT ALTERNATIVE INFORMATION NOTICE

Each person who elects the limited tort alternative remains eligible to seek compensation for economic loss sustained in a motor vehicle accident as the consequence of the fault of another person pursuant to applicable tort law. Unless the injury sustained is a serious injury, each person who is bound by the limited tort election shall be precluded from maintaining an action for noneconomic loss except that:

A. An individual otherwise bound by the limited tort election who sustains damages in a motor vehicle accident as the consequence of the fault of another person may recover damages as if the individual damaged had elected the full tort alternative whenever the person at fault:

1. is convicted, or accepts Accelerated Rehabilitation Disposition for driving under the influence of alcohol or a controlled substance in that accident;

2. is operating a motor vehicle registered in another state;

3. intends to injure himself or another person, provided that an individual does not intentionally injure himself or another person merely because his act or failure to act is intentional or done with his realization that it creates a grave risk of causing injury if the act or omission causing the injury is for the purpose of averting bodily harm to himself or another person; or

4. Has not maintained financial responsibility as required by the Pennsylvania Motor Vehicle Financial Responsibility Law;

provided that nothing in paragraphs 1. through 4. shall affect the limitation of a person, precluded from maintaining an action for noneconomic damages under

i

# PERSONAL AUTO POLICY
## COVER SHEET –
## PENNSYLVANIA

Your personal auto insurance policy is a legal contract between you and your insurance company. Your insurance application and the policy forms indicated on your declarations page constitute your insurance policy.

**READ YOUR POLICY CAREFULLY.** This cover sheet provides only a brief outline of some of the important features of your policy. This is not the insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. **IT IS THEREFORE IMPORTANT THAT YOU READ YOUR POLICY CAREFULLY.**

The following is an index of the major provisions of your policy. Page numbers refer to the location of these provisions in the policy. Amendatory endorsements may be attached to your policy to modify these provisions or provide you with additional coverage(s).

## INDEX
## MAJOR POLICY PROVISIONS

YOUR DUTIES AFTER AN
ACCIDENT OR LOSS ..................................1

AGREEMENT ..................................................2

DEFINITIONS .................................................2

PART A – LIABILITY COVERAGE ...............8
    Insuring Agreement
    Supplementary Payments
    Exclusions
    Limit of Liability
    Out of State Coverage
    Financial Responsibility
    Other Insurance

ii

iii

(PP 03 38 12 98) Copyright, Insurance Services Office, Inc., 1998

B. An individual otherwise bound by the limited tort election shall retain full tort rights with respect to claims against a person in the business of designing, manufacturing, repairing, servicing, or otherwise maintaining motor vehicles arising out of a defect in such motor vehicle which is caused by or not corrected by an act or omission in the course of such business, other than a defect in a motor vehicle which is operated by such business.

C. An individual otherwise bound by the limited tort election shall retain full tort rights if injured while an occupant of a motor vehicle other than a private passenger motor vehicle.

the limited tort alternative, to recover noneconomic damages under Uninsured Motorists Coverage or Underinsured Motorists Coverage.

PART B – FIRST PARTY BENEFITS
COVERAGE / EXTRAORDINARY MEDICAL
BENEFITS COVERAGE...............................16
   Definitions

SECTION B.1 – FIRST PARTY BENEFITS
COVERAGE.............................................17
   Insuring Agreement
   — Basic First Party Benefit
   — Added First Party Benefits
   — Combination First Party Benefits
   Exclusions
   Limit of Liability
   Priorities of Policies
   Non-Duplication of Benefits
   Part E — Our Right To Recover Payment

SECTION B.2 – EXTRAORDINARY
MEDICAL BENEFITS COVERAGE ............23
   Limited Benefits
   Warning
   Insuring Agreement
   Exclusions
   Limit of Liability

PART C – UNINSURED / UNDERINSURED
MOTORISTS COVERAGE............................26

SECTION C.1 UNINSURED MOTORISTS
COVERAGE (NON-STACKED)..................26
   Insuring Agreement
   Exclusions
   Limit of Liability
   Other Insurance
   Arbitration

SECTION C.2 UNINSURED MOTORISTS
COVERAGE (STACKED) ..........................33
   Insuring Agreement
   Exclusions
   Limit of Liability
   Other Insurance
   Arbitration

SECTION C.3 UNINSURED MOTORISTS
COVERAGE (NON-STACKED) ..................40
   Insuring Agreement
   Exclusions
   Limit of Liability
   Other Insurance
   Arbitration

SECTION C.4 UNDERINSURED
MOTORISTS COVERAGE (STACKED) .......47
   Insuring Agreement
   Exclusions
   Limit of Liability
   Other Insurance
   Arbitration

PART D – COVERAGE FOR DAMAGE TO
YOUR AUTO..............................................53
   Insuring Agreement
   Limited Transportation Expenses
   Exclusions
   Limit of Liability
   Payment of Loss
   Car Storage Coverage
   Loss Payable Clause
   No Benefit to Bailee
   Other Sources of Recovery
   Appraisal

PART E – GENERAL PROVISIONS ...........62
   Bankruptcy
   Changes
   Fraud
   Legal Action Against Us
   Our Right to Recover Payment
   — Part A and Part D
   — Part C
   Payment of Premium
   Policy Period and Territory
   Termination
   Reinstatement of Policy With a Lapse
      in Coverage
   Structured Settlements
   Transfer of Your Interest in This Policy
   Two or More Auto Policies

iv

v

Our Right to Re-compute Premium Notice
Constitutionality Clause
Pennsylvania Notice

## ENDORSEMENTS

(Only those listed in the Declarations are effective on your policy)

1037-1  PENNSYLVANIA AMENDATORY ENDORSEMENT ...........................73

1037-2  RENTAL REIMBURSEMENT / TRANSPORTATION EXPENSES .............74

1037-3  TOWING AND LABOR COSTS COVERAGE ...........................75

1037-6  CUSTOMIZING PARTS OR EQUIPMENT COVERAGE ....................76

1037-7  NAMED NON-OWNER COVERAGE ..............79
  Definitions
  Liability Coverage
  Uninsured Motorists Coverage
  Underinsured Motorists Coverage

1037-8  ADDITIONAL INSURED - LESSOR ..........82

1037-9  NAMED DRIVER EXCLUSION ENDORSEMENT ......................83

This list is not inclusive. There may be other endorsements attached to your policy.

READ YOUR POLICY AND ALL ENDORSEMENTS TO YOUR POLICY CAREFULLY.

Form 1037        Pennsylvania (06/10)

vi.

# YOUR DUTIES AFTER AN ACCIDENT OR LOSS

We have no duty to provide coverage under this policy if the failure to comply with any of the following duties is prejudicial to us:

A. We must be notified within 30 days, or as soon as practicable, of how, when and where the accident or loss happened. Notice should also include the names and addresses of any injured persons and of any witnesses.

B. A person seeking any coverage must:

1. Cooperate with us in the investigation, settlement or defense of any claim or suit.

2. Promptly send us copies of any notices or legal papers received in connection with the accident or loss.

3. Submit, as often as we reasonably require to medical exams by physicians we select. We will pay for these exams.

4. Allow us to take signed or recorded statements, including statements under oath outside the presence of other interested persons or parties, and answer all reasonable questions we may ask, when and as often as we may reasonably require.

5. Authorize us to obtain:
   a. Medical reports; and
   b. Other pertinent records.

6. Submit a proof of loss when required by us.

7. Take reasonable steps after loss to protect your covered auto or any non-owned auto and their equipment from further loss. We will pay reasonable expenses incurred to do this.

8. Promptly notify the police if your covered auto or any non-owned auto is stolen or vandalized.

9. Permit us to inspect and appraise the damaged property before its repair or disposal.

1

433a

C. A person seeking Extraordinary Medical Benefits Coverage under Section B.2. of Part B must submit proof, when required by us, that at least $100,000 of medical expenses has been incurred as the result of any one accident by an Insured.

D. A person seeking Uninsured Motorists Coverage or Underinsured Motorists Coverage must also notify the police within 24 hours, or as soon as practicable, if a hit-and-run driver is involved.

E. A person seeking Underinsured Motorists Coverage must also promptly:
1. Send us copies of the legal papers if a suit is brought; and
2. Notify us in writing of a tentative settlement between the Insured and the insurer of the underinsured motor vehicle and allow us 30 days to advance payment to that Insured in an amount equal to the tentative settlement to preserve our rights against the insurer, owner or operator of such underinsured motor vehicle.

## PERSONAL AUTO POLICY AGREEMENT

Your written application, the Declarations page and this policy constitute the entire agreement. We will insure you for the coverages and limits of liability for which a premium is shown on the Declarations page of this policy, in return for payment of the premium and subject to all the terms of this policy, we agree with you as follows:

## DEFINITIONS

A. Throughout this policy, you and your refer to:
1. The named Insured shown in the Declarations; and
2. The spouse if a resident of the same household.

2

If the spouse ceases to be a resident of the same household during the policy period or prior to the inception of this policy, the spouse will be considered you and your under this policy but only until the earlier of:
a. The end of 30 days following the spouse's change of residency;
b. The effective date of another policy listing the spouse as a named Insured; or
c. The end of the policy period.

B. We, us and our refer to the Company providing this insurance.
Other words and phrases are defined. They are in boldface when used.

C. Accident means a sudden, unexpected, and unintended occurrence. All bodily injury and property damage arising out of continuous or repeated exposure to substantially the same general conditions shall be considered as arising out of one accident.

D. Actual Cash Value means the fair and reasonable market value at the time of the loss based on vehicle mileage, age, condition, original optional equipment, and comparable vehicles available for sale within a reasonable geographic radius as documented in an electronic database of publications and dealerships, less depreciation and/or betterment.

E. After-market Parts means replacement auto parts not made by the original auto manufacturer of the auto or by a manufacturer authorized by the original auto manufacturer.

F. Auto means a land motor vehicle with at least 4 wheels including:
1. A private passenger automobile; or
2. A private passenger pickup or private passenger van, for which no other insurance policy provides coverage, that:
a. Has a Gross Vehicle Weight Rating of 9,000 lbs. or less;

3

b. Is designed for use mainly on public roads; and

c. Is not used for the delivery or transportation of persons or goods and materials unless use is:
   i. Incidental to your business of installing, maintaining or repairing furnishings or equipment; or
   ii. For farming or ranching.

G. Betterment means an improvement that adds value to an item.

H. Bodily injury means bodily harm, sickness or disease, including death that results from bodily harm, sickness, or disease.

I. Business includes trade, profession or occupation.

J. Declarations Page or Declarations mean the document you receive from us listing:
   1. The types of coverages you have selected;
   2. The limit and/or deductible for each coverage;
   3. The cost for each coverage;
   4. The specified autos covered by this policy;
   5. The types of coverage to each such auto; and
   6. Other information applicable to this policy.

K. Depreciation means a decrease or loss of value caused by physical, technological, and/or location deterioration.

L. Diminution of Value means the difference in the actual cash value of your covered auto immediately before and after loss.

M. Family member means a person related to you by blood, marriage or adoption who is a resident of your household even if temporarily living elsewhere. This includes a ward or foster child.

N. Insured Resident means a person living in your household, other than you or a family member. Any insured resident must be specifically identified on the

4

application or endorsed on the policy prior to a loss. You have fourteen (14) calendar days to report any new insured resident.

O. Noneconomic loss means pain and suffering and other nonmonetary detriment.

P. Non-Owned Auto means any auto that is not owned by you, an insured resident, or a family member.

Q. Occupying means:
   1. In;
   2. Upon; or
   3. Getting in, on, out or off.

R. Own or owned, with respect to an auto, means:
   1. Holding legal title to the auto;
   2. Having legal possession of the auto that is subject to a written security agreement with an original term of six (6) months or more; or
   3. Having legal possession of the auto that is leased to that person under a written agreement for a continuous period of six (6) months or more.

S. Owner means any person who, with respect to an auto:
   1. Holds legal title to the auto;
   2. Has legal possession of the auto that is leased to that person under a written agreement for a continuous period of six (6) months or more; or
   3. Has legal possession of the auto that is subject to a written security agreement with an original term of six (6) months or more.

T. Property damage means physical injury to, destruction of or loss of use of tangible property.

U. Serious injury means an injury resulting in death, serious impairment of body function or permanent serious disfigurement.

V. Trailer means a vehicle designed to be pulled by an auto. It also means a farm wagon or farm implement while towed by an auto. A trailer does not include a

5

mobile home, travel trailer, or any vehicle that can be lived in or is self-propelled.

**W. Your covered auto means:**

1. Any auto that you or an insured resident own and is shown in the Declarations unless you have asked us to delete that vehicle from the policy.

2. An additional auto.

3. A replacement auto.

4. Any trailer you own.

5. Any auto or trailer you do not own while used as a temporary substitute for any other vehicle described in this definition which is out of normal use because of its:

   a. Breakdown;

   b. Repair;

   c. Servicing;

   d. Loss; or

   e. Destruction.

This provision (W.5) does not apply to Coverage For Damage To Your Auto.

**X. Additional auto** means an auto you acquire during the policy period shown on the Declarations page, if:

1. We insure all autos you own or lease for a term of at least 6 months;

2. No other insurance policy provides coverage for that auto;

3. You pay us any additional premium required when due, and

4. The additional auto is an acceptable risk to us under our underwriting guidelines.

If we provide coverage for an additional auto, we will provide the broadest coverage we now provide for any auto shown in the Declarations for a period of fourteen (14) days after you become the owner. The additional auto will include physical damage coverage under Part D only if the Declarations indicate that Part D applies to any auto on the policy. We will not provide coverage after this fourteen

6

(14) day period, unless within this period you ask us to insure the additional auto. If you ask us to insure an additional auto after the fourteen (14) day period, any coverage we provide for an additional auto will begin at the time your request coverage. If you request coverage not already provided for any auto shown in the Declarations for the additional auto or increase your limits, these changes to your policy will not become effective until after you ask us to add the coverage or increase your limits.

**Y. Replacement Auto** means an auto you become the owner of if:

1. You acquire the auto during the policy period shown on the Declarations page;

2. The auto that you acquire replaces one shown on the Declarations page;

3. No other insurance policy provides coverage for that auto;

4. You pay us any additional premium required when due; and

5. The replacement auto is an acceptable risk to us under our underwriting guidelines.

If the auto that you acquire replaces one shown on the Declarations page, it will have the same coverage as the auto it replaces. You must ask us to insure a replacement auto within fourteen (14) days after you become the owner if you want to continue coverage under Part D. If you ask us to insure a replacement auto after this fourteen (14) day period, any coverage we provide under Part D for a replacement auto will begin at the time your request coverage. If you request coverage not already provided for any auto shown in the Declarations for the replacement auto or increase your limits, it will not become effective until after you ask us to add the coverage or increase your limits.

7

Z. Throughout the policy, minimum limits refers to the following limits of liability as required by Pennsylvania law, to be provided under a policy of automobile liability insurance:

1. $15,000 for each person, subject to $30,000 for each accident, with respect to bodily injury; and

2. $5,000 for each accident with respect to property damage.

## PART A — LIABILITY COVERAGE

### INSURING AGREEMENT

A. We will pay compensatory damages for bodily injury or property damage for which any insured becomes legally responsible because of an auto accident. We will settle or defend, as we consider appropriate, any claim or suit asking for these damages. In addition to our limit of liability, we will pay all defense costs we incur. Our duty to settle or defend ends when our limit of liability for this coverage has been exhausted by payment of judgments or settlements. We have no duty to defend any suit or settle any claim for bodily injury or property damage not covered under this policy. We will not cover punitive or exemplary damages.

B. Insured as used in this Part means:

1. You, an insured resident, or any family member for the ownership, maintenance or use of your covered auto.

2. You, an insured resident, or any family member while operating a non-owned auto with the express or implied permission of the owner.

3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must

8

hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto.

4. For your covered auto, any person or entity, but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

5. For any auto or trailer, other than your covered auto, any other person or entity but only with respect to legal responsibility for acts or omissions of you, an insured resident, or any family member for whom coverage is afforded under this Part. This provision (B.5.) applies only if the person or entity does not own or hire the auto or trailer.

### SUPPLEMENTARY PAYMENTS

In addition to our limit of liability, we will pay on behalf of an insured:

1. Up to $250 for the cost of bail bonds required because of an accident, including related traffic law violations. The accident must result in bodily injury or property damage covered under this policy.

2. Premiums on appeal bonds and bonds to release attachments in any suit we defend. We have no duty to purchase bonds in an amount exceeding our limit of liability.

3. Interest accruing after a judgment is entered in any suit we defend. Our duty to pay interest ends when we offer to pay that part of the judgment which does not exceed our limit of liability for this coverage.

4. Up to $200 a day for loss of earnings, but not other income, because of attendance at hearings, trials, or other proceedings at our request.

5. Other reasonable expenses incurred at our request.

9

437a

6. Prejudgment interest awarded against the insured on the part of the judgment we pay. Any prejudgment interest awarded against the insured is subject to the applicable Pennsylvania Rules of Civil Procedure.

EXCLUSIONS

A. We do not provide Liability Coverage for any insured:

1. Who intentionally causes bodily injury or property damage.

2. For property damage to property owned or being transported by that insured.

3. For property damage to property:
   a. Rented to;
   b. Used by; or
   c. in the care of;
   that insured.
   This exclusion (A.3.) does not apply to property damage to a residence or private garage.

4. For bodily injury to an employee or co-worker of that insured during the course of employment. This exclusion (A.4.) does not apply to bodily injury to a domestic employee unless workers' compensation benefits are required or available for that domestic employee.

5. For that insured's liability arising out of the ownership, maintenance, or use of a vehicle or trailer, including your covered auto, while being used to carry persons or property for compensation or a fee, including, but not limited to, delivery of newspapers, magazines, food, or any other products. This exclusion (A.5.) does not apply to a share-the-expense car pool or to a delivery by an insured as a volunteer.

6. While employed or otherwise engaged in the business of:
   a. Selling or leasing;
   b. Repairing;
   c. Servicing;

10

d. Storing; or
   e. Parking; or
   f. Towing;
   vehicles designed for use mainly on public highways. This includes road testing and delivery. This exclusion (A.6.) does not apply to the ownership, maintenance or use of your covered auto by:
   a. You;
   b. An insured resident;
   c. Any family member; or
   d. Any partner, agent or employee of you, an insured resident or any family member.

7. Maintaining or using any vehicle while that insured is employed or otherwise engaged in any business (other than farming or ranching) not described in Exclusion A.6.
   This exclusion (A.7.) does not apply to the maintenance or use of an auto or trailer used with an auto if a business use surcharge is shown on the Declarations page.

8. For bodily injury or property damage for which that insured:
   a. Is an insured under a nuclear energy liability policy; or
   b. Would be an insured under a nuclear energy liability policy but for its termination upon exhaustion of its limit of liability.
   A nuclear energy liability policy is a policy issued by any of the following or their successors:
   a. Nuclear Energy Liability Insurance Association;
   b. Mutual Atomic Energy Liability Underwriters; or
   c. Nuclear Insurance Association of Canada.

9. For bodily injury or property damage assumed by an insured under any contract or agreement.

11

438a

10. For bodily injury or property damage resulting from the operation of farm machinery.

11. For bodily injury or property damage arising from the operation of a vehicle by that person as an employee of the United States Government when the provisions of the Federal Tort Claims Act apply.

12. For bodily injury or property damage caused by any vehicle, including your covered auto, while used in practicing, participating, or preparing for any race, speed contest or performance contest.

13. For bodily injury to the owner of any non-owned auto when being used by or driven by you, an insured resident or a family member.

14. For bodily injury or property damage resulting from the use of a vehicle for snow removal.

15. For bodily injury or property damage sustained by an insured while occupying any vehicle located for use or being used as a residence or premises.

16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:
   a. Is under the minimum age to obtain a valid driver's license in the state where the vehicle is garaged;
   b. Is under fifteen (15) years of age;
   c. Does not have a valid driver's license; or
   d. Has a suspended or revoked driver's license.

12

B. We do not provide Liability Coverage for the ownership, maintenance or use of:
1. Any vehicle which:
   a. Has fewer than four wheels; or
   b. Is designed mainly for use off public roads.
   This exclusion (B.1.) does not apply to any trailer.
2. Any vehicle, other than your covered auto, which is:
   a. Owned by you; or
   b. Furnished or available for your regular use.
3. Any vehicle, other than your covered auto, which is:
   a. Owned by any insured resident or family member; or
   b. Furnished or available for the regular use of any insured resident or family member.
   However, this exclusion (B.3.) does not apply to you while you are maintaining or occupying any vehicle which is:
   a. Owned by an insured resident or family member; or
   b. Furnished or available to the regular use of an insured resident or family member.
4. Any vehicle, including a trailer, rented for any business purpose.

LIMIT OF LIABILITY
A. The limit of liability shown in the Declarations for each person for Bodily Injury Liability is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one auto accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Bodily Injury Liability is our maximum limit of liability for all damages for bodily injury resulting from any one auto accident.

13

The limit of liability shown in the Declarations for each accident for Property Damage Liability is our maximum limit of liability for all property damage resulting from any one auto accident. This limit of liability is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the auto accident.

B. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
2. Part C.1 – Uninsured Motorists Coverage;
3. Part C.2 – Underinsured Motorists Coverage (Non-Stacked); or
4. Part C.3 – Underinsured Motorists Coverage (Non-Stacked).

C. An auto and attached trailer are considered one auto. Therefore, our limits of liability will not be increased for any accident involving an auto which has an attached trailer.

OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than the one in which your covered auto is principally garaged, we will interpret your policy for that accident as follows:

A. If the state or province has:

1. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

2. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

B. No one will be entitled to duplicate payments for the same elements of loss.

FINANCIAL RESPONSIBILITY

When this policy is certified as future proof of financial responsibility, this policy shall comply with the law to the extent required. You must reimburse us if we make a payment that we would not have made if this policy was not certified as proof of financial responsibility.

OTHER INSURANCE

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. Any insurance we provide for a vehicle you do not own, including any vehicle while used as a temporary substitute for your covered auto, shall be excess over any other collectible insurance.

14

15

440a

# PART B - FIRST PARTY BENEFITS COVERAGE / EXTRAORDINARY MEDICAL BENEFITS COVERAGE

With respect to coverage provided by this Part B, the provisions of the policy apply unless modified by Part B.

BASIC FIRST PARTY BENEFITS — LIMITS OF LIABILITY - AS INDICATED IN THE DECLARATIONS

ADDED FIRST PARTY BENEFITS — LIMITS OF LIABILITY - APPLY INSTEAD OF THE BASIC FIRST PARTY BENEFIT AND COMBINATION FIRST PARTY BENEFITS ONLY AS INDICATED IN THE DECLARATIONS.

COMBINATION FIRST PARTY BENEFITS - LIMITS OF LIABILITY - APPLY INSTEAD OF THE BASIC FIRST PARTY BENEFIT AND ADDED FIRST PARTY BENEFITS ONLY AS INDICATED IN THE DECLARATIONS.

NOTE: IF ADDED FIRST PARTY BENEFITS OR COMBINATION FIRST PARTY BENEFITS ARE NOT SHOWN AS APPLICABLE IN THE DECLARATIONS, ONLY THE BASIC FIRST PARTY BENEFIT APPLIES.

## DEFINITIONS

The Definitions section is amended as follows:

A. The Act refers to the Pennsylvania Motor Vehicle Financial Responsibility Law.

B. The following definition is replaced:

Your covered auto means a motor vehicle:

1. To which Part A of this policy applies and for which a specific premium is charged; and

16

2. For which First Party Benefits Coverage required by the Act is maintained.

C. The following definition is added:

Motor vehicle means a self-propelled vehicle operated or designed for use upon public roads. However, motor vehicle does not include a vehicle operated:

1. By muscular power; or
2. On rails or tracks.

D. Insured as used in this section means:

1. You or any family member.
2. Any other person while:

a. Occupying your covered auto; or

b. Not occupying a motor vehicle if injured as a result of an accident in Pennsylvania involving your covered auto.

If your covered auto is parked and unoccupied it is not a motor vehicle involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

## SECTION B.1 - FIRST PARTY BENEFITS COVERAGE

### INSURING AGREEMENT

A. BASIC FIRST PARTY BENEFIT

We will pay, in accordance with the Act, the Basic First Party Benefit to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle.

Subject to the limit shown in the Declarations, the Basic First Party Benefit consists of:

Medical Expenses. Reasonable and necessary medical expenses incurred for an insured's:

1. Care;
2. Recovery; or
3. Rehabilitation.

17

This includes remedial care and treatment rendered in accordance with a recognized religious method of healing.

Medical expenses will be paid if incurred within 18 months from the date of the accident causing bodily injury. However, if within 18 months from the date of the accident, it can be determined with reasonable medical probability that additional expenses may be incurred after this period, the 18 month time limit will not apply to the payment of the additional medical expenses.

B. ADDED FIRST PARTY BENEFITS

If the Declarations indicate that Added First Party Benefits apply, we will pay Added First Party Benefits instead of the Basic First Party Benefit to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle. These benefits are subject to the provisions of the Act. Subject to the limits shown in the Declarations, Added First Party Benefits consist of the following:

1. Medical expenses as described in the Basic First Party Benefit.

2. Work Loss.
a. Loss of income. Up to 80% of gross income actually lost by an insured as a result of the accident.
b. Reasonable expenses actually incurred to reduce loss of income by hiring:
(1) Special help, thereby enabling an insured to work; or
(2) A substitute to perform the work a self-employed insured would have performed.
However, work loss does not include:
a. Loss of expected income or expenses incurred for services performed after the death of the insured; or

18

b. Any loss of income, or expenses incurred for services performed, during the first 5 working days the insured did not work due to bodily injury.

3. Funeral Expenses. Funeral or burial expenses actually incurred if bodily injury causes an insured's death within 24 months from the date of the accident.

4. Accidental Death. A death benefit paid if bodily injury causes the death of you or any family member within 24 months from the date of the accident. We will pay accidental death to the executor or administrator of the deceased insured's estate. If there is no executor or administrator, the benefit shall be paid to:
a. The deceased insured's surviving spouse; or
b. If there is no surviving spouse, the deceased insured's surviving children; or
c. If there is no surviving spouse or children to the deceased insured's estate.

C. COMBINATION FIRST PARTY BENEFITS

If the Declarations indicate that Combination First Party Benefits apply, we will pay Combination First Party Benefits instead of the Basic First Party Benefit to or for an insured who sustains bodily injury. The bodily injury must be caused by an accident arising out of the maintenance or use of a motor vehicle. These benefits are subject to the provisions of the Act. Subject to the limits shown in the Declarations, Combination First Party Benefits consist of the following, as described in the First Party Benefit and Added First Party Benefits:
1. Medical expenses.
2. Work loss.
3. Funeral expenses.
4. Accidental death.

19

**EXCLUSIONS**

A. We do not provide First Party Benefits Coverage for 'bodily injury' sustained by any insured:

1. While intentionally causing or attempting to cause bodily injury to himself or any other person. We will not pay accidental death on behalf of that insured.

2. While committing a felony.

3. While seeking to elude lawful apprehension or arrest by a law enforcement official.

4. While maintaining or using a motor vehicle knowingly converted by that insured. This Exclusion (A.4.) does not apply to:

   a. 'You'; or

   b. Any family member;

   while using 'your covered auto'.

5. Who, at the time of the accident, is:

   a. The owner of one or more registered motor vehicles, none of which have in effect the financial responsibility required by the Act; or

   b. Occupying a motor vehicle owned by that insured for which the financial responsibility required by the Act is not in effect.

6. Maintaining or using a motor vehicle while located for use as a residence or premises.

7. While occupying a:

   a. Recreational vehicle designed for use off public roads or

   b. Motorcycle, moped or similar-type vehicle.

B. We do not provide First Party Benefits Coverage for 'bodily injury':

1. Sustained by a pedestrian if the accident occurs outside of Pennsylvania. This exclusion (B.1.) does not apply to:

   a. 'You'; or

   b. Any family member.

20

2. Sustained by any person injured as a result of conduct within the course of business of repairing, servicing or otherwise maintaining 'motor vehicles'. However, this exclusion does not apply if the conduct is off the business premises.

3. Caused by or as a consequence of:

   a. Discharge of nuclear weapon (even if accidental);

   b. War (declared or undeclared);

   c. Civil war;

   d. Insurrection or revolution.

4. From or as a consequence of the following, whether controlled or uncontrolled or however caused:

   a. Nuclear reaction;

   b. Radiation; or

   c. Radioactive contamination.

**LIMIT OF LIABILITY**

A. The limits of liability shown in the Declarations for the first party benefits that apply are the most we will pay to or for each 'insured' as the result of any one accident, regardless of the number of:

1. Claims made;

2. Vehicles or premiums shown in the Declarations;

3. Vehicles involved in the accident; or

4. Insurers providing first party benefits.

B. If 'Combination First Party Benefits' are afforded, we will make available at least the minimum limit required by the Act for the Basic First Party Benefit. This provision (B.) will not change 'our' maximum limit of liability.

C. Any amount payable under this coverage shall be excess over any amounts:

1. Paid; or

2. Payable; or

3. Required to be provided;

to an 'insured' under any workers' compensation law or similar law.

21

## PRIORITIES OF POLICIES

A. We will pay first party benefits in accordance with the order of priorities set forth by the Act. We will not pay if there is another insurer at a higher level of priority. The First category listed below is the highest level of priority and the Fourth category is the lowest level of priority. The priority order is:

| | |
|---|---|
| First | The insurer providing benefits to the insured as the named insured. |
| Second | The insurer providing benefits to the insured as a family member or insured resident who is not a named insured under another policy providing coverage under the Act. |
| Third | The insurer of the motor vehicle which the insured is occupying at the time of the accident. |
| Fourth | The insurer of any motor vehicle involved in the accident if the insured is not:<br>a. Occupying a motor vehicle; and<br>b. Provided first party benefits under any other automobile policy. |

An unoccupied parked motor vehicle is not a motor vehicle involved in an accident unless it is parked in a manner which creates an unreasonable risk of injury.

B. If 2 or more policies have equal priority, within the highest level applicable priority level:
1. The insurer against whom the claim is first made shall process and pay the claim as if wholly responsible. The insurer is then entitled to recover contribution pro rata from any other insurer

for the benefits paid and the costs of processing the claim. If such contribution is sought among insurers under the Act, proration shall be based on the number of involved motor vehicles.

2. If we are the insurer against whom the claim is first made, our payment to or for an insured will not exceed the applicable limit of liability for First Party Benefits Coverage shown in the Declarations.

3. The maximum recovery under all policies will not exceed the amount payable under the policy with the highest limit of liability.

## NON-DUPLICATION OF BENEFITS

No one will be entitled to recover duplicate payments for the same elements of loss under this or any other similar insurance including self-insurance.

## PART E – GENERAL PROVISIONS

Part E is amended as follows:

Our Right To Recover Payment provision does not apply.

## SECTION B.2 – EXTRAORDINARY MEDICAL BENEFITS COVERAGE

THIS SECTION APPLIES ONLY IF EXTRAORDINARY MEDICAL BENEFITS COVERAGE IS INDICATED ON THE DECLARATIONS PAGE

With respect to coverage provided by Section B.2, the provisions of Section B.1 – First Party Benefits Coverage apply unless modified by Section B.2.

## LIMITED BENEFITS

THIS SECTION B.2 PROVIDES COVERAGE ONLY FOR MEDICAL EXPENSES.

**WARNING**

"YOU" SHOULD BE AWARE THAT EXTRAORDINARY MEDICAL BENEFITS COVERAGE DOES NOT APPLY TO THE FIRST $100,000 OF MEDICAL EXPENSES INCURRED BY AN "INSURED". "YOU" CAN AVOID HAVING TO PAY SOME OF "YOUR" OWN MEDICAL BILLS BY PURCHASING ADDED FIRST PARTY BENEFITS COVERAGE WITH A $100,000 LIMIT OF LIABILITY FOR MEDICAL EXPENSES.

EXTRAORDINARY MEDICAL BENEFITS COVERAGE

INSURING AGREEMENT

We will pay, in accordance with the Act, extraordinary medical benefits to or for an insured who sustains bodily injury. The insured's medical expenses must be caused by an accident arising out of the maintenance or use of a motor vehicle.

Subject to the limit shown in the Declarations, extraordinary medical benefits consist of:

Medical Expenses. Reasonable and necessary medical expenses incurred for an insured's:

1. Care;
2. Recovery; or
3. Rehabilitation.

This includes remedial care and treatment rendered in accordance with a recognized method of healing.

Regardless of whether you have purchased Basic, Added or Combination First Party Benefits Coverage under this policy, we will pay extraordinary medical benefits only after $100,000 of medical expenses has been incurred by any one insured as a result of any one accident.

24

EXCLUSIONS

The following exclusion is added:

We do not provide Extraordinary Medical Benefits Coverage for the first $100,000 of medical expenses incurred by an insured as a result of an accident.

LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for Extraordinary Medical Benefits Coverage is the most we will pay to or for each insured as the result of any one accident, regardless of the number of:

1. Claims made;
2. Vehicles or premiums shown in the Declarations;
3. Vehicles involved in the accident; or
4. Insurers providing extraordinary medical benefits.

Extraordinary medical benefits are subject to an annual limit of $50,000 for each insured. However, this limit does not apply to medical expenses incurred within 18 months from the date the insured incurs $100,000 of medical expenses as a result of the accident.

B. Any amounts payable under this coverage shall be excess over any amounts available to an insured for medical expenses under Basic, Added or Combination First Party Benefits Coverage.

C. If an insured is eligible for benefits under both this coverage and the Catastrophic Loss Trust, the total recovery under Extraordinary Medical Benefits Coverage and the Catastrophic Loss Trust Fund combined shall not exceed $1,000,000. In no event will the amount payable under Extraordinary Medical Benefits Coverage exceed the limit of liability shown in the Declarations.

D. Any amounts payable under this coverage shall be excess over any amount:

1. Paid;

25

2. Payable; or
3. Required to be provided;

to an insured under any workers' compensation law or similar law.

This Section Applies Only If Uninsured Motorists Coverage (Non-Stacked) Is Indicated On The Declarations Page.

## PART C – UNINSURED / UNDERINSURED MOTORISTS COVERAGE

### SECTION C.1 UNINSURED MOTORISTS COVERAGE - (NON-STACKED)

**INSURING AGREEMENT**

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:

1. Sustained by an insured; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.

No judgment for damages arising out of a suit brought against the owner or operator of an uninsured motor vehicle is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. Insured as used in this Part means:

1. You, an insured resident or any family member.
2. Any other person occupying your covered auto up to the minimum limits

26

of liability specified by the financial responsibility law of Pennsylvania.

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

C. Uninsured motor vehicle means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.
2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in bodily injury without hitting:
   a. You, an insured resident or any family member.
   b. A vehicle which you, an insured resident or any family member are occupying; or
   c. Your covered auto.
   If there is no physical contact with the hit-and-run vehicle, the facts of the accident must be proved.
3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:
   a. Denies coverage; or
   b. Is or becomes:
      (1) Insolvent within six years of the date of the accident; or
      (2) Involved in insolvency proceedings.

However, uninsured motor vehicle does not include any vehicle or equipment:

1. Owned by or furnished for the regular use of you, an insured resident or any family member.
2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

27

3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

EXCLUSIONS
A. We do not provide Uninsured Motorists Coverage for bodily injury sustained:
1. By you while occupying, or when struck by, any motor vehicle you own which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
2. By an insured resident of family member.
   a. Who owns an auto, while occupying, or when struck by, any motor vehicle owned by you, an insured resident, or any family member which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.
   b. Who does not own an auto, while occupying, or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.
3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.
B. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any insured:
1. If that insured or the legal representative settles the bodily injury claim and such settlement prejudices our right to recover payment.
2. While occupying your covered auto when it is being used as a public or livery conveyance. This Exclusion (B.2.)

28

does not apply to a share-the-expense car pool.
3. While occupying your covered auto when it is being used for the delivery of food or products, including but not limited to newspapers and magazines. This Exclusion (B.3.) does not apply to a delivery by an insured as a volunteer.
C. We do not provide Uninsured Motorists Coverage for noneconomic loss sustained by any insured to whom the limited tort alternative applies, resulting from bodily injury caused by an accident involving an uninsured motor vehicle, unless the bodily injury sustained is a serious injury. This Exclusion (C.) does not apply if that insured is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.
D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:
1. Workers' compensation law; or
2. Disability benefits law.
E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

LIMIT OF LIABILITY
A. The limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

29

This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. If bodily injury is sustained by an insured other than you, an insured resident or any family member:

1. That part of the limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident.

2. Subject to this limit for each person, that part of the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

C. No one will be entitled to receive duplicate payments for the same elements of loss of liability.

This Section (B.) will not change our limit of liability under:

1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;

30

3. Part C.3. – Underinsured Motorists Coverage (Non-Stacked); or
4. Part C.4. – Underinsured Motorists Coverage (Stacked).

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible. This includes all payments made to an insured's attorney either directly or as part of the payment made to the insured.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

a. Workers' compensation law; or
b. Disability benefits law.

OTHER INSURANCE

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided under this Part.

The following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident. |
| --- | --- |
| Second | The policy affording Uninsured Motorists Coverage to the insured as a named insured, an insured resident or any family member. |

1. When there is applicable insurance available under the First Priority:

a. The limit of liability applicable to the vehicle the insured was occupying, under the policy in the First priority, shall first be exhausted; and

31

b. The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for Uninsured Motorists Coverage for any one vehicle under any one policy providing coverage to you, an insured resident or any family member.

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

ARBITRATION
A. If we and an insured do not agree:
1. Whether that insured is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that insured; from the owner or operator of an uninsured motor vehicle then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.
Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of our limit of liability for this coverage.
B. Each party will:
1. Pay the expenses it incurs, and

32

2. Bear the expenses of the third arbitrator equally.
C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

SECTION C.2 UNINSURED MOTORISTS COVERAGE - (STACKED)

This Section Applies Only If Uninsured Motorists Coverage (Stacked) Is Indicated On the Declarations Page.

INSURING AGREEMENT
A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an uninsured motor vehicle because of bodily injury:
1. Sustained by an insured; and
2. Caused by an accident.
The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the uninsured motor vehicle.
No judgment for damages arising out of a suit brought against the owner or operator of an uninsured motor vehicle is binding on us unless we:
1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.
B. Insured as used in this Part means:
1. You, an insured resident or any family member.
2. Any other person occupying your covered auto up to the minimum limits

33

of liability specified by the financial responsibility law of Pennsylvania.

3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by a person described in 1. or 2. above.

C. Uninsured motor vehicle means a land motor vehicle or trailer of any type:

1. To which no bodily injury liability bond or policy applies at the time of the accident.

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in bodily injury without hitting:

   a. You, an insured resident, or any family member;

   b. A vehicle which you, an insured resident, or any family member are occupying; or

   c. Your covered auto.

3. To which a bodily injury liability bond or policy applies at the time of the accident but the bonding or insuring company:

   a. Denies coverage; or

   b. Is or becomes:

      (1) Insolvent within six years of the date of the accident; or

      (2) Involved in insolvency proceedings.

   If there is no contact with the hit-and-run vehicle, the facts of the accident must be proved.

However, uninsured motor vehicle does not include any motor vehicle or equipment:

1. Owned by or furnished for the regular use of you, an insured resident or any family member.

2. Owned or operated by a self-insurer under any applicable motor vehicle law, except a self-insurer which is or becomes insolvent.

34

3. Operated on rails or crawler treads.

4. Designed mainly for use off public roads while not on public roads.

5. While located for use as a residence or premises.

EXCLUSIONS

A. We do not provide Uninsured Motorists Coverage for bodily injury sustained:

1. By you while occupying, or when struck by, any motor vehicle you own which is not insured for this coverage. This includes a trailer of any type used with that vehicle.

2. By an insured resident or family member who owns an auto, while occupying, or when struck by, any motor vehicle owned by you, an insured resident, or any family member which is not insured for this coverage. This includes a trailer of any type used with that vehicle.

3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.

B. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any insured:

1. If that insured or the legal representative settles the bodily injury claim and such settlement prejudices our right to recover payment.

2. While occupying your covered auto when it is being used as a public or livery conveyance. This Exclusion (B.2.) does not apply to a share-the-expense car pool.

3. While occupying your covered auto when it is being used for the delivery of food or products, including but not limited to newspapers and magazines.

35

450a

This Exclusion (B.3.) does not apply to a delivery by an insured as a volunteer.

C. We do not provide Uninsured Motorists Coverage for noneconomic loss sustained in such accident by any insured to whom the limited tort alternative applies, resulting from bodily injury caused by an accident involving an uninsured motor vehicle, unless the bodily injury sustained is a serious injury.

This Exclusion (C.) does not apply if that insured is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:
1. Workers' compensation law; or
2. Disability benefits law.

E. We do not provide Uninsured Motorists Coverage for punitive or exemplary damages.

LIMIT OF LIABILITY
A. If bodily injury is sustained in an accident by you, an insured resident, or any family member:
1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any such accident is the sum of the limits of liability shown in the Declarations for each person for Uninsured Motorist Coverage.
2. Subject to the maximum limit for each person described in A.1. above, our maximum limit of liability for all damages arising out of bodily injury resulting from any one accident is the sum of the limits of liability shown in the Declarations for each accident for Uninsured Motorists Coverage.

36

3. Subject to the maximum limits of liability set forth in A.1. and A.2. above, the most we will pay for bodily injury sustained in such accident by an insured other than you, an insured resident, or any family member is that part of the each person or each accident limit of liability shown in the Declarations applicable to the vehicle that the insured was occupying at the time of the accident, that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania

The maximum limit of liability is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

B. If bodily injury is sustained by any insured other than you, an insured resident, or any family member in an accident in which none of you, an insured resident, or any family member sustain bodily injury:
1. That part of the limit of liability shown in the Declarations for each person for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident.
2. Subject to this limit for each person, that part of the limit of liability shown in the Declarations for each accident for Uninsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum

37

limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

This Section (B.) will not change our limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A — Liability;
2. Part B — First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.3. — Underinsured Motorists Coverage (Non-Stacked); or
4. Part C.4. — Underinsured Motorists Coverage (Stacked).

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible. This includes all payments made to an insured's attorney either directly or as part of the payment made to the insured.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

OTHER INSURANCE

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this Part:

38

The following priorities of recovery apply:

| First | The Uninsured Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident. |
| Second | The policy affording Uninsured Motorists Coverage to the insured as a named insured, an insured resident or any family member. |

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

ARBITRATION

A. If we and an insured do not agree:

1. Whether that insured is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that insured;

from the owner or operator of an uninsured motor vehicle then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of our limit of liability for this coverage.

B. Each party will:

1. Pay the expenses it incurs; and

39

2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

## SECTION C.3 UNDERINSURED MOTORISTS COVERAGE (NON-STACKED)

This Section Applies Only If Underinsured Motorists Coverage (Non-stacked) Is Indicated On The Declarations Page. With respect to the coverage provided by Section C.3, the provisions of the policy apply unless modified by Section C.3.

**INSURING AGREEMENT**

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:

1. Sustained by an insured; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

We will pay under this coverage only if 1. or 2. below applies:

1. The limits of liability under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle have been exhausted by payment of judgments or settlements; or
2. A tentative settlement has been made between an insured and the insurer of the underinsured motor vehicle and we:

a. Have been given prompt written notice of such tentative settlement; and
b. Advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an underinsured motor vehicle is binding on us unless we:

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. Insured as used in this Part means:
1. You, an insured resident or any family member.
2. Any other person occupying your covered auto up to the minimum limits of liability specified by the financial responsibility law of Pennsylvania.
3. Any person for damages that person is entitled to recover because of bodily injury to which this coverage applies sustained by person described in 1. or 2. above.

C. Underinsured motor vehicle means a land motor vehicle or trailer of any type to which a bodily injury liability bond or policy applies at the time of the accident but the available limits for bodily injury under that bond or policy to an insured is not enough to pay the full amount the insured is legally entitled to recover as damages.

However, underinsured motor vehicle does not include any vehicle or equipment:
1. For which liability coverage is provided under Part A of this policy.
2. Which is an uninsured motor vehicle.
3. Operated on rails or crawler treads.

40

41

4. Designed mainly for use off public roads while not on public roads;

5. While located for use as a residence or premises.

## EXCLUSIONS

A. We do not provide Underinsured Motorists Coverage for bodily injury sustained:

1. By you while occupying, or when struck by any motor vehicle you own which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

2. By an insured resident or family member:

a. Who owns an auto, while occupying, or when struck by, any motor vehicle owned by you, an insured resident, or any family member which is not insured for this coverage under this policy. This includes a trailer of any type used with that vehicle.

b. Who does not own an auto, while occupying, or when struck by, any motor vehicle you own which is insured for this coverage on a primary basis under any other policy.

3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.

B. We do not provide Underinsured Motorists Coverage for bodily injury sustained by any insured:

1. While occupying your covered auto when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.

2. While occupying your covered auto when it is being used for the delivery of food or products, including but not limited to newspapers and magazines.

This Exclusion (B.2.) does not apply to a delivery by an insured as a volunteer.

C. We do not provide Underinsured Motorists Coverage for noneconomic loss sustained by any insured to whom the limited tort alternative applies, resulting from bodily injury caused by an accident involving an underinsured motor vehicle, unless the bodily injury sustained is a serious injury.

This Exclusion (C) does not apply if that insured is injured while occupying a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar law:

1. Workers' compensation law; or

2. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

## LIMIT OF LIABILITY

A. The limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident. Subject to this limit for each person, the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

1. Insureds;

2. Claims made;

3. Vehicles or premiums shown in the Declarations; or

4. Vehicles involved in the accident.

42

43

B. If bodily injury is sustained by an insured other than you, an insured resident, or any family member:

1. That part of the limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident.

2. Subject to this limit for each person, that part of the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:

1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

This Section (B.) will not change our limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage and:

1. Part A – Liability;
2. Part B – First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.1. – Uninsured Motorists Coverage (Non-Stacked); or
4. Part C.2. – Uninsured Motorists Coverage (Stacked).

44

D. We will not make a duplicate payment under this coverage for any element of loss for which payment has been made by or on behalf of persons or entities who may be legally responsible.

E. We will not pay for any element of loss if a person is entitled to receive payment for the same element of loss under any of the following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

OTHER INSURANCE

If there is other applicable insurance available under more than one policy or provision of coverage that is similar to the insurance provided by this policy:

The following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident. |
| Second | The policy affording Underinsured Motorists Coverage to the insured as a named insured or any insured resident or any family member. |

1. When there is applicable insurance available under the First Priority:

a. The limit of liability applicable to the vehicle the insured was occupying, under the policy in the First priority, shall first be exhausted; and

b. The maximum recovery under all policies in the Second priority may equal but not exceed the highest applicable limit of liability for Underinsured Motorists Coverage for any one vehicle under any one policy providing coverage to you, an insured resident or any family member.

45

**455a**

2. When there is no applicable insurance available under the First priority, the maximum recovery under all policies in the Second priority shall not exceed the highest applicable limit for any one vehicle under any one policy.

If two or more policies have equal priority, the insurer against whom the claim is first made shall process and pay the claim as if wholly responsible for all insurers with equal priority. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

## ARBITRATION

A. If we and an insured do not agree:
1. Whether that insured is legally entitled to recover damages; or
2. As to the amount of the damages which are recoverable by that insured;

from the owner or operator of an underinsured motor vehicle then the matter may be arbitrated. However, disputes concerning coverage under this Part may not be arbitrated.

Both parties must agree to arbitration. If so agreed, each party will select an arbitrator. The two arbitrators will select a third. If they cannot agree within 30 days, either may request that selection be made by a judge of a court having jurisdiction. The arbitrators shall have no authority to award an amount in excess of our limit of liability for this coverage.

B. Each party will:
1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator equally.

C. Unless both parties agree otherwise, arbitration will take place in the county in which the insured lives. Local rules of law as to procedure and evidence will apply. A decision agreed to by at least two of the arbitrators will be binding.

46

# SECTION C.4 UNDERINSURED MOTORISTS COVERAGE (STACKED)

This Section Applies Only If Underinsured Motorists Coverage (Stacked) Is Indicated On The Declarations Page With respect to the coverage provided by Section C.4, the provisions of the policy apply unless modified by Section C.4.

## INSURING AGREEMENT

A. We will pay compensatory damages which an insured is legally entitled to recover from the owner or operator of an underinsured motor vehicle because of bodily injury:
1. Sustained by an insured; and
2. Caused by an accident.

The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the underinsured motor vehicle.

We will pay under this coverage only if 1. or 2. below applies:
1. The limits of liability under any bodily injury liability bonds or policies applicable to the underinsured motor vehicle have been exhausted by payment of judgments or settlements; or
2. A tentative settlement has been made between an insured and the insurer of the underinsured motor vehicle and we:
   a. Have been given prompt written notice of such tentative settlement; and
   b. Advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.

No judgment for damages arising out of a suit brought against the owner or operator of an underinsured motor vehicle is binding on us unless we:

47

1. Received reasonable notice of the pendency of the suit resulting in the judgment; and
2. Had a reasonable opportunity to protect our interests in the suit.

B. **Insured** as used in this Part means:
1. **You**, an **insured resident** or any **family member**.
2. Any other person **occupying** your **covered auto** up to the minimum limits of liability specified by the financial responsibility law of Pennsylvania.
3. Any person for damages that person is entitled to recover because of **bodily injury** to which this coverage applies sustained by a person described in 1. or 2. above.

C. **Underinsured motor vehicle** means a land motor vehicle or trailer of any type to which a **bodily injury** liability bond or policy applies at the time of the accident, but the available limits for **bodily injury** under that bond or policy to an **insured** is not enough to pay the full amount the **insured** is legally entitled to recover as damages.

However, **underinsured motor vehicle** does not include any vehicle or equipment:
1. For which liability coverage is provided under Part A of this policy.
2. Which is an **uninsured motor vehicle**.
3. Operated on rails or crawler treads.
4. Designed mainly for use off public roads while not on public roads.
5. While located for use as a residence or premises.

**EXCLUSIONS**

A. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained:
1. By **you** while **occupying**, or when struck by, any motor vehicle **you** own which is not insured for this coverage.

48

This includes a trailer of any type used with that vehicle.
2. By an **insured resident** or **family member** who owns an auto, while **occupying**, or when struck by, any motor vehicle owned by **you**, an **insured resident**, or any **family member** which is not insured for this coverage. This includes a trailer of any type used with that vehicle.
3. While using any motor vehicle without the express or implied permission of the owner, or using a motor vehicle outside the scope of permission granted by the owner.

B. We do not provide Underinsured Motorists Coverage for **bodily injury** sustained by any **insured**:
1. While **occupying** your **covered auto** when it is being used as a public or livery conveyance. This exclusion (B.1.) does not apply to a share-the-expense car pool.
2. While **occupying** your **covered auto** when it is being used for the delivery of food or products, including but not limited to newspapers and magazines. This Exclusion (B.2.) does not apply to a delivery by an **insured** as a volunteer.

C. We do not provide Underinsured Motorists Coverage for noneconomic loss sustained by any **insured** to whom the limited tort alternative applies, resulting from **bodily injury** caused by an accident involving an **underinsured motor vehicle** unless the **bodily injury** sustained is a serious injury. This Exclusion (C.) does not apply if that **insured** is injured while **occupying** a motor vehicle insured under a commercial motor vehicle insurance policy.

D. This coverage shall not apply directly or indirectly to benefit any insurer or self-insurer under any of the following or similar laws:

49

1. Workers' compensation law; or
2. Disability benefits law.

E. We do not provide Underinsured Motorists Coverage for punitive or exemplary damages.

LIMIT OF LIABILITY

A. If bodily injury is sustained in an accident by you, an insured resident, or any family member:

1. Our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any such accident is the sum of the limits of liability shown in the Declarations for each person for Underinsured Motorists Coverage.

2. Subject to the maximum limit for each person described in A.1. above, our maximum limit of liability for all damages arising out of bodily injury resulting from any one accident is the sum of the limits of liability shown in the Declarations for each accident for Underinsured Motorists Coverage.

3. Subject to the maximum limits of liability set forth in A.1. and A.2. above, the most we will pay for bodily injury sustained in such accident by an insured other you, an insured resident, or any family member is that part of the each person or each accident limit of liability shown in the Declarations applicable to the vehicle that the insured was occupying at the time of the accident, that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania.

The maximum limit of liability is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

50

B. If bodily injury is sustained by any insured other than you, an insured resident, or which none of you, an insured resident, or any family member sustain bodily injury:

1. That part of the limit of liability shown in the Declarations for each person for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit of liability for all damages, including damages for care, loss of services or death, arising out of bodily injury sustained by any one person in any one accident.

2. Subject to this limit for each person, that part of the limit of liability shown in the Declarations for each accident for Underinsured Motorists Coverage that does not exceed the minimum limits required by the financial responsibility law of Pennsylvania is our maximum limit for all damages for bodily injury resulting from any one accident.

This is the most we will pay regardless of the number of:
1. Insureds;
2. Claims made;
3. Vehicles or premiums shown in the Declarations; or
4. Vehicles involved in the accident.

This Section (B.) will not change our limit of liability.

C. No one will be entitled to receive duplicate payments for the same elements of loss under this coverage:
1. Part A — Liability;
2. Part B — First Party Benefits Coverage / Extraordinary Medical Benefits Coverage;
3. Part C.1. — Uninsured Motorists Coverage (Non-Stacked); or
4. Part C.2. — Uninsured Motorists Coverage (Stacked).

51

D. We will not make a duplicate payment
under this coverage for any element of
loss for which payment has been made by
or on behalf of persons or entities who
may be legally responsible.

E. We will not pay for any element of loss if a
person is entitled to receive payment for
the same element of loss under any of the
following or similar law:

1. Workers' compensation law; or
2. Disability benefits law.

**OTHER INSURANCE**

If there is other applicable insurance available
under more than one policy or provision of
coverage that is similar to the insurance
provided by this Part:

The following priorities of recovery apply:

| First | The Underinsured Motorists Coverage applicable to the vehicle the insured was occupying at the time of the accident. |
| Second | The policy affording Underinsured Motorists Coverage to the insured as a named insured, an insured resident or any family member. |

**ARBITRATION**

A. If we and an insured do not agree:

1. Whether that insured is legally entitled
to recover damages; or
2. As to the amount of the damages which
are recoverable by that insured;

If two or more policies have equal priority, the
insurer against whom the claim is first made
shall process and pay the claim as if it wholly
responsible for all insurers with equal priority.
The insurer is thereafter entitled to recover
contribution pro rata from any other insurer for
the benefits paid and the costs of processing
the claim.

from the owner or operator of an
underinsured motor vehicle than the
matter may be arbitrated. However,
disputes concerning coverage under this
Part may not be arbitrated.
Both parties must agree to arbitration. If so
agreed, each party will select an arbitrator.
The two arbitrators will select a third. If
they cannot agree within 30 days, either
may request that selection be made by a
judge of a court having jurisdiction. The
arbitrators shall have no authority to award
an amount in excess of our limit of liability
for this coverage.

B. Each party will:

1. Pay the expenses it incurs; and
2. Bear the expenses of the third arbitrator
equally.

C. Unless both parties agree otherwise,
arbitration will take place in the county in
which the insured lives. Local rules of law
as to procedure and evidence will apply. A
decision agreed to by at least two of the
arbitrators will be binding.

**PART D - COVERAGE FOR
DAMAGE TO YOUR AUTO**

**INSURING AGREEMENT**

A. We will pay for direct and accidental loss
to your covered auto or any non-owned
auto, including original manufacturer
permanently installed equipment, minus
any applicable deductible shown in the
Declarations. If loss to more than one
your covered auto or non-owned auto
results from the same collision, only the
highest applicable deductible will apply.
We will pay for loss to your covered auto
caused by:

1. Other than collision only if the
Declarations indicate that Other Than
Collision coverage is provided for that
auto.

459a

2. Collision only if the Declarations indicate that Collision coverage is provided for that auto.
If there is a loss to a non-owned auto, we will provide the broadest coverage applicable to any your covered auto shown in the Declarations.

B. Collision means the upset of your covered auto or a non-owned auto or their impact with another vehicle or object.
Loss caused by the following is considered other than collision:
1. Missiles or falling objects;
2. Fire;
3. Theft or larceny;
4. Explosion or earthquake;
5. Windstorm;
6. Hail, water or flood;
7. Malicious mischief or vandalism;
8. Riot or civil commotion;
9. Contact with bird or animal; or
10. Breakage of glass.
If breakage of glass is caused by a collision, you may elect to have it considered a loss caused by collision.

C. Customizing parts or equipment means permanently installed or attached equipment, parts, devices, accessories, enhancements, and charges, other than those which are original manufacturer installed.

D. Non-owned auto means:
1. Any auto or trailer not owned by or furnished or available for the regular use of you, an insured resident or any family member while in the custody of or being operated by you, an insured resident or any family member; or
2. Any auto or trailer you do not own while used as a temporary substitute for your covered auto which is out of normal use because of its:
a. Breakdown;
b. Repair;
c. Servicing;
d. Loss; or
e. Destruction.

54

LIMITED TRANSPORTATION EXPENSES
In addition, we will reimburse you up to $20 per day, to a maximum of $500, for transportation expenses incurred by you.
This applies only in the event of the total theft of your covered auto. We will pay only transportation expenses incurred during the period:
1. Beginning 48 hours after the theft is reported to the police; and
2. Ending when your covered auto is returned to use or we pay for its loss.
We will not pay for the cost of transportation incurred by an insured if there is a theft of only a trailer.

EXCLUSIONS
We will not pay for:
1. Loss to your covered auto or any non-owned auto which occurs while it is used to carry persons or property for compensation or a fee, including, but not limited to, delivery of newspapers, magazines, food, or any other products. This exclusion (1.) does not apply to a share-the-expense car pool or to a delivery by an insured as a volunteer.
2. Damage due and confined to:
a. Wear and tear;
b. Freezing;
c. Mechanical or electrical breakdown or failure;
d. Road damage to tires; or
e. Manufacturer defects.
This exclusion (2.) does not apply if the damage results from the total theft of your covered auto or any non-owned auto.
3. Loss due to or as a consequence of:
a. Radioactive contamination;
b. Discharge of any nuclear weapon (even if accidental);
c. War (declared or undeclared);
d. Civil war;
e. Insurrection; or
f. Rebellion or revolution.

55

4. Loss to equipment, devices, accessories, and any other personal effects which are not permanently installed or attached by brackets or bolts. This includes, but is not limited to:

   a. tapes, compact discs, cassettes, and other recording or recorded media;

   b. any case or other container designed for use in storing or carrying tapes, compact discs, cassettes, or other recording or recorded media;

   c. any device used for the detection or location of radar, laser, or other speed measuring equipment or its transmissions;

   d. radios, stereos, CB radios, telephones, two-way mobile radios, scanners, televisions, video or audio cassette/DVD recorders, or personal computers; and

   e. any compact disc systems, navigation systems, Internet access systems, or video entertainment systems.

5. Loss of value in excess of $500 to any customizing parts or equipment unless the value of the equipment has been reported to us, scheduled, and a premium has been paid for customizing parts or equipment coverage.

6. Loss to your covered auto, any non-owned auto, or trailer due to destruction or confiscation by governmental or civil authorities because you, an insured resident or any family member engaged in illegal activities.

7. Loss to:

   a. A camper body or motor home; or

   b. Facilities or equipment used with a trailer, camper body or motor home. Facilities or equipment include but are not limited to:

      (1) Cooking, dining, plumbing or refrigeration facilities;

      (2) Awnings or cabanas; or

      (3) Any other facilities or equipment used with a trailer, camper body, or motor home.

   This exclusion (7.) does not apply if you have identified and scheduled a value for this equipment and paid premium for an endorsement to add coverage for customizing parts or equipment.

8. Loss to any non-owned auto when used by you, an insured resident or any family member without the owner's express or implied permission.

9. Loss to any custom furnishings or equipment in or upon any pickup or van. Custom furnishings or equipment include but are not limited to:

   a. Special carpeting or insulation;

   b. Furniture or bars;

   c. Height-extending roofs including pop up roofs, raised roofs, bubble domes, and bubble windows;

   d. Custom murals, paintwork, decals or other graphics; or

   e. Captain chairs, swivel chairs, or tables.

   This exclusion (9.) does not apply to a cap, cover or bed liner in or upon any your covered auto which is a pickup. This exclusion does not apply if you have identified and scheduled a value for this equipment and paid premium for an endorsement to add coverage for customizing parts or equipment.

10. Loss to any non-owned auto being maintained or used by any person while employed or otherwise engaged in the business of:

   a. Selling or leasing;

   b. Repairing;

   c. Servicing;

   d. Storing;

   e. Parking; or

   f. Towing;

vehicles designed for use on public highways. This includes road testing and delivery.

56

57

461a

11. Loss while your covered auto or any non-owned auto is used in practicing, participating, or preparing for any race, speed contest or performance contest.

12. Loss to, or loss of use of, a non-owned auto rented by:
   a. You;
   b. An insured resident; or
   c. Any family member;
   if a rental vehicle company is precluded from recovering such loss or loss of use, from you, an insured resident, or any family member, pursuant to the provisions of any applicable rental agreement or state law.

13. Loss to any non-owned auto being maintained or used by any person while employed or otherwise engaged in any business not described in exclusion 10. This exclusion (13.) does not apply to the maintenance or use by you, an insured resident, or any family member of a non-owned auto, which is an auto or trailer.

14. Loss to your covered auto or any non-owned auto due to or resulting from intentional acts committed by you, an insured resident, or a family member, or by anyone at your direction. This exclusion (14.) does not apply to an innocent co-insured who did not cooperate in or contribute to the creation of the loss.

15. Loss to your covered auto or any non-owned auto caused while you, an insured resident or any family member are involved in any unlawful activity (other than a traffic violation) or attempting to flee or fleeing from any law enforcement officer or agent.

16. Loss resulting from the use of your covered auto for snow removal.

17. Loss to paint or discoloration of paint resulting from acid rain, smog, salt, tree sap, or animal or bird droppings unless such loss is a direct result of a collision or vandalism.

18. Loss caused by the theft or conversion of your covered auto or by a person to whom you have voluntarily entrusted your covered auto.

19. Loss to your covered auto, non-owned auto or trailer for diminution of value.

20. Loss to your covered auto or any non-owned auto when it is driven, operated or used by an individual with the owner's permission if the owner knows that the operator:
   a. Is under the minimum age to obtain a valid driver's license in the state where the vehicle is garaged;
   b. Is under fifteen (15) years of age;
   c. Does not have a valid driver's license; or
   d. Has a suspended or revoked driver's license.

LIMIT OF LIABILITY
A. Our limit of liability for loss will be the lesser of the:
   1. Actual cash value of this stolen or damaged property at the time of loss; or
   2. Amount necessary to repair or replace your covered auto, non-owned auto, or covered equipment with other property of like kind and quality including, but not limited to, after-market parts.
   However, the most we will pay for loss to:
   1. Any trailer is $500.
   2. Non-scheduled customizing parts or equipment is $500.
B. In the event of a total loss, an adjustment for:
   1. Depreciation and physical condition; and
   2. Retained salvage value; will be made in determining actual cash value.
C. If a repair or replacement results in better than like kind or quality, we will not pay for the amount of the betterment.

D. If coverage applies to a vehicle you do not own, our liability is limited to the highest actual cash value of the highest-valued your covered auto for which coverage under this Part has been purchased.

**PAYMENT OF LOSS**

We may pay for loss in money, or repair or replace the damaged or stolen property. We may, at our expense, return any stolen property to:

A. You; or

B. The address shown in this policy.

If we return stolen property we will pay for any damage resulting from the theft. We may keep all or part of the property at an agreed or appraised value.

If we pay for loss in money, our payment will include the applicable sales tax for the damaged or stolen property.

**LOSS PAYABLE CLAUSE**

Loss or damage under this policy shall be paid, as interest may appear, to you and the loss payee shown in the Declarations. We will not pay for any loss caused by conversion, embezzlement, secretion, fraud or omissions by you or anyone acting on your behalf. In addition, we will not pay a loss payee for any loss where fraud, misrepresentation, omission or concealment by or at the direction of an insured, family member, or insured resident. If we have to pay the loss payee for a loss not covered

**CAR STORAGE COVERAGE**

We will pay up to a reasonable and customary daily rate for the cost of storage of your covered auto in the event of a loss to your covered auto for which coverage under this Part is provided. We will pay no more than $400 total for the cost of storage of your covered auto under this section.

under this policy, we will be subrogated to the loss payee's rights of recovery against you. This will not affect the loss payee's right to recover the full amount of its claim. The loss payee must assign us its interest.

We reserve the right to cancel the policy as permitted by policy terms and the cancellation shall terminate this agreement as to the loss payee's interest. We will give the same advance notice of cancellation to the loss payee as we give to the named insured shown in the Declarations. Any return premium owed to you will be based on the effective date of cancellation used to give advance notice to the loss payee. When we pay the loss payee we shall, to the extent of payment, be subrogated to the loss payee's rights of recovery.

**NO BENEFIT TO BAILEE**

This insurance shall not directly or indirectly benefit any carrier or other bailee for hire.

**OTHER SOURCES OF RECOVERY**

If other sources of recovery also cover the loss, we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. However, any insurance we provide with respect to a non-owned auto or any vehicle used as a temporary substitute for your covered auto shall be excess over any other collectible source of recovery including, but not limited to:

A. Any coverage provided by the owner of the non-owned auto or any vehicle used as a temporary substitute for your covered auto;

B. Any other applicable physical damage insurance;

C. Any other source of recovery applicable to the loss.

**APPRAISAL**

A. If we and you do not agree on the amount of loss, either may demand an appraisal of the loss. In this event, each party will select a competent and impartial appraiser. The two appraisers will select an umpire. The appraisers will state separately the actual cash value and the amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding. Each party will:

1. Pay its chosen appraiser; and
2. Bear the expenses of the appraisal and umpire equally.

B. We do not waive any of our rights under this policy by agreeing to an appraisal.

**PART E - GENERAL PROVISIONS**

**BANKRUPTCY**

Bankruptcy or insolvency of the insured shall not relieve us of any obligations under this policy.

**CHANGES**

A. This policy contains all the agreements between you and us. Its terms may not be changed or waived except by endorsement issued by us.

B. If there is a change to the information used to develop the policy premium, we may adjust your premium. Changes during the policy term that may result in a premium increase or decrease include, but are not limited to, changes in:

1. The number, type or use classification of insured vehicles;
2. Operators using insured vehicles;
3. The place of principal garaging of insured vehicles;
4. Coverage, deductible or limits.

If a change resulting from A. or B. requires a premium adjustment, we will make the premium adjustment in accordance with our filed rates.

C. If we make a change which broadens coverage under this edition of your policy without additional premium charge, that change will automatically apply to your policy as of the date we implement the change in your state. This paragraph (C.) does not apply to changes implemented with a general program revision that includes both broadenings and restrictions in coverage, whether that general program revision is implemented through introduction of:

1. A subsequent edition of your policy; or
2. An Amendatory Endorsement.

**FRAUD**

A. Your policy was issued in reliance on the information you provided on your insurance application. We may void coverage under this policy if you have knowingly concealed or misrepresented any material fact or circumstance or engaged in fraudulent conduct at the time application was made or in connection with a claim.

B. If any representation contained in any notification of change or endorsement request is false, misleading, or materially affects the acceptance or rating of the risk by us, by either direct misrepresentation, incorrect statements, this policy will be void from the effective date of the requested change.

C. We do not provide coverage for any insured who has made fraudulent statements or engaged in fraudulent conduct in connection with any accident or loss for which coverage is sought under this policy. This provision shall also apply to misstatements of use and omissions of

62

63

464a

fact. However, we will provide coverage to an insured for damages sustained by any person who has not made fraudulent statements or engaged in fraudulent conduct if such damages result from an accident which is otherwise covered by this policy.

D. If we are not permitted to void this policy, any first-party claims will be reduced by the amount of any additional premium owed to us. Any payments made by us as the result of your fraud or misrepresentation may be recovered from you, or from any payments due or made to you under any first-party coverage provided by this policy.

LEGAL ACTION AGAINST US
A. No legal action may be brought against us until there has been full compliance with all the terms of this policy. In addition, under Part A, no legal action may be brought against us until:
1. We agree in writing that the insured has an obligation to pay; or
2. The amount of that obligation has been finally determined by judgment after trial.
B. No person or entity has any right under this policy to bring us into any action to determine the liability of an insured.

OUR RIGHT TO RECOVER PAYMENT –
Applies to Part A – Liability and Part D – Coverage for Damage to Your Auto
A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another, we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.
However, our rights in this Paragraph (A.) do not apply under Part D, against any person using your covered auto with an insured's express or implied permission

64

and within the scope of the permission granted.
B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:
1. Hold in trust for us the proceeds of the recovery; and
2. Reimburse us to the extent of our payment less reasonable attorneys' fees, costs and expenses incurred by that person in collecting our share of the recovery.

OUR RIGHT TO RECOVER PAYMENT –
Applies to Part C only
A. If we make a payment under this policy and the person to or for whom payment was made has a right to recover damages from another we shall be subrogated to that right. That person shall do:
1. Whatever is necessary to enable us to exercise our rights; and
2. Nothing after loss to prejudice them.
However, our rights do not apply under Paragraph (A.) with respect to Underinsured Motorists Coverage (Sections C.3. and C.4.) if we:
1. Have been given prompt written notice of a tentative settlement between an insured and the insurer of an underinsured motor vehicle, and
2. Fail to advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification.
If we advance payment to the insured in an amount equal to the tentative settlement within 30 days after receipt of notification:
1. That payment will be separate from any amount the insured is entitled to recover under the provisions of Underinsured Motorists Coverage; and
2. We also have a right to recover the advanced payment.

65

465a

B. If we make a payment under this policy and the person to or for whom payment is made recovers damages from another, that person shall:

1. Hold in trust for us the proceeds of the recovery; and

2. Reimburse us to the extent of our payment. However, any reimbursement due to us shall be reduced by our pro rata share of any reasonable and necessary costs and expenses, including deposition costs, witness fees and attorney's fees, incurred in bringing the claim.

PAYMENT OF PREMIUM

A. This insurance coverage is conditional upon payment of premium. Payment of your initial premium by check, draft or other instrument is not considered payment until it is honored upon presentment. If your initial premium payment is by check, draft, or any remittance other than cash, coverage under this policy may be voidable at our election if the check, draft or remittance is not honored upon presentment.

B. If you make a premium payment with a check and the check is returned to us because of insufficient funds, a closed account or a stop payment, a service charge will be added to your account balance.

C. The premium stated in the Declarations is the initial premium for this policy. On each renewal, continuation or anniversary of the effective date of this policy, the premium shall be computed by us in accordance with our filed rates.

D. If you owe us any outstanding premium balances on your expiring, expired or cancelled policy, any moneys received by us will be applied first to pay the oldest outstanding balance.

66

POLICY PERIOD AND TERRITORY

A. This policy applies only to accidents and losses which occur:

1. During the policy period as shown on the Declarations; and

2. Within the policy territory.

B. The policy territory is:

1. The United States of America, its territories, or possessions; or

2. Canada.

This policy also applies to loss to, or accidents involving, your covered auto while being transported between their ports.

TERMINATION

A. Cancellation
This policy may be cancelled during the policy period as follows:

1. The named insured shown in the Declarations may cancel by:

a. Returning this policy to us; or

b. Giving us advance written notice of the future date cancellation is to take effect.

2. We may cancel by mailing to the named insured shown in the Declarations at the address shown in this policy:

a. At least 15 days notice of cancellation:

(1) If notice is effective within the first 60 days this policy is in effect and this is not a renewal or continuation policy.

(2) For nonpayment of premium; or

(3) If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year; or if the policy has been in effect longer than one year, since the last anniversary of the original effective date; or

67

**466a**

b. At least 60 days notice if the policy was obtained through material misrepresentation.

B. Nonrenewal

Our right to cancel this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

1. At least 15 days notice before the end of the policy period:

   a. For nonpayment of premium; or

   b. If the driver's license of the named insured shown in the Declarations has been suspended or revoked after the effective date if this policy has been in effect less than one year, or if the policy has been in effect longer than one year, since the last anniversary of the original effective date.

2. At least 60 days notice before the end of the policy period in all other cases. However, our right to nonrenew this policy is subject to the limitations contained in the applicable Pennsylvania Statutes.

C. Automatic Termination

If we offer to renew or continue and you or your representative do not accept, this policy will automatically terminate at the end of the current policy period. Failure to pay the required renewal or continuation premium when due shall mean that you have not accepted our offer.

D. Other Termination Provisions

1. We may deliver any notice instead of mailing it. Proof of mailing of any notice shall be sufficient proof of notice.

2. If this policy is cancelled, you may be entitled to a premium refund. If the premium refund is $10.00 or less, no refund will be sent unless you specifically request a refund. If you owe us

68

$10.00 or less, we will waive the amount outstanding. However, making or offering to make the refund is not a condition of cancellation. If your or we cancel your policy and a premium refund is owed to you, you will receive the refund on a pro-rata basis. If your policy is cancelled for nonpayment of premium and a refund is owed to you, you will receive the refund on a pro-rata basis minus the cancellation fee.

3. The effective date of cancellation stated in the notice shall become the end of the policy period.

REINSTATEMENT OF POLICY WITH A LAPSE IN COVERAGE

This section only applies if reinstatements with a lapse in coverage are available in your state.

A. If this policy is cancelled for nonpayment of premium, we will reinstate the policy with a lapse in coverage, subject to underwriting approval, if payment is received within 20 days after the cancellation effective date.

B. For the purposes of this section, payment is considered the amount indicated that must be paid immediately on the past due payment notice.

C. If you pay your payment through electronic means, reinstatement of your coverage will be effective the date and time your payment is received.

D. If you mail your payment, reinstatement of your coverage will be effective at 12:01 A.M. on the day after your payment is postmarked. In the event the postmark is not present or is illegible, reinstatement of coverage will be effective at 12:01 A.M. on the date your payment is received by us.

E. There will be a lapse in coverage from the cancellation date to the date and time of reinstatement.

69

F. If the consideration accepted by us as payment for the reinstatement is in the form of a check or draft and the bank on which the check or draft is drawn dishonors it upon presentation, the reinstatement is void as of its inception.

G. If this policy (or any renewal thereof) is cancelled because of nonpayment of premium after any reinstatement, we reserve the right to reinstate or to not reinstate and return unearned premium.

H. If this policy is reinstated, you will be charged a fee for reinstatement as allowed by your state law.

STRUCTURED SETTLEMENTS

If payment of medical expenses under Section B.2. of Part B in the form of a structured settlement will be.

1. Cost effective for us, and
2. In the best interest of an insured,

we and the insured may make an agreement about the timing and amount of payments under this coverage, which is mutually satisfactory. This agreement may include annuities or other long-term payment arrangements.

TRANSFER OF YOUR INTEREST IN THIS POLICY

A. Your rights and duties under this policy may not be assigned without our written consent. However, if a named insured shown in the Declarations dies, coverage will be provided for:

1. The surviving spouse if resident in the same household at the time of death. Coverage applies to the spouse as if a named insured shown in the Declarations; and

2. The legal representative of the deceased person as if a named insured shown in the Declarations. This applies only with respect to the representative's legal responsibility to maintain or use your covered auto.

70

B. Coverage will only be provided until the end of the policy period.

C. If a named insured shown in the Declarations terminates their marital relationship, we will continue to provide coverage for the former spouse of the named insured. Coverage applies only:

1. If we are notified of the termination of the marital relationship;

2. If the former spouse was a resident of the same household immediately prior to the termination of the marital relationship; and

3. For the lesser of 30 days or until the end of the policy period.

TWO OR MORE AUTO POLICIES

A. If this policy and any other auto insurance policy issued to you by us apply to the same accident, the maximum limit of our liability under all the policies shall not exceed the highest applicable limit of liability under any one policy.

B. This provision does not apply to Part C2 – Uninsured Motorists Coverage (Stacked) or Part C4 – Underinsured Motorists Coverage (Stacked).

C. No one will be entitled to receive duplicate payments for the same elements of loss under Part C2 – Uninsured Motorists Coverage (Stacked) or Part C4 – Underinsured Motorists Coverage (Stacked).

OUR RIGHT TO RE-COMPUTE PREMIUM

We established the premium for this policy based on the statements you made in the application for insurance. We have the right to re-compute the premium if we later obtain information which affects the premium we charged.

NOTICE

Your notice to our authorized agent shall be deemed to be notice to us.

71

468a

**CONSTITUTIONALITY CLAUSE**

The premium for, and the coverages of, this policy have been established in reliance upon the provisions of the Pennsylvania Motor Vehicle Financial Responsibility Law. In the event a court, from which there is no appeal, declares or enters a judgment the effect of which is to render the provisions of such statute invalid or unenforceable in whole or in part, we will have the right to recompute the premium payable for the policy and void or amend the provisions of the policy, subject to the approval of the Insurance Commissioner.

**PENNSYLVANIA NOTICE**

An Insurance Company, its agents, employees, or service contractors acting on its behalf, may provide services to reduce the likelihood of injury, death or loss. These services may include any of the following or related services incident to the application for, issuance, renewal or continuation of, a policy of insurance.

1. Surveys;
2. Consultation or advice; or
3. Inspections.

The "Insurance Act" of Pennsylvania provides that Exemption of Consultation Services the Insurance Company, its agents, employees or service contractors acting on its behalf, is not liable for damages from injury, death or loss occurring as a result of any act or omission by any person in the furnishing of or the failure to furnish these services.

The Act does not apply:

1. If the injury, death or loss occurred during the actual performance of the services and was caused by the negligence of the Insurance Company, its agents, employees or service contractors;
2. To consultation services required to be performed under a written service contract not related to a policy of insurance; or
3. If any acts or omissions of the Insurance

Company, its agents, employees or service contractors are judicially determined to constitute a crime, actual malice, or gross negligence.

IN WITNESS Whereof, we have caused this policy to be executed and attested.

Bruce Arneson, President

William Lockhorn, Chairman

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-1 APPEARS ON THE POLICY DECLARATIONS.

**PENNSYLVANIA AMENDATORY ENDORSEMENT**

This endorsement amends your policy as follows:

I. PART A – LIABILITY COVERAGE is amended as follows:

A. The following exclusion is added:
We do not provide Liability Coverage for any insured for bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle by any resident, including a family member of your household who is not listed on the Declarations page as a driver or operator.

B. The following provision (D.) is added to the Limit of Liability section of PART A:
D. Regardless of the limits of liability shown in the Declarations, the

72

73

10972-1

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 10972 APPEARS ON THE POLICY DECLARATIONS

limits of liability for bodily injury and property damage afforded by this policy to an insured who is both a regular user of your covered auto and is not a resident of your household other than:

1. You; or
2. An insured resident; or
3. Any family member;

shall not exceed the minimum limits for bodily injury or property damage.

II. PART D – COVERAGE FOR DAMAGE TO YOUR AUTO is amended as follows:

The following exclusion is added:

We will not pay for loss to your covered auto while being driven, maintained or used by any person who is a resident of your household and is not listed on the Declarations page as a driver or operator.

RENTAL REIMBURSEMENT / TRANSPORTATION EXPENSES

In consideration of the premium charged and paid, we will pay for:

A. Temporary transportation expenses incurred by you, an insured resident or any family member in the event of loss to your covered auto. We will pay for such expenses if the loss is caused by:

1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for any your covered auto.

2. Collision only if the Declarations indicate that Collision Coverage is provided for any your covered auto.

74

B. Loss of use expenses for which you or an insured resident become legally responsible in the event of loss to a non-owned auto. We will pay for loss of use expenses if the loss is caused by:

1. Other than collision only if the Declarations indicate that Other Than Collision Coverage is provided for any your covered auto.

2. Collision only if the Declarations indicate that Collision Coverage is provided for any your covered auto.

C. We will pay only expenses beginning when the auto is withdrawn from use for more than 24 hours. Our payment will be limited to that period of time reasonably required to repair or replace your covered auto or the non-owned auto.

D. The limit of liability shall not exceed the limit shown for this coverage in the Declarations. The total payment under this endorsement shall not exceed the actual cash value of your covered auto or non-owned auto at the time of loss. We will pay only if you, an insured resident or any family member rent an auto from a licensed rental car agency.

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 10973 APPEARS ON THE POLICY DECLARATIONS

10973 Includes copyrighted materials from Insurance Services Office, Inc. with its permission

TOWING AND LABOR COSTS COVERAGE

ISO PP 03 01 04 86

We will pay towing and labor costs incurred each time your covered auto or any non-owned auto is disabled, up to the amount shown in the Declarations as applicable to that vehicle. If a non-owned auto is disabled,

75

we will provide the broadest towing and labor costs coverage applicable to any your covered auto shown in the Declarations. We will only pay for labor performed at the place of disablement.

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-6 APPEARS ON THE POLICY DECLARATIONS

1037-3 (ISO PP 03 01 04 86) Copyright, Insurance Services Office, Inc. 1985, 1992.

## CUSTOMIZING PARTS OR EQUIPMENT COVERAGE
### (ADDITIONAL EQUIPMENT)

If the Declarations page shows a specific premium charged for Customizing Parts or Equipment Coverage, we will pay for direct and accidental loss to identified and scheduled customizing parts or equipment. This coverage is in addition to the $500 afforded under Part D for non-scheduled customizing parts or equipment. This coverage applies only if the equipment is permanently installed or attached to your covered auto or non-owned auto at the time of loss and is caused by:

1. Other than collision only if the Declarations page indicates that Other Than Collision Coverage is provided for that auto.

2. Collision only if the Declarations page indicates that Collision Coverage is provided for that auto.

As used in this endorsement, customizing parts or equipment means permanently installed or attached equipment, parts, devices, accessories, enhancements, and changes, other than those which are original manufacturer installed. Equipment installed or alterations made at a conversion facility to

76

your covered auto or any non-owned auto is not considered original manufacturer installed and must be identified and scheduled for this coverage to apply.

Customizing parts or equipment include but are not limited to:

1. Electronic equipment that receives or transmits audio, visual or data signals and is not designed solely for the reproduction of sound and any accessories used with such equipment.

2. Awnings, cabanas, cooking, dining, plumbing or refrigeration facilities, and any other facilities or equipment designed and used to provide additional living facilities.

3. Custom furnishings or equipment including:
   a. Special carpeting or insulation;
   b. Furniture or bars;
   c. Height-extending roofs including pop up roofs, raised roofs, bubble domes, and bubble windows;
   d. Custom murals, paintwork, decals or other graphics;
   e. Captain chairs, swivel chairs, or tables; or
   f. Custom chroming or gold plating.

4. Custom wheels, tires or spinners.

5. Body, engine, exhaust or suspension enhances.

6. Sun roof, moon roof, T-bar roof, or landau roof.

7. Custom grilles, louvers, side pipes, running boards, air dams, hood scoops or spoilers.

8. Satellite tracking devices if not permanently installed by the original manufacturer or their authorized representative.

9. Radios, stereos, CB radios, telephones, two-way mobile radios, scanners, televisions, video or audio cassette/DVD recorders, or personal computers.

10. Any compact disc systems, internet access systems, or video entertainment systems.

77

In addition, the provisions of the policy apply except:

11. Any ground effects package or suspension lowering or raising equipment.
12. Winches, anti-roll or anti-sway bars.
13. Any continental kit.

A. Exclusion 4, of Part D - Coverage For Damage to Your Auto does not apply to the extent that coverage is provided under this endorsement for audio, visual and data electronic equipment.
B. Exclusion 7 and 9 of Part D - Coverage For Damage To Your Auto does not apply to coverage provided by this endorsement.
C. The following exclusion is added:
We will not pay for loss to:
   a. Clothing or luggage;
   b. Business or office equipment;
   c. Articles which are sales samples or used in exhibitions.

PART D – LIMIT OF LIABILITY is amended as follows for coverage provided by this endorsement:
LIMIT OF LIABILITY
A. Is deleted in its entirety and replaced with the following:
A. Our limit of liability for loss to customizing parts or equipment will be the lesser of:
   1. The declared value of the scheduled customizing parts or equipment shown on the Declarations page;
   2. The actual cash value of the stolen or damaged property; or
   3. The amount necessary to repair or replace the customizing parts or equipment with other property of like kind and quality including, but not limited to, after-market parts.

The following sections are added to the LIMIT OF LIABILITY section in PART D.

78

E. Our payment for loss will be reduced by any applicable deductible shown in the Declarations.
F. If loss to more than one of your covered autos results from the same collision, only the highest applicable deductible will apply.

1037-6   Includes copyrighted materials from Insurance Services Office, Inc. with its permission

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-7 APPEARS ON THE POLICY DECLARATIONS

NAMED NON-OWNER COVERAGE

With respect to individuals and coverages described in the Declarations, the provisions of the policy apply unless modified by this endorsement.

I. DEFINITIONS
The Definitions Section is amended as follows:
The definition of your covered auto is replaced by the following:
Your covered auto means any auto on the date you become the owner.
This provision applies only:
A. If you acquire the auto during the policy period; and
B. For 14 days after you become the owner.
This insurance does not apply if other insurance applies with respect to any newly acquired autos.

II. PART A – LIABILITY COVERAGE
Part A is amended as follows:
A. The definition of insured is amended by deleting references to insured resident and family member.
Insured means you while operating

79

any non-owned auto or trailer with the express or implied permission of the owner.

B. The EXCLUSIONS Section is amended as follows:

Exclusion B.2. is replaced by the following:

We do not provide Liability Coverage for the ownership, maintenance or use of any vehicle, other than your covered auto, which is owned by you.

C. The Out of State Coverage provision is replaced by the following:

OUT OF STATE COVERAGE

If an auto accident to which this policy applies occurs in any state or province other than where you reside, we will interpret your policy for that accident as follows:

1. If the state or province has:

a. A financial responsibility or similar law specifying limits of liability for bodily injury or property damage higher than the limit shown in the Declarations, your policy will provide the higher specified limit.

b. A compulsory insurance or similar law requiring a nonresident to maintain insurance whenever the nonresident uses a vehicle in that state or province, your policy will provide at least the required minimum amounts and types of coverage.

2. No one will be entitled to duplicate payments for the same elements of loss.

80

III. PART C.1 & C.2 – UNINSURED MOTORISTS COVERAGE

Parts C.1. and C.2. are amended as follows:

A. The definition of insured is amended by deleting references to insured resident and family member.

Insured means you.

B. Part 2. of the definition of uninsured motor vehicle is replaced with the following:

Uninsured motor vehicle means a land motor vehicle or trailer of any type:

2. Which is a hit-and-run vehicle whose operator or owner cannot be identified and which hits or which causes an accident resulting in bodily injury without hitting:

a. You:

b. A vehicle which you are occupying;

c. Your covered auto; or

if there is no physical contact with the hit-and-run vehicle, the facts of the accident must be proved.

IV. PART C.3 & C.4 – UNDERINSURED MOTORISTS COVERAGE

Parts C.3 and C.4 are amended as follows:

A. The definition of insured is amended by deleting references to insured resident and family member.

Insured means you.

81

1037-7  Includes copyrighted materials from Insurance Services Office, Inc. with its permission.

473a

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-6 APPEARS ON THE POLICY DECLARATIONS

## ADDITIONAL INSURED - LESSOR

Any liability and any required no-fault coverages afforded by this policy for your leased auto also apply to the lessor named in the Declarations as an additional insured. This insurance is subject to the following additional provisions:

A. We will pay damages for which the lessor becomes legally responsible only if the damages arise out of acts or omissions of:

1. You, an insured resident, or any family member; or
2. Any other person except the lessor or any employee or agent of the lessor using your leased auto.

B. Your leased auto means:

1. An auto shown in the Declarations which you or an insured resident lease for a continuous period of at least six months under a written agreement which requires you or an insured resident to provide primary insurance for the lessor; and
2. Any substitute or replacement auto furnished by the lessor named in the Declarations.

C. If we terminate this policy, notice will also be mailed to the lessor.

D. The lessor is not responsible for payment of premiums.

E. The designation of the lessor as an additional insured shall not operate to increase our limits of liability.

1037-6 Includes copyrighted materials from Insurance Services Office, Inc. with its permission

82

THE FOLLOWING ENDORSEMENT ONLY APPLIES IF FORM 1037-9 APPEARS ON THE POLICY DECLARATIONS

## NAMED DRIVER EXCLUSION ENDORSEMENT

If you have asked us on your application (Form U-2 on the application) to exclude any person from coverage under this policy, then we will not pay damages, expenses or loss arising out of the maintenance or use of any auto or trailer by the excluded driver whether or not such maintenance or use was with the express or implied permission of the named insured. This includes any claim for damages made against you, an insured resident, family member or any other resident, family member or any other person or entity that is liable for an accident arising out of the operation of any auto by the excluded driver. This also includes any claim for damages for any negligence, which may be imputed by law to you, an insured resident, or family member arising out of the maintenance, operation or use of a motor vehicle by the excluded person.

The provisions of this Named Driver Exclusion Endorsement shall remain in effect for the term of the policy and for each renewal, reinstatement, substitute, modified, replacement or amended policy, unless discontinued by us.

1037-9

Form 1037

Pennsylvania (06/10)

83

474a

Form 1037

Pennsylvania (06/10)



Omni.
Insurance Group

# EXHIBIT "2"

11/04/2014 12:52 FAX                                                    ☑ 0001/0008

 **OMNI INSURANCE COMPANY**
**2018 POWERS FERRY ROAD**
**SUITE 400**
**ATLANTA, GA 30339**

**APPLICATION FOR PRIVATE PASSENGER AUTO INSURANCE**

| APPLICANT NAME AND ADDRESS | PRODUCER |
|---|---|
| SHAMEKA RENEE LAMAR | OREGON INSTANT AUTO (1000053279) |
| 2545 W SILVER ST | 2653 S 8TH ST |
| PHILADELPHIA, PA 19132 | PHILADELPHIA, PA 19148 |
| Home: 215-667-4949 | 215-755-8045 |
| | Producer Name: ROBERT L PALUMBO 357175 |

| PREVIOUS ADDRESS (if less than 6 Years) | POLICY #: 4140872 |
|---|---|
| | POLICY EFFECTIVE: |
| | September 1, 2012 to September 1, 2013 |

**APPLICANT INFORMATION**

| First | Middle | Last | Suffix | Birth Date | Marital Status | Sex | SSN |
|---|---|---|---|---|---|---|---|
| SHAMEKA | RENEE | LAMAR | | 08/17/1980 | Sngl w/ cust of kids | Female | 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 |

List all persons over 14 years of age who are residents of the same household, LICENSED OR NOT.

| Name | Relationship | Excluded | License State | License Number | Date Licensed |
|---|---|---|---|---|---|
| SHAMEKA RENEE LAMAR | Self | No | PA | 26387713 | 08/01/2000 |

**EMPLOYMENT INFORMATION**

| Applicant | Employer | |
|---|---|---|
| SHAMEKA RENEE LAMAR | | |
| | Occupation | UNEMPLOYED |
| | Years in Current Occupation | |
| Work Phone: | Years with Current Employer | |
| | Years with Previous Employer | |

**VEHICLES    [ NO ] - NAMED NON-OWNER POLICY? (If "Yes", complete Named Non-Owner Automobile Endorsement)**

| VEH | VIN | Year Make and Model | Body Style | Symbol Odometer |
|---|---|---|---|---|
| 1 | 3GNEC13T13G139408 | 2003 Chevrolet AVALANCHE 1500 BASE/Z66/Z71 | Utility Vehicle - Two Wheel Drive 4 Door | 13 |

**VEHICLES (Cont.)**

| VEH | Vehicle Use | Damaged | Anti-Theft | Restraint System |
|---|---|---|---|---|
| 1 | Pleasure | No | Antitheft Device Installed | Double Airbag |

**VEHICLE RATING**

| VEH | Garaging Address (if different) | State Registered | Territory | Rate Class | Points |
|---|---|---|---|---|---|
| 1 | | | 1 | SF32 | 3 |

**ACCIDENT / CONVICTION POINTS - PAST 35 MONTHS**

| Name | Date | Location Description | Points |
|---|---|---|---|
| 1. SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold LOADED FROM CLUE | 3 |
| | | • PD Paid $1,798.00 | |

**COVERAGES**

The applicant elects the following tort option Limited Tort.
Appropriate Tort Option selection notice must be signed by the applicant and attached to this application.

| | |
|---|---|
| Bodily Injury Liability | 15,000 per person / 30,000 per occurrence |
| Property Damage Liability | 5,000 per occurrence |
| Medical Payments | 5,000 per person |
| Income Loss Protection | Rejected |
| Funeral Benefits | Rejected |
| Accidental Death | Rejected |

9/1/2012 11:13:53 AM                                              Page 1 of 13

11/04/2014 12:53 FAX                                                    ☑ 0002/0008

| | |
|---|---|
| Extraordinary Medical Expenses | Rejected |
| Uninsured Motorist BI | Rejected |
| Stack benefits | NO |
| Underinsured Motorist BI | Rejected |
| Stack benefits | NO |
| | Veh 1 |
| Collision Deductible | Rejected |
| Comprehensive Deductible | Rejected |
| Rental Reimbursement | Rejected |
| Towing and Labor | Rejected |
| Additional Custom Parts and Equipment | Rejected |

### DISCOUNTS AND SURCHARGES

| | |
|---|---|
| Vehicle 1 | Double Airbag |

### PREMIUMS

| Coverage | Veh 1 |
|---|---|
| Bodily Injury Liability Premium | $695.24 |
| Property Damage Liability Premium | $376.30 |
| Medical Payments Premium | $392.12 |
| Total ($1,464.66) | $1,464.66 |
| Deposit | $150.00 |
| Pay Plan 43 | 12 Month Extended |
| Rating Tier | K |
| Policy Tier | K |
| Deposit Fee | $12.00 |
| Policy Fee | $15.00 |

### PRIOR COVERAGE - 6 months continuous prior coverage with no more than 30 days lapse

| Name of Latest Carrier | Policy Number | Termination Date | Plan Coverage | Years | Policy Written Through Your Agency |
|---|---|---|---|---|---|
| | | | No | | No |

### HOMEOWNER - Proof will be required to receive the discount.

| | |
|---|---|
| Residency Status | Rent |
| Residency Type | Other |
| Acceptable proof of home ownership includes mortgage coupon/statement, property tax records, or deed. | |

### GENERAL INFORMATION -- During the past three years, has the applicant, any household member, or any driver:

| | | | | |
|---|---|---|---|---|
| Date agent last inspected vehicle | | | If yes, explain | |
| Any other auto insurance in household? (Include any provided by an employer) | NO | Has any person in the household had a license suspension or revocation in the last 35 months? | NO | |
| If yes, explain | | If yes, explain | | |
| Had a Comprehensive claim of $1,450 or more in last 35 months? | NO | Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)? | NO | |
| If yes, how many | | | | |
| Any coverage declined, cancelled, or non-renewed during the last 3 years? | NO | Do all drivers reside in the named insured's household? | YES | |
| If yes, explain | | If no, explain | | |
| Have health problems or physical, mental or emotional handicap or disability that would impair driving ability? | NO | Are all vehicles garaged in Pennsylvania for at least 10 months per year? | YES | |
| If yes, explain | | If no, explain | | |
| Has vehicle ever been salvaged? | NO | Are there any occasional operators not rated as previously described? | NO | |
| If yes, explain | | If yes, explain | | |
| Any vehicle "Gray Market" (i.e. not manufactured for original sale in the U.S.)? | NO | Are there any other cars in the household or available for regular use not previously described? | NO | |
| If yes, explain | | If yes, explain | | |
| Is vehicle titled in any name other than the named insured? | NO | Does any listed vehicle have unrepaired damage? | NO | |
| If yes, who & why? | | If yes, describe | | |
| Any vehicles listed on this application used for hire (taxi, limo, etc.), commercial or business purposes, delivery (pizza, newspaper, etc.), or used in the course or scope of your employment? | NO | Has any operator been licensed in the U.S. or Canada for less than 5 years (except ages 16-19)? | | |
| | | If yes, explain | | |

### BINDER/SIGNATURE

| INSURANCE BINDER | IF THE "BINDER" BOX TO THE LEFT IS COMPLETED, THE FOLLOWING CONDITIONS APPLY: |
|---|---|
| EFFECTIVE DATE 09/01/2012 / EXPIRATION DATE 10/01/2012 | THIS COMPANY BINDS THE KIND(S) OF INSURANCE STIPULATED ON THIS APPLICATION. THIS INSURANCE IS SUBJECT TO THE TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY(IES) IN CURRENT USE BY THE COMPANY. |

9/1/2012 11:13:53 AM                                                    Page 2 of 13

**478a**

@0003/0008

11/04/2014 12:54 FAX

| TIME 10:59 AM ET | ☑ 12:01 AM ☐ NOON | THIS BINDER MAY BE CANCELLED BY THE INSURED BY SURRENDER OF THIS BINDER OR BY WRITTEN NOTICE TO THE COMPANY STATING WHEN CANCELLATION WILL BE EFFECTIVE. THIS BINDER MAY BE CANCELLED BY THE COMPANY BY NOTICE TO THE INSURED IN ACCORDANCE WITH THE POLICY CONDITIONS. THIS BINDER IS CANCELLED WHEN REPLACED BY A POLICY. IF THIS BINDER IS NOT REPLACED BY A POLICY, THE COMPANY IS ENTITLED TO CHARGE A PREMIUM FOR THE BINDER ACCORDING TO THE RULES AND RATES IN USE BY THE COMPANY. THE QUOTED PREMIUM IS SUBJECT TO VERIFICATION AND ADJUSTMENT, WHEN NECESSARY, BY THE COMPANY. |
| --- | --- | --- |
| ☐ COVERAGE IS NOT BOUND | | |

**NOTICE OF INSURANCE PRACTICES**
I UNDERSTAND THAT TO CALCULATE AN ACCURATE PRICE FOR MY INSURANCE, THE COMPANY MAY OBTAIN INFORMATION FROM THIRD PARTIES, SUCH AS CONSUMER REPORTING AGENCIES THAT PROVIDE DRIVING, CLAIMS AND CREDIT HISTORIES FOR YOU AND ALL OTHERS LISTED ON THIS APPLICATION. THE COMPANY OR ITS AFFILIATES MAY OBTAIN NEW OR UPDATED INFORMATION INFORMATION CONTAINED IN THE CREDIT HISTORY. THE COMPANY OR ITS AFFILIATES MAY OBTAIN NEW OR UPDATED INFORMATION TO CALCULATE MY RENEWAL PREMIUM OR SERVICE MY INSURANCE. I MAY ACCESS INFORMATION ABOUT ME AND CORRECT IT IF INACCURATE. IN SOME CASES, THE LAW PERMITS THE COMPANY TO DISCLOSE THE INFORMATION IT COLLECTS WITHOUT AUTHORIZATION, HOWEVER, THE COMPANY WILL NOT SHARE PERSONAL INFORMATION WITH NONAFFILIATED COMPANIES FOR THEIR MARKETING PURPOSES WITHOUT CONSENT. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. I UNDERSTAND THE DECISION TO REQUEST A CREDIT REPORT IS NOT BASED ON RACE, COLOR, CREED, MARITAL STATUS, SEX, OR NATIONAL ORIGIN. I UNDERSTAND I SHALL BE ADVISED HOW TO OBTAIN A COPY OF MY REPORT IF AN ADVERSE UNDERWRITING DECISION OCCURS.

**FEES**
I ACKNOWLEDGE THAT THE ELECTRONIC FUNDS TRANSFER (EFT) PAYMENT PLAN INCLUDES A $5.00 SERVICE FEE PER PAYMENT. I ACKNOWLEDGE THAT ALL OTHER PAYMENT PLANS INCLUDE A $12.00 NON-STANDARD INSTALLMENT FEE PER PAYMENT. I UNDERSTAND AND AGREE TO PAY A CREDIT CARD FEE OF $3.00 FOR ANY PAYMENT MADE TO THE COMPANY WITH A CREDIT CARD OR DEBIT CARD. I ALSO AGREE TO PAY A $12.00 LATE PAYMENT FEE DURING THE POLICY TERM AND EACH RENEWAL POLICY TERM WHEN A PAYMENT IS RECEIVED BY THE COMPANY AFTER THE PREMIUM DUE DATE. I UNDERSTAND AND AGREE TO PAY A REINSTATEMENT FEE OF $15.00 EACH TIME THE POLICY IS REINSTATED. REINSTATEMENT IS NOT A WAIVER OF RIGHTS BY THE COMPANY AND DOES NOT IMPOSE FURTHER DUTIES ON THE COMPANY AS TO FUTURE CANCELLATIONS. REINSTATEMENT WILL NOT TAKE AFFECT IF THE CHECK OR CREDIT CARD I SUBMIT FOR REINSTATEMENT IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON. I UNDERSTAND AND AGREE TO PAY A FINAL CANCELLATION FEE OF $50.00 IF THE COMPANY CANCELS THIS POLICY DUE TO MY FAILURE TO PAY ANY PREMIUM WHEN DUE. I UNDERSTAND AND AGREE TO PAY A $30.00 FEE FOR EVERY PAYMENT RETURNED TO THE COMPANY FOR NON-SUFFICIENT FUNDS (NSF). I AGREE TO PAY A $15.00 POLICY FEE TO BE COLLECTED IN THE INITIAL PAYMENT FOR EACH POLICY TERM. I UNDERSTAND THAT MY POLICY WILL BE CANCELLED IF I AM UNWILLING TO PAY ANY OF THESE FEES.

**IN NO EVENT SHALL COVERAGE BE EFFECTIVE PRIOR TO THE DATE
AND HOUR OF COMPLETION OF THIS APPLICATION**

**APPLICANT'S STATEMENT**
I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY. I also agree to pay any surcharges applicable under Company rules that are necessitated by inaccurate or incomplete statements. I understand that my policy will be cancelled if I am willing to pay the additional premium.
Note: In connection with your request for a premium quotation: (1) we may obtain consumer reports or personal or privileged information from third parties; (2) in certain circumstances, such information, as well as other personal or privileged information subsequently collected by us, may be disclosed to third parties without your authorization, but it is not our practice to do so; (3) you have the right to access and correct all personal information collected; and (4) at your request we will: (a) confirm whether a consumer report was requested and, if so, provide the name and address of the consumer reporting agency that furnished it; and (b) provide you more detailed information regarding our collection, use, and disclosure of personal information, and your rights to access and correct such information. I also acknowledge that the Company may obtain consumer report in the future for an update, renewal or extension of this insurance.

I agree that if I pay my initial premium by check, the coverage afforded by this policy is conditioned on the check being honored by the bank when presented for payment. If the check is not honored, Omni shall be deemed not to have accepted the check and this policy shall be void from inception.

Insurance coverage is conditional upon the payment of premium and payment by electronic funds transfer, check, draft, debit card, credit card or other remittance is not considered payment until it is presented to and paid by the drawee financial institution. IF THE TRANSFER, CHECK, DEBIT CARD OR CREDIT CARD OR OTHER REMITTANCE I SUBMIT WITH THIS APPLICATION IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON, COVERAGE WILL NOT TAKE EFFECT. The Company shall be deemed not to have accepted the payment and this policy shall be void.

I certify that:
• I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR or OCCASIONAL basis. This includes children away from home or away at school. I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
• Each vehicle listed in this application is garaged at the zip code provided in this application for my principle residence for ten (10) or more months each year and the garaging address of all listed auto(s) is the Pennsylvania address listed on this application.
• I have reported any driver that commutes out of state for work or school one or more times per week to the Company and agree to notify the Company prior to any such future commuting.
• I have reported any business or commercial use of my auto(s) to the Company and agree to notify the Company prior to any future business use. I understand that the Company does not cover losses if my vehicle is being used for business or commercial purposes and these purposes are not disclosed prior to the loss.
• If I have received coverage for damages to my auto(s), I have reported to the Company all unrepaired damage or glass breakage.
• The Custom or Additional Equipment I want covered has been declared and is listed on this application.

The premium for the coverages itemized on this application are based upon rates in excess of standard rates in the Commonwealth of Pennsylvania Automobile Insurance Plan. I understand that discounts are available for drivers who meet the requirements for restraint systems, anti-theft devices, and driver improvement courses.

9/1/2012 11:13:53 AM

Page 3 of 13

**479a**

11/04/2014 12:55 FAX                                                                   @0004/0008

Regardless of the limits of liability shown on the Declarations page, the limits of liability afforded by this policy to anyone you give permission to drive the insured auto, who is not listed on the Declarations page prior to the loss, will not exceed the minimum statutory coverage required under Pennsylvania law.

**FRAUD**
The insurance policy is issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information regarding license and driving history of the undersigned, "family members" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or and "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

To the extent that we make payments to you under this policy and our subsequent investigation reveals your involvement in fraud or misrepresentation in the presentation of a claim, you must indemnify the Company for all payments made for that claim.

Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such a person to criminal and civil penalties.

APPLICANT'S SIGNATURE (applies to the sections listed below)
• Fees
• Applicant's Statement
• Fraud

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. I understand that the coverage selection and limit choices indicated here or in any state supplement and I further declare that I will notify Omni Indemnity Company by phone, e-mail or in writing if any information on this application changes while the policy, or any renewal thereof, is in force. By signing below, I agree that this application becomes a part of my policy, is a legal document, and acknowledge that I have read the warnings and statements listed on this application.

_Shaneka Oliver_                                          _9/1/2012_
Signature of Applicant POLICY #: 4140872                      Date

**AGENT'S SIGNATURE**

I certify that to the best of my knowledge, all information contained herein is correct; the statements made herein are those of the applicant and all questions have been answered by the applicant. I have explained all coverages and options to the applicant; and the applicant and I are retaining a duplicate signed copy hereof. I am legally qualified to submit this application on behalf of the applicant.

1000053279   _9/1/2012_

_____                        Agent         Date
Signature of Agent                           Number

OMNI PA APP (04/11)

9/1/2012 11:13:53 AM                                          Page 4 of 13

11/04/2014 12:55 FAX                                                          @0005/0008

## IMPORTANT NOTICE

**Benefits and Limits Notice**

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of 75 Pa. C.S.A. Section 1715(d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident or up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

You may be eligible for discounts mandated by Act 6 of 1990: (1) on first party benefits coverage if your car is equipped with a passive restraint system; (2) on comprehensive coverage if your car is equipped with a passive antitheft device; or (3) if named insured is 55 or older and has successfully completed a motor vehicle driver improvement course approved by PennDOT. See your agent for details.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

APPLICANT'S SIGNATURE POLICY #: 4140872:                    DATE:

_Shameka Lamar_                                            9/1/2012

SHAMEKA RENEE LAMAR
OMNI PA BENNOT (08/08)

9/1/2012 11:13:53 AM                                        Page 6 of 13

**481a**

11/04/2014 12:56 FAX                                                    @0008/0008

## TORT OPTION SELECTION NOTICE TO NAMED INSUREDS

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The minimum motor vehicle insurance coverage and limits mandated by the Commonwealth are: Bodily Injury Liability - $15,000 for one person in any one accident and $30,000 for two or more persons in any one accident; Property Damage Liability - $5,000 per accident; and Medical Benefits - $5,000. The annual premium for these basic coverages are presented below.

A. "Limited Tort" Option - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies.

The annual premium for basic coverage as required by law under this "Limited tort" option is $1,464.66.
Additional coverages under this option are available at additional cost.

B. "Full Tort" Option - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers.

The annual premium for basic coverage as required by law under the "Full Tort" option is $2,190.23.
Additional coverage under this option is available at additional cost.

C. You may contact your insurance agent, broker or company to discuss the cost of other coverages.

D. If you wish to choose the "Limited tort" option described in paragraph A, you must sign this notice where indicated below and return it. If you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full tort" premium.

I WISH TO CHOOSE THE "LIMITED TORT" OPTION DESCRIBED IN PARAGRAPH A.

APPLICANT'S SIGNATURE   POLICY #: 4140872:                    DATE:

_Shameka Renee Lamar_                                         _9/1/2012_

SHAMEKA RENEE LAMAR

E. If you wish to choose the "Full Tort" option described in paragraph B, you may sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full Tort" premium.

I wish to choose the "Full Tort" option described in paragraph B:

APPLICANT'S SIGNATURE   POLICY #: 4140872:                    DATE:

_____

SHAMEKA RENEE LAMAR

OMNI PA TORTOPT (08/08)

9/1/2012 11:13:53 AM                                          Page 7 of 13

**482a**

11/04/2014 12:57 FAX                                              @0007/0008

## UNINSURED MOTORIST COVERAGE
### REJECTION OF UNINSURED MOTORIST PROTECTION

Uninsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who fails to have any insurance coverage.

Uninsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want uninsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: 4140872:                 DATE:

SHAMEKA RENEE LAMAR
OMNI PA UMREJ (08/08)

9/1/2012 11:13:53 AM                                        Page 9 of 13

11/04/2014 12:58 FAX                                                    ☑0008/0008

## UNDERINSURED MOTORIST COVERAGE
## REJECTION OF UNDERINSURED MOTORIST PROTECTION

Underinsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims and whose policy limits are less than your underinsured motorists coverage limits.

Underinsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want underinsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: 4140872:               DATE:

SHAMEKA RENEE LAMAR
OMNI PA UIMREJ (08/08)

484a

EXHIBIT "2"

11/04/2014 12:52 FAX                                                    @0001/0008



## OMNI INSURANCE COMPANY
## 2018 POWERS FERRY ROAD
## SUITE 400
## ATLANTA, GA 30339

**APPLICATION FOR PRIVATE PASSENGER AUTO INSURANCE**

| APPLICANT NAME AND ADDRESS | PRODUCER |
|---|---|
| SHAMEKA RENEE LAMAR | OREGON INSTANT AUTO (1000053279) |
| 2545 W SILVER ST | 2653 S 8TH ST |
| PHILADELPHIA, PA 19132 | PHILADELPHIA, PA 19148 |
| Home: 215-687-4949 | 215-755-8045 |
| | Producer Name: ROBERT L PALUMBO 357175 |

| PREVIOUS ADDRESS (if less than 5 Years) | POLICY #: 4140072 |
|---|---|
| | POLICY EFFECTIVE: |
| | September 1, 2012 to September 1, 2013 |

**APPLICANT INFORMATION**

| First | Middle | Last | Suffix | Birth Date | Marital Status | Sex | SSN |
|---|---|---|---|---|---|---|---|
| SHAMEKA | RENEE | LAMAR | | 08/17/1980 | Sngl w/ cust of kids | Female | 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 |

List all persons over 14 years of age who are residents of the same household, LICENSED OR NOT.

| Name | Relationship | Excluded | License State | License Number | Date Licensed |
|---|---|---|---|---|---|
| SHAMEKA RENEE LAMAR | Self | No | PA | 26387713 | 08/01/2000 |

**EMPLOYMENT INFORMATION**

| Applicant | Employer |
|---|---|
| SHAMEKA RENEE LAMAR | |
| | Occupation                                         UNEMPLOYED |
| | Years In Current Occupation |
| Work Phone: | Years with Current Employer |
| | Years with Previous Employer |

**VEHICLES**   [ NO ] - NAMED NON-OWNER POLICY? (If "Yes", complete Named Non-Owner Automobile Endorsement)

| VEH | VIN | Year Make and Model | Body Style | Symbol Odometer |
|---|---|---|---|---|
| 1 | 3GNEC13T13G139408 | 2003 Chevrolet AVALANCHE 1500 BASE/Z66/Z71 | Utility Vehicle - Two Wheel Drive 4 Door | 13 |

**VEHICLES (Cont.)**

| VEH | Vehicle Use | Damaged | Anti-Theft | Restraint System |
|---|---|---|---|---|
| 1 | Pleasure | No | Antitheft Device Installed | Double Airbag |

**VEHICLE RATING**

| VEH | Garaging Address (If different) | State Registered | Territory | Rate Class | Points |
|---|---|---|---|---|---|
| 1 | | | 1 | SF32 | 3 |

**ACCIDENT / CONVICTION POINTS - PAST 36 MONTHS**

| Name | Date | Location Description | Points |
|---|---|---|---|
| 1. SHAMEKA RENEE LAMAR | 11/03/2009 | At-Fault Accident Over Threshold LOADED FROM CLUE | 3 |
| | | • PD Paid $1,798.00 | |

**COVERAGES**

The applicant elects the following tort option Limited Tort.
Appropriate Tort Option selection notice must be signed by the applicant and attached to this application.

| | |
|---|---|
| Bodily Injury Liability | 15,000 per person / 30,000 per occurrence |
| Property Damage Liability | 5,000 per occurrence |
| Medical Payments | 5,000 per person |
| Income Loss Protection | Rejected |
| Funeral Benefits | Rejected |
| Accidental Death | Rejected |

9/1/2012 11:13:53 AM                                                  Page 1 of 13

**486a**

11/04/2014 12:53 FAX                                                            @0002/0008

| | |
|---|---|
| Extraordinary Medical Expenses | Rejected |
| Uninsured Motorist BI | Rejected |
| Stack benefits | NO |
| Underinsured Motorist BI | Rejected |
| Stack benefits | NO |
| | Veh 1 |
| Collision Deductible | Rejected |
| Comprehensive Deductible | Rejected |
| Rental Reimbursement | Rejected |
| Towing and Labor | Rejected |
| Additional Custom Parts and Equipment | Rejected |

**DISCOUNTS AND SURCHARGES**
Vehicle 1                                                          Double Airbag

**PREMIUMS**

| Coverage | Veh 1 |
|---|---|
| Bodily Injury Liability Premium | $696.24 |
| Property Damage Liability Premium | $376.30 |
| Medical Payments Premium | $392.12 |
| Total ($1,464.66) | $1,464.66 |
| Deposit | $150.00 |
| Pay Plan 43 | 12 Month Extended |
| Rating Tier | X |
| Policy Tier | X |
| | |
| Deposit Fee | $12.00 |
| Policy Fee | $15.00 |

**PRIOR COVERAGE - 6 months continuous prior coverage with no more than 30 days lapse**

Name of Latest Carrier    Policy Number    Termination Date    Plan Coverage    Years    Policy Written Through Your Agency
                                                        No                                        No

**HOMEOWNER - Proof will be required to receive the discount.**
Residency Status                                                                    Rent
Residency Type                                                                      Other
Acceptable proof of home ownership includes mortgage coupon/statement, property tax records, or deed.

**GENERAL INFORMATION -- During the past three years, has the applicant, any household member, or any driver:**

| | | | |
|---|---|---|---|
| Date agent last inspected vehicle | | If yes, explain | |
| Any other auto insurance in household? (Include any provided by an employer) | NO | Has any person in the household had a license suspension or revocation in the last 35 months? | NO |
| If yes, explain | | If yes, explain | |
| Had a Comprehensive claim of $1,450 or more in last 35 months? | NO | | |
| If yes, how many | | Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)? | NO |
| Any coverage declined, cancelled, or non-renewed during the last 3 years? | NO | Do all drivers reside in the named insured's household? | YES |
| If yes, explain | | If no, explain | |
| Have health problems or physical, mental or emotional handicap or disability that would impair driving ability? | | Are all vehicles garaged in Pennsylvania for at least 10 months per year? | YES |
| If yes, explain | | If no, explain | |
| Has vehicle ever been salvaged? | NO | Are there any occasional operators not rated as previously described? | NO |
| | | If yes, explain | |
| Any vehicle "Gray Market" (i.e. not manufactured for original sale in the U.S.)? | NO | Are there any other cars in the household or available for regular use not previously described? | NO |
| If yes, explain | | If yes, explain | |
| Is vehicle titled in any name other than the named insured? | NO | Does any listed vehicle have unrepaired damage? | NO |
| | | If yes, describe | |
| Any vehicles listed on this application used for hire (taxi, limo, etc.), commercial or business purposes, delivery (pizza, newspaper, etc.), or used in the course or scope of your employment? | NO | Has any operator been licensed in the U.S. or Canada for less than 3 years (except ages 16-19)? | NO |
| | | If yes, explain | |

**BINDER/SIGNATURE**

| INSURANCE BINDER | IF THE "BINDER" BOX TO THE LEFT IS COMPLETED, THE FOLLOWING CONDITIONS APPLY: THIS COMPANY BINDS THE KIND(S) OF INSURANCE STIPULATED ON THIS APPLICATION. THIS INSURANCE IS SUBJECT TO THE TERMS, CONDITIONS AND LIMITATIONS OF THE POLICY(IES) IN CURRENT USE BY THE COMPANY. |
|---|---|
| EFFECTIVE DATE: 09/01/2012   EXPIRATION DATE: 10/01/2012 | |

9/1/2012 11:13:53 AM                                                          Page 2 of 13

**487a**

11/04/2014 12:54 FAX                                                    ☒0003/0008

| TIME 10:59 AM ET | ☑ 12:01 AM | THIS BINDER MAY BE CANCELLED BY THE INSURED BY SURRENDER OF THIS BINDER OR BY WRITTEN NOTICE TO THE COMPANY STATING WHEN CANCELLATION WILL BE EFFECTIVE. THIS BINDER MAY BE CANCELLED BY THE COMPANY BY NOTICE TO THE INSURED IN ACCORDANCE WITH THE POLICY CONDITIONS. THIS BINDER IS CANCELLED WHEN REPLACED BY A POLICY. IF THIS BINDER IS NOT REPLACED BY A POLICY, THE COMPANY IS ENTITLED TO CHARGE A PREMIUM FOR THE BINDER ACCORDING TO THE RULES AND RATES IN USE BY THE COMPANY. THE QUOTED PREMIUM IS SUBJECT TO VERIFICATION AND ADJUSTMENT, WHEN NECESSARY, BY THE COMPANY. |
|  | ☐ NOON |  |
|  | ☐ COVERAGE IS NOT BOUND |  |

**NOTICE OF INSURANCE INFORMATION PRACTICES**
I UNDERSTAND THAT TO CALCULATE AN ACCURATE PRICE FOR MY INSURANCE, THE COMPANY MAY OBTAIN INFORMATION FROM THIRD PARTIES, SUCH AS CONSUMER REPORTING AGENCIES THAT PROVIDE DRIVING, CLAIMS AND CREDIT HISTORIES FOR YOU AND ALL OTHERS LISTED ON THIS APPLICATION. THE COMPANY MAY USE A CREDIT-BASED INSURANCE SCORE BASED ON THE INFORMATION CONTAINED IN THE CREDIT HISTORY. THE COMPANY OR ITS AFFILIATES MAY OBTAIN NEW OR UPDATED INFORMATION TO CALCULATE MY RENEWAL PREMIUM OR SERVICE MY INSURANCE. I MAY ACCESS INFORMATION ABOUT ME AND CORRECT IF INACCURATE. IN SOME CASES, THE LAW PERMITS THE COMPANY TO DISCLOSE THE INFORMATION IT COLLECTS WITHOUT AUTHORIZATION. HOWEVER, THE COMPANY WILL NOT SHARE PERSONAL INFORMATION WITH NONAFFILIATED COMPANIES FOR THEIR MARKETING PURPOSES WITHOUT CONSENT. YOU HAVE THE RIGHT TO REVIEW YOUR PERSONAL INFORMATION IN OUR FILES AND CAN REQUEST CORRECTION OF ANY INACCURACIES. A MORE DETAILED DESCRIPTION OF YOUR RIGHTS AND OUR PRACTICES REGARDING SUCH INFORMATION IS AVAILABLE UPON REQUEST. I UNDERSTAND THE DECISION TO REQUEST A CREDIT REPORT IS NOT BASED ON RACE, COLOR, CREED, MARITAL STATUS, SEX, OR NATIONAL ORIGIN. I UNDERSTAND I SHALL BE ADVISED HOW TO OBTAIN A COPY OF ANY REPORT IF AN ADVERSE UNDERWRITING DECISION OCCURS.

**FEES**
I ACKNOWLEDGE THAT THE ELECTRONIC FUNDS TRANSFER (EFT) PAYMENT PLAN INCLUDES A $5.00 SERVICE FEE PER PAYMENT. I ACKNOWLEDGE THAT ALL OTHER PAYMENT PLANS INCLUDE A $12.00 NON-STANDARD INSTALLMENT FEE PER PAYMENT. I UNDERSTAND AND AGREE TO PAY A CREDIT CARD FEE OF $3.00 FOR ANY PAYMENT MADE TO THE COMPANY WITH A CREDIT CARD OR DEBIT CARD. I ALSO AGREE TO PAY A $12.00 LATE PAYMENT FEE DURING THE POLICY TERM AND EACH RENEWAL POLICY TERM WHEN A PAYMENT IS RECEIVED BY THE COMPANY AFTER THE PREMIUM DUE DATE. I UNDERSTAND AND AGREE TO PAY A REINSTATEMENT FEE OF $15.00 EACH TIME MY CANCELLED POLICY IS REINSTATED. REINSTATEMENT IS NOT A WAIVER OF RIGHTS BY THE COMPANY AND DOES NOT IMPOSE FURTHER DUTIES ON THE COMPANY AS TO FUTURE CANCELLATIONS. REINSTATEMENT WILL NOT TAKE AFFECT IF THE CHECK OR CREDIT CARD I SUBMIT FOR REINSTATEMENT IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON. I UNDERSTAND AND AGREE TO PAY A FINAL CANCELLATION FEE OF $50.00 IF THE COMPANY CANCELS THIS POLICY DUE TO MY FAILURE TO PAY ANY PREMIUM WHEN DUE. I UNDERSTAND AND AGREE TO PAY A $30.00 FEE FOR EVERY PAYMENT RETURNED TO THE COMPANY FOR NON-SUFFICIENT FUNDS (NSF). I AGREE TO PAY A $15.00 POLICY FEE TO BE COLLECTED IN THE INITIAL PAYMENT FOR EACH POLICY TERM. I UNDERSTAND THAT MY POLICY WILL BE CANCELLED IF I AM UNWILLING TO PAY ANY OF THESE FEES.

**IN NO EVENT SHALL COVERAGE BE EFFECTIVE PRIOR TO THE DATE AND HOUR OF COMPLETION OF THIS APPLICATION**

**APPLICANT'S STATEMENT**
I hereby declare that the information provided to the Company when purchasing my Personal Auto Policy is true. I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY. I also agree to pay any surcharges applicable under Company rules that are necessitated by inaccurate or incomplete statements. I understand that my policy will be cancelled if I am willing to pay the additional premium.
Notes in connection with your request for a premium quotation: (1) we may obtain consumer reports or personal or privileged information from third parties; (2) in certain circumstances, such information, as well as other personal or privileged information subsequently collected by us, may be disclosed to third parties without your authorization, but it is not our practice to do so; (3) you have the right to access and correct all personal information collected; and (4) at your request we will: (a) confirm whether a consumer report was requested and, if so, provide the name and address of the consumer reporting agency that furnished it; and (b) provide you more detailed information regarding our collection, use, and disclosure of personal information, and your rights to access and correct such information. I also acknowledge that the Company may obtain consumer report in the future for an update, renewal or extension of this insurance.

I agree that if I pay my initial premium by check, the coverage afforded by this policy is conditional on the check being honored by the bank when presented for payment. If the check in not honored, Omni shall be deemed not to have accepted the check and this policy shall be void from inception.

Insurance coverage is conditional upon the payment of premium and payment by electronic funds transfer, check, draft, debit card, credit card or other remittance is not considered payment until it is presented to and paid by the drawee financial institution. IF THE TRANSFER, CHECK, DEBIT CARD OR CREDIT CARD OR OTHER REMITTANCE I SUBMIT WITH THIS APPLICATION IS NOT HONORED BY THE FINANCIAL INSTITUTION DRAWN ON, COVERAGE WILL NOT TAKE EFFECT; The Company shall be deemed not to have accepted the payment and this policy shall be void.

I certify that:
• I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR or OCCASIONAL basis. This includes children away from home or away at school. I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s).
• Each vehicle listed in this application is garaged at the zip code provided in this application for my principle residence for ten (10) or more months each year and the garaging address of all listed auto(s) is the Pennsylvania address listed on this application.
• I have reported any driver that commutes out of state for work or school one or more times per week to the Company and agree to notify the Company prior to any such future commuting.
• I have reported any business or commercial use of my auto(s) to the Company and agree to notify the Company prior to any future business use. I understand that the Company does not cover losses if my vehicle is being used for business or commercial purposes and these purposes are not disclosed prior to the loss.
• If I have requested coverage for damages to my auto(s), I have reported to the Company all unrepaired damage or glass breakage.
• The Custom or Additional Equipment I want covered has been declared and is listed on this application.

The premium for the coverages insured in this application are based upon rates in excess of standard rates in the Commonwealth of Pennsylvania Automobile Insurance Plan. I understand that discounts are available for drivers who meet the requirements for restraint systems, anti-theft devices, and driver improvement courses.

9/1/2012 11:13:53 AM                                                    Page 3 of 13

**488a**

11/04/2014 12:55 FAX                                                    ☒0004/0008

Regardless of the limits of liability shown on the Declarations page, the limits of liability afforded by this policy to anyone you give permission to drive the insured auto, who is not listed on the Declarations page prior to the loss, will not exceed the minimum statutory coverage required under Pennsylvania law.

FRAUD
The insurance policy is issued by Omni Insurance Company in reliance on the information provided in the insurance application, including, but not limited to information regarding license and driving history of the undersigned, "family members" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or and "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim.

To the extent that we make payments to you under this policy and our subsequent investigation reveals your involvement in fraud or misrepresentation in the presentation of a claim, you must indemnify the Company for all payments made for that claim.

Any person who knowingly and with intent to defraud any insurance company or other person, files an application for insurance or statement of claim containing any materially false information or conceals for the purpose of misleading, information concerning any fact material thereto commits a fraudulent insurance act, which is a crime and subjects such a person to criminal and civil penalties.

APPLICANT'S SIGNATURE (applies to the sections listed below)
• Fees
• Applicant's Statement
• Fraud

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. I understand that the coverage selection and limit choices indicated here or in any state supplement and I further declare that I will notify Omni Indemnity Company by phone, e-mail or in writing if any information on this application changes while the policy, or any renewal thereof, is in force. By signing below, I agree that this application becomes a part of my policy, is a legal document, and acknowledge that I have read the warnings and statements listed on this application.

_Shaneka Damon_                                                   _9/1/2012_
Signature of Applicant POLICY #: __4140872__                        Date

AGENT'S SIGNATURE

I certify that to the best of my knowledge, all information contained herein is correct; the statements made herein are those of the applicant and all questions have been answered by the applicant. I have explained all coverages and options to the applicant; and the applicant and I are retaining a duplicate signed copy hereof. I am legally qualified to submit this application on behalf of the applicant.

                                                    1000053279    _9/1/2012_

Signature of Agent                                  Agent         Date
                                                    Number

OMNI PA APP (04/11)

9/1/2012 11:13:53 AM                                          Page 4 of 13

11/04/2014 12:55 FAX                                                          ☑0005/0008

# IMPORTANT NOTICE

**Benefits and Limits Notice**

Insurance companies operating in the Commonwealth of Pennsylvania are required by law to make available for purchase the following benefits for you, your spouse or other relatives or minors in your custody or in the custody of your relatives, residing in your household, occupants of your motor vehicle or persons struck by your motor vehicle:

(1) Medical benefits, up to at least $100,000.

(1.1) Extraordinary medical benefits, from $100,000 to $1,100,000 which may be offered in increments of $100,000.

(2) Income loss benefits, up to at least $2,500 per month up to a maximum benefit of at least $50,000.

(3) Accidental death benefits, up to at least $25,000.

(4) Funeral benefits, $2,500.

(5) As an alternative to paragraphs (1), (2), (3) and (4), a combination benefit, up to at least $177,500 of benefits in the aggregate or benefits payable up to three years from the date of the accident, whichever occurs first, subject to a limit on accidental death benefit of up to $25,000 and a limit on funeral benefit of $2,500, provided that nothing contained in this subsection shall be construed to limit, reduce, modify or change the provisions of 75 Pa. C.S.A. Section 1715(d) (relating to availability of adequate limits).

(6) Uninsured, underinsured and bodily injury liability coverage up to at least $100,000 because of injury to one person in any one accident and up to at least $300,000 because of injury to two or more persons in any one accident or, at the option of the insurer, up to at least $300,000 in a single limit for these coverages, except for policies issued under the Assigned Risk Plan. Also at least $5,000 for damage to property of others in any one accident.

Additionally, insurers may offer higher benefit levels than those enumerated above as well as additional benefits. However, an insured may elect to purchase lower benefit levels than those enumerated above.

Your signature on this notice or your payment of any renewal premium evidences your actual knowledge and understanding of the availability of these benefits and limits as well as the benefits and limits you have selected.

You may be eligible for discounts mandated by Act 6 of 1990: (1) on first party benefits coverage if your car is equipped with a passive restraint system; (2) on comprehensive coverage if your car is equipped with a passive antitheft device; or (3) if named insured is 55 or older and has successfully completed a motor vehicle driver improvement course approved by PennDOT. See your agent for details.

If you have any questions or you do not understand all of the various options available to you, contact your agent or company.

If you do not understand any of the provisions contained in this notice, contact your agent or company before you sign.

APPLICANT'S SIGNATURE POLICY #: 4140872:                          DATE:

_Shameka Lamar_                                                   _9/1/2012_

SHAMEKA RENEE LAMAR
OMNI PA BENNOT (08/08)

11/04/2014 12:56 FAX                                                    @0006/0008

# TORT OPTION SELECTION NOTICE TO NAMED INSUREDS

The laws of the Commonwealth of Pennsylvania, as enacted by the General Assembly, only require that you purchase liability and first-party medical benefit coverages. Any additional coverage or coverages in excess of the limits required by law are provided only at your request as enhancements to basic coverages.

The minimum motor vehicle insurance coverage and limits mandated by the Commonwealth are: Bodily Injury Liability - $15,000 for one person in any one accident and $30,000 for two or more persons in any one accident; Property Damage Liability - $5,000 per accident; and Medical Benefits - $5,000. The annual premium for these basic coverages are presented below.

A. "Limited Tort" Option - The laws of the Commonwealth of Pennsylvania give you the right to choose a form of insurance that limits your right and the right of members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses, but not for pain and suffering or other nonmonetary damages unless the injuries suffered fall within the definition of "serious injury" as set forth in the policy or unless one of several other exceptions noted in the policy applies.

The annual premium for basic coverage as required by law under this "Limited tort" option is $1,464.66.
Additional coverages under this option are available at additional cost.

B. "Full Tort" Option - The laws of the Commonwealth of Pennsylvania also give you the right to choose a form of insurance under which you maintain an unrestricted right for you and the members of your household to seek financial compensation for injuries caused by other drivers. Under this form of insurance, you and other household members covered under this policy may seek recovery for all medical and other out-of-pocket expenses and may also seek financial compensation for pain and suffering and other nonmonetary damages as a result of injuries caused by other drivers.

The annual premium for basic coverage as required by law under the "Full Tort" option is $2,190.23.
Additional coverage under this option is available at additional cost.

C. You may contact your insurance agent, broker or company to discuss the cost of other coverages.

D. If you wish to choose the "Limited tort" option described in paragraph A, you must sign this notice where indicated below and return it. If you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full Tort" premium.

I WISH TO CHOOSE THE "LIMITED TORT" OPTION DESCRIBED IN PARAGRAPH A.

APPLICANT'S SIGNATURE   POLICY #: 4140872                      DATE:

_Shameka Lamar_                                               9/1/2012

SHAMEKA RENEE LAMAR

E. If you wish to choose the "Full Tort" option described in paragraph B, you may sign this notice where indicated below and return it. However, if you do not sign and return this notice, you will be considered to have chosen the "Full Tort" coverage as described in paragraph B and you will be charged the "Full Tort" premium.

I wish to choose the "Full Tort" option described in paragraph B:

APPLICANT'S SIGNATURE   POLICY #: 4140872                      DATE:


SHAMEKA RENEE LAMAR

OMNI PA TORTOPT (08/08)

9/1/2012 11:13:53 AM                                           Page 7 of 13

**491a**

11/04/2014 12:57 FAX                                                    @0007/0008

## UNINSURED MOTORIST COVERAGE
## REJECTION OF UNINSURED MOTORIST PROTECTION

Uninsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who fails to have any insurance coverage.

Uninsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want uninsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting uninsured motorist coverage under this policy, for myself and all relatives residing in my household. Uninsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have any insurance to pay for losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: 4140872                DATE:

SHAMEKA RENEE LAMAR
OMNI PA UMREJ (06/08)

9/1/2012 11:13:53 AM                                                 Page 9 of 13

492a

11/04/2014 12:58 FAX                                          ☑0008/0008

## UNDERINSURED MOTORIST COVERAGE
## REJECTION OF UNDERINSURED MOTORIST PROTECTION

Underinsured Motorist protection is an insurance coverage you carry on your own policy that protects only you and your family if you or they are injured by a negligent driver who does not have enough bodily injury liability insurance to cover your claims and whose policy limits are less than your underinsured motorists coverage limits.

Underinsured Motorist Coverage is an optional coverage. However, we are required to include it in your policy unless you take steps to reject it.

If you do not want underinsured motorist coverage, the first named insured must sign the appropriate line below.

This rejection applies to all future renewals, continuations, and changes unless I notify you in writing.

### REJECTION OF UNDERINSURED MOTORIST PROTECTION

By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

SIGNATURE OF FIRST NAMED INSURED POLICY #: 4140872:          DATE:

SHAMEKA RENEE LAMAR
OMNI PA UIMREJ (08/08)

9/1/2012 11:13:53 AM                                          Page 10 of 13

493a

EXHIBIT "3"

LAW OFFICES

# KELLY & HERRON, P.C.

KEVIN P. KELLY
kkelly@kellyherronlaw.com

PAUL L. HERRON
pherron@kellyherronlaw.com

1500 MARKET STREET
CENTRE SQUARE - WEST TOWER
SUITE W-3110
PHILADELPHIA, PENNSYLVANIA 19102-2100
(215) 972-1500
FAX (215) 972-8217

SUBURBAN OFFICE
845 KING OF PRUSSIA ROAD
RADNOR, PA 19087

July 1, 2014

Jill Schrader
Omni Insurance Company
PO Box 105019
Atlanta, GA 30348-5019

RE:  Our Client:        Richard A. Duncan, Jr.
     Your Insured:      Shameka Lamar
     Your Claim No.:    2012 84855
     <u>Date of Accident:</u>   <u>10/8/2012</u>

Dear Ms. Schrader:

As you are aware, this office represents Richard Duncan, Jr. in a claim for injuries and other damages he sustained in the motor vehicle accident of October 8, 2012.  My client was a passenger aboard the SEPTA Route "47" bus involved in the collision with the vehicle owned by your insured and operated by Chris Aaron at or near the intersection of 8th and Dickinson Streets in Philadelphia, PA.

Our investigation reveals liability clearly rests on your insured; the SEPTA bus was at a complete stop when your insured's driver struck the bus in the rear.  His careless and negligent acts and/or omissions resulted in the aforesaid collision and caused my client to sustain serious and disabling injuries.

Mr. Duncan sustained injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia.

In an effort to cure the aforesaid injuries, my clients sought medical treatment from the following providers and incurred medical expenses as itemized:

> 1.   JEFFERSON UNIVERSITY HOSPITAL
>      10/08/12              $ will supply
>      11/26/12              $ 1,852.00

# KELLY & HERRON, P.C.

Omni
Page Two
July 1, 2014

|     |                                              |             |
| --- | -------------------------------------------- | ----------- |
| 2.  | ART OF PAIN MANAGEMENT<br>10/10/12 - 2/27/13 | $16,345.00  |
| 3.  | DELAWARE CO. OPEN MRI<br>12/04/12            | $ 1,100.00  |
| 4.  | CITY OF PHILA EMS<br>10/08/12                | $   970.00  |

TOTAL MEDICAL SPECIALS:          $ 20,267.00

Mr. Duncan continues to suffer pain and restriction of movement in his back. He has incurred medical expenses as itemized above. He has incurred out of pocket expenses including excess medical bills in the amount of $20,267.00; as he was a passenger on a stationary SEPTA bus, he is not entitled to PIP benefits, and he does not personally own a vehicle, nor does he reside with a relative who owns a vehicle; I enclose a copy of his properly executed Affidavit of No Insurance. Accordingly, all of his medical bills remain unpaid. He has been deprived of life's pleasures. He has in the past and will continue in the future to suffer pain and inconvenience as a result of the negligence of your insured's driver.

In view of the manner in which this accident happened, the medical expenses/economic damages suffered by my client, and the continuing residual affects he is experiencing, my demand for settlement purposes is Fifty Two Thousand Five Hundred ($52,500.00) Dollars.

Kindly contact the undersigned upon completion of your settlement evaluation with a view toward an amicable resolution of this claim.

496a

# KELLY & HERRON, P.C.

Omni
Page Three
July 1, 2014


Thank you for your attention to this matter.


                              Very truly yours,


                              KEVIN P. KELLY, Esquire

KPK/lml
enclosures

EXHIBIT "4"



**OMNI INSURANCE COMPANY**
P.O. BOX 3000
PLYMOUTH MEETING, PA 19462
PHONE: 800-954-2442 / FAX: 610-832-2138

KEVIN P. KELLY
KELLY & HERRON
1700 MARKET ST., STE. 3112
PHILADELPHIA, PA 19103

July 08, 2014

Re:
Insured: Shameka Lamar
Driver: Chris Porter, aka Chris Aaron
Our Claim Number: 2012-84855
Loss Date:  10/08/2012
Your Client: Richard Duncan, Jr.

Dear Mr. Kelly:

Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

The policy reads in Part A-Liability Coverage, that an "Insured as used in this Part means: 3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto."  Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license."  Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

If you wish to discuss this matter, I can be reached Monday-Friday, 8:00 am –4:00 pm, at 800-954-2442, ext. 8765.

Sincerely,

Andrew Funk
Bodily Injury Supervisor

499a

EXHIBIT "5"

KELLY & HERRON, P.C.
BY: KEVIN P. KELLY, ESQUIRE
ATTORNEY I.D. NO: 28306
1500 Market Street, Suite W3110
Philadelphia, PA 19102
(215) 972-1500

_____

RICHARD DUNCAN

vs.

CHRIS AARON
and
SHAMEKA RENEE LAMAR

Attorney for Plaintiffs

PHILADELPHIA COUNTY
COURT OF COMMON PLEAS

SEPTEMBER TERM, 2014

NO.   0479

## COMPLAINT IN CIVIL ACTION
## 2V  -  MOTOR VEHICLE ACCIDENT

### NOTICE TO DEFEND

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you, but the length time of your fail to do so the case may proceed without you and a judgment...

IF YOU WISH TO TALK TO A LAWYER OR IF YOU DO NOT HAVE A LAWYER OR CANNOT AFFORD ONE, GO TO OR TELEPHONE THE OFFICE SET FORTH BELOW TO FIND OUT WHERE YOU CAN GET LEGAL HELP.

### AVISO

Le han demandado a usted en la corte...

LLEVE ESTA DEMANDA A UN ABOGADO INMEDIATAMENTE...

PHILADELPHIA BAR ASSOCIATION
Lawyer Referral and Information Service
One Reading Center
Philadelphia, PA 19107
(215) 238-1701

7.22.15 @ 6:40 pm
7.23.15 @ 5:45 pm
7.24.15 @ 10:20 am
7.24.15 @ 3:25 pm     267 973 7146
7.28.15 @ 7:55 pm
7.29.15 @ 6:40 pm

## COMPLAINT IN CIVIL ACTION

1.    Plaintiff, Richard Duncan, is an adult individual residing at 319 Whites Road, Apartment D4, Lansdale, PA, 19446.

2.    Defendant, Chris Aaron, is an adult individual residing at 420 Mifflin Street, Philadelphia, PA, 19148.

3.    Defendant, Shameka Renee Lamar, is an adult individual residing at 2640 South Hutchinson Street, Philadelphia, PA, 19132.

4.    On or about October 9, 2012, and at all times relevant herein, defendant, Chris Aaron, with permissive use, possessed, controlled and operated a vehicle believed to be a 2002 Chevrolet Avalanche, PA registration XCV-3248, which vehicle was owned by defendant, Shameka Renee Lamar, and involved in the accident hereinafter described.

5.    On or about October 9, 2012, and at all times relevant herein, plaintiff was a passenger aboard the SEPTA Route "47" bus which was at a complete stop at a posted stop sign southbound on 8th Street at its intersection with Dickenson Street in the City of Philadelphia, PA when it was suddenly and unexpectedly struck in the rear by the vehicle owned by defendant, Shameka Renee Lamar, and operated by defendant, Chris Aaron, which was then and there traveling in a southbound direction on 8th Street in a careless and negligent manner.

COUNT ONE
RICHARD DUNCAN v. CHRIS AARON
NEGLIGENCE

6.   Plaintiff incorporates by reference paragraphs one through five of this Complaint as though same were fully set forth at length.

7.   The automobile collision described in the preceding paragraphs of this Complaint was caused by the carelessness and negligence of the Defendant, Chris Aaron, both generally and in the following particular respects:

(a)   Failing to observe the stopped SEPTA bus;

(b)   Failing to maintain a proper lookout;

(c)   Failing to maintain adequate control of the operation of said motor vehicle;

(d)   Operating said motor vehicle at a speed which was excessive under the circumstances;

(e)   Failing to stop said motor vehicle within the assured clear distance ahead;

(f)   Operating said motor vehicle without due regard for the point and position of the opposing motor vehicle; and

(g)   Failing to operate said motor vehicle with due care and regard for the health and safety of Plaintiff.

8.   As a result of the Defendant's negligence and the accident caused thereby, Plaintiff sustained severe bodily injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia; multiple bruises, lacerations and abrasions, together

with a severe shock to his nervous system, some or all of which may be permanent in nature and, as a result, the Plaintiff has suffered and continues to suffer pain and inconvenience as a result of these injuries.

9. As a further result of the foregoing, the Plaintiff has been obliged to receive and under medical attention and care and to incur various expenses for same and he may be obliged to continue to undergo such medical care and to incur such expenses for an indefinite time in the future.

10. As a further result of the foregoing, the Plaintiff has suffered, and will continue to suffer, a severe loss of his earnings and/or impairment of earning capacity or power, which loss and/or impairment has or may exceed the sum recoverable under the limitations in the Pennsylvania Financial Responsibility Law.

11. As a further result of the foregoing, the Plaintiff has suffered in the past, and will continue to suffer in the future, excruciating and agonizing pains, aches, mental anguish, humiliation, disfigurement and limitation and restriction of his usual duties, pursuits and pleasures.

WHEREFORE, Plaintiff demands judgment against the Defendants, individually, jointly and severally, in an amount not in excess of Fifty Thousand ($50,000.00) Dollars.

COUNT TWO
RICHARD DUNCAN v. SHAMEKA RENEE LAMAR
NEGLIGENT ENTRUSTMENT

12. Plaintiff incorporates by reference paragraphs one through eleven of this Complaint as though same were fully set

forth at length.

13.  The aforesaid collision, which caused plaintiff's injuries and losses was a direct and proximate result of the negligent and careless conduct of the defendant owner, Shameka Renee Lamar, which consisted of the following:

    a)  failing to exercise due care for the rights, safety and position of the plaintiff at the location aforesaid;

    b)  failing to maintain the vehicle in proper working order;

    c)  negligently and carelessly granting permission to the defendant driver for the use of the vehicle owned by the defendant owner, when the latter defendant knew or should have known that the former defendant was unlicensed and/or incapable or unwilling to properly and safely operate said vehicle.

14.  The defendant owner, Shameka Renee Lamar, is liable to the plaintiff for the damages suffered as more fully set forth hereinbefore by virtue of the failure to investigate the qualifications and capabilities of the defendant driver to operate the motor vehicle which the defendant driver was operating at the time of the incident.

15.  The defendant owner, Shameka Renee Lamar, is further liable to the plaintiff in that she provided permissive use of her vehicle to the defendant, Chris Aaron, when she knew, or should have known, that defendant Aaron did not possess a valid operator's license on the date of the accident herein.

16.  Defendant, Shameka Renee Lamar, knew, or should have known, that her automobile insurance policy contained an exclusion stating the policy did not afford liability coverage in the event

the driver of her vehicle did not possess a valid operators license when involved in an motor vehicle accident.

17. As a result of the Defendant's negligence and the accident caused thereby, Plaintiff sustained severe bodily injuries including, but not limited to, cervical sprain and strain; lumbar sprain and strain; thoracic sprain and strain; and post-traumatic cephalgia; multiple bruises, lacerations and abrasions, together with a severe shock to his nervous system, some or all of which may be permanent in nature and, as a result, the Plaintiff has suffered and continues to suffer pain and inconvenience as a result of these injuries.

18. As a further result of the foregoing, the Plaintiff has been obliged to receive and under medical attention and care and to incur various expenses for same and he may be obliged to continue to undergo such medical care and to incur such expenses for an indefinite time in the future.

19. As a further result of the foregoing, the Plaintiff has suffered, and will continue to suffer, a severe loss of his earnings and/or impairment of earning capacity or power, which loss and/or impairment has or may exceed the sum recoverable under the limitations in the Pennsylvania Financial Responsibility Law.

20. As a further result of the foregoing, the Plaintiff has suffered in the past, and will continue to suffer in the future, excruciating and agonizing pains, aches, mental anguish, humiliation, disfigurement and limitation and restriction of his usual duties, pursuits and pleasures.

WHEREFORE, Plaintiff demands judgment against the Defendants, individually, jointly and severally, in an amount not in excess of Fifty Thousand ($50,000.00) Dollars.

KELLY & HERRON, P.C.

By:_____/s/_____
      KEVIN P, KELLY, ESQUIRE
      Attorney for Plaintiff

507a

EXHIBIT "6"



**OMNI INSURANCE COMPANY**
P.O. BOX 3000
PLYMOUTH MEETING, PA 19462
PHONE: 800-954-2442 / FAX: 610-832-2138

SHAMEKA RENEE LAMAR
2545 W SILVER ST
PHILADELPHIA, PA 19132

September 16, 2014

Policy Number:  4140872
Our Claim Number: 2012-84855
Loss Date:  10/08/2012

Dear SHAMEKA RENEE LAMAR,

Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

The policy reads in Part A-Liability Coverage, that an "insured as used in this Part means: 3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

You are being sued. I enclose herewith a copy of the suit. You will need to retain your own attorney, at your own expense, as Omni will not be providing an attorney for you based on the above coverage denial.

If you wish to discuss this matter, please feel free to contact Karen Giorno at 800-954-2442, ext. 8350.

Sincerely,

Scott Mascioli
Litigation Manager

AIICO 0267

EXHIBIT "7"

**Omni**

OMNI INSURANCE COMPANY
P.O. BOX 3000
PLYMOUTH MEETING, PA 19462
PHONE: 800-954-2442 / FAX: 610-832-2138

CHRIS PORTER
428 MIFFLIN STREET
PHILADELPHIA, PA 19148

September 16, 2014

Policy Number: 4140872
Our Claim Number: 2012-84855
Loss Date: 10/08/2012

Dear Chris Porter,

Omni Insurance Company has completed its investigation into the above captioned loss. We have determined there is no coverage, as the insured vehicle was being operated by an unlicensed driver.

The policy reads in Part A-Liability Coverage, that an "insured as used in this Part means: 3. A person using your covered auto with the owner's express or implied permission and within the scope of the permission granted. The person must hold a valid driver's license at the time of loss and must not be a regular operator of your covered auto." Additionally, Exclusion 16 reads in pertinent part: "We do not provide Liability Coverage for any insured: 16. For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who: c. Does not have a valid driver's license; or d. Has a suspended or revoked driver's license." Our investigation has revealed that the vehicle operator did not have a valid license.

Due to the insured vehicle being operated by an unlicensed driver, Omni Insurance Company will be unable to provide liability coverage, or make any payments relative to damages that may have resulted in the accident.

You are being sued. I enclose herewith a copy of the suit. You will need to retain your own attorney, at your own expense, as Omni will not be providing one for you based on the above coverage denial.

If you wish to discuss this matter, please feel free to contact Karen Giorno at 800-954-2442, ext. 8358.

Sincerely,

Scott Mascioli
Litigation Manager

AIICO 0266

EXHIBIT "8"

First Judicial District of Pennsylvania
Philadelphia Court of Common Pleas

Richard Duncan, Plaintiff
118 Girard Ave., Apt. C
Glenside, PA 19038

September Term, 2014 00479
(Month)    (Year)    (No.)

Arbitration
(Please indicate type of action)
☒ Motor Vehicle

(Date of Accident) 11-8-12

Defendants,
Versus

Chris Aaron | Shamelia Renee Lamar
428 McAllin St. | 2545 W. Silver St.
Philadelphia, PA | Philadelphia, PA
19148 | 19132

☐ Delay Damages (Prime Rate +1)
Duncan Vs Aaron Etal AWFFP

= 6%)

14090047900021

☐ Other

## Report and Award of Arbitrators

And Now, this 3 day of June Year 2015 we the undersigned arbitra-
tors having been duly appointed and sworn, make the following award:

Judgment for Plaintiff and against
Defendants Chris Aaron and Shamelia Renee Lamar
in the amount of $28,000.00 ($13,000.00 for medicals
and $15,000.00 for pain and suffering.)

Please name the parties if there are more than one plaintiff and/or defendant. Please address all
counterclaims and cross-claims. Please complete percentage of negligence on reverse side if applicable.

_____
Chairperson

_____
Arbitrator

_____
Arbitrator

Abtoin B. Mendesa 1528 Spruce St. 4th fl., Phila, PA 710:
(PRA ) Please Print Name, Address and I.D. No. 45696?
Ruth Pearson - 3001 Siegfried on St. Phila 19148 -
35 S. 15th St, 6th FL
Michael S. Miller Jr. PPA 19102 #310431
Please Print Name, Address, and I.D. No.

List Attorneys of Record and Unrepresented Parties Who:
Appeared at the hearing:

Kevin P. Kelly for Plaintiff

Did Not Appear at the Hearing:
Deft. Chris Aaron
Deft. Shamelia Renee Lamar

30-210 (Rev. 2009)

Case ID: 14090047

## Questions to be Answered by
## the Arbitrators in Negligence Cases

**Instructions:**

Taking the combined negligence that was a substantial factor in bringing about any or all of the plaintiff's injuries, damage or losses as 100%, answer the following questions and state in percentages the causal negligence attributed to each party you have found causally negligent.

Do you find that any defendant or additional defendant was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | |
|---|---|
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |

Do you find that any plaintiff was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | |
|---|---|
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |

Total                                          100 %

## Notice of Entry of Award

And Now, this _____ day of _____, Year _____, at _____, .m., the above award was entered upon the docket and notice thereof given by mail to the parties or their attorneys.

DOCKETED
ARBITRATION

JUN - 3 2015

S. PRESSLEY

_____
Prothonotary

(Arbitration compensation to be
paid on appeal $225.00)

By: _____

_____

Separate Appeals must be filed with the Prothonotary pursuant to PA. R. Civ. P. No. 1308, and the requisite fees paid, if two or more cases are consolidated for Trial and/or Discovery purposes. Only those cases which are appealed will be scheduled for a *de novo* hearing. Awards in cases not appealed will become final upon expiration of the appeal time.

Case ID: 140090047

EXHIBIT "9"

KELLY & HERRON, P.C.
BY: KEVIN P. KELLY, ESQUIRE
ATTORNEY I.D. No: 28306
1500 Market Street, Suite W3110
Philadelphia, PA 19102
(215) 972-1500                          Attorney for Plaintiff

RICHARD DUNCAN                    :   PHILADELPHIA COUNTY
                                  :   COURT OF COMMON PLEAS
            vs.                   :
                                  :   SEPTEMBER TERM, 2014
CHRIS AARON                       :
and                               :   NO.   0479
SHAMEKA RENEE LAMAR               :

## PRAECIPE TO ENTER JUDGMENT

TO THE PROTHONOTARY:

Kindly enter judgment in favor of the plaintiff, Richard Duncan, and against defendants, Chris Aaron and Shameka Renee Lamar, in the amount of $28,000.00 pursuant to the Arbitration Award dated June 3, 2015 upon payment of your costs only.

Attached hereto, made a part hereof, and marked Exhibit "A" is a copy of the Award of the Board of Arbitrators dated June, 2015.


                            KELLY & HERRON, P.C.


                        BY:____/s/_____
                            KEVIN P. KELLY, Esquire
                            Attorneys for Plaintiff


dated:    July 7, 2015


Case ID: 14090047

**516a**

# EXHIBIT "A"

Case ID: 14090047

*First Judicial District of Pennsylvania*
*Philadelphia Court of Common Pleas*

Richard Duncan, Plaintiff
118 Girard Ave., Apt C
Glenside, PA 19038

September Term 2014 00479
(Month) (Year) (No.)

**Arbitration**
(Please indicate type of action)

☑ Motor Vehicle

(Date of Accident) 11-8-12

Defendants,

Versus

Chris Aaron
428 Mifflin St.
Philadelphia, PA
19148

Shameka Renee Lamar
2545 W. Silver St.
Philadelphia, PA
19132

☐ Delay Damages (Prime Rate +1)
Duncan Vs. Aaron Etal-AWFFP

÷ 6%)

14090047900021

☐ Other

## Report and Award of Arbitrators

And Now, this 3 day of June Year 2015 we the undersigned arbitrators having been duly appointed and sworn, make the following award:

Judgment for Plaintiff and against
Defendants Chris Aaron and Shameka Renee Lamar
in the amount of $28,000⁰⁰ ($13,000⁰⁰ for medicals
and $15,000⁰⁰ for pain and suffering)

Please name the parties if there are more than one plaintiff and/or defendant. Please address all counterclaims and cross-claims. Please complete percentage of negligence on reverse side if applicable.

_____ Chairperson
_____ Arbitrator
_____ Arbitrator

Alton B. Monteiro, 1525 Spruce St, 4th Flr, Phila, PA 740:
Please Print Name, Address and I.D. No.    25696?
Ruth Pearson - 8001 S. Bethany St. Phila PA 19145
Please Print Name, Address and I.D. No.
30 S. 15th St. 6th FL
Michael S. Miller Jr. PPA 19102 #310431
Please Print Name, Address and I.D. No.

List Attorneys of Record and Unrepresented Parties Who:
Appeared at the hearing:
Kevin P. Kelly for Plaintiff

Did Not Appear at the Hearing:
Deft. Chris Aaron
Deft. Shameka Renee Lamar

30-230 (Rev. 2/09)

Case ID: 14090047

**518a**

## Questions to be Answered by the Arbitrators in Negligence Cases

**Instructions:**

Taking the combined negligence that was a substantial factor in bringing about any or all of the plaintiff's injuries, damage or losses as 100%, answer the following questions and state in percentages the causal negligence attributed to each party you have found causally negligent.

Do you find that any defendant or additional defendant was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | |
|---|---|
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |

Do you find that any plaintiff was negligent?
If so, state the name of the party and percentage of negligence attributable to that party.

| | |
|---|---|
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| _____ | _____ % |
| | Total     100 % |

## Notice of Entry of Award

And Now, this _____ day of _____, Year _____, at _____ .m, the above award was entered upon the docket and notice thereof given by mail to the parties or their attorneys.

DOCKETED
ARBITRATION

JUN ~ 3 2015

S. PRESSLEY

_____ *Prothonotary*

(Arbitration compensation to be
paid on appeal $225.00)

By: _____

Separate Appeals must be filed with the Prothonotary pursuant to P.A. R. Civ. P. No.1308, and the requisite fees paid, if two or more cases are consolidated for Trial and/or Discovery purposes. Only those cases which are appealed will be scheduled for a *de novo* hearing. Awards in cases not appealed will become final upon expiration of the appeal time.

Case ID: 140090047

EXHIBIT "10"

RICHARD DUNCAN            :    COURT OF COMMON PLEAS

       VS.                  :    PHILADELPHIA COUNTY

                           :

CHRIS AARON             :    SEPTEMBER TERM, 2014

       AND                :

SHAMEKA RENEE LAMAR    :    NO.: 0479

## ASSIGNMENT

WHEREAS, the Plaintiff, Richard Duncan, sustained personal injuries in an October 8, 2012 motor vehicle accident,

WHEREAS, the motor vehicle occupied by Plaintiff, Richard Duncan was rear-ended by a vehicle operated by Defendant, Chris Aaron and owned by Defendant, Shameka Renee Lamar,

WHEREAS, the motor vehicle Chris Aaron was operating at the time of the accident was insured by Omni Insurance Company,

WHEREAS, Defendant, Shameka Renee Lamar was the named insured under a personal automobile policy issued by Omni Insurance Company,

WHEREAS, Plaintiff, Richard Duncan instituted suit against Defendants, Chris Aaron and Shameka Renee Lamar in connection with the injuries sustained in the October 8, 2012 motor vehicle accident,

WHEREAS, the tender of defense and indemnity of the lawsuit was made to Omni Insurance Company,

WHEREAS, Omni Insurance Company disclaimed coverage to Defendants, Chris Aaron and Shameka Renee Lamar for any claims arising out of the October 8, 2012 motor vehicle accident,

WHEREAS, Omni Insurance Company refused to provide a defense or indemnity to Defendants, Chris Aaron and Shameka Renee Lamar in the present action instituted by Plaintiff, Richard Duncan,

WHEREAS, on or about March 23, 2015 a default judgment was entered against Defendants, Chris Aaron and Shameka Renee Lamar,

WHEREAS, on June 3, 2015 an Arbitration Hearing for an Assessment of Damages was held awarding damages against Defendants, Chris Aaron and Shameka Renee Lamar in the amount of Twenty Eight Thousand ($28,000.00) Dollars,

WHEREAS, on or about July 7, 2015, judgment was entered against Defendants, Chris Aaron and Shameka Renee Lamar in the amount of $28,000.00,

WHEREAS, Defendant, Shameka Renee Lamar desires to assign her rights against Omni Insurance Company to Plaintiff, Richard Duncan in connection with the judgment entered against her in this action for good and valuable consideration as set forth more fully below, and,

WHEREAS, Plaintiff, Richard Duncan agrees to satisfy any judgment entered against Defendants, Shameka Renee Lamar and Chris Aaron after the conclusion of all claims against Omni Insurance Company.

NOW THEREFORE, it is hereby stipulated and agreed by and between the Plaintiff, Richard Duncan and Defendant, Shameka Renee Lamar as follows:

1.  <u>Assignment</u>.  The Defendant, Shameka Renee Lamar

for good and valuable consideration, as set forth more fully

below, hereby assigns to the Plaintiff, Richard Duncan any and

all rights, interest, claims and/or potential causes of action

including, but not limited to, all contractual and extra-

contractual claims, actions for common law and statutory bad

faith under 42 Pa.C.S.A. §8371, a beach of fiduciary duty, breach

of duty of good faith and fair dealings, punitive damages, unfair

trade practice and consumer protection law, 73 P.S.§201-1 et

seq., negligence, breach of contract, misrepresentation, and any

other claims or causes of action of any nature whatsoever, in law

or in equity, which she now has and/or may have against Omni

Insurance Company, its parent company(ies) affiliates,

associates, subsidiaries, agents, adjusters, employees and

attorneys with respect to the disclaimer of coverage to me in the

above captioned matter and any award, verdict or judgment entered

against me in this lawsuit which has resulted or may hereafter

result in personal liability by me to satisfy the award, verdict

or judgment on the claims of the Plaintiff, Richard Duncan which

could have been resolved by Omni Insurance Company if timely and

appropriately responded to the demands of the Plaintiff, Richard

Duncan, to resolve the matter within the available limits of

liability coverage in connection with the claims for damages

arising from the injuries sustained in the October 8, 2012 motor

vehicle accident.

    2.   <u>Consideration</u>.  In consideration of this assignment,

the Plaintiff, Richard Duncan agrees and covenants not to initiate any collection or execution proceedings against the Defendants, Shameka Renee Lamar and Chris Aaron, as a consequence of the award and judgment entered against the Defendants.

    3.   **Satisfaction of Judgment.**  In further consideration of this assignment, the Plaintiff, Richard Duncan, agrees to mark satisfied any judgment entered against the Defendants, Shameka Renee Lamar and Chris Aaron, after the conclusion of all proceedings against Omni Insurance Company, regardless of the ultimate outcome.  Any judgment shall remain in full force and effect until all proceedings against Omni Insurance Company have been resolved by final judgment or settlement.

    4.   **Full Agreement.**  The terms and conditions contained in this Assignment supersede all prior oral and written understandings between the Plaintiff, Richard Duncan and the Defendant, Shameka Renee Lamar and constitutes the entire agreement among the parties relating to the payment pursuant to the agreements set forth in this Assignment as noted more fully herein.  This Assignment shall not be modified or amended except by a writing signed by all parties.  Further, this Assignment

shall be binding upon the executors, administrators, personal
representatives, heirs, successors and assigns of each.

IN THE PRESENCE OF:

Name _June Link_

Address _500 Market St. Philadelphia_

SHANDRA RENEE LAMAR

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JUNE LINK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 4, 2019

IN THE PRESENCE OF:

Name _June Link_

Address _500 Market St. Philadelphia_ (SEAL)

RICHARD DONGAN

COMMONWEALTH OF PENNSYLVANIA
NOTARIAL SEAL
JUNE LINK, Notary Public
City of Philadelphia, Phila. County
My Commission Expires March 4, 2019

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                        :
                                      :   No.16-1489-HB
                                      :
        v.                            :
                                      :
OMNI INSURANCE COMPANY                :
                                      :


**REPLY MEMORANDUM OF LAW IN SUPPORT
OF MOTION FOR PARTIAL SUMMARY JUDGMENT
OF PLAINTIFF, RICHARD DUNCAN**


    (a)    <u>**Generally**</u>

In the present matter, the plaintiff, Richard Duncan, has filed a Motion for Partial

Summary Judgment. The defendant, Omni Insurance Company ("Omni"), opposes the Motion

for Partial Summary Judgment maintaining the position that: (1) the unlicensed operator

exclusion is valid and enforceable; and (2) Omni has not acted in bad faith in seeking to enforce

that exclusion in this case. In an effort to justify its position, Omni attempts to use legal sleight

of hand, albeit somewhat clumsily, to focus attention on the exclusion in a vacuum, rather than in

its application in the case at bar. The issue in this case is *not* the validity of the unlicensed

operator exclusion in the abstract. At the same time, the issue is not the validity of the

unlicensed operator exclusion to the unlicensed operator. Instead, the issue is the validity and

enforceability of this exclusion with respect to the duty to defend and indemnify the owner of the

vehicle in light of the statutory mandate and the clear public policy of the Commonwealth. In

this case, Omni is attempting to focus the attention of the Court away from the real issue, namely

the validity of the exclusion when applied to the vehicle owner, not the unlicensed operator. At

issue is whether Omni can seek to enforce an exclusion which, when applied in this case, is

1

violative of Pennsylvania law and the public policy of the Commonwealth. The plaintiff, Richard Duncan, requests that the Court enter Partial Summary Judgment in his favor on this issue.

### (b)   Statutory Mandate

#### (1)   Generally

Section 1574 of the Motor Vehicle Code imposes *joint and several* liability upon a person who authorizes an unlicensed driver to operate his or her vehicle. 75 Pa.C.S.A. § 1574. Omni contends that it need not defend or indemnify the owner of the vehicle, Shameka Renee Lamar, for the individual liability imposed by statute for the damages caused by the negligence of the unlicensed operator. Omni asserts that it may ignore the mandate of the Pennsylvania Legislature and issue and enforce a policy which excludes coverage for an obligation imposed upon vehicle owners by law. Omni posits several rationales for this position; none of those reasons are legitimate.

#### (2)   Allegations of Complaint

Initially, Omni contends that the Complaint in the underlying tort action did not assert a claim under § 1574. This assertion is curious, at best. Section 1574(a) states that no person shall permit an unlicensed driver to operate his or her motor vehicle. Section 1574(b) provides that a person doing so shall be *jointly and severally* liable with the driver for any damages caused by unlicensed driver's negligence. The Complaint specifically states that the named insured, Shameka Renee Lamar, was negligent and careless in granting permission to Chris Aaron a/k/a Chris Porter to operate her vehicle when she knew that Chris Aaron a/k/a Chris Porter was an unlicensed driver. See Exhibit "A", Stipulation, ¶ 5. The Complaint specifically asserts a claim against the named insured, Shameka Renee Lamar, for her actions in granting permission to an

2

unlicensed driver to operate her vehicle. Omni contends that this is not a claim under § 1574
since § 1574 imposes vicarious liability, alone. These contentions are without basis in law or in
fact.

In this matter, Omni contends that § 1574 imposes liability on a vicarious basis, alone. In
support of this position, Omni relies upon the decision of the Superior Court in Terwilliger v.
Kitchen, 781 A.2d 1201 (Pa. Super. 2001). The statements in Terwilliger are mere dicta.
Further, the panel of the Superior Court ignores the specific language of the statute. The statute
specifically states that an owner of a vehicle who permits an unlicensed operator to use it is
*jointly and severally* liable with the operator for damages arising from the negligent operation of
the vehicle. Certainly, the liability imposed by § 1574 is premised upon the actions of the
unlicensed operator. However, the liability imposed by § 1574 is not just vicarious. Liability is
joint and several. The Statutory Construction Act provides that the words of a statute may not be
ignored. 1 Pa.C.S.A. § 1925. The statute imposes *joint and several* liability. The Complaint
seeks recovery of damages for actions of the owner which directly violate § 1574. Nonetheless,
Omni is attempting to argue that § 1574 is not implicated. The position of Omni makes no sense
legally.[1]

Omni contends that since the Complaint in the tort action does not assert a § 1574 claim,
then there can be no legal impediment to excluding coverage for the actions of the operator. This
reasoning is flawed. Under Omni's rationale, § 1574 does not apply to the actions of the owner.
Therefore, according to Omni's twisted logic, there is no statutory mandate, nor any public

---

[1]  In addition, Omni cites the decision of Judge Buckwalter in Estate of O'Loughlin v. Hunger, 2009 U.S. Dist.
LEXIS 33711 (E.D. Pa. 2009) in further support of its position. While it is acknowledged that Judge Buckwalter, in
a footnote, does favorably cite the misguided holding of Terwillinger, the approval is mere dicta and has nothing to
do with the outcome of the case.

policy, which the exclusion violates. Thus, it must be enforceable. Such an argument deserves little consideration. It defies common sense. Omni's clumsy attempts to justify its bad faith actions should be dismissed.

(3)    **Liability Under § 1574**

Omni also contends that even if the language of the Complaint implicates the statutory mandate, the unlicensed driver exclusion does not violate § 1574 of the Vehicle Code. In making this contention, Omni states that § 1574 "does not specify that an insurer must provide coverage when an insured vehicle is driven by an unlicensed driver." Certainly, this is true; however, but of what moment is such a pronouncement? The Pennsylvania Legislature has seen fit to impose direct *joint and several* liability upon an owner of a vehicle who allows an unlicensed operator to operate his or her vehicle which then negligently injures another. Obviously, the Legislature understood that an insurer could reasonably refuse to provide coverage for the unlicensed operator. Such a position by an insurer is not unreasonable. However, the Legislature recognized that insurance coverage could, and should, be available to the owner of the vehicle who allows the unlicensed operation.

Pennsylvania law requires owners of currently registered vehicles to provide financial responsibility, namely, insurance coverage. Therefore, in order to protect the public at large, the Legislature imposes liability upon the owner of a vehicle in this situation, on a *joint and several* basis. The goal of the Legislature is protection of the public and compensation of accident victims. It makes sense that the unlicensed driver may have no coverage. But the owner who allows the unlicensed operation, and who has coverage, becomes liable for the injuries. Imposing liability upon the owner of the vehicle without the implicit understanding that the owner has available insurance coverage renders the enactment of § 1574 by the Legislature a

4

meaningless gesture. The Legislature enacted § 1574 in order to ensure that persons injured by

the negligence of an unlicensed driver still have access to redress where the unlicensed operator

is using the vehicle with the knowing permission of the owner.   Availability of insurance is a

necessary prerequisite of this statutory scheme.

In this case, the plaintiff, Richard Duncan, is not challenging the disclaimer of coverage

by Omni to the unlicensed operator.   Instead, the plaintiff, Richard Duncan, is challenging the

positon of Omni with respect to the disclaimer of coverage to the named insured owner.   Omni

did not understand, or chose to ignore, its coverage obligations to the owner of the vehicle when

suit was filed; Omni does not appear to understand, or chose to ignore, its coverage obligations,

now.   Pennsylvania law imposes *joint and several* liability upon the owner, Shameka Renee

Lamar, in this case.   Omni is required to provide coverage to the owner, Shameka Renee Lamar,

in this case.   While Omni may disclaim coverage to the unlicensed operator, it may not do so for

the owner.   The exclusion may not be validly applied to the owner of the vehicle.   The

unlicensed operator exclusion is void as against public policy in this circumstance.   Richard

Duncan is entitled to compensatory and punitive relief.

(c)     **Other Exclusions**

In its attempt to justify the application of the unlicensed operator exclusion to the owner

of the vehicle, Omni looks to other exclusions.   These references, too, fail to support the position

of Omni.   At issue in the present case is not whether coverage should be extended to the operator

of the vehicle.   At issue is whether Omni may avoid coverage for the owner.   Omni continues to

ignore this issue.   By referencing other exclusions, not applicable to owners, Omni hopes to

divert attention from the real issue.

In so doing, Omni relies upon the Superior Court decision in An v. Victoria Fire & Casualty Company, 113 A.3d 1283 (Pa. Super. 2015). In that case, the Court approved of a policy provision which limited coverage only to listed drivers. In so holding, a three judge panel of the Superior Court ignored prior precedent as well as the specific provisions of the Financial Responsibility Law in permitting an insurer to disclaim coverage. As noted in An, § 1718 of the Financial Responsibility Law permits a named driver exclusion in auto policies. 75 Pa.C.S.A. § 1718. Interestingly, contrary to the finding in An, the Financial Responsibility Law does not permit the limitation of coverage to specifically identified drivers, alone. Customarily, the omnibus clause of the policy extends coverage to all permissive users. As noted by the Supreme Court in Progressive Northern v. Schneck, 813 A.2d 828 (Pa. 2002):

> The Superior Court accurately concluded this public policy is exemplified by § 1718(c), which permits named driver exclusions. 75 Pa.C.S.A. § 1718(c). These exclusions are designed by insurers to avoid covering someone with a bad driving record or in a high risk category, such as a teenage child of the insured, since the premium of such coverage would be exceedingly high.

Id., 813 A.2d at 831-832. In An, the Superior Court allowed an insurer to enforce a policy limitation which is the converse of the statutory enactment. In addition to being misguided, that holding has no relevance to the issues in this case.[2] In all of the cases relied upon by Omni, the focus is upon coverage to be afforded to the unlicensed or unauthorized operator, not the owner. Here, the focus is not upon the unlicensed operator, but rather the illegally acting owner. In this case, the issue is not coverage for the unlicensed operator, but rather, coverage for the owner who violates Pennsylvania law. The Motor Vehicle Code imposes *joint and several* liability upon the owner of the vehicle for harm caused by the unlicensed operator's actions. While Omni's arguments may have some legitimacy with respect to coverage to be afforded to the

---

[2] In addition, a decision of the Superior Court is not binding upon this Court.

6

operator, they ring hollow with respect to coverage required to be provided to the owner. The

disclaimer of coverage by Omni is violative of Pennsylvania law. Compensatory and punitive

damages should be assessed.

**(d)      Public Policy Requirements**

Omni also contends that the unlicensed operator exclusion does not violate public policy.

Again, Omni attempts to address the unlicensed operator exclusion in the abstract. Omni seeks

to vilify the unlicensed operator while somehow concluding that its wrongful denial of coverage

to the owner is proper. This clumsy sleight of hand is transparent. The unlicensed operator

exclusion may, in fact, be enforceable in certain situations, namely, the extension of coverage to

the unlicensed operator. However, the unlicensed operator exclusion cannot be expanded to the

actions of the owner. In fact, the application of the unlicensed operator exclusion to the actions

of the owner is violative of public policy.

Again, in support of its position, Omni attempts to rely upon cases which do not support

its specific position in this case. For instance, Omni contends that the decision of Judge Schiller

in Infinity Indemnity Insurance Co. v. Gonzalez, 2012 U.S. Dist. LEXIS 77004 (E.D. Pa. 2012)

supports its contentions. In that case, the Court did address the validity of policy language, like

in An, which limited coverage to specifically identified drivers. Interestingly, in that case, the

individual drivers were not represented and defaults were entered against them. Thus, the case

evolved into an alleged dispute between the Infinity Indemnity Insurance Company and the State

Farm Mutual Insurance Company. Obviously, the State Farm Mutual Insurance Company did not

take the position that the Infinity exclusion was void as against public policy. In fact, in his

Opinion, Judge Schiller noted:

> As no party has requested that this Court find that a named driver only insurance
> policy contravenes Pennsylvania public policy and no precedent indicating that it

does, the Court will uphold the clear and unambiguous language of the policy restricting coverage only to those drivers listed in the policy and endorsement.

Id., Infinity at 2002, U.S. Dist. LEXIS at *11-12. Obviously, State Farm, which presumably issues similar policies, was not going to contend that such a policy exclusion, which it may seek to enforce in other matters and which may then benefit its bottom line profits, is void as against public policy. In addition, like An, the decision in Infinity does not support the position of Omni. It addresses different issues. The fact remains that Pennsylvania law favors compensation for victims of motor vehicle accidents. Section 1574 was enacted to further that public policy goal. Omni has no legitimate basis upon which to deny coverage to the owner of the vehicle in this circumstance. Omni should be required to pay the entire arbitration award. Bad faith damages, also, should be assessed.

    (e)    **Bad Faith**

    In the case at bar, Omni also contends that it has not acted in bad faith. Essentially, Omni asserts that since it was merely attempting to enforce an exclusion in its policy, it cannot be held to have acted in bad faith. Under Omni's rationale, any attempt to enforce a written exclusion, however outrageous, is a good faith effort. Under Omni's rationale, an insurer could never be found to be in bad faith regardless of the extreme nature of its exclusions. In this case, Omni's wanton and reckless disregard of the rights of its insured, in denying coverage, warrant the imposition of bad faith damages.

    It cannot reasonably be asserted that the use of the unlicensed operator exclusion to deny coverage to a licensed owner is good faith. Omni contends that since the exclusion is in its policy, any effort to enforce it is good faith. Consider the following analogy. At one time, various rental car companies included a "violation of law" exclusion in their rental agreements.

Ignoring the rules of the road is a violation of law. There is no question that it is against public policy for a rental company or an insurer to exclude coverage for violations of the Motor Vehicle Code. An insurance policy or rental agreement containing such an exclusion would necessarily be violative of public policy. The Motor Vehicle Law requires that all operators of vehicles obey traffic signals and stop signs. A person who ignores a red traffic signal or stop sign violate Pennsylvania law. If a policy of insurance excluded coverage for persons who violated Pennsylvania law then, according to Omni, no coverage would exist for the person running the red light and causing an accident. Further, according to Omni, any such denial of coverage would be in good faith. According to Omni, the mere inclusion of exclusionary language in the policy, no matter how outrageous, renders the attempted enforcement of the exclusion a good faith effort. Such bizarre reasoning should not be entertained. The application of the exclusion to the vehicle owner, Shameka Renee Lamar, is bad faith.

Section 1574 of the Motor Vehicle Code is well established. The mandate of public policy is clear. Despite the specific language of Pennsylvania law, Omni specifically wrote and seeks to enforce a policy which excludes coverage where Pennsylvania law specifically imposes liability. The actions of Omni are no different than seeking to enforce a "violation of law" exclusion. Omni is recklessly disclaiming coverage, in direct violation of Pennsylvania law, to the detriment of its insured. Omni is wantonly overreaching. If Omni sought only to apply the exclusion to the actions of the unlicensed operator, then arguably its actions would be valid and enforceable. However, that is not the case here. Omni is seeking to apply the exclusion to the actions of the owner. It is the public policy of Pennsylvania to have only licensed operators on its highways. For this reason, the Legislature imposes *joint and several* liability upon owners who allow unlicensed drivers who negligently operate their vehicles. The Pennsylvania

9

Legislature directed that owners who permit unlicensed drivers to operate vehicles are *jointly and severally* liable for the damages caused by the negligent unlicensed operation of those vehicles. The mandate of the Pennsylvania Legislature is clear. Omni is grossly overreaching an attempt to expand the unlicensed driver exclusion to situations where the exclusion has no legitimate application. The application of the unlicensed operator exclusion to the owner, rather than the operator, of the vehicle is bad faith. As such, the plaintiff, Richard Duncan, is entitled to Partial Summary Judgment on the bad faith issues.[3]

## CONCLUSION

In the present case, the defendant, Omni, has disclaimed coverage in a blatant attempt to improve its own profitability while recklessly disregarding the rights of its own named insured and motor vehicle accident victims. In so doing, Omni is attempting to divert attention away from the real issue in this case, namely the provision of insurance coverage to the owner, not the unlicensed operator of the vehicle. In the present matter, Omni is seeking to expand the application of the unlicensed operator exclusion to a degree never contemplated by the Legislature. The Pennsylvania Legislature enacted § 1575 which specifically imposes *joint and several* liability for the negligence of an unlicensed operator where the owner of a vehicle allows an unlicensed driver to operate his or her vehicle. The intent of the statutory enactment is clear. The Legislature and public policy favor the operation of vehicles on the highways in the Commonwealth by licensed operators. These same considerations favor remediation and compensation to persons who suffer damage as a result of the actions of a negligent, unlicensed

---

[3]  At a minimum, questions of fact exist with respect to bad faith. If this is the situation, then discovery is needed with respect to the reasons and purpose of Omni in expanding the exclusion beyond its normal and expected application. Discovery may very well reveal that Omni is attempting to enforce the exclusion merely to enhance its own profitability, at the expense of its insureds.

10

operator.  By imposing joint and several liability on the owners of such vehicles, which are

required to be insured, the Legislature has implicitly recognized that the owner's exposure is to

be insured.  Allowing insurers, such as Omni, to disclaim coverage to the vehicle owner

undermines the purpose and intent of § 1574 as well as the public policy of the Commonwealth.

The application of the exclusion to the vehicle owner wantonly and recklessly disregards the

owner's rights.  Omni is required to provide coverage to the vehicle owner, Shameka Renee

Lamar.  The entire Arbitration Award should be paid.  Further, Omni is responsible for payment

of extra-contractual bad faith damages for its wanton, willful and reckless disregard of

Pennsylvania law and the rights of its insured.[4]    Therefore, Partial Summary Judgment is

---

[4]  See note 2, supra.

11

**536a**

respectfully requested.

Respectfully Submitted,

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:      JCH4113
JAMES C. HAGGERTY, ESQUIRE
SUZANNE TIGHE, ESQUIRE
PA Attorney I.D. # 30003; 80179
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6600
FAX (215) 665-8197

KELLY & HERRON, P.C.

BY:   /s/ Kevin P. Kelly
KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                          :
1300 Pennsylvania Avenue                :
Apartment H-3                           :
Oreland, PA  19075                      :   No.16-1489
                                        :
          v.                            :
                                        :
OMNI INSURANCE COMPANY                  :
2018 Powers Ferry Road, Suite 400       :
Atlanta, GA  30339                      :

## CERTIFICATION OF SERVICE

I, James C. Haggerty, Esquire, hereby certify that a true and correct copy of Reply

Memorandum in Support of Motion for Partial Summary Judgment has been served via electronic

delivery upon the following persons:

Bruce Morrison, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA  19103

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:    JCH/4113
       JAMES C. HAGGERTY, ESQUIRE
       PA Attorney I.D. # 30003
       1835 Market Street, Suite 2700
       Philadelphia, PA  19103
       (267) 350-6600
       FAX (215) 665-8197
       Attorney for Plaintiff

DATE:  7/28/16

13

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OMNI INSURANCE COMPANY | : | NO. 16-1489 |
| | : | |

ORDER

AND NOW, this 28th day of September, 2016, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

(1)   the motion of defendant Omni Insurance Company for summary judgment (Doc. # 14) is GRANTED; and

(2)   the motion of plaintiff Richard Duncan for partial summary judgment (Doc. # 11) is DENIED.

BY THE COURT:

/s/ Harvey Bartle III
                                                    J.

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OMNI INSURANCE COMPANY | : | |
| | : | NO. 16-1489 |

MEMORANDUM

Bartle, J.                                          September 28, 2016

Before the court are the cross-motions for summary
judgment of plaintiff Richard Duncan ("Duncan") and defendant Omni
Insurance Company ("Omni") under Rule 56 of the Federal Rules of
Civil Procedure with respect to an exclusion in an Omni automobile
insurance policy.

I.

The parties have stipulated to all the relevant
material facts.  Duncan was injured in an automobile collision
on October 8, 2012, while he was a passenger on board a SEPTA
Route 47 bus.  The bus was struck by a motor vehicle at or near
the intersection of 8th and Dickinson Streets in Philadelphia.
Shameka Renee Lamar ("Lamar") held title to the motor vehicle, a
2003 Chevrolet Avalanche and insured it through Omni under a
Private Passenger Auto Insurance Policy.  Chris Aaron ("Aaron"),
a/k/a Chris Porter, was the operator of the vehicle at the time

of the collision.   Aaron was not licensed to drive an
automobile.

Following the collision, Duncan commenced an action
for damages against Lamar and Aaron in the Court of Common Pleas
of Philadelphia County. He alleged negligence and negligent
entrustment.  See Richard Duncan v. Chris Aaron and Shameka
Renee Lamar, No. 0479 (Pa. Ct. Comm. Pleas, Sept. 2014).  Omni,
Lamar's insurer, denied all coverage for loss sustained in the
collision on the basis of an unlicensed driver exclusion
contained in the insurance policy.  Omni informed Lamar and
Aaron of the coverage denial and advised them to retain their
own attorneys.

Duncan, Lamar, and Aaron proceeded to arbitration in
the Court of Common Pleas of Philadelphia County.  Arbitrators
awarded $28,000 in damages in favor of Duncan.  Following the
entry of Judgment on the Arbitration Award, Lamar and Aaron
assigned all claims and rights to Duncan against Omni.  In
satisfaction of the assignment, Duncan agreed not to collect or
execute against Lamar and Aaron, and he agreed to mark the
judgment against Lamar and Aaron satisfied upon the conclusion
of proceedings against Omni.

Duncan thereafter commenced this action in the Court
of Common Pleas of Philadelphia County against Omni seeking to
collect from Omni the $28,000 judgment.  He also alleges a claim

-2-

of bad faith in violation of the Pennsylvania Bad Faith Statute, 42 Pa. Const. Stat. § 8371 (2015).[1]  Omni removed the action to this court based on diversity of citizenship.  See 28 U.S.C. § 1332.

II.

Lamar's Omni Private Passenger Auto Insurance Policy for the 2003 Chevrolet Avalanche provided in Part A Liability Coverage:

> . . .

> B. **Insured**[2] as used in this Part means:

>> . . .

>>> (3) A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted.  The person must hold a valid driver's license at the time of the loss and must not be a regular operator of **your covered auto**.

---

1. The jurisdictional amount in an action under 28 U.S.C. § 1332(a) is met where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs.  Our Court of Appeals has stated the amount in controversy is not based "on the 'low end of an open-ended claim,' but rather on 'a reasonable reading of the value of the rights being litigated.'" Judon v. Travelers Property Cas. Co. of America, 773 F.3d 495, 507 (3d Cir. 2014) (quoting Werwinski v. Ford Motor Co., 286 F.3d 661, 666 (3d Cir. 2002).  Because of the bad faith claim, we deem the amount in controversy requirement to have been met.

2. It appears that the policy uses bold text to set apart terms and phrases defined therein.  To the extent that we quote from the policy, all bold text in this opinion appears in the policy and has not been added by the court.

-3-

The policy contained an unlicensed driver exclusion that provided:

> A.   **[Omni]We** do not provide liability coverage for any **insured:**
>
> . . .
>
> (16) For **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:
>
> . . .
>
> (c)   Does not have a valid driver's license; or
>
> (d)   Has a suspended or revoked driver's license.

(emphasis added). Omni argues, in support of its motion for summary judgment, that the exclusion above in the Omni insurance policy allowed Omni to disclaim coverage for the collision between Aaron and the SEPTA Route 47 bus because Aaron was an unlicensed driver.

Duncan opposes Omni's motion for summary judgment and has moved for partial summary judgment in his favor on the basis that the exclusion upon which Omni relies is void and unenforceable under the Pennsylvania Motor Vehicle Code, 75 Pa. Cons. Stat. § 1501 (2015) et seq., and under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa. Const. Stat.

-4-

§ 1701 (2015) et seq. He contends this exclusion violates
Pennsylvania public policy.

Under Rule 56 of the Federal Rules of Civil Procedure,
summary judgment is appropriate "if the movant shows that there is
no genuine dispute as to any material fact and the movant is
entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a);
see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). The
facts here, as noted above, are undisputed. The sole issue is
which party is entitled to judgment as a matter of law.

II.

We now turn to the exclusion in the Omni insurance
policy. The parties do not dispute that in this diversity action
the substantive law of Pennsylvania applies. See, e.g., Nationwide
Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).

The interpretation of an insurance policy is a question
of law for the court. See Pac. Indem. Co. v. Linn, 766 F.2d 754,
760 (3d Cir. 1985); 401 Fourth St., Inc. v. Inv'rs Ins. Grp., 879
A.2d 166, 171 (Pa. 2005). The primary goal is to "ascertain the
parties' intentions as manifested by the policy's terms." See
Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union
Ins. Co., 908 A.2d 888, 897 (Pa. 2006). When the language of the
policy is clear, we give effect to its plain meaning. See Am. &
Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540
(Pa. 2010). The meaning of the policy provision in issue is

-5-

crystal clear.  There is an exclusion for coverage when, as here,

the driver who caused the bodily injury was unlicensed.  The only

issue is whether the clear language violates Pennsylvania law.

Duncan maintains that the exclusion violates § 1574 of

the Pennsylvania Motor Vehicle Code ("MVC") and §§ 1786(a),

1786(f), and 1702 of the Pennsylvania Motor Vehicle Financial

Responsibility Law ("MVFRL").  Section 1574 of the MVC states:

> (a)  **General rule. - -** No person shall
> authorize or permit a motor vehicle
> owned by him or under his control to be
> driven upon any highway by any person
> who is not authorized under this
> chapter or who is not licensed for the
> type or class of vehicle to be driver.
>
> (b)  **Penalty. - -** Any person violating the
> provisions of subsection (a) is guilty
> of a summary offense and shall be
> jointly and severally liable with the
> driver for any damages caused by the
> negligence of such driver in operating
> the vehicle.  75 Pa. Const. Stat.
> § 1574 (2015).

Duncan argues that § 1574 of the MVC imposes vicarious

liability on owners who permit unlicensed drivers to operate

their vehicles, and therefore Omni's exclusion disclaiming

liability coverage violates § 1574.  However, this provision

does not help Duncan.  Whatever the remedy may exist against

Lamar, the owner of the vehicle, there is nothing in § 1574

which makes any reference to insurance coverage.  It neither

requires insurance coverage nor prohibits any limitation on

insurance coverage.  Therefore, the Omni exclusion does not

violate § 1574.

We turn to §§ 1786(a), 1786(f), and 1702 of the MVFRL.

Sections 1786(a) and 1786(f) of the MVFRL provide:

> (a)   **General rule. - -** Every motor vehicle
> of the type required to be registered
> under this title which is operated or
> currently registered shall be covered
> by financial responsibility.
>
>     . . .
>
> (f)   **Operation of motor vehicle without
> required financial responsibility. - -**
> Any owner of a motor vehicle for which
> the existence of financial
> responsibility is a requirement for its
> legal operation shall not operate the
> motor vehicle or permit it to be
> operated upon a highway of this
> Commonwealth without the financial
> responsibility required by this
> chapter.  In addition to the penalties
> provided by subsection (d), any person
> who fails to comply with this
> subsection commits a summary offense
> and shall, upon conviction, be
> sentenced to pay a fine of $300. [3]  75
> Pa. Const. Stat. § 1786(a), (f) (2015).

Section 1702, in relevant part, defines "financial

responsibility" of a vehicle owner as:

> The ability to respond in damages for
> liability on account of accidents arising

---

3.   Section 1786(d), referenced in § 1786(f), provides for the
suspension of the registration and of the operating privilege of
the vehicle if the Department of Transportation determines that
the vehicle has been operated or permitted to be operated
without the required financial responsibility.  See 75 Pa.
Const. Stat. § 1786(d) (2015).

-7-

> out of the maintenance or use of a motor
> vehicle in the amount of $15,000 because of
> injury to one person in any one accident, in
> the amount of $30,000 because of injury to
> two or more persons in any one accident and
> in the amount of $5,000 because of damage to
> property of others in any one accident. The
> financial responsibility shall be in a form
> acceptable to the Department of
> Transportation. 75 Pa. Const. Stat. § 1702
> (2015).

Duncan asserts that § 1786(a) requires financial responsibility of motor vehicle owners and that § 1786(f) requires that this financial responsibility extends to unlicensed drivers. We disagree. Section 1786(a) requires motor vehicles in Pennsylvania to be covered by financial responsibility. See 75 Pa. Const. Stat. § 1786(a) (2015). Section 1786(f) prohibits an owner of a motor vehicle from operating or permitting the operation of a motor vehicle without the required financial responsibility, that is, the ability to respond in damages for personal injuries in a certain amount. See 75 Pa. Const. Stat. § 1786(f) (2015). Again, whatever liability may be assessed against a vehicle owner who violates this provision, the statute cannot reasonably be interpreted to require an owner's insurer to provide coverage under an insurance policy for injuries by an unlicensed driver.

Duncan relies on Pennsylvania Superior Court decisions Progressive Northern Insurance Co. v. Universal Underwriters Insurance Co., 898 A.2d 1116 (Pa. Super. Ct. 2006), and McWeeny

-8-

v. Estate of Strickler, 61 A.3d 1023 (Pa. Super. Ct. 2013).
However, neither of these cases supports his position.

In Progressive Northern, the insured's son was in a
motor vehicle accident while he was driving a vehicle loaned to
the insured by a car dealership.  See Progressive N. Ins. Co.,
898 A.2d at 1117.  The issues before the Pennsylvania Superior
Court were which insurance carrier was required to provide
liability coverage to the insured, the carrier of the loaned
vehicle, or the carrier of the insured's personal vehicle, and
whether the policies, which contained "mutually repugnant
clauses" concerning priority of coverage, could practically be
enforced.  See id. at 1118-19.  The case had nothing to do with
insurance coverage for unlicensed drivers.

In McWeeny, a driver, who was listed as a principal
driver on the vehicle's insurance policy, was involved in a
motor vehicle accident.  See McWeeny, 61 A.3d at 1025.  She
sought to recover benefits under the policy, but the other
driver in the accident alleged that she could not recover
because she was insured under the limited tort option of the
policy, and therefore could not recover without having sustained
a serious injury.  See id.  Again, this case did not involve the
issue of coverage for unlicensed drivers.

-9-

III.

We now turn to Duncan's assertion that the exclusion is contrary to public policy. We consider public policy arguments in light of "reference to the laws and legal precedents and not from general considerations of supposed public policy interest. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy." Burnstein v. Prudential Prop. & Cas. Ins. Co., 809 A.2d 204, 207 (Pa. 2002) (quoting Eichelman v. Nationwide Ins. Co., 711 A.2d 1006, 1008 (Pa. 1998)). This court has declared there is a "'heavy burden required to declare an unambiguous provision of an insurance contract void as against public policy.'" Williams v. Allstate Ins. Co., 595 F.Supp.2d 532, 542 (E.D. Pa. 2009) (quoting Generette v. Donegal Mut. Ins. Co., 957 A.2d 1180, 1190 (Pa. 2008)).

Duncan argues that the exclusion is contrary to the public policy of the Commonwealth because it frustrates the remedial purpose of the MVFRL. This argument fails. The Pennsylvania Supreme Court has identified cost containment, freedom of consumer choice, as well as remediation as goals of the MVFRL. See Williams v. GEICO Gov't Emp. Ins. Co., 32 A.3d 1195, 1203 (Pa. 2011); see also Progressive N. Ins. Co. v. Schneck, 813 A.2d 828, 832 (Pa. 2002). It recognizes that the

-10-

goal of cost containment of insurance policies allows consumers to have the ability to pay more in premiums for greater coverage, and less in premiums for lesser coverage.  See GEICO, 32 A.3d at 1203.

Duncan avers that the exclusion contradicts the public policy of deterring unlicensed drivers from operating vehicles. We do not understand how insuring unlicensed drivers will keep them off of the road.  If anything, the contrary seems more likely.

We acknowledge a public policy of extending insurance coverage to all licensed drivers.  However, it does not extend to unlicensed drivers.  The MVFRL mandates certain benefits that must be excluded from cover under § 1718, as well as certain benefits that cannot be excluded from coverage under § 1724.[4] This public policy, as expressed by the General Assembly, does not require automobile insurance coverage for personal injuries in all situations.  The MVFRL is silent with respect to insurance coverage for unlicensed drivers.

---

3.  When an insured's conduct in the following three ways contributes to the insured's injury, an insurer must exclude an insured from benefits:  while intentionally injuring, or attempting to injure, himself or another, while committing a felony, or while seeking to elude lawful apprehension or arrest by law enforcement.  See 75 Pa. Const. Stat. § 1718(a) (2015). On the contrary, an insurance policy provision may not exclude benefits solely because the driver of the insured vehicle was under the influence of alcohol or drugs at the time of the accident.  See 75 Pa. Const. Stat. § 1724(a) (2015).

While the MVFRL does not address the subject of insurance coverage for unlicensed drivers, the Pennsylvania Insurance Commissioner has done so.  Pursuant to The Insurance Company Law of 1921, 40 Pa. Cons. Stat. Ann. § 477b (2015), the Insurance Commissioner must approve the language and terms of all casualty insurance policies issued in the Commonwealth. The imprimatur of the Commissioner on the Omni unlicensed driver exclusion, together with the absence of any specific legislative mandate for the inclusion of such coverage, undermines Duncan's argument that the exclusion is void as against Pennsylvania public policy.

Moreover, the exclusion is consistent with the cost containment purpose of the MVFRL.  See GEICO, 32 A.3d at 1203. If insurance policies had to provide coverage for unlicensed drivers, premiums undoubtedly would increase .  Whether such coverage should exist is a matter for the General Assembly.

Finally, Duncan has cited no precedent where the courts of Pennsylvania have overturned an automobile insurance provision as against public policy.  In fact, the Pennsylvania Supreme Court has upheld the validity of various exclusions in insurance policies on several occasions.  See Burnstein, 809 A.2d at 210; see also GEICO, 32 A.3d at 1201; see also Schneck, 813 A.2d at 834; see also Eichelman, 711 A.2d at 1006.

-12-

For example, the Pennsylvania Supreme Court has held that an exclusion that disclaims coverage when an insured driver drives a regularly used, non-owned vehicle is allowable under the MVFRL and does not violate public policy.  See Burstein, 809 A.2d at 210.  In its analysis, the court stated that finding the exclusion invalid would force the insurance company to "underwrite unknown risks that it had not been compensated to insure," thereby frustrating the goal of cost containment.  Id.

The Pennsylvania Supreme Court has also decided that an exclusion was not void as against public policy where an insurer disclaimed underinsured motorist coverage to an insured Pennsylvania State Trooper under his personal automobile insurance policy when he was injured in an accident while driving a state covered vehicle provided to him for regular use. See GEICO, 32 A.3d at 1209.  In upholding the exclusion, the court declined to weigh the importance of various public policy concerns.  Id. at 1203-04.  The Court stated:

> Appellant asks us to weigh the protection of
> first responders against the recognized
> scheme of cost containment underlying the
> MVFRL.  We have consistently held, however,
> that this is not the proper function of this
> Court to weigh competing public policy
> interests; rather that task is bested suited
> for the legislature.  GEICO, 32 A.3d at 1203.
> (citing Generette v. Donegal Mut. Ins. Co.,
> 957 A.2d 1180, 1192 (Pa. 2008)).

-13-

In sum, the exclusion of insurance for unlicensed drivers does not violate the public policy of Pennsylvania.


IV.

Accordingly, we will grant the motion of Omni for summary judgment and deny the motion of Duncan for partial summary judgment.

-14-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| OMNI INSURANCE COMPANY | : | NO. 16-1489 |

<u>JUDGMENT</u>

AND NOW, this 28th day of September, 2016, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that summary judgment is entered in favor of defendant Omni Insurance Company and against plaintiff Richard Duncan.

BY THE COURT:


/s/ Harvey Bartle III
                              J.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN          :
                          : No.16-1489-HB
                          :
         v.               :
                          :
OMNI INSURANCE COMPANY    :
                          :

**ORDER**

AND NOW, this _____ day of _____, 2016, upon consideration of the Motion for Reconsideration, it is hereby,

ORDERED AND DECREED that reconsideration is granted;

AND FURTHER, that the September 28, 2016 Order and Judgment be vacated pending this reconsideration.

ALL PROCEEDINGS TO STAY MEANWHILE.


BY THE COURT:


_____
                                 J.

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN     :
          : No.16-1489-HB
          :
    v.      :
          :
OMNI INSURANCE COMPANY  :
          :

## **MOTION FOR RECONSIDERATION**

1. The present action seeks recovery of contractual and extra-contractual damages in connection with claims arising from an October 8, 2012 motor vehicle accident.

2. In the present matter, the Court has granted summary judgment in favor of the defendant, Omni Insurance Company ("Omni").

3. The plaintiff, Richard Duncan, respectfully seeks reconsideration of the decision of the Court.

4. The Memorandum Opinion of the Court fails to fully consider the actual issue in the case, namely, the validity of the disclaimer of coverage to the licensed *owner* of the vehicle rather than the validity of the disclaimer to the unlicensed *operator* of the vehicle.

5. Initially, the Court misperceives certain of the basic facts.

6. Specifically, in the Memorandum Opinion the Court states:

Following the entry of Judgment on the Arbitration Award, Lamar and Aaron assigned all claims and rights to Duncan against Omni.  In satisfaction of the assignment, Duncan agreed not to collect or execute against Lamar and Aaron, and he agreed to mark the judgment against Lamar and Aaron satisfied upon the conclusion of proceedings against Omni.

Memorandum Opinion, p. 2.

7. In this case, the plaintiff, Richard Duncan, did not receive any assignment of the Judgment in the tort action against the unlicensed *operator*, Aaron.

1

8.    In this case, the plaintiff, Richard Duncan, did not agree to collect or execute the Judgment in the tort action against the unlicensed *operator*, Aaron.

9.    In addition, it is believed that the Court misperceived the legal issue in dispute.

10.    In its decision, the Court focuses upon the validity of the disclaimer of coverage to the unlicensed *operator* of the vehicle rather than the licensed *owner* of the vehicle.

11.    In focusing upon the validity of the disclaimer of coverage to the unlicensed *operator* of the vehicle rather than to the licensed *owner*, the Court stated:

> Duncan avers that the exclusion contradicts the public policy of deterring unlicensed drivers from operating vehicles. We do not understand how insuring unlicensed drivers will keep them off the road. If anything, the contrary seems more likely.

Memorandum Opinion, p. 11.

12.    Further, the Court in its Memorandum Opinion goes on to state:

> We acknowledge a public policy of extending insurance coverage to all licensed drivers. However, it does not extend to unlicensed drivers. The MVFRL mandates certain benefits that must be excluded from coverage under § 1718, as well as certain benefits that cannot be excluded from coverage under § 1724. This public policy, as expressed by the General Assembly, does not require automobile insurance coverage for personal injuries in all situations. The MVFRL is silent with respect to insurance coverage for unlicensed drivers.

Memorandum Opinion, p. 11 (footnote omitted).

13.    The issue in the case at bar is not the validity of the disclaimer of coverage to the unlicensed *operator*; rather, the issue in the present case is the validity of the disclaimer of coverage to the licensed *owner* of the vehicle for allowing an unlicensed *operator* to use her car in direct contravention of Pennsylvania law.

14.    The Court, in its Memorandum Opinion, focuses upon the validity of the disclaimer of coverage to unlicensed *operators*, rather than the actual issue, namely, the validity of the disclaimer of coverage to the named insured licensed *owner* who permitted an unlicensed *operator* to use her car in direct violation of Pennsylvania law.

2

15.     The Court wrongly entered Summary Judgment in favor of the defendant, Omni, thereby finding the disclaimer of coverage to the licensed *operator* to be valid.[1]

16.     The plaintiff, Richard Duncan, respectfully requests that the September 28, 2016 Order and Judgment be vacated and that the Decision be reconsidered so that the actual issues in the case can be addressed and properly analyzed by the Court.

WHEREFORE, the plaintiff, Richard Duncan, respectfully requests that reconsideration be granted and, pending that reconsideration, the September 28, 2016 Order and Judgment be vacated.

Respectfully Submitted,

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:      JCH4113
JAMES C. HAGGERTY, ESQUIRE
SUZANNE TIGHE, ESQUIRE
PA Attorney I.D. # 30003; 80179
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6600
FAX (215) 665-8197

KELLY & HERRON, P.C.

BY:   /s/ Kevin P. Kelly
KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102

Attorneys for Plaintiff

---

[1]   Interestingly, under the Court's rationale, the Legislature has specifically created a remedy which the Insurance Department has effectively rendered a nullity by approving an exclusion making the remedy meaningless.

3

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                          :
                                        :  No.16-1489-HB
                                        :
                v.                      :
                                        :
OMNI INSURANCE COMPANY                  :
                                        :

## MEMORANDUM OF LAW

The present action seeks contractual and extra-contractual damages from the defendant, Omni, in connection with claims arising from an October 8, 2012 motor vehicle accident. At issue is the validity of the disclaimer of coverage by the defendant, Omni, to the licensed *owner* of the motor vehicle involved in the collision. At the time of the accident, the licensed *owner*, Shameka Renee Lamar, had allowed an unlicensed *operator*, Chris Aaron a/k/a Chris Porter, to driver her car. The Pennsylvania Legislature has imposed direct liability upon vehicle owners for such actions. See 75 Pa.C.S.A. § 1574. The plaintiff, Richard Duncan, obtained Judgment against the licensed *owner* of the vehicle under that statute. The defendant, Omni, refused to satisfy that Judgment. A question exists as to the validity of the disclaimer of coverage to the licensed *owner*, particularly where the Legislature has specifically created a cause of action in this situation.[2]

In this case, the Court, in its Memorandum Opinion, focuses upon the provision of coverage to the unlicensed *operator*. The plaintiff, Richard Duncan, contrary to the statements of the Court, is not seeking to enforce any Judgment against the unlicensed *operator*. No

---

[2]  See note 1, <u>supra</u>.

4

assignment was obtained from the unlicensed *operator*. No agreement was reached with the unlicensed *operator* not to execute on the Judgment. Instead, the plaintiff, Richard Duncan, is seeking to pursue claims against the licensed *owner* for the liability imposed by Pennsylvania law. The Court focused its analysis on the wrong issue.

In its Opinion, the Court focuses upon the validity of the disclaimer of coverage to the unlicensed *operator*. In so doing, the Court appears to miss the point. The issue is not whether any insurer may disclaim coverage for the negligence of an unlicensed *operator*. The issue in this case is whether a carrier may disclaim coverage to a licensed *owner* for the liability specifically imposed by Pennsylvania law where the licensed owner allows an unlicensed *operator* to drive his or her insured vehicle. This is a material difference. In its Opinion, the Court does not focus upon this issue.[3]

In the Memorandum Opinion, the Court cogently addresses the reasons why coverage need not be extended to an unlicensed *operator* under Pennsylvania law. The plaintiff, Richard Duncan, does not challenge these conclusions. The Court properly concludes that an insurer may disclaim coverage to an unlicensed *operator*; however, the decision of the Court does not address how this rationale supports the disclaimer of coverage to the licensed *owner*.

In this matter, the plaintiff, Richard Duncan, respectfully requests that the Court grant reconsideration of its decision. In this regard, it is respectfully requested that the Order and Judgment be vacated pending this reconsideration. The plaintiff, Richard Duncan, respectfully suggests that the true issue in this case, namely, the validity of the disclaimer of coverage to a licensed *owner* has not been addressed. While the Court has properly concluded that an insurer

---

[3] The Courts' ruling envisions a system where the Insurance Department, by approving the exclusion, effectively eliminates the remedy which the Legislature sought to create.

may disclaim coverage to an unlicensed *operator*, the same rationale does not support the

disclaimer of coverage to a licensed *owner*, particularly where liability is directly imposed under

Pennsylvania law.  Accordingly, reconsideration of the Order and Judgment is respectfully

requested.

Respectfully Submitted,
HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.


BY:      JCH4113
JAMES C. HAGGERTY, ESQUIRE
SUZANNE TIGHE, ESQUIRE
PA Attorney I.D. # 30003; 80179
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6600
FAX (215) 665-8197


KELLY & HERRON, P.C.


BY:   /s/ Kevin P. Kelly
KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                    :
1300 Pennsylvania Avenue          :
Apartment H-3                     :
Oreland, PA  19075                :   No.16-1489
                                  :
                                  :
                v.                :
                                  :
OMNI INSURANCE COMPANY            :
2018 Powers Ferry Road, Suite 400 :
Atlanta, GA  30339                :

## **CERTIFICATION OF SERVICE**

I, James C. Haggerty, Esquire, hereby certify that a true and correct copy of Motion for Reconsideration and accompanying Memorandum have been served via electronic delivery upon the following persons:

Bruce Morrison, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA  19103

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:   JCH/4113
        JAMES C. HAGGERTY, ESQUIRE
        PA Attorney I.D. # 30003
        1835 Market Street, Suite 2700
        Philadelphia, PA  19103
        (267) 350-6600
        FAX (215) 665-8197
        Attorney for Plaintiff

DATE:  9/29/16

7

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN      :      CIVIL ACTION
     :
     v.      :
     :
OMNI INSURANCE COMPANY      :      NO. 16-1489
     :

ORDER

AND NOW, this 4th day of October, 2016, for the reasons set forth below, it is hereby ORDERED that the motion of plaintiff Richard Duncan for reconsideration (Doc. # 24) is DENIED.

---

The plaintiff Richard Duncan seeks reconsideration of our Order dated September 28th, 2016 denying Duncan's motion for partial summary judgment, and granting Defendant Omni Insurance Company's motion for summary judgment. Duncan does not cite any law on the standard for reconsideration in his brief accompanying his motion for reconsideration.[1]

---

1. In Max's Seafood Cafe, our Court of Appeals has set forth the standard for reconsideration:

> A judgment may be altered or amended if the party seeking reconsideration shows at least one of the following grounds: (1) an intervening challenge in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion for summary judgment; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice.

See Max's Seafood Cafe, 176 F.3d 667, 669 (3d Cir. 1999).

Case 2:16-cv-01489-HB  Document 25  Filed 10/04/16  Page 2 of 2

Duncan contends that the court improperly focused on the insurance policy exclusion's disclaimer of coverage for the vehicle operator. He urges that the court should instead focus on the exclusion's disclaimer of coverage for the vehicle owner, and thus find the exclusion invalid. He is incorrect and misses the point. The court held the exclusion to be valid. Thus neither the owner of the vehicle, nor the driver, nor the injured party can claim the benefit of insurance coverage where, as here, the driver is unlicensed.

The exclusion in the policy is valid and does not violate the public policy of Pennsylvania.[2] Accordingly, the motion of Duncan for reconsideration is being denied.

BY THE COURT:

/s/ Harvey Bartle III
                                    J.

---

2. Duncan notes that the court incorrectly stated that following the entry of Judgment on the Arbitration Award, both Shameka Renee Lamar, the owner of the vehicle, and Chris Aaron, the unlicensed driver, assigned all claims and rights to Duncan. Lamar did so, but Aaron did not. This fact, however, is immaterial to the validity of the exclusion or the court's analysis.

-2-

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                    :
                                  :    No.16-1489-HB
                                  :
              v.                  :
                                  :
OMNI INSURANCE COMPANY            :
                                  :

### NOTICE OF APPEAL

Notice is hereby given that the plaintiff, Richard Duncan, hereby appeals to the United

States Court of Appeals for the Third Circuit from the September 28, 2016 Order and

Memorandum granting Summary Judgment in favor of the defendant, Omni Insurance Company,

and the October 4, 2016 Order denying Reconsideration of that decision.  The Orders were

entered on September 28, 2016 and October 4, 2016, respectively.  These Orders have been

entered in the docket as

1

565a

evidenced by the attached copy of docket entries. Judgement has been entered in favor of the

defendant, Omni Insurance Company. There is no transcript of any proceedings in this regard.

Respectfully Submitted,

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:   JCH4113

JAMES C. HAGGERTY, ESQUIRE
SUZANNE TIGHE, ESQUIRE
PA Attorney I.D. # 30003; 80179
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6600
FAX (215) 665-8197

KELLY & HERRON, P.C.

BY:   /s/ Kevin P. Kelly
KEVIN P. KELLY, Esquire
PA Attorney I.D. # 28306
1500 Market Street
Centre Square – West Tower
Suite W-3110
Philadelphia, PA  19102

Attorneys for Plaintiff

2

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                        :
                                      :  No.16-1489
              v.                      :
                                      :
OMNI INSURANCE COMPANY                :

## CERTIFICATION OF TRANSCRIPT

I, James C. Haggerty, Esquire, counsel for the plaintiff, Richard Duncan, hereby certified

that there are no transcripts with respect to the proceedings in the above matter.

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:   JCH/4113
      JAMES C. HAGGERTY, ESQUIRE
      PA Attorney I.D. # 30003
      1835 Market Street, Suite 2700
      Philadelphia, PA  19103
      (267) 350-6600
      FAX (215) 665-8197
      Attorney for Plaintiff

DATE:  10/11/16

3

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                    :
                               : No.16-1489
      v.                    :
                               :
OMNI INSURANCE COMPANY            :

## CERTIFICATION OF SERVICE

I, James C. Haggerty, Esquire, hereby certify that a true and correct copy of the Notice of

Appeal has been served via electronic delivery upon the following persons:

Bruce Morrison, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA  19103

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

BY:   JCH/4113-2
      JAMES C. HAGGERTY, ESQUIRE
      PA Attorney I.D. # 30003
      1835 Market Street, Suite 2700
      Philadelphia, PA  19103
      (267) 350-6600
      FAX (215) 665-8197
      Attorney for Plaintiff

DATE: 10/11/16

4

10/6/2016

CLOSED,STANDARD

# United States District Court
## Eastern District of Pennsylvania (Philadelphia)
## CIVIL DOCKET FOR CASE #: 2:16-cv-01489-HB

DUNCAN v. OMNI INSURANCE COMPANY
Assigned to: HONORABLE HARVEY BARTLE, III
Cause: 28:1441 Notice of Removal- Insurance Contract

Date Filed: 04/01/2016
Date Terminated: 09/28/2016
Jury Demand: Plaintiff
Nature of Suit: 110 Contract: Insurance
Jurisdiction: Diversity

**Plaintiff**

**RICHARD DUNCAN**                    represented by **JAMES C. HAGGERTY**
HAGGERTY GOLDBERG SCHLEIFER &
KUPERSMITH PC
1835 MARKET ST STE 2700
PHILADELPHIA, PA 19103
267-350-6609
Email: jhaggerty@hgsklawyers.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**KEVIN P. KELLY**
KELLY & HERRON PC
1500 MARKET ST SUITE W-3110
CENTRE SQUARE - WEST TOWER
PHILADELPHIA, PA 19102
215-972-1500
Email: kkelly@kellyherronlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**SUZANNE TIGHE**
Haggerty, Goldberg, Schleifer &
Kupersmith
1835 Market Street
Suite 2700
Philadelphia, PA 19103
1-267-350-6600
Fax: 215-665-8201
Email: stighe@hgsklawyers.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**OMNI INSURANCE COMPANY**          represented by **R. BRUCE MORRISON**
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 MARKET ST SUITE 2300

**569a**

PHILADELPHIA, PA 19103
215-575-2746
Fax: 215-575-0856
Email: rbmorrison@mdwcg.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**TERESA FICKEN SACHS**
MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN
2000 MARKET ST SUITE 2300
PHILADELPHIA, PA 19103
215-575-2600
Email: tfsachs@mdwcg.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 04/01/2016 | 1 | NOTICE OF REMOVAL by OMNI INSURANCE COMPANY from Philadelphia CCP, case number 160300267. (Filing fee $ 400 receipt number 137986), Certificate of Service. (tj, ) (Entered: 04/04/2016) |
| 04/01/2016 | 2 | Disclosure Statement Form pursuant to FRCP 7.1 Identifying Corporate Parent AMERICAN INDEPENDENT COMPANIES INC. for OMNI INSURANCE COMPANY. with Certificate of Service by OMNI INSURANCE COMPANY.(tj, ) (Entered: 04/04/2016) |
| 04/08/2016 | 3 | DEFENDANTS ANSWER WITH AFFIRMATIVE DEFENSES, by OMNI INSURANCE COMPANY. CERTFICATE OF SERVICE, EXHIBITS.(sg, ) (Entered: 04/08/2016) |
| 04/11/2016 | 4 | Arbitration Certification that case exceeds the sum of $150,000.00 exclusive of interest and costs (Attachments: # 1 Certificate of Service Certification of Service)(HAGGERTY, JAMES) (Entered: 04/11/2016) |
| 04/12/2016 | 5 | NOTICE of Hearing: STATUS CONFERENCE SET FOR 4/25/2016 04:15 PM IN JUDGE BARTLE'S CHAMBERS BEFORE HONORABLE HARVEY BARTLE III. ADDITIONAL CONFERENCE DETAILS CONTAINED HEREIN.(km, ) (Entered: 04/12/2016) |
| 04/25/2016 | 6 | DEMAND for Trial by Jury by RICHARD DUNCAN. (Attachments: # 1 Certificate of Service)(HAGGERTY, JAMES) (Entered: 04/25/2016) |
| 04/26/2016 | 7 | Minute Entry for proceedings held before HONORABLE HARVEY BARTLE, III Status Conference held on 4/25/16. (jl, ) (Entered: 04/26/2016) |
| 04/26/2016 | 8 | SCHEDULING ORDER: THAT PLAINTIFF SHALL FILE AND SERVE ON OR BEFORE 6/27/2016 ANY BRIEF ON THE ISSUE OF POLICY COVERAGE TOGETHER WITH A SET OF STIPULATED FACTS. DEFENDANT SHALL FILE AND SERVE ANY RESPONSIVE BRIEF ON OR BEFORE 7/11/2016. PLAINTIFF SHALL FILE AND SERVE ANY REPLY BRIEF ON OR BEFORE 7/25/2016. SIGNED BY HONORABLE HARVEY BARTLE, III ON 4/26/2016. 4/26/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 04/26/2016) |
| 05/11/2016 | 9 | Original Record together with certified copy of docket entries received from Court of Common Pleas of Philadelphia County. (sg, ) (Entered: 05/11/2016) |
| 06/27/2016 | 10 | STIPULATION regarding certain facts by RICHARD DUNCAN. (Attachments: # 1 |

| | | Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Exhibit 5, # 6 Exhibit 6, # 7 Exhibit 7, # 8 Exhibit 8, # 9 Exhibit 9, # 10 Exhibit 10)(HAGGERTY, JAMES) Modified on 6/28/2016 (afm, ). (Entered: 06/27/2016) |
|---|---|---|
| 06/27/2016 | 11 | MOTION for Partial Summary Judgment filed by RICHARD DUNCAN.Memorandum and certificate of service. (Attachments: # 1 Text of Proposed Order, # 2 Memorandum, # 3 Certificate of Service, # 4 Exhibit A-1, # 5 Exhibit A-2)(HAGGERTY, JAMES) (Entered: 06/27/2016) |
| 07/11/2016 | 12 | ORDER THAT THE FIRST SCHEDULING ORDER DATED 4/26/2016 IS VACATED. DEFENDANTS SHALL FILE AND BRIEF RESPONSIVE TO THE MOTION FOR PARTIAL SUMMARY JUDGMENT BY 7/18/2016. THE PLAINTIFF SHALL FILE ANY REPLY BRIEF ON OR BEFORE 8/1/2016. SIGNED BY HONORABLE HARVEY BARTLE, III ON 7/11/2016. 7/11/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 07/11/2016) |
| 07/12/2016 | 13 | NOTICE of Appearance by SUZANNE TIGHE on behalf of RICHARD DUNCAN with Certificate of Service (Attachments: # 1 Certificate of Service)(TIGHE, SUZANNE) (Entered: 07/12/2016) |
| 07/18/2016 | 14 | MOTION for Summary Judgment filed by OMNI INSURANCE COMPANY.memorandum of law, certificate of service.(MORRISON, R.) (Entered: 07/18/2016) |
| 07/18/2016 | 15 | RESPONSE in Opposition re 11 MOTION for Partial Summary Judgment filed by OMNI INSURANCE COMPANY. (MORRISON, R.) (Entered: 07/18/2016) |
| 07/28/2016 | 16 | REPLY MEMORANDUM OF LAW IN SUPPORT OF re 11 MOTION for Summary Judgment filed by RICHARD DUNCAN, CERTIFICATE OF SERVICE. (Attachments: # 1 Certificate of Service, # 2 Exhibit A-1, # 3 Exhibit A-2)(HAGGERTY, JAMES) Modified on 7/29/2016 (afm, ). (Entered: 07/28/2016) |
| 07/28/2016 | 17 | RESPONSE in Opposition re 14 MOTION for Summary Judgment *of Omni Insurance Company* filed by RICHARD DUNCAN. (Attachments: # 1 Memorandum, # 2 Certificate of Service, # 3 Exhibit A-1, # 4 Exhibit A-2)(HAGGERTY, JAMES) (Entered: 07/28/2016) |
| 08/11/2016 | 18 | MOTION for Leave to File *Reply Brief* filed by OMNI INSURANCE COMPANY.Rule 7.1(b) Certification; Certificate of Service. (Attachments: # 1 Exhibit A - Reply Brief) (SACHS, TERESA) (Entered: 08/11/2016) |
| 08/12/2016 | 19 | ORDER THAT DEFENDANT OMNI INSURANCE COMPANY'S UNOPPOSED MOTION SEEKING LEAVE TO SUBMIT A SHORT REPLY BRIEF IS GRANTED. THE CLERK IS DIRECTED TO DOCKET THE REPLY ATTACHED AS AN EXHIBIT TO SAID MOTION UNDER A SEPERATE DOCKET ENTRY. SIGNED BY HONORABLE HARVEY BARTLE, III ON 8/12/2016. 8/12/2016 ENTERED AND COPIES E-MAILED. (ems) (Entered: 08/12/2016) |
| 08/12/2016 | 20 | OMNI INSURANCE COMPANY'S REPLY MEMORANDUM OF LAW ON CROSS-MOTIONS FOR SUMMARY JUDGMENT by OMNI INSURANCE COMPANY. Certificate of Service. (ems) (Entered: 08/12/2016) |
| 09/28/2016 | 21 | MEMORANDUM AND/OR OPINION. SIGNED BY HONORABLE HARVEY BARTLE, III ON 9/28/2016. 9/28/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 09/28/2016) |
| 09/28/2016 | 22 | ORDER THAT THE MOTION OF DEFENDANT OMNI INSURANCE COMPANY FOR SUMMARY JUDGMENT (DOC. 14 ) IS GRANTED. THE MOTION OF PLAINTIFF RICHARD DUNCAN FOR PARTIAL SUMMARY JUDGMENT (DOC. 11 |

| | | |
|---|---|---|
| | | ) IS DENIED. SIGNED BY HONORABLE HARVEY BARTLE, III ON 9/28/2016. 9/28/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 09/28/2016) |
| 09/28/2016 | 23 | ORDER THAT SUMMARY JUDGMENT IS ENTERED IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF. SIGNED BY HONORABLE HARVEY BARTLE, III ON 9/28/2016. 9/28/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 09/28/2016) |
| 09/29/2016 | 24 | MOTION for Reconsideration re 23 Order Dismissing Case filed by RICHARD DUNCAN.Memorandum and certificate of service. (Attachments: # 1 Memorandum, # 2 Certificate of Service, # 3 Text of Proposed Order)(HAGGERTY, JAMES) (Entered: 09/29/2016) |
| 10/04/2016 | 25 | ORDER THAT PLAITNIFFS MOTION FOR RECONSIDERATION (DOC. 24 )IS DENIED. SIGNED BY HONORABLE HARVEY BARTLE, III ON 10/4/2016.10/4/2016 ENTERED AND COPIES E-MAILED.(sg, ) (Entered: 10/04/2016) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 10/06/2016 10:04:12 | | | |
| **PACER Login:** | ws2774:3418024:0 | **Client Code:** | Duncan,richard |
| **Description:** | Docket Report | **Search Criteria:** | 2:16-cv-01489-HB |
| **Billable Pages:** | 3 | **Cost:** | 0.30 |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| RICHARD DUNCAN | : | CIVIL ACTION |
| v. | : | |
| OMNI INSURANCE COMPANY | : | NO. 16-1489 |

<u>ORDER</u>

AND NOW, this 28th day of September, 2016, for the reasons set forth in the accompanying memorandum, it is hereby ORDERED that:

(1)  the motion of defendant Omni Insurance Company for summary judgment (Doc. # 14) is GRANTED; and

(2)  the motion of plaintiff Richard Duncan for partial summary judgment (Doc. # 11) is DENIED.

BY THE COURT:


/s/ Harvey Bartle III
                                        J.

**573a**

Case: 16-3834    Document: 003112539992    Page: 578    Date Filed: 02/15/2017

Case 2:16-cv-01489-HB   Document 26-4   Filed 10/10/16   Page 2 of 15
Case 2:16-cv-01489-HB   Document 21   Filed 09/28/16   Page 1 of 14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

RICHARD DUNCAN                    :          CIVIL ACTION
                                  :
        v.                        :
                                  :
OMNI INSURANCE COMPANY            :
                                  :          NO. 16-1489

MEMORANDUM

Bartle, J.                                    September 28, 2016

Before the court are the cross-motions for summary

judgment of plaintiff Richard Duncan ("Duncan") and defendant Omni

Insurance Company ("Omni") under Rule 56 of the Federal Rules of

Civil Procedure with respect to an exclusion in an Omni automobile

insurance policy.

I.

The parties have stipulated to all the relevant

material facts. Duncan was injured in an automobile collision

on October 8, 2012, while he was a passenger on board a SEPTA

Route 47 bus. The bus was struck by a motor vehicle at or near

the intersection of 8th and Dickinson Streets in Philadelphia.

Shameka Renee Lamar ("Lamar") held title to the motor vehicle, a

2003 Chevrolet Avalanche and insured it through Omni under a

Private Passenger Auto Insurance Policy. Chris Aaron ("Aaron"),

a/k/a Chris Porter, was the operator of the vehicle at the time

of the collision.  Aaron was not licensed to drive an
automobile.

Following the collision, Duncan commenced an action
for damages against Lamar and Aaron in the Court of Common Pleas
of Philadelphia County. He alleged negligence and negligent
entrustment.  See Richard Duncan v. Chris Aaron and Shameka
Renee Lamar, No. 0479 (Pa. Ct. Comm. Pleas, Sept. 2014).  Omni,
Lamar's insurer, denied all coverage for loss sustained in the
collision on the basis of an unlicensed driver exclusion
contained in the insurance policy.  Omni informed Lamar and
Aaron of the coverage denial and advised them to retain their
own attorneys.

Duncan, Lamar, and Aaron proceeded to arbitration in
the Court of Common Pleas of Philadelphia County.  Arbitrators
awarded $28,000 in damages in favor of Duncan.  Following the
entry of Judgment on the Arbitration Award, Lamar and Aaron
assigned all claims and rights to Duncan against Omni.  In
satisfaction of the assignment, Duncan agreed not to collect or
execute against Lamar and Aaron, and he agreed to mark the
judgment against Lamar and Aaron satisfied upon the conclusion
of proceedings against Omni.

Duncan thereafter commenced this action in the Court
of Common Pleas of Philadelphia County against Omni seeking to
collect from Omni the $28,000 judgment.  He also alleges a claim

-2-

of bad faith in violation of the Pennsylvania Bad Faith Statute,
42 Pa. Const. Stat. § 8371 (2015).[1]  Omni removed the action to
this court based on diversity of citizenship.  See 28 U.S.C. §
1332.

II.

Lamar's Omni Private Passenger Auto Insurance Policy
for the 2003 Chevrolet Avalanche provided in Part A Liability
Coverage:

. . .

      B. **Insured**[2] as used in this Part means:

         . . .

> (3) A person using **your covered auto** with
> the **owner's** express or implied
> permission and within the scope of the
> permission granted.  The person must
> hold a valid driver's license at the
> time of the loss and must not be a
> regular operator of **your covered auto**.

---

1. The jurisdictional amount in an action under 28 U.S.C.
§ 1332(a) is met where the matter in controversy exceeds the sum
or value of $75,000, exclusive of interests and costs.  Our
Court of Appeals has stated the amount in controversy is not
based "on the 'low end of an open-ended claim,' but rather on 'a
reasonable reading of the value of the rights being litigated.'"
Judon v. Travelers Property Cas. Co. of America, 773 F.3d 495,
507 (3d Cir. 2014) (quoting Werwinski v. Ford Motor Co., 286
F.3d 661, 666 (3d Cir. 2002).  Because of the bad faith claim,
we deem the amount in controversy requirement to have been met.

2. It appears that the policy uses bold text to set apart terms
and phrases defined therein.  To the extent that we quote from
the policy, all bold text in this opinion appears in the policy
and has not been added by the court.

-3-

Case: 16-3834    Document: 003112539992    Page: 581    Date Filed: 02/15/2017

Case 2:16-cv-01489-HB   Document 26-4   Filed 10/10/16   Page 5 of 15
Case 2:16-cv-01489-HB   Document 21   Filed 09/28/16   Page 4 of 14

The policy contained an unlicensed driver exclusion that

provided:

> A.  **[Omni]We** do not provide liability
>     coverage for any **insured**:
>
> .  .  .  .
>
>> (16) For **bodily injury** or **property
>> damage** resulting from the ownership,
>> maintenance or use of any vehicle when
>> driven by an individual who:
>>
>> .  .  .
>>
>>> (c)  Does not have a valid driver's
>>>      license; or
>>>
>>> (d)  Has a suspended or revoked
>>>      driver's license.

(emphasis added).  Omni argues, in support of its motion for

summary judgment, that the exclusion above in the Omni insurance

policy allowed Omni to disclaim coverage for the collision

between Aaron and the SEPTA Route 47 bus because Aaron was an

unlicensed driver.

Duncan opposes Omni's motion for summary judgment and

has moved for partial summary judgment in his favor on the basis

that the exclusion upon which Omni relies is void and

unenforceable under the Pennsylvania Motor Vehicle Code, 75 Pa.

Cons. Stat. § 1501 (2015) et seq., and under the Pennsylvania

Motor Vehicle Financial Responsibility Law, 75 Pa. Const. Stat.

-4-

§ 1701 (2015) et seq.  He contends this exclusion violates Pennsylvania public policy.

Under Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The facts here, as noted above, are undisputed.  The sole issue is which party is entitled to judgment as a matter of law.

II.

We now turn to the exclusion in the Omni insurance policy.  The parties do not dispute that in this diversity action the substantive law of Pennsylvania applies.  See, e.g., Nationwide Mut. Ins. Co. v. Buffetta, 230 F.3d 634, 637 (3d Cir. 2000).

The interpretation of an insurance policy is a question of law for the court.  See Pac. Indem. Co. v. Linn, 766 F.2d 754, 760 (3d Cir. 1985); 401 Fourth St., Inc. v. Inv'rs Ins. Grp., 879 A.2d 166, 171 (Pa. 2005).  The primary goal is to "ascertain the parties' intentions as manifested by the policy's terms."  See Kvaerner Metals Div. of Kvaerner U.S., Inc. v. Commercial Union Ins. Co., 908 A.2d 888, 897 (Pa. 2006).  When the language of the policy is clear, we give effect to its plain meaning.  See Am. & Foreign Ins. Co. v. Jerry's Sport Ctr., Inc., 2 A.3d 526, 540 (Pa. 2010).  The meaning of the policy provision in issue is

-5-

crystal clear.  There is an exclusion for coverage when, as here,

the driver who caused the bodily injury was unlicensed.  The only

issue is whether the clear language violates Pennsylvania law.

Duncan maintains that the exclusion violates § 1574 of

the Pennsylvania Motor Vehicle Code ("MVC") and §§ 1786(a),

1786(f), and 1702 of the Pennsylvania Motor Vehicle Financial

Responsibility Law ("MVFRL").  Section 1574 of the MVC states:

> (a)  **General rule.** - - No person shall
>       authorize or permit a motor vehicle
>       owned by him or under his control to be
>       driven upon any highway by any person
>       who is not authorized under this
>       chapter or who is not licensed for the
>       type or class of vehicle to be driver.
>
> (b)  **Penalty.** - - Any person violating the
>       provisions of subsection (a) is guilty
>       of a summary offense and shall be
>       jointly and severally liable with the
>       driver for any damages caused by the
>       negligence of such driver in operating
>       the vehicle.  75 Pa. Const. Stat.
>       § 1574 (2015).

Duncan argues that § 1574 of the MVC imposes vicarious

liability on owners who permit unlicensed drivers to operate

their vehicles, and therefore Omni's exclusion disclaiming

liability coverage violates § 1574.  However, this provision

does not help Duncan.  Whatever the remedy may exist against

Lamar, the owner of the vehicle, there is nothing in § 1574

which makes any reference to insurance coverage.  It neither

requires insurance coverage nor prohibits any limitation on

-6-

insurance coverage.  Therefore, the Omni exclusion does not

violate § 1574.

> We turn to §§ 1786(a), 1786(f), and 1702 of the MVFRL.

Sections 1786(a) and 1786(f) of the MVFRL provide:

> (a) **General rule. - -** Every motor vehicle
> of the type required to be registered
> under this title which is operated or
> currently registered shall be covered
> by financial responsibility.
>
> . . . .
>
> (f) **Operation of motor vehicle without
> required financial responsibility. - -**
> Any owner of a motor vehicle for which
> the existence of financial
> responsibility is a requirement for its
> legal operation shall not operate the
> motor vehicle or permit it to be
> operated upon a highway of this
> Commonwealth without the financial
> responsibility required by this
> chapter.  In addition to the penalties
> provided by subsection (d), any person
> who fails to comply with this
> subsection commits a summary offense
> and shall, upon conviction, be
> sentenced to pay a fine of $300.[3]  75
> Pa. Const. Stat. § 1786(a), (f) (2015).

Section 1702, in relevant part, defines "financial

responsibility" of a vehicle owner as:

> The ability to respond in damages for
> liability on account of accidents arising

---

3.  Section 1786(d), referenced in § 1786(f), provides for the
suspension of the registration and of the operating privilege of
the vehicle if the Department of Transportation determines that
the vehicle has been operated or permitted to be operated
without the required financial responsibility.  See 75 Pa.
Const. Stat. § 1786(d) (2015).

Case: 16-3834   Document: 003112539992   Page: 585   Date Filed: 02/15/2017

Case 2:16-cv-01489-HB   Document 26-4   Filed 10/10/16   Page 9 of 15
Case 2:16-cv-01489-HB   Document 21   Filed 09/28/16   Page 8 of 14

out of the maintenance or use of a motor
vehicle in the amount of $15,000 because of
injury to one person in any one accident, in
the amount of $30,000 because of injury to
two or more persons in any one accident and
in the amount of $5,000 because of damage to
property of others in any one accident.  The
financial responsibility shall be in a form
acceptable to the Department of
Transportation.  75 Pa. Const. Stat. § 1702
(2015).

Duncan asserts that § 1786(a) requires financial

responsibility of motor vehicle owners and that § 1786(f)

requires that this financial responsibility extends to

unlicensed drivers.  We disagree.  Section 1786(a) requires

motor vehicles in Pennsylvania to be covered by financial

responsibility.  See 75 Pa. Const. Stat. § 1786(a) (2015).

Section 1786(f) prohibits an owner of a motor vehicle from

operating or permitting the operation of a motor vehicle without

the required financial responsibility, that is, the ability to

respond in damages for personal injuries in a certain amount.

See 75 Pa. Const. Stat. § 1786(f) (2015).  Again, whatever

liability may be assessed against a vehicle owner who violates

this provision, the statute cannot reasonably be interpreted to

require an owner's insurer to provide coverage under an

insurance policy for injuries by an unlicensed driver.

Duncan relies on Pennsylvania Superior Court decisions

Progressive Northern Insurance Co. v. Universal Underwriters

Insurance Co., 898 A.2d 1116 (Pa. Super. Ct. 2006), and McWeeny

-8-

Case: 16-3834    Document: 003112539992    Page: 586    Date Filed: 02/15/2017

Case 2:16-cv-01489-HB   Document 26-4   Filed 10/10/16   Page 10 of 15
Case 2:16-cv-01489-HB   Document 21   Filed 09/28/16   Page 9 of 14

v. Estate of Strickler, 61 A.3d 1023 (Pa. Super. Ct. 2013).
However, neither of these cases supports his position.

In Progressive Northern, the insured's son was in a
motor vehicle accident while he was driving a vehicle loaned to
the insured by a car dealership.  See Progressive N. Ins. Co.,
898 A.2d at 1117.  The issues before the Pennsylvania Superior
Court were which insurance carrier was required to provide
liability coverage to the insured, the carrier of the loaned
vehicle, or the carrier of the insured's personal vehicle, and
whether the policies, which contained "mutually repugnant
clauses" concerning priority of coverage, could practically be
enforced.  See id. at 1118-19.  The case had nothing to do with
insurance coverage for unlicensed drivers.

In McWeeny, a driver, who was listed as a principal
driver on the vehicle's insurance policy, was involved in a
motor vehicle accident.  See McWeeny, 61 A.3d at 1025.  She
sought to recover benefits under the policy, but the other
driver in the accident alleged that she could not recover
because she was insured under the limited tort option of the
policy, and therefore could not recover without having sustained
a serious injury.  See id.  Again, this case did not involve the
issue of coverage for unlicensed drivers.

-9-

Case: 16-3834    Document: 003112539992    Page: 587    Date Filed: 02/15/2017

Case 2:16-cv-01489-HB   Document 26-4   Filed 10/10/16   Page 11 of 15
Case 2:16-cv-01489-HB   Document 21   Filed 09/28/16   Page 10 of 14

III.

We now turn to Duncan's assertion that the exclusion is contrary to public policy. We consider public policy arguments in light of "reference to the laws and legal precedents and not from general considerations of supposed public policy interest. As the term 'public policy' is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy." Burnstein v. Prudential Prop. & Cas. Ins. Co., 809 A.2d 204, 207 (Pa. 2002) (quoting Eichelman v. Nationwide Ins. Co., 711 A.2d 1006, 1008 (Pa. 1998)). This court has declared there is a "'heavy burden required to declare an unambiguous provision of an insurance contract void as against public policy.'" Williams v. Allstate Ins. Co., 595 F.Supp.2d 532, 542 (E.D. Pa. 2009) (quoting Generette v. Donegal Mut. Ins. Co., 957 A.2d 1180, 1190 (Pa. 2008)).

Duncan argues that the exclusion is contrary to the public policy of the Commonwealth because it frustrates the remedial purpose of the MVFRL. This argument fails. The Pennsylvania Supreme Court has identified cost containment, freedom of consumer choice, as well as remediation as goals of the MVFRL. See Williams v. GEICO Gov't Emp. Ins. Co., 32 A.3d 1195, 1203 (Pa. 2011); see also Progressive N. Ins. Co. v. Schneck, 813 A.2d 828, 832 (Pa. 2002). It recognizes that the

-10-

Case: 16-3834    Document: 003112539992    Page: 588    Date Filed: 02/15/2017

Case 2:16-cv-01489-HB   Document 26-4   Filed 10/10/16   Page 12 of 15
Case 2:16-cv-01489-HB   Document 21   Filed 09/28/16   Page 11 of 14

goal of cost containment of insurance policies allows consumers to have the ability to pay more in premiums for greater coverage, and less in premiums for lesser coverage. See GEICO, 32 A.3d at 1203.

Duncan avers that the exclusion contradicts the public policy of deterring unlicensed drivers from operating vehicles. We do not understand how insuring unlicensed drivers will keep them off of the road. If anything, the contrary seems more likely.

We acknowledge a public policy of extending insurance coverage to all licensed drivers. However, it does not extend to unlicensed drivers. The MVFRL mandates certain benefits that must be excluded from cover under § 1718, as well as certain benefits that cannot be excluded from coverage under § 1724.[4] This public policy, as expressed by the General Assembly, does not require automobile insurance coverage for personal injuries in all situations. The MVFRL is silent with respect to insurance coverage for unlicensed drivers.

---

3.  When an insured's conduct in the following three ways contributes to the insured's injury, an insurer must exclude an insured from benefits:  while intentionally injuring, or attempting to injure, himself or another, while committing a felony, or while seeking to elude lawful apprehension or arrest by law enforcement.  See 75 Pa. Const. Stat. § 1718(a) (2015). On the contrary, an insurance policy provision may not exclude benefits solely because the driver of the insured vehicle was under the influence of alcohol or drugs at the time of the accident.  See 75 Pa. Const. Stat. § 1724(a) (2015).

-11-

584a

While the MVFRL does not address the subject of insurance coverage for unlicensed drivers, the Pennsylvania Insurance Commissioner has done so. Pursuant to The Insurance Company Law of 1921, 40 Pa. Cons. Stat. Ann. § 477b (2015), the Insurance Commissioner must approve the language and terms of all casualty insurance policies issued in the Commonwealth. The imprimatur of the Commissioner on the Omni unlicensed driver exclusion, together with the absence of any specific legislative mandate for the inclusion of such coverage, undermines Duncan's argument that the exclusion is void as against Pennsylvania public policy.

Moreover, the exclusion is consistent with the cost containment purpose of the MVFRL. See GEICO, 32 A.3d at 1203. If insurance policies had to provide coverage for unlicensed drivers, premiums undoubtedly would increase. Whether such coverage should exist is a matter for the General Assembly.

Finally, Duncan has cited no precedent where the courts of Pennsylvania have overturned an automobile insurance provision as against public policy. In fact, the Pennsylvania Supreme Court has upheld the validity of various exclusions in insurance policies on several occasions. See Burnstein, 809 A.2d at 210; see also GEICO, 32 A.3d at 1201; see also Schneck, 813 A.2d at 834; see also Eichelman, 711 A.2d at 1006.

-12-

For example, the Pennsylvania Supreme Court has held that an exclusion that disclaims coverage when an insured driver drives a regularly used, non-owned vehicle is allowable under the MVFRL and does not violate public policy. See Burstein, 809 A.2d at 210. In its analysis, the court stated that finding the exclusion invalid would force the insurance company to "underwrite unknown risks that it had not been compensated to insure," thereby frustrating the goal of cost containment. Id.

The Pennsylvania Supreme Court has also decided that an exclusion was not void as against public policy where an insurer disclaimed underinsured motorist coverage to an insured Pennsylvania State Trooper under his personal automobile insurance policy when he was injured in an accident while driving a state covered vehicle provided to him for regular use. See GEICO, 32 A.3d at 1209. In upholding the exclusion, the court declined to weigh the importance of various public policy concerns. Id. at 1203-04. The Court stated:

> Appellant asks us to weigh the protection of first responders against the recognized scheme of cost containment underlying the MVFRL. We have consistently held, however, that this is not the proper function of this Court to weigh competing public policy interests; rather that task is bested suited for the legislature. GEICO, 32 A.3d at 1203. (citing Generette v. Donegal Mut. Ins. Co., 957 A.2d 1180, 1192 (Pa. 2008)).

-13-

Case: 16-3834    Document: 003112539992    Page: 591    Date Filed: 02/15/2017

Case 2:16-cv-01489-HB   Document 26-4   Filed 10/10/16   Page 15 of 15
Case 2:16-cv-01489-HB   Document 21   Filed 09/28/16   Page 14 of 14

In sum, the exclusion of insurance for unlicensed drivers does not violate the public policy of Pennsylvania.


IV.

Accordingly, we will grant the motion of Omni for summary judgment and deny the motion of Duncan for partial summary judgment.

-14-

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

Case No.  16-3834

RICHARD DUNCAN
Appellant

OMNI INSURANCE COMPANY
Appellee

*Appeal from an Order and Opinion entered on September 28, 2016 in the United States District Court for the Eastern District of Pennsylvania; No. 16-1489 Denying Plaintiff's Motion for Partial Summary Judgment and Granting Defendant's Motion for Summary Judgment; Order entered on October 4, 2016 denying Reconsideration*

## MOTION OF APPELLANT, RICHARD DUNCAN,
## TO CERTIFY TO SUPREME COURT OF PENNSYLVANIA

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

James C. Haggerty, Esquire; I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA  19103
(267) 350-6609

## MOTION TO CERTIFY TO SUPREME COURT OF PENNSYLVANIA

The plaintiff, Richard Duncan by his counsel, hereby petitions the Third

Circuit Court of Appeals to certify the questions of state law in the present matter

to the Supreme Court of Pennsylvania and avers as follows:

1.    The present action involves an issue of purely state law which has not

previously been addressed by the Supreme Court of Pennsylvania, namely validity

and enforceability of the unlicensed driver exclusion to the liability of the vehicle

owner (not the operator) under Pennsylvania law.

2.    The Omni Insurance Company has disclaimed coverage to the vehicle

owner on the basis of the unlicensed driver exclusion.

3.    The unlicensed driver exclusion contained in the Omni Insurance

Company Policy provides:

A.    We do not provide Liability Coverage for any insured

16.    For bodily injury or property damage resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

c.    Does not have a valid driver's license; or

d.    Has a suspended or rescinded driver's license

2

**589a**

4.      The application of the unlicensed operator exclusion to the liability of the owner of the vehicle negates the specific impact of § 1574 of the Pennsylvania Motor Vehicle Code which provides:

> (a)    **General Rule.** – No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this Chapter or who is not licensed for the type or class of vehicle to be driven.

> (b)    **Penalty.** – Any person violating the provisions subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S.A. § 1574.

5.      Section 1574 was enacted by the Pennsylvania Legislature to provide a remedy to persons injured by the  negligence of unlicensed drivers (who presumably have no insurance) by making the vehicle owner who permits use of the vehicle jointly and severally liable.

6.      The application of the unlicensed operator exclusion to the liability of the owner of the vehicle is contrary to the public policy of Pennsylvania, namely the mandate of requiring vehicles operated on roadways to be insured.

7.      The Trial Court has determined that the unlicensed operator exclusion is applicable to not only the unlicensed operator of the motor vehicle but also to the insured, licensed owner, in contravention of Pennsylvania law and public policy.

3

8.    There is no factual dispute in this case; the legal coverage issue was addressed and resolved by the Trial Court by way of stipulated facts and cross motions for summary judgment.

9.    The legal coverage issue, namely, the validity and enforceability of the unlicensed driver exclusion to the vehicle owner (not the vehicle operator) is an issue of first impression which has not been addressed by the Supreme Court of Pennsylvania.

10.    The legal coverage issue, namely, the validity and enforceability of the unlicensed driver exclusion to the vehicle owner (not the vehicle operator) is of substantial public importance requiring prompt and definitive resolution.

11.    The validity and enforceability of the unlicensed driver exclusion to the vehicle owner (not the vehicle operator) has significance to all insurers and insureds in the Commonwealth of Pennsylvania.

12.    The validity and enforceability of the unlicensed driver exclusion to the vehicle owner (not the vehicle operator) in motor vehicle policies in the Commonwealth of Pennsylvania is an unsettled issue under the Pennsylvania Motor Vehicle Financial Responsibility Law, 75 Pa.C.S.A. § 1701 et seq. and has not been addressed by the Supreme Court of Pennsylvania.

13.    The validity and enforceability of the unlicensed driver exclusion to the owner of a motor vehicle (not the operator of the motor vehicle) involves legal

4

coverage issues purely of state law more properly addressed and resolved by the Pennsylvania Supreme Court.

14.     The validity and enforceability of the unlicensed operator exclusion to the owner of the motor vehicle (not the operator of the motor vehicle) directly affects hundreds of claims which have been filed or will be filed under automobile policies in Pennsylvania.

15.     Certification of the present matter to the Supreme Court of Pennsylvania will ensure that there is certainty and consistency in connection with the legal coverage issue being litigated in the present action.

16.     The plaintiff, Richard Duncan, therefore, respectfully requests that the present appeal be certified to the Supreme Court of Pennsylvania for disposition.

WHEREFORE, the plaintiff, Richard Duncan, respectfully requests that the Third Circuit Court of Appeals certify the present appeal to the Supreme Court of Pennsylvania for disposition.

Respectfully submitted,

HAGGERTY, GOLDBERG, SCHLEIFER & KUPERSMITH, P.C.

James C. Haggerty, Esquire; I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA  19103

Date:  2/2/17

5

## CERTIFICATE OF SERVICE

I, James C. Haggerty, certify that I have, on this 2nd day of February, 2017,

served a copy of the foregoing Motion via first class mail and electronic filing and

electronic service in accordance with Local Rules of Appellate Procedure, Rule

31.1 upon the persons listed below:

The Honorable Harvey Bartle, III
United States District Court
For the Eastern District of Pennsylvania
Room 16614
601 Market Street
Philadelphia, Pa  19106

Bruce Morrison, Esquire
Marshall, Dennehey, Warner, Coleman & Goggin
2000 Market Street, Suite 2300
Philadelphia, PA  19103

6

Kevin Kelly, Esquire
Kelly & Herron, P.C.
1500 Market Street
Centre Square - West Tower
Suite W-3110
Philadelphia, PA 19102

Respectfully submitted,

HAGGERTY, GOLDBERG, SCHLEIFER
& KUPERSMITH, P.C.

/s/ James C. Haggerty
James C. Haggerty, Esquire; I.D. # 30003
1835 Market Street, Suite 2700
Philadelphia, PA 19103
(267) 350-6609

Counsel for:
Appellant, Richard Duncan

Date: 2/2/17

7

**594a**