**No. 16-3834**

## In The
# United States Court of Appeals
# For the Third Circuit

---

RICHARD DUNCAN

Plaintiff/Appellant,

v.

OMNI INSURANCE COMPANY,

Defendant/Appellee

---

Appeal from the September 28, 2016 Order and Opinion of the
United States District Court for the Eastern District of Pennsylvania,
No. 2:16-cv-01489 (Bartle, J.), Reconsideration Denied October 4, 2016

---

## BRIEF OF DEFENDANT/APPELLEE,
## OMNI INSURANCE COMPANY

---

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**
R. Bruce Morrison, Esquire
Teresa Ficken Sachs, Esquire
2000 Market Street, Suite 2300
Philadelphia, PA 19103
(215) 575-2000
***Counsel for Omni Insurance Company***

## CORPORATE DISCLOSURE STATEMENT

As set forth in Omni Insurance Company's Corporate Disclosure Statement and Statement of Financial Interest, Omni's parent corporation is American Independent Companies, Inc. No publicly held company owns stock in Omni, and no publicly owned corporation not a party to the appeal has any financial interest in the outcome of this litigation.

# TABLE OF CONTENTS

Corporate Disclosure Statement ............................................................. i

Table of Authorities ............................................................................ iii

Counterstatement of Issues Presented for Review .................................1

Statement of Related Cases and Proceedings .........................................2

Counterstatement of the Standard of Review .........................................2

Counterstatement of the Case .................................................................3

Summary of the Argument .....................................................................12

Argument ................................................................................................14

I.  The District Court Correctly Held That the Unlicensed Operator Exclusion
    is Valid and Enforceable as a Matter of Pennsylvania Law and Public Policy 14

   A.  The "Unlicensed Operator" Exclusion Does Not Violate the MVFRL ...17

   B.  The "Unlicensed Operator" Exclusion Does Not Violate the Motor
       Vehicle Code ...........................................................................21

   C.  The "Unlicensed Operator' Exclusion Does Not Violate Public Policy;
       It Is Consistent With and Advances that Policy ......................................30

   D.  Plaintiff's Request for Certification Should be Denied, Because the
       Exclusion is Admittedly Clear and Unambiguous, the Statutory
       Sections and Prior Case Law Are Clear, and There are No Special
       or Important Reasons that Could Warrant Review ................................35

Conclusion .........................................................................................389

Certifications

Certificate of Service

# TABLE OF AUTHORITIES

## Cases

*Becker v. Mack Trucks, Inc.*,
  281 F.3d 372 (3d Cir. 2002) ........................................................................2

*Burstein v. Prudential Property & Cas. Ins. Co.*,
  809 A.2d 204 (Pa. 2002) ............................................................ 14, 31, 32

*Byoung Suk An v. Victoria Fire and Cas. Co.*,
  113 A.2d 1283 (Pa. Super. 2015) ........................................ 20,21,29,32,33,35,37

*Chamberlain v. Riddle*,
  38 A.2d 521 (Pa. Super. 1944) ...................................................................23

*Commonwealth of Pa., Dept. of Public Welfare v. Hickey*,
  582 A.2d 734 (Pa. Cmwlth. 1990)..............................................................24

*Commonwealth v. Jenks*,
  296 A.2d 526 (Pa. Cmwlth. 1991)................................................... 28, 34

*Covington v. Cont'l Gen. Tire, Inc.*,
  381 F.3d 216 (3d Cir. 2004) .......................................................................21

*Donegal Mut. Ins. Co. v. Fackler*,
  835 A.2d 712 (Pa. Super. 2003) .................................................................33

*Eichelman v. Nationwide Ins. Co.*,
  711 A.2d 1006 (Pa. 1998)............................................. 14,15,30,32,35

*Ferry v. Fisher*,
  709 A.2d 399 (Pa. Super. 1998) .................................................................23

*Grudkowski v. Foremost Ins. Co.*,
  556 Fed. Appx. 165 (3d Cir. 2014) ............................................................38

*Heller v. Pennsylvania League of Cities*,
  32 A.3d 1213 (Pa. 2011)............................................................. 15, 33

*Ho v. Allstate Indem. Co.*,
  615 Fed. Appx. 94 (3d Cir. 2015) ..............................................................37

*In re Lazy Days' RV Ctr. Inc.*,
  724 F.3d 418 (3d Cir. 2013) .......................................................................25

*Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*,
  617 F.3d 207 (3d Cir. 2010) .........................................................................2

iii

*Infinity Indem. Ins. Co. v. Gonzalez*,
     2012 U.S. Dist. LEXIS 77004 (E.D. Pa. 2012)..................................33

*Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Svcs.,*
     *L.P.*, 785 F.3d 96  (3d Cir. 2015) ........................................................2

*Nationwide Mut. Ins. Co. v. Cummings*,
     652 A.2d 1338 (Pa. Super. 1994) ........................................................29

*Newark Morning Ledger Co. v. United States*,
     539 F.2d 929 (3d Cir.1976) ................................................................18

*Northern Ins. Co. v. Schneck*,
     813 A.2d 828 (Pa. 2002)............................................................... 16, 29

*O'Loughlin v. Hunger,*
     2009 U.S. Dist. LEXIS 33711 (E.D. Pa. 2009).......................... 25, 26

*Progressive Northern Ins. Co. v. Schneck*,
     813 A.2d 828 (Pa. 2002)...................................................... 16, 33, 38

*Prudential Prop. & Cas. Ins. Co. v. Remed Recovery Care*,
     136 Fed. Appx. 4 (3d Cir. 2005) .........................................................37

*Prudential Prop. and Cas. Ins. Co. v. Colbert,*
     813 A.2d 747 (Pa. 2002).....................................................................14

*Seiple v. Progressive Northern Ins. Co.*,
     568 Fed. Appx. 183 (3d Cir. 2014) ....................................................38

*Selective Way Ins. Co. v. Gingrich*,
     2009 U.S. Dist. LEXIS 48010 (M.D. Pa. 2009)..................................21

*Swarmer v. Mutual Benefit*,
     72 A.3d 641 (Pa. Super. 2013) ...........................................................16

*Terwilliger v. Kitchen,*
     781 A.2d 1201 (Pa. Super. 2001) ................................................ 24, 26

*Travelers Indem. Co. v. DiBartolo*,
     171 F.3d 168 (3d Cir. 1999) ...............................................................37

*Williams v. GEICO,*
     32 A.3d 1195 (Pa. 2011)....................................... 14,15,30,31,32,33,35

**Statutes**

1 Pa.C.S. § 1921(b) .................................................................................27

1 Pa. C.S. § 1922 ................................................................27

1 Pa. C.S. § 1936 ................................................................27

40 Pa.C.S. §477b ..............................................................17

42 Pa.C.S. §8371 ..........................................................9, 10

201 Pa. Code § 63.10 .......................................................36

75 Pa.C.S. §1574 ........................................................ *passim*

75 Pa.C.S. §1702 .................................................. 17,24,29

75 Pa.C.S. §1711 ..............................................................19

75 Pa.C.S. §1712 ..............................................................19

75 Pa.C.S. §1712 ..............................................................19

75 Pa.C.S. §1718 (c) .........................................................20

75 Pa.C.S. §1731 ..............................................................19

75 Pa.C.S. §1734 ..............................................................20

75 Pa.C.S. §1786 ........................................................ *passim*

28 U.S.C. §1332 ................................................................9

28 U.S.C. §1441 ................................................................9

28 U.S.C. §1446 ................................................................9

## Rules

Pa.R.A.P. 3341(c) .............................................................36

L.A.R. Misc. 110.1 ...........................................................35

**COUNTERSTATEMENT OF ISSUE PRESENTED FOR REVIEW**

1.    Where a clear and unambiguous policy exclusion prohibits automobile liability insurance from applying if the insured vehicle is being operated by an unlicensed driver, and where that exclusion is fully consistent with the Pennsylvania motor vehicle statutes, the public policy underlying those statutes, and Pennsylvania case law, did the district court correctly enforce the exclusion?

[Suggested answer: Yes]

## STATEMENT OF RELATED CASES AND PROCEEDINGS

There are no known cases or proceedings related to this appeal.  This case was commenced in the Court of Common Pleas of Philadelphia, Pennsylvania (March Term 2016, No. 267), and was removed to the United States District Court for the Eastern District of Pennsylvania (2:16-cv-01489).

## COUNTER-STATEMENT OF THE STANDARD OF REVIEW

This Court's review of a grant of summary judgment is de novo. *Lehman Bros. Holdings, Inc. v. Gateway Funding Diversified Mortgage Svcs., L.P.*, 785 F.3d 96,100  (3d Cir. 2015), citing *Indian Brand Farms, Inc. v. Novartis Crop Prot. Inc.*, 617 F.3d 207, 213 n.6 (3d Cir. 2010).

Plaintiff asserts that the facts must be viewed in a light most favorable to the non-moving party and all reasonable inferences drawn in the non-moving party's favor. Plaintiff's brief at 7. However, Plaintiff admits that "No factual disputes existed with respect to the insurance coverage issues." *Id*. at 6, 10.  Where the parties stipulate to the facts, the only question is one of law.  *Becker v. v. Mack Trucks, Inc*., 281 F.3d 372 (3d Cir. 2002).

## COUNTER-STATEMENT OF THE CASE

### Introduction

This is an insurance coverage case. The plaintiff/appellant, Richard Duncan ("Plaintiff" or "Duncan") was involved in an accident with an unlicensed driver. The unlicensed driver was operating a vehicle as to which Omni Insurance Company ("Omni") had issued a policy.  However, the Omni policy did not provide any coverage if an unlicensed driver was operating the vehicle. Accordingly, Omni denied coverage for the accident.

Plaintiff argued that the exclusion should not be enforced.  Plaintiff did not challenge the language of the exclusion, which is clear and unambiguous. Rather, Plaintiff argued that the exclusion should be deemed to conflict with Pennsylvania law.  Omni asserted that the exclusion is valid and enforceable under Pennsylvania law, and is consistent with and advances public policy. The parties stipulated to the relevant facts and filed cross-motions for summary judgment. The district court (the Honorable Harvey Bartle, III) granted Omni's motion and entered summary judgment in favor of Omni.

Plaintiff has now appealed, asking this Court to reverse the district court. Plaintiff also asks, in the alternative, that this Court certify the issue to the Pennsylvania Supreme Court.  Plaintiffs' requests should be denied, and the district court's ruling should be affirmed.

## **The Application for Insurance**

On September 1, 2012, Shameka Renee Lamar applied for automobile insurance with Omni. Lamar filled out an "Application for Private Passenger Auto Insurance," seeking to purchase insurance for a 2003 Chevrolet Avalanche. (227a, stipulation ¶6; 285a-292a, Application, stipulation exhibit "2").

The Application required Lamar to identify all persons over 14 years of age who were residents of her household, "LICENSED OR NOT."[1] Lamar listed only herself. (285a). The Application also asked Lamar whether the policy she was applying for a NAMED NON-OWNER POLICY. She answered "No." (285a).

The Application further required Lamar to identify whether there were "Any residents of your household, 14 years old and older, that have NOT been disclosed on this application (licensed or not)?" Lamar's answer was "No." (286a). The Application further asked, "Do all drivers reside in the named insured's household?" Lamar's answer was "Yes." (286a). Finally, the Application asked, "Are there any occasional operators not rated as previously described?" Lamar's answer was "No." (286a).

The Application includes an "**APPLICANT'S STATEMENT**" with the following affirmation:

> I hereby declare that the information provided to the
> Company when purchasing my Personal Auto Policy is

---

[1] All emphases are shown as they appear in the Application.

4

true.  I HEREBY AGREE THAT SUCH POLICY SHALL BE NULL AND VOID IF SUCH INFORMATION IS FALSE, OR MISLEADING, OR WOULD MATERIALLY AFFECT ACCEPTANCE OF THE RISK BY THE COMPANY." ….

I certify that:

I have listed on this application all persons age 15 or older, licensed or not, who reside with me and all other drivers who may operate my auto(s) on a REGULAR OR OCCASIONAL basis. … I understand it is my obligation to report to the Company any change in driving status for any person currently listed, added on my policy, residing in my household, or who operates my auto(s). . . .

**FRAUD**

The insurance policy issued by Omni Insurance Company in reliance on the information provided in this insurance application, including, but not limited to information regarding license and driving history of the undersigned, "family numbers" and all persons of driving age in the undersigned's household; the description of the vehicles insured; the location of the principle place of garaging; and the undersigned's place of residence.

Omni Insurance Company may deny coverage for an accident if the undersigned or and (sic) "insured" have concealed or misrepresented any material or circumstance, or engaged in fraudulent conduct in connection with the presentation or settlement of a claim. . . .

I have read the above application and I declare that to the best of my knowledge and belief all of the foregoing statements are true. …

/s/ Shameka Lamar                    9/1/2012
Signature of Applicant          Date

5

Policy#4140872

(287a-288a). Chris Aaron a/k/a Chris Porter was not listed or identified in the

Application. (*See id.*)

### **The Omni Policy**

Omni issued policy number 4140872 (the "Policy") to Lamar. (227a,

stipulation ¶5; 234a-283a, stipulation exhibit "1"). The Insuring Agreement for

liability coverage states:

> **A.**    We will pay compensatory damages for **bodily injury** or **property damage** for which any **insured** becomes legally responsible because of an auto accident. …We have no duty to defend any suit or settle any claim for **bodily injury** or **property damage** not covered under this policy.

(245a, policy p. 8).[2]   The liability coverage defines "insured" as follows:

> **B.**    **Insured** as used in this Part means:
>
> > **1.** **You**, an **insured resident**, or any **family member** for the ownership, maintenance or use of **your covered auto**.
> >
> > **2.** **You**, an **insured resident**, or any **family member** while operating a non-owned auto with the express or implied permission of the **owner**.
> >
> > **3.** A person using **your covered auto** with the **owner's** express or implied permission and within the scope of the permission granted.  The person must hold a valid driver's license at the time of loss and must not be a regular operator of **your covered auto**.

---

[2]    Words shown in bold are in bold print in the Policy, and are defined in the "Definitions" section of the Policy, 242a (p. 2) to 245a (p.8)

**4.** For **your covered auto**, any person or entity but only with respect to legal responsibility for acts or omissions of a person for whom coverage is afforded under this Part.

**5.** For any **auto** or **trailer**, other than **your covered auto**, any other person or entity but only with respect to legal responsibility for acts or omissions of **you**, an **insured resident**, or any **family member** for whom coverage is afforded under this Part. This provision **(B.5.)** applies only if the person or entity does not own or hire the **auto** or **trailer**.

(245a, policy pp. 8-9 (underlining added)).

The liability coverage excludes <u>any liability coverage</u> for injuries resulting from the use of any vehicle by an unlicensed driver:

**A.** We do not provide Liability Coverage for any **insured**:

\*\*\*

**16.** For **bodily injury** or **property damage** resulting from the ownership, maintenance or use of any vehicle when driven by an individual who:

\*\*\*

c. <u>Does not have a valid driver's license</u>, or

d. <u>Has a suspended or rescinded driver's license</u>.

(246a, p.10; 247a, p. 12 (underlining added)).

## The Accident and the Lawsuit

On October 8, 2012, an individual named Chris Aaron a/k/a Chris Porter was driving Lamar's vehicle, and was involved in an accident with a SEPTA bus.

7

Plaintiff was a passenger on that bus. Aaron a/k/a Porter was not a licensed operator at the time of the accident or at any other time material to this action. (227a, stipulation ¶6).

Plaintiff filed a personal injury lawsuit against Aaron and Lamar in the Philadelphia County Court of Common Pleas. (229a, stipulation ¶14; underlying complaint, 309a-315a, stipulation exhibit "5"). Omni denied coverage, because the insured vehicle was being operated by an unlicensed driver. (229a, stipulation ¶¶12-13; 307a, stipulation exhibit "4"). The case proceeded to an arbitration hearing, and the arbitrators entered an award of $28,000 in favor of Plaintiff and against Aaron and Lamar. (230a, stipulation, ¶¶22-23; 321a-322a, arbitration award, stipulation exhibit "8"). Plaintiff entered judgment on the award. (231a, stipulation ¶24; 324a, praecipe for judgment, stipulation exhibit "9").

Plaintiff agreed not to collect or execute upon the judgment against Aaron or Lamar; in exchange, Lamar assigned to Plaintiff any rights Lamar had against Omni.  Plaintiff also agreed to mark the judgment satisfied at the conclusion of these proceedings, regardless of the outcome.  (232a, stipulation ¶36; 329a-333a, assignment, stipulation exhibit "10").

## **This Lawsuit**

Plaintiff then sued Omni in the Court of Common Pleas of Philadelphia County. In Count I, titled "Bad Faith – Excess Verdict," Plaintiff sought to collect

the entire $28,000 judgment from Omni[3] based upon Plaintiff's allegations that Omni violated the policy and various provisions of Pennsylvania law. (12a-13a, complaint, ¶32 (a)-(t)). In Count II, titled "Bad Faith – Common Law and Statutory," Plaintiff claimed "common law bad faith damages" and "statutory bad faith damages" under 42 Pa.C.S. §8371, based on the same allegations. (15a-16a, ¶48 (a)-(t)).

Omni removed the case to the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§1332, 1441 and 1446 (49a-62a), and filed an Answer with Affirmative Defenses. (110a-126a).

## Motions for Summary Judgment

The parties stipulated to the relevant facts (*see* 226a-232a, plus exhibits 1-10), and filed cross-motions for summary judgment. *See* Plaintiff's motion for partial summary judgment (188a-200a) and supporting memorandum (201a-223a); Omni's answer (334a-337a), cross-motion (363a-368a) and omnibus brief (339a-361a; 370a-392a); Plaintiff's answer (394a-400a) and brief (401a-415a); Plaintiff's reply memo (527a-537a). *See also* Omni's reply memo (ECF #20, omitted from Appellant's Appendix).

Plaintiff argued that the exclusion violated the Motor Vehicle Code provision imposing liability on vehicle owners for actions of unauthorized or

---

[3]    The per-person liability limit of the Policy, if it applied, would have been $15,000. (235a-237a, declarations pages, stipulation exhibit "1").

unlicensed drivers (75 Pa.C.S. §1574), and/or that the exclusion violated the MVFRL provision requiring "financial responsibility." (75 Pa.C.S. §1786). Plaintiff further argued that Omni's disclaimer was frivolous and unfounded and therefore in "bad faith" under 42 Pa.C.S. §8371. (212a-222a). Plaintiff asked (a) for partial summary judgment on the coverage issue, *i.e.*, that the exclusion be invalidated, (b) that Omni be ordered to pay the $28,000 judgment plus interest, (c) that Omni be held to have acted in "bad faith," and (d) that discovery be ordered on the amount of "bad faith" damages. (198a-199a).

Omni argued that §1574 was irrelevant because the underlying complaint asserted a direct claim against the owner (Lamar) for her negligent entrustment, not a vicarious liability claim under §1574; in any event, the exclusion does not violate §1574, which does not even mention insurance. Likewise, the exclusion does not violate §1786 of the MVFRL. That section requires vehicles to be covered by financial responsibility, but does not mandate that the coverage must always apply regardless of the circumstances. If that were the case, no exclusions would ever be valid. Finally, there could be no "bad faith:" there was no coverage, and Omni's denial was based on a clear policy exclusion that constituted a reasonable basis for denial as a matter of law. (344a-360a).

## The District Court's Ruling

By Order and Memorandum of September 28, 2016, the district court granted defendant Omni's motion for summary judgment, denied Plaintiff's motion, and entered judgment in favor of Omni. (539a, Order; 540a-553a, Memorandum; 554a, Judgment). The district held that the exclusion did not violate §1574, did not violate §1786, and did not violate public policy: "We acknowledge a public policy of extending insurance to licensed drivers. However, it does not extend to unlicensed drivers." (550a, memorandum at 11).

Plaintiff filed a motion for reconsideration, arguing that the district court "miss[ed] the point" of Plaintiff's argument that the exclusion was not enforceable against the owner of the vehicle. (556a-561a). The district court denied Plaintiff's motion by order and opinion of October 4, 2016.  (563a-564a). The district court reiterated, "The court held the exclusion to be valid. Thus neither the owner of the vehicle, nor the driver, nor the injured party can claim the benefit of insurance coverage where, as here, the driver is unlicensed." (564a).

Plaintiff then filed this appeal. (565a).

## SUMMARY OF THE ARGUMENT

The coverage exclusion in Omni Insurance Company's policy was correctly upheld by the district court. The exclusion states that the policy's liability coverage does not apply to injuries or damages arising from the use of a vehicle by an unlicensed driver. There is no dispute that the exclusion is clear and unambiguous, and that an unlicensed driver was driving the vehicle at the time of the accident.

Plaintiff's argument was that Omni wrongly "applied" the exclusion to the owner as well as the driver. However, the exclusion applies to <u>all</u> "bodily injury or property damage resulting" when the insured vehicle is driven by an individual who <u>does not have a valid driver's license</u>. If the car is operated by an unlicensed driver, no coverage exists. Plaintiff's arguments were properly rejected below and likewise fail on appeal.

First, the exclusion does not violate the Pennsylvania Motor Vehicle Financial Responsibility Law ("MVFRL"). Section 1786 of the MVFRL requires "financial responsibility," and penalizes the absence of it. Nothing in §1786 mandates imposition of coverage despite specific exclusions. Plaintiff's argument would mean that no exclusions could ever be upheld.

Second, the exclusion does not violate §1574 of the Motor Vehicle Code. Section 1574 makes owners vicariously liable for damages caused by their unlicensed operators, but again, liability does not equal coverage. Section 1574

does not mention insurance. It is a penalty provision against owners who allow unlicensed drivers to operate their vehicles, and Plaintiff's position – trying to shift the penalty to insurers - would obviate that penalty and nullify its intended deterrent effect. Plaintiff argues that because a statute imposes liability, owners can "reasonably expect" to be covered by whatever policy they buy. The law is the opposite: an insured may not complain that his or her reasonable expectations were frustrated by policy limitations which are clear and unambiguous.

Third, the exclusion does not violate the public policy underlying the MVFRL. Public policy favors extending coverage to licensed drivers, but that policy does not extend to unlicensed drivers, and insuring such drivers would undermine the public policy of keeping them off the road. The MVFRL does not require such coverage, the Insurance Commissioner approved the language and terms of the policy, and the exclusion is consistent with a cost-containment goal, since, "[i]f insurance companies had to provide coverage for unlicensed drivers, premiums would definitely increase." (551a, memorandum at 12).

The district court properly entered summary judgment for all the reasons set forth above. Plaintiff's request to certify the issue to the Supreme Court of Pennsylvania should be denied, and this Court should affirm the district court's well-reasoned decision.

13

# ARGUMENT

## I.    The District Court Correctly Held That the Unlicensed Operator Exclusion is Valid and Enforceable as a Matter of Pennsylvania Law and Public Policy

The issue in this case is the enforceability of a policy exclusion. There is no dispute that (a) the language of the exclusion is clear and unambiguous, (b) the exclusion's clear language precludes coverage, and (c) Pennsylvania law applies. The only question for this Court is whether the district court properly upheld the exclusion under Pennsylvania law.

The Pennsylvania Supreme Court has repeatedly stated that, "In construing a policy of insurance, we are required to give plain meaning to a clear and unambiguous contract provision unless such provision violates a clearly expressed public policy. *Williams v. GEICO*, 32 A.3d 1195, 1199-1200 (Pa. 2011), quoting *Burstein v. Prudential Property & Cas. Ins. Co.,* 809 A.2d 204, 206 (Pa. 2002) and citing *Eichelman v. Nationwide Ins. Co.,* 711 A.2d 1006, 1008 (Pa. 1998) and *Prudential Prop. and Cas. Ins. Co. v. Colbert,* 813 A.2d 747, 750 (Pa. 2002).

 The burden to invalidate a contract provision for "public policy" reasons is a heavy one: "We consistently have been reluctant to invalidate a contractual provision due to public policy concerns. … When examining whether a contract violates public policy, this Court is mindful that public policy is more than a vague

goal which may be used to circumvent the plain meaning of the contract."

*Williams, supra,* citing *Eichelman, supra.* Rather,

> Public policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest. As the term "public policy" is vague, there must be found definite indications in the law of the sovereignty to justify the invalidation of a contract as contrary to that policy[.] ... Only dominant public policy would justify such action. In the absence of a plain indication of that policy through long governmental practice or statutory enactments, or of violations of obvious ethical or moral standards, the Court should not assume to declare contracts ... contrary to public policy. The courts must be content to await legislative action.

*Williams, supra,* citing *Eichelman, supra.* "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]. *Id.* (emphasis supplied, internal citations omitted).

Plaintiff argues that this Court should apply a new "methodology." *See* Plaintiffs' brief at 16-20. Plaintiff argues that the Supreme Court has "essentially abandoned cost control as the overriding goal of the MVFRL," and that "Cost control is no longer the goal" and "cannot be used to validate policy exclusions." *Id.*, citing *Williams v. GEICO, supra,* and *Heller v. Pennsylvania League of Cities*, 32 A.3d 1213 (Pa. 2011). Plaintiff also argues that "exclusions are to be narrowly

construed." Plaintiff's brief at 19-20, *citing Swarmer v. Mutual Benefit*, 72 A.3d 641 (Pa. Super. 2013).

The district court properly applied basic principles of statutory construction and controlling Pennsylvania case law. The district court did not "rely on" cost control to "validate the exclusion." Rather, the district court included cost control as one part of the analysis: "The Pennsylvania Supreme Court has identified cost containment, freedom of consumer choice, as well as remediation as goals of the MVFRL." (549a, Memorandum at 10, citing *GEICO, supra*, and *Progressive Northern Ins. Co. v. Schneck*, 813 A.2d 828, 832 (Pa. 2002)).

Moreover, there is no claim that the exclusion here was wrongly "construed" or otherwise unclear. Rather, as the district court recognized, it is "crystal clear." (545a, Memorandum at 6). The exclusion therefore must be given its plain meaning unless there is "a virtual unanimity of opinion" against it.

As set forth below, the district court considered each of Plaintiff's arguments, and found no basis to invalidate the exclusion. This Court should reach the same conclusion: the exclusion does not violate the Pennsylvania Motor Vehicle Financial Responsibility Law (MVFRL), the Pennsylvania Motor Vehicle Code, or the public policy of the Commonwealth.

**A. The "Unlicensed Operator" Exclusion Does Not Violate the MVFRL**

Plaintiff first argues that the unlicensed operator exclusion violates the financial responsibility requirement set forth in §1786 of the MVFRL. *See* Plaintiff's brief at 14-15. Plaintiff cites §1786(a) (requiring vehicles to have financial responsibility as defined in §1702), and §1786(d) (prohibiting operation of vehicles without financial responsibility), and argues that the unlicensed operator exclusion "flies in the face of and directly undermines the statutory directive." *Id*. at 15.[4]

The district court correctly held that §1786, and the cases interpreting it, do not require extending coverage to unlicensed drivers in the face of a clear policy exclusion.  The motor vehicle here <u>was</u> covered by a policy of insurance that met the "financial responsibility" requirement of §1786(a). However, that coverage did not apply, because the vehicle was being operated by an unlicensed driver. Nothing in §1786 requires that the financial responsibility must apply no matter who is operating the vehicle, and regardless of whether a clear exclusion applies.

In the district court, Plaintiff relied upon §1786(f). Plaintiff's faulty logic appeared to be as follows:

---

[4]     Plaintiff makes vague, unsupported allegations, such as that "most" auto policies in Pennsylvania "contain an omnibus clause which extends coverage for insured vehicles to all permissive operators," but that "some insurers" have put "illegal" restrictions on coverage. Plaintiff's brief at 14-15 and n.4.  These allegations are denied. Moreover, as the district court pointed out, Omni's policy - including the unlicensed driver exclusion – had to be approved by the Insurance Commissioner. (551a, citing 40 Pa.C.S. §477b of the Insurance Company Law of 1921).

(i)    §1786(a) requires financial responsibility; *and*

(ii)   §1786(f) prohibits owners from allowing their vehicles to be operated without financial responsibility; *so*

(iii)  §1786(f) must therefore mandate coverage for all permissive uses; *so*

(iv)   The unlicensed driver exclusion must therefore violate §1786(f).

 (*See* 409a-411a).

On appeal, Plaintiff has abandoned his §1786(f) argument, and instead argues for the first time that the exclusion violates §1786(d). However, Plaintiff employs the same faulty logic as before:

(i)    §1786(a) requires financial responsibility; *and*

(ii)   §1786(d) provides that a vehicle registration can be suspended if the vehicle is operated without financial responsibility; *so*

(iii)  §1786(d) must therefore mandate coverage for all permissive uses; *so*

(iv)   The unlicensed driver exclusion must therefore violate §1786(d).

Plaintiff's brief at 15.

Even if this Court were to consider Plaintiff's §1786(d) argument on appeal,[5] that argument fails on its face for the same reason as Plaintiff's §1786(f) argument.

Section 1786(d) does <u>not</u> "mandate" that "coverage is extended to all permissive

---

[5]    This Court "generally refuse[s] to consider issues that are raised for the first time on appeal." *Newark Morning Ledger Co. v. United States*, 539 F.2d 929, 932 (3d Cir.1976)

18

users," as Plaintiff now argues.  Section 1786(d) does not invalidate exclusions, or

mandate coverage despite exclusions, any more than §1786(f) did.[6]  Plaintiff's new

argument citing §1786(d) fails for the same reason as Plaintiff's prior argument:

> [Plaintiff] asserts that §1786(a) requires financial
> responsibility of motor vehicle owners and that §1786(f)
> requires that this financial responsibility extend to
> unlicensed drivers.  We disagree.  Section 1786(a)
> requires motor vehicles in Pennsylvania to be covered by
> financial responsibility.  See 75 Pa. Const. Stat. §1786(a)
> (2015).  Section 1786(f) prohibits an owner of a motor
> vehicle from operating or permitting the operation of a
> motor vehicle without the required financial
> responsibility, that is, the ability to respond in damages
> for personal injuries in a certain amount.  See 75 Pa.
> Const. Stat. §1786(f) (2015).  Again, whatever liability
> may be assessed against a vehicle owner who violates
> this provision, the statute cannot reasonably be
> interpreted to require an owner's insurer to provide
> coverage under an insurance policy for injuries by an
> unlicensed driver.

(547a, Memorandum at 8, emphases added).

This conclusion is reinforced by the fact that the General Assembly, in

drafting the MVFRL, was specific in identifying situations where coverage was

required or could not be reduced or limited. *See, e.g.*, 75 Pa.C.S. §1724 (listing

non-excludable conditions in the first-party benefits section of the MVFRL);

§§1711 and 1712 (listing various first-party coverages that must be offered); §1731

---

[6]    Plaintiff theorizes, without support, that "most" auto policies in Pennsylvania "contain an omnibus clause which extends coverage for insured vehicles to all permissive operators," but that "some insurers" have put "illegal" restrictions on coverage.  Plaintiff's brief at 14-15 and n.4. Plaintiff's allegations are denied and are contrary to Pennsylvania case law, including the recent *Byoung Suk An* decision discussed herein.

(requirements for rejecting stacking of uninsured and underinsured motorist coverages); §1734 (requirements for selecting limits of underinsured motorist coverage lower than the limits of liability coverage). If the General Assembly intended to require liability coverage regardless of whether drivers have licenses, it clearly could have done so. It did not.

In addition to failing as a matter of statutory construction, Plaintiff's argument is contrary to Pennsylvania case law upholding policy provisions that exclude – or limit coverage to – certain drivers. In fact, the Pennsylvania Superior Court recently upheld a much broader coverage limitation than the one here, and the Supreme Court declined review.

In *Byoung Suk An v. Victoria Fire and Cas. Co*., 113 A.2d 1283 (Pa. Super. 2015), *appeal denied* 130 A.3d 1285 (Pa. 2015), the policy did not provide liability coverage to any person not specifically listed on the policy. *Byoung Suk An*, 113 A.2d at 1286. The insured herself was the only listed driver. However, at the time of the accident, the vehicle was being operated by a friend of the insured's son, who had given his friend permission to drive. *Id*. The claimant argued that the "named driver only" policy was invalid because it was an improper expansion of the "named driver exclusion" permitted under §1718(c).

The Superior Court rejected that argument, holding that the policy limitation was clear and unambiguous, and concluding, "[T]he provision of low-cost,

affordable policies in return for motor vehicle liability coverage of only the named driver, and the concomitant risk reduction, does not violate public policy." *Id*., 113 A.2d at 1292. The Supreme Court declined review on December 8, 2015. *See* 130 A.3d 1285 (Pa. 2015).[7] *See also, e.g., Selective Way Ins. Co. v. Gingrich*, 2009 U.S. Dist. LEXIS 48010 (M.D. Pa. 2009) (named driver exclusion applies to prevent any policy coverages, including liability and UM/UIM, from applying to any claim arising from operation of the vehicle by the excluded driver, and thus carrier had no obligation to defend or indemnify against claim by injured party).

For all of these reasons, the district court correctly held that excluding liability coverage for claims arising from unlicensed drivers' operation of vehicles is not contrary to the MVFRL.

## B. The "Unlicensed Operator" Exclusion Does Not Violate the Motor Vehicle Code

Plaintiff next argues that the unlicensed operator exclusion violates §1574 of the Motor Vehicle Code, 75 Pa.C.S. §1574. The underlying complaint did not allege liability under §1574, but even if it had, the district court correctly held that the exclusion does not violate that section.

Section 1574 prohibits a vehicle owner from allowing an unlicensed driver to operate the vehicle. That Section penalizes such an owner in two ways: first, the

---

[7]    "The decision of an intermediate state court is . . . not to be disregarded by a federal court unless it is convinced by other persuasive data that the highest court of the state would decide otherwise." *Covington v. Cont'l Gen. Tire, Inc*., 381 F.3d 216, 218 (3d Cir. 2004).

owner commits a summary offense, and second, the owner is liable for any

damages caused by the negligence of the driver:

> **Permitting unauthorized person to drive**.
>
> **(a) General Rule**. - No person shall authorize or permit a motor vehicle owned by him or under his control to be driven upon any highway by any person who is not authorized under this chapter or who is not licensed for the type or class of vehicle to be driven.
>
> **(b) Penalty**. - Any person violating the provisions of subsection (a) is guilty of a summary offense and shall be jointly and severally liable with the driver for any damages caused by the negligence of such driver in operating the vehicle.

75 Pa.C.S. §1574.

### 1. The underlying complaint did not assert a claim under section 1574

Plaintiff alleges that the Complaint asserted a cause of action for violating of

§1574. *See* Plaintiff's brief at 24, citing paragraph 13 of the Complaint. (313a).

Plaintiff is wrong: that paragraph alleges that owner <u>Lamar herself</u> was <u>directly</u>

negligent in her entrustment of the vehicle to an unlicensed driver:

> 13.    The aforesaid collision, which caused Plaintiff's injuries and losses was a direct and proximate result of the negligent and careless <u>conduct of the defendant owner</u>, Shameka Renee Lamar, which consisted of the following:
>
> \*\*\*
>
> (c)    <u>negligently and carelessly granting permission</u> to the defendant driver for the use of the vehicle

owned by the defendant owner, when the latter
defendant knew or should have known that the
former defendant was unlicensed and/or incapable
or unwilling to properly and safely operate said
vehicle.

(313a, Complaint at ¶13 (emphases supplied)).

Paragraph 13 does not mention §1574, and does not assert vicarious liability.

On the contrary, this paragraph asserts a <u>direct</u> negligence claim against owner

Lamar, and asserts that Lamar's <u>own</u> negligence was a cause of the accident. A

claim alleging direct liability is - by definition - not a vicarious liability claim

under §1574. *See, e.g., Ferry v. Fisher*, 709 A.2d 399, 403 (Pa. Super. 1998)

("Under a theory of negligent entrustment, liability is imposed upon a defendant

because of his or her own actions in relation to the instrumentality or activity under

his or her control. The entrustor's liability is not dependent on, derivative of, or

imputed from the entrustee's actual liability for damages.").

This distinction is important, because liability under §1574 does not require

negligence - or even knowledge - on the part of the owner. Thus, the potential for

liability under §1574 is much broader than common law liability for negligently

entrusting a vehicle to an unlicensed driver.[8] If Plaintiff's argument were accepted

(*i.e.*, that the Legislature intended that insurance must go hand-in-hand with

vicarious liability under §1574), it would <u>create</u> inconsistency between §1574 and

---

[8]    Entrusting a vehicle to an unlicensed driver is not itself negligent entrustment; additional
circumstances indicating that the driver is incompetent to drive are necessary in order to submit
the issue to the jury. *Chamberlain v. Riddle*, 38 A.2d 521 (Pa. Super. 1944).

the financial responsibility requirements of the MVFRL. It would mean that the Legislature somehow mandated more and broader liability insurance coverage under §1574 than the Legislature actually requires in defining "financial responsibility" under the Section 1786(a) ("Required financial responsibility") and §1702 ("Definitions").

The two cases cited by Plaintiff actually contradict Plaintiff's argument. Those cases illustrate that liability for negligent entrustment is different from vicarious liability under §1574.  In *Terwilliger v. Kitchen,* 781 A.2d 1201, 1213 (Pa. Super. 2001), there were three defendants: a vehicle operator, the vehicle owner who was alleged to be vicariously liable for the driver under §1574, and a dramshop. The dramshop defendant (seeking to reduce its own share of the verdict) argued that the vehicle owner's liability under §1574 should be deemed joint and several with the driver's, rather than merely vicarious. The Superior Court rejected that argument: "[I]t seems to us that the legislature has intended to establish a system of vicarious liability," quoting *Commonwealth of Pa., Dept. of Public Welfare v. Hickey*, 582 A.2d 734, 737 (Pa. Cmwlth. 1990). The Superior Court concluded, "[W]e agree with the trial court that the vehicle owner is vicariously liable for the damages caused by [driver]." *Terwilliger*, 781 A.2d at 1216.[9]

---

[9]    Plaintiff's reliance on *Terwilliger* and *O'Loughlin* is curious, in that Plaintiff asked the court below to disregard *Terwilliger*, calling it "misguided" and "mere dicta," and likewise dismissed Judge Buckwalter's citation of *Terwilliger* in *O'Loughlin*. (528a). Plaintiff now seems

*In O'Loughlin v. Hunger,* 2009 U.S. Dist. LEXIS 33711 (E.D. Pa. 2009), the court granted summary judgment in favor of the owner because there was no evidence of negligent entrustment. In doing so, the court explained in a footnote that the plaintiff did not cite §1574, "or even hint at its violation," and that a violation of that section would not establish negligence: "Pennsylvania courts, however, have found that violation of [§1574] only makes the automobile owner vicariously liable for the injuries caused by the driver of the vehicle and does not impose on the owner individual negligence under a negligent entrustment theory." *Id*. at *19-20, n.2 (citations omitted).

The underlying complaint here asserted negligent entrustment against owner Lamar, not vicarious liability. Plaintiff's "§1574" claim fails for that reason alone: that section was never at issue in this case. *See In re Lazy Days' RV Ctr. Inc.*, 724 F.3d 418, 421 (3d Cir. 2013) ("Federal Courts have no jurisdiction to render **advisory opinions**. Put another way, they 'may not decide questions that cannot affect the rights of litigants in the case before them or give opinions advising what the law would be upon a hypothetical state of facts.'").

## 2.  The unlicensed driver provision does not violate Section 1574

---

persuaded that *Terwilliger* is the law; Plaintiff nevertheless fails to apprehend that under *Terwilliger* and *O'Loughlin,* the complaint here alleges negligent entrustment, not vicarious liability under §1574.

The district court correctly held that the exclusion does not violate §1574 of the Motor Vehicle Code in any event. Plaintiff's argument regarding §1574 is much like his argument regarding §1786: Plaintiff claims that §1574 makes owners vicariously liable for their unlicensed drivers, and therefore §1574 must also mandate insurance to cover that liability. *See* Plaintiff's brief at 20-23.

As the district court recognized, §1574 does not even mention insurance, and certainly does not mandate that an insurer must provide coverage when an insured vehicle is driven by an unlicensed driver:

> [Section 1574] neither requires insurance coverage nor prohibits any limitation on insurance coverage. Therefore the Omni exclusion does not violate §1574.

(545a-546a, Memorandum at 6-7).

Plaintiff calls Judge Bartle's analysis "naïve," "senseless," and an "offhanded rejection" based on "a faulty interpretation of the statute." Plaintiff's brief at 21. Plaintiff argues that an owner's insurance must be deemed to apply because §1574 is a "remedy" to provide "compensation." Plaintiff's brief at 12, 20, 21, 22, 25-26. In support of this argument, Plaintiff cites *Terwilliger* and *O'Loughlin*.

Those cases, which were discussed above, do not support Plaintiff's "remedy" argument. On the contrary, both cases explain that violating §1574 does not create independent negligence; it merely makes the owner vicariously liable for the unlicensed driver's negligence. Again, <u>Section 1574 is a penalty provision</u> that

penalizes owners in two ways: first, the owner commits a summary offense, and second, the owner is liable for damages caused by the negligence of the driver. Penalizing a vehicle owner with vicarious liability for an unlicensed driver's use of the owner's vehicle is not the same as mandating coverage, and nothing in §1574 mandates coverage or supports Plaintiff's argument for imposing coverage for such a claim.

Plaintiff's argument is also contrary to principles of statutory construction. First, the words of the statute do not mention insurance. *See* 1 Pa.C.S. §1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.").

Second, Plaintiff's argument would create inconsistency regarding required financial responsibility. *See* §1921(a) (the object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly, and "Every statute shall be construed, if possible, to give effect to all its provisions."); §1922(1) ("[T]he General Assembly does not intend a result that is absurd, impossible of execution or unreasonable."); §1922(2) ("[T]he General Assembly intends the entire statute to be effective and certain.").

Third, if there were any inconsistency between §1574 and the MVFRL (which Omni denies), the MVFRL—as the later-enacted statute—would control. *See* 1 Pa.C.S. §1936 ("Whenever the provisions of two or more statutes enacted

27

finally by different General Assemblies are irreconcilable, the statute latest in date of final enactment shall prevail.").

Plaintiff's argument is also contrary to the legislative intent as determined from the language of the statute: to discourage owners from allowing unlicensed operators to drive by punishing the owners with vicarious liability for the unlicensed operators' actions. The Commonwealth Court has described §1574 as promoting the Commonwealth's "vital interest in preventing drivers from operating motor vehicles when they have no legal right to do so." *Commonwealth v. Jenks*, 296 A.2d 526, 529 (Pa. Cmwlth. 1991). If vehicle owners could insure themselves against a statutory penalty for allowing unlicensed drivers to operate their vehicles, and simply shift that penalty to insurance carriers, the statutory punishment the legislature intended to impose on such owners would be obviated.

Plaintiff also argues (without support) that §1574 is like a "red light" or "stop sign" violation. Plaintiff argues that carriers cannot preclude coverage for violations of such "statutory directives" and therefore should not be able to preclude coverage where the operator was unlicensed. *See* Plaintiff's brief at 25.

Plaintiff's "red light" argument fails to distinguish between driver <u>conduct</u> giving rise to liability (which cannot be excluded), and permissible limitations on <u>who</u> drives vehicles. Driver <u>conduct</u> giving rise to liability cannot be excluded, because a policy could not qualify under the MVFRL as "respond[ing] in damages

for" accidents if the policy excluded the causes of accidents (such as running a red light). *See* 75 Pa.C.S. §1702.

Policies <u>may</u>, however, limit coverage to certain <u>drivers</u> of vehicles without violating the MVFRL. As is discussed in detail below, the MVFRL does not require a vehicle's liability policy to provide coverage no matter who is driving it. On the contrary, Pennsylvania appellate courts have upheld named-driver exclusions (*see, e.g., Northern Ins. Co. v. Schneck*, 813 A.2d 828 (Pa. 2002), discussed below), and even named-driver-only policies (*see, e.g., Byoung Suk An v. Victoria Fire and Cas. Co.*, 113 A.2d 1283 (Pa. Super. 2015), also discussed below). Similarly, "permissive use" exclusions have been upheld even against "innocent" claimants who did not know that the use was not permissive. *See, e.g., Nationwide Mut. Ins. Co. v. Cummings*, 652 A.2d 1338 (Pa. Super. 1994), *appeal denied*, 659 A.2d 988 (Pa.1995) (non-permissive use exclusion did not violate the legislative intent behind the MVFRL).

In sum, the unlicensed driver exclusion does not violate §1574.  Rather, it is entirely consistent with, and furthers the purpose of, that provision. Plaintiff's argument to invalidate the exclusion on that basis was correctly rejected by the district court.

### C. The "Unlicensed Operator" Exclusion Does Not Violate Public Policy; It Is Consistent With and Advances that Policy

Plaintiff also states that the unlicensed operator exclusion violates public policy. *See* Plaintiff's brief at 25-26. Plaintiff offers the vague, general platitudes that: "The public policy of Pennsylvania favors (1) the deterrence of uninsured drivers, (2) the extension of coverage to motor vehicle operators, and (3) the availability of insurance coverage to victims of motor vehicle accidents in Pennsylvania. It is in the interest of the public good to have insured motorists on the highways." *Id*. at 25.

Omni described above (pp. 14-15) the "heavy burden" required to invalidate an admittedly clear policy provision on so-called "public policy" grounds. To briefly summarize, the Pennsylvania Supreme Court is reluctant to invalidate a contractual provision due to public policy concerns, and a clear and unambiguous contract provision must be given its plain meaning unless to do so would be contrary to a clearly expressed public policy. Such a policy cannot be "general considerations of supposed public interest" or "a vague goal" being used to "circumvent the plain meaning of the contract." *Williams, supra, citing Eichelman, supra*. "It is only when a given policy is so obviously for or against the public health, safety, morals or welfare that there is a virtual unanimity of opinion in regard to it, that a court may constitute itself the voice of the community in so declaring [that the contract is against public policy]." *Id*.

Plaintiff does not dispute this standard.  Plaintiff argues, however, that the Supreme Court's evaluation of public policy has changed.  Plaintiff argues that while the overriding goal of the MVFRL was "initially" cost control, the Supreme Court has "abandoned" that point of view and has recognized the goal of maximum feasible restoration to accident victims as an equally important purpose of the law. *See* Plaintiff's brief at 16-17.  Plaintiff relies upon *Williams v. GEICO*, 32 A.3d 1195 (Pa. 2011), arguing that "the majority of the justices on the Court at that time adopted a rationale which significantly departs from prior pronouncements." *Id*. at 19.

Plaintiff mischaracterizes the *Williams* case, which does not support Plaintiff's position that cost containment has been "abandoned" in Pennsylvania. In *Williams*, the Supreme Court upheld a "regular use" exclusion that precluded the claimant from obtaining underinsured motorist benefits from his own policy if he was injured in another vehicle he regularly used.  The claimant was a state police officer and was injured while using his police vehicle.  He argued that despite prior case law upholding such exclusions, upholding the exclusion in his case would violate a public policy of protecting first responders.  *Williams*, 32 A.3d at 1201. The Supreme Court, in accordance with its prior decisions in, *inter alia*, *Burstein v. Prudential Property & Cas. Ins. Co.,* 809 A.2d 204 (Pa. 2002), upheld the regular use exclusion.

In holding that public policy did not require any different outcome in the "first responder" situation, the Court conducted the same public policy analysis followed in *Burstein*, and held, "Appellant's position conflicts with the overall policies of the MVFRL, which include cost containment and the correlation between the scope of coverage and the reasonable premiums collected." *Williams*, 32 A.3d at 1206. In three concurring opinions in *Williams,* four justices urged that cost containment should not be a "mantra," and that "equally important policies and goals" should be recognized. *See* 32 A.3d beginning at 1210 (concurring opinions). However, the Supreme Court did not "abandon" cost containment; on the contrary, the Court again recognized it as one of the "overall policies of the MVFRL."

In 2015, a unanimous panel of the Superior Court applied *Williams* to reject the same argument Plaintiff is making in this case. In *Byoung Suk An v. Victoria, supra*, the claimant argued that a "named driver policy," which covered only the specific driver named in the application, was contrary to public policy. The claimant argued (like Plaintiff in this case) that the policy would violate Pennsylvania public policy because it would "increase the number of uninsured motorists on Pennsylvania roads." *Byoung Suk An*, 113 A.3d at 1291.

The Superior Court applied the analysis summarized above and set forth more fully at pp. 14-15 of this brief, quoting *Williams* and *Eichelman*. The

Superior Court also cited *Progressive Northern Ins. Co. v. Schneck*, 813 A.2d 828 (Pa. 2002), in which the Supreme Court upheld a named driver exclusion as consistent with the overarching public policy of cost containment, *Donegal Mut. Ins. Co. v. Fackler*, 835 A.2d 712 (Pa. Super. 2003), in which the Superior Court likewise upheld a named driver exclusion, and *Infinity Indem. Ins. Co. v. Gonzalez*, 2012 U.S. Dist. LEXIS 77004 (E.D. Pa. 2012), in which the district court upheld "named driver only" policy.    The Superior Court specifically focused on cost considerations in noting that "provision of low-cost, affordable policies in return for motor vehicle liability coverage of only the named driver, and the concomitant risk reduction, does not violate public policy." *Byoung Suk An*, 113 A.3d at 1292, citing *Williams*, 32 A.3d at 1200. The Superior Court concluded that any such determination would have to be a question for the legislature.    *Id.*

It is clear from the recent *Byoung Suk An* case that the public policy of cost control has not been "essentially abandoned" post-*Williams*, as Plaintiff argues.[10] On the contrary, cost control continues to be a significant consideration of public policy analyses under the MVFRL, and Omni's policy furthers that consideration by ensuring that carriers are not required to bear risks of unlicensed drivers that the

---

[10]    Plaintiff also cites *Heller v. Pennsylvania League of Cities*, 32 A.3d 1213 (Pa. 2011), for the proposition that cost containment "cannot be mechanically invoked" to restrict coverage.  In *Heller*, the Supreme Court invalidated an exclusion that rendered UIM coverage illusory because the policy covered vehicles used for work purposes, but prevented any claimant eligible for worker's compensation benefits from receiving UIM benefits. The exclusion in this case does not render liability coverage illusory, as was the concern in *Heller*.

carriers would never have agreed to insure (and the cost of which would be passed to honest insureds in the form of higher premiums).

The unlicensed driver exclusion also furthers the public policy of discouraging owners from allowing unlicensed drivers to operate vehicles. *See Commonwealth v. Jenks, supra*, 296 A.2d at 529 (Pa. Cmwlth. 1991) (recognizing the Commonwealth's "vital interest in preventing drivers from operating motor vehicles when they have no legal right to do so.").

The exclusion also prevents unscrupulous drivers from acquiring vehicles and policies through "straw man" purchases (where the "owner" is merely fraudulently acquiring the vehicle on behalf of another), and it furthers the legislature's intention that owners who do permit unlicensed drivers to operate their vehicles are to be penalized via vicarious liability for those drivers.   As the district court observed,

> [Plaintiff] avers that the exclusion contradicts the public policy of deterring unlicensed drivers from operating vehicles. We do not understand how insuring unlicensed drivers will keep them off the road. If anything, the contrary seems more likely.

(550a, Memorandum at 11).

Plaintiff's "public policy" argument essentially amounts to saying "it's good to have insured drivers." This is the kind of "vague goal" and "general consideration of supposed public interest" that may not be used to circumvent the

34

plain meaning of a contract.  As in *Byoung Suk An*, *Williams, Eichelman*,  *Schneck*, and the other case law discussed above, there is no "dominant public policy" that could justify requiring an insurer to provide liability coverage to injuries caused by an unlicensed driver who falls within a clear exclusion.

Accordingly, district court properly denied Plaintiff's motion for partial summary judgment and granted Omni's cross-motion for summary judgment.  The thorough and well-reasoned analysis by Judge Bartle should be affirmed for all the reasons set forth above.

### D. Plaintiff's Request for Certification Should be Denied, Because the Exclusion is Admittedly Clear and Unambiguous, the Statutory Sections and Prior Case Law Are Clear, and There are No Special or Important Reasons that Could Warrant Review

Plaintiff's brief includes a paragraph asking this Court to certify this coverage question to the Supreme Court of Pennsylvania. *See* Plaintiff's brief at 28-29. Plaintiff also filed a separate "Motion to Certify." *See* Doc. #003112532443. Omni responds to the certification motion as part of this brief, in accordance with this Court's order of February 17, 2017 [Doc. # 003112542427].[11]

---

[11]    Under L.A.R. Misc. 110.1, "Certification of Questions of State Law," a motion seeking certification "must be included in the moving party's brief." By a "Notice to Counsel" of October 15, 2012, counsel are to also file a motion to allow this Court to "better track pending motions." Duncan filed a stand-alone motion on February 2, 2017, and his brief five days later, on February 7, 2017. Omni sought clarification, because a separate response to the certification motion would have been due almost a month before Omni's brief. (Doc. #003112538018).

Plaintiff's motion recites the "buzzwords" that the issue is "an issue of first impression," is "of substantial public importance requiring prompt and definitive resolution," has "significance to all insurers and insureds in the Commonwealth," that it is an issue of state law that should be resolved by the Supreme Court, and that it "affects hundreds of claims that have been filed or will be filed[.]" *See id.*, ¶¶ 9-15. *See also* Plaintiff's brief at 28-29. Plaintiff's request for certification should be denied.

The Pennsylvania Supreme Court has discretion to "accept certification of a question of Pennsylvania Law only where there are special and important reasons therefor, including, but not limited to any of the following":

> 1. The question of law is one of first impression and is of such substantial public importance as to require prompt and definitive resolution by this Court;
>
> 2. The question of law is one with respect to which there are conflicting decisions in other courts; or
>
> 3. The question of law concerns an unsettled issue of the constitutionality, construction, or application of a statute of this Commonwealth.
>
> 4. This Court shall not accept certification unless all facts material to the question of law to be determined are undisputed, and the question of law is one that the petitioning court has not previously decided.

201 Pa. Code §63.10; *see also* Pa.R.A.P. 3341(c).

This case does not meet that standard. The exclusion is not contrary to the statutory provisions cited by Plaintiff, and it is consistent with and advances public

policy.  The Superior Court upheld a significantly broader coverage limitation in 2015 in *Byoung Suk An v. Victoria*, *supra,* and the Supreme Court declined review on December 8, 2015, fifteen months ago.  *See* 130 A.3d 1285 (Pa. 2015).

This Court refrains from certifying cases to a state supreme court when this Court can predict how that court would decide the issues on appeal. *See, e.g., Travelers Indem. Co. v. DiBartolo*, 171 F.3d 168, 169 n.1 (3d Cir. 1999) (declining to certify the coverage question at issue to the Pennsylvania Supreme Court because the issue was not sufficiently important or difficult).

This is also not a question of "substantial public importance." Plaintiff's argument that this exclusion portends some deluge of litigation is belied by the fact that this policy was issued almost five (5) years ago, in 2012 (227a), meaning that the exclusion has been around at least that long. <u>Research has not revealed any other case challenging the</u> exclusion.  Where a case is unusual, and Pennsylvania law provides clear principles for interpretation, this Court has declined to certify coverage questions. *See Prudential Prop. & Cas. Ins. Co. v. Remed Recovery Care*, 136 Fed. Appx. 4 (3d Cir. 2005).

In fact, this Court has denied at least three other recent requests by the same law firm seeking certification to the Pennsylvania Supreme Court in automobile insurance coverage cases.  *See, e.g., Ho v. Allstate Indem. Co*., 615 Fed. Appx. 94 (3d Cir. 2015) (declining same law firm's request to certify question of whether

automobile insurance form complied with statutory requirements); *Seiple v. Progressive Northern Ins. Co.*, 568 Fed. Appx. 183 (3d Cir. 2014) (declining same law firm's request to certify question of whether new auto insurance rejection form was required: "We find this course of action to be unnecessary, as the Pennsylvania Supreme Court has already spoken on the issues relevant to the resolution of this case," and this Court could interpret and apply that case law to different circumstances); *Grudkowski v. Foremost Ins. Co.,* 556 Fed. Appx. 165 (3d Cir. 2014) (declining same law firm's request to certify question of whether stacking limitation in antique auto policy complied with Pennsylvania law).

This request should likewise be denied.


## CONCLUSION

Omni properly denied coverage for the underlying lawsuit, because the liability coverage of Omni's policy excludes any coverage for bodily injury or property damage resulting from the use of any vehicle by an unlicensed driver. There is no dispute that the exclusion applied to the accident at issue. The exclusion does not violate Pennsylvania law or public policy, and it furthers the Legislature's intent to penalize owners of vehicles if those owners allow unlicensed operators to drive. The district court correctly granted summary judgment on Plaintiff's claims, Plaintiff's request to certify the question to the Supreme Court of

Pennsylvania should be denied, and this Court should affirm the judgment of the district court.

Respectfully submitted,

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By:    */s/ Teresa Ficken Sachs*
      R. Bruce Morrison, Esquire
      Teresa Ficken Sachs, Esquire
      Pa. I.D. Nos. 34797/41136
      2000 Market Street, Suite 2300
      Philadelphia, PA  19103
      *Counsel for Appellees*

Dated:    March 9, 2017

# CERTIFICATIONS

I hereby certify that:

1.    I am a member in good standing of the Bar of this Honorable Court. *See* L.A.R. 28.3(d).

2.    This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B), as it contains xxxxx words, excluding those parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).  *See* L.A.R. 32.1(c).

3.    This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6), because this brief has been prepared in a proportionally-spaced typeface using Microsoft Word 2007 in 14-point Times New Roman style.  *See* L.A.R. 32.1(c).

4.    The text of the printed and electronic versions of this brief are identical, and the electronic version was virus-checked using McAfee VirusScan 8.8.0700 software prior to filing, and no viruses were detected. *See* L.A.R. 31.1(c).

MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN

By:    */s/ Teresa Ficken Sachs*
Teresa Ficken Sachs, Esquire
2000 Market Street, Suite 2300
Philadelphia, PA  19103
 Pa. I.D. No. 41136
Attorney for Appellee

Dated:    March 9, 2017

## CERTIFICATE OF SERVICE

I certify that a copy of the foregoing Brief for Appellee was filed with the Court electronically, and was served in accordance with L.A.R. 31.1(d) on the parties to this appeal as follows:

Electronic service:

James C. Haggerty, Esquire
Haggerty, Goldberg, Schleifer & Kupersmith, P.C.
1835 Market St., Suite 2700
Philadelphia, PA 19103

Kevin P. Kelly, Esquire
Kelly & Herron, P.C.
1500 Market St.
Centre Square Suite W-3110
Philadelphia, PA 19102
*Counsel for Plaintiff/Appellant*

**MARSHALL DENNEHEY WARNER
COLEMAN & GOGGIN**

*/s/ Teresa Ficken Sachs*
Teresa Ficken Sachs, Esquire

Dated:  March 9, 2017